LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona  85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMA MULTIMEDIA LLC, a Nevada limited liability company, | Case No. ~~CV-16-1269-PHX-DGC~~ |
| Plaintiff, | ~~COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL~~FIRST AMENDED COMPLAINT |
| v. | |
| SAGAN LIMITED, a Republic of Seychelles company, individually and d/b/a PORN.COM; ~~MXN LTD.~~CYBERWEB LTD. formerly MXN LTD., a Barbados Company, individually and d/b/a PORN.COM; NETMEDIA SERVICES INC., a Canadian Company, individually and d/b/a Porn.com; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; DAVID KOONAR, an individual; and John Does 1-20, | |
| Defendants. | |

Plaintiff, AMA Multimedia LLC (hereinafter referred to as "Plaintiff") by and through its counsel, files this complaint against Defendant Sagan Limited individually and d/b/a Porn.com, ~~MXN, Ltd.~~Cyberweb Ltd. formerly MXN Ltd., individually and d/b/a Porn.com, Netmedia Services Inc. individually and d/b/a Porn.com; GLP 5, Inc. individually and d/b/a Trafficforce.com, David Koonar, an individual, and the Doe Defendants (collectively hereinafter referred to as "Defendant" or "Defendants").

1.      Plaintiff AMA Multimedia LLC is a Nevada limited Liability Company with its principal place of business in Las Vegas, Nevada.

2.      Defendant Sagan Limited is, upon information and belief, a company organized and existing under the laws of the Republic of Seychelles. Upon information and belief, in conjunction with the other Defendants, Sagan Limited owns and/or operates Porn.com, an Internet web site that displays and distributes adult oriented videos, photographs, content, and services.

3.      In September 2013, Sagan Limited filed an Interim Designation of Agent to Receive Notification of Claimed Infringement with the United States Copyright Office, claiming to be doing business as Porn.com.  This Designation is current as of this filing.

4.      Defendant ~~MXN Ltd.~~Cyberweb Ltd. formerly MXN Ltd. is a company organized in Barbados.  Upon information and belief, in conjunction with the other Defendants, ~~MXN Ltd.~~Cyberweb Ltd. owns and/or operates Porn.com, an Internet web site that displays and distributes adult oriented videos, photographs, content, and services.

5.      Upon information and belief, Defendant ~~MXN Ltd.~~Cyberweb Ltd. purchased the domain porn.com at auction in 2007.  In 2014, Defendant ~~MXN Ltd.~~Cyberweb Ltd. filed a UDRP complaint, claiming ownership of the domain.

6.      Defendant Netmedia Services Inc. is a company organized in Canada. Upon information and belief, in conjunction with the other Defendants, Netmedia Services Inc. owns and/or operates Porn.com, an Internet web site that displays and distributes adult oriented videos, photographs, content, and services.

7.      Defendant GLP 5, Inc. is a Michigan corporation doing business as and commonly known as Traffic Force.  The owners and operators of Porn.com own and/or operate Traffic Force and the web site TrafficForce.com.

8.      Defendant David Koonar is an individual residing in Windsor, Ontario, Canada, believed to also be known as Kristoffer David Koonar and David Kooner.

Defendant Koonar has been listed as the registrant for Porn.com and the administrator for Porn.com.  Upon information and belief, in conjunction with the other Defendants, David Koonar owns and/or operates Porn.com, an Internet web site that displays and distributes adult oriented videos, photographs, content, and services.

9.     Reflected Networks, Inc. in Waltham, Massachusetts hosts Porn.com in the United States.

10.     Porn.com utilizes the services of Tempe, Arizona based company Limelight Networks, Inc.  Limelight Networks, Inc. serves as the content delivery network that delivers the infringing video content from the porn.com website to end users.

11.     The largest portion of Porn.com viewers are in the United States.

12.     Defendants conduct transactions in the United States, selling premium paid memberships to Porn.com to United States citizens including Arizona residents.

13.     Defendants utilize United States payment processors, including Epoch, located in Santa Monica, California, to process credit card payments for premium memberships on Porn.com.  California based Epoch also facilitates payment for premium memberships to Porn.com for PayPal, Inc., a company based in San Jose, California.

14.     The Terms and Conditions of the Premium Subscription to Porn.com states that the Agreement shall be governed by and construed under the laws of the State of California and the United States.

15.     Defendants contract directly and through brokers with United States advertisers.  Defendants' websites specifically target Arizona and other United States residents with ads designed for the visitor and which take into consideration where the visitor is located.

16.     Defendants utilize an agent in Michigan for purposes of receiving cease and desist, or takedown notices regarding infringement of intellectual property on their web site Porn.com.

17.     Defendants, by and/or through subsidiaries, contract with Arizona based companies and individuals to deliver content for their web properties.

18.     Defendants, its employees, and/or its agents travel to Arizona to transact business on behalf of Defendants.

19.     Defendants specifically target Internet users throughout the entire United States, including Arizona.

20.     Defendants refer Porn.com users to several United States based companies for assistance in limiting minors' access to adult entertainment content via the user's computer.

21.     Upon information and belief, the Defendants transact business in this Judicial District by way of their interactive websites, offices, business operations, and through their interactivity with subscription based and non-subscription based Arizona members who have been offered the infringing and unlawful content at issue herein and who have, themselves, engaged in acts of infringement in this District and State.  The Court has personal jurisdiction over the Defendants, who have engaged in business activities in and directed to this district, and have committed tortious acts within this district or directed at this district.

22.     The Court has personal jurisdiction over the Defendants, foreign companies and individuals who have engaged in business activities in and directed to the United States and this district, and have committed tortious acts within the United States and this district or directed at the United States and this district.

23.     Any alien defendant is subject to jurisdiction in any district. See 28 U.S.C. 1391 ("An alien may be sued in any district.") See also Fed. R. Civ. P. 4(k)(2).

24.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 17 U.S.C. § 101 et seq., Section 32 of the Lanham Act, 15 U.S.C. §1114(1), 15 U.S.C. § 1121, 15 U.S.C. §1125, 28 U.S.C. §1331 and 28 U.S.C. §1338.

25.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) and/or (c).

26.     This Court has personal jurisdiction pursuant to 28 U.S.C. §§ 1391(b), (c) and/or (d) and 28 U.S.C. § 1400(a).

## PARTIES

27.     The named Plaintiff is the rightful copyright, trademark and intellectual property owners of the respective United States copyrights, trademarks and intellectual property that are the basis for this action.

28.     Plaintiff AMA Multimedia LLC ("AMA") is a Nevada limited Liability Company with its principal place of business in Las Vegas, Nevada. AMA produces adult audiovisual material, which it distributes through DVD sales and the World Wide Web via its web sites under its known brands "Passion-HD" and "Porn Pros," among others.

29.     The AMA web sites, a network of twenty plus adult entertainment properties, are paid membership websites featuring over 1000 models in exclusive content.

30.     AMA engages in extremely limited licensing of its content to other entities or websites for viewing, in addition to the small sample of promotional materials provided to affiliates for the sole purpose of the affiliates' promoting AMA property. Any licensing is done with the intent for brand exposure and is limited to a small subset of hand-selected content.  Predominantly, the AMA business model is simply that a user must be a paid member to an AMA site to view AMA works.

31.     AMA holds over 900 US Copyright Registrations for its audiovisual work and 12 Trademarks for its brands, including for all works listed in this Complaint.

32.     Plaintiff is the respective producer, distributor, and exclusive licensor of its own motion pictures in the United States as well as throughout the world.

33.     Plaintiff has registered with the United States Copyright Office the copyrighted works identified in this Complaint.  Plaintiff's videos are watermarked with Plaintiff's readily identifiable logo.

34.     Plaintiff's "Pornpros" trademark and service mark has been continuously used in commerce since February 2008.  U.S. Trademark Registration No. 3566875 was registered on January 27, 2009.

35.     Plaintiff has expended considerable effort and expense in promoting its trademark and the goods sold under the trademark Pornpros.  As a result, the purchasing public has come to know, rely upon and recognize the mark Pornpros as an international brand of high quality adult entertainment.

36.     Plaintiff's "Passion-HD.com" trademark and service mark has been continuously used in commerce since December 2011.  U.S. Trademark Registration No. 4190291 was registered on August 14, 2012.

37.     Plaintiff has expended considerable effort and expense in promoting its trademark and the goods sold under the trademark Passion-HD.com.  As a result, the purchasing public has come to know, rely upon and recognize the mark Passion-HD.com as an international brand of high quality adult entertainment.

38.     Plaintiff's "Passion-HD" trademark and service mark has been continuously used in commerce since December 2011.  U.S. Trademark Registration No. 4251457 was registered on November 27, 2012.

39.     Plaintiff has expended considerable effort and expense in promoting its trademark and the goods sold under the trademark Passion-HD.  As a result, the purchasing public has come to know, rely upon and recognize the mark Passion-HD as an international brand of high quality adult entertainment.

40.     Plaintiff's "Castingcouch-x.com" trademark and service mark has been continuously used in commerce since October 2012.  U.S. Trademark Registration No. 4575672 was registered on July 29, 2014.

41.     Plaintiff has expended considerable effort and expense in promoting its trademark and the goods sold under the trademark Castingcouch-x.com.  As a result, the purchasing public has come to know, rely upon and recognize the mark Castingcouch-x.com as an international brand of high quality adult entertainment.

42.     Plaintiff's "FantasyHD" trademark and service mark has been continuously used in commerce since April 2013.  U.S. Trademark Registration No. 4591117 was registered on August 26, 2014.

43.     Plaintiff has expended considerable effort and expense in promoting its trademark and the goods sold under the trademark FantasyHD.  As a result, the purchasing public has come to know, rely upon and recognize the mark FantasyHD as an international brand of high quality adult entertainment.

44.     Plaintiff's "Tiny4k.com" trademark and service mark has been continuously used in commerce since May 2014.  U.S. Trademark Registration No. 4678642 was registered on January 27, 2015.

45.     Plaintiff has expended considerable effort and expense in promoting its trademark and the goods sold under the trademark Tiny4k.com.  As a result, the purchasing public has come to know, rely upon and recognize the mark Tiny4k.com as an international brand of high quality adult entertainment.

46.     Defendants Sagan Limited, ~~MXN Ltd.~~Cyberweb Ltd., Netmedia Services Inc., and David Koonar are each owners and/or operators of Porn.com and/or are doing business as Porn.com.

47.     Upon information and belief, the same persons/entities that own and operate Porn.com also own and operate GLP 5, Inc., doing business as Traffic Force

through TrafficForce.com.  Traffic Force is an advertising and publishing network that buys, sells, brokers, and delivers end user traffic to web sites and other similar networks for profit.

48.    Defendants conduct business as Porn.com, operate the website, and derive direct financial benefit through the sales of Premium memberships on Porn.com, at a rate of $19.95 per month or a yearly membership for $119.95.

49.    Defendants conduct business as Porn.com, operate the website, and derive direct financial benefit through the sales of advertising space on Porn.com, the value of which is directly attributed to the quality of videos published on Porn.com.

50.    Defendants compete against Plaintiff in the distribution, display, and sale of adults-only audio-visual works through Internet distribution and divert potential customers from Plaintiff.

51.    Defendants have registered Porn.com as an Internet Service Provider with the United States Copyright Office, and appointed an agent to receive copyright take down notices.  However, Defendants fail to qualify for safe harbor protections under the Digital Millennium Copyright Act for reasons of the factual allegations herein.

52.    Defendant GLP 5, Inc. and its web site TrafficForce.com are not registered Internet Service Providers, do not have DMCA agents registered with the U.S. Copyright Office, and do not have DMCA agents identified on their web site.

53.    Does 1-20 are individuals or entities that own Porn.com and/or act in concert with the owners and operators of Porn.com the true names and capacities of which are presently unknown to Plaintiff.  It is for that reason Plaintiff sues these Defendants by fictitious names. Plaintiff avers that each of the Doe defendants, along with the named defendant, jointly or severally, is responsible for the damages alleged herein.

## STATEMENT OF FACTS

54.  Congress' implementation of safe harbor provisions in the Digital Millennium Copyright Act ("DMCA") provides true internet service providers with protection against liability for copyright infringement resulting from the actions and/or postings of their users.  As a primary example, the safe harbor protections provide YouTube.com with protection from liability should one of its users post a copyright protected video without authority or license.

55.  Internet copyright infringers have systematically abused the DMCA safe harbor provisions in an attempt to garner protection for websites displaying copyrighted adult entertainment content without license or authority to the public free of charge or through a paid mechanism for direct financial gain.  Commonly, these websites attract Internet user attention through the combination of offering free viewing of copyrighted materials and the unauthorized use of trademarks, providing the user a road to the free website through the use of these marks.  From this road, sites can then up sale other offerings including paid memberships for enhanced versions of their site and further monetize their site through advertising revenue.

56.  Porn.com is such a website and more, not only displaying copyrighted adult entertainment content but also selling specific rights and granting licenses to the content without authorization or license. These actions attract millions of users and distract them from the copyright owners' actual services.

57.  Defendants sell advertising space on Porn.com in several forms, including advertising banners and links on spaces in close proximity to free videos.  Often, these advertisements are targeted to the user in the user's location.

58.  Defendants, either jointly, severally, actually, constructively, and with or without direct concert with one another, deprived Plaintiff of the lawful monetary

rewards that accompany its rights in the copyrighted works.  Defendants disregard for copyright laws threaten Plaintiff's business.

59.     Videos on Porn.com may be shared on other sites, in addition to the user being provided with direct links for posting on or to any social media site including, but not limited to, Facebook, Twitter, Google or via Email to anyone regardless of age or location.  Such functionality makes it impossible to know how many times and where an unlicensed copyrighted video has been published and displayed illegally as a direct result of Defendants unlawful display.

60.     Defendants claim to operate Porn.com as an Internet Service Provider. However, Porn.com is not an Internet Service Provider.  Rather, Porn.com is a paid membership site, with Defendants enticing users to pay for Premium memberships, called HD Premium memberships, at a rate of $19.95 per month or a yearly membership for $119.95.

61.     Defendants advertise that HD Premium members receive "Stunning High Definition Video," "Browse 100% Ad-Free," and can "Download videos, DVDs, and pictures to keep." In addition, Defendants advertise that Premium Members get access to the "best sites and studios in HD."

62.     Defendants permit a user to view lower quality versions of videos on Porn.com free of charge. Porn.com charges a fee to view the High Definition ("HD") versions of videos.

63.     Defendants are an advertising affiliate for Plaintiff, pursuant to which Plaintiff previously provided *limited sample promotional videos* for Defendants to display on Porn.com for the sole purpose of directing Internet traffic to Plaintiff's paid membership sites.  Plaintiff and Defendants share in the revenue generated by Internet traffic directed to *Plaintiff's paid membership sites* when the Internet user signed up as a

paid member.   None of the *limited* promotional videos provided to Defendants are at issue in this case.

64.     At the time the infringements herein were discovered, if a user of Porn.com attempted to watch one of Plaintiff's full-length infringed copyrighted videos in HD, the user was immediately redirected to the join page to become a paying Premium Member of Porn.com.

65.     At the time that the infringements herein were discovered, if a user of Porn.com attempted to download the HD or any other version of Plaintiff's copyrighted videos, the user was prompted to become a paying Premium Member of Porn.com, informing the user that they, "need to be a premium member to do that," and a price menu for Premium Membership was displayed.

66.     A user is unable to download a video, view a high definition video, or view Porn.com wholly unencumbered, uninterrupted, and/or unaccompanied by advertisements without first joining Porn.com.

67.     In furtherance of the claim that Porn.com is operated as an Internet Service Provider, Defendants claim that videos available on Porn.com are uploaded by independent third parties.  However, based upon information and belief, and facts alleged herein, videos, or the bulk of the videos on Porn.com are misrepresented as third party uploads.  In fact, the videos displayed on Porn.com are a result of operators of the web site and/or agents of the Defendants posting professionally produced videos obtained from other locations.

68.     Based on information and belief, the Defendants or its Agents or assigns are "scraping" user profiles and video content from similar high trafficked sites such as Xvideos.com[1] and Vporn.com.

---

[1] Amazon owned Alexa.com ranks websites "based on data from our global traffic panel." (Source: http://www.alexa.com/about). Alexa ranks the website Xvideos.com with a global rank of 53 (Source:

69.     This effort of using "scraped" fake profiles allows a site to provide more high quality video content to their end users while maintaining the appearance that an army of third parties uploaded a vast library of professionally shot content in a concentrated period. The result for the Defendant is a more desirable web property as it generates more traffic that translates into increased revenue from advertising rates and paid memberships. The game works in such a way that the Defendants can simply wait for a DMCA Notice, remove the content and act "as if" it was a third party upload. The site appears to be DMCA compliant but is in actuality forcing content producers to play a sad game of "catch me if you can."

70.     According to the Terms of Service on Porn.com, a user must be registered as a member of Porn.com in order to be able to upload videos.   Registering as a member to Porn.com is different from paying a membership fee to gain Premium access. Registering as a member does not require the payment of money, but only requires establishing a user name, a password, and a providing an email address.

71.     When a user registers to become a member of Porn.com, they are subsequently approved, and a dedicated "profile page" is created for that registered user on Porn.com, which shows basic information including information the registered member voluntarily disclosed to the website as well as any videos they uploaded.

72.     Videos published on Porn.com are to be accompanied by the user name for the user that uploaded the video, also referred to as the "uploader" on the webpage where the video is displayed.

73.     The "uploader" information, which accommodates a video, is a clickable link, which will then take any end user, registered or not, to that uploader's profile page.

http://www.alexa.com/siteinfo/xvideos.com - Last viewed 03/29/2016) and Porn.com with a global rank of 1,143 (Source: http://www.alexa.com/siteinfo/porn.com - Last viewed 03/29/2016).

This is a common practice in this entire category of websites, as well as in sites like Youtube.com, and others.

74.     For certain videos displayed on Porn.com, represented to be third party uploads, there are no user names associated with the video. There is no "uploader" associated with the video. The Porn.com upload process requires that a user must be registered as a mandatory pre-requisite to upload a video. The lack of user names associated with these particular videos illustrates that these videos are not uploaded by independent third parties, but by the operator.

75.     For certain videos displayed on Porn.com, represented to be third party uploads, the user associated with posting the video changes on different days that the video is viewed on the web site. The random switching of user names for a video illustrates that the video is not uploaded by independent by third parties, but rather by the operator and then assigned a user name as a ruse to disguise the origination of the video.

76.     For certain videos displayed on Porn.com, represented to be third party uploads, the user associated as the uploader of the video is actually *not* registered as a member of Porn.com. The association of a user name that is *not* registered as a member illustrates that these videos are not uploaded by independent third parties, but by the operator and then assigned a user name as a ruse to disguise the origination of the video.

77.     Specific acts of infringement existed prior to Defendants filing with the US Copyright Office as an Internet Service Provider.

78.     In or about November 2015, and for an unknown time before and up to and including the present, Defendants' website Porn.com displayed 64 of Plaintiff's copyright registered works over 110 separate and distinct URLs  - each a part of Porn.com. Defendants have no authority or license to display or distribute any portion of Plaintiff's copyrighted works. These works are purported by Defendants to have been uploaded by

third party Internet users. These copyrighted works and their corresponding Porn.com page are listed in **Exhibit A**, attached hereto.

79.    At least five (5) of Plaintiff's videos have no uploader information associated with the video at all.  Attached hereto as **Exhibit B** is a summary list of Plaintiff's videos on Porn.com displayed without any associated uploader.

80.    The failure to attach uploader information to a published video renders the implementation of a reasonable repeat infringer policy impossible.  Without uploader information, an uploader that repeatedly infringes copyrights cannot be properly terminated.

81.    At least two (2) of Plaintiff's videos have uploader information that changed on different days of viewing the video.  On some of the Plaintiff's copyrighted videos, the party whom Porn.com represents as the "uploader" changed from one username on one day to another completely different username on a subsequent day – all on the exact same URL.  In each such documented instance, a search for the purported uploader profile on Porn.com resulted in a representation of "No Such Member." Attached hereto as **Exhibit C** is a summary list of Plaintiff's videos on Porn.com displayed with different uploader information for the same video on the same URL on different dates.

82.    In such cases, Defendants have assigned a fake user name to one of Plaintiff's copyrighted videos displayed on Porn.com.  *Defendants have knowingly published Plaintiff's video without authority, and assigned fake uploader information in order to create the illusion that the video was published by a third party.*

83.    At a minimum, the assignment of inaccurate uploader information renders it impossible to implement a reasonable repeat infringer policy.

84.    At least sixty (60) of Plaintiff's videos published on Porn.com are accompanied by a user name represented to be the uploader.  However, a search on

Porn.com for these user names resulted in the display of a dedicated page for thirty-three (33) profiles of those user names that stated that that there is "**No Such Member**" or user on Porn.com.  Attached hereto as **Exhibit D** is a summary list of Plaintiff's videos on Porn.com displayed with uploader information that resulted in a finding of "No Such Member."

85.   The failure to attach accurate uploader information to a published video renders the implementation of a reasonable repeat infringer policy impossible.  Without accurate uploader information, an uploader that repeatedly infringes copyrights cannot be properly terminated.

86.   Without accurate uploader information regarding Plaintiff's copyrighted videos, Defendants cannot have a reasonable belief that a license was granted for Defendant's display, use of, or financial gain from the use of Plaintiffs intellectual property.

87.   At least ten (10) of Plaintiff's videos published on Porn.com were published by "third parties" on a date that *predates the actual production and/or release of the video.*  Obviously, it is impossible for a video to have been published on Porn.com before it was ever made.  Representing the posting date of a video before it was produced illustrates that the video was not uploaded by independent third parties, but rather by the operator and then assigned a fake date of posting.  Attached hereto as **Exhibit E**, a summary list of Plaintiff's videos on Porn.com purported to be published before the video was actually produced.

88.   At least twelve (12) of Plaintiff's videos on Porn.com were published by a specific third-party uploader *before* the uploader is shown to have joined Porn.com. Representing the posting date of a video before the purported uploader joined the site illustrates that the video was not uploaded by independent third parties, but rather by the operator and then assigned false information.  Attached hereto as **Exhibit F** is a summary

list of Plaintiff's videos on Porn.com published by a user before the user joined Porn.com.

89.     At least seven (7) of Plaintiff's videos published on Porn.com were published *before* Defendants registered as an Internet Service Provider with the United States Copyright Office.  Attached hereto as **Exhibit G**, is a summary list of Plaintiff's videos on Porn.com displayed as published to the website before ISP registration with the United States Copyright Office.

90.     Defendants "scrape", or aggregate on their own, user information and videos from other websites in the industry, and then create the façade that those users exist on their own website and uploaded the videos to Defendants' websites directly.

91.     Some of Plaintiff's videos published on Porn.com are accompanied by a user name that appears to be a member of Porn.com, complete with a dedicated profile page that includes a date of birth and date the user joined Porn.com.  Curiously, the alleged Porn.com user has identical information found on a dedicated profile page on the websites Xvideos.com and/or Vporn.com. This information includes the same signup date to each site, and in many cases identical geographic location, and videos in identical order of presentation. Attached hereto as **Exhibit H** is a summary list of the Porn.com members and the comparative Xvideos.com and Vporn.com data. Further, the exhibit illustrates that in cases where a user had "uploads" on Porn.com where a search resulted in a return of "No Such Member", the profile page on Xvideos.com is legitimately providing the missing data.

92.     Some Porn.com registered member profile pages that have purportedly uploaded Plaintiffs copyrighted works shows ZERO videos uploaded by those registered members.  Specifically, the site states that upload count for that particular user as zero. Defendants have knowingly published Plaintiff's video without authority and assigned an uploader to the video that did not upload the video.  Attached hereto as **Exhibit I** is a

1   summary list of those Porn.com members who are purported to have not published any

2   videos on their profile page, but are then associated with one of Plaintiff's videos

3   displayed for free on Porn.com.

4        93.    Defendants are using Plaintiff's copyrighted works as "feature choices" on

5   the category page of Porn.com, http://www.porn.com/categories.   Examples of these

6   feature choices are listed in **Exhibit K**.

7        94.    GLP 5, Inc., doing business as "Traffic Force", is an advertising service or

8   broker that is, upon information and belief, an alter ego of the other Defendants.

9        95.    Traffic Force is an advertising network and broker.   It connects websites

10  that sell advertising space, also known as "publishers," with individuals or corporate

11  entities that purchase advertising space, called "advertisers."   Traffic Force acts as a

12  middleman between the two-parties.   The publishers, e.g. Porn.com, compensate Traffic

13  Force with a commission on the advertising revenue for this service.   Advertisers pay

14  Traffic Force for the advertising space they purchase.   Traffic Force receives the funds

15  from advertisers, deducts the commission they charge to publishers, and routes the

16  remaining funds to the corresponding publisher.

17       96.    Publishers place codes on their websites that they receive from Traffic

18  Force, which are responsible for displaying advertisements located on the Traffic Force

19  technology platform.   Advertisers upload banners to the Traffic Force technology

20  platform.   Traffic Force manually reviews and approves every single banner uploaded to

21  their technology platform by advertisers.   The ads are then displayed to end users via the

22  code the publishers have placed on their websites.

23       97.    Traffic Force takes no precautions to ensure that its advertisers are not

24  uploading copyrighted material for their banners located on the Traffic Force platform.

25  On information and belief, copyright infringement is rampant among Traffic Force's

26  advertisers.

98.     In or about March 16, 2016, Plaintiff's copyrighted works were displayed on Traffic Force banners on Porn.com.  Examples of Traffic Force banners displayed on Porn.com with Plaintiff's copyrighted works are listed in **Exhibit J**.

99.     Traffic Force banners that display Plaintiff's copyrighted works are also displayed on other web sites that utilize the services of Traffic Force.

100.    Any person can browse to one of Plaintiff's infringed videos on Porn.com, which was uploaded by Defendants, and subsequently assigned false uploader information.

101.    That user could then be displayed a banner that was manually approved by Traffic Force which contains other infringed copyrighted material from Plaintiff.

102.    Finally, if the user wants to download the High-Definition version of Plaintiff's infringed video, the user would then be prompted to purchase a membership to Defendant's Porn.com Premium section in order to do so.

103.    Defendants also hand select and curate some of Plaintiff's copyrighted images for use throughout the Porn.com website without Plaintiff's authorization or consent.

104.    Defendants operate multiple corporate entities that exploit large-scale copyright infringement for its own financial gain.


## COUNT I

### Copyright Infringement – 17 U.S.C. §§ 101 *et. seq.*

#### Against All Defendants

105.    Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 104 above, and further states that:

106.    Plaintiff holds the copyright on each of the infringed works alleged herein.

107.    Plaintiff registered each copyright with the United States Copyright Office.

108.   At all pertinent times, Plaintiff is the producers and registered owner of the audiovisual works illegally and improperly reproduced and distributed by Defendants.

109.   Defendants copied, reproduced, reformatted, and distributed Plaintiff's copyrighted works to Porn.com by and through servers and/or hardware owned, operated and/or controlled by Defendants.

110.   Defendants did not have authority or license to copy and/or display Plaintiff's original works.

111.   Defendants infringed Plaintiff's copyrighted works by reproducing and distributing works through Defendants' website Porn.com without proper approval, authorization, or license from Plaintiff.

112.   Defendants knew or reasonably should have known they did not have permission to exploit Plaintiff's works on Porn.com and further knew or should have known their acts constituted copyright infringement.

113.   Defendants made no attempt to discover the copyright owners of the pirated works before exploiting them.   Defendants failed and refused to take any reasonable measure to determine the owner or license holder of the copyrighted works.

114.   Defendants engaged in intentional, knowing, negligent, or willfully blind conduct sufficient to demonstrate they engaged actively in the improper collection and distribution of Plaintiff's copyrighted works.

115.   The quantity and quality of the Plaintiff's copyrighted videos available to Internet users increased the attractiveness of Defendants' service to its customers, increased its membership base, and increased its ad sales revenue.

116.   Based on information and belief, Defendants actively uploaded and/or distributed pirated copyrighted files and/or embedded code, enabling users of Porn.com to view copyrighted videos and images for a fee.

117.    Defendants controlled the files owned by Plaintiff and determined which files remained for display and distribution.

118.    Defendants never adopted procedures to ensure that distribution of Plaintiff's copyrighted materials would not occur. Further, Defendants never implemented or enforced a "repeat infringer" policy.

119.    Defendants either were aware, actually or constructively, should have been aware, or were willfully blind that pirated copyrighted materials comprised the most popular videos on the Defendants websites.

120.    Defendants, through Porn.com, affirmatively and willfully accommodated Internet traffic generated by the illegal acts.

121.    Defendants' conduct was willful within the meaning of 17 U.S.C. § 101, *et seq*. At a minimum, Defendants acted with willful blindness and reckless disregard of Plaintiff's registered copyrights.

122.    Because of their wrongful conduct, Defendants are liable to Plaintiff for copyright infringement. See 17 U.S.C. §501. Plaintiff suffers and will continue to suffer substantial losses, including, but not limited to, damage to its business reputation and goodwill.

123.    The law permits Plaintiff to recover damages, including readily ascertainable direct losses and all profits Defendants made by their wrongful conduct. 17 U.S.C. §504. Alternatively, Plaintiff is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c ), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c ).17 U.S.C. §504(c).

124.    Because of Defendants' willful infringement, the law permits enhancement of the allowable statutory damages. 17 U.S.C. §504(c) (2).

125.    The law permits Plaintiff injunctive relief. 17 U.S.C. §502. Further, the law permits a Court Order impounding any and all infringing materials. 17 U.S.C. §503.

WHEREFORE, Plaintiff AMA Multimedia LLC requests the following relief:

A.    That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1)    Any and all reproduction, adaptation, public display and/or distribution of copies of Plaintiff's copyrighted works by Defendants on any website, including but not limited to Porn.com;

(2)    Permitting any user to upload for reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Porn.com; and

(3)    Marketing or selling any product containing or utilizing Plaintiff's intellectual property or business values.

B.    That Defendants be ordered to transfer the domain Porn.com, and all similar domains held by Defendants found in discovery, such as misspellings of the enumerated domains, domains held by Defendants linked to www.Porn.com, and the content therein to Plaintiff.

C.    That Defendants be ordered to file with the Court and serve upon Plaintiff, within thirty (30) after the entry of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

D.    That Plaintiff be awarded damages in an amount to be determined at trial for all infringing activities, including Plaintiff's damages and lost profits, Defendants'

profits, plus any costs incurred in preventing future confusion, mistake or deception, all from the date of first infringement;

      E.    That Defendants be ordered to account to Plaintiff for all profits, gains and advantages that they have realized as a consequence of their unauthorized use of Plaintiff's copyrighted works;

      F.    That Plaintiff be awarded enhanced statutory damages and attorney's fees;

      G.    That Plaintiff be awarded pre-judgment and post-judgment interest;

      H.    That Plaintiff be awarded costs and expenses incurred in prosecuting this action, including expert witness fees; and

      I.    That such other and further preliminary and permanent relief be awarded to Plaintiff as the Court deems appropriate.

## COUNT II

### Contributory Copyright Infringement

#### Against All Defendants

126.   Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 104 above and further states that:

127.   Unknown individuals, without authorization, reproduced and distributed Plaintiff's works through Defendants' websites, directly infringing Plaintiff's copyrighted works.

128.   Defendants contributed to the infringing acts of those individuals.

129.   Defendants were aware, should have been aware, or were willfully blind to the infringing activity.

130.   Defendants aided, abetted, allowed, and encouraged those individuals to reproduce and distribute Plaintiff's copyrighted works through Defendants' website without regard to copyright ownership.

131. Defendants had the ability and obligation to control and stop the infringements. Defendants failed to do so.

132. Defendants have engaged in the business of knowingly inducing, causing, and/or materially contributing to unauthorized reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works, and thus to the direct infringement of Plaintiff's copyrighted works.

133. Defendants received direct financial benefits from the infringements.

134. On information and belief, Defendants' actions constitute contributory infringement of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

135. The unauthorized reproduction, distribution, and public display of Plaintiff's copyrighted works that Defendant enables, causes, materially contributes to and encourages through the acts described above are without Plaintiff's consent and are not otherwise permissible under the Copyright Act.

136. The acts of infringement by Defendants have been willful, intentional, and purposeful and in reckless disregard of and with indifference to Plaintiff's rights.

137. As a direct and proximate result of the infringements by Defendants of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works, Plaintiff is entitled to its actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

138. Alternatively, Plaintiff is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c ), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c ).

139. Plaintiff is further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

WHEREFORE, Plaintiff AMA Multimedia LLC requests the following relief:

A.      That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1)      Any and all reproduction, adaptation, public display and/or distribution of copies of Plaintiff's copyrighted works by Defendants on any website, including but not limited to Porn.com;

(2)      Permitting any user to upload for reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Porn.com; and

(3)      Marketing or selling any product containing or utilizing Plaintiff's intellectual property or business values.

B.      That Defendants be ordered to transfer the domain Porn.com and all similar domains held by Defendants found in discovery, such as misspellings of the enumerated domains, domains held by Defendants linked to www.Porn.com and the content therein to Plaintiff.

C.      That Defendants be ordered to file with the Court and serve upon Plaintiff, within thirty (30) after the entry of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

D.      That Plaintiff be awarded damages in an amount to be determined at trial for all infringing activities, including Plaintiff's damages and lost profits, Defendants' profits, plus any costs incurred in preventing future confusion, mistake or deception, all from the date of first infringement;

E.      That Defendants be ordered to account to Plaintiff for all profits, gains and

advantages that they have realized as a consequence of their unauthorized use of Plaintiff's copyrighted works;

F.     That Plaintiff be awarded enhanced statutory damages and attorney's fees;

G.     That Plaintiff be awarded pre-judgment and post-judgment interest;

H.     That Plaintiff be awarded costs and expenses incurred in prosecuting this action, including expert witness fees; and

I.     That such other and further preliminary and permanent relief be awarded to Plaintiff as the Court deems appropriate.

## COUNT III

### Vicarious Copyright Infringement

### Against All Defendants

140.   Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 104 above and further states that:

141.   Without authorization, individuals reproduced, distributed, and publicly displayed Plaintiff's works through Defendants' website, directly infringing Plaintiff's copyrighted works.

142.   Defendants were actually or constructively aware or should have been aware or were willfully blind to the infringing activity.

143.   Defendants were able to control or completely end the illegal and improper infringement, but failed to do so.

144.   Defendants contributed materially to the infringement.

145.   Defendants received direct financial gain and profit from those infringing activities.

146.   The acts, omissions, and conduct of all Defendants constitute vicarious copyright infringement.

147.   The acts of infringement by Defendants have been willful, intentional, and purposeful and in reckless disregard of and with indifference to Plaintiff's rights. As a direct and proximate result of the infringements by Defendants of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works, Plaintiff is entitled to their actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

148.   Alternatively, Plaintiff is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c ), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c ).

149.   Plaintiff is further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

WHEREFORE, Plaintiff AMA Multimedia LLC requests the following relief:

A.   That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1)   Any and all reproduction, adaptation, public display and/or distribution of copies of Plaintiff's copyrighted works by Defendants on any website, including but not limited to Porn.com;

(2)   Permitting any user to upload for reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Porn.com; and

(3)   Marketing or selling any product containing or utilizing Plaintiff's intellectual property or business values.

B.   That Defendants be ordered to transfer the domain Porn.com, and all similar domains held by Defendants found in discovery, such as misspellings of the enumerated domains, domains held by Defendants linked to www.Porn.com, and the

content therein to Plaintiff.

C.    That Defendants be ordered to file with the Court and serve upon Plaintiff, within thirty (30) after the entry of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

D.    That Plaintiff be awarded damages in an amount to be determined at trial for all infringing activities, including Plaintiff's damages and lost profits, Defendants' profits, plus any costs incurred in preventing future confusion, mistake or deception, all from the date of first infringement;

E.    That Defendants be ordered to account to Plaintiff for all profits, gains and advantages that they have realized as a consequence of their unauthorized use of Plaintiff's copyrighted works;

F.    That Plaintiff be awarded enhanced statutory damages and attorney's fees;

G.    That Plaintiff be awarded pre-judgment and post-judgment interest;

H.    That Plaintiff be awarded costs and expenses incurred in prosecuting this action, including expert witness fees; and

I.    That such other and further preliminary and permanent relief be awarded to Plaintiff as the Court deems appropriate.

## COUNT IV

### Inducement of Copyright Infringement

#### Against All Defendants

150.    Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1 through 104 above and further states that:

151.    Defendants designed and/or distributed technology and/or devices and/or induced individuals to use this technology to promote the use of infringed and

copyrighted material. As a direct and proximate result of Defendants' inducement, individuals infringed Plaintiff's copyrighted works. These individuals reproduced, distributed and publicly disseminated Plaintiff's copyrighted works through Defendants' website.

152.   On information and belief, Defendants have encouraged the illegal uploading and downloading of Plaintiff's copyrighted works, thus inducing the unauthorized reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works, and thus to the direct infringement of Plaintiff's copyrighted works.

153.   Defendants' actions constitute inducing copyright infringement of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

154.   The infringement of Plaintiff's rights in and to each of the Plaintiff's copyrighted works constituted a separate and distinct infringement.

155.   The acts of infringement by Defendants have been willful, intentional, purposeful and in reckless disregard of and with indifference to Plaintiff's rights.

156.   As a direct and proximate result of the infringements by Defendants of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works, Plaintiff is entitled to actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

157.   Alternatively, Plaintiff is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c ), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

158.   Plaintiff is further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

WHEREFORE, Plaintiff AMA Multimedia LLC requests the following relief:

A.      That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1)      Any and all reproduction, adaptation, public display and/or distribution of copies of Plaintiff's copyrighted works by Defendants on any website, including but not limited to Porn.com;

(2)      Permitting any user to upload for reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any website, including but not limited to Porn.com; and

(3)      Marketing or selling any product containing or utilizing Plaintiff's intellectual property or business values.

B.      That Defendants be ordered to transfer the domain Porn.com, and all similar domains held by Defendants found in discovery, such as misspellings of the enumerated domains, domains held by Defendants linked to www.Porn.com and the content therein to Plaintiff.

C.      That Defendants be ordered to file with the Court and serve upon Plaintiff, within thirty (30) after the entry of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

D.      That Plaintiff be awarded damages in an amount to be determined at trial for all infringing activities, including Plaintiff's damages and lost profits, Defendants' profits, plus any costs incurred in preventing future confusion, mistake or deception, all from the date of first infringement;

E.      That Defendants be ordered to account to Plaintiff for all profits, gains and

advantages that they have realized as a consequence of their unauthorized use of Plaintiff's copyrighted works;

F.     That Plaintiff be awarded enhanced statutory damages and attorney's fees;

G.     That Plaintiff be awarded pre-judgment and post-judgment interest;

H.     That Plaintiff be awarded costs and expenses incurred in prosecuting this action, including expert witness fees; and

I.     That such other and further preliminary and permanent relief be awarded to Plaintiff as the Court deems appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED this 9~~28~~th day of June~~April~~, 2016.

**MANOLIO & FIRESTONE, PLC**

By:    /s/ Veronica L. Manolio
Veronica L. Manolio
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
*Attorneys for Plaintiff*