LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona  85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMA Multimedia, LLC, a Nevada limited liability company,<br><br>                                    Plaintiff,<br>v.<br><br>Sagan, Ltd., a Republic of Seychelles company, individually and d/b/a Porn.com; Cyberweb, Ltd., formerly MXN, Ltd., a Barbados Company, individually and d/b/a Porn.com; Netmedia Services, Inc., a Canadian Company, individually and d/b/a Porn.com; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; David Koonar, an individual, *et. al.,*<br><br>                                    Defendants. | Case No. CV-16-1269-PHX-DGC<br><br>**PLAINTIFF<br>AMA MULTIMEDIA, LLC'S<br>*EX PARTE* MOTION FOR LEAVE<br>FOR ALTERNATIVE SERVICE** |

Plaintiff, AMA Multimedia, LLC (hereinafter "AMA" or "Plaintiff") hereby moves for leave for alternative service (hereinafter this "Motion") in the above-captioned case through its undersigned counsel, Veronica L. Manolio, Manolio & Firestone, PLC. This Motion is filed *ex parte* because:  1) Plaintiff reasonably asked defense counsel to accept service for Clients she admitted she was "likely to represent," but she refused; and 2) Plaintiff has justifiable reason to believe Defendants are avoiding service.

## I. INTRODUCTION

AMA has filed this litigation against four companies (three foreign) and one individual, David Koonar. It is believed that all five companies are closely related and operated by the same individuals, including David Koonar.[1] AMA has located three different street addresses specifically associated with Defendant Koonar, in two different countries. Despite attempted service, each of these three addresses has failed in reaching Mr. Koonar. As no other addresses can be located, it is reasonably concluded that a specific location cannot be obtained for Mr. Koonar. However, **AMA successfully communicated directly with Defendant Koonar via a valid email address as recently as two days before this lawsuit was filed**. Accordingly, there is good cause to grant AMA leave for alternative service by email.

## II. FACTUAL BACKGROUND

On April 28, 2016, AMA filed this instant action regarding copyright and trademark infringement occurring on the web sites Porn.com. *See*, **Exhibit A** at p. 2, ¶3. Before filing the lawsuit, AMA President, Adam Silverman, was engaged directly in communications with David Koonar. *Id.* at p. 3, ¶¶11-12; *see also*, Doc. 11-1 (on file)(Mr. Silverman and Mr. Koonar were engaged in direct settlement communications

---

[1] In seeking more time to file a Motion to Dismiss, Defendants provided a sworn declaration of an individual named Philip Bradbury as the "sole director, secretary, and president of GLP 5 Inc." (*See* Doc. 10-2). Contradicting that testimony, all of the corporate paperwork filed with the state of Michigan that identifies Defendant Koonar as the person holding these positions. *See,* Declaration of Adam Silverman, attached as **Exhibit A**, incorporated here, at p. 3, ¶¶13-14. Mr. Koonar holds himself out to the State of Michigan as President, Secretary, Treasurer, and Director of GLP 5, Inc., with a Bingham Farms, MI address, and has consistently since 2011. *See*, **Exhibit A at Exhibit 1** thereto. Not only does this contradict prior statements made to this Court, but Philip Bradbury also listed himself as a Vice President of Netmedia Services (a co-defendant in this case) that is industry-known to be controlled and/or owned by Defendant Koonar. *See*, **Exhibit A** at ¶14.

1 before the lawsuit was filed).  Mr. Silverman/AMA has routinely communicated with
2 Defendant Koonar through the email address: producertm@gmail.com; such
3 communications have included *sending* Mr. Koonar emails **and** *receiving* emails from
4 Defendant Koonar.  *Id*. at **Exhibit A**.  Importantly, AMA has proof of email
5 communications with Mr. Koonar via this email address as recently as two (2) days
6 before this lawsuit was filed.  *Id*., **Exhibit A** at ¶¶11-12.

7 Online/internet research located the following street address for Defendant
8 Koonar:  538 Lisa Crescent, Windsor, Ontario, Canada.  *See*, **Exhibit A** at p. 2.  This
9 was confirmed on resources such as Businessprofiles.com and Bizapedia.com, as well
10 as this address was confirmed for Defendant Koonar in a corporations search in
11 Barbados, where he is listed as a Director for G.I.M. Corporation, a Barbados company
12 involved in website design, management, and administration support services.  *Id*.  On
13 or about May 16, 2016, AMA attempted service at the Windsor, Ontario, Canada
14 address using a registered process server.  *See*, Declaration of undersigned counsel
15 attached here as **Exhibit B**, incorporated by this reference.  Our process server was
16 informed that the current occupant/owner of the residence had purchased the property
17 from David Koonar a year prior.  *Id*. at p. 2.  We were forced to look for alternative
18 address(es) for Mr. Koonar.  *Id*.

19 Plaintiff obtained another address associated with David Koonar, 5060 Tecumseh
20 Road East, Windsor, Ontario N8T 1C1.  *See,* **Exhibit A** at p. 2, ¶ 6.  On May 16, 2016,
21 Plaintiff's process server attempted service at this address.  While the address was
22 confirmed to be associated with David Koonar, it was a UPS Store/USPS Post Office
23 Box, and personal service was not possible at this address.  *See*, **Exhibit B** at p. 2.

24 Historically and currently, it has been known that Defendant Koonar is directly
25 affiliated with Netmedia Services, Inc.  Netmedia Services, Inc., a defendant in this
26 lawsuit, was served at 1785 Turner Road, Windsor, Ontario, Canada.  This address is

1 also where Cyberweb Ltd., a co-defendant in this case and a Barbados corporation, has
2 instructed AMA to mail their checks. *See*, **Exhibit A,** p. 2, ¶ 7.  AMA attempted service
3 of Defendant Koonar at this address on June 1, 2016, but its process server was
4 informed that Defendant Koonar was not available at this site and it was unknown when
5 he would be available.  Thereafter, the process server was denied entrance to the office
6 building.  *See,* **Exhibit B**, p 2, ¶ 3.

7       As stated in the earlier Opposition to Defendants' request for more time to
8 Answer (or move to dismiss)(Doc. 11), Defendant Koonar engaged in settlement
9 negotiations with Adam Silverman/AMA solely so he could run out and file a meritless
10 breach of contract claim in Barbados Supreme Court ("the Barbados Claim"), knowing
11 this lawsuit was about to be filed. *See*, Doc. 11-1 at p. 3 of 13.  In that Barbados Claim,
12 Defendant Koonar listed a street address for himself at Via Santa Caterina 35, Treviso,
13 Italy. *See*, **Exhibit A** at pp. 2-3.  Plaintiff AMA undertook investigations of the Italian
14 address to learn that the address is that of an international employment agency,
15 Obiettivo Lavoro.  *Id*.  There is no obtainable connection between Defendant Koonar
16 and Obiettivo Lavoro; AMA has not discovered Mr. Koonar to be listed anywhere in
17 relation to the address. *Id*.

18       AMA has exhausted all possible address options and is unable to locate a valid
19 specific address for Defendant Koonar.  **Exhibit A** at p. 3, ¶ 10.  There is valid and
20 justifiable reason to believe that Mr. Koonar is intentionally avoiding service and/or
21 listing incorrect/fictitious address(es) online so that personal service cannot be
22 effectuated. *Id*.  Moreover, while Mr. Koonar is listed with the State of Michigan as the
23 President, Secretary, Treasurer and Director of an already-served domestic Defendant
24 (GLP 5, Inc.) in this case, Mr. Koonar lists every one of his personal addresses online as
25 foreign addresses.
26 / / /

### III. LAW AND ARGUMENT

The Due Process Clause of the Fourteenth Amendment requires only that the method of service be *reasonably calculated to apprise interested parties of the pendency of the action* and afford them an opportunity to present their objections. *See, Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Service by email was widely approved of after the Ninth Circuit allowed it in the landmark case, *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002). Facts demonstrate it should be permitted in this case.

Fed.R.Civ.P. 4(f)(3) and 4(h)(2) provide for "Service" "upon Corporations" and "Upon Individuals in a Foreign Country by other means not prohibited by international agreement as may be directed by the court," which enables the court on <u>*ex parte*</u> motion to devise a method of service responsive to the unique facts of the particular case, including service by mail to the defendant's last known address, by ordinary mail, by email, or other means. Fed.R.Civ.P. Rule 4. This Rule does not require that a party attempt service of process by the methods enumerated in Rule 4(f)(2), including by diplomatic channels before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props.*, 284 F.3d at 1014-15.

In *Rio Props.* the Ninth Circuit endorsed a district court order authorizing service on a Costa Rica resident defendant by email. *Rio Props.*, 284 F.3d 1007. The *Rio* court was confronted with a foreign defendant that was difficult to locate but maintained an email address for business purposes. *Id.* at 1012-13. The court found that electronic service was permissible, "wholeheartedly" adopting the reasoning that "[e]lectronic communication via satellite can and does provide instantaneous transmission of notice and information. No longer must process be mailed to a defendant's door when he can receive complete notice at an electronic terminal inside his very office, even when the door is steel and bolted shut." *Id.* at 1017 (quoting *New*

*England Merchs. Nat'l Bank v. Iran Power Generation & Transmission Co*., 495 F. Supp. 73, 81 (S.D.N.Y. 1980)).

The court in *Rio Props.* concluded that after "examining the language and structure of Rule 4(f) and the accompanying advisory committee notes," there is "the inevitable conclusion that service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant." 284 F.3d at 1015, 1017 (internal citations omitted). *See also; Viz Commc'ns Inc. v. Redsun*, 2003 WL 23901766 (N.D. Cal. 2003) (District Court has discretion to allow service by email; email was the sole means of contact on defendants' website; defendants were playing hide-and-seek with the federal court and email may be the only means of effecting service of process; and the court found that the defendants were informed sufficiently of the pendency of the lawsuit and the Constitution required nothing more); *Popular Enter's.*, 225 F.R.D. 560 (service of process upon a trademark infringement foreign defendant by email was warranted and sufficiently apprised the interested parties of the pendency of an action).

As the *Popular Enter's.* Court held, relying upon *Rio Props.*:

> Accordingly, the court concludes that, under the facts in this action, service upon defendant by email is fully authorized by *Federal Rule of Civil Procedure 4(f)(3)*. Indeed, it is the method of service most likely to reach defendant. Service of process by email is reasonably calculated to apprize defendant of the pendency of this action and afford it an opportunity to respond. As stated by the Ninth Circuit Court of Appeals, "when faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process." *Rio*, 284 F. 3d at 1018. Such is the case here.

*Popular Enter's.*, 225 F.R.D. at 563

Since *Rio Props.*, electronic service by email or facsimile under Rule 4(f)(3) has

- 6 -

been widely approved. *See, e.g., MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 08-CV-2593, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008) (authorizing service by e-mail). See also *Bank Julius Baer & Co. Ltd. v. Wikileaks*, No. C. 08-00824 JSW, 2008 WL 413737 (N.D.Ca. Feb. 13, 2008) (authorizing e-mail service); *D'Acquisto v. Triffo*, 2006 WL 44057 (E.D. Wis. 2006) (same); *Williams v. Adver. Sex, LLC*, 231 F.R.D. 483, 488 (N.D. W. Va. 2005) (same); *Broadfoot v. Diaz (In re Int'l Telemedia Assoc.)*, 245 B.R. 713, 719-20 (Bankr. N.D. Ga. 2000) (authorizing service via email, facsimile and ordinary mail); *New England Merchs. Nat'l Bank*, 495 F.Supp. at 80 (authorizing service by telex, a precursor to facsimile correspondence); *Popular Enter's v. Webcom Media Grp. Inc.*, 225 F.R.D. 560 (E.D. Tenn. 2004); *Liberty Media Holdings, LLC v. Vinigay.com,* 2011 U.S. Dist. LEXIS 26657 (D. Ariz. 2011) (authorizing email service).

The requested relief serves the public interest by preserving the integrity of the United States' intellectual property laws. If international scofflaws are allowed to hide behind anonymity and/or false addresses, and believe that they can hide with impunity from United States courts as long as they remain outside of the United States, then intellectual property theft will simply flow offshore—rendering American copyright law meaningless for want of service of process. *Rio Props.* 284 F.3d at 1013.

District courts routinely allow plaintiffs to serve foreign defendants by sending the summons and complaint by email. Fed.R.Civ.P. 4(f)(3) and 4(h)(2); *Rio Props.*, 284 F.3d 1007; *Williams-Sonoma Inc. v. Friendfinder, Inc.*, 2007 U.S. Dist. LEXIS 31299 (N.D. Cal. Apr. 17, 2007); *Project Honey Pot, et al. v. Andrey Chernuk, et al.*, No. 1: 11-cv-0015-LMB -JFA at Doc #27 (E.D. Va Sep. 16, 2011) (allowing service by email and by Facebook posting). In *Nanya Tech. Corp. v. Fujitsu, Ltd.,* 2007 U.S. Dist. LEXIS 5754, *11 (D. Guam, January 26, 2007), the District of Guam explained the rationale for alternate service:

> We should not lose sight of what service of process is about, it is about giving a party notice of the pendency of an action and the opportunity to respond. *Rio Props.*, 284 F.3d 1007, 1017. All that is required under Rule 4 (f)(3) is that service be "directed by the court" and that the means of service "not be prohibited by international agreement [the Hague Convention]." Fed. R. Civ. P. 4(f)(3). The D. Guam, in affirming the magistrate's approval of email service, held that this means was "sufficient enough to give Fujitsu notice and an opportunity to respond." The Magistrate Judge's Order was neither clearly erroneous nor his legal conclusions contrary to law.

*Nanya Tech.*, 2007 U.S. Dist. LEXIS 5754

Service of process by email is an appropriate method of serving foreign individuals. This is especially so when defendants are "sophisticated participants in e-commerce," and "[Plaintiff] has provided email addresses for defendant and related website addresses through which [defendants] conduct e-commerce," as is the case with this Defendant. *Williams,* 231 F.R.D. at 7487; see also *Chanel, Inc.*, 2010 U.S. Dist. LEXIS 50745 (S.D. Fla. 2010).

The facts in the instant action are similar to that in *Rio Props.*, in which the alternative method of service by email was permitted. Defendant Koonar is *presumed* to be located in either Canada or Italy.  However, attempts to serve process in Canada have failed, and the one address that can be identified in Italy is that of an employment agency, with no obtainable or known connection with Defendant Koonar.  *See*, **Exhibit A**.  Thus, it appears that Defendant Koonar is attempting to hide his precise geographic location, and there is no other way that Defendant Koonar can be reliably served.

More importantly, Defendant Koonar conducts business solely, or largely, using the Internet. Defendant Koonar is technologically advanced and familiar with multitudes of online platforms. This entire case surrounds online media, websites, and infringement via online interaction.  Computer technology is the focal point here, and

no Defendant could argue any lack of use or understanding of email functionality. Moreover, Defendant Koonar's known email address is valid and has been a successful mode of direct communication with Defendant Koonar as recently as two days before this lawsuit was filed. As such, email is the **natural** method for contacting these Defendants. *See, Rio Props.*, 284 F.3d 1017-18 (individuals doing business online were most likely to be reached via email). Alternative service comports with constitutional notions of due process. *Rio Prop s.*, 284 F.3d at 1016. To meet this standard, the method of service must be reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Id* at 1016-17, citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). Courts must adapt to changes and advances in technology and embrace them when they aid in the efficient prosecution of disputes. *Rio Props.*, 284 F.3d at 1017 (quotations omitted). Justice cannot be hamstrung by efforts of defendants to avoid service of process.

The only reason to even consider denying the motion would be if it were prohibited by international agreement. "Rule 4(f)(3) also allows service 'by other means not prohibited by international agreement, as the court orders.'" *In re Potash Anti-Trust Litig.*, 667 F. Supp. 2d 907. 929 (N.D. Ill. 2009) (allowing alternate service when requiring traditional service on foreign defendants would be futile). There is no international agreement with Canada or Italy that prohibits service via email.

The Hague Convention of November 15, 1965 on The Service Abroad of Judicial and Extrajudicial Documents In Civil or Commercial Matters governs foreign service process for signatory nations. *See,* Convention on Service Abroad of Judicial and Extrajudicial Documents In Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 15 No. 6638 (hereinafter "Convention"). Both Canada and Italy are signatories to the Hague Convention.

However, Article 1 of the Hague Service Convention provides that "[t]his Convention shall not apply where the address of the person to be served with the document is not known." Hague Service Convention, Art. 1; *see also, Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Grp.*, No. SA CV 15-0246-DOC (DFMx), 2016 U.S. Dist. LEXIS 43128, at *6-8 (C.D. Cal. Mar. 25, 2016)*; Goes Int'l, AB v. Dodur Ltd.*, No. 14-CV-5666 LB, 2015 U.S. Dist. LEXIS 50394 (N.D. Cal. Apr. 16, 2015) (the Hague Convention does not apply to defendant(s) who lived in China and whose addresses are unknown). The Hague Convention does not, in this case, impede alternative service. Accordingly, Plaintiff requests issuance of an Order permitting service of the Summons and Complaint pursuant to Fed.R.Civ.P. 4(f)(3) and 4(h)(2) by email to David Koonar's known/working email address: producertm@gmail.com.

### IV. CONCLUSION

Defendant Koonar's specific physical whereabouts is unknown. Obtainable physical addresses in Canada and Italy have failed to reach him successfully. Email service is reasonably calculated to apprise Defendant Koonar of the pendency of the action (although his counsel has likely informed him of the pending suit) and afford him an opportunity to appear present objections. It is respectfully requested that AMA be granted leave for alternative service, serving Defendant Koonar at the email address: producertm@gmail.com.

DATED this 27th day of June, 2016.

**MANOLIO & FIRESTONE, PLC**

By: /s/ Veronica L. Manolio
Veronica L. Manolio
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of June, 2016, I electronically transmitted the foregoing document to the Clerk's office using the CM/ECF system for filing *ex parte*.

By: ___/s/ Gina Murphy___