LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona  85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMA Multimedia, LLC, a Nevada limited liability company, | Case No. CV-16-1269-PHX-DGC |
| Plaintiff, | **PLAINTIFF AMA MULTIMEDIA, LLC'S OPPOSITION TO DEFENDANTS GLP 5, INC. AND NETMEDIA SERVICES, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| v. | |
| Sagan, Ltd., a Republic of Seychelles company, individually and d/b/a Porn.com; Cyberweb, Ltd., formerly MXN, Ltd., a Barbados Company, individually and d/b/a Porn.com; NetMedia Services, Inc., a Canadian Company, individually and d/b/a Porn.com; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; David Koonar, an individual, *et. al.,* | |
| Defendants. | |

Plaintiff, AMA Multimedia, LLC ("AMA") hereby opposes GLP 5, Inc. and NetMedia Services, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction.

## I.   INTRODUCTION

The web site Porn.com is clearly targeted and directed towards United States viewers such that the operators of the site have purposefully availed themselves to the United States forum.  The claims herein arise out of this contact with the United States, providing for jurisdiction here.

Defendants have created multiple "companies" which operate crucial and necessary aspects of Porn.com.  This has become nothing more than a "shell game." *See*. **Exhibit A** here, incorporated by this reference.

First, NetMedia operates from Turner Road with phone number 519-987-0600, as does Cyberweb, GIM, and Traffic Force.  Cyberweb owns Porn.com; GIM is part owner of Cyberweb.  GIM operates the Content Partnership Program for Porn.com. Traffic Force provides ad banners for Porn.com.  GIM handles money for Traffic Force. NetMedia maintains Porn.com and Traffic Force.   And, NetMedia's employees are Traffic Force's and/or Porn.com's personnel for operations.

GLP 5 is Traffic Force and an alter ego of NetMedia.  NetMedia is the real operator and alter ego of Traffic Force and Porn.com.  NetMedia falls under jurisdiction of the United States through contacts of Traffic Force and Porn.com.  GLP 5 falls under jurisdiction of Arizona through contacts of Traffic Force.

Defendants assert that their contact with the United States and/or role with Porn.com cannot be aggregated across each of these *supposed* different entities.  They attempt to separate themselves from one another and downplay their roles in order to support their arguments. However, the entities named as Defendants in this lawsuit are, by all appearances, alter egos and/or agents of each other such that their contacts with the forum may be attributed to one another.  NetMedia *is* Porn.com and Traffic Force.

## II.    FACTUAL BACKGROUND

Porn.com is a video streaming site that generates revenue through its Content Partnership Program and advertising banners.  *Declaration of Adam Silverman In Support of Opposition to Motion to Dismiss ("Silverman Decl."),* p 2, ¶ 7.  It is alleged in the First Amended Complaint ("FAC") that NetMedia Services, Inc. is one of several operators and/or owners of Porn.com.  FAC at ¶¶6, 46-47.

Defendant NetMedia Services, Inc. ("NetMedia") admits in its motion that it provides "maintenance" to the web site Porn.com.  NetMedia has not been completely forthright with the Court regarding its entire role with Porn.com – NetMedia is intentionally vague and has a much more significant role in the operation of Porn.com.

NetMedia is located at 1785 Turner Road, Windsor, Ontario, Canada, with a phone number of (519) 987-0600.  *Declaration of Jason Tucker ("Tucker Decl."),* p 3, ¶14.  Cyberweb, GIM, and the management of GLP 5/Traffic Force all share this same number and address, yet the building has a single placard denoting NetMedia at its sole occupant.  *Tucker Decl.,* p 4, ¶15-, 21.  Cyberweb is stated to own and operate Porn.com.[1]  GIM is part owner of Cyberweb.  *See Bradbury Decl.,* p 3, ¶15 (Dkt. No. 27-3).  GIM operates the Content Partnership Program ("CPA") for Porn.com.  *Silverman Decl.,* p 4, ¶22.  Traffic Force provides ad banners for Porn.com.  *Id.* at p 4, ¶21.  GIM handles money for Traffic Force.  *See*, *Declaration of Alexandr Heit ("Heit Decl."),* p 2-3, ¶¶5-9.  NetMedia maintains Porn.com and Traffic Force.  *See* Dkt. No. 27-3 at ¶12.  NetMedia's employees are Traffic Force's personnel for operations.  *Tucker Decl.,* p 5, ¶ 22; *Silverman Decl.,* p 5, ¶¶26-27.

AMA has a Contract with Porn.com and is instructed to mail checks to NetMedia's address.  *Silverman Decl.,* p 2, ¶25.  Representatives of NetMedia, who also work for Traffic Force, began negotiations with Adam Silverman, a managing partner of AMA Multimedia, LLC, for the purchase of web sites.  *Id.,* p 5, ¶26.

Moreover, in the Barbados Claim (and here), NetMedia claims rights through the CPA to the AMA videos posted on Porn.com.  *Id.,* p 2, ¶4.  If NetMedia truly has no relationship to Porn.com, its Barbados Claim and its Request to Stay in this Court are both ***clearly*** in bad faith.

---

[1] While Defendants claim Cyberweb owns/operates Porn.com, both the Porn.com Terms of Service *and* the U.S. Copyright Office list "Sagan Ltd." as its owner/operator.

On June 9, 2016, *after this lawsuit was filed*, the Barbados Claim was amended. The Amended Claim was just served on AMA on August 5, 2016.  The Amended Claim includes an affirmative statement that GIM assigned and granted Netmedia rights to AMA content GIM had under its CPA.   The Amendment also expanded Netmedia's stated role, explaining that Netmedia has a technical services agreement to for maintenance *and operation* of Porn.com, including programming and design. Further, it is also specifically stated that Netmedia's role relates to **uploading content** to the web sites.  *Id.,* p 6, ¶ 30-33; *see also*, Amended Claim cited in *Silverman Decl*.

Further, when AMA signed up for the CPA for Porn.com, there was direct contact regarding the CPA from Ross Allan, using a Netmedia email address and the phone number (519) 987-0600.  These emails make clear that Mr. Allan, on behalf of Netmedia, *is operating* Porn.com.  *Id.,* p 6, ¶29.

The logical and obvious conclusion is that NetMedia is the "umbrella" under which Cyberweb and GLP 5 operate and/or own Porn.com and TrafficForce.com in conjunction with others – as it has tacitly admitted by asserting rights to videos posted on Porn.com through the CPA.  Also, Phil Bradbury holds all official positions of GLP 5, while GLP 5 has no employees, and Mr. Bradbury lists himself as a Vice President of NetMedia.[2]  *Id.,* p 5, ¶ 28.  **All of these entities are alter egos of one another -- not separate, unrelated entities.**

Porn.com has *significant* contacts with the U.S.  The listed owner of Porn.com is Cyberweb Ltd., a company registered in Barbados.  The company's corporate filings in Barbados specifically state that the business of Cyberweb is "Internet Marketing" with the "company primarily in the USA."  *Id.,* p 5, ¶ 25, Ex. D.

---

[2] Defendants have produced internally-executed documents, after the fact, alleging that Phil Bradbury holds all of these positions.  The State of Michigan shows Defendant Koonar as holding these positions, and he too, is an executive of NetMedia Services.

U.S. viewers are the predominant viewers of Porn.com.  The site received 52.2 million visits between January and June 2016, and **U.S.** internet users were by far the largest source of viewers, comprising 23.26% of the 52.2 million viewers.  (The second largest was Germany at 7.99%.)  *Tucker Decl.,* p 5, ¶ 26-27.

Porn.com utilizes hosting through a U.S. company in Massachusetts called Reflected Networks and/or Swiftwill Inc.[3]  The HTML, or code, of Porn.com is hosted through Viking Host B.V., on servers in Amsterdam.  Viking host is either an alter ego or reseller of Swiftwill and/or Reflected, and relies on Swiftwill for its IPs and connectivity.    *Silverman Decl.,* p 2-3, ¶ 8-13.  However, the actual videos displayed to U.S. viewers are ***distributed from servers located in the U.S.*** Through Reflected, Porn.com utilizes a Content Delivery Network ("CDN"), Limelight, ***located in Arizona***, to distribute the Porn.com videos.  *Id.,* p 3, ¶¶14-16.   It is Limelight's Arizona and U.S.-based servers that distributed the infringed videos.[4]

Porn.com, through its CPA, has significant ties to U.S. content producers. Porn.com displays advertisements from U.S. companies that are geo-targeted to U.S. viewers. *Tucker Decl.,* p 6, ¶ 28.  Porn.com utilizes a U.S.-based DMCA Agent, and Porn.com's Terms of Service specifically references U.S. users.  *Tucker Decl.*, p 3, ¶ 11, p 6, ¶ 29.

GLP 5, at all relevant times, is represented to be TrafficForce.com.  In direct contradiction to GLP 5's representations here, Traffic Force's own Terms of Service (publically available on its website) *specifically states that GLP 5 **IS** Traffic Force.*[5]

---

[3] Swiftwill and Reflected.net are part of the same family of companies, with similar, if not identical ownership.

[4] TrafficForce.com is also hosted by Reflected, in the U.S.  *Silverman Decl.,* p 3, ¶ 17.

[5] Since the filing of this lawsuit, Traffic Force's Terms of Service has changed, now indicating that GLP 5, Ltd. is Traffic Force.

Traffic Force's business is to place banner ads for clients on Internet video streaming sites.  This requires a relationship with the entity desiring a banner ad and a video streaming site where the ads will be displayed.  *Silverman Decl.,* p 4, ¶ 18-20. Traffic Force both **solicits** and **conducts** business in Arizona, including having entered into a contractual relationship to display banner ads on a video streaming site based in Arizona.  *Tucker Decl.,* p 6-7, ¶ 30-35; *Heit Decl.,* p 2-3, ¶ 5-9.  These banner ads, used by Traffic Force, are the subject of GLP 5's inclusion in this suit.  *Id.*

Traffic Force sends representatives, who are employees of NetMedia, to an industry trade show called *The Phoenix Forum* held yearly in Phoenix.  *Tucker Decl.,* p 6, ¶31. At this trade show, Traffic Force solicits U.S. **and** Arizona-based content producers and web site owners to utilize Traffic Force for the placement of banner ads on video streaming sites on behalf of the content producers.  *Id.,* p 6-7, ¶ 32-35.

At times material to the allegations in the FAC, Traffic Force has had a relationship with Oppenheit, LLC, an Arizona company, to place banner ads on the a video streaming site, Shooshtime.com, owned and operated by Oppenheit, LLC.  *Heit Decl.* p 2-3, ¶ 5-9.  Traffic Force paid Oppenheit, LLC nearly $6,000 per month to display its banner ads on shooshtime.com.  *Id.*  Payments for placement of Traffic Force's banner ads came from GIM Corp. – the same company as listed in the asserted CPA as the basis for rights to use AMA's content on Porn.com.  *Id.*

## III.   LEGAL ARGUMENT

Personal jurisdiction "is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).  The plaintiff bears the burden of establishing that a court has personal jurisdiction over a defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  The plaintiff is "obligated to

1   come forward with facts, by affidavit or otherwise, supporting personal jurisdiction."

2   *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). There is no

3   statutory method for resolving this issue; thus, "the mode of its determination is left to the

4   trial court." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

5   If a court decides to rule on personal jurisdiction without an evidentiary hearing, a

6   plaintiff must make only a *prima facie* showing of jurisdictional facts to survive the

7   motion. *Bauman v. DaimlerChrysler Corp.*, 644 F. 3d 909, 919 (9th Cir. 2011).

8   The "uncontroverted allegations in [plaintiff's] complaint must be taken as true, and

9   conflicts between the facts contained in the parties' affidavits must be resolved in

10   [plaintiff's] favor" to determine if Plaintiff has established a *prima facie* showing. *See,*

11   *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

12   There is specific jurisdiction over both NetMedia, under the federal long-arm

13   statute and GLP 5, under Arizona's long-arm statute. The standards applied to

14   Fed.R.Civ.P. 4(k)(2) jurisdiction over NetMedia are the same as the standards applied

15   to Arizona's long-arm statute for jurisdiction over GLP 5. Analysis of the federal long-

16   arm statute is coextensive with Arizona's.  *See*, Ariz.R.Civ.P. 4.2(a); *Doe v. Am. Nat'l*

17   *Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997); *Schwarzenegger*, 374 F.3d at 800.

18   **A.     NetMedia Services, Inc.**

19   NetMedia is subject to personal jurisdiction under FRCP 4(k)(2), often referred to

20   as the federal long-arm statute. *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1159 (9th Cir.

21   2006). FRCP 4(k)(2) provides that:

22   
23   > For a claim that arises under federal law, serving a summons or filing a
> waiver of service establishes personal jurisdiction over a defendant
24   > if: (A) the defendant is not subject to jurisdiction in any state's
> courts of general jurisdiction; and (B) exercising jurisdiction is
25   > consistent with the United States Constitution and laws.

26

A court may exercise jurisdiction over a defendant where (1) the claim arises under federal law, (2) the defendant is not "subject to the personal jurisdiction of any state court," and (3) the exercise of personal jurisdiction comports with due process. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). AMA's claims here arise under federal law, and NetMedia is not subject to personal jurisdiction of any state court. The only dispute jurisdiction over NetMedia is whether the exercise of personal jurisdiction comports with due process.

Due process requires that a nonresident defendant have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Data Disc*, 557 F.2d at 1287. "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] and the forum state, we consider contacts with the nation as a whole." *Holland*, 485 F.3d at 462.

Courts recognize two bases for personal jurisdiction within the confines of due process: (1) general jurisdiction, which permits the forum court to exercise jurisdiction over the defendant in all matters; and (2) specific jurisdiction, which arises out of the defendant's contacts with the forum giving rise to the subject litigation. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011); *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 30 1-02 (9th Cir. 1986). The Ninth Circuit Court of Appeals articulated the following three-prong test for finding personal jurisdiction:

> (1)   The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable. *Schwarzenegger*, 374 F.3d at 802.

- 8 -

"The plaintiff bears the burden of satisfying the first two prongs of the test." If the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.,* 374 F.3d at 802.

Where separate companies exist on paper, but their involvement in a common enterprise is sufficiently entwined such that they are alter egos of each other or sufficient agents of each other, the contacts in a forum of that common enterprise may be attributed to each entity.  *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134-35 (9th Cir. 2003).

To satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a *prima facie* case "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Doe, I*, 248 F.3d at 926 (edits in original), quoting *AT&T Co.*, 94 F.3d at 591. The plaintiff must show that the parent exercises such control over the subsidiary so as to "render the latter the mere instrumentality of the former." 248 F.3d at 926 (quoting *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995)).

To satisfy the agency test, the plaintiff must make a showing that the subsidiary represents the parent corporation by performing services "sufficiently important to the [parent] corporation that if it did not have a representative to perform them, the [parent] corporation . . . would undertake to perform substantially similar services." *Chan v. Soc'y Expeditions*, 39 F.3d 1398, 1405 (9th Cir. 1994), quoting *Wells Fargo,* 556 F.2d at 423. The agency test permits the imputation of contacts where the subsidiary was "either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself." *Chan*, 39 F.3d at 1405-06, n.9 (other citations omitted).

For purposes of jurisdiction, a general agent exists when the agent provides services beyond "mere solicitation" and these services are sufficiently important to the other corporation that if it did not have a representative to perform them, the corporation's own officials would perform substantially similar services. *Chan* at 1405.

NetMedia, Cyberweb, GIM, and GLP 5 are clearly intertwined. Each perform a critical role in the operation of Porn.com and Traffic Force such that they are agents in the ventures and/or alter egos of each other. Each operates from NetMedia's location, using NetMedia's phone number. They share common employees, representatives, officers, and ownership. Netmedia, by its own admission in the Barbados Claim, operates Porn.com. Not only has GIM granted Netmedia rights to AMA's content under the CPA, but Netmedia employees are innvolved in all aspects of Porn.com.[6]

**B.     GLP 5, Inc.**

Where there is no applicable federal statute governing personal jurisdiction, the court applies the law of the state where the district sits. *Schwarzenegger*, *supra,* at 800. Such is the case here regarding GLP 5. Arizona's long-arm statute is co-extensive with federal requirements, and the jurisdictional analysis under Arizona law and federal due process are the same. *See* Ariz. R. Civ. P. 4.2(a); *Doe, supra,* 112 F.3d at 1050.

"The due process clause of the Fourteenth Amendment requires that the defendant must have minimum contacts with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1194 (9th Cir. 1988); *Int'l Shoe, supra.* Here in the Ninth Circuit, specific jurisdiction may be exercised if: (1) the defendant purposefully avails himself of the privileges of conducting activities in the forum,

---

[6] To the extent that the Court deems insufficient facts regarding the true relationship between the entities involved with Porn.com, AMA has contemporaneously filed a motion for jurisdictional discovery.

thereby invoking the benefits and protections of its laws, or purposely directs conduct at the forum that has effects in the forum; (2) the claim arises out of the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, *i.e.,* it is reasonable. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (other citations omitted).

Again, when Plaintiff establishes the first two elements of this test, the burden shifts to Defendants to '"present a compelling case" that jurisdiction is unreasonable. *Schwarzenegger*, 374 F.3d at 802, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

The same jurisdictional standards apply to GLP 5 as NetMedia.

**C.    Purposeful Direction**

First, AMA must establish that the defendants purposefully availed themselves of the privilege of conducting activities here *or* purposefully directed activities toward the forum. *Id.*. These two inquires are often equated to '"purposeful availment,' . . . but availment and direction are, in fact, two distinct concepts." *Id.* (citations omitted). An analysis of purposeful availment of privileges of the forum state typically centers on the defendant's actions in the forum state and is usually analyzed in connection with contract disputes. *Id.* An analysis of purposeful direction, on the other hand, is typically used in tort suits and *normally centers on actions performed outside the forum that are directed toward the forum. Id.* at 802-03.

For intentional torts, the Ninth Circuit Court applies the *Calder* effects test in examining purposeful direction of a defendant's activities toward a forum. *See Calder v. Jones*, 465 U.S. 783, 788-90 (1984); *Dole Food Co., Inc. v.* Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).   Here, AMA's copyright infringement claims are properly analyzed under *Calder* test.  *See, Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010); *Rio*, 284 F.3d at 1019-20.

Purposeful direction under the *Calder* effects test "'requires that the defendant allegedly have 1) committed an intentional act, 2) expressly aimed at the forum state, 3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Schwarzenegger*, 374 F.3d at 803.  Purposeful availment found if "business activities reach out beyond one state and create continuing relationships and obligations." *Travelers Health Ass'n v. Cmnwlth of Va*, 339 U.S. 643, 647, 70 S. Ct. 927 (1950).

### 1. Intentional Act

NetMedia, as an owner and/or operator of Porn.com, has acted intentionally by obtaining AMA videos without authority and displaying the videos on Porn.com under the guise of being posted by third parties.  The FAC alleges NetMedia to be one of the owners and operators of Porn.com.  While NetMedia attempts to minimize its role by stating it only "performs maintenance" on the site, evidence illustrates a much larger/more significant role in operating Porn.com, including sharing an address and phone number with other operators of Porn.com and collecting money for Porn.com.

Further, NetMedia has, in two separate judicial forums, claimed rights to AMA's videos under the Porn.com CPA.  First, in its filing in Barbados, NetMedia overtly asserts rights to AMA videos pursuant to a CPA that AMA signed in 2012 regarding Porn.com.  Second, in this instant motion, NetMedia confirms this by seeking a stay of proceedings until the Barbados action has been resolved – specifically asserting the CPA governs AMA's allegations of infringing use of AMA's videos. NetMedia's position that it has a tangential and non-substantive role with Porn.com directly contradicts its claim to have rights to AMA's videos under the CPA.  Either NetMedia has no real role with Porn.com *or* NetMedia is sufficiently connected to Porn.com such that it has rights under the CPA.  NetMedia cannot claim that these clear conflicting positions are merely two alternative theories of a defense herein.  NetMedia made **affirmative** claims as a Plaintiff in the Barbados Claim, asserting that it has rights to

1  AMA's videos under Porn.com's partnership program/CPA, and this clearly establishes
2  NetMedia's role in operating (and likely owning part of) Porn.com

3        NetMedia's clear connection with the other known operators of Porn.com,
4  including sharing an office, business phone numbers, and collecting monies related to
5  Porn.com *and* NetMedia's claims to rights to AMA's videos through the CPA are
6  reasonable support to allegations that NetMedia owns and operates Porn.com.  The
7  owners/operators' intentional acts are clear: they scoured the Internet to collect AMA
8  videos, posted the videos on Porn.com, and then disguised the posted videos.

9        Traffic Force, as operated by GLP 5, then sends representatives to Arizona to
10  solicit business.  Traffic Force entered into a contract with an Arizona company,
11  Oppenheit LLC, to display banner ads on its site Shooshtime.com.  Traffic Force sent
12  Oppenheit nearly $6,000 to display its banner ads.  The banner ads are the substance of
13  AMA's copyright claims against GLP 5.  Thus, GLP 5 has intentionally entered
14  contractual relations with Arizona businesses for display of its banner ads.

15        Intent under the *Calder* effects test is construed as "an intent to perform an actual,
16  physical act in the real world, rather than an intent to accomplish a result or
17  consequence of that act." *Schwarzenegger*, 374 F.3d at 806.  Operation of a website
18  constitutes an intentional act.  *Brayton, supra,* 606 F.3d at 1129 ("operating a passive
19  website was an intentional act."); *see also*, *Datatech Ent. LLC v. FF Magn at Ltd.*, No. C
20  12-04500 CRB, 2012 WL 4068624, at *2 (N.D. Cal. Sept. 14, 2012) ("The intentional act
21  element is broadly construed, and can be met by the mere operation of a website ....").

22        Here, NetMedia's intentional acts are even clearer.  It sought AMA's videos
23  on other streaming sites across the Internet, captured these videos, and then posted
24  them on Porn.com disguised as third-party uploads.  NetMedia **does not deny**
25  these acts.  Equally, Traffic Force/GLP 5 paid an Arizona entity to display banner
26  ads.

1

2        **2.**        **Express Aiming**

Porn.com is expressly aimed at the U.S. First, Cyberweb, one of the owners of Porn.com, specifically stated in its Barbados Claim that the business is "primarily in the USA." Second, the primary visitors to Porn.com are U.S. residents, comprising 23.26% of Porn.com's viewers in the past 6 months. Third, Porn.com is hosted, in part or wholly, by Reflected and/or Swiftwill, a Massachusetts company, and it utilizes a CDN which is comprised of Limelight servers located in Arizona and throughout the U.S.,[7] from which the infringed videos were distributed. Fourth, Porn.com has relationships with U.S. content producers through its Content Partnership Program, and with U.S. advertisers who direct advertisements to U.S. viewers. Fifth, Porn.com geo-targets its advertising to U.S.-based users, including residents of Arizona. Sixth, Porn.com has a U.S.-based DMCA agent, showing it seeks protection under U.S. laws.

In the past, courts "have struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed." *See Mavrix Photo, Inc. v. Brand Techs. Inc.*, 647 F. 3d 1218, 1229 (9th Cir. 2011). The Ninth Circuit Court of Appeals has held that while "maintenance of a passive website alone cannot satisfy the express aiming prong ... operating even a passive website in conjunction with 'something more'— *conduct directly targeting* the forum—is sufficient." *Id.* (Emphasis added.) To determine that "something more," the Ninth Circuit considers "the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Id.*

The Ninth Circuit has found that the number of visitors to a site from a particular

---

[7] Defendants' do not deny the use of Arizona-based Limelight Networks, nor the use of Arizona-based servers in the delivery of the infringed material. Instead, they simply state they are not involved in a direct contractual relationship with Limelight.

forum is relevant to the express aiming inquiry. *Mavrix* at 1230 (concluding that there was express aiming at California, where, "[a] substantial number of hits to [defendant's] website came from California residents.")  That Court has also found it "most salient the fact that [a defendant] use[s] [a plaintiff's] copyrighted photos as part of its exploitation of the [forum] market for its own commercial gain." *Mavrix*, at 1229.  The relevant inquiry is whether the third-party advertisements demonstrate that Defendant exploited the U.S. market for commercial gain. *Id.*

In *Mavrix*, the court considered specific personal jurisdiction where the plaintiff alleged infringement by the defendant for "posting its copyrighted photos on its website." *Id.* at 1221.  The defendant operated an interactive website on which visitors could post comments, vote in polls, join a membership club, and "submit news tips and photos of celebrities." *Id.* at 1222.  The court noted that an Internet tracking service ranked the website "as number 3,622 out of approximately 180 million websites worldwide based on traffic." *Id.* Here, Porn.com is ranked 536 globally, 328 in the U.S., and 23.26% of its visitors are from the U.S.

The *Mavrix* Court pointed out that while defendant's website courted a national audience, the defendant made "money from third-party advertisements" for California activities and had "agreements with several California businesses," including an Internet advertising agency and a wireless provider to host a version of the site. *Id.*[8]

---

[8]  The *Mavrix* court specifically stated:

> [Defendant] makes money by selling advertising space on its website to third-party advertisers: the more visitors there are to the site, the more hits that are made on the advertisements; the more hits that are made on the advertisements, the more money that is paid by the advertisers to [defendant]. A substantial number of hits to [defendant's] website came from California residents. One of the ways we know this is that some of the third-party advertisers on [defendant's] website had advertisements directed to Californians. In this context, it is immaterial whether the third-party advertisers or [defendant] targeted California residents. The fact that the advertisements

1    Here, Porn.com utilizes a DMCA agent in Michigan, has Partnership Agreements

2    with U.S. content producers, advertising relationships with U.S.-based advertisers

3    directing ads at U.S. viewers, which account for the user's location.  Porn.com is also

4    hosted in the U.S. and distributed infringed videos to U.S. viewers through Limelight's

5    U.S. and Arizona-based servers.   Moreover, one of the owners of Porn.com has

6    specifically stated that its business is primarily in the U.S.  Porn.com individually

7    targeted AMA for a contractual agreement, knowing AMA resided in the U.S.

8    NetMedia is an owner or operator of Porn.com.  Based on Porn.com's subject

9    matter, size and commercial value of the U.S. market, its direct relationship with U.S.

10   content-producers, and its utilization of U.S. hosting companies and CDNs, NetMedia

11   anticipated, desired, and achieved a substantial U.S. viewer base.  NetMedia knew they

12   were cultivating a U.S. market and desired to do so.  *See Mavrix*, 647 F.3d at 1230.

13   The fact that Porn.com has a DMCA agent (and that the site advises viewers of

14   procedures to make complaints of U.S. copyright infringement) suggests that it was aware

15   that its websites "exploited (and threatened) U.S. copyright interests." *See Datatech*, 2012

16   WL 4068624, at *3 (granting a preliminary injunction, concluding there was a reasonable

17   probability that plaintiff (a pornography producer) could establish personal jurisdiction

18   under FRCP 4(k)(2) where defendant's file-sharing website received "a 'substantial

19

20                    targeted California residents indicates that [defendant] knows—
                      either actually or constructively—about its California user base, and
21                    that it exploits that base for commercial gain ....

22   *See Mavrix*, 647 F.3d at 1230.  *See also, IO Group, Inc. v. Jordon*, 708 F. Supp. 2d 989,
23   992-93, 995, 997 (N.D. Cal. 2010) (concluding express aiming and personal jurisdiction in
     copyright infringement action where defendant owned and operated a website where users
24   could view, copy, upload, and download photographs and moving pictures, stating that
     "[a]lthough [d]efendant does not charge users . . . , the site is a commercial venture as
25   [d]efendant earned revenue from advertisements that appeared on the site").  The same
26   legal analysis applies to the advertisements done on Porn.com.

- 16 -

number of hits' from the United States and directly profited from those hits" and where "several features of the website's operation and Terms of Service demonstrated an awareness that the website exploited (and threatened) U.S. copyright interests").

Based on Porn.com's numerous and various contacts with the U.S., the substantial amount of traffic from U.S. residents, and the fact that Porn.com profits–whether directly or indirectly–from advertising that targets U.S. residents, AMA has sufficiently established a *prima facie* case of express aiming at the U.S. *See Mavrix*, 647 F.3d at 1231.

Regarding GLP 5, the analysis is quite simple.  Traffic Force appears at trade shows in Arizona to solicit business to display banner ads on video streaming sites. Traffic Force entered into an agreement with an Arizona company to display its banner ads and paid the Arizona company to display banner ads on the video streaming site owned and operated by the Arizona company (operated from Arizona.)  GLP 5's own Terms of Service admits that Traffic Force is GLP 5.  Thus, there can be no question that GLP 5 has expressly aimed its service of displaying banner ads to the Arizona forum, making a strong (not just *prima facie*) showing for personal jurisdiction.

### 3.      Harm in the Forum

AMA is a U.S. company, seeks United States viewers for its paid membership web sites, and has protected its videos through U.S. copyright registrations.  AMA's videos infringed on Porn.com were displayed in the U.S.  AMA has adequately alleged that it has suffered harm in the U.S. as a result of Defendant's actions, meeting the *Calder* test.

Similarly, GLP 5 entered into contract with an Arizona company to display banner ads on Oppenheit's video streaming site.  GLP 5's banner ads are the subject of AMA's copyright claims.  Given that these ads were contracted to be displayed on an Arizona company's video streaming site, the harm occurred in Arizona.

1

2
**C.      Arises Out of Defendant's Forum-Related Activities**

3        AMA must also show that its claims arise out of or relate to Defendants' forum-

4  related activities. *Schwarzenegger*, 374 F.3d at 802. A claim arises from forum-related

5  activities if the plaintiff "would not have been injured 'but for'" the defendant's conduct

6  directed toward the forum. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th

7  Cir. 1998). The "'arising out of' requirement" should not be read restrictively; rather, the

8  "but for" test merely "preserves the requirement that there be some nexus between the

9  cause of action and the defendant's activities in the forum" and "preserves the essential

10 distinction between general and specific jurisdiction." *Shute v. Carnival Cruise Lines*,

11 897 F.2d 377, 385 (9th Cir. 1990), *overruled on other grounds by* 499 U.S. 585.

12       AMA is a U.S. company (Las Vegas, Nevada), with U.S. servers to broadcast its

13 U.S. copyrighted videos to its U.S. based paying members.  Defendant NetMedia is one

14 of the owners and operators of Porn.com and/or Traffic Force which are hosted by a

15 U.S.-based webhosting provider and distributed the infringed videos to U.S. viewers

16 through Limelight's U.S. and Arizona-based servers.  Porn.com is targeted to U.S.

17 viewers, with U.S. based advertisers.   Moreover, Defendant NetMedia has taken

18 AMA's copyrighted videos without authority and disguised them on Porn.com.

19       AMA has been harmed in the U.S. because Defendant NetMedia targeted the

20 U.S. and caused AMA's copyrighted works to be displayed and viewed on its sites.

21 AMA's injury in the U.S. stems from the substantial amount of traffic to Defendant's

22 websites, including by viewers in the U.S.  Thus, AMA's claims arise out of Defendant's

23 U.S.-related activities on and through Porn.com. *See Mavrix*, 647 F.3d at 1228; *Rio*, 284

24 F.3d at 1021.

25       Regarding GLP 5, AMA's claims also rise out of forum-related activities

26 because GLP 5 contracted with an Arizona company to display Traffic Force banner

ads, which banner ads are the subject of AMA's copyright claims.  GLP 5 is serving these ads out to Arizona residents.

**D.     Reasonableness**

Where the first two requirements of specific personal jurisdiction are met, "in order to satisfy the Due Process Clause, the exercise of personal jurisdiction must be reasonable"; that is, "it must comport with 'fair play and substantial justice.'" *Panavision*, 141 F.3d at 1322 (quoting *Burger King*, 471 U.S. at 476). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see also Schwarzenegger*, 374 F .3d at 802. In determining reasonableness, courts consider seven factors:

> (1)     the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Rio*, 284 F.3d at 1021.

Here, all seven factors support exercising jurisdiction over NetMedia and GLP 5, Inc. and Defendants failed  to present a compelling case that jurisdiction is unreasonable.

First, as an owner and operator of Porn.com, NetMedia has extensively interjected in the forum.  GLP 5 has also purposefully interjected in to the forum, appearing in Arizona to solicit business and then entering into a contract with an Arizona company to display the banner ads at issue in AMA's claims.

Second, it is disingenuous for NetMedia and GLP 5 to argue a substantial burden to litigate this matter in Arizona when they filed an action in Barbados.  Defendants argue that the lack of employees in Arizona makes it "extremely burdensome and costly"

1    to travel to the U.S. for trial and other proceedings, but they have no employees in
2    Michigan or Barbados either.  They fail to explain how **Barbados** is less costly or more
3    burdensome than Arizona.  It seems obvious that travel to Arizona from Canada will be
4    less costly and burdensome than travel to Barbados.[9]

5          Third, Defendant NetMedia Services fails to explain why Canada has more
6    compelling interest in governing actions in the U.S. which violate U.S. copyright laws.
7    GLP 5 has admittedly no employees at all in Michigan and none of the alleged actions
8    occurred in Michigan.  Rather, GLP 5 actually operates from Canada and has entered
9    into agreements with Arizona-based companies to display banner ads at issue.

10         Fourth, Defendants fail to explain why this forum does not have a particular
11   interest in adjudicating this dispute.  U.S. District Courts certainly have significant
12   interests in resolving disputes of U.S. copyright infringements by foreign defendants.  By
13   NetMedia operating Porn.com in the U.S., and GLP 5 entering contracts with Arizona
14   companies, this District Court can surely demonstrate a particular interest in this case.

15         Fifth, Defendants argue a lack of judicial efficiency here, arguing that no party is
16   located in Arizona.  Defendants then offer Barbados as a more judicially efficient forum.
17   None of the parties here are connected whatsoever to Barbados, and Barbados is
18   significantly further than Arizona.  Most importantly, the videos displayed in this case
19   were served from Content Delivery Network Limelight, **located here in Arizona**.  The
20   harm occurred in Arizona.

21         Sixth, since the servers that display AMA's content are located here in Arizona, as
22   the Content Delivery Network servers are through Limelight with headquarters in
23   Arizona, Arizona is the most convenient forum to obtain effective relief.  These servers
24   are more easily accessed in discovery, which would then be governed by this Court.

25   _____

26   [9] It can also be noted that Defendants' counsel is located in Los Angeles, **California** – a
far more convenient distance from **Arizona** than to Barbados.

Seventh, Defendants Barbados as an alternative based upon a Content Partnership Agreement between AMA and GIM.  Not only is GIM not a party to this litigation (and the Defendants here are not party to the Content Partnership Agreement), but if it were determined that the CPA does not govern AMA's allegations, the Barbados court does *not* have jurisdiction over the parties to address AMA's copyright infringement.

## III.   CONCLUSION

For the reasons stated herein, AMA Multimedia respectfully requests that the Court deny Defendants' Motion to Dismiss.

DATED this 8th day of August, 2016.

**MANOLIO & FIRESTONE, PLC**

By:   /s/ Veronica L. Manolio
Veronica L. Manolio
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of August, 2016, I electronically transmitted the foregoing document to the Clerk's office using the CM/ECF system for filing.  Copies will be transmitted via CM/ECF to the following recipients:

Erica J. Van Loon
Glaser Weil Fink Howard Avchen & Shapiro LLP
10250 Constellation Blvd.
Los Angeles, CA 90067
evanloon@glaserweil.com
*Attorneys for Defendants GLP 5, Inc.*
*and NetMedia Services Inc.*

By:    /s/ Gina Murphy