LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMA Multimedia, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Sagan, Ltd., a Republic of Seychelles company, individually and d/b/a Porn.com; Cyberweb, Ltd., formerly MXN, Ltd., a Barbados Company, individually and d/b/a Porn.com; Netmedia Services, Inc., a Canadian Company, individually and d/b/a Porn.com; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; David Koonar, an individual, *et. al.*,<br><br>Defendants. | Case No. CV-16-1269-PHX-DGC<br><br>**PLAINTIFF AMA MULTIMEDIA, LLC'S OPPOSITION TO DEFENDANTS GLP 5, INC. AND NETMEDIA SERVICES, INC.'S MOTION TO STAY**<br><br>**(Oral Argument Requested)** |

## I. INTRODUCTION

Plaintiff, AMA Multimedia, LLC (hereinafter "AMA") respectfully requests that this Court deny Defendant's Motion to Stay Proceedings Pending the Outcome of the Barbados Claim. Law governing this Court's discretion to stay proceedings weighs strongly in favor of denial. More importantly, there is a strong potential (and likelihood) that the Barbados Action will not fully resolve this dispute, such that a stay is precluded. Finally, the required "exceptional circumstances" to warrant a stay simply do not exist.

## II. BACKGROUND

Defendants filed the Barbados Claim in bad faith *and* assert a bad faith argument that a Content Partnership Agreement (hereafter "the CPA") permits the infringing activity that is alleged wrongdoing in this case.[1]

The District of Arizona is convenient in comparison to Barbados; Barbados cannot adequately protect the interests of the parties; and, the Defendants have clearly engaged in forum shopping.

Moreover, while Defendants' motion asserts an analysis of the *Colorado River* doctrine, they only address *some* of the factors in the test, trying to tilt the Court to stay. Full analysis of the *Colorado River* doctrine actually supports denying a stay of this case.

Defendants' motion is yet another attempt to delay and avoid being held accountable for their unlawful infringing activities. A stay is not warranted.

### A. Procedural History

In December 2015, with intention to resolve this dispute without litigation, AMA delivered a Draft Complaint and settlement offer to Defendants' counsel. *See, e.g.,* Dkt. 11-1 at ¶6; *see also*, *Declaration of Spencer Freeman In Support of Plaintiff AMA's Opposition to Defendants' Motion to Stay Proceedings ("Freeman Decl."),* p2, ¶ 2. For four (4) months thereafter, Defendants provided a string of delays and misrepresentations about the matters and settlement negotiations. *Freeman Decl.,* p 2, ¶ 3. Then, in early April of this year (2016), AMA provided an Amended Complaint (substantially the Complaint filed in this suit), seeking to move negotiations. *Id*. at ¶ 4.

---

[1] Defendants argue that the 2012 CPA gave them rightful access and a contractual right to pirate all of AMA's copyrighted content, even without approval or knowledge by AMA. Not only is this position disingenuous, but evidence proves that the content was gathered from illegal, pirated copies of Plaintiff's copyrighted works. Defendants cannot contractually benefit from tortious/illegal acts.

- 2 -

By late April, AMA gave the Defendants a hard deadline to choose between accepting a settlement offer or have the case filed in this U.S. District Court, for the District of Arizona. Dkt. 11-1 at ¶¶7-9; *Freeman Decl.,* p 2, ¶ 5. The Defendants pleaded for a week extension of the deadline to contemplate the settlement offer. *Id*. They made this request through its prior counsel as well as David Koonar, himself, sent an e-mail to AMA to seek more time. *Freeman Decl.,* p 2, ¶ 6.; Dkt. 11-1 at ¶¶8-9.

Based upon Mr. Koonar's representations, AMA agreed to an extension, from Monday April 25, 2016 until Thursday April 28, 2016. *Silverman Decl*. at ¶¶ 8-9; Dkt. 11-1 at ¶¶8-9. On April 27, 2016, Mr. Koonar emailed Mr. Silverman confirming that AMA would be waiting until Friday April 29, 2016 to file its action while Mr. Koonar worked on presenting settlement terms. *Id*. That same day, Defendants went and filed the Barbados Claim seeking declaratory relief under the CPA. Id. at ¶ 9; *see also*, Dkt. 11-1, pp. 7-8 of 13 (Copy of the Barbados Claim), on file in this Court. The Barbados Claim is a 2-page complaint that does not contain any clear request for relief. *Id*. The Claim offers no supporting evidence nor even a factual basis. *Id*.

Simply put, Defendants were **well-aware** that AMA was about to file this Arizona District Court case, so they pretended to "need time" for settlement talks while they rushed to file an incomplete Barbados Claim. *Id. all*. AMA immediately filed this action as soon as it learned of the Defendants' deceitful actions.

**1.     Allegations of Complaint In District of Arizona**

Defendant Netmedia Services, Inc. is alleged to be one of several owners and operators of Porn.com. Dkt. 16 (First Amended Complaint or "FAC"), on file here.[2]

---

[2] GLP 5, Inc. has alleged in this litigation that it is merely a credit card transaction company. *However,* Traffic Force's own Terms of Service, posted on the Traffic Force web site, *specifically states* that GLP 5, Inc. is Traffic Force. (Since this lawsuit, GLP 5, Inc. has become GLP 5, Ltd. Similarly Traffic Force's TOS has changed to state that GLP 5, Ltd. operates Traffic Force.)

- 3 -

1 AMA further alleges that the same owners and operators of Porn.com own and operate
2 GLP 5, Inc., which does business as Traffic Force. *Id*. NetMedia is alleged to have
3 obtained AMA's *full length videos* and displayed them on Porn.com without authority.
4 *Id*. These videos were obtained by Defendants' scraping, or aggregating on their own,
5 illegal, pirated videos posted on other video streaming websites in the industry. *Id.* at
6 ¶¶90-92. These videos were then misrepresented on Porn.com to have been uploaded by
7 third party users. Investigation into the site revealed that these purported uploaders **did**
8 **not exist.** Dkt. 16. Rather, the Defendants obtained and displayed the videos. *Id*.

9 Defendants' concealment of its acts illustrates their awareness of their unlawful
10 actions. The action of presenting fake "uploader" information was to enable Defendants
11 to later claim DMCA safe harbor protections. If a user attempted to download any of the
12 infringing videos or watch the videos in High Definition, the user was prompted to
13 become a paying Premium Member of Porn.com. FAC (Dkt. 16) at ¶62-66.

14 Defendant GLP 5, Inc. does business as Traffic Force, and is alleged to be owned
15 and operated by the same persons/entities that own and operate Porn.com. *Id.* at *¶*94.
16 Traffic Force utilized AMA's copyright works obtained by Defendants surreptitiously.
17 *Id*. at ¶98. These advertiser banners were not only displayed on Porn.com, but also other
18 sites that utilize the services Traffic Force. *Id*. at ¶99.

19 **2.    Defendants' Actions Since This Complaint was Filed**

20 Since this action was filed, the Defendants have engaged in a corporate shuffle by
21 systematically changing their corporate and business structures. *Silverman Decl.,* p 7-8,
22 ¶¶ 35-42. At the time that this lawsuit was filed, GLP 5, Inc. was a Michigan company
23 operating Traffic Force. Now, Traffic Force is operated by "GLP 5, **Ltd**.," a Seychelles
24 Corporation. *Silverman Decl.,* p 7, ¶¶ 38-39. At the time that this lawsuit was filed,
25 NetMedia Services had an active web site, www.netmsi.com, with a Canada address.
26 Now, netmsi.com is offline. *Silverman Decl.,* p 7, ¶ 40.

Finally, the operation and/or ownership entity of Paidperview.com, Defendants' content partnership program for Porn.com, has changed. At the time of filing, the content partnership program was operated by G.I.M. Corporation, a Barbados corporation. Now, Paidperview.com is operated by Foshan Limited, another Seychelles corporation. Post-litigation, Defendants are feverishly attempting to switch all contracts away from G.I.M. Corporation to Foshan Limited. *Silverman Decl.,* p 7-8, ¶¶ 41-42.

### 3. The Bad Faith Barbados Action

Defendants filed the action in Barbados in a last-minute fashion after manipulating AMA into granting a few days' extension. (Despite that Defendants had actually been provided the original draft Complaint 4 months prior.) The claim filed by Defendants in Barbados was done contrary to Barbados law and procedure. *Declaration of Karen Perreira In Support of Plaintiff AMA's Opposition to Defendants' Motion to Stay Proceedings ("Perreira Decl."),* p 3, ¶ 9

In this Court, Defendants argued that Adam Silverman was avoiding service of the Barbados Claim. Contrary to that suggestion, Mr. Silverman never avoided service. *Silverman Decl.,* p 3, ¶ 15. AMA was finally served on August 5, 2016, and AMA now knows that Defendants **amended** the Barbados Claim on June 9, 2016 – after this lawsuit began. *Silverman Decl.,* p 8, ¶ 45. In the Amended Barbados Claim, Defendants "dropped" GLP 5, Inc. as a party, presumably trying to distance its relationship to Porn.com. *Id*. at ¶ 46. Nonetheless, Defendants amended such that the new claim could **never** resolve issues between the parties here.

The action in Barbados will likely take years to resolve, and the Barbados Court will *not* rule on AMA's United States copyright claims. *Decl. K. Perreira,* p 3, ¶ 10. Importantly, Defendants' assertions that a Content Partnership Agreement governs their actions alleged in the FAC is simply not true, and shows their willingness to distort facts as a means to cover for their blatantly egregious acts of copyright infringement.

- 5 -

### B.     The Content Partnership Agreement

In September 2012, AMA entered into a partnership agreement (the "CPA") with GIM for revenue-sharing for content posted on Porn.com. The Porn.com revenue sharing program was operated by Paidperview.com. An AMA representative signed up by performing an automated process at Paidperview.com. *Silverman Decl.,* p 4, ¶¶ 17-18.

The CPA was entered into by simply clicking a button during the automated signup process on the PaidPerView.com website. The server hosting PaidPerView.com was located in the U.S., and there was no direct contact between AMA and any of the defendants. There were no negotiations regarding any of the CPA terms.

The CPA granted GIM license to use content ***provided by AMA*** for use on web sites "whose advertisements are controlled by" Traffic Force. The CPA included specific provisions that dictated the manner and form which AMA would provide content. *Id.,* p 4-5, ¶ 19-23. The CPA makes it clear that **only the content provided by AMA** and **in the enumerated manner and form stated** in the CPA are licensed to GIM. *Id*.

Paragraph 4.1 of the CPA states explicitly that "Licensor [AMA] shall provided content in a ***mutually agreed form***, Examples of which can be seen in Exhibit 'A'." (Emphasis added.) Exhibit A then required AMA to ***provide*** the content in DVD form *and* to provide all supporting documentation required by 18 U.S.C. 2257. *Id,* p 5, ¶ 22.

Paragraph 4.6 dictates that Licensor (AMA) "shall have the *sole* responsibility for providing" (emphasis added) the content to Licensee in one of the acceptable methods of delivery set forth in Ex. B: File Transfer Protocol (FTP); Physical Copy Delivery; Hard Drive Copy Deliver; and Licensor's Use of PaidPerView Uploader. *Id,* p 5, ¶ 23.

The CPA clearly does **not** grant the Licensee the ability to actively take whatever AMA videos could be located throughout the Internet and use them as if "licensed." That would absolutely contradict Paragraphs 4.1 and 4.6. Defendants' Motion to Stay ignores the whole, material Section 4 in the CPA, suitably titled ***"Provision of Content."***

Pursuant to the CPA, AMA provided Porn.com with limited sample promotional videos to be displayed on Porn.com for the purpose of directing Internet traffic to AMA's paid membership site. *Id.,* p 6, ¶ 26. AMA and the owners/operators of Porn.com shared in the revenue generated by Internet traffic directed to AMA's membership sites through these promotional materials. *Id.,* p 6, ¶ 27.

The limited promotional materials were provided to Porn.com through the methods stated in the CPA. *Id.,* p 6, ¶¶ 28, 33. None of the full length videos alleged as infringed in the FAC were provided to Defendants through these stated methods, none were provide to Defendants by AMA, and none directed Internet traffic to AMA's paid membership web sites. *Id.,* p 6, ¶¶ 29-31.

### C. The Relationship(s) to Barbados

Defendants do not operate in Barbados and do not have any connection to Barbados, other than registration of Barbados foreign corporations (for tax purposes). The videos provided to Defendants by AMA pursuant to the CPA were uploaded via the use of the PaidPerView uploader tool. Plaintiff uploaded the content from its offices in the U.S., and it was received by Defendants' on their servers, also located in the U.S. Payments to AMA pursuant to the CPA were mailed from Canada, drawn on a U.S. bank account. Any payments from AMA to the Barbados corporation(s) were sent to Canada, as AMA was instructed. *Id.,* p 7, ¶ 34.

Not only was the contract not negotiated nor signed in Barbados, none of the actions under the CPA occurred in Barbados, *and* none of the actors under the CPA reside in or are located in Barbados. None of the servers operating either Porn.com or Paidperview.com are located in Barbados. Per the corporation documents, none of the directors of the Defendant companies are located in Barbados. Porn.com displayed the videos through a U.S.-based Content Delivery Network. AMA does not reside or operate in Barbados and had no connection to Barbados.

**III.   LEGAL ARGUMENT**

*Colorado River Conservation Dist. v. United States*, 424 U.S. 800 (1976) provides the governing standard under whether to stay a case based on parallel court proceedings. The Supreme Court recognized that federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them" and could only stay a case based on parallel proceedings under narrow circumstances that require a multi-factor analysis. *Id.* at 817. Parallel proceedings in both state courts and foreign courts may invoke this analysis. *See Neuchatel Swiss General Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193 (9th Cir. 1991).

The *Colorado River* doctrine allows federal courts to abstain from exercising jurisdiction only when "exceptional circumstances" exist. *Colorado*, 424 U.S. at 818.

Defendants argue that the Barbados Claim precludes this suit, stating that a Barbados court ruling in their favor would moot the entirety of the copyright allegations. To apply a *Colorado River* analysis, the initial threshold questions are whether the parallel proceedings are substantially similar, and whether the Barbados Claim could fully resolve the entirety of the claims here.  Defendants ignored these issues entirely.

**A.   The "Parallel Proceedings" Are Not Substantially Similar.[3]**

The threshold question whether stay is potentially appropriate is "whether the state [or foreign] and federal suits are substantially similar." *Le v. County of Contra Costa*, 1999 U.S. Dist. LEXIS 19611, *3 (N.D. Cal. 1999) (citing *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)). This inquiry primarily boils down to whether there is a "substantial doubt that the parallel proceedings will fully resolve the dispute." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993). If the dispute will not be fully resolved if the parallel court decides a certain way, a stay is not appropriate. *Id.*

---

[3] It should be noted that GLP 5 is NOT a party to the Barbados claim.  Therefore, GLP 5 cannot claim a parallel proceeding in Barbados.

- 8 -

A district court should only apply *Colorado River* if it has "full confidence" that the parallel proceedings will end the litigation. *Gulfstream Aerospace Corp. v. Mayacamas Corp*., 485 U.S. 271, 277, 108 S.Ct. 1113, 99 L.Ed.2d 296 (1988); *Intel Corp., supra,* 12 F.3d at 913 (finding a stay inappropriate because "if the state court overturns the arbitration award, then the case will return to federal court for the adjudication of the underlying copyright claims"); *see also, Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, 2012 U.S. Dist. LEXIS 157194, *8 -9 (N.D. Cal. Nov. 1, 2012) (finding that federal copyright claims were not sufficiently similar to unfair competition and false advertising claims in a parallel state action to warrant a stay, even though the state claims arose "from facts related to the copyright allegations.").

The Ninth Circuit Court of Appeals ruling in *Intel Corp*. is instructive on the issue of whether parallel proceedings actually exist, and the case is analogous to this case. There, AMD had previously filed a state arbitration action pursuant to a sourcing agreement which granted AMD rights to Intel products upon certain contingencies. In the arbitration proceedings, AMD claimed rights to use Intel products. Four years into the arbitration proceedings, Intel filed an action in United States District Court alleging copyright infringement for AMD's use of its product. *Id*. 12 F.3d at 910-11.

Several months after the initiation of the federal copyright action, the arbitrator awarded AMD full rights to Intel's product. AMD obtained confirmation of the award in California State Superior Court. Based upon the confirmation of the award, AMD was granted a stay in the federal court copyright action. Intel appealed the stay. *Id*. at 911.

The Ninth Circuit's first inquiry was whether there was substantial doubt that state proceedings would resolve the federal action. *Id.* at 913. The analysis on this issue was clear: If the state court proceedings could be resolved in a manner that rendered further litigation in federal court, a stay under the *Colorado River* doctrine was precluded. Specifically the Court stated:

> The concurrent state court proceedings will resolve all the issues in this action only if the arbitration award is confirmed and if the state court's resolution of the copyright challenge to the award is deemed to have collateral estoppel effect in federal court. In contrast, if the state court overturns the arbitration award, then the case will return to federal court for the adjudication of the underlying copyright claims (having been delayed for the entire period of the stay). A consideration of these contingencies raises the substantial doubt sufficient to preclude a Colorado River stay. *Id.* at 913.

Our case is largely the same. The Barbados Claim would resolve the issues here *only if* the that Court allowed the CPA to be used to steal AMA's content from anywhere, including illegal sources, without AMA's knowledge or specific authority and then use those videos for its own sole financial benefit.

If the Barbados Court were to deny Defendants' position, AMA's copyright infringement claims would revert back to this U.S. District Court. While a foreign court may apply U.S. copyright law, it cannot do so without jurisdiction over the parties.[4] The CPA's forum selection clause is the only link between the parties and Barbados court. If the Barbados Court were to determine that the CPA does not govern AMA's Defendants' use of its videos as alleged in this case, the sole link is gone. Cyberweb & G.I.M. Corp (not a defendant herein) are the only parties registered as Barbados companies, and the remaining three Defendants and Plaintiff AMA have no connection whatsoever with Barbados. There is no other connection to Barbados. Further, and quite importantly, the actions alleged by AMA occurred in the U.S. Absent application of the CPA, the Barbados courts cannot conceivably have jurisdiction over any party and the Barbados Court will not rule on the U.S. copyright claims.[5]

---

[4] *Creative Technology Ltd., v. Aztech System Pte, Ltd.,* 61 F.3d 696 (9th Cir. 1995).

[5] Significantly, the Defendants request a stay so the Barbados Court may determine if the CPA governs AMA's allegations. Defendants do not argue that a Barbados Court could rule on AMA's infringement claims if the CPA does not apply. Tacitly, Defendants agree that if the CPA does not apply, AMA's copyright claims will revert here.

- 10 -

Complicating matters further, Defendants attempt to argue that AMA entered into a jurisdictional agreements with these Defendants. The CPA is only between GIM and AMA. GIM is not a party to this suit, and Defendants here are not parties to the CPA. Just as determined in *Intel Corp.,* considering different contingencies in the Barbados Claim, there is substantial doubt sufficient to **preclude** a *Colorado River* stay.

Defendants cite to two trial court rulings in support for their argument to stay these proceedings, *Seven Arts Pictures PLC v. Fireworks Entm't, Inc*., Case No. 05-cv-2905 (C.D. Cal. Aug. 16, 2005) and *CRC Info. Sys., Inc. v. Quebecor World (USA), Inc*., Case No. 03-cv-0591 (D. Ariz July 21, 2003). However, in both of these cases, the foreign court clearly had jurisdiction over the parties and the entirety of the claims.

In *Seven Arts* the parties entered into a Master Services Agreement ("MSA"). The defendants were Canadian companies and the MSA had a Canadian forum selection clause. Plaintiff's first action in California state court, alleging breach of the MSA, was dismissed pursuant to the forum selection clause and *re-filed by the Plaintiff in Canada*. Plaintiff filed a second action in California state court that was stayed pending the Canadian action. A third action was filed by Plaintiff in U.S. for copyright infringement, alleging essentially the same facts as the previous filings.

There are key jurisdictional facts in *Seven Arts*. Not only was the contract signed in Canada with a Canadian forum selection clause, but the Defendants resided in Canada and the purported breach occurred in Canada. The Plaintiff elected to file its own action in Canada. The Canadian courts clearly had jurisdiction over the parties. In determining that the Canadian court could rule on the entirety of the action, the Court applied *Creative Technology Ltd., v. Aztech System Pte, Ltd*., 61 F.3d 696 (9th Cir. 1995), finding that a Singapore court could apply U.S. Copyright law in a dispute between two Singapore companies – there was no dispute the Singapore Court had jurisdiction over the parties.

The main reason a stay was granted in *Seven Arts* is that the plaintiff's forum-shopping was obvious; while the Canadian case was pending pursuant to a bond needing to be posted by Plaintiff to cover Defendants' legal fees, Plaintiff tried to file similar contract claims in California again. When that was stayed, it then recast its contract claims in terms of copyright (though they were substantively the same) for the purpose of avoiding the Canadian case once again.  The Court reviewed the substance of the copyright claims and determined specifically that they were a contract dispute, stating:

> First and most critically, the Court finds that the case is properly cast as a contract dispute, not a copyright case.  Second, the Canadian action both provides an adequate forum to protect the parties' rights and is likely to dispose of all substantive issues related to the dispute between the parties.  Third, the Court also relies upon the fact that the Plaintiffs chose the Canadian forum to resolve their disputes over two years before filing the instant action.  Finally, the Court wished to avoid piecemeal litigation and conserve judicial resources.

*Seven Arts* at Order Granting Defendant's Motion for Stay, Dated August 16, 2005.

The Court in *CRC v. Quebecor* dealt with a parallel contract proceeding in Canada, with CRC asserting a claim in the U.S. for copyright infringement after the Canadian declaratory proceeding was legitimately started.  A previous claim by CRC under the same facts where it alleged breach of contract and copyright infringement was previously dismissed in the U.S. due to forum *non conveniens*. The trial court was not asked to determine whether the Canadian court could resolve the copyright dispute and did not do any analysis whether contingencies could revert the dispute back to the U.S. Rather, the court found that a stay under *Colorado River* was appropriate because the license agreements at issue had to be governed under Canadian law, and that most of the events surrounding the contract's formation and evidence thereof were in Canada.  It was clear that the Canadian Court had jurisdiction over the parties and over the copyright claims.

1  Our case is strikingly different from *Seven Arts* and *CRC*. The Barbados court simply will not have jurisdiction over the parties or over the copyright claims upon a determination that the CPA does not govern AMA's allegations. And, contrary to Defendants' assertions, this Court may substantively review Defendants Barbados claim. To determine whether *Colorado River* applies, this Court must do exactly what *Seven Arts* did , seeking to find if "the case is properly cast as a contract dispute."

Defendants' attempt to cast this dispute as governed by the CPA is over-reaching and unreasonable at best. Arguing that the CPA provides access to any and all AMA content found anywhere, regardless whether it was provided by AMA, defies strict rules stated in Section 4 of the CPA. Defendants half-heartedly provide this Court an online dictionary definition of the word "provide" without taking into account or even apprising this Court of the provisions of the CPA which govern the manner in which AMA is to provide any content and ***specifically*** makes AMA responsible for ***providing*** the content. Defendants cannot honestly argue that the CPA permits the Defendants the ability to take any AMA content from anywhere on the Internet without AMA's knowledge/authority. No fair/reasonable reading of the CPA gives the Defendants carte blanche access to all of AMA's copyrighted works.

AMA's robust FAC alleges that Defendants scoured the Internet for AMA content displayed on other video streaming sites and took content without AMA's knowledge. Defendants engaged in clandestine acts, hiding the source of the videos by creating fake user profiles or using user profiles from the other sites to misrepresent that these videos were posted on Porn.com by third-party users. Defendants' play of "dress up" on AMA content proves that they **knew** they lacked the rights to AMA's videos/content.

Further, the Barbados Claim will never actually address AMA's copyright infringement, so there is substantial doubt that the Barbados proceeding will end this litigation between the parties. Therefore, a *Colorado River* stay is precluded.

### B. There are No "Exceptional Circumstances" Here.

If this Court finds the *Colorado River* doctrine applies, it must next decide if "exceptional circumstances" exist to warrant abstention. The Supreme Court articulated four factors: (1) whether a state or federal court has assumed jurisdiction over a *res*; (2) the inconvenience of a federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained. 424 U.S. at 818. The Court later added two more considerations in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983): (5) whether state or federal law controls the decision on the merits; and (6) whether state law can adequately protect the rights of the parties. Another factor mentioned by the *Cone* Court was the vexatious or reactive nature of the suit. *Id.* at 17 n. 20. Consequently, federal courts have used that factor in a *Colorado River* analysis. *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 947 F.2d 529, 534 (1st Cir. 1991). The Ninth Circuit also added that forum-shopping should be considered. *American Int'l Underwriters v. Cont'l. Ins. Co.*, 843 F.2d 1253, 1259 (9th Cir. 1988); *Holder v. Holder*, 305 F.3d 854, 870 (9th Cir. 2002).

No single factor of the "exceptional circumstances" test is dispositive, and no mechanical process is applied. *Cone*, 460 U.S. at 16. Rather, "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River* at 818-819. Only the clearest of justifications will warrant dismissal. *Id.* Abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S. Ct. 1060, 3 L. Ed. 2d 1163 (1959).

#### 1. Jurisdiction Over the *Res*

There is no tangible property here, making this factor irrelevant. *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988)

- 14 -

### 2. Convenience of the Federal Forum

This U.S. District Court in Arizona is more convenient than Barbados for all parties. The infringed videos were displayed from servers located in Arizona; Defendants specifically target U.S. viewers. Defendants appear in Arizona at least once a year to solicit business. AMA is a U.S. company located in a neighboring state. Defendants' own counsel is located in Los Angeles, California – much closer here than to Barbados. Stunningly, Defendants ignored this factor in their briefing. While they reside in Canada, they cannot assert that Arizona is any less convenient than Barbados.

### 3. Avoiding Piecemeal Litigation

Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results. *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988).

Defendants argue that the Barbados issues are the same as presented here. Defendants can only make this assertion by clear and unreasonable manipulation of facts. Paragraph 6.1 of the Statement of Claim asserts that the CPA "provide[s] for content that is not submitted directly by the Licensor." A plain reading of the CPA shows that this allegation directly contradicts the CPA. Defendants mis-characterize their unilateral theft of AMA's videos as "permissible" under the CPA to avoid litigation in the U.S.

AMA asserts copyright claims for AMA videos and content that were *not* submitted, provided or made available to Defendants by AMA. Defendants stole content. Defendants should not be permitted to so clearly manipulate facts in order to argue "similarity" of issues. Also, GLP 5 is not a party in Barbados and cannot have "similar" issues.

The Defendants have not alleged in the Barbados Claim that the videos alleged to be infringed in the action were subject to the CPA. And, if the CPA does not apply, Barbados will not have jurisdiction over the parties/copyright claims.

### 4. Order In Which Jurisdiction was Obtained

This factor must be applied in a "pragmatic, flexible manner, so that priority is not measured exclusively in terms of which complaint was filed first, but rather in terms of how much progress has actually been made in the state and federal actions." *American Int'l Underwriters*, 843 F.2d at 1258. The threshold question is whether the Barbados case has substantially progressed beyond initial proceedings. *See Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990).

The Defendants filed their Barbados claim for two days before AMA filed the instant litigation. This was achieved through the Defendants' bad faith, utilizing deceit and manipulation of AMA. Defendants worked expeditiously to file the Barbados Claim only to argue "we filed first." The law is more pragmatic than to reward the deceitful an automatic win on this issue and looks to the progress of each of the actions.

To date, there has been little to no progress in the Barbados claim. Here, AMA has served three of the five Defendants and has sought court intervention on service of the sole individual Defendant. Service on the remaining entity is underway through the Hague. This matter has progressed such that several motions have been filed, and a Scheduling Conference is now set. In the Barbados claim, the first party was served on August 5, 2016. The inept claim form initially filed was amended on June 9, 2016. While this litigation is still young, it has progressed much more than the Barbados Claim, favoring a denial of stay.

### 5. Whether State of Federal Law Controls the Decision on The Merits

Copyright claims are under the exclusive jurisdiction of federal courts. *See Creative Technology, Ltd.v. Aztech System Pte, Ltd.*, 61 F.3d 696 (9th Cir. 1995). While foreign courts may apply U.S. copyright law, if the Barbados court rules against the Defendants, the Barbados court will not have jurisdiction over the parties and cannot rule on AMA's claims for infringing their United States Copyrights.

### 6. Whether Foreign Jurisdiction Can Adequately Protect Parties' Interests

Not one of the parties resides or works in Barbados. None of the actions alleged in **either** lawsuit occurred in Barbados. Defendants are already working towards relocating their business to Seychelles. And, Barbados cannot rule on AMA's copyright claims. It is inconceivable that Barbados courts can adequately protect AMA's interests.

### 7. Vexatious and Reactive Nature of the Federal Claim

The "vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation…." *Cone*, 460 U.S. at 17. Where courts find bad faith, a stay or dismissal may be warranted "as a means to deter vexatious use of the courts." *Holland,* 840 F. Supp. at 1101; *see also Baseline Sports, Inc.v. Third Base Sports*, 341 F. Supp.2d 605, 611-612 (E.D. Va. 2004).

It is clear that AMA did not bring this action in Arizona for a vexatious purpose. To the contrary, AMA drafted an Arizona complaint, delivered it to Defendants **months** before filing in hopes of working out a settlement. AMA genuinely tried to resolve the matter before ever filing this lawsuit. The Barbados Claim is vexatious, not AMA's.

### 8. Forum Shopping

It is also clear that the Defendants are forum shopping to create significant delay in being held accountable for their actions. Defendants were aware of AMA's intention to file this litigation for 4 months before this filing. Upon being presented with a hard deadline to settle or have the matter filed, Defendants begged for an extension to the deadline only to sneak a filing in Barbados. Forum shopping, by itself, is not sufficient to justify a stay under *Colorado River. Federal Deposit Ins. Corp. v. Nichols,* 885 F.2d 633 (9th Cir. 1989).

## IV. CONCLUSION

For the reasons stated herein, AMA respectfully requests that the Court deny Defendants Netmedia and GLP 5's Motion to Stay these proceedings.

- 17 -

DATED this 8th day of August, 2016.

**MANOLIO & FIRESTONE, PLC**

By: /s/ Veronica L. Manolio
Veronica L. Manolio
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of August, 2016, I electronically transmitted the foregoing document to the Clerk's office using the CM/ECF system for filing.  Copies will be transmitted via CM/ECF to the following recipients:

Erica J. Van Loon
Glaser Weil Fink Howard Avchen & Shapiro LLP
10250 Constellation Blvd.
Los Angeles, CA 90067
evanloon@glaserweil.com
*Attorneys for Defendants GLP 5, Inc.*
*and Netmedia Services Inc.*


By: /s/ Gina Murphy