# EXHIBIT A
## Declaration of Adam Silverman

1

LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Plaintiff*

2

3

4

5

6 # IN THE UNITED STATES DISTRICT COURT

7 ## IN AND FOR THE DISTRICT OF ARIZONA

8

9

AMA Multimedia, LLC, a Nevada
limited liability company,

| | |
|---|---|
| | Case No. CV-16-1269-PHX-DGC |

10                    Plaintiff,

11 v.

12 Sagan, Ltd., a Republic of Seychelles
company, individually and d/b/a Porn.com;

13 Cyberweb, Ltd., formerly MXN, Ltd., a
Barbados Company, individually and d/b/a

14 Porn.com; Netmedia Services, Inc., a
Canadian Company, individually and d/b/a

15 Porn.com; GLP 5, Inc., a Michigan Company

16 individually and d/b/a Trafficforce.com;
David Koonar, an individual, *et. al.,*

17

18                    Defendants.

**DECLARATION OF ADAM SILVERMAN IN SUPPORT OF PLAINTIFF AMA MULTIMEDIA, LLC'S MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

19

20 I, Adam Silverman, declare:

21      1.      I am a United States Citizen, over the age of 18 years old, and make this

22 declaration based upon personal knowledge and, if called to testify could and would

23 testify competently to the facts set forth herein.

24      2.      I am the President of AMA Multimedia, LLC, Plaintiff in this lawsuit.

25

26

1  3. As AMA Multimedia, LLC's business is largely online, I am extremely

2 familiar with the operation of websites, including the use of certain vendors to both host

3 websites and display content to viewers.

4  4. On April 27, 2016, Netmedia and GLP 5, among others, filed an action

5 against AMA and myself in Barbados seeking declaratory relief relating to a content

6 partnership agreement.

7  5. Defendants' filing in Barbados was a two-page complaint, within which

8 the requested relief is unclear. The complaint offers no supporting evidence, nor a

9 factual basis for their claims. Attached hereto as Exhibit A is a true and correct copy of

10 the Barbados claim form.

11  6. In the claim filed in Barbados, and again asserted in the instant motion,

12 Netmedia Services claims rights through a Content Partnership Agreement to AMA

13 videos posted on Porn.com.

14  7. Porn.com is a video streaming site that generates revenue through its

15 Content Partnership Program and advertising banners.

16  8. Porn.com is part of a family of websites that includes TrafficForce.com

17 and PaidPerView.com. The websites utilize hosting through a United States

18 company, Reflected Networks in Massachusetts. Reflected.net also does business

19 under the alias "Swiftwill."

20  9. AMA is a client of Reflected.net just as the Defendants are. I am

21 familiar with the company and its services.

22  10. The HTML code, or pages, of Porn.com is hosted through Viking Host

23 B.V.

24  11. The HTML of Porn.com was hosted by Viking Host starting in late

25 2014 (approximately October 2014). Prior to that it was hosted by Reflected.net.

26

12.    Viking host is either an alter-ego or reseller of Reflected.net, and with respect to Porn.com, relies on Reflected's IPs and/or other network connectivity to serve Porn.com.

13.    Porn.com's name servers, which control accessibility to the entire website, is hosted by Reflected Networks, in the United States.

14.    Through Reflected Networks, Porn.com utilizes a Content Delivery Network, Limelight, which is headquartered in Arizona, to distribute the Porn.com videos.

15.    I have conducted Internet trace routes, which determines the I.P. address displaying content, on the videos on Porn.com and confirmed that they are being displayed through Limelight.

16.    AMA also uses a Content Delivery Network through Reflected Networks. AMA was offered Limelight's CDN, but chose a different CDN provider. While AMA does not have a direct contract with this CDN, as the relationship exists through Reflected Networks, AMA is necessarily aware of and chose the particular CDN utilized.

17.    TrafficForce.com and all of the banners distributed by TrafficForce.com are hosted by Reflected Networks, in the United States.

18.    GLP 5, Inc., at all relevant times herein, is represented to be TrafficForce.com.  Traffic Force's own Terms of Service, publically available on Traffic Force's web site, specifically states that GLP 5, Inc. **IS** Traffic Force. GLP 5, Inc. has represented to all users of TrafficForce.com and its payment providers to be "Traffic Force." Attached hereto as Exhibit B is a true and correct copy of the Terms of Service for Traffic Force at the time this lawsuit was filed.

19.    Since this lawsuit was filed, Traffic Force's Terms of Service has changed.  It is now indicated that GLP 5, Ltd. is Traffic Force (instead of GLP 5

1  Inc.). Attached hereto as Exhibit C is a true and correct copy of Traffic Force's
2  current Terms of Service.

3      20.    GLP 5, Ltd. is a Seychelles corporation. On information and belief,
4  Defendants' have no real ties to Seychelles, as it is an island nation off the coast of
5  Africa. It is also very easy to register Seychelles corporations online, and it is very
6  difficult, if not impossible, to discover the identity of the shareholders related to a
7  Seychelles corporation.

8      21.    Traffic Force's business is to place banner ads for clients on Internet
9  video streaming sites, including Porn.com. This requires a relationship with the
10  entity desiring a banner ad, an advertiser, and a video streaming web site where the
11  banner ads will be displayed.

12      22.    AMA previously entered into a Content Partnership Agreement for
13  promotional materials to be posted on Porn.com. The Content Partnership Agreement is
14  with GIM Corp.

15      23.    Pursuant to this agreement, AMA provides sample promotional materials to
16  Porn.com, which would the direct a user to AMA's paid membership sites. The videos as
17  issue in this case are full length videos, rather than sample promotional videos. The were
18  not provided by AMA and they did not direct users to AMA paid membership sites.

19      24.    For the promotional material provided by AMA, AMA shares revenue with
20  for any resulting paid memberships. AMA is instructed to send payments, *in the name of*
21  *Cyberweb, Ltd. to 1785 Turner Road, Windsor, Ontario.* The same address as Netmedia
22  Services.

23      25.    Defendants assert Porn.com is owned by Cyberweb Ltd., a company
24  registered in Barbados. The company's corporate filings in Barbados specifically state
25  that the nature of business for Cyberweb Ltd. IBC#28629 is "Internet Marketing" with
26  the "company primarily in the USA." Attached hereto as Exhibit D is a true and correct

-4-

1  copy of result from corporations search in Barbardos, done in response to the lawsuit
2  filed in Barbados.

3      26.    In 2015, I was contacted by Ross Allan regarding the potential purchase of
4  two web sites which I had ownership interest. Mr. Allan represented himself to be from
5  Netmedia Services and his emails regarding the negotiations were from a Netmedia email
6  address, ross@netmsi.com.

7      27.    I am aware that while Ross Allan works on behalf Netmedia, he also does
8  work on behalf of Traffic Force.

9      28.    Phil Bradbury holds all official positions of GLP 5, while GLP 5 has no
10  actual employees. Mr. Bradbury is also the Vice President of Netmedia.

11      29.    When AMA signed up for the Content Partnership Agreement   for
12  Porn.com, AMA representatives had direct contact with Ross Allan at Netmedia
13  regarding initiating the program. Mr. Allan, using a Netmedia email address and the
14  Netmedia phone number (519) 987-0600 assisted AMA and made himself specifically
15  available to AMA. Attached hereto as Exhibit E is a true and correct copy of this email
16  thread.

17      30.    On August 5, 2016, AMA was served with the Barbados Claim. The claim
18  was amended on June 9, 2016. Attached hereto as Exhibit F is a true and correct copy of
19  the Statement of Claim AMA was served.

20      31.    Paragraph 1.2.1 of the Statement of Claim specifically states that Netmedia
21  has a technical services agreement with Cyberweb, Ltd. for maintenance *and operation*
22  of Cyberweb's web sites. This would include Porn.com.

23      32.    Paragraph 4.4.3 of the Statement of Claim specifically states that Netmedia
24  provides services relating to the *uploading of content* to web sites, including Porn.com.

25      33.    Paragraph 4.4.4 of the Statement of Claim specifically states that GIM
26  Corp owns and operates the Revenue Sharing Program, but it was a Netmedia employee

1    or representative, Ross Allan, that communicated directly with and made himself

2    available to AMA when AMA signed up for this program.

3

4        I declare under the penalty of perjury under the laws of the United States of

5    America that the foregoing is true and correct.

6

7        Executed on the 8th day of August 2016 at Sicily, Italy.

8

9    
     Adam Silverman

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT A



DRAWN AND PREP. BY

ZARINA KH. N
ATTORNEY-AT-LAW
Pr spect Chambers
Su merland House
Prospect oad, St. James
BB24003, Barbados

**CLAIM FORM**

**Form 1**

*(Rule 8.1(4))*

**SUPREME COURT OF BARBADOS**
**IN THE HIGH COURT OF JUSTICE**

CLAIM NO. | CUbo0 | 2016 |

**BETWEEN:**

**CYBERWEB LTD**
**NETMEDIA SERVICES INC**
**SAGAN LTD**
**GLP 5, INC**
**GIM CORP**
**DAVID KOONAR**

**CLAIMANTS**

**AND**


**ADAM SILVERMAN**

**DEFENDANTS**

The Claimants, **CYBERWEB LTD** formerly MXN LTD of Coconut Creek House, Derricks
in the parish of St. James, Barbados; **NETMEDIA SERVICES INC** of 5060 Tecumseh Rd.
East, Windsor, ON Canada; **SAGAN LTD** of Suite 9, Ansuya Estate, Revolution Avenue,
Victoria, Mahe, Seychelles; **GLP 5, INC** of 30150 Telegraph Road, STE 444, Bingham
Farms, MI, 48025-4549 USA, **GIM CORP** of Coconut Creek House, Derricks in the parish
of St. James, Barbados **AND DAVID KOONAR** of Asolo (Treviso – Italy), Via Santa
Caterina 35 claim jointly and severally against **the Defendants, AMA MULTIMEDIA, LLC**
of Las Vegas, Nevada, USA and **ADAM SILVERMAN** of Las Vegas, Nevada, USA.

**(SET OUT BRIEFLY THE NATURE OF THE CLAIM, ANY SPECIFIC AMOUNT**
**CLAIMED AND ANY OTHER REMEDY SOUGHT FROM THE COURT)**

1. Injunctive relief to restrain anticipatory breach of contract and or breach of the
Claimant - GIM CORP- rights in an Agreement entitled Content Partner Revenue Sharing
Agreement made between GIM CORP and the Defendants herein on or about the 10th
day of September, 2012 ("Content Partner Revenue Sharing Agreement").

2.      A Declaration that the Content Partner Revenue Sharing Agreement is entirely and solely justiciable only in the Courts of Barbados pursuant to Barbados law and without regard to conflicts of laws principles.

3.      A Declaration that all of the Claimants herein are entitled to rely on the rights granted by the Defendants to GIM CORP under the Content Partner Revenue Sharing Agreement..

4.      A Declaration that all of the Claimants herein are, pursuant to the Content Partner Revenue Sharing Agreement, entitled to publicize and or distribute materials submitted provided to or otherwise made available to the Claimants by the Defendants or either of them, including without limitation, materials as to which Defendants claim or otherwise assert copyright interests, .

5.      Relief for breach of the Content Partner Revenue Sharing Agreement by Defendants, including, without limitation, damages for and order restraining breach and or further breach or violation of representations and warranties that Defendant(s) would not, directly or indirectly, undertake any action (or authorize others to undertake any action) in conflict with the rights of GIM CORP, including those rights held by GIM CORP pursuant to the Content Partner Revenue Sharing Agreement.

6.      Interest pursuant to section 35 of Cap 117A;

7.      Costs including costs provided for under the Content Partner Revenue Sharing Agreement.

8.      Further or other relief deemed fit.

**(THE FOLLOWING IS TO BE COMPLETED ONLY WHERE THE CLAIM IS FOR A SPECIFIED AMOUNT)**

| | $ |
|---|---|
| Amount Claimed | |
| Interest | |
| Court fees | |
| Attorney's Fixed Costs on issue | |
| Total Amount Claimed | |

I Kris Richardson certify that all facts set out in this Claim Form are true to the best of my knowledge, information and belief.

Dated the    27    day of April    2016

..............................................

*Claimant's signature*

## NOTICE TO THE DEFENDANT

### See the notes in Form 1A served with this Claim Form.

This Claim Form must contain or have served with it either a Statement of Claim or a copy of a court order entitling the Claimant to serve the Claim Form without a Statement of Claim.

If you do not complete the form of Acknowledgment of Service served on you with this Claim Form and deliver or send it to the Registry (address below) so that it is received there within FOURTEEN DAYS of service of the Claim Form on you, the Claimant will be entitled to apply to have judgment entered against you. See Rules 9.2(4) and 9.3(1).

The form of Acknowledgment of Service may be completed by you or by an attorney-at-law acting for you.

You should consider obtaining legal advice with regard to this Claim.

**This Claim Form has no validity if it is not served within twelve months of the date below unless it is accompanied by an order extending that time.**

The Court has fixed the                     day of                     2016 , at                     am/pm, as the time and date for a directions hearing in this Claim. You or your representative must attend that hearing, unless the Court dispenses with your attendance, or orders may be made against you in your absence.

You are referred to Part 27, and particularly rule 27.4, of the Rules of the Supreme Court.

The Registry is located at The Law Courts, Bridgetown, telephone number 246-426-3461, FAX (246)426-2405. The office is open to the public between 8.15 a.m. and 3.30 p.m. Mondays to Fridays except on public holidays.

Dated the                     day of                     2016

The Claimant's address for service is Zarina Khan, and Ivan Alert Attorneys-at-Law of and whose address for service is Prospect Chambers, Summerland House, Prospect Road, St James. Telephone No. 622 0050, Fax No. 438 7266.

Filed by Zarina Khan, in association with Ivan Alert, Attorneys-at-Law of Prospect Chambers, "Summerland House", Prospect Road, Prospect, St James, Barbados.

## ACKNOWLEDGMENT OF SERVICE OF CLAIM FORM

**Form 3**

*(Rule 8.12 (1)(a) and Part 9)*

### SUPREME COURT OF BARBADOS
### IN THE HIGH COURT OF JUSTICE

CLAIM NO.

**BETWEEN:**

**CYBERWEB LTD**
**NETMEDIA SERVICES INC**
**SAGAN LTD**
**GLP 5, INC**                                          **CLAIMANTS**

**AND**

**AMA MULTIMEDIA LLC**                                  **DEFENDANT**

**WARNING:** If this document is not fully completed and returned to the Registry at the address below within FOURTEEN DAYS of service of the Claim Form on you, the Claimant will be entitled to apply to have judgment entered against you. If he does so you will have no right to be heard by the Court except as to costs or the method of paying any judgment unless you apply to set the judgment aside (and it may not be possible for you to succeed in having it set aside).

1.  Have you received the Claim Form with the above Claim number?       YES/NO

2.  If so, when?                                                        ___/___/___
                                                                        *Date*

3.  Did you also receive the Claimant's Statement of Claim?             YES/NO

4.  If so, when?                                                        ___/___/___
                                                                        *Date*

5.  Are your names properly stated in the Claim Form?                   YES/NO

    If not, what are your full names?
    ....................................................................................................................................

6.  Do you intend to defend the Claim?                                  YES/NO

    (If so you must file a Defence within 28 days of the date of service of the Claim Form on you.)

7.  Do you admit the whole of the claim made in the Claim Form?         YES/NO

    (If you do you should either

    (a)  pay the claim directly to the Claimant or his attorney-at-law, or;

    (b)  complete the form of application to pay the claim by instalments.

    If you pay the whole debt together with the costs and interest as shown in the Claim Form within FOURTEEN DAYS you will have no further liability for costs.)

**FORM 3** – *Cont'd*

*(Rule 8.12(1)(a) and Part 9)*

8.  If you do not admit the whole of the claim, do you admit any part of the claim?          YES/NO

(If you do you may

(a) pay the money that you admit direct to the Claimant or his attorney-at-law; or

(b) complete the form of application to pay the claim by instalments.)

9.  If so, how much do you admit? .................................................................................................

(If you dispute the balance of the claim you must also file a Defence within TWENTY-EIGHT DAYS of the date of service of the Claim Form on you or judgment may be entered against you for the whole amount claimed.)

10. What is your own address?    .........................................................................................

.........................................................................................

.........................................................................................

11. What is your address for service?
(If you are acting in person you must give an address to which documents may be sent either from other parties or from the court. You should also give your telephone number and FAX number, if any.)

.........................................................................................

.........................................................................................

.........................................................................................

12. Dated the                    day of                    2016

.........................................................
Attorney-at-Law for the Defendant
Defendant in person

The Registry is located at The Law Courts, Bridgetown, telephone number (246)426-3461, FAX (246)426-2405. The Office is open to the public between 8:15 a.m. and 3:30 p.m. Mondays to Fridays except on public holidays.

Filed by Zarina Khan, and Ivan Alert Attorneys-at-Law of Prospect Chambers, "Summerland House", Prospect Road, Prospect, St James, Barbados.

**SUPREME COURT OF BARBADOS**

**IN THE HIGH COURT OF JUSTICE**

CLAIM NO. CVb00|2016

**BETWEEN**

**CYBERWEB LTD**
**FOSHAN LTD**
**NETMEDIA SERVICES INC**
**SAGAN LTD**
**GLP 5, INC**
**DAVID KOONAR**

**CLAIMANTS**

**AND**

**AMA MULTIMEDIA LLC**
**ADAM SILVERMAN**

**DEFENDANTS**

**CLAIM FORM**

**ZARINA KHAN**
**ATTORNEY-AT-LAW**

# EXHIBIT B

# TrafficForce Terms of Service at Time Litigation Filed

Case 2:16-cv-01269-DGC   Document 34-1   Filed 08/09/16   Page 17 of 78

• **TrafficForce**

# Terms & Services

PLEASE READ THESE TERMS AND CONDITIONS ("TERMS" OR "AGREEMENT") CAREFULLY BEFORE REGISTERING OR USING THE SERVICES ("PROGRAM") OFFERED BY GLP 5 Inc. ("TRAFFIC FORCE"). PARTICIPATION IN THE PROGRAM INDICATES THAT YOU AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT. IF YOU DO NOT AGREE TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, YOU MUST NOT REGISTER OR PARTICIPATE IN THE PROGRAM.

## 1. Parties

Pursuant to this Agreement, GLP 5 Inc. ("Network") and you ("You", "Publisher" or "Advertiser") agree to the following terms and conditions for the participation in the Program.

## 2. Program Participation

Participation in the Program is subject to Network's prior approval and Your continued compliance with the Acceptable Use Policies ("Acceptable Use Policies"). Network reserves the right to refuse participation to any applicant or participant at any time in its sole discretion. Network may change, suspend or discontinue the Program at any time without notice or liability. Network reserves the right, at its discretion, to modify this Agreement at any time by posting a notice on the Site, or by sending a notice via email or postal mail. Participation in the Program following such notification constitutes Your acceptance of the modified terms and conditions. You certify to Network that if You are an individual (i.e., not a corporation) You are at least 18 years of age. You also certify that You are legally permitted to use the Program, and takes full responsibility for the selection and use of the Program. This Agreement is void where prohibited by law, and the right to access the Site is revoked in such jurisdictions.

## 3. Participation As Publisher

You agree to comply with the specifications provided by Network to enable proper delivery, display, tracking, and reporting of ads in connection with your Websites, including without limitation by not modifying the JavaScript or other programming provided to You by Network in any way, unless expressly authorized in writing by Network.

## 4. Participation As Advertiser

Advertiser is solely responsible for all: (a) ad targeting options and keywords ("Targets") and all ad content, ad information, and ad URLs ("Creative"), whether generated by or for Advertiser; and (b) websites, services and landing pages which Creative links or directs viewers to, and advertised services and products (collectively "Services"). Advertiser shall protect any Advertiser passwords and takes full responsibility for Advertiser's own, and third party, use of any Advertiser accounts. Advertiser understands and agrees that ads may be placed on (a) any content or property provided by Network, and, unless Advertiser opts out of such placement in the manner specified by network, (b) any other content or property provided by Publishers upon which Network places ads. Advertiser authorizes and consents to all such placements. Advertiser agrees that all placements of Advertiser's ads shall conclusively be deemed to have been approved by Advertiser unless Advertiser produces contemporaneous documentary evidence showing that Advertiser disapproved such placements in the manner specified by Network. Advertiser grants Network permission to utilize an automated software program to retrieve and analyze websites associated with the Services for ad quality and serving purposes. Network or Publishers may reject or remove any ad or Target for any or no reason.

## 5. Representation As Publisher

Publisher represents and warrants that the Websites: (1) are owned by or licensed to Publisher and Publisher has the right to use the entire contents and subject matter contained in the Websites; (2) do not violate any law, statute, ordinance, treaty or regulation; (3) do not infringe in any manner any copyright, patent, trademark, trade secret or other intellectual property right of any third party; (4) do not breach any duty toward or rights of any person or entity including, without limitation, rights of publicity or privacy, and have not otherwise resulted in or are not likely to result in any consumer fraud, product liability, tort, breach of contract, injury, damage or harm of any kind to any person or entity; (5) are not false, deceptive or misleading; (6) are not defamatory, libelous, slanderous or threatening; and (7) are free of viruses, Trojan horses, trap doors, back doors, Easter eggs, worms, time bombs, cancelbots, "spyware" and other computer programming routines that may potentially damage, interfere with, intercept, or expropriate any system, data or personal information. Publisher also represents, warrants and covenants that: (i) Publisher has the power and authority to enter into and perform its obligations under this Agreement; (ii) Publisher shall not be in violation of any obligation, contract or agreement by entering into this Agreement, by performing its obligations hereunder or by authorizing and permitting Network to perform the services hereunder; (iii) Publisher shall comply with all of the terms and conditions of this Agreement, as amended from time to time; (iv) all information provided by Publisher to Network is truthful, accurate and complete, and is not misleading in any way; (v) Network is hereby authorized by Publisher to perform all the services described hereunder with respect to Publisher and the Websites; (vi) upon request by Network, Publisher shall promptly provide a written statement in form acceptable to Network confirming Network's authority hereunder; and (vii) Publisher shall not upload, post, email, transmit or otherwise make available any content, material, data, work, designation, trade or service mark, tradename, link, advertising or services that actually or potentially (a) violates any applicable law or regulation, including, without limitation, false advertising or unfair competition under the law of any jurisdiction, (b) infringes or misappropriates any proprietary, intellectual property, contract or tort right of any person, or (c) to a reasonable person, may be abusive, defamatory, invasive of privacy, harassing, threatening, malicious, otherwise objectionable or in way derogatory about Network or any other party. Publisher grants Network and the Advertiser the right and license to transmit the Ads to the Websites.

## 6. Representation As Advertiser

Advertiser represents and warrants that (a) it is authorized to act on behalf of and has bound to this Agreement any third party for which Advertiser advertises ("Principal"), (b) as between Principal and Advertiser, the Principal owns any rights to Program information in connection with those ads, and (c) Advertiser shall not disclose Principal's Program information to any other party without Principal's consent.

## 7. Communications Solely With Network

You agree to direct to Network and not to any advertiser or publisher, as the case may be, all communications regarding any matter arising out of participating in Program.

## 8. Acceptable Use Policy

To participate in the Program as a Publisher, you must abide by the Publishers Acceptable Use Policy. To participate in the Program as an Advertiser, you must abide by the Advertisers Acceptable Use Policy. It is your responsibility to keep up to date and adhere to those policies. Failure to comply with these policies may warrant us limiting ad serving or terminating this agreement.

## 9. Payments As Publishers

Publisher shall receive as payment a percentage of the sale price of advertisements displayed in connection with Publisher's website as determined by Network for Publisher's use of the Program. Advertiser's payable revenue shall be determined twice a month on the first day and sixteenth day of each month for the period covering the two previous weeks. Payments to the Publisher shall be sent by Network within approximately ten (10) days if Publisher's earned balance is greater than or equal to Publisher's minimum payable amount. If Publisher's earned balance is less than Publisher's minimum check amount, no payment shall be made. In addition, Publisher agrees that (i) any payments that may become due to Publisher are specifically conditioned upon Network's receipt of full payment from the applicable advertiser and (ii) if Network does not receive the applicable payment in full from any such advertiser, or Network's payment from advertiser is later reversed at any time, Network may deduct such amount from Publishers future payments. If Publisher disputes any payment made in connection with the Program, Publisher must notify Network in writing within thirty (30) days of any such payment. Failure to notify Network shall result in the waiver by Publisher of any claims related to such disputed payment. Payment shall be calculated solely based on records maintained by Network. No other measurements or statistics of any kind shall be accepted by Network or have any effect under this Agreement. Network shall not be liable for any payment based on (i) any fraudulent impressions or clicks generated by any person, robot, automated program or similar device or for fraudulent impressions or clicks similarly generated on any advertisements, as reasonably determined by Network; (ii) advertisements delivered to end users whose browsers have JavaScript disabled; or (iii) impressions commingled with a significant number of fraudulent impressions or fraudulent clicks described in (i) above, or as a result of another breach of this Agreement by Publisher for any applicable pay period. Network reserves the right to withhold payment or charge back Publisher's account due to any of the foregoing or any breach of this Agreement by Publisher. In addition, if Publisher is past due on any payment to Network in connection with the Program, Network reserves the

right to withhold payment until all outstanding payments have been made. To ensure proper payment, Publisher is solely responsible for providing and maintaining accurate contact and payment information associated with Publisher's account in the Program. Any bank fees related to returned or cancelled checks due to a contact or payment information error or omission may be deducted from the newly issued payment.

# 10. Payments As Advertisers

Advertiser shall be responsible for all charges up to the amount of each IO, or as set out in an online account, and shall pay all charges in U.S. Dollars or in such other currency as agreed to in writing by the parties. Unless agreed to by the parties in writing, Customer shall pay all charges in accordance with the payment terms in the applicable IO or online campaign settings, including any applicable taxes. Late payments bear interest at the rate of 1.5% per month (or the highest rate permitted by law, if less). Charges are exclusive of taxes. Advertiser is responsible for paying all taxes, government charges, and reasonable expenses and attorneys fees Network incurs collecting late amounts. To the fullest extent permitted by law, Advertiser waives all claims relating to charges (including without limitation any claims for charges based on suspected invalid clicks) unless claimed within 60 days after the charge (this does not affect Advertiser's credit card issuer rights). Charges are solely based on Network's measurements for the Program, unless otherwise agreed to in writing. Nothing in these Terms or an IO may obligate Network to extend credit to any party. Advertiser acknowledges and agrees that any credit card and related billing and payment information that Advertiser provides to Network may be shared by Network with companies who work on Network's behalf, such as payment processors and/or credit agencies, solely for the purposes of checking credit, effecting payment to Network and servicing Advertiser's account. Network reserves the right to withhold deposit or charge Advertiser's account due to any breach of this Agreement by Advertiser.

# 11. Advertiser Refund Policy

Network strives to offer the best service possible to its Advertisers. Once an Advertiser makes an initial deposit in the Program, it has thirty (30) days to ask for a refund of the account balance if they are not satisfied with the Program and have remained in compliance with this agreement. As soon as an Advertiser makes a second deposit in the Program, it is hereby understood that a refund will only be issued for a balance greater than $50 and a processing fee of 10% will be deducted from the refund. Advertisers cancelled / terminated by Network for violating these Terms and Conditions are not entitled to a refund.

# 12. Termination; Cancellation

Network may at any time, in its sole discretion, immediately terminate the Program, terminate this Agreement, or cancel any Ad(s) or your use of any Target. Network will make commercially reasonable efforts to notify you via email of any such termination or cancellation within a reasonable period of time. You may cancel any Ads and/or terminate this Agreement with or without cause at any time by deactivating a campaign or by removing the Program Ad Code from your website. Upon termination for any reason: (a) you shall remain liable for any amount due for Ads already delivered; and (b) all provisions of this Agreement which by their nature should survive termination shall survive termination, including, without limitation, warranty disclaimers, and limitations of liability.

## 13. Prohibited Uses

You shall not, and shall not authorize or encourage any third party to: (i) directly or indirectly generate queries, Referral Events, or impressions of or clicks on any Ad (including without limitation by clicking on "play" for any video Ad) through any automated, deceptive, fraudulent or other invalid means, including but not limited to through repeated manual clicks, the use of robots or other automated query tools and/or computer generated search requests, and/or the unauthorized use of other search engine optimization services and/or software; (ii) edit, modify, filter, truncate or change the order of the information contained in any Ad, or remove, obscure or minimize any Ad in any way without authorization from Network; (iii) frame, minimize, remove or otherwise inhibit the full and complete display of any Web page accessed by an end user after clicking on any part of an Ad; (iv) redirect an end user away from any Advertiser Page; provide a version of the Advertiser Page that is different from the page an end user would access by going directly to the Advertiser Page; intersperse any content between the Ad and the Advertiser Page; or otherwise provide anything other than a direct link from an Ad to an Advertiser Page; (v) display any Ad(s) on any Web page or any Web site that contains any hate-related, violent, or illegal content; (vi) directly or indirectly access, launch, and/or activate Ads through or from, or otherwise incorporate the Ads in, any software application, Web site, or other means other than Your Property(ies), and then only to the extent expressly permitted by this Agreement; (vii) "crawl", "spider", index or in any non-transitory manner store or cache information obtained from any Ads, or any part, copy, or derivative thereto; (viii) act in any way that violates any other agreement between You and the Network (ix) disseminate malware; (x) Use any type of .apk, .msi or any other executable file or other means to auto install any type of spyware / malware or any other software or application that hijacks, maliciously changes or otherwise adversely affects any end user device (xi) Use the Traffic Force Network to distribute any type of malicious or misrepresented JavaScript, application or software whatsoever (xii) create a new account to use the Program after the Network has terminated this Agreement with You as a result of your breach of this Agreement; or (xiii) engage in any action or practice that reflects poorly on the Network or otherwise disparages or devalues the Network's reputation or goodwill. You acknowledge that any attempted participation or violation of any of the foregoing is a material breach of this Agreement and that we may pursue any and all applicable legal and equitable remedies against You, including an immediate suspension of Your account or termination of this Agreement, and the pursuit of all available civil or criminal remedies.

Certain violations of aforementioned prohibited uses represent a blatant attempt to irreparably harm the good will and public image of the service. Therefore any advertiser found using the tactics outlined in points (iv)(v)(ix)(x) (xi)(xiii) will forfeit all outstanding sums held in their advertising account(s) as well as facing all other forms of remedy as outlined in the previous paragraph.

## 14. Publicity

You agree that the Network may use Your name and logo in presentations, marketing materials, customer lists, financial reports, Web site listings of customers or ads. If You wish to use Network's trade names, trademarks, service marks, logos, domain names, and other distinctive brand features ("Brand Features"), You may do so, so long as such use is in compliance with this Agreement.

## 15. Disclaimers

12/3/2015 10:25 AM

You acknowledge and agree that the Network has no special relationship with or fiduciary duty to You and that the Network has no control over, and no duty to take any action regarding: which users gain access to the Site, Services or Program; what Content You access or receive via the Site or Services; what Content other advertisers and publishers may make available, publish or promote in connection with the Program; what effects any Content may have on Advertisers or Publisher or their users or customers; how You or your users or customers may interpret, view or use the Content; what actions You or your users or customers may take as a result of having been exposed to the Content, or whether Content is being displayed properly in connection with the Program. Further, (i) if You are a publisher, Publisher specifically acknowledges and agrees that Network has no control over (and is merely a passive conduit with respect to) any Content that may be submitted or published by any advertiser, and that Publisher is solely responsible (and assumes all liability and risk) for determining whether or not such Content is appropriate or acceptable to Publisher, and (ii) if You are an advertiser, Advertiser specifically acknowledges and agrees that Network has no control over any Content that may be available or published on any publisher website (or otherwise), and that Advertiser is solely responsible (and assumes all liability and risk) for determining whether or not such Content is appropriate or acceptable to Advertiser. You release Network from all liability in any way relating to Your acquisition (or failure to acquire), provision, use or other activity with respect to Content in connection with the Site or Services. The Site may contain, or direct You to sites containing, information that some people may find offensive or inappropriate. Network makes no representations concerning any content contained in or accessed through the Site or Services, and Network will not be responsible or liable for the accuracy, copyright compliance, legality or decency of material contained in or accessed through the Site or Services.

THE SERVICES, CONTENT AND SITE ARE PROVIDED ON AN "AS IS" BASIS, WITHOUT WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT. NETWORK DOES NOT WARRANT THE RESULTS OF USE OF THE SERVICES, INCLUDING, WITHOUT LIMITATION, THE RESULTS OF ANY ADVERTISING CAMPAIGN, AND YOU ASSUME ALL RISK AND RESPONSIBILITY WITH RESPECT THERETO. SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE ABOVE LIMITATIONS MAY NOT APPLY TO YOU. NETWORK MAKES NO GUARANTEE OF CONFIDENTIALITY OR PRIVACY OF ANY COMMUNICATION OR INFORMATION TRANSMITTED ON OR THROUGH THE SITE, SERVICES OR ANY WEBSITE LINKED TO THE SITE. Network will not be liable for the privacy of e-mail addresses, registration and identification information, disk space, communications, confidential or trade-secret information, or any other Content stored on Network's equipment, transmitted over networks accessed by the Site, or otherwise connected with Your use of the Services.

## 16. Confidentiality

You agree not to disclose Network Confidential Information without Network's prior written consent. "Network Confidential Information" includes without limitation: (i) all Network software, technology, programming, technical specifications, materials, guidelines and documentation You learn, develop or obtain that relate to the Program; (ii) click-through rates or other statistics relating to performance in the Program provided to You by Network; and (iii) any other information designated in writing by Network as "confidential" or any designation to the same effect. Network Confidential Information does not include information that has become publicly known through no breach by You or Network, or information that has been (i) independently developed without access to Network Confidential Information, as evidenced in writing; (ii) rightfully received by You from a third party with no obligation of

confidentiality; or (iii) required to be disclosed by law or by a governmental authority.

## 17. Information Rights

Network may retain and use, subject to the terms of the Privacy Policy (located at http://www.trafficforce.com /policy..html, or such other URL as Network may provide from time to time), all information You provide, including but not limited to Property demographics and contact and billing information. You agree that Network may transfer and disclose to third parties personally identifiable information about You for the purpose of approving and enabling Your participation in the Program, including to third parties that reside in jurisdictions with less restrictive data laws than Your own. Network may also provide information in response to valid legal process, such as subpoenas, search warrants and court orders, or to establish or exercise its legal rights or defend against legal claims. Network disclaims all responsibility, and will not be liable to You, however, for any disclosure of that information by any such third party. Network may share non-personally-identifiable information about You, including Property URLs, Property-specific statistics and similar information collected by Network, with advertisers, business partners, sponsors, and other third parties. In addition, You grant Network the right to access, index and cache the Property(ies), or any portion thereof, including by automated means including Web spiders or crawlers.

## 18. No Guarantee

Network makes no guarantee regarding the level of impressions of ads or clicks on any ad, the timing of delivery of such impressions and/or clicks, the completion of Referral Events, or the amount of any payment to be made to You under this Agreement. In addition, for the avoidance of doubt, Network does not guarantee the Program will be operable at all times or during any down time (i) caused by outages to any public Internet backbones, networks or servers, (ii) caused by any failures of Your equipment, systems or local access services, (iii) for previously scheduled maintenance or (iv) relating to events beyond Network's control such as strikes, riots, insurrection, fires, floods, explosions, war, governmental action, labor conditions, earthquakes, natural disasters, or interruptions in Internet services to an area where Network or Your servers are located or co-located.

## 19. Indemnification

You agree to indemnify, defend and hold Network, all relevant Publisher(s), all relevant Advertiser(s) and their licensors, licensees, affiliated companies, consultants, contractors, agents, attorneys and employees harmless from and against any and all liability, loss, damages, claims or causes of action, including internal and external legal fees and expenses, arising out of, related to or which may arise from your use of the Program, your Ads, your selection and use of Targets, and/or your breach of any term of this Agreement.

## 20. Governing Law

This Agreement shall be governed by the laws of the Canada, without reference to any conflict of laws principles. Any claim or controversy arising out of or related to this Agreement, or the products or services we provide and/or distribute shall be heard in the courts of Canada. You agree to pay any/all direct and/or indirect costs arising out or related to the claim and/or controversy, including but not limited to legal costs, transportation, accommodation,

telephone calls. The foregoing shall not preclude Network from seeking any injunctive relief for protection of Network, intellectual property rights.

## 21. Miscellaneous Terms And Conditions

The currency used for purposes of this Agreement shall be United States Dollars (USD). Network requires all advertisers to provide proof of identification before advertising in the Program. Network reserves the right to refuse any advertiser for any reason including but not limited to: country of residence, reputation and associations. These Terms and Conditions constitute the entire agreement between you and the Network in respect to your use of the Program and supersede and replace all prior or contemporaneous understandings or agreements, written or oral, regarding such subject matter. Any changes that we make to these Terms and Conditions will be posted at http://www.trafficforce.com/terms.html. Your use of our Programs and Services will always be governed by the TERMS AND CONDITIONS in effect at the time of use.

GLP 5 Inc.
30150 Telegraph Rd., Suite 444
Bingham Farms, MI 48025

**CREATE AN ACCOUNT NOW!**
**(SIGNUP.HTML)**

**HOME (/)**   **ABOUT (ABOUT.HTML)**   **SIGN UP (SIGNUP.HTML)**   **HELP (HELP.HTML)**

**PUBLISHERS (PUBLISHERS.HTML)**   **OUR TEAM (TEAM.HTML)**   **SIGN IN (SIGNIN.HTML)**



**Twitter (http://twitter.com/trafficforce1)**



**Facebook (http://www.facebook.com/trafficforce)**

Terms & Services (terms.html)

Copyright © 2015 Traffic Force. All Rights Reserved.

12/3/2015 10:25 AM

# EXHIBIT C

# TrafficForce Terms of Service after Litigation Filed

- TrafficForce

About (about.html)  |  Sign Up (signup.html)  |  Help (help.html)  |  Publishers (publishers.html)  |  Our Team (team.html)  |

Language ⬇

# Terms of Service

**TrafficForce.com**
**Terms of Service Agreement**

**Last Updated: April 25, 2016**

These terms of service are between **GLP 5, LTD.**, a Republic of Seychelles corporation ("**TrafficForce**"), and you, the individual or entity signing up as a publisher or advertiser or both. Please read these terms carefully before signing up for or using the TrafficForce advertising network (the "**Network**"). Participation in the Network constitutes your acceptance of these terms. If you do not agree to these terms, you must not sign up for or participate in the Network.

TrafficForce is an advertising network, accessible at www.trafficforce.com (the "**Website**"), that allows publishers to place ads on their websites or applications and for advertisers to buy the space.

You want to participate in the Network as a publisher or advertiser or both.

The parties therefore agree as follows:

1.    **Participation**

   1.1    **In General**

   (a)    Participation in the Network is subject to TrafficForce's prior approval and your continued compliance with the applicable publisher or advertiser acceptable use policy [http://www.trafficforce.com/aup.html] (collectively, the "**acceptable use policies**").

   (b)    TrafficForce may require you to provide proof of identification before participating in the Network.

   (c)    You must be at least 18-years old and the age of majority where you live to participate in the Network. If you are an entity, all individuals involved in the ownership of the entity must be at least 18-years old or the age of majority in their place of residence, whichever is greater.

   (d)    TrafficForce may refuse participation at any time and for any reason, including country of residence, reputation, and associations.

   (e)    TrafficForce may change, suspend, or discontinue the Network at any time without notice or liability.

   (f)    TrafficForce may suspend or terminate your account at any time if you breach this agreement.

   (g)    TrafficForce may, in its discretion, modify this agreement at any time by posting a notice on the Website or by notifying you by email or postal mail. Your continued participation in the Network after this notice constitutes your acceptance of the modified terms.

(h)    You state that you are legally permitted to use the Network, and take full responsibility for the selection and use of the Network.

(i)    This agreement is void where prohibited by law, and the right to access the Network is revoked in those jurisdictions.

### 1.2    Participation as a Publisher; Ineligible Publisher Sites

(a)    You will comply with the specifications provided by TrafficForce to allow proper delivery, display, tracking, and reporting of ads in connection with your websites (the *"Publisher Sites"*), including by not modifying the JavaScript or other programming provided to you by TrafficForce in any way, unless TrafficForce expressly authorizes you to do so in writing.

(b)    The following are examples of Publisher Sites that are ineligible for participation in the Network and that will result in termination if used with the Network:

(i)    Websites that contain or distribute material that infringes the rights of others (including copyright and other intellectual property rights) or that promote copyright piracy.

(ii)    Websites whose domain names violate the Anti-Cybersquatting Consumer Protection Act (ACPA) or equivalent law.

(iii)    Websites that sell or distribute counterfeit or illegal goods, or serve the sole purpose of unlawfully distributing either counterfeit or bona fide goods (e.g., cross-border shipping of prescription-only or counterfeit goods).

(iv)    Websites with gratuitous displays of violence, obscene or vulgar language, and abusive content or content that endorses or threatens physical harm.

(v)    Websites promoting any type of hate-mongering (i.e., racial, political, ethnic, religious, gender-based, sexuality-based, or personal, etc.).

(vi)    MP3, warez, password, torrent, file-locker, or other websites containing, linking, facilitating, or promoting illegal software or content.

(vii)    Any website containing or promoting the spread of Trojan horses, viruses, malware, ransomware, any malicious code, or auto-installing scripts.

(viii)    Websites using auto-redirects, auto-refreshes, or similar code to divert traffic or visitors.

(ix)    Websites with references to illicit practices or shock human dignity.

(x)    Websites that participate in or transmit inappropriate newsgroup postings or unsolicited email (spam) as well as unsolicited

communications by equivalent electronic means (i.e., SMS, chat, social networks, etc.).

(xi)    Websites promoting any type of illegal substance or activity (i.e., how to build a bomb, hacking, "phreaking," etc.).

(xii)    Websites with illegal, false, or deceptive investment advice and money-making opportunities.

(xiii)    Websites that have a large amount of proxy traffic from services such as TOR or VPN clients commonly identified as used heavily in the commission of copyright infringement, firewall circumvention, or other unlawful activity.

(xiv)    Websites that provide incentives of any nature to require or encourage visitors to click on ad banners (i.e., paid-per-click, charity, sweepstakes, etc.).

(xv)    Websites that are under construction or incomplete.

(xvi)    Websites with extremely limited audiences or viewership (less than 50 unique visitors per day).

(xvii)    Websites that contain any content violating United States law in general, or the laws of any other country if applicable, including Canada and the Republic of Seychelles.

(xviii)    Websites generated through free blogging or free forum platforms.

(xix)    Websites or pages comprised or containing mostly ads, cluttered ad pages, or "banner farms."

(xx)    Websites with more than six ads per page, more than two pop-ups or pop-unders, or more than one exit pop-up (all ad networks or affiliate programs together).

(xxi)    Websites presenting no added value to the end user.

(xxii)    Websites with any type of content that reasonable public consensus considers to be improper or inappropriate.

(c)    By participating in the Network as a publisher, you hereby grant TrafficForce and its advertisers a nonexclusive, worldwide license to transmit the ads to the Publisher Sites.

### 1.3   Participation as an Advertiser

(a)    You are responsible for all:

(i)    ad targeting options and keywords ("*targets*") and all ad content, ad information, and ad URLs ("*creatives*"), whether generated by or for you; and

(ii)    websites, services, and landing pages that creatives link or direct viewers to, and advertised services and products (collectively, "*services*").

(b)    You acknowledge that ads may be placed on (i) any content or property provided by TrafficForce, and, unless you opt out of that placement in the way specified by TrafficForce, (ii) any other content or property provided by publishers on which TrafficForce places ads. You hereby authorize all of these placements. You acknowledge that all placements of your ads will be considered to have been approved by you unless you produce contemporaneous documentary evidence showing that you disapproved these placements in the way specified by TrafficForce. You hereby grant TrafficForce permission to use an automated software program to retrieve and analyze websites associated with the services for ad quality and serving purposes. TrafficForce or publishers may reject or remove any ad or target for any or no reason.

(c)    By participating in the Network as an advertiser, you hereby grant TrafficForce and its publishers a nonexclusive, worldwide license to reproduce, distribute, transmit, and publicly display the ads.

2.    **TrafficForce Account**

2.1    **Account Creation**

To participate in the Network, you have to create an account. To create an account, you must complete the registration process by providing TrafficForce with accurate information as prompted by the registration form. You also will choose a password and a username.

2.2    **Responsibility for Account**

You are responsible for maintaining the confidentiality of your password and account. Further, you are responsible for all activities that occur under your account. You will promptly notify TrafficForce of any unauthorized use of your account or any other breach of security.

2.3    **Liability for Account Misuse**

TrafficForce will not be liable for any loss that may incur as a result of someone else using your password or account, either with or without your knowledge. You could be held liable for losses incurred by TrafficForce or another person due to someone else using your account or password.

2.4    **Use of Other Accounts**

You will not use anyone else's account at any time, without the written permission of the

account holder.

### 2.5   Account Security

TrafficForce cares about the integrity and security of your personal information. But TrafficForce cannot guarantee that unauthorized persons will never be able to defeat the Website's security measures or use any personal information you provide to TrafficForce for improper purposes. You acknowledge that you provide your personal information at your own risk.

## 3.   Use of Website

### 3.1   License

During this agreement, TrafficForce hereby grants you a nonexclusive, nontransferable, nonsublicensable license to access the Website and its software for your use in accordance with this agreement.

### 3.2   Intellectual Property Rights

The Website and its entire contents, features, and functionality (including all information, software, text, displays, images, video, and audio, and the design, selection, and arrangement of it) are owned by TrafficForce, its licensors, or other providers of the material and are protected by copyright, trademark, patent, trade secret, and other intellectual property or proprietary rights laws. TrafficForce reserves all rights not expressly granted in the Website. You will not engage in the use, copying, or distribution of any of the Website other than expressly permitted.

### 3.3   Trademarks

The TrafficForce name, the TrafficForce logo, and all related names, logos, product and service names, designs, and slogans are trademarks of TrafficForce or its affiliates or licensors. You will not use these marks without TrafficForce's advance written permission. All other names, logos, product and service names, designs, and slogans on the Website are the trademarks of their respective owners.

### 3.4   User Conduct

You will use the Website only for lawful purposes and in accordance with this agreement. You will not engage in any of the following prohibited activities:

(a)   copying, distributing, or disclosing any part of the Website in any medium, including by any automated or non-automated "scraping;"

(b)   using any automated system, including "robots," "spiders," "offline readers," etc., to access the Website;

(c)   transmitting spam, chain letters, or other unsolicited email;

(d)    attempting to interfere with, comprise the system integrity or security of, or decipher any transmissions to or from the servers running the Website;

(e)    taking any action that imposes, or may impose at our sole discretion an unreasonable or disproportionately large load on Website infrastructure;

(f)    uploading invalid data, viruses, worms, or other software agents through the Website;

(g)    collecting or harvesting any personally identifiable information, including account names, from the Website;

(h)    using the Website for any commercial solicitation purposes;

(i)    impersonating another person or otherwise misrepresenting your affiliation with a person, conducting fraud, hiding or attempting to hide your identity;

(j)    interfering with the proper working of the Website;

(k)    accessing any content on the Website through any technology or means other than those provided or authorized by the Website; or

(l)    bypassing the measures TrafficForce may use to prevent or restrict access to the Website, including features that prevent or restrict use or copying of any content or enforce limitations on use of the service or the content in it.

### 4.    Statements of Fact

#### 4.1    By Publisher

If you are a publisher, you state that the following facts are accurate and will continue to be accurate during this agreement:

(a)    If you are an individual, you are at least 18-years old and the age of majority where you live and have the legal capacity to enter into this agreement. If you are an entity, you are duly organized, validly existing, and in good standing as a corporation or other entity under the laws of the entity's jurisdiction of incorporation, organization, or chartering;

(b)    You are legally permitted to use these services and access the Website;

(c)    You have the power to enter into and perform your obligations under this agreement;

(d)    You own or have a license to use the Publisher Sites, and you have the right to use the entire contents and subject matter contained on the Publisher Sites;

(e)    The Publisher Sites do not violate any law, including any law governing false or deceptive advertising, sweepstakes, gambling, comparative advertising, or trade

disparagement;

(f)     The Publisher Sites do not infringe any copyright, patent, trademark, trade secret, or other intellectual property right of any person;

(g)     The Publisher Sites do not breach any duty toward or rights of any person, including rights of publicity or privacy, and have not otherwise resulted in or are not likely to result in any consumer fraud, product liability, tort, breach of contract, injury, damage, or harm to any person;

(h)     The Publisher Sites do not depict bestiality, incest, necrophilia, genital mutilation, sado-masochistic abuse or bondage, defecation, urination, enema play, bleeding, menstruation, rape, extreme violence, torture, death, or any other obscene material;

(i)     The Publisher Sites do not depict child pornography or minors in adult or sexual situations or otherwise target persons under 18-years old or the age of majority, whichever is higher;

(j)     The Publisher Sites are not false, deceptive, or misleading;

(k)     The Publisher Sites are not defamatory, libelous, slanderous, or threatening;

(l)     The Publisher Sites are free of viruses, Trojan horses, trap doors, back doors, Easter eggs, worms, time bombs, cancelbots, "spyware," "malware," "ransomware," and any other computer programming routines that may potentially damage, interfere with, intercept, or expropriate any system, data, or personal information;

(m)    The Publisher Sites comply with 18 U.S.C. §§ 2257–2257A, including the implementing regulations codified at 28 C.F.R. Part 75;

(n)     You will not breach any obligation or agreement by entering into this agreement, by performing your obligations under this agreement, or by authorizing TrafficForce to perform the services under this agreement;

(o)     All information provided by you to TrafficForce is accurate and not misleading;

(p)     You will not fraudulently or purposely manipulate the content of your Publisher Sites in a way that may result in the serving of less contextually relevant advertising;

(q)     You will not:

        (i)      generate fraudulent, automated, or otherwise invalid actions, clicks, or impressions;

        (ii)     use robots or other automated query tools or computer generated search requests or any other search engine results optimization techniques or

software unless authorized by TrafficForce in writing; or

(iii)    authorize another person to do (i) or (ii).

(r)    You will not upload, post, email, transmit, or otherwise make available any content, material, data, work, designation, trademark, service mark, trade name, link, advertising, or services that actually or potentially

(i)    violates any law, including false, deceptive, or misleading advertising or unfair competition under the laws of any jurisdiction;

(ii)    infringes or misappropriates any proprietary, intellectual property, contract, or tort right of any person; or

(iii)    to a reasonable person, may be abusive, defamatory, invasive of privacy, harassing, threatening, malicious, or otherwise objectionable or derogatory about TrafficForce or any other person;

(s)    You are not an individual, organization, or entity listed on The Office of Foreign Assets Control Specially Designated Nationals or Blocked Persons list, as published and updated by the United States Department of Treasury; and

(t)    Your collection and use of personally identifiable information does not—and will not during this agreement—breach TrafficForce's privacy policy or violate any law that governs your collection and use of personal information.

## 4.2    By Advertiser

If you are an advertiser, you state that the following facts are accurate and will continue to be accurate during this agreement:

(a)    If you are an individual, you are at least 18-years old and the age of majority where you live and have the legal capacity to enter into this agreement. If you are an entity, you are duly organized, validly existing, and in good standing as a corporation or other entity under the laws of the entity's jurisdiction of incorporation, organization, or chartering;

(b)    You are legally permitted to use these services and access the Website;

(c)    You have the power to enter into this agreement and to perform your obligations under this agreement;

(d)    You are authorized to act for and bind to this agreement any nonparty for whom you advertise;

(e)    You own or have a license to use the ads, and you have the right to use the entire content and subject matter contained in the ads;

(f)    The ads do not violate any law, including any law governing false or deceptive

advertising, sweepstakes, gambling, comparative advertising, or **trade** disparagement;

(g)    The ads do not infringe any copyright, patent, trademark, trade secret, or other intellectual property right of any nonparty;

(h)    The ads do not depict bestiality, incest, necrophilia, genital mutilation, sado-masochistic abuse or bondage, defecation, urination, enema play, bleeding, menstruation, rape, extreme violence, torture, death, or any other obscene material;

(i)    The ads do not depict child pornography or minors in adult or sexual situations or otherwise target persons under 18-years old or the age of majority, whichever is higher;

(j)    The ads are not false, deceptive, or misleading;

(k)    The ads are not defamatory, libelous, slanderous, or threatening;

(l)    The ads are free of viruses, Trojan horses, trap doors, back doors, Easter eggs, worms, time bombs, cancelbots, "spyware," "malware," "ransomware," and other computer programming routines that may potentially damage, interfere with, intercept, or expropriate any system, data, or personal information;

(m)    You and your ads comply with 18 U.S.C. §§ 2257–2257A, including the implementing regulations codified at 28 C.F.R. Part 75;

(n)    You will not breach any obligation or agreement by entering into this agreement, by performing your obligations under this agreement, or by authorizing TrafficForce to perform the services under this agreement;

(o)    All information provided by you to TrafficForce is accurate and not misleading;

(p)    You will not upload, post, email, transmit, or otherwise make available any content, material, data, work, designation, trademark, service mark, trade name, link, advertising, or services that actually or potentially

    (i)    violates any law, including false, deceptive, or misleading advertising or unfair competition under the laws of any jurisdiction;

    (ii)    infringes or misappropriates any proprietary, intellectual property, contract, or tort right of any person; or

    (iii)    to a reasonable person, may be abusive, defamatory, invasive of privacy, harassing, threatening, malicious, or otherwise objectionable or derogatory about TrafficForce or any other person;

(q)    **You are not an individual, organization, or entity listed on The Office of Foreign Assets Control Specially Designated Nationals or Blocked Persons list, as**

published and updated by the United States Department of Treasury; and

(r)    Your collection and use of personally identifiable information does not breach TrafficForce's privacy policy or violate any law that governs your collection and use of personal information.

5.    **Communications Solely with TrafficForce**

You will direct all communications regarding any matter arising out of your participation in the Network to TrafficForce and not to any advertiser or publisher, as the case may be.

6.    **Acceptable Use Policies**

To participate in the Network as a publisher, you must abide by the publisher acceptable use policy located on the Website. To participate in the Network as an advertiser, you must abide by the advertiser acceptable use policy located on the Website. It is your responsibility to keep up to date with and adhere to the applicable policy. Failure to comply with these policies may result in TrafficForce limiting ad serving or terminating this agreement.

7.    **Payments to Publishers**

7.1    TrafficForce will pay you a percentage of the sale price of advertisements displayed on the Publisher Sites as determined by TrafficForce for your use of the Network.

7.2    TrafficForce will determine your payable revenue twice a month on the first day and sixteenth day of each month for the period covering the two previous weeks. TrafficForce will send payments to you within approximately ten days if your earned balance is greater than or equal to your minimum payable amount. If your earned balance is less than your minimum payable amount, TrafficForce will not make a payment until your earned balance is greater than or equal to your minimum payable amount.

7.3    You acknowledge that

(a)    any payments that may become due to you are specifically conditioned on TrafficForce's receipt of full payment from the applicable advertiser; and

(b)    if TrafficForce does not receive the applicable payment in full from the applicable advertiser, or TrafficForce's payment from the applicable advertiser is later reversed at any time, TrafficForce may deduct that amount from your future payments.

7.4    If you dispute any payment made in connection with the Network, you will notify TrafficForce in writing no later than 30 days after the disputed payment. Failure to notify TrafficForce will result in your waiver of any claims related to the disputed payment.

7.5    TrafficForce will calculate your payment solely based on the records kept by TrafficForce. No other measurements or statistics will be accepted by TrafficForce or have any effect under this agreement.

7.6     TrafficForce will not be liable for any payment based on any of the following:

    (a)     any fraudulent impressions or clicks generated by any person, robot, automated program, or similar device or for fraudulent impressions or clicks similarly generated on any advertisements, as reasonably determined by TrafficForce;

    (b)     advertisements delivered to end users whose browsers have JavaScript disabled; or

    (c)     impressions commingled with a significant number of fraudulent impressions or fraudulent clicks described in section 7.6(a), or as a result of another breach of this agreement by you for any applicable pay period.

7.7     TrafficForce may withhold payment or charge back your account due to any of the items identified in section 7.6 or any breach of this agreement by you. In addition, if you are past due on any payment to TrafficForce in connection with the Network, TrafficForce may withhold payment until you have made all outstanding payments.

7.8     To ensure proper payment, you are solely responsible for providing and maintaining accurate contact and payment information associated with your account in the Network. TrafficForce may deduct from the newly issued payment any bank fees related to returned or cancelled checks due to a contact or payment information error or omission.

## 8.    Payments from Advertisers

8.1     You will be responsible for all charges up to the amount of each insertion order (IO), or as set out in an online account, and you will pay all charges in U.S. Dollars or in any other currency as agreed to in writing by the parties. Unless the parties agree in writing, you will pay all charges in accordance with the payment terms in the applicable IO or online campaign settings, including any applicable taxes. Late payments bear interest at the rate of 1.5% per month (or the highest rate permitted by law, if less). Charges are exclusive of taxes. You are responsible for paying all taxes, government charges, and reasonable expenses and legal fees TrafficForce incurs collecting late amounts.

8.2     To the fullest extent permitted by law, you waive all claims relating to charges (including any claims for charges based on suspected invalid clicks) unless claimed no later than 60 days after the charge (this does not affect your credit card issuer rights). Charges are solely based on TrafficForce's measurements for the Network, unless otherwise agreed to in writing. Nothing in this agreement or an IO will require TrafficForce to extend credit to any person.

8.3     You acknowledge that TrafficForce may share any credit card and related billing and payment information that you provide to TrafficForce with companies who work on TrafficForce's behalf, including payment processors or credit agencies, solely to check credit, effect payment to TrafficForce, and service your account.

8.4     TrafficForce may withhold deposit or charge your account due to any breach of this agreement by you.

9. **Advertiser Refund Policy**

TrafficForce strives to offer the best service possible to its advertisers. Once an advertiser makes an initial deposit in the Network, it has 30 days to ask for a refund of the account balance if the advertiser is not satisfied with the Network and has remained in compliance with this agreement. As soon as an advertiser makes a second deposit in the Network, TrafficForce will only issue a refund for a balance greater than $50 and TrafficForce will deduct a 10% processing fee from the refund. If TrafficForce cancels or terminates an advertiser's account for breaching this agreement, TrafficForce will not issue a refund.

10. **Prohibited Uses**

10.1   You will not contribute, submit, or make available through the Network, any website or content that is infringing on intellectual property rights, libelous, defamatory, obscene, abusive, offensive, or otherwise violates any law or right of any person. Any fraudulent, abusive, or otherwise illegal activity is grounds for termination.

10.2   You will not, and you will not authorize or encourage any other person to:

(a)   directly or indirectly generate queries, referral events, or impressions of or clicks on any ad (including by clicking on "play" for any video ad) through any automated, deceptive, fraudulent, or other invalid means, including through repeated manual clicks, the use of robots or other automated scripts, query tools, or computer generated search requests, generating blind clicks on any advertisement or zone, or the unauthorized or fraudulent use of other search engine optimization services or software;

(b)   generate impressions or clicks on any type of advertisement through any method that does not display the advertisement as provided by TrafficForce, including IFRAME, IMG SRC, or "ClickJacking;"

(c)   use any advertisement link outside the provided ad zone code, including blind/direct linking, or popups/popunders;

(d)   edit, modify, filter, truncate, or change the order of the information contained in any ad, or remove, obscure, or minimize any ad in any way without authorization from TrafficForce;

(e)   frame, minimize, remove, or otherwise inhibit the complete display of any webpage accessed by an end user after clicking on any part of an ad;

(f)   redirect an end user away from any advertiser page accessed by an end user after clicking on any part of an advertisement; provide a version of the advertiser page that is different from the page an end user would access by going directly to the advertiser page; display a separate, unauthorized interstitial advertisement before directing an end user to a webpage accessed by clicking on any part of an advertisement; intersperse any content between the ad and the advertiser page; or otherwise provide anything other than a direct link from an ad to an advertiser page;

(g)    display any ads on any webpage or any website that contains any hate-related, violent, or illegal content;

(h)    directly or indirectly access, launch, or activate ads through or from, or otherwise incorporate the ads in, any software application, website, or other means other than your own Publisher Sites, and then only to the extent expressly permitted by this agreement;

(i)    "crawl," "spider," index, or in any non-transitory way store or cache information obtained from any ads, or any part, copy, or derivative of it;

(j)    act in any way that violates any other agreement between you and TrafficForce;

(k)    disseminate or cause the spread of malware, ransomware, Trojans, viruses, any malicious code, or auto-installing scripts;

(l)    use any type of .apk, .msi, or any other executable file or other means to auto install any type of spyware, malware, or any other software application that hijacks, maliciously changes, or otherwise adversely affects any end user device;

(m)    use the Network to distribute any type of malicious or misrepresented JavaScript, application, or software;

(n)    use the Network to solicit or privately contact publishers or advertisers for private advertising deals;

(o)    use proxy services, including TOR or VPN, IP or MAC address spoofing, or modification of any visitor data;

(p)    mislead any person to click an advertisement in any way, including making false, misleading, or invalid claims, statements, or promises;

(q)    send unsolicited "spam" emails, post "spam" links, or any other "spam" activity through any electronic media to promote or otherwise solicit traffic or clicks to any website in the Network;

(r)    create a new account to use the Network after TrafficForce has terminated this agreement with you as a result of your breach of this agreement; or

(s)    engage in any action or practice that reflects poorly on TrafficForce or otherwise disparages or devalues TrafficForce's reputation or goodwill.

10.3    You acknowledge that any attempted participation in or violation of any of the above is a material breach of this agreement and that TrafficForce may pursue all legal and equitable remedies against you, including an immediate suspension of your account or termination of this agreement, and the pursuit of all available civil or criminal remedies.

10.4    Certain breaches of the prohibited uses set out in section 10.2 represent a blatant attempt to irreparably harm the goodwill and public image of TrafficForce. Therefore, any

advertiser found using the tactics outlined in sections 10.2(f), 10.2(g), 10.2(k), 10.2(l), 10.2(m), and 10.2(s) will forfeit all outstanding sums held in their advertising accounts as well as facing all other forms of remedy as outlined in section 10.3.

11.    **Investigation**

TrafficForce may investigate any aspect of any account at any time without notice. TrafficForce may restrict your payments or access to the Network or the Website while an investigation is pending. TrafficForce may run diagnostic tests on impressions or clicks without paying you.

12.    **Publicity**

12.1    You hereby grant TrafficForce an irrevocable license to use your trade names, trademarks, service marks, logos, or domain names in presentations, marketing materials, customer lists, financial reports, website listings of customers, or advertisements without your approval.

12.2    If you wish to use TrafficForce's trade names, trademarks, service marks, logos, domain names, and other distinctive brand features, you may do so, so long as your use complies with this agreement.

13.    **Confidentiality**

13.1    **Maintaining Confidentiality**

For as long as it remains confidential information, you will not

(a)    disclose that confidential information except as contemplated in this agreement, or

(b)    use that confidential information other than for purposes of this agreement.

13.2    **Permitted Disclosure**

You will disclose confidential information to only those of your representatives who

(a)    require the confidential information to perform under this agreement (but to the extent practicable, only the part that is required);

(b)    are informed in writing by you of the confidential nature of the confidential information; and

(c)    agree in writing to be bound by the obligations of this section 13.

13.3    **Precautions against Unauthorized Disclosure or Use**

You will take precautions to prevent disclosure or use of confidential information other than as authorized in this agreement. Those precautions must be at least as effective as those taken by you to protect your own confidential information or those that would be taken by a reasonable person in your position, whichever are greater. If you comply with

your obligations under this section 13, you will not be liable for any losses or liabilities of TrafficForce arising out of misappropriation of confidential information from you by any nonparty.

### 13.4    Unauthorized Disclosure or Use by Representatives

If any one or more of your representatives discloses or uses confidential information other than as authorized in this agreement, you will be liable to TrafficForce for that disclosure or use to the same extent that you would have been had you disclosed or used that confidential information.

### 13.5    Notification of Unauthorized Disclosure or Use

If you become aware of disclosure or use of confidential information other than as authorized in this agreement, you will promptly notify TrafficForce of that disclosure or use and will cooperate with TrafficForce in mitigating any adverse consequences to TrafficForce of that disclosure or use.

### 13.6    Return of Confidential Information

On the termination of this agreement, you will promptly, but no later than 15 days after the termination of this agreement:

(a)    Return to TrafficForce all copies of confidential information that, on disclosure, TrafficForce had instructed you to return on the termination of this agreement; and

(b)    Destroy all remaining copies of confidential information disclosed to you under this agreement.

### 13.7    Disclosure Required by Law

(a)    If any proceeding is brought to compel you or any of your representatives to disclose confidential information, or if you or any of your representatives is otherwise required by law to disclose any confidential information, you will do the following:

(i)    Unless by doing so you would violate any law or an order of a government body, notify TrafficForce of that proceeding or that requirement, as the case may be, promptly after learning of it, taking into account for purposes of determining your promptness any time constraints that TrafficForce would face in bringing a proceeding to prevent that disclosure or to protect the confidentiality of any information that is disclosed; and

(ii)    At your expense, cooperate with TrafficForce in any proceeding that TrafficForce brings to prevent that disclosure or to protect the confidentiality of any information that is disclosed.

(b)     It will not constitute a breach of your obligations under this section 13 for you or any of your representatives to disclose confidential information as required by law, on condition that you have complied with your obligations under section 13.7(a) for that disclosure and have delivered to TrafficForce a written opinion of your legal counsel prepared at your expense stating that the disclosure is required by law and that opinion is reasonably acceptable to TrafficForce.

### 13.8   Nondisclosure of Restricted Information

TrafficForce will not disclose to you or any of your representatives any information if doing so would cause TrafficForce to breach a duty to any other person to keep that information confidential or would cause TrafficForce to violate any law or any order of a government body.

### 13.9   Export Controls

You will not export or re-export any confidential information, directly or indirectly, without first obtaining any license required under any export control laws.

### 13.10   No License

TrafficForce's disclosure of confidential information will not constitute a grant to you or any of your representatives of a license to, or any other interest in, any intellectual property of TrafficForce unless stated in this agreement.

### 13.11   No Statement about Accuracy

TrafficForce is not making in this agreement any statement about accuracy of any confidential information. You acknowledge that because you have not relied on, and will not be relying on, any statements made by TrafficForce to you about accuracy of any confidential information, you will have no basis for bringing any claim for fraud about those statements.

### 13.12   Reverse Engineering

You will not reverse engineer, disassemble, or create other works from any software or hardware constituting or included in any confidential information.

### 13.13   Residual Information

Use of residual information for your benefit by any of your representatives to whom confidential information was disclosed in accordance with this section 13 will not breach your obligations under this section 13, on condition that you did not have your representatives intentionally commit to memory the confidential information in question and on condition that you comply with your obligations under section 13.6.

## 14.   Data Protection; Information Rights

### 14.1   You will include conspicuously on your websites a privacy policy that

(a) describes how you collect, use, store, and disclose end user personal data;

(b) discloses the use of, as applicable, cookies, web beacons, and similar tracking technologies on your websites or online advertising campaigns;

(c) offers an easy to use "opt out" method for the end user to opt out of data collection and targeting;

(d) complies with all laws and best practice standards; and

(e) contains language materially similar to the following:

> We use third-party companies to serve ads and collect nonpersonally identifiable information (e.g., the pages you visit, and which links you click, which ads you see and click on, and the categories of search terms you enter) when you visit our website. These companies may use the information outlined above (which does not include your name, address, email address, or telephone number) about your visits to this and other websites to provide advertisements about goods and services of interest to you. These companies often use a cookie or third-party web beacon to collect this information.

14.2 For information about how TrafficForce collects, uses, and shares your information, please review the TrafficForce privacy policy [http://www.trafficforce.com/privacy.html]. You acknowledge that by using the Website you consent to the collection, use, and sharing (as set out in the privacy policy) of this information, including the transfer of this information to the United States or other countries for storage, processing, and use by TrafficForce.

14.3 TrafficForce may retain and use, subject to its privacy policy, all information you provide, including website demographics and contact and billing information. TrafficForce may transfer and disclose to nonparties personally identifiable information about you to approve your participation in the Network, including to nonparties that reside in jurisdictions with less restrictive data protection laws than your own. TrafficForce may also provide information in response to valid legal process, including subpoenas, search warrants, and court orders, or to establish or exercise its legal rights or defend against legal claims. TrafficForce will not be liable to you for any disclose of that information by any nonparty. TrafficForce may share nonpersonally identifiable information about you, including website URLs, website-specific statistics, and similar information collected by TrafficForce, with advertisers, business partners, sponsors, and other nonparties. In addition, you grant TrafficForce the right to access, index, and cache the Publisher Sites, or any part of them, including by automated means including Web spiders or crawlers.

## 15.   Nondisparagement

During this agreement and for two years after its termination, you will not take any action that is intended, or would reasonably be expected, to harm TrafficForce or its reputation or that would reasonably be expected to lead to unwanted or unfavorable publicity to TrafficForce. But nothing

will prevent you from making any truthful statement in connection with any legal proceeding or investigation by TrafficForce or any governmental body.

16.   **No Guarantee**

TrafficForce is not making any guarantee about the level of impressions of ads or clicks on any ad, the timing of delivery of impressions or clicks, the completion of referral events, or the amount of any payment to be made to you under this agreement. You acknowledge that past advertisement performance does not guarantee or suggest similar future performance. You further acknowledge that when buying ads, the click statistics provided are based on past performance of other advertisers and might not reflect the actual traffic they may receive. Actual clicks to an advertiser's website will vary and may be higher or lower than past performance. You acknowledge that sophisticated click fraud exists, is not preventable, and that new methods may come into existence.

17.   **Disclaimers**

17.1   You acknowledge that TrafficForce has no special relationship with or fiduciary duty to you and that TrafficForce has no control over, and no duty to take any action regarding:

(a)   which users gain access to the Website, services, or the Network;

(b)   what content you access or receive via the Website or services, including text, images, or links;

(c)   what content other advertisers and publishers may make available, publish, or promote in connection with the Network;

(d)   what effects any content may have on advertisers or publishers or their users or customers;

(e)   how you or your users or customers may interpret, view, or use the content of the Website;

(f)   what actions you or your users or customers may take as a result of having been exposed to any content; or

(g)   whether the content is being displayed properly in connection with the Network.

17.2   You are solely responsible for the development, operation, and maintenance of your website and all materials that appear on your website used in connection with the Network. TrafficForce disclaims any ownership or control of your website or content, and thus any liability arising from your websites or content. If you are a publisher, you acknowledge that TrafficForce has no control over (and is merely a passive conduit with respect to) any content that may be submitted or published by any advertiser, and that you are solely responsible (and assume all liability and risk) for determining whether that content is appropriate or acceptable to you. If you are an advertiser, you acknowledge that TrafficForce has no control over any content that may be available or published on any publisher site (or otherwise), and that you are solely responsible (and assume all

liability and risk) for determining whether that content is appropriate or acceptable to you.

17.3  TrafficForce does not control, endorse, or adopt any ad and is not making any warranty about the content of the ads, including about the accuracy or decency of any ad. TrafficForce will not be liable for any ad and is not required to change, update, or review any ad. You will not remove, obscure, hinder, reverse engineer, or otherwise interfere with any ad on the Publisher Sites.

17.4  You hereby release TrafficForce from all liability in any way relating to your acquisition (or failure to acquire), provision, use, or other activity with respect to the content in connection with the Website or services. The Website may contain, or direct you to websites containing, material that some people may find offensive or inappropriate. TrafficForce is not making any representations concerning any content contained in or accessed through the Website or services, and TrafficForce will not be liable for the accuracy, copyright/trademark compliance, legality, or decency of material contained in or accessed through the Website or services.

17.5  TrafficForce is not making any warranty—express, implied, oral, or otherwise—that

(a)  the use of the Network, the services, and the Website will be timely, uninterrupted, or error-free (whether as a result of technical failure, acts or omissions of nonparties, or other causes) or will operate in combination with any other hardware, software, system, or data;

(b)  the Network, the services, or the Website will meet your requirements or expectations;

(c)  the results of any advertising campaign or the quality or productivity of advertisements or web traffic will meet your requirements or expectations;

(d)  the Network, the services, or the Website will be accurate or reliable;

(e)  errors or defects in the Network, the services, or the Website will be corrected; or

(f)  the servers that make the Network, the services, and the Website available are free of viruses or other harmful components.

17.6  TrafficForce offers the Network, the services, and the Website "as is." TrafficForce is not making any warranty, either express or implied, including implied warranty of merchantability, fitness for a particular purpose, noninfringement, title, security, and privacy for the Network, the services, or the Website. No advice or information, whether oral or written, obtained from TrafficForce or elsewhere will create any warranty not expressly stated in this agreement.

## 18.  Limit of Liability

18.1  The Network, the services, or the Website may be subject to limitations, delays, and other

problems inherent in the use of the Internet and electronic communications. TrafficForce will not be liable for any delays, delivery failures, or other damage resulting from these problems.

18.2    TrafficForce will not be liable to you for any of the following:

(a)    Errors, mistakes, or inaccuracies of the Network, the services, or the Website;

(b)    Content or conduct that is infringing, inaccurate, obscene, indecent, offensive, threatening, harassing, defamatory, libelous, abusive, invasive of privacy, or illegal;

(c)    Unauthorized access to or use of TrafficForce's servers and any personal or financial information stored in them, including unauthorized access or changes to your account, submissions, transmissions, or data;

(d)    Interruption or cessation of transmission to or from the Website;

(e)    Denial-of-service attack (DoS) or distributed denial-of-service attack (DDoS);

(f)    Bugs, viruses, Trojan horses, malware, ransomware, or other disabling code that may be transmitted to or through the Website by any person or that might infect your computer or affect your access to or use of the Network, the services, the Website, or your other services, hardware, or software;

(g)    Incompatibility between the Network, the services, or the Website and your other services, hardware, or software;

(h)    Delays or failures you might experience in starting, conducting, or completing any transmissions to or transactions through or with the Website; or

(i)    Loss or damage incurred because of the use of any content posted, emailed, sent, or otherwise made available through the Network or the Website.

18.3    TrafficForce will not be liable to you for breach-of-contract damages that TrafficForce could not reasonably have foreseen on entry into this agreement. Further, TrafficForce will not be liable to you—regardless of theory of liability and even if you advised TrafficForce of the possibility of these damages—for damages for any of the following:

(a)    loss of use;

(b)    loss of services;

(c)    loss of profits;

(d)    loss of revenue;

(e)    loss of goodwill;

(f)    loss of contracts;

    (g)      loss of data;

    (h)      loss of privacy;

    (i)      loss of business or opportunity;

    (j)      computer failure related to your access of or your inability to access the Network, the services, or the Website; or

    (k)      cost of obtaining substitute services related to the Network, the services, or the Website.

18.4    Except as stated in this agreement, neither party will be liable to the other party for indirect, incidental, special, exemplary, or punitive damages arising from this agreement, regardless of theory of liability and even if that party has been advised of the possibility of these damages, including loss of revenue or anticipated profits or lost business.

18.5    TrafficForce's total cumulative liability to you will not exceed the greater of the total amount owed to you under this agreement and $500.

## 19.    Loss Payment (aka Indemnification)

### 19.1    In General

You will pay TrafficForce for any loss of TrafficForce's that is caused by your

    (a)      use of the Network or the services,

    (b)      advertisements,

    (c)      Publisher Sites,

    (d)      selection and use of targets,

    (e)      breach of this agreement,

    (f)      actual or alleged infringement of nonparty intellectual property rights,

    (g)      actual or alleged violation of any other nonparty rights,

    (h)      actual or alleged violation of law,

    (i)      actual or alleged fraudulent or deceptive conduct or trade practices,

    (j)      actual or alleged negligent conduct,

    (k)      actual or alleged intentional conduct, or

    (l)      actual or alleged criminal conduct.

But you are not required to pay if the loss was caused by TrafficForce's actual intentional misconduct.

19.2   **Definitions**

(a)   "*Loss*" means an amount that TrafficForce is legally responsible for or pays in any form. Amounts include, for example, a judgment, a settlement, a fine, damages, injunctive relief, staff compensation, a decrease in property value, and expenses for defending against a claim for a loss (including fees for legal counsel, expert witnesses, and other advisers). A loss can be tangible or intangible; can arise from bodily injury, property damage, or other causes; can be based on tort, breach of contract, or any other theory of recovery; and includes incidental, direct, and consequential damages.

(b)   A loss is "*caused by*" an event if the loss would not have occurred without the event, even if the event is not a proximate cause of the loss.

19.3   **TrafficForce's Duty to Notify**

TrafficForce will notify you before the 15th business day after TrafficForce knows or should reasonably have known of a claim for a loss that you might be obligated to pay. TrafficForce's failure to timely notify you does not terminate your obligation, except to the extent that the failure prejudices your ability to defend the claim or mitigate losses.

19.4   **Legal Defense of a Claim**

(a)   **TrafficForce's Control**

TrafficForce has control over defending a claim for a loss (including settling it), unless TrafficForce directs you to control the defense.

(b)   **Direction to Control**

If TrafficForce directs you to control the defense, each of the following applies:

(i)   You may choose and retain legal counsel.

(ii)   TrafficForce may retain its own legal counsel at its expense.

(iii)   You will not settle any litigation without TrafficForce's written consent if the settlement

(1)   imposes a penalty or limitation on TrafficForce,

(2)   admits TrafficForce's fault, or

(3)   does not fully release TrafficForce from liability.

(c)   **Good Faith**

You and TrafficForce will cooperate with each other in good faith on a claim.

19.5   **No Exclusivity**

TrafficForce's rights under this section do not affect other rights that TrafficForce might have.

20.   **Dispute Resolution**

20.1   **Litigation Election**

Either party may elect to litigate the following type of case or controversy:

(a)   an action seeking equitable relief,

(b)   a dispute related to claims subject to indemnification under section 19, or

(c)   a suit to compel compliance with this section 20.

20.2   **Negotiation**

Each party will give the other a reasonable opportunity to comply before it claims that the other has not met its obligations under this agreement. The parties will first meet and negotiate with each other in good faith to try to resolve all disputes between the parties arising out of, or relating to the subject matter of, this agreement. The party raising a dispute will submit to the other party a written notice and supporting material describing all issues and circumstances related to the dispute (a "*dispute notice*"). A primary representative designated by each party will try to resolve the dispute.

20.3   **Mediation**

(a)   If the parties' primary representatives are unable to resolve the dispute no later than 30 days after receiving the dispute notice, either party may, by notice to the other party and the International Chamber of Commerce (ICC), demand mediation under the ICC Mediation Rules.

(b)   Mediation will take place in Victoria, Republic of Seychelles, and the language of the mediation will be English. Each party will bear its own costs in mediation and the parties will share equally between them all third-party mediation costs unless the parties agree otherwise in writing.

(c)   Each party will participate actively and constructively in mediation proceedings once started and will attend at least one joint meeting between the mediator and the parties. Any party may terminate mediation at any time after an initial discussion between the mediator and the parties.

20.4 **Arbitration**

(a) If the parties are unable to settle a dispute through mediation, the parties will settle any unresolved dispute arising out of or relating to the subject matter of this agreement, or the breach of it, by arbitration administered by the ICC in accordance with the Rules of Arbitration of the ICC. The arbitrator, and not any court or agency, will have exclusive authority to resolve any dispute arising under or relating to the interpretation, applicability, enforceability, or formation of this agreement, including any claim that any part of this agreement is void or voidable.

(b) A single arbitrator will preside over the arbitration and issue a final award on all issues submitted to the arbitrator. The arbitrator may grant any relief that would be available in a court, except that the arbitrator must not award punitive or exemplary damages, or damages otherwise limited or excluded in this agreement. The arbitrator's award will bind the parties and any court of competent jurisdiction may enter it as a judgment.

(c) Arbitration will take place in Victoria, Republic of Seychelles, and the language of the arbitration will be English. The parties will bear equally the costs of arbitration, including the fees and expenses of the arbitrator, and each party will bear the costs associated with its case.

(d) Unless required by law, neither a party nor an arbitrator will disclose the existence, content, or results of any arbitration under this agreement without the advance written consent of both parties.

20.5 **Equitable Remedies**

You acknowledge that breach by you of your obligations under this agreement could cause irreparable harm for which damages would be an inadequate remedy. If any breach occurs or is threatened, TrafficForce may seek an injunction, a restraining order, or any other equitable remedy, in each case without posting a bond or other security and without proof of actual damages.

20.6 **Jurisdiction**

(a) If a party brings any litigation proceeding authorized under section 20.1 or section 20.5, that party will bring that proceeding only in the courts located in the Republic of Seychelles, and each party hereby submits to the exclusive jurisdiction of those courts for purposes of any proceeding.

(b) Each party hereby waives any claim that any proceeding brought in accordance with section 20.6(a) has been brought in an inconvenient forum or that the venue of that proceeding is improper.

20.7 **Recovery of Expenses**

(a) In any proceedings between the parties arising out of, or relating to the subject

matter of, this agreement, the prevailing party will be entitled to recover from the other party, in addition to any other relief awarded, all expenses that the prevailing party incurs in those proceedings, including legal fees and expenses.

(b)     For purposes of section 20.7(a), "*prevailing party*" means, for any proceedings, the party in whose favor an award is rendered, except that if in those proceedings the award finds in favor of one party on one or more claims or counterclaims and in favor of the other party on one or more other claims or counterclaims, neither party will be the prevailing party. If any proceedings are voluntarily dismissed or are dismissed as part of settlement of that dispute, neither party will be the prevailing party in those proceedings.

### 20.8   Jury Trial Waiver

Each party hereby waives its right to a trial by jury in any proceedings arising out of, or relating to the subject matter of, this agreement. Either party may enforce this waiver up to and including the first day of trial.

### 20.9   Class Action Waiver

The parties will conduct all proceedings to resolve a dispute in any forum on an individual basis only. Neither you nor TrafficForce will seek to have any dispute heard as a class action or in any other proceeding in which either party acts or proposes to act in a representative capacity. The parties will not combine any proceeding with another without the advanced written consent of all parties to all affected proceedings.

### 20.10   Limited Time to Bring Claims

A party will not bring a claim arising out of, or related to the subject matter of, this agreement more than one year after the cause of action arose. Any claim brought after one year is barred.

## 21.   Termination; Cancellation

### 21.1   By TrafficForce

TrafficForce may, at any time, (1) terminate the Network, (2) terminate this agreement, or (3) cancel one or more ads or your use of any target. TrafficForce will use reasonable efforts to notify you by email of any termination or cancellation within a reasonable period.

### 21.2   By You

You may cancel any ads or terminate this agreement with or without cause at any time by deactivating a campaign or by removing the program ad codes from your Publisher Sites.

21.3    **Effect**

On termination of this agreement:

(a)    you will remain liable for any amount due for ads already delivered; and

(b)    all provisions of this agreement that by their nature should survive termination will survive termination, including disclaimers and limitations of liability.

22.    **General**

22.1    **Entire Agreement**

This agreement constitutes the entire agreement of the parties with respect to the subject matter of this agreement. It supersedes all earlier written or oral discussions, negotiations, proposals, undertakings, understandings, and agreements between the parties concerning the transactions contemplated in this agreement. No party may use any of the earlier or contemporaneous negotiations, preliminary drafts, or previous versions of this agreement leading up to its signature and not stated in this agreement to construe or affect the validity of this agreement. No conditions, definitions, representations, or warranties concerning the subject matter other than as expressly stated in this agreement will bind either party. Each party acknowledges that no party made or relied on a representation, inducement, or condition not stated in this agreement.

22.2    **Amendment**

(a)    TrafficForce may change this agreement on one or more occasions, on condition that changes will not apply to ongoing disputes or to disputes arising out of events occurring before the posted changes. TrafficForce will notify you through the Website or by email of any changes to this agreement. Changes will become effective when posted on this page. It is your responsibility to check this page periodically for changes to this agreement. If you continue to participate in the Network after any change, TrafficForce will consider your continued participation as acceptance of the change unless you notify TrafficForce in writing of your disagreement and the reasons for your disagreement no later than 15 days after the change. TrafficForce will contact you no later than 15 days after receiving your notice of disagreement to address your notice and try to reach a mutually amicable resolution. If TrafficForce is unable to resolve your disagreement, your sole remedy is to terminate your participation in the Network.

(b)    You may amend this agreement only by a signed written agreement of the parties that identifies itself as an amendment to this agreement.

22.3    **Assignment and Delegation**

(a)    **Assignments**

TrafficForce may assign its rights under this agreement without your consent. You

will not assign any of your rights under this agreement, except with TrafficForce's advance written consent. TrafficForce will not unreasonably withhold its consent.

(b)   **Delegations**

TrafficForce may delegate any performance under this agreement without your consent. You will not delegate any performance under this agreement, except with TrafficForce's advance written consent. TrafficForce will not unreasonably withhold its consent.

(c)   **Ramifications of Purported Assignment or Delegation**

Any purported assignment of rights or delegation of performance in breach of this section 22.3 is void.

22.4   **Waivers**

(a)   **No Oral Waivers**

The parties may waive any provision in this agreement only by a writing signed by the party or parties against whom the waiver is sought to be enforced.

(b)   **Effect of Failure, Delay, or Course of Dealing**

No failure or delay in exercising any right or remedy, or in requiring the satisfaction of any condition, under this agreement, and no act, omission, or course of dealing between the parties, operates as a waiver or estoppel of any right, remedy, or condition.

(c)   **Each Waiver for a Specific Purpose**

A waiver made in writing on one occasion is effective only in that instance and only for the purpose stated. A waiver once given is not to be construed as a waiver on any future occasion or against any other person.

22.5   **Severability**

The parties intend as follows:

(a)   that if any provision of this agreement is held to be unenforceable, then that provision will be modified to the minimum extent necessary to make it enforceable, unless that modification is not permitted by law, in which case that provision will be disregarded;

(b)   that if modifying or disregarding the unenforceable provision would result in failure of an essential purpose of this agreement, the entire agreement will be held unenforceable;

(c)   that if an unenforceable provision is modified or disregarded in accordance with

this section, then the rest of the agreement will remain in effect as written; and

(d)   that any unenforceable provision will remain as written in any circumstances other than those in which the provision is held to be unenforceable.

22.6   **Notices**

(a)   **Form**

All notices and other communications between the parties will be in writing.

(b)   **Method**

(i)   **Sending Notice to TrafficForce**

You may send notice to TrafficForce by email at legal@trafficforce.com unless a specific email address is listed on the Website for giving notice. TrafficForce may change its contact information on one or more occasions by posting the change on the Website. Please check the Website for the most current information for sending notice to TrafficForce.

(ii)   **Sending Notice to You**

You hereby consent to receiving any notice from TrafficForce in electronic form either (1) by email to the email address listed in your account or (2) by posting the notice on a place on the Website chosen for this purpose. You may change your contact information by updating the contact information in your account.

(c)   **Receipt**

TrafficForce will consider an email notice received by it only when its server sends a return message to you acknowledging receipt. TrafficForce will consider notices sent to you by email received when TrafficForce's email service shows transmission to your email address. All other notices will be effective on receipt by the party to which notice is given, or on the fifth day after mailing, whichever occurs first.

22.7   **Rights and Remedies Cumulative**

Any enumeration of a party's rights and remedies in this agreement is not intended to be exhaustive. A party's exercise of any right or remedy under this agreement does not preclude the exercise of any other right or remedy. All of the parties' rights and remedies are cumulative and are in addition to any other right or remedy set out in this agreement, any other agreement between the parties, or which may now or later exist at law or in equity, by statute or otherwise.

### 22.8   Governing Law

The laws of the Republic of Seychelles—without giving effect to its conflicts of law principles—govern all matters arising out of, or relating to the subject matter of, this agreement, including its validity, interpretation, construction, performance, and enforcement.

### 22.9   Force Majeure

(a)   If a force majeure event prevents a party from complying with any one or more obligations under this agreement, that inability will not constitute a breach if (1) that party uses reasonable efforts to perform those obligations, (2) that party's inability to perform those obligations is not due to its failure to (A) take reasonable measures to protect itself against events or circumstances of the same type as that force majeure event or (B) develop and keep a reasonable contingency plan to respond to events or circumstances of the same type as that force majeure event, and (3) that party complies with its obligations under section 22.9(c).

(b)   For purposes of this agreement, *"force majeure event"* means, for any party, any event or circumstance, whether or not foreseeable, that was not caused by that party (other than a strike or other labor unrest that affects only that party, an increase in prices or other change in general economic conditions, a change in law, or an event or circumstances that results in that party's not having sufficient funds to comply with an obligation to pay money) and any consequences of that event or circumstance.

(c)   If a force majeure event occurs, the noncomplying party will promptly notify the other party of occurrence of that force majeure event, its effect on performance, and how long the noncomplying party expects it to last. From then on, the noncomplying party will update that information as reasonably necessary. During a force majeure event, the noncomplying party will use reasonable efforts to limit damages to the other party and to resume its performance under this agreement.

### 22.10   No Third-Party Beneficiaries

This agreement does not, and the parties do not intend it to, confer any rights or remedies on any person other than the parties to this agreement.

### 22.11   Relationship of the Parties

The parties intend that their relationship will be that of independent contractors and not business partners. This agreement does not, and the parties do not intend it to, create a partnership, joint venture, agency, franchise, or employment relationship between the parties and the parties expressly disclaim the existence of any of these relationships between them. Neither of the parties is the agent for the other, and neither party has the right to bind the other on any agreement with a third party.

### 22.12 Successors and Assigns

This agreement binds and inures to the benefit of the parties and their respective successors and assigns. This section does not address, directly or indirectly, whether a party may assign its rights or delegate its obligations under this agreement.

### 22.13 Further Assurances

The parties will take any further actions, or sign any further documents, as may be necessary to implement and carry out the intent of this agreement.

### 22.14 Counterparts

The parties may sign this agreement in any number of counterparts. The parties will consider each counterpart an original, and all counterparts, when taken together, will form the same agreement.

### 22.15 Signatures; Electronic Signatures

(a) The parties may sign this agreement by fax or electronically instead of an original signature. The parties will consider fax or electronic signatures as original signatures that bind them to this agreement.

(b) Any affirmation, assent, or agreement you send through the Website in response to a prompt will bind you. You acknowledge that when you click on an "I agree," "I consent," or other similarly worded "button" or entry field using a finger, mouse, keystroke, or other computer device, this action is the legal equivalent of your handwritten signature and binds you in the same way.

### 22.16 Entity Authority

(a) Each individual that signs this agreement for an entity states that the following facts are accurate:

(i) he or she has full authority to sign this agreement for that entity, and

(ii) that entity has taken all necessary actions to authorize the signing of this agreement.

(b) Each entity states that this agreement does not breach that entity's articles, certificates, bylaws, or any other agreement or law that binds that entity.

### 22.17 Voluntary Agreement

(a) The parties have signed this agreement voluntarily and for valid reasons.

(b) The parties acknowledge that they

(i) have carefully read this agreement,

    (ii)    discussed it with their attorneys or other advisors,

    (iii)   understand all of the terms, and

    (iv)   will comply with it.

(c)    The parties have relied on the advice of their attorneys or other advisors about the terms of this agreement and waive any claim that the terms should be construed against the drafter.

### 22.18   No Reliance

Each party acknowledges that in signing this agreement, that party does not rely and has not relied on any statement by the other party or its agents, except those statements contained in this agreement.

### 22.19   Permission to Send Emails to You

You grant TrafficForce permission to email notices, advertisements, and other communications to you, including emails, advertisements, notices, and other communications containing adult oriented material, sexual content and language, and images of nudity unsuitable for minors. Your permission will continue until you ask TrafficForce to remove you from its email list. For more information, please see the privacy policy.

### 22.20   Electronic Communications Not Private

TrafficForce does not provide facilities for sending or receiving confidential electronic communications. You should consider all messages sent to TrafficForce or from TrafficForce as open communications readily accessible to the public. You should not use the Website to send or receive messages you only intend the sender and named recipients to read. Users or operators of the Website may read all messages you send to the Website regardless of whether they are intended recipients.

### 22.21   Feedback

TrafficForce encourages you to give feedback about TrafficForce, the Network, the services, or the Website. But TrafficForce will not treat as confidential any suggestion or idea provided by you, and nothing in this agreement will restrict TrafficForce's right to use, profit from, disclose, publish, or otherwise exploit any feedback, without paying you.

### 22.22   English language

TrafficForce has drafted this agreement in the English language. No translation into any other language will be used to interpret or construe this agreement. All services, support, notices, designations, specifications, and communications will be provided in English.

### 22.23  Definitions

As used in this agreement, the following definitions—irrespective of capitalization or plurality—apply:

(a)　*"Advertisers"* means persons who buy advertising through the TrafficForce service.

(b)　*"Confidential information"* means the following:

　　(i)　Information (other than excluded information) relating to TrafficForce and its business that TrafficForce discloses to you during this agreement, including

　　　　(1)　all TrafficForce software, technology, programming, technical specifications, materials, guidelines, and documentation you learn, develop, or obtain that relate to the Network;

　　　　(2)　click-through rates or other statistics relating to performance in the Network provided to you by TrafficForce;

　　　　(3)　individual contact information and information about TrafficForce's marketing, plans, pricing, products, services, and technical environment; and

　　　　(4)　any other information designated in writing by TrafficForce as "confidential" or any designation to the same effect; and

　　(ii)　Derived information.

(c)　*"Content"* means the data contained inside a website, including text, links, software, scripts, graphics, images, sounds, music, videos, audiovisual combinations, interactive features, and any other materials found on a website.

(d)　*"Derived information"* means information (including notes, analyses, compilations, and summaries) that is in writing or embodied in an electronic medium and that you or any of your representatives derive, in whole or in part, from any information described in section 22.23(b)(i).

(e)　*"Excluded information"* means information that comes within any of the following categories, with you having the burden of establishing that any information constitutes excluded information:

　　(i)　Other than personally identifiable information, information that is or becomes public other than as a result of breach of any obligation under this agreement;

　　(ii)　Information that, when it is disclosed, is already in the possession of you or any of your representatives as the result of disclosure by a person that

was not under an obligation to TrafficForce to keep that information confidential;

(iii) Information that, after it is disclosed under this agreement, is disclosed to you or any of your representatives by a person that was not then under an obligation to TrafficForce to keep that information confidential; and

(iv) Information that you develop independently before TrafficForce discloses equivalent information to you.

(f) "*Government body*" means

(i) the government of a country or of a political subdivision of a country;

(ii) an instrumentality of any government;

(iii) any other individual, entity, or organization authorized by law to perform any executive, legislative, judicial, regulatory, administrative, military, or police functions of any government; or

(iv) an intergovernmental organization.

(g) "*Intellectual property*" means inventions, concepts, techniques, plans, designs, methodologies, procedures, programs, approaches, ideas, know-how, computer software, technology, writings, graphics, other works of authorship, trademarks, service marks, logos, trade names, and (in the case of the last four) the goodwill associated with each.

(h) "*Intellectual-property right*" means any intellectual-property right or industrial-property right existing by law at the relevant time anywhere in the world, including the right to sue for present or past infringement of it. "Intellectual-property right" includes:

(i) all rights (whether registered or unregistered) in trade secrets; confidential information; inventions, patents; trademarks, service marks, and trade names; Internet domain names; copyrights; designs; rights of publicity; and mask works;

(ii) any application then pending for an intellectual-property right, including an application for a patent or to register a copyright or trademark;

(iii) any right to file an application for an intellectual-property right; and

(iv) any right to claim priority for an application for an intellectual-property right.

(i) "*Law*" means all provisions of a constitution, statute, regulation, ordinance, rule, judgment, order, or other obligation, requirement, or prohibition having legally binding effect at the relevant time.

(j) *"Liability"* means liability in or for breach of contract, misrepresentation, restitution, or any other cause of action related to this agreement.

(k) *"Person"* means an individual, corporation, partnership, limited liability company, association, trust, unincorporated organization, or other legal entity or organization, or government body.

(l) *"Publishers"* means persons who sell advertising through the TrafficForce service.

(m) *"Representative"* means, as to an entity, any of that entity's directors, officers, employees, agents, consultants, advisors, and other representatives.

(n) *"Residual information"* means, as to any individual, any confidential information that the individual remembers without any need to refer to that confidential information as fixed in a tangible medium.

### 22.24  Usages

In this agreement, the following usages apply:

(a) Actions permitted under this agreement may be taken at any time and on one or more occasions in the actor's sole discretion.

(b) References to a statute will refer to the statute and any successor statute, and to all regulations promulgated under or implementing the statute or successor, as in effect at the relevant time.

(c) References to numbered sections in this agreement also refer to all included sections. For example, references to section 6 also refer to 6.1, 6.1(a), etc.

(d) References to a governmental or quasi-governmental agency, authority, or instrumentality will also refer to a regulatory body that succeeds to the functions of the agency, authority, or instrumentality.

(e) "A or B" means "A or B or both." "A, B, or C" means "one or more of A, B, and C." The same construction applies to longer strings.

(f) "Including" means "including, but not limited to."

(g) "$" means United States Dollars.

(h) *Garner's Modern American Usage* (3d ed. 2009) applies to interpret usage, grammar, and syntax not otherwise addressed by this section.

Download in PDF format (docs/terms.pdf)


Twitter (http://twitter.com/trafficforce1)


Facebook (http://www.facebook.com/trafficforce)

Terms of Service (terms.html) | Privacy Policy (privacy.html) | DMCA Notice (dmca.html) | Acceptable Use Policy (aup.html)

35 of 36                                                                                     6/9/2016 12:28 PM

Copyright © 2016 Traffic Force. All Rights Reserved.

# EXHIBIT D

# Barbados Corporation Search

CYBERWEB LTD.

# 28629          (IBC)

Date Inc.          2007-04-30

Certificate of Amendment dated 2015-01-13          (name change)

Prior name: MXN LTD.

Nature of Business:          Internet Marketing, company primarly in the USA

Registered Office:          "Coconut Creek House"
                            Derricks, St.James

Mail Address:          "Coconut Creek House"
                       Derricks, St.James

Directors as of: 2013-09-20

Paul Raynor Keating          -          4 Eaton Place, Flat 4 London SW1X 8AD, U.K.

Kristen Edward Richardson          -          63 Edgehill Heights, St.Thomas


Previous Registered Office          -          Suite 29 1st Floor Beckwith Mall.

2008-02-17:
Resignation of David Singh Koonar

# EXHIBIT E

# Email Thread From Ross Alan Re: Content Partnership Agreement



---------- Forwarded message ----------
From: **Ross Allan** <ross@netmsi.com>
Date: Tue, Sep 18, 2012 at 4:55 AM
Subject: Re: paidperview.com
To: Lewis Thornton <lewis@fuckyoucash.com>
Cc: Adam Silverman <silverman.adam@gmail.com>, Glen Camara <glen@netmsi.com>


Excellent Lewis. Glad you are almost ready to get going.
If you need anything further, Glen or Kris are only too happy to help.


Ross


On Sun, Sep 16, 2012 at 9:22 PM, Lewis Thornton <lewis@fuckyoucash.com> wrote:
  Hi Ross,

  Thank you for the assistance. I have been talking with Kris and had this all sorted / approved and
  ready to go. Our media guys will start uploading clips Monday morning.

  Thank you Ross, hope you are well and talk soon.

  Kind Regards,

  Lewis


  On 14/09/2012 5:46 PM, Ross Allan wrote:

      Hey Lewis

      I'm cc'ing Glen on this email who will be able to answer those questions for you
      better, I'm not as familiar with Paidperview as he is.

      Glen can you answer the questions below for Lewis? Also, let him know if his videos
      were approved yet.


      Thanks in advance
      Ross

On Mon, Sep 10, 2012 at 10:56 PM, Lewis Thornton <lewis@fuckyoucash.com> wrote:

Hi Ross,

Thank you, I have gone a head and added a few of our sites in which are now pending. I am awaiting a new banner for one of our other sites before I add that tomorrow.

Could you please approve the sites, also, are we able to edit the banner displayed for PornPros as I see that was already added in by the admin.

Thank you Ross, once its all approved I will have my media staff start uploading.

Talk soon,

Kind Regards,

Lewis

On 10/09/2012 11:22 PM, Ross Allan wrote:

Hey Lewis

Your account is approved and ready for use.
From here you can do everything in the admin, you need to go in and add your sites, you'll need a 200x80 banner for every site for under the player page.
If you want to have a Channel, you can create them, Adam mentioned he didn't so just skip that part.

Other than that, everything is really easy, you can start uploading your videos too, we'll approve everything for you and you'll start to get videos live.
If you need any help with anything at all feel free to call me at the office on 519 987 0600. I'm leaving the office today to fly home to Scotland for 10 days, I'll still be checking in on emails and will actually be in a better time zone for you given you are in Australia. So let me know what you need.

Thanks
Ross

On Mon, Sep 10, 2012 at 12:51 AM, Lewis Thornton <lewis@fuckyoucash.com> wrote:

Hi Ross,

I wanted to touch base with you and discuss getting this set up. What do you guys need to get this going?

I have created an account at PaidPerView under the username "pornpros" - Please advise on how to proceed from here.

We have a large selection of content from our Passion-HD and PureMature sites, as well as our PornPros network. Let me know if you need anything in terms of marketing material or further.

Thanks Ross, talk soon.

Kind Regards,

Lewis

On 8/09/2012 4:44 AM, Ross Allan wrote:

> Sounds good Lewis. Have a great weekend!
>
> On Thu, Sep 6, 2012 at 9:25 PM, Lewis Thornton <lewis@fuckyoucash.com> wrote:
>> Hi Adam,
>>
>> Sounds good mate, I am keen to see get our videos on porn.com. Lets discuss this and get back to you soon Ross.
>>
>> Thank you,
>>
>> Kind regards,
>>
>> Lewis
>>
>> On 7/09/2012 2:00 AM, Adam Silverman wrote:
>>
>>> Lewis,
>>>
>>> Check it out, basically a tube submission progrma for porn.com that also includes a payout for views.  Ross, who works for the program contacted me.
>>>
>>> I think it's worth a test, hit me up privately to discuss.  There is a channel option, I think we should turn this down and simply submit our videos and give it a test run.
>>>
>>> -a.
>>>
>>> --
>>> Respectfully Yours,
>>>
>>> Adam Silverman

8/7/2016

--
Lewis
lewis@fuckyoucash.com
ICQ 338 009 296

--
Ross Allan
Traffic Force
ICQ: 164643450
Skype: Rosscoe17

--
Lewis
lewis@fuckyoucash.com
ICQ 338 009 296

--
Ross Allan
Traffic Force
ICQ: 164643450
Skype: Rosscoe17

--
Lewis
lewis@fuckyoucash.com
ICQ 338 009 296

--
Ross Allan
Traffic Force
ICQ: 164643450
Skype: Rosscoe17

--
Lewis
lewis@fuckyoucash.com
ICQ 338 009 296

--
Ross Allan
Traffic Force
ICQ: 164643450
Skype: Rosscoe17


--
Respectfully Yours,

Adam Silverman

# EXHIBIT F

# Statement of Claim
# Barbados Claim



SUPREME COURT OF BARBADOS

IN THE HIGH COURT OF JUSTICE

DRAWN AND PREPARED BY

ZARINA KHAN
ATTORNEY-AT-LAW
Prospect Chambers
"Summerland House"
Prospect Road, St James
BB24003, Barbados

CLAIM NO.  CV 600/2016

**BETWEEN:**

CYBERWEB LTD

NETMEDIA SERVICES INC

SAGAN LTD

GLP 5 INC

GIM CORP

DAVID KOONAR

**CLAIMANTS**

**AND**

AMA MULTIMEDIA LLC

ADAM SILVERMAN

**DEFENDANTS**

## STATEMENT OF CLAIM

1. The Claimants collaborate to carry on business online on the world-wide-web.

    1.1    The First Claimant, Cyberweb Ltd, is an International Business Company incorporated in Barbados and licensed under the International Business Companies Act CAP   of the Laws of Barbados and having its registered office situate at Coconut Creek House, Derricks in the parish of Saint James in Barbados.

    1.1.1    Cyberweb Ltd is in the owner and/or operator of one or more Internet web sites, which provide inter-alia specific types of entertainment formatted for a defined category of users.



1.2     The second named Claimant, Netmedia Services Inc., is a limited liability company incorporated in Canada and which has its registered office situate at 5060 Tecumseh Road East, Windsor, Ontario Canada.

1.2.1   Netmedia has a technical services agreement with Cyberweb Ltd. pursuant to which it provides certain general services pertaining to maintenance and operation of Cyberweb Ltd. websites

1.3     The Third named Claimant, Sagan Ltd., is a company incorporated in the Seychelles and has its registered office situate at Suite 9 Asuya Estate, Revolution Avenue, Victoria Mahe in the Seychelles.

1.3.1   Sagan Ltd. is the legal owner and/or operator and/or operator of one or more internet web sites which provide inter-alia specific types of entertainment formatted for a defined category of users.

1.4     The Fifth named Claimant, GIM CORP, is an International Business Company incorporated in Barbados and licensed under the International Business Companies Act CAP  of the Laws of Barbados and having its registered office situate at Coconut Creek House, Derricks in the parish of St James in Barbados.

1.5.1   GIM Corp is an aggregator of content for use on websites. It obtains such content from third parties by purchase or license for distribution via the websites owned and/or operated by the other Claimants as stated herein.

2.  On or about the 10th day of September, 2012 GIM Corp entered into an agreement titled "Content Partner Revenue Sharing Agreement" (hereafter "RSA") with the Defendants whereby the Defendants agreed to provide certain web content for distribution by GIM Corp and its affiliates on websites owned and/or operated by the Claimants as hereinbefore stated at paragraph 1.

2.1 The RSA was entered into in the following manner:
   (i)     On the 10th September 2012 at 00:49:09 a.m. the Defendants made an online application for an account with GIM Corp from the IP address 110.142.72.225;
   (ii)    GIM Corp sent to the Defendants an Email confirmation on 2012-09-10 00:49:29 of the Defendants' request for the account from the IP address 110.142.72.225;
   (iii)   The opening of the account was approved by GIM Corp on the 2012-09-10 at 09:07:36 a.m.

(iv)    The contract was entered into by the Defendant 2012-09-10 at 20:54:40 p.m. by the Defendant logging in and accepting the terms of the contract by utilizing a click through acceptance on the internet.

3.  The RSA formed an integral part of GIM Corp "Revenue Sharing Program" created and operated by the Claimant GIM Corp.

3.1 Agreeing to the RSA was a condition precedent to participation in that Revenue Sharing Program. If the Defendant/customer did not agree to the RSA they were not given access to the revenue sharing program and could not upload their content or materials.

4.  In consideration thereof the Defendants became part of the GIM Corp Revenue Sharing Program and entitled to share in certain of the revenues generated under that Program.

4.1 The RSA and Revenue Sharing Program allowed for the Defendant content owners who had agreed to license their content under the RSA to provide content to GIM Corp and, in exchange for permitting GIM Corp to distribute such content to receive a percentage of certain advertising revenues earned in connection with the display of such content on various websites, including those owned and/or operated by one or more of the other Claimants including the websites referred to in paragraph 1 herein.

4.2 The RSA specifically provided the Licensee and its affiliates thereunder the right to make available for stream or download content provided by the Licensor. Such rights are articulated in the definition of the Purpose of the RSA, which recites as facts the following:

> Clause B "Licensee (here, Defendants) desires to provide the Content to end users of a single/(group of) website(s) (the "Website(s)") on the Worldwide Web, who's advertisements are controlled by the Traffic Force Advertising Management System, ("Traffic Force"), at which Licensee can stream and provide downloading of video and audio Content over electronic devices, including without limitation desktop and laptop computers, handheld receivers and wireless phones, to end users. (the "Purpose"). "

> Clause C "Licensor desires to make the Content available to Licensee for use on the Website(s) in order to be eligible to take part in the Content Partner Advertising Revenue Sharing Program (currently located on http://www.paidperview.com), and obtain compensation therewith. "

4.3 The defined term "Websites", as provided above, "includes those websites on the worldwide web, whose advertisements are controlled by the Traffic Force Advertising

Management System, ("Traffic Force"), at which Licensee can stream and provide downloading or video and audio content over electronic devises…(the "purpose")"

4.4 Each of the Claimants, including Cyberweb Ltd., Netmedia Services Inc., and Sagan Ltd. derive benefits under the RSA, including as follows:

    4.4.1  The website(s) owned/controlled by Cyberweb Ltd. (and any other Claimant) is supported by an advertising management system - Traffic Force;

    4.4.2  SAGAN LTD provides services to and for the benefit of Cyberweb Ltd., including, without limitation, domain name management services.

    4.4.3  Claimant Netmedia Services Inc. provides technical programming, design and other services, which may be related to the uploading of content to websites that are supported by an advertising management system - Traffic Force for the benefit of Traffic Force, GIM Corp., SAGAN Ltd., and Cyberweb Ltd.; and,

    4.4.4  GIM CORP. owns and operates the Revenue Sharing Program pursuant to which customers, including Defendants, who have agreed to the RSA participate and pursuant to which such customers, including Defendants, benefit from revenues generated from advertisements appearing on the websites owned and/or operated by Claimants which are supported by an advertising management system - Traffic Force.

5.  Subsequent to consenting to the RSA and the creation of their account the Defendants accessed their account using their identification and password and repeatedly uploaded content and received payment for same pursuant to the RSA.

5.1 The Defendants and each of them have uploaded content and received payments under the RSA and they continue to do so. The Defendant or either of them continue to upload content to the Claimants websites and last logged on and uploaded content on the 25th May 2016.

6.  The RSA to which the Claimants will refer as may be necessary for its full terms, meaning and effect, expressly provided inter-alia as follows:

    10.5 Choice of Law. This Agreement shall be governed by and construed in accordance with the laws of Barbados, without regard to conflicts of law principles. Any legal action arising out of or relating to this Agreement must be instituted in a court in Barbados and the parties submit to the jurisdiction of any such court. …. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the remaining provisions of this Agreement shall not be affected or impaired thereby".

1. Grant of Licence

1.1    Subject to the terms and conditions set forth in this Agreement, with respect to any and all Content that Licensor submits or provides to Licensee, Licensor grants Licensee a non-exclusive, nontransferrable worldwide license during the Term to use, publish, display, and distribute the Content on the Web site(s), solely for the Purpose.

1.2    Subject to the terms and conditions set forth in this Agreement, Licensor grants Licensee the right to use Licensor's Brand Names and Trade Names for the purpose of the promotion of the Content on the Websites and/or the Program, in advertisements, and press releases. Any such advertisements or press releases shall be made in the sole and absolute discretion of Licensee.

2. Term and Termination

2.1    Unless terminated earlier pursuant to this Agreement, the term of the Agreement ("Term") shall be for an initial period of one (1) calendar month commencing on the Effective Date. After the expiration of the initial period, or any subsequent Term, this Agreement shall renew for an additional one (1) month period, in perpetuity, unless either party gives notice to the other prior to the expiration of the initial period, or any subsequent Term, of its intention to terminate this Agreement on that expiration date.

6.1 The Content covered under the RSA includes content that is submitted or provided. The breadth of content and sources is further referred to and provided for in clauses 3.9, 4.1, and Exhibit A of the RSA which provide for content that is not submitted directly by the Licensor. Exhibit A also sets out the minimum requirements for content and which expressly includes high resolutions images, high resolution Box Art, fact sheets, a list of actors in each scene etc.

6.2 The RSA further grants the Claimant GIM Corp the right to use such content in any manner co consistent with the "Purpose" which is stated in Background, Paragraph B of the RSA to be to "stream and provide downloading of video and audio Content over electronic devices, including, without limitation, desktop and laptop computers, handheld receivers and wireless phones, to end users."

6.3 Paragraph 1.3 of the RSA grants a broad license to use the brand names and trade names of the customer, including the Defendants, for the purpose of promotion of the Content on the Website(s) and/or the Program, in advertisements and press releases and that any such use shall be made in the sole and absolute discretion of the Claimant GIM Corp.

Paragraph 5.1 reasserts that the Claimant GIM Corp has sole and absolute discretion as to the manner and methodologies applied in maintaining and promoting the Website(s).

6.4 Paragraph 3.2 of the RSA defines the advertising revenues to be shared and is limited to advertisements actually appearing on the Websites. There is no provision for any other revenue sharing.

6.5 Paragraph 6.1 includes a representation and warranty by Defendants stating that "Licensor shall not at any time during the Term of this Agreement do anything or authorize other parties to do anything contrary to the rights licensed to Licensee under this Agreement."

6.6 Paragraph 7.3 contains an express limitation of liability provision, which excludes consequential, incidental, special or indirect damages, unless otherwise prohibited by Bardbados law.

6.7 Paragraph 9 contains a comprehensive confidentiality provision pursuant to which confidential information received from the other must be held in strict confidence.

6.8 Paragraph 10.3 provides that the rights of GIM Corp under the RSA are freely assignable without need of notice or consent.

6.9 Paragraph 10.8 provides that ambiguities shall not be construed against GIM as the drafting party.

6.10    Having regard to the express provisions for Choice of Law under the RSA the Claimants are entitled to and do claim that the RSA is entirely and solely justiciable only in Barbados and that the issue of jurisdiction be determined as a preliminary issue.

7. The Defendants never terminated the RSA and it remained in full force and effect at all material times and the Claimants repeat paragraph 6 hereof.

8. On or about April, 2016 the Defendants threatened in writing to issue a claim in the USA against the Claimants and each of them, alleging infringement of copyright of content materials, brand names and trademarks provided to the Claimants pursuant to the RSA unless the Claimants' paid them the sum of US$.2,000,000.00.

9. In breach of the RSA and in particular clause 6.1 and 10.5 thereof the Defendants have since commenced that suit.

9.1 The Defendants have also filed a Notice of Application with Certificate of Urgency in this suit stating at paragraph 6 of the Certificate of Urgency that they filed suit in the state of Arizona, USA and exhibited a copy (KP 1) of the claim as filed. This action CV 600/2016 was filed on 27 April, 2016. The Defendants suit said to have been filed in Arizona USA was stated as having been filed on 28 April, 2016.

10. By virtue of the Defendants threatened and actual breach of the RSA the Claimants have suffered and are continuing to suffer loss and damage including but not limited to incurring of costs the particulars whereof shall be served prior to or at Case Management for which the Claimants are entitled to and do claim damages together with interest including interest pursuant to section 35 of Cap 117A at such rate and for such period deemed fit.

11. By virtue of the Defendants threatened and actual breach of the RSA the Claimants have suffered and are continuing to suffer loss and damage occasioned by the Defendants' actions and consequential uncertainty as to the Claimants' rights to direct or indirectly use, publish, display and/or distribute the content pursuant to the RSA.

In the premises the Claimants are entitled to and claim the following declaratory and other relief:

i.   A Declaration that the RSA made between GIM Corps and the Defendants herein on 10th September, 2012 is entirely and solely justiciable only in the Courts of Barbados.

ii.  A Declaration that all of the Claimants herein are entitled to rely on the rights granted by the Defendants to GIM Corp under the RSA.

iii. A Declaration that all of the Claimants herein are entitled to publicize and or distribute Content materials including copyright content materials provided by the Defendants to GIM Corp under the RSA.

iv.  Injunctive relief to restrain the Defendants from taking any further step whatsoever in the proceedings which it has commenced in the United States of America until determination of this suit.

v.   Damages for loss and damage suffered by the Claimants occasioned by the Defendants threatened or actual breach of the RSA

vi.  Interest pursuant to section 35 of Cap 117A at such rate and for such period deemed fit;

vii. Costs including contractual costs pursuant to the RSA.

viii. Further or other relief deemed fit.

CERTIFICATE OF TRUTH

I Kristen Richardson director of Cyberweb Ltd certify that all facts set out in this Statement of Claim are true to the best of my knowledge, information and belief and that I am duly authorized to make this statement on behalf of all of the Claimants.

Dated the $O9$ · day of June 2016

*Claimant's signature*

CERTIFIED A TRUE COPY

LEGAL ASSISTANT
A·9