ERICA J. VAN LOON (admitted *Pro Hac Vice*)
evanloon@glaserweil.com
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

*Attorney for Defendants*
*Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| AMA MULTIMEDIA LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SAGAN LIMITED, a Republic of Seychelles company, individually and d/b/a PORN.COM; CYBERWEB LTD., formerly MXN LTD., a Barbados Company, individually and d/b/a PORN.COM; NETMEDIA SERVICES INC., a Canadian Company, individually and d/b/a PORN.COM; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; DAVID KOONAR, an individual; and John Does 1-20,<br><br>Defendants. | CASE NO.: CV16-1269 PHX DGC<br><br>Hon. David G. Campbell<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SAGAN LIMITED'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS PENDING RESOLUTION OF THE BARBADOS ACTION**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION AND STATEMENT OF RELEVANT FACTS ........................ 1

II. ARGUMENT .................................................................................................. 4

    A. This Court Lacks Personal Jurisdiction over Sagan ..................................... 4

        1. Legal Standard ................................................................................ 4

        2. Sagan Is Not Subject to General Jurisdiction ................................. 5

        3. Sagan Is Not Subject To Specific Jurisdiction ................................ 7

            a. Purposeful Direction .............................................................. 8

            b. Causation ............................................................................. 10

            c. Reasonableness .................................................................... 10

    B. If The Court Does Not Dismiss This Action, It Should Alternatively Stay this Action Pending Resolution of the Barbados Action .................... 12

III. CONCLUSION ............................................................................................ 16

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*40235 Washington St. Corp. v. Lusardi*,
  976 F.2d 587 (9th Cir. 1992) ........................................................................................... 12

*American Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*,
  843 F.2d 1253 (9th Cir. 1988) ......................................................................................... 12

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ......................................................................................................... 10

*Calder v. Jones*,
  465 U.S. 783 (1984) .................................................................................................. 1, 5, 8

*Colorado River Water Conservation Dist. v. U.S.*,
  424 U.S. 800 (1976) ................................................................................................. 12, 13

*CRC Info. Sys., Inc. v. Quebecor World (USA), Inc.*,
  Case No. 03-cv-0591 (D. Ariz. July 21, 2003) ................................................... 13, 15, 16

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) ................................................................................................... 5, 6

*Doe v. Am. Nat'l Red Cross*,
  112 F.3d 1048 (9th Cir. 1997) ..................................................................................... 4, 10

*Dole Food Co. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) ............................................................................... 9, 10, 12

*FireClean, LLC v. Tuohy*,
  No. 1:16-CV-0294, 2016 WL 3952093 (E.D. Va. July 21, 2016) ..................................... 9

*Gates Learjet Corp. v. Jensen*,
  743 F.2d 1325 (9th Cir.1984) ............................................................................................ 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ........................................................................................................... 4

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ........................................................................................................... 4

*Int'l Shoe Co. v. Washington*,
  326 U.S. 210 (1945) ........................................................................................................... 4

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
  342 U.S. 180 (1952) ......................................................................................................... 12

*Mavrix Photo, Inc. v. Brand Tech., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) .............................................................................. 4, 6, 7, 8

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
 460 U.S. 1 (1983) .................................................................................................. 12

*Neuromechanical, LLC v. Kiro Kids Pty. Ltd.*,
 2011 WL 333337 (D. Ariz. Jan. 31, 2011) ............................................................... 9

*Panavision Int'l, L.P. v. Toeppen*,
 141 F.3d 1316 (9th Cir. 1998) ................................................................................... 9

*Pebble Beach Co. v. Caddy*,
 453 F.3d 1151 (9th Cir. 2006) ................................................................................... 4

*Rush v. Savchuk,*
 444 U.S. 320 (1980) .................................................................................................. 6

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004) ................................................................................. 8, 9

*Seven Arts Pictures PLC v. Fireworks Entm't, Inc.*,
 244 F. App'x 836 (9th Cir. 2007) ..................................................................... 13, 15

*Swartz v. KPMG LLP*,
 476 F.3d 756 (9th Cir. 2007) ................................................................................... 4

*Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co.*,
 252 F. Supp. 2d 917 (D. Ariz. 2003) ........................................................................ 6

*Walden v. Fiore*,
 134 S. Ct. 1115 (2014) .............................................................................................. 8

## OTHER AUTHORITIES

Collins English Dictionary ................................................................................................ 15

Defendant Sagan Limited ("Sagan") hereby submits this memorandum of points and authorities in support of its motion to dismiss plaintiff AMA Multimedia LLC's ("plaintiff" or "AMA") First Amended Complaint, or in the alternative to stay proceedings pending resolution of a related action pending before the Supreme Court of Barbados, *Cyberweb LTD, et al. v. AMA Multimedia LLC, et al.*, Claim No. CV600-2016 ("Barbados Action").[1]

## I.     INTRODUCTION AND STATEMENT OF RELEVANT FACTS

AMA's First Amended Complaint ("FAC") fails to allege any evidence to support a finding of personal jurisdiction over Sagan.[2] Other than merely identifying Sagan in Paragraphs 2 and 3 and alleging that Sagan is an owner/operator of Porn.com in Paragraph 46, there are no allegations directed specifically at Sagan. Rather, all allegations are directed at defendants collectively without any attempt to specify the alleged conduct of any particular party. Such lumping of defendants is impermissible. *See Calder v. Jones,* 465 U.S. 783, 790 (1984).

Sagan is not subject to jurisdiction in Arizona. Neither plaintiff nor any of the defendants are residents of Arizona. Sagan does not have any contacts let alone substantial ones with Arizona. Sagan is a Seychelles corporation with its principal place of business in Victoria Mahe in the Seychelles. Declaration of Kristen Richardson ("Richardson Decl."), ¶¶ 3, 5-7.

Sagan does not conduct business in the United States. *Id.* at ¶ 5. Sagan does not receive payments directly from any end users of any websites. *Id.* at ¶ 4. Sagan has no commercial or other relationship with any users of any website. *Id.* It has no offices or employees in Arizona or elsewhere in the United States. *Id.* at ¶ 6. It neither owns nor leases equipment located in Arizona or elsewhere in the United States. *Id.* Sagan has no contract with any entity located in Arizona to provide services, including the hosting of content or the

---

[1] Counsel for Sagan met and conferred with AMA counsel regarding this motion in writing. Declaration of Erica J. Van Loon ("Van Loon Decl.") at ¶ 2, Ex. A.

[2] Defendants GLP 5, Inc. and Netmedia Services Inc. have also filed a motion to dismiss or stay this action. See Dkt. No. 27.

like. *Id.* at ¶ 7. Sagan has never had any contract with Limelight Networks, Inc. ("Limelight"). *Id.* at ¶ 8.

Accordingly, plaintiff cannot show that Sagan had minimum contacts with this State, let alone sufficient minimum contacts to warrant personal jurisdiction. In addition, as no party in this action is incorporated in Arizona or has its principal place of business here, no Arizona law is implicated and no Arizona business is involved, even if minimum contacts existed—which they do not--it is completely unreasonable to exercise specific jurisdiction over Sagan in Arizona.

Alternatively, Sagan requests that this matter be stayed pending the outcome of earlier-filed, likely dispositive litigation in Barbados. Prior to the filing of this action, Sagan and the other named defendants filed an action against AMA and Adam Silverman[3] in the Supreme Court of Barbados, seeking injunctive relief to restrain anticipatory breach of contract or breach of contract. Dkt. 32-4 at 10-17. The crux of the Barbados Action is that, pursuant to a Content Partner Revenue Sharing Agreement ("Agreement"), AMA previously granted G.I.M. Corp. ("GIM") the right to use, publish, display and distribute AMA's copyrighted content, including the materials subject to this action.[4] The Barbados court will assess and determine the rights and obligations of the parties under the Agreement. If GIM is authorized to use the AMA content at issue, then no copyright infringement has occurred and Sagan cannot be liable.

The Agreement granted GIM the right to distribute such content for use, publication, display and distribution to and by others, including the defendants herein. Bradbury Decl., Dkt. 27-3, ¶ 14, Ex. 5. Under the Agreement, AMA was to receive a portion of revenues, if any, derived from sales and advertisements on websites owned and/or operated by others, including Porn.com, that are controlled by the Traffic Force Advertising Management

---

[3] Mr. Silverman is believed to be the President and managing member of plaintiff herein. Van Loon Decl., ¶ 3, Ex. B; Declaration of Adam Silverman in Support of Plaintiff AMA Multimedia, LLC's *Ex Parte* Motion for Leave for Alternative Service, dkt. 22-1, ¶ 2.

[4] AMA has previously admitted the existence of the Agreement. Dkt. 32 at 3, 6.

1 System. *Id.* at ¶ B. The Agreement gives GIM the right to use, publish, display, distribute, stream and make available for download video and audio content over electronic devices to end users. *Id.* at ¶¶ B, 1.1.

The Agreement was not limited to content that was uploaded by AMA and included content that was otherwise available. The Agreement also provided GIM the right to generate, use, publish, display and distribute static and other images, in whole or part, including thumbnails, obtained from such content. Bradbury Decl., Dkt. 27-3, ¶ 14, Ex. 5, ¶ 3.9. Indeed, the intention of the parties to confer GIM broad rights to use AMA's content is evident throughout the Agreement. For example, the Agreement specifically states, "[i]n the event that the Content originates and/or is associated with an existing website associated with Licensor," demonstrating that the Agreement contemplated and provided for GIM to use AMA content, irrespective of whether it was directly provided by AMA, or obtained from other accessible content including that available on AMA's website. *Id*. Thus, AMA's purported infringement allegations are limited to conduct and activity contemplated and permitted under the Agreement.

Further, the Agreement expressly provides for the application of Barbados law and mandates exclusive jurisdiction to the courts in Barbados as follows:

> This Agreement shall be governed by and construed in accordance with the laws of Barbados, without regard to conflicts of law principles. Any legal action arising out of or relating to this Agreement must be instituted in a court located in Barbados and the Parties submit to the jurisdiction of any such court.

Bradbury Decl., Dkt. 27-3, ¶ 14, Ex. 5, ¶ 10.5.

A stay of this action is necessary so that the Barbados court may consider and issue its determination as to the scope of rights conferred to GIM (and consequently the other named defendants) under the Agreement. It is anticipated that the Barbados court will find the Agreement grants broad rights to the content alleged, precluding AMA's claim for copyright infringement. Such finding would moot AMA's copyright infringement claims against Sagan and the other defendants. Further, this Court lacks jurisdiction to determine

1 the scope of rights granted under the Agreement and an attempt to analyze the rights of the
2 parties under the Agreement may lead to conflicting results and a corresponding waste of
3 judicial resources.
4    Accordingly, Sagan requests that this Court dismiss this action for lack of personal
5 jurisdiction, or alternatively, order the action stayed pending the outcome of the Barbados
6 Action.

## II.   ARGUMENT

### A.   This Court Lacks Personal Jurisdiction over Sagan

#### 1.   Legal Standard

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  Plaintiff needs to make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

"The Arizona long-arm statute provides for personal jurisdiction co-extensive with the limits of federal due process." *Doe v. Am. Nat'l Red Cross,* 112 F.3d 1048, 1050 (9th Cir. 1997). Due process requires that the nonresident defendant have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 210, 216 (1945)). General jurisdiction exists when the defendant's "affiliations with the State are so 'continuous and systematic; as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction exits when "a suit aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  Arizona lacks both general and specific jurisdiction over Sagan.

## 2. Sagan Is Not Subject to General Jurisdiction

A state may exercise general jurisdiction over an out-of-state corporation only when the out-of-state corporation's contacts with the state are "so substantial and of such a nature as to render [the out-of-state corporation] at home in that state." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 n.19 (2014). Further, a United States court cannot exercise general personal jurisdiction over a foreign corporation solely because of contacts that the foreign corporation's subsidiary has with the state in which the lawsuit is filed. *Id.* at 759. Thus, any actions allegedly taken by CyberWeb in the state are irrelevant to determine if jurisdiction is proper over its partial owner, Sagan. Here, plaintiff fails to allege any facts indicating that Sagan itself has any contacts with the State, let alone the systematic or continuous contacts that are required to establish general jurisdiction over Sagan.

Plaintiff's FAC does not contain jurisdictional allegations as to any individual defendant. Instead, AMA improperly asserts allegations against all of the defendants collectively. Plaintiff's sole forum-related allegations are: defendants (1) "conduct transactions in the United States, selling premium paid memberships to . . . citizens including Arizona residents" (FAC, ¶ 12); (2) target Arizona residents "with ads designed for the visitor" (*Id.* at ¶ 15); (3) "contract with Arizona based companies and individuals to deliver content for their web properties" (*Id.* at ¶ 17); (4) "travel to Arizona to transact business" (*Id.* at ¶ 18); (5) "specifically target Internet users … [in] Arizona" (*Id.* at ¶ 19); (6) "transact business in this Judicial District by way of their interactive websites, offices, [and] business operations" (*Id*. at ¶ 21); (7) "transact business … through their interactivity with subscription based and non-subscription based Arizona members" (*Id.*); (8) "have engaged in business activities in and directed to this district" (*Id.*); and (9) "have committed tortious acts within this district or directed at this district" (*Id.*).

First, plaintiff's attempt to aggregate the contacts of all the defendants is improper. "Each defendant's contacts with the forum state must be assessed individually rather than simply viewing them collectively." *Calder,* 465 U.S. at 790. In fact, the Supreme Court has held that lumping defendants together to establish jurisdiction is "plainly unconstitutional."

*Rush v. Savchuk,* 444 U.S. 320, 332 (1980). Notably, none of the above-mentioned allegations specifically address Sagan, nor are they applicable to the business activities of Sagan.

Second, these alleged contacts are simply not the type that support general jurisdiction. It is AMA's burden to allege facts showing that Sagan is "at home" in Arizona. *Daimler AG v. Bauman*, 134 S. Ct. at 761 n.19 (2014). But Courts have regularly held that contacts fall short of the requisite showing for general jurisdiction where a defendant does not hold offices or staff in the forum, is not registered to do business in the state, and does not hold servers in the forum. *Mavrix*, 647 F.3d at 1225 (finding no general jurisdiction where defendant had no offices or staff and was not registered to conduct business in California); *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330 (9th Cir.1984) (Arizona lacked general jurisdiction over defendant who solicited an agreement in Arizona, visited Arizona a number of times, entered into purchase agreements with the plaintiff that contained an Arizona choice of law and forum provision, purchased parts from the plaintiff in Arizona, sent many letters and telexes and made numerous telephone calls to Arizona); *Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co.*, 252 F. Supp. 2d 917, 935 (D. Ariz. 2003) (finding no general jurisdiction where defendant maintained its books and principal place of business in New Mexico and only performed occasional business in Arizona).

Sagan is a Seychelles company. Richardson Decl., ¶3. Both GIM and CyberWeb are Barbados corporate entities with registered addresses in Barbados. Bradbury Decl., Dkt. 27-3, at ¶¶ 12, 15. Sagan does not do business in the United States. Richardson Decl., ¶5. Sagan does not hold offices in Arizona, does not employ individuals in Arizona, and does not place servers in Arizona or anywhere else in the United States. *Id* at ¶¶ 6.

Limelight is the only Arizona entity identified in plaintiff's FAC. FAC, ¶ 10. But Sagan has never contracted with Limelight for use of its servers. Richardson Decl., ¶ 8. AMA does not contend otherwise. Instead, AMA asserts that the Porn.com website is hosted by a Massachusetts company, Reflected, on servers in Amsterdam. Dkt. 32 at 5 ("Porn.com utilizes hosting through a U.S. company in Massachusetts called Reflected Networks and/or

Swiftwill Inc. The HTML, or code, of Porn.com is hosted through Viking Host B.V., on servers in Amsterdam."). And while AMA argues that Limelight servers host Porn.com videos, AMA concedes that it is Reflected that has the relationship with Limelight. *Id.* ("<u>Through Reflected</u>, Porn.com utilizes a Content Delivery Network ('CDN') located in Arizona, to distribute the Porn.com videos.") (emphasis added). Moreover, AMA concedes that Limelight has servers at various locations in the United States. *Id.* ("It is Limelight's Arizona and U.S.-based servers that distributed the infringed videos.")[5] As such, AMA has not, and cannot, plead any grounds establishing Sagan's intent to target or form any tie with Arizona, let alone one that is deep and persistent. *Mavrix,* 647 F.3d at 1227.

Finally, even if there were allegations that CyberWeb provided third party web-based advertising, which there are not, this would be insufficient to confer general jurisdiction over CyberWeb, much less Sagan. The Ninth Circuit has held that general jurisdiction cannot be established based on a defendant hosting third party targeted advertising on its website. *Id.* at 1225 (holding that defendant's contacts with California, including allowing third parties to advertise jobs, hotels, and vacations in California on its website, selling tickets to California events on its websites and having business relationships with California-based entities, "fall well short of the requisite showing for general jurisdiction."). Thus, Sagan's contacts with Arizona do not warrant the exercise of general jurisdiction.

### 3. <u>Sagan Is Not Subject To Specific Jurisdiction</u>

To determine whether a court has specific jurisdiction over a defendant, the Ninth Circuit uses a three-part test:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of defendant's forum-related activities; and (3) the exercise of personal

---

[5] In fact, AMA provides no evidence that Limelight has any servers in Arizona or that such servers distribute Porn.com videos.

7

jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of establishing the first two prongs of the test before the burden shifts to the defendant to show that the exercise of specific personal jurisdiction is unreasonable. *Id.*

### a. **Purposeful Direction**

In tort cases, the inquiry under the first prong is whether a defendant purposefully directed his activities at the forum state. *Mavrix,* 647 F.3d at 1228 (applying purposeful direction analysis to a copyright infringement action.) The courts evaluate purposeful direction under the *Calder* effects test, which "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014). Plaintiff has failed to meet the purposeful direction test because it does not allege that Sagan committed any intentional act that was expressly aimed at Arizona and caused harm to be suffered in Arizona.

First, AMA does not specifically allege that Sagan committed any intentional act. It makes allegations with regard to Defendants collectively, and such allegations have no probative value. *Calder*, 465 U.S. at 790. In fact, Sagan has committed no intentional acts directed at this forum. Sagan does not own any domain names or websites or contract with any entity located in Arizona to provide services, including hosting of content or the like. *Id.* at ¶¶ 7. Sagan does not have any commercial relationship with any users of any website that may be owned or controlled by any other defendant. *Id.* at ¶ 4.

Second, plaintiff fails to show that any alleged intentional acts were expressly aimed at Arizona. Merely owning or operating a generally available website is not enough to create jurisdiction through "express aiming." *See FireClean, LLC v. Tuohy*, No. 1:16-CV-0294, 2016 WL 3952093, at *6 (E.D. Va. July 21, 2016) (no "purposeful targeting" in defamation

case when blog was directed to the nation at large, and roughly one percent of viewers resided in the forum state.) Here, the only Arizona-specific allegation is that Porn.com uses the servers of an Arizona based company, Limelight. FAC, § 10. However, Sagan has not contracted with Limelight, Richardson Decl., ¶ 8, and according to AMA Limelight has servers in various U.S. locations. Dkt. 32 at 5. No other alleged activities specifically target Arizona. Thus, plaintiff fails to make a showing of express aiming. *See Neuromechanical, LLC v. Kiro Kids Pty. Ltd.*, 2011 WL 333337, at *3 (D. Ariz. Jan. 31, 2011) (finding the court lacked personal jurisdiction where defendant's nation-wide advertisements were not expressly aimed at Arizona residents); *Schwarzenegger*, 374 F.3d at 805 (express aiming requires "something more than mere foreseeability [of causing injury in another State]").

     Finally, plaintiff cannot establish it suffered any harm in Arizona because plaintiff has virtually no connection with this State. To determine where a corporation suffered economic harm for jurisdictional purposes, the Ninth Circuit considers several possibilities: "where the bad acts occurred; where most of (or at least a threshold fraction of) the corporation's shareholders are located; where the corporation has its principal place of business; or where the corporation is incorporated." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002). When the bad act occurred in espace and did not specifically target any user, the harm is deemed to be suffered where the corporation maintained its principal place of business. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). Here, plaintiff admits that it is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada. FAC, § 1. It distributes its products through DVD sales and via its websites. *Id.* § 27. The alleged bad acts occurred in cyberspace and did not specifically target Arizona. *See id.* §§ 109, 114, 116, 130-136, 142-147, 151-153. Applying Ninth Circuit precedent, any alleged harm suffered by AMA was in Nevada, not Arizona. Thus, plaintiff cannot establish it suffered any harm in this forum as a result of defendant's alleged intentional acts.

     In sum, plaintiff fails to meet its burden of establishing purposeful direction. Accordingly, this Court lacks personal jurisdiction over Sagan.

### b. Causation

The second requirement for establishing specific jurisdiction is that the contacts constituting purposeful direction must be the ones that give rise to the suit. *Doe*, 112 F.3d at 1051. The court looks for "but for" causation, i.e. whether the dispute arises out of forum-related activities that would not have occurred "but for" defendant's contacts. *Id*. As plaintiff has not established that Sagan has any contacts with the state of Arizona, or committed any act expressly aimed at Arizona, plaintiff cannot establish "but for" causation.

### c. Reasonableness

Exercising jurisdiction over Sagan would be completely unreasonable. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985) (Exercise of jurisdiction must comport with fair play and substantial justice to be considered reasonable.).

In determining whether jurisdiction is reasonable, the Ninth circuit considers seven factors:

> (1) the extent of the defendant's purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole*, 303 F.3d at 1114.

Here, none of the factors support exercising jurisdiction over Sagan. First, as shown above, plaintiff fails to establish that Sagan has directed any activities to the forum. It has no property, offices, employees or servers in Arizona. Richardson Decl., ¶ 6. Thus, Sagan has not purposefully injected itself into this State's affairs. This factor favors Sagan.

Second, the burden on Sagan to litigate this matter in Arizona is substantial. Sagan is a Seychelles corporation with one general manager located in Barbados. *Id.* at ¶ 3, 9. Sagan does not have any employee who lives in or regularly travels to Arizona to conduct business. *Id*. at ¶ 9. It would be extremely burdensome and costly for Sagan to travel to Arizona for trial and other proceedings in this case. *Id*. Accordingly, the second factor also supports a

1  finding of unreasonableness.

2      Third, the forum of Sagan, the Seychelles, has a far more compelling interest in
3  regulating its behavior. Richardson Decl., ¶ 3. Seychelles has a sovereign interest over
4  Sagan. Accordingly, this factor also favors Sagan.

5      Fourth, Arizona does not possess a particular interest in adjudicating this dispute. No
6  party in this action is organized under the laws of Arizona or has its principal place of
7  business in Arizona. The sole connection to this forum is defendants' alleged use of servers
8  provided by Limelight, a non-party Arizona based company. FAC, at ¶ 10.  Yet Sagan has
9  never had any contract with Limelight. Richardson Decl., ¶ 8. As this case deals with alleged
10 copyright infringement of plaintiff's content, Arizona has no particular interest in
11 adjudicating the dispute where no party is an Arizona citizen. And, of course, this State has
12 no overriding interest in injecting itself into the overriding contractual dispute which is the
13 exclusive province of the Barbados court. This factor also favors Sagan.

14     Fifth, this Court would be the least judicially efficient forum for resolution of the
15 dispute.  No party is organized or has its principal place of business in this State. The alleged
16 harm suffered by plaintiff did not occur in this State. No Arizona law is implicated in this
17 action. Further, as argued below, there is an overriding contractual issue concerning
18 defendants' contractual right to use the AMA content at issue under the Agreement. Any
19 dispute arising out of or related to the Agreement or the actions of the parties is exclusively
20 subject to Barbados law, jurisdiction and venue. Thus, this factor favors Sagan.

21     Sixth, plaintiff is incorporated in Nevada and has its principal place of business there.
22 FAC, § 1. Plaintiff has no special tie to Arizona and the alleged harm it suffered did not
23 occur here. Therefore, this factor also favors Sagan.

24     Finally, given the contractual issue argued below, an alternative forum clearly exists
25 in which defendants' right to use the subject content can be determined.

26     All seven *Dole* factors favor Sagan. Thus, it would be unreasonable to exercise
27 jurisdiction over Sagan.

28     As plaintiff has failed to establish that Sagan has minimum contacts with this State,

and Sagan has presented compelling evidence showing jurisdiction over it here would be wholly unreasonable, the Court should dismiss this action as to Sagan for lack of general and specific personal jurisdiction.

### B. If The Court Does Not Dismiss This Action, It Should Alternatively Stay this Action Pending Resolution of the Barbados Action

A district court may stay a federal suit due to concurrent proceedings for reasons of "wise judicial administration, given regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 818-19 (1976) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). When analyzing whether "wise judicial administration" supports a decision to stay proceedings, courts consider six factors:

> (1) whether either the state or federal court has exercised jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction. . . . (5) whether federal or state law controls the decision on the merits; and (6) whether the state court can adequately protect the rights of the parties.

*40235 Washington St. Corp. v. Lusardi*, 976 F.2d 587, 588 (9th Cir. 1992) (citing *Colorado River*, 424 U.S. at 818-19; *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 23-26 (1983)). No single factor is dispositive. *Colorado River,* 424 U.S. at 818-19. Instead, the factors are to be applied in a "pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'" *American Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.,* 843 F.2d 1253, 1257 (9th Cir. 1988) (quoting *Moses Cone,* 460 U.S. at 16).

Courts in the Ninth Circuit have applied the *Colorado River* factors to determine whether a stay is appropriate if there are concurrent proceedings in federal court and in a foreign jurisdiction. *See, e.g., CRC Info. Sys., Inc. v. Quebecor World (USA), Inc.*, Case No. 03-cv-0591, at 10-12 (D. Ariz. July 21, 2003) (applying the *Colorado River* factors and stayed federal proceedings in favor of pending foreign parallel proceedings).

In *CRC*, this court granted a stay of proceedings in a copyright infringement action

pending resolution of a Canadian contract matter interpreting a license agreement.  Case No. 03-cv-0591, Dkt. 33 at 10-12. The *CRC* court noted that even though the parallel proceedings involved different parties and claims, each party shared a common interest in the interpretation of the license agreement at issue in the Canadian action, because it would dictate each parties' interests in the copyright matter. *Id.* at 8. Applying the *Colorado River* factors, the *CRC* court found a stay was warranted because "Canadian law governs the contract's interpretation[;]" "the parties involved in the negotiation and execution of the license agreement [were] located in Ontario[;]" "the Ontario forum can adequately protect the parties' contractual rights[;]" and "it is unnecessary and imprudent to allow duplicative litigation." *Id* at 11-12.

Likewise, in *Seven Arts Pictures*, the district court stayed a copyright infringement action pending resolution of a Canadian contract interpretation action, even where the parties were not identical, because the domestic action was "inextricably related to the Canadian contract action." *Seven Arts Pictures PLC v. Fireworks Entm't, Inc.*, 244 F. App'x 836, 837 (9th Cir. 2007) (denying the plaintiff/appellant's request for reconsideration of district court's denial of its motion to lift the stay). The district court noted that the "central issue in both [the present] case and the Canadian Action is a determination of the rights of each party pursuant to the [underlying agreements]," and applying the *Colorado River* factors, held that a stay was warranted. *Seven Arts Pictures PLC v. Fireworks Entm't, Inc.*, Case No. 05-cv-2905, Dkt. 38 at 9 (C.D. Cal. Aug. 16, 2005).

The facts in this case are very similar to those in *CRC* and *Seven Arts*. Here, named defendants CyberWeb, Netmedia and Sagan have collectively filed suit in the Supreme Court of Barbados against AMA and Adam Silverman for injunctive relief to restrain anticipatory breach of contract or breach of contract.[6] Dkt. 32-4 at 10-17.  The Barbados Action involves the Agreement, entered into by and between GIM and AMA. Bradbury

---

[6] GLP 5 and David Koonar were originally named as plaintiffs in the Barbados action but have since been removed as claimants. Bradbury Decl. Dkt. 27-3, ¶ 13.

1  Decl., Dkt. 27-3, at ¶ 14, Ex. 5. Under the Agreement, AMA granted GIM the right to use,
2  publish, display, distribute, and otherwise provide content to websites whose advertisements
3  are controlled by Traffic Force Advertising Management Systems, including Porn.com. *Id.*
4  at ¶¶ B, 1.1.  The Agreement is exclusively governed by Barbados by virtue of its choice of
5  law provision and the parties expressly consented to exclusive jurisdiction and venue in
6  Barbados. *Id.* at ¶ 10.5.

7  In this action, Plaintiff alleges that defendants directly uploaded the allegedly
8  infringing content without AMA's approval or consent, thereby committing direct copyright
9  infringement. FAC at ¶ 82. Even if this were true, defendants would have the express right
10 to do so, by virtue of the rights granted to GIM under the Agreement. Specifically, the
11 language in the Agreement details that AMA "provides" GIM a broad license to use AMA
12 content in any manner consistent with the "Purpose" of the Agreement, including the right to
13 use, publish, display, and distribute the content on the "Websites." "Websites" is defined as
14 those "who's [sic] advertisements are controlled by the Traffic Force Advertising
15 Management System." Bradbury Decl., Dkt. 27-3, ¶ 14, Ex. 5, ¶ 1.1. The Agreement defines
16 "Purpose" as the right to "stream and provide downloading of video and audio content over
17 electronic devices, including without limitation desktop and laptop computers, handheld
18 receivers and wireless phones, to end users." The rights under the Agreement extend to
19 AMA's content however obtained. For example, ¶ 3.9 contemplates the use of content
20 obtained from various websites, including those controlled by plaintiff.

21 The Barbados court will likely interpret the Agreement to broadly grant rights.
22 Specifically, the Barbados court will likely interpret "provides" so as to confirm that the
23 Agreement applies to AMA content however obtained. This would be consistent with the
24 ordinary meaning of "provides" (which includes "to put at the disposal of; furnish or
25 supply").[7] More importantly, this would be consistent with the language elsewhere in the
26 Agreement. For example, the Agreement uses the language, "[i]n the event that the Content

---

[7] Online version of Collins English Dictionary. Van Loon Decl., ¶ 4, Ex. C.

originates and/or is associated with an existing website associated with Licensor," demonstrating that the Agreement contemplated that GIM could use content obtained from various sources, including AMA's website. Bradbury Decl., Dkt. 27-3, ¶ 14, Ex. 5, at ¶ 3.9.

The Barbados court will also determine defendants' rights to use individual static images (e.g. thumbnails) of the content as well as plaintiff's trade names and brand names. The Agreement expressly contemplates and permits wide discretion regarding the use of such materials. Bradbury Decl., Dkt. 27-3, ¶ 14, Ex. 5, ¶ 1.3 (granting GIM rights to use such in its "sole and absolute discretion"); *Id.* at Exhibit A to Ex. 5 (outlining the minimum content requirements to be made available, including "High Resolution images of the Content, (for headshots of the actors, sample images, and promotional design)").

Thus, the Barbados court's determination of the scope of rights conferred under the Agreement will likely resolve all of plaintiff's claims in the present action, including copyright infringement claims against Sagan and the other defendants. Thus, prevailing case law supports Sagan's request to stay this copyright action pending resolution of the Barbados contract interpretation matter. *See CRC*, Case No. 03-cv-0591, Dkt. 33 at 10-12; *Seven Arts*, Case No. 05-cv-2905, Dkt. 38 at 9-13.

This action is virtually identical to the situation this court faced in *CRC* in which this court issued a stay where a foreign court was the proper venue to determine the interpretation of a contract subject to a foreign choice of law provision. Here, interpretation of the language within the Agreement is governed exclusively by Barbados law, by virtue of the Agreement's choice of law and jurisdiction provisions, stating in part, "[a]ny legal action arising out of or relating to this Agreement must be instituted in a court located in Barbados and the Parties submit to the jurisdiction of any such court." Bradbury Decl., Dkt. 27-3, ¶ 14, Ex. 5, ¶ 10.5. Thus, the necessity of resolving the contract interpretation dispute in Barbados warrants a stay of the current proceedings pending resolution of the Barbados action.

Finally, the instant action was filed *after* the Barbados Action had been filed and the same day it was informally served on AMA. Bradbury Decl., Dkt. 27-3, ¶ 13, Ex. 4. Thus,

the Barbados Action claims priority, weighing in favor of the defendants' motions to stay proceedings. *See CRC*, Case No. 03-cv-0591, Dkt. 33 at 10-12.

Overall, on balance, "wise judicial administration" supports a decision to stay the instant proceeding until the Barbados court adjudicates the issues before it. Accordingly, Sagan's motion to stay should be granted in the interest of judicial efficiency.

## III. CONCLUSION

Based on the foregoing, defendant Sagan respectfully requests that this Court dismiss the FAC as to it, or in the alternative, grant Sagan's motion to stay the proceedings pending resolution of the Barbados Action.

DATED:  August 12, 2016

Respectfully submitted,

GLASER WEIL FINK HOWARD
 AVCHEN & SHAPIRO LLP

By:  /s/ Erica J. Van Loon
ERICA J. VAN LOON

*Attorney for Defendants*
*Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.*