ERICA J. VAN LOON (admitted *Pro Hac Vice*)
evanloon@glaserweil.com
GLASER WEIL FINK HOWARD
 AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

*Attorney for Defendants*
*Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| AMA MULTIMEDIA LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SAGAN LIMITED, a Republic of Seychelles company, individually and d/b/a PORN.COM; CYBERWEB LTD., formerly MXN LTD., a Barbados Company, individually and d/b/a PORN.COM; NETMEDIA SERVICES INC., a Canadian Company, individually and d/b/a PORN.COM; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; DAVID KOONAR, an individual; and John Does 1-20,<br><br>Defendants. | CASE NO.: CV16-1269 PHX DGC<br><br>Hon. David G. Campbell<br><br>**DEFENDANTS GLP 5, INC. AND NETMEDIA SERVICES INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1
II.  DEFENDANTS ARE NOT AGENTS OR ALTER EGOS OF EACH OTHER .... 3
III. GLP 5 DOES NOT HAVE MINIMUM CONTACTS WITH THIS FORUM ........ 6
IV.  NETMEDIA DOES NOT HAVE MINIMUM CONTACTS WITH THE UNITED STATES ............................................................................................... 7
V.   EXERCISE OF JURISDICTION OVER THESE DEFENDANTS WOULD BE UNREASONABLE ...................................................................................... 10
VI.  AMA'S SUPPORTING DECLARATIONS SHOULD BE STRICKEN .............. 11
VII. CONCLUSION .................................................................................................... 11

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Amon Ra v. Cochise Cty. Sheriff's Dept.*,
  2012 WL 4478824 (D. Ariz. Sept. 28, 2012) ................................................................. 11

*Atlantic Marine Coast, Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*,
  134 S. Ct. 568 (2013) ...................................................................................................... 3

*Bank Melli Iran v. Pahlavi*,
  58 F.3d 1406 (9th Cir. 1995) ......................................................................................... 11

*Calder v. Jones*,
  465 U.S. 783 (1984) ..................................................................................... 1, 2, 6, 7, 8

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) .................................................................................................. 1, 4

*Dole Food Co. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) ......................................................................................... 6

*Dos Santos v. Telemundo Commc'n Grp., LLC*,
  No. SACV 12-1373 JVS (MLGx), 2012 WL 9503003 (C.D. Cal. Dec. 19, 2012) ....... 5

*Greig v. U.S. Airways Inc.*,
  28 F. Supp. 3d 973 (D. Ariz. 2014) .............................................................................. 11

*Haller v. Advanced Indus. Computer, Inc.*,
  No. CV-13-02398-PHX-DGC, 2015 WL 854954 (D. Ariz. Feb. 27, 2015) ................. 6

*HTS, Inc. v. Boley*,
  954 F. Supp. 2d 927 (D. Ariz. 2013) ............................................................................ 11

*Mavrix Photo, Inc. v. Brand Techs. Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ......................................................................................... 9

*Neuromechanical, LLC v. Kiro Kids Pty. Ltd.*,
  No. CV–10–1068–PHX–GMS, 2011 WL 333337 (D. Ariz. Jan. 31, 2011) ......... 7, 8, 9

*NuCal Foods, Inc. v. Quality Egg LLC*,
  887 F. Supp. 2d 977 (E.D. Cal. 2012) ............................................................................ 4

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ..................................................................................... 4, 5

*Rio Prop., Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) ....................................................................................... 10

*Stewart v. Screen Gems-EMI Music, Inc.*,
  81 F. Supp. 3d 938 (N.D. Cal. 2015) .............................................................................. 5

ii
DEFENDANTS GLP 5, INC. AND NETMEDIA SERVICES INC.'S REPLY ISO THEIR
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

1231888

*Walden v. Fiore*,
　134 S. Ct. 1115 (2014) ........................................................................................................ 9

**FEDERAL STATUTES**

Fed. R. Civ. P. 4(k)(2) ................................................................................................................ 8

Fed. R. Evid. 602 ...................................................................................................................... 11

iii
DEFENDANTS GLP 5, INC. AND NETMEDIA SERVICES INC.'S REPLY ISO THEIR
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

1231888

Defendants GLP 5, Inc. ("GLP 5") and Netmedia Services Inc. ("Netmedia") submit this Reply in support of their Motion to Dismiss for Lack of Personal Jurisdiction.[1]

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

In its Opposition, AMA does not even attempt to argue that the individual contacts of Netmedia or GLP 5 support jurisdiction in this Court. Instead, AMA's entire Opposition is predicated on its (erroneous) assertion that, under an alter ego or agency theory, Netmedia and GLP 5 are subject to jurisdiction based on the contacts of others. ECF No. 32 ("Oppo.") at 1 ("Netmedia falls under jurisdiction of the United States through contacts of Traffic Force and Porn.com. GLP 5 falls under jurisdiction of Arizona through contacts of Traffic Force."). However, AMA's agency and alter ego theories are non-starters.

While AMA argues that the Court may impute contacts to Netmedia and GLP 5 based on an agency theory, the U.S. Supreme Court in *Daimler AG* squarely rejected this theory. AMA's alter ego argument is similarly unavailing. To support its alter ego argument, AMA concedes it must prove that failure to disregard separate identities would result in a fraud or injustice. However, AMA does not even allege that this element exists here, let alone provide evidence to support such a finding. Nor does AMA show that Netmedia and GLP 5 control the day-to-day activities of their purported alter egos.

Moreover, even if one assumed, for purposes of argument, that jurisdiction in this case could be based on the collective contacts of the various entities cited by AMA (which it cannot), these collective contacts are not sufficient to support jurisdiction.

AMA is wrong when it argues that GLP 5 has minimum contacts with Arizona based on conduct by its alleged alter ego, TrafficForce.com. The Shooshtime.com allegations do not satisfy the second prong of the *Calder* test (express aiming) as to GLP 5 because Traffic Force does not place its own advertisements on Shooshtime; it acts as a middleman for

---

[1] GLP 5 and Netmedia's Motion sought as alternative relief a stay of this action pending resolution of the Barbados action. Plaintiff split its response into two separate "Oppositions," therefore, GLP 5 and Netmedia are likewise filing separate replies to each. GLP 5 and Netmedia's Reply in support of their stay request is filed concurrently herewith.

clients who wish to place advertisements. Traffic Force itself does not aim anything at anyone. In addition, AMA provides no evidence that the specific advertisements in question were specifically targeted at the Arizona market, rather than the national or worldwide market. In fact, Shooshtime has servers all over the world and provides global services.

The Shooshtime.com allegations also do not support the third prong of the *Calder* test as to GLP 5 (harm that the defendant knows is likely to be suffered in the forum), because AMA has proffered no evidence that any of the advertisements hosted on the Shooshtime network infringed AMA's copyrights. The Heit declaration, on which AMA relies, is silent on this issue. Moreover, in his Declaration, Mr. Heit states that the advertisement space brokered by Traffic Force is for "popunder advertisements." ECF No. 32-8 ("Heit Decl"), at ¶ 5. Popunder advertisements appear in a separate browser window, remain invisible until the user closes its current browser window, and contain only a link provided by the advertiser which when activated by the user transfers the user to a different website. Traffic Force does not store content for popunders; it merely stores the URL link. Thus, any harm caused by a popunder is caused by the third party advertiser, not Traffic Force, on a different website.

AMA also fails to show "individual targeting" of the United States by Porn.com, as required to establish jurisdiction over Netmedia under AMA's alter ego theory. AMA admits that the actual Porn.com website is hosted on servers located in Amsterdam, and that the vast majority (77 percent) of its users are outside the United States. Oppo. at 5. AMA cites the number of U.S.-based Porn.com visitors as a basis for jurisdiction. *Id.* However, AMA concedes that jurisdiction over Netmedia exists in no individual state, thus implicitly acknowledging that a large number of forum website visitors (such as California's millions of Porn.com visitors) does not, by itself, confer jurisdiction. *Id.* AMA argues that some Porn.com content is delivered via a Content Delivery Network ("CDN")[2] operated by

---

[2] A CDN is a caching system and is used by a hosting provider to speed up service to the end users by temporarily storing a copy of website content. Moving parties are informed that Limelight provides such localized temporary storage services to Reflected on a global basis

Limelight, but this does not show targeting by Porn.com because, as AMA admits, Porn.com does not have a direct relationship with Limelight. ECF No. 32-2 ("Silverman Decl."), at ¶¶ 11, 14 (Limelight is a subcontractor of Reflected Networks, and AMA contracts with Reflected). Similarly, AMA's reliance on alleged geo-location of advertisements by third-party advertisers is improper under recent Supreme Court precedent limiting the jurisdictional inquiry to conduct of the defendant. And while AMA asserts that Porn.com uses a U.S. DMCA agent, at most this shows mere awareness that Porn.com is available in the United States, not "individual targeting" of the United States. Thus, even if sufficiently presented (which is not the case), AMA's jurisdictional alter ego theory regarding Netmedia must fail.

Finally, if the Court were to find jurisdiction under AMA's alter ego theory, it would nonetheless be required to dismiss, or at minimum stay, this case. As explained in moving defendants' concurrently-filed Reply in Support of Motion for Stay, if Netmedia and GLP 5 are in fact alter egos of the various related entities cited by AMA, then Netmedia and GLP 5 are also parties to the Content Partner Revenue Sharing Agreement ("CPA") at issue in the Barbados action, and under *Atlantic Marine* the court must dismiss this action based on the Agreement's forum selection clause. *Atlantic Marine Coast, Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas,* 134 S. Ct. 568, 574 (2013). In fact, moving defendants are entitled to enforce this forum selection clause even if (as is the case) they are merely related entities, and not alter egos.

For all of these reasons, the instant motion should be granted in its entirety.

## II.     **DEFENDANTS ARE NOT AGENTS OR ALTER EGOS OF EACH OTHER**

In its Opposition, AMA does not even attempt to argue that the individual contacts of Netmedia or GLP 5 support jurisdiction in this Court. Instead, AMA's entire Opposition is predicated on its alter ego and agency theories, under which AMA claims Netmedia and

---

and has over 18,000 servers in over 80 locations and peers with over 900 ISPs globally. Limelight is by no means a company that focuses on Arizona or U.S. users specifically. (https://www.limelight.com/company-information/).

3
DEFENDANTS GLP 5, INC. AND NETMEDIA SERVICES INC.'S REPLY ISO THEIR
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

1231888

GLP 5 are subject to jurisdiction based on the contacts of others. Oppo. at 1 ("Netmedia falls under jurisdiction of the United States through contacts of Traffic Force and Porn.com. GLP 5 falls under jurisdiction of Arizona through contacts of Traffic Force."). However, AMA's agency and alter ego theories are non-starters.

AMA's agency argument is founded on a premise expressly rejected by the U.S. Supreme Court. AMA argues that an agency relationship exists when one entity performs services "sufficiently important to the [related] corporation that if it did not have a representative to perform them, the [related] corporation . . . would undertake to perform" substantially similar services." *Id*. at 9. In *Daimler AG,* the U.S. Supreme Court expressly rejected this standard, stating that this test impermissibly "stacks the deck, for it will always yield a pro-jurisdiction answer." *Daimler AG v. Bauman*, 134 S. Ct. 746, 759 (2014). Accordingly, this agency test is no longer valid. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015) (after *Daimler*, "the agency test is therefore no longer available to Ranza to establish jurisdiction over NEON.").

AMA also argues that Defendants are alter egos of certain other entities. However, disregarding corporate identity is recognized as an "extreme remedy" and "courts will pierce the corporate veil only in exceptional circumstances." *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 993 (E.D. Cal. 2012). Here, AMA's alter ego argument fails as to Netmedia (and the other named defendants) because AMA has not pled it. ECF No. 16 ("First Amended Complaint") (only alleging that GLP 5 is an alter ego of the other Defendants). In addition, AMA concedes that "to satisfy the alter ego exception . . . the plaintiff must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'" Oppo. at 9. AMA must satisfy both prongs of this test. It can satisfy neither.

To satisfy prong one, Plaintiff must show that one entity has pervasive control over the other, such that it "dictates every facet of the subsidiary's business – from broad policy decisions to routine matters of day-to-day operation." *Ranza*, 793 F.3d at 1071. AMA does

4
DEFENDANTS GLP 5, INC. AND NETMEDIA SERVICES INC.'S REPLY ISO THEIR
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

1231888

not come close to alleging facts that meet this test. AMA alleges that some defendants share management, offices, employees, or office space, but this is not sufficient to pierce the corporate veil between these entities. *Id.* In fact, **complete** overlap of ownership and shared management personnel is **not sufficient** to establish the necessary level of control. *Id.* (noting, as insufficient to establish alter ego, a parent's (1) involvement in its subsidiaries' acquisitions, divestments and capital expenditures; (2) formulation of general business policies and strategies applicable to its subsidiaries, including specialization in particular areas of commerce; (3) provision of loans and other types of financing to subsidiaries; [and] (4) maintenance of overlapping directors and officers with its subsidiaries."); *see also Dos Santos v. Telemundo Commc'n Grp., LLC*, No. SACV 12-1373 JVS (MLGx), 2012 WL 9503003, at *5 (C.D. Cal. Dec. 19, 2012) ("Plaintiffs allege that PRS is PRL's managing member, the two share the same Florida address, and each defendant was 'the agent, employee, servant, or representative" or each other defendant. These allegations do not give rise to a plausible assumption of an alter-ego relationship."). Moreover, there is no evidence that GLP 5 or Netmedia comingle any funds or assets, enter into contracts for each other or any other defendants or pay their taxes, or that one assumes liability for the debts of the other or any other defendants. Nor is there evidence that these entities use each other as mere shells or conduits for the affairs of the other or other named defendants, or fail to keep separate records. *Ranza*, 793 F.3d at 1073-1075; *see also Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015). Most importantly, there is no indication that any defendant "dictate[s] every facet of [the other's] business, including 'routine matters of day-to-day operation.'" *Ranza,* at 1074. Thus, Plaintiffs cannot satisfy prong one.

And even if AMA could establish the first prong of the alter ego test (which it has not), AMA simply **ignores** the second prong of the alter ego test (failure to disregard separate identities would result in fraud or injustice). AMA does not even identify, let alone allege facts or proffer evidence of, a fraud or injustice that would result if AMA's alter ego theory is rejected. Notably, even if AMA *had* argued that dismissal of Netmedia and GLP 5

would hinder its ability to collect a potential judgment in this case (which it has not), this would not satisfy the second prong of the alter ego test. *Haller v. Advanced Indus. Computer, Inc.*, No. CV-13-02398-PHX-DGC, 2015 WL 854954, at *4 (D. Ariz. Feb. 27, 2015) ( "The injustice identified by Haller is that they will not be able to recover their damages if T–Win is dismissed from this case. Doc. 106 at 7–8. But that is not the kind of evidence that satisfies the fraud or injustice requirement."). AMA's failure to address, let alone satisfy, the second prong of the alter ego test is, by itself, fatal to its alter ego claim, and thus fatal to its claim of jurisdiction over Netmedia and GLP 5.

### III. GLP 5 DOES NOT HAVE MINIMUM CONTACTS WITH THIS FORUM

AMA concedes that, under the *Calder* effects test, it must prove that Defendants committed intentional acts, expressly aimed at the forum state, causing harm that the defendant knows is likely to be suffered in the forum state. Oppo at 11 ("Here, AMA's copyright infringement claims are properly analyzed under *Calder* test."). AMA argues that GLP 5 has minimum contacts with Arizona based on conduct by its alleged alter ego, Traffic Force. *Id.* at 1, 13. In its Opposition, AMA identifies two contacts: 1) attendance at one or more Arizona trade shows by Traffic Force representatives; and 2) a contract between Traffic Force and an Arizona company, Oppenheit, LLC, concerning the display of banner ads on the site shooshtime.com. Neither contact supports jurisdiction over GLP 5.

Attendance at trade shows cannot satisfy the *Calder* test because, under the third prong of the *Calder* test, the intentional act must cause harm in the forum. *Calder v. Jones*, 465 U.S. 783, 789 (1984) (allegedly libelous story published in the forum); *Dole Food Co. v. Watts*, 303 F.3d 1104, 1107–08 (9th Cir. 2002) (fraud on Dole, with headquarters in the forum). Attendance at trade shows is obviously not a tort, and thus could not have caused actionable harm in the forum.

Nor can the Shooshtime.com contract satisfy the *Calder* test.

AMA's Shooshtime.com allegations do not satisfy the second prong of the *Calder* test (express aiming), because AMA provides no evidence that the advertisements in question were specifically targeted at the Arizona market, rather than the national or

worldwide market. The Heit Declaration makes no such statement; it states only that the popunders were "on the Shooshtime Network" which included Shooshtime.com, Donkparty.com and Wunko.com – all of which are available to a global audience. Heit Decl., at ¶¶ 2, 5. Thus, they do not individually target Arizona users. *Neuromechanical, LLC v. Kiro Kids Pty. Ltd.*, No. CV–10–1068–PHX–GMS, 2011 WL 333337, at *3 (D. Ariz. Jan. 31, 2011) (finding that nationwide advertisements do not satisfy the individualized targeting requirement under the *Calder* test).

The Shooshtime.com allegations also do not support the third prong of the *Calder* test, because AMA has proffered no evidence of Traffic Force causing harm it knows is likely to be suffered in Arizona. AMA's purported evidence concerning Shooshtime.com is set forth in the Heit declaration, and that declaration contains no evidence that any advertisements placed by Traffic Force contained infringing content. Heit Decl. Moreover, AMA's brief misrepresents the contract as one providing for banner advertisements. The Heit Declaration, however, clearly describes the advertisements as "popunder advertisements." *Id*., at ¶ 5. The difference is material. While banner advertisements can contain content, popunders do not. Popunder advertisements appear in a separate browser window and remain invisible until the user closes its current browser window. Declaration of Ross Allan in Support of Defendants GLP 5, Inc. and Netmedia Services Inc.'s Reply in Support of Their Motion to Dismiss for Lack of Personal Jurisdiction ("Allan Decl."), at ¶ 5. Popunder advertisements contain only a link provided by the advertiser which when activated by the user transfers the user to a different website. *Id.* Traffic Force does not store content for popunders; it merely stores the URL link. *Id.* Traffic Force is not the advertiser, but rather resells advertising space to third parties -- both points conceded by AMA. Thus, AMA has failed to allege any tortious conduct by Traffic Force with respect to the Shooshtime.com advertisements.

For all of these reasons, jurisdiction over GLP 5 does not exist in this forum.

**IV.    NETMEDIA DOES NOT HAVE MINIMUM CONTACTS WITH THE**

DEFENDANTS GLP 5, INC. AND NETMEDIA SERVICES INC.'S REPLY ISO THEIR
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

1231888

**UNITED STATES**

AMA next argues, based on conduct by alleged alter ego Porn.com, that Netmedia has minimum contacts with the United States. As discussed below, the alleged conduct of Porn.com is insufficient to support jurisdiction over Netmedia.

AMA argues that jurisdiction over Netmedia is proper under Fed. R. Civ. P. 4(k)(2), which permits jurisdiction based on contacts with the entire United States. AMA neglects to mention that jurisdiction under this statute is very rare. *Neuromechanical*, 2011 WL 333337 at *3 ("the Ninth Circuit has emphasized the fact that since Rule 4(k)(2) was enacted, that court has never had a case in which the facts have supported jurisdiction under the rule"). This is unsurprising, since this statute only applies in the rare case in which each state lacks minimum contacts but the United States as whole does not. AMA attempts to thread that needle. Oppo. at 8 (asserting that "NetMedia is not subject to personal jurisdiction of any state court."). It fails.

AMA has not shown, as it must under the second prong of the *Calder* test, that Porn.com is 'expressly aimed" at the United States. AMA admits that the vast majority (77 percent) of Porn.com users are outside the United States. *Id*. at 5 (U.S. viewers are 23% of overall viewers). AMA nonetheless argues that Porn.com is aimed at the United States because Reflected, a Massachusetts company, provides web-hosting services. However, AMA also concedes that Reflected's U.S. presence is largely immaterial, because the actual Porn.com website is hosted by Viking Host on servers in Amsterdam. *Id.* AMA argues that certain Porn.com videos are ultimately distributed by Limelight servers located in the United States, but concedes that Porn.com does not have a direct relationship with Limelight (which is a subcontractor of Reflected). Silverman Decl., at ¶¶ 14, 16. In addition, Limelight has servers throughout the world, and does not focus on U.S. users specifically.[3] AMA argues

---

[3] Limelight provides such localized temporary storage services to Reflected on a global basis and has over 18,000 servers in over 80 locations and peers with over 900 ISPs globally. Limelight is by no means a company that focuses on Arizona or U.S. users specifically. (https://www.limelight.com/company-information/).

1  that Porn.com's use of a U.S.-based DMCA agent shows targeting. At most, this shows an
2  awareness that Porn.com is available in the United States, not that it "individually targets"
3  the United States. *Neuromechanical*, 2011 WL 333337 at *3 (availability in a forum does
4  not equate to targeting of that forum; thus ads placed in national magazine did not
5  individually target Arizona) (listing numerous similar cases). AMA also contends that third-
6  party advertisers on Porn.com "geo-target" their ads to the United States. However, the
7  Supreme Court in *Walden* recently re-iterated that unilateral activity of a third party "cannot
8  satisfy the requirement of contact with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115,
9  1125 (2014).

10  And while AMA cites *Mavrix Photo, Inc. v. Brand Techs. Inc.*, 647 F.3d 1218 (9th
11  Cir. 2011) to argue that the number of U.S. visitors to Porn.com shows express aiming,
12  *Mavrix Photo* is distinguishable. In *Mavrix*, the Ninth Circuit held that California had
13  jurisdiction over a defendant website owner who posted copyrighted photos of celebrities on
14  its website, celebrity-gossip.net. The Ninth Circuit cited the number of California website
15  visitors as a factor favoring jurisdiction, but it also cited numerous other factors not present
16  here, including the fact that the website's server was located in the forum, a forum company
17  maintained the website, and the allegedly infringing material specifically attracted a
18  significant number of forum residents to the website. *Id* at 1231-2, ("a significant number of
19  Californians would have bought publications such as People and Us Weekly in order to see
20  the photos"). Most importantly, unlike here the subject matter of the website at issue in
21  *Mavrix* was clearly forum-focused. *Id*. ("[I]t is clear from the record that Brand operated a
22  very popular website with a specific focus on the California-centered celebrity and
23  entertainment industries."). *Mavrix* does not stand for the proposition that the number of
24  forum website visitors is sufficient, by itself, to support jurisdiction.

25  In fact, AMA implicitly acknowledges that the number of forum website visitors does
26  not, by itself, confer jurisdiction. California has 12 percent of the U.S. population, and thus
27  millions of Porn.com visitors. However, AMA concedes that California, notwithstanding its
28  millions of Porn.com visitors, lacks jurisdiction over Netmedia. Oppo. at 8 ("NetMedia is

not subject to personal jurisdiction of any state court."). If millions of California website visitors do not establish minimum contacts with California, millions of U.S. website visitors cannot establish minimum contacts with the United States.

## V. EXERCISE OF JURISDICTION OVER THESE DEFENDANTS WOULD BE UNREASONABLE

To determine if jurisdiction is reasonable, courts consider seven factors: (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Rio Prop., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002).

AMA's arguments regarding these factors are flawed. First, AMA claims that Netmedia and GLP 5 have extensively interjected themselves in Arizona and the United States. But as described above, neither has interjected itself into either forum. Second, AMA claims that the burden on defendants to defend in the forum is minimal. However, both Netmedia and GLP 5 are based thousands of miles from this forum, and their witnesses are located in Canada. ECF No. 27-3 ("Bradbury Decl."), at ¶¶ 4, 10. Third, the home forums of GLP 5 and Netmedia (Michigan and Canada), have a more substantial interest in regulating the behavior of these entities than Arizona. Regarding the fourth and fifth factors, Arizona has very little interest in adjudicating this dispute. None of the parties are based here, none of the defendants conducted their allegedly infringing actions here, and the harm from those alleged actions is not felt here. Sixth, AMA argues that Arizona is the most convenient forum because the servers that host the allegedly infringing content are based in Arizona. Oppo. at 20. However, as discussed above, Limelight has servers all over the world. And AMA does not explain why anyone would need to access Limelight's servers in discovery. Obviously, the "content" at issue in this case is accessible over the

10
DEFENDANTS GLP 5, INC. AND NETMEDIA SERVICES INC.'S REPLY ISO THEIR
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

1231888

internet, anywhere in the world.

Finally, Barbados is an eminently appropriate alternative forum. It is as convenient to defendants as this forum. More importantly, AMA admits it entered into the CPA, which provides for exclusive jurisdiction in Barbados. Silverman Decl., at ¶ 29. As discussed in Defendants' concurrently-filed Reply in Support of Motion to Stay, AMA's copyright claims are subject to the CPA's forum selection clause, and the Barbados courts have exclusive jurisdiction to adjudicate those claims. Thus, Barbados is the **only** appropriate forum for the adjudication of AMA's copyright claims.

## VI. AMA'S SUPPORTING DECLARATIONS SHOULD BE STRICKEN

AMA improperly relies on the Adam Silverman and Jason Tucker declarations to describe the purported business relationships of the defendants in this action. But both Silverman and Tucker lack the requisite personal knowledge to make such assertions. Fed. R. Evid. 602. Declarations are routinely stricken where the declarant lacks personal knowledge and is unable to lay a proper foundation. *HTS, Inc. v. Boley,* 954 F. Supp. 2d 927, 951 (D. Ariz. 2013) ("declarations on information and belief are entitled to no weight when declarant lacks personal knowledge") (citing *Bank Melli Iran v. Pahlavi,* 58 F.3d 1406, 1412 (9th Cir. 1995)); *see also Amon Ra v. Cochise Cty. Sheriff's Dept.*, 2012 WL 4478824, at *3 (D. Ariz. Sept. 28, 2012) (striking portions of a declaration not based on personal knowledge); *Greig v. U.S. Airways Inc.,* 28 F. Supp. 3d 973, 976, n.2 (D. Ariz. 2014) (same). Silverman and Tucker lack personal knowledge of defendants' business relationships and accordingly the following should be stricken from the record: (1) paragraphs 7, 8, 10, 11, 13, 14, 18-21 and corresponding Exhibits B and C of the Silverman Declaration; and (2) paragraphs 10, 11, 13, 20, 21, 23, 24, 30 and corresponding Exhibits A, C, G, and H of the Tucker Declaration.

## VII. CONCLUSION

For the foregoing reasons, the Court should grant the motion of GLP 5 and Netmedia to dismiss for lack of personal jurisdiction.



| | | |
|---|---|---|
| 1 | DATED:  August 26, 2016 | Respectfully submitted, |
| 2 | | GLASER WEIL FINK HOWARD |
| 3 | |   AVCHEN & SHAPIRO LLP |
| 4 | | By:  /s/ Erica J. Van Loon |
| | | ERICA J. VAN LOON |

*Attorney for Defendants*
*Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.*

12
DEFENDANTS GLP 5, INC. AND NETMEDIA SERVICES INC.'S REPLY ISO THEIR
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

1231888