LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| AMA Multimedia, LLC, a Nevada limited liability company,<br><br>        Plaintiff,<br><br>v.<br><br>Sagan, Ltd., a Republic of Seychelles company, individually and d/b/a Porn.com; Cyberweb, Ltd., formerly MXN, Ltd., a Barbados Company, individually and d/b/a Porn.com; NetMedia Services, Inc., a Canadian Company, individually and d/b/a Porn.com; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; David Koonar, an individual, *et. al.,*<br><br>        Defendants. | Case No. CV-16-1269-PHX-DGC<br><br>**PLAINTIFF AMA MULTIMEDIA, LLC'S OPPOSITION TO DEFENDANT SAGAN, LTD'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

Plaintiff, AMA Multimedia, LLC ("AMA") hereby opposes Sagan, Ltd's Motion to Dismiss for Lack of Personal Jurisdiction.

**I.    INTRODUCTION**

The web site Porn.com is clearly targeted and directed towards United States viewers such that the operators of the site have purposefully availed themselves to the United States forum. The claims herein arise out of this contact with the United States, providing for jurisdiction here.

Defendants have created multiple "companies," each involved with the operation of Porn.com. This has become nothing more than a "shell game" whereby Defendants seek to limit any liabilities for Porn.com to a foreign shell company Cyberweb, Ltd., the one entity Defendants admit to operating Porn.com. *However,* Sagan, Ltd., a Seychelles company, specifically represents to the United States government, via the U.S. Copyright Office, that Sagan owns and operates Porn.com. It is *also* represented to all viewers/users of Porn.com that Sagan owns and operates the site. Jurisdiction in the United States over Sagan for the activities on Porn.com is appropriate.

## II.   FACTUAL BACKGROUND

Porn.com is a video streaming site that generates revenue through advertising. Dkt. No. 38-1-3, *Declaration of Adam Silverman In Support of Opposition to Motion to Dismiss ("Silverman Decl."),* p 2, ¶ 7. It is alleged in the First Amended Complaint ("FAC") that Sagan, Ltd. is one of several operators and/or owners of Porn.com. FAC at ¶¶6, 46-47.

There are several owners and/or operators of Porn.com.[1] Defendants concede that Cyberweb, Ltd. is an owner and operator of Porn.com. Netmedia Services, Inc. has a technical services agreement for maintenance *and operation* of Porn.com, including programming, design, and uploading videos.[2] Sagan Ltd. represents to the

---

[1] Defendants assert that "such lumping of Defendants is impermissible," citing *Calder v. Jones*, 465 U.S. 783, 790 (1984). Defendants' citation misleads the Court. *Calder* most certainly does not prohibit alleging that more than one entity or person is an owner or operator of a business or domain property. Rather, *Calder* stands for the proposition that each defendant's contacts with the forum must be assessed individually.

[2] In a Barbados Claim (and here), NetMedia claims rights through the CPA to the AMA videos posted on Porn.com. Dkt. No. 38-1-3, p 2, ¶4. On June 9, 2016, the Barbados Claim was amended to include Netmedia's stated role, explaining that Netmedia has a technical services agreement to for maintenance *and operation* of Porn.com, including programming and design. Further, it is also specifically stated that Netmedia's role relates to **uploading content** to the web sites. Dkt. No. 38-1-3, p 6, ¶ 30-33; *see also*, Amended Claim cited in Dkt. No. 38-1-3. Further, Netmedia

United States Copyright Office that it is the owner and operator of Porn.com. It is also represented on the Porn.com Terms of Service that Sagan Ltd. is an owner and operator of Porn.com.

Porn.com has *significant* contacts with the U.S. and clearly targets the United States. Defendants concede an owner/operator of Porn.com is Cyberweb Ltd., a company registered in Barbados. The company's corporate filings in Barbados specifically state that the business of Cyberweb is "Internet Marketing" with the "company primarily in the *USA*." Dkt. No. 38-1-3, p 5, ¶ 25, Ex. D.

U.S. viewers are the predominant viewers of Porn.com. The site received 52.2 million visits between January and June 2016, and U.S. internet users were by far the largest source of viewers, comprising 23.26% of the 52.2 million viewers. (The second largest was Germany at 7.99%.) Dkt. No. 38-4, p 5, ¶ 26-27.

Porn.com utilizes hosting through a U.S. company in Massachusetts called Reflected Networks and/or Swiftwill Inc.[3] The HTML, or code, of Porn.com is hosted through servers in Amsterdam. Dkt. No. 38-1-3, p 2-3, ¶ 8-13. However, the actual videos displayed to U.S. viewers are **distributed from servers located in the U.S.** Porn.com utilizes a Content Delivery Network ("CDN"), Limelight, ***located in Arizona***, to distribute the Porn.com videos. Dkt. No. 38-1-3, p 3, ¶¶14-16. It is Limelight's Arizona and U.S.-based servers that distributed the infringed videos.

Porn.com, through its Content Partnership Agreement ("CPA"), claims significant ties to U.S. content producers. Porn.com displays advertisements from U.S. companies that are geo-targeted to U.S. viewers. Dkt. No. 38-4, p 6, ¶ 28. Importantly, the U.S. is one of the most profitable markets, if not the most profitable market for

---

employees are operating Porn.com. Dkt. No. 38-1-3, p 6, ¶29.

[3] Swiftwill and Reflected.net are part of the same family of companies, with similar, if not identical ownership.

Porn.com, as the U.S. has the highest amount of traffic coupled with some of the most expensive advertising rates. *Silverman Decl.,* p 2-3, ¶¶ 7-9 Porn.com utilizes a U.S.-based DMCA Agent, and Porn.com's Terms of Service specifically references U.S. users. Dkt. No. 38-4, p 3, ¶ 11, p 6, ¶ 29.

## III.  LEGAL ARGUMENT

Personal jurisdiction "is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). The plaintiff bears the burden of establishing that a court has personal jurisdiction over a defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int 'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). There is no statutory method for resolving this issue; thus, "the mode of its determination is left to the trial court." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). If a court decides to rule on personal jurisdiction without an evidentiary hearing, a plaintiff must make only a *prima facie* showing of jurisdictional facts to survive the motion. *Bauman v. DaimlerChrysler Corp.*, 644 F. 3d 909, 919 (9th Cir. 2011).

The "uncontroverted allegations in [plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor" to determine if Plaintiff has established a *prima facie* showing. *See*, *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

Sagan is subject to specific personal jurisdiction under FRCP 4(k)(2), often referred to as the federal long-arm statute.[4] *Pebble Beach Co. v. Caddy,* 453 F.3d 1151,

---

[4] Sagan's Motion to Dismiss does not address Fed.R.Civ.P. 4(k)(2) jurisdiction, although Sagan's co-defendants, with same counsel, simultaneously filed a Reply to AMA's Opposition to this same jurisdictional motion. Dkt. No. 44. Presumably, Sagan will similarly reply with the assertion that this Circuit has never had facts supporting 4(k)(2)

- 4 -

1159 (9th Cir. 2006). Analysis of the federal long-arm statute is coextensive with Arizona's. *See*, Ariz.R.Civ.P. 4.2(a); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997); *Schwarzenegger*, 374 F.3d at 800.

FRCP 4(k)(2) provides that:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

A court may exercise jurisdiction over a defendant where (1) the claim arises under federal law, (2) the defendant is not "subject to the personal jurisdiction of any state court," and (3) the exercise of personal jurisdiction comports with due process. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). AMA's claims here arise under federal law, and Sagan is not subject to personal jurisdiction of any state court. The only dispute jurisdiction over Sagan is whether the exercise of personal jurisdiction comports with due process.

Due process requires that a nonresident defendant have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Data Disc*, 557 F.2d at 1287. "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant

---

jurisdiction. This assertion is simply false. To support this assertion, Defendants cite *Neuromechanical, LLC v. Kiro Kids Pty. Ltd.*, No. CV-10-1068-PHX-GMS, 2011 U.S. Dist. LEXIS 12150 (D. Ariz. Jan. 31, 2011) trial court opinion which cited a **2007** Ninth Circuit Opinion, *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450 (9th Cir. 2007). Defendants fail to inform the Court of several subsequent cases in this Circuit conferring 4(k)(2) jurisdiction, including *Datatech Enters. LLC v. FF Magnat Ltd.*, No. C 12-04500 CRB, 2012 U.S. Dist. LEXIS 131711 (N.D. Cal. Sep. 14, 2012); and *Cybernet Entertainment LLC v. IGMedia, Inc., et al.*, United States District Court District of Arizona Cause No. 12-cv-01101-PHX-SRB.

difference: rather than considering contacts between the [defendant] and the forum state, we consider contacts with the nation as a whole." *Holland*, 485 F.3d at 462.

Courts recognize two bases for personal jurisdiction within the confines of due process: (1) general jurisdiction, which permits the forum court to exercise jurisdiction over the defendant in all matters; and (2) specific jurisdiction, which arises out of the defendant's contacts with the forum giving rise to the subject litigation. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011); *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 30 1-02 (9th Cir. 1986). The Ninth Circuit Court of Appeals articulated the following three-prong test for finding personal jurisdiction:

> (1)  The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable. *Schwarzenegger*, 374 F.3d at 802.

"The plaintiff bears the burden of satisfying the first two prongs of the test." If the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.,* 374 F.3d at 802.

**A.  Purposeful Direction**

First, AMA must establish that Sagan purposefully availed itself of the privilege of conducting activities here *or* purposefully directed activities toward the forum. *Id*. These two inquires are often equated to "'purposeful availment,' . . . but availment and direction are, in fact, two distinct concepts." *Id.* (citations omitted). An analysis of purposeful availment of privileges of the forum state typically centers on the defendant's actions in the forum state and is usually analyzed in connection with contract disputes. *Id.*

An analysis of purposeful direction, on the other hand, is typically used in tort suits and *normally centers on actions performed outside the forum that are directed toward the forum*. *Id.* at 802-03.

For intentional torts, the Ninth Circuit Court applies the *Calder* effects test in examining purposeful direction of a defendant's activities toward a forum. *See Calder v. Jones*, 465 U.S. 783, 788-90 (1984); *Dole Food Co., Inc. v.* Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). Here, AMA's copyright infringement claims are properly analyzed under *Calder* test. *See, Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010); *Rio*, 284 F.3d at 1019-20.

Purposeful direction under the *Calder* effects test "'requires that the defendant allegedly have 1) committed an intentional act, 2) expressly aimed at the forum state, 3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Schwarzenegger*, 374 F.3d at 803. Purposeful availment found if "business activities reach out beyond one state and create continuing relationships and obligations." *Travelers Health Ass'n v. Cmnwlth of Va*, 339 U.S. 643, 647, 70 S. Ct. 927 (1950).

**1.     Intentional Act**

Sagan, as an owner and/or operator of Porn.com, has acted intentionally by obtaining AMA videos without authority and displaying the videos on Porn.com under the guise of being posted by third parties. The FAC alleges Sagan to be one of the owners and operators of Porn.com. Sagan is listed with the U.S. Copyright Office as an owner and operator of Porn.com. Porn.com represents to its users via Terms of service that Sagan is an owner and operator of Porn.com. Plainly, Sagan is an owner and operator of Porn.com.[5]

Intent under the *Calder* effects test is construed as "an intent to perform an actual,

---

[5] In its Motion to Dismiss Defendant Sagan did *not* state that it does not own or operate Porn.com.

- 7 -

physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Operation of a website constitutes an intentional act. *Brayton, supra,* 606 F.3d at 1129 ("operating a passive website was an intentional act."); *see also*, *Datatech Ent. LLC v. FF Magn at Ltd.*, No. C 12-04500 CRB, 2012 WL 4068624, at *2 (N.D. Cal. Sept. 14, 2012) ("The intentional act element is broadly construed, and can be met by the mere operation of a website ....").

Here, Sagan's intentional acts are even clearer. It sought AMA's videos on other streaming sites across the Internet, captured these videos, and then posted them on Porn.com disguised as third-party uploads. Sagan **does not deny** these acts.

### 2.     Express Aiming

Porn.com is expressly aimed at the U.S. First, Cyberweb, one of the owners of Porn.com, specifically stated in its Barbados corporate filings that the business is "primarily in the USA." Second, the primary visitors to Porn.com are U.S. residents, comprising 23.26% of Porn.com's viewers in the past 6 months.[6] (The next closest country is 7.99%.) Third, Porn.com is hosted by Reflected and/or Swiftwill, a Massachusetts company, and it utilizes a CDN (for more effective and efficient delivery to U.S. viewers) which is comprised of Limelight servers located in Arizona and throughout the U.S.,[7] from which the infringed videos were distributed. The primary purpose of the use of a U.S. CDN is significant. As conceded by Defendants, the CDN provides *faster* delivery of web site content to viewers local to the CDN. This is accomplished by locating

---

[6] Defendants assert that 77% of viewers of Porn.com come from outside the United States. Dkt. No. 44. However, this is misleading. Not only is the next largest market 7.99%, the 77% referenced by Defendants is compromised up of 195 other countries. That the United States is nearly 24% of Porn.com viewers is significant.

[7] Defendants do not deny the use of Arizona-based Limelight Networks, nor the use of Arizona-based servers in the delivery of the infringed material. Instead, they simply state they are not involved in a *direct* contractual relationship with Limelight.

servers with the content as geographically close to the end user as possible. Limelight has more locations with servers in the United States than any other country in the world, by a significant margin. The *primary* reason to utilize a U.S.-based CDN is to ensure faster delivery of videos to Porn.com's largest market, the United States. Fourth, Porn.com claims relationships with U.S. content producers through its Content Partnership Program, and with U.S. advertisers who direct advertisements to U.S. viewers. Fifth, Porn.com geo-targets its advertising to U.S.-based users, including residents of Arizona. Sixth, Porn.com has a U.S.-based DMCA agent, showing it seeks protection under U.S. laws.

In the past, courts "have struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed." *See Mavrix Photo, Inc. v. Brand Techs. Inc.*, 647 F. 3d 1218, 1229 (9th Cir. 2011). The Ninth Circuit Court of Appeals has held that while "maintenance of a passive website alone cannot satisfy the express aiming prong ... operating even a passive website in conjunction with 'something more'— *conduct directly targeting* the forum—is sufficient." *Id.* (Emphasis added.) To determine that "something more," the Ninth Circuit considers "the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Id.*

The Ninth Circuit has found that the number of visitors to a site from a particular forum is relevant to the express aiming inquiry. *Mavrix* at 1230 (concluding that there was express aiming at California, where, "[a] substantial number of hits to [defendant's] website came from California residents.") That Court has also found it "most salient the fact that [a defendant] use[s] [a plaintiff's] copyrighted photos as part of its exploitation of the [forum] market for its own commercial gain." *Mavrix*, at 1229. The relevant inquiry is whether the third-party advertisements demonstrate that Defendant exploited the U.S. market for commercial gain. *Id.*

- 9 -

In *Mavrix*, the court considered specific personal jurisdiction where the plaintiff alleged infringement by the defendant for "posting its copyrighted photos on its website." *Id.* at 1221. The defendant operated an interactive website on which visitors could post comments, vote in polls, join a membership club, and "submit news tips and photos of celebrities." *Id.* at 1222. The court noted that an Internet tracking service ranked the website "as number 3,622 out of approximately 180 million websites worldwide based on traffic." *Id.* Here, Porn.com is ranked 536 globally, 328 in the U.S., and 23.26% of its visitors are from the U.S.

The *Mavrix* Court pointed out that while defendant's website courted a national audience, the defendant made "money from third-party advertisements" for California activities and had "agreements with several California businesses," including an Internet advertising agency and a wireless provider to host a version of the site. *Id.*[8]

---

[8] The *Mavrix* court specifically stated:

> [Defendant] makes money by selling advertising space on its website to third-party advertisers: the more visitors there are to the site, the more hits that are made on the advertisements; the more hits that are made on the advertisements, the more money that is paid by the advertisers to [defendant]. A substantial number of hits to [defendant's] website came from California residents. One of the ways we know this is that some of the third-party advertisers on [defendant's] website had advertisements directed to Californians. In this context, it is immaterial whether the third-party advertisers or [defendant] targeted California residents. The fact that the advertisements targeted California residents indicates that [defendant] knows—either actually or constructively—about its California user base, and that it exploits that base for commercial gain ….

*See Mavrix*, 647 F.3d at 1230. *See also, IO Group, Inc. v. Jordon*, 708 F. Supp. 2d 989, 992-93, 995, 997 (N.D. Cal. 2010) (concluding express aiming and personal jurisdiction in copyright infringement action where defendant owned and operated a website where users could view, copy, upload, and download photographs and moving pictures, stating that "[a]lthough [d]efendant does not charge users . . . , the site is a commercial venture as [d]efendant earned revenue from advertisements that appeared on the site"). The same legal analysis applies to the advertisements done on Porn.com.

In *Datatech,* 12% of the subject web site's traffic came from the United States, the defendant registered with the U.S. Copyright Office, the web site Terms of Service referred to U.S. Law, the web site utilized U.S. company vendors. The Court found that the substantial number of hits from the United States, and profit from those hits, in combination with features of the web site operations and Terms of Service demonstrated that the web site exploited U.S. copyright interests and the suit arose from the U.S. web traffic. *Id.*

In *Cybernet Entertainment, LLC v. IG Media, Inc., et al.,* United States District Court District of Arizona Cause No. CV 12-01101-PHX-SRB, this District reviewed facts substantively the same as the instant case. There, defendants' web sites' traffic was comprised of between 25.8% and 31.4% from the United States, contained advertising targeting U.S. viewers, made money from advertisers from users in the United States, and defendants had contracts and agreements with United States entities (including a DMCA Agent). The Court concluded that Defendants were aware of "cultivating a United States market and desired to do so." The same is true in the instant matter.

Here, Porn.com utilizes a DMCA agent in Michigan, claims Partnership Agreements with U.S. content producers, and has advertising relationships with U.S.-based advertisers directing ads at U.S. viewers, which account for the user's location.[9] Porn.com is also registered with the U.S. Copyright Office, hosted by a U.S. company

---

[9] Defendants argue in the Reply to Opposition to NetMedia Motion to Dismiss that the geo-targeting advertisements do not assist in establishing jurisdiction, citing *Walden v. Fiore,* 134 S.Ct. 115, 1125 (2014) for the proposition that "unilateral activity of a third party 'cannot satisfy the requirement of contact with the forum state.'" Dkt. No. 44, p 13. Not only is *Walden* factually dissimilar to the use of advertisers on Porn.com, but Defendants attempt to confuse the Court with its analysis. The simple fact is that Porn.com has contractual relationships with advertisers seeking U.S. consumers. These relationships establish Porn.com's intent and desire to create and grow U.S. market.

and distributed infringed videos to U.S. viewers through Limelight's U.S. and Arizona-based servers. Moreover, one of the owners of Porn.com has specifically stated that its business is primarily in the U.S. Porn.com individually targeted AMA for a contractual agreement, knowing AMA resided in the U.S.

Sagan is an owner or operator of Porn.com. Based on Porn.com's subject matter, size and commercial value of the U.S. market, its claimed direct relationship with U.S. content-producers, and its utilization of U.S. hosting companies and CDNs, Sagan anticipated, desired, and achieved a substantial U.S. viewer base. That videos on Porn.com are delivered through U.S. based CDN servers cannot be over looked.[10] The delivery of such videos through these servers permits faster and more efficient delivery to viewers local to the CDN servers. The faster and more efficient delivery to U.S. viewers strongly signifies the intent to market Porn.com to the U.S. market. Sagan knew they were cultivating a U.S. market and desired to do so. *See Mavrix*, 647 F.3d at 1230.

The fact that Porn.com has a DMCA agent (and that the site advises viewers of procedures to make complaints of U.S. copyright infringement) suggests that it was aware that its websites "exploited (and threatened) U.S. copyright interests." *See Cybernet, citing Datatech Enters. LLC v. FF Magnat Ltd., No. C 12-04500 CRB, 2012 U.S. Dist. LEXIS 131711 (N.D. Cal. Sep. 14, 2012)* (granting a preliminary injunction, concluding there was a reasonable probability that plaintiff (an adult-oriented content producer) could establish personal jurisdiction under FRCP 4(k)(2) where defendant's file-sharing website received "a 'substantial number of hits' from the United States and directly profited from those hits" and where "several features of the website's operation and

---

[10] Defendants argue in the Reply to Opposition to NetMedia Motion to Dismiss that Limelight has servers worldwide and does not focus on U.S. Specifically. Limelight's world wide practice has no bearing on this issue. Porn.com is served to U.S. viewers from Limelight servers *in the United States.*

Terms of Service demonstrated an awareness that the website exploited (and threatened) U.S. copyright interests").

Based on Porn.com's numerous and various contacts with the U.S., the substantial amount of traffic from U.S. residents, and the fact that Porn.com profits–whether directly or indirectly–from advertising that targets U.S. residents, AMA has sufficiently established a *prima facie* case of express aiming at the U.S. *See Mavrix*, 647 F.3d at 1231.

### 3. Harm in the Forum

AMA is a U.S. company, seeks and has United States viewers for its paid membership web sites, and has protected its videos through U.S. copyright registrations. AMA's videos infringed on Porn.com were displayed in the U.S. AMA has adequately alleged that it has suffered harm in the U.S. as a result of Defendant's actions, meeting the *Calder* test.

### B. Arises Out of Defendant's Forum-Related Activities

AMA must also show that its claims arise out of or relate to Defendants' forum-related activities. *Schwarzenegger*, 374 F.3d at 802. A claim arises from forum-related activities if the plaintiff "would not have been injured 'but for'" the defendant's conduct directed toward the forum. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). The "'arising out of' requirement" should not be read restrictively; rather, the "but for" test merely "preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum" and "preserves the essential distinction between general and specific jurisdiction." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *overruled on other grounds by* 499 U.S. 585.

AMA is a U.S. company (Las Vegas, Nevada), with U.S. servers to broadcast its U.S. copyrighted videos to its U.S. based paying members. Defendant Sagan is one of the owners and operators of Porn.com, hosted by a U.S.-based webhosting provider and distributed the infringed videos to U.S. viewers through Limelight's U.S. and Arizona-

based servers. Porn.com is targeted to U.S. viewers, with U.S. based advertisers. Moreover, Defendant Sagan has taken AMA's copyrighted videos without authority and disguised them on Porn.com for its own benefit.

AMA has been harmed in the U.S. because Defendant Sagan targeted the U.S. and caused AMA's copyrighted works to be displayed and viewed on its sites in the U.S. AMA's injury in the U.S. stems from the substantial amount of traffic to Defendant's websites, including by viewers in the U.S. Thus, AMA's claims arise out of Defendant's U.S.-related activities on and through Porn.com. *See Mavrix*, 647 F.3d at 1228; *Rio*, 284 F.3d at 1021.

## C. Reasonableness

Where the first two requirements of specific personal jurisdiction are met, "in order to satisfy the Due Process Clause, the exercise of personal jurisdiction must be reasonable"; that is, "it must comport with 'fair play and substantial justice.'" *Panavision*, 141 F.3d at 1322 (quoting *Burger King*, 471 U.S. at 476). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see also Schwarzenegger*, 374 F .3d at 802. In determining reasonableness, courts consider seven factors:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Rio*, 284 F.3d at 1021.

Here, all seven factors support exercising jurisdiction over Sagan and Sagan has failed to present a compelling case that jurisdiction is unreasonable.

First, as an owner and operator of Porn.com, Sagan has extensively interjected in the forum.

Second, it is disingenuous for Sagan to argue a substantial burden to litigate this matter in the United States when it filed an action in Barbados. Defendants argue that the lack of employees in the United States makes it "extremely burdensome and costly" to travel to the U.S. for trial and other proceedings, but the relevant employees and witnesses resided in Canada, not Michigan or Barbados. Sagan fails to explain how **Barbados** is less costly or burdensome than the United States. It seems obvious that travel to the United States from Canada will be less costly and burdensome than travel to Barbados.[11]

Third, Defendant Sagan fails to explain why Barbados has more compelling interest in governing actions in the U.S. which violate U.S. copyright laws.

Fourth, Defendants fail to explain why this forum does not have a particular interest in adjudicating this dispute. U.S. District Courts certainly have significant interests in resolving disputes of U.S. copyright infringements by foreign defendants. By Sagan operating Porn.com in the U.S., this District Court can surely demonstrate a particular interest in this case.

Fifth, Defendants argue a lack of judicial efficiency here, arguing that no party is located in Arizona. Defendants then offer Barbados as a more judicially efficient forum. None of the parties here are connected whatsoever to Barbados, and Barbados is significantly further than Arizona. Most importantly, the videos displayed in this case were served from Content Delivery Network Limelight, **located here in Arizona**. The harm occurred in Arizona.

Sixth, since the servers that display AMA's content are located here in Arizona

---

[11] It can also be noted that Defendants' counsel is located in Los Angeles, **California** – a far more convenient distance from **Arizona** than to Barbados.

- 15 -

and other parts of the United States, as the Content Delivery Network servers are through Limelight with headquarters in Arizona, Arizona is the most convenient forum to obtain effective relief.  These servers are more easily accessed in discovery, which would then be governed by this Court.

Seventh, Defendants Barbados as an alternative based upon a Content Partnership Agreement between AMA and GIM.  Not only is GIM not a party to this litigation (and the Defendants here are not party to the Content Partnership Agreement), but if it were determined that the CPA does not govern AMA's allegations, the Barbados court does *not* have jurisdiction over the parties to address AMA's copyright infringement.

## III.   CONCLUSION

For the reasons stated herein, AMA Multimedia respectfully requests that the Court deny Defendant's Motion to Dismiss.

DATED this 14th day of September, 2016.

**MANOLIO & FIRESTONE, PLC**

By:   /s/ Veronica L. Manolio
     Veronica L. Manolio
     8686 E. San Alberto Dr., Suite 200
     Scottsdale, Arizona 85258
     *Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of September, 2016, I electronically transmitted the foregoing document to the Clerk's office using the CM/ECF system for filing. Copies will be transmitted via CM/ECF to the following recipients:

Erica J. Van Loon
Glaser Weil Fink Howard Avchen & Shapiro LLP
10250 Constellation Blvd.
Los Angeles, CA 90067
evanloon@glaserweil.com
*Attorneys for Defendants David Koonar, Sagan Limited, GLP 5, Inc. and NetMedia Services Inc.*

By: \_\_\_/s/ Gina Murphy_____