LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMA Multimedia, LLC, a Nevada limited liability company,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Sagan, Ltd., a Republic of Seychelles company, individually and d/b/a Porn.com; Cyberweb, Ltd., formerly MXN, Ltd., a Barbados Company, individually and d/b/a Porn.com; Netmedia Services, Inc., a Canadian Company, individually and d/b/a Porn.com; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; David Koonar, an individual, *et. al.,*<br><br>　　　　　　　Defendants. | Case No. CV-16-1269-PHX-DGC<br><br>**PLAINTIFF AMA MULTIMEDIA, LLC'S OPPOSITION TO DEFENDANT SAGAN LIMITED'S MOTION TO STAY**<br><br>**(Oral Argument Requested)** |

**I.    INTRODUCTION**

Plaintiff, AMA Multimedia, LLC (hereinafter "AMA") respectfully requests that this Court deny Defendant Sagan's Motion to Stay Proceedings Pending the Outcome of the Barbados Claim. Law governing this Court's discretion to stay proceedings weighs strongly in favor of denial. More importantly, there is a strong potential (and likelihood) that the Barbados Action will not fully resolve this dispute, such that a stay is precluded. Finally, the required "exceptional circumstances" to warrant a stay simply do not exist.

Defendants are claiming "license rights" that are intentionally fabricated. Defendants are forum shopping.

## II. BACKGROUND

In the interest of brevity, as the Court will also consider Defendant Netmedia and GLP 5's similarly crafted motion to stay, AMA herein incorporates by reference all procedural facts presented in AMA's Opposition, Dkt. Nos. 33, 33-1, 33-2, 33-3, 33-4.

AMA has alleged that Defendants have engaged in intentional direct copyright infringement on the web site Porn.com. Defendants (Sagan included) now allege that a Content Partner Agreement ("CPA") granted them the ability upload AMA content on their own, without compensation to AMA. This contradicts to the CPA in entirety, and by all accounts is illegal.

Defendants filed a Barbados Claim in a last-minute fashion after manipulating and deceiving AMA into granting a few days' extension before filing this action under the guise of settlement. AMA immediately filed thereafter. AMA was finally served on August 5, 2016 with an **<u>Amended</u>** Barbados Claim (amended on June 9, 2016 – after this lawsuit began). Dkt. No 33-2-3, *Declaration of Adam Silverman In Support of Opposition to Sagan Motion to Dismiss,* at Exhibit E (Dkt. 33-3, p 39-46).

**The Content Partnership Agreement – Online Form Contract.**

In September 2012, a non-agent independent contractor ("Lewis") of SSC Group LLC ("SSC"), a now defunct California LLC, registered to be a user of PaidPerView.com ("PPV"). After being approved and logging in, a user was *later* presented with the CPA online through an online form contract that required a user to click "Submit." Dkt. No. 27-3. Lewis executed the agreement. Lewis did not have binding authority. The online form contract was not negotiated at all. Dkt. No. 27-3.

SSC was dissolved in 2013. Thereafter, AMA Multimedia, LLC, a newly formed Nevada company, took over the properties owned by SSC. *Declaration of Adam*

- 2 -

*Silverman In Support of Opposition to Sagan Motion to Dismiss ("Silverman Decl."),* p 2-4, ¶¶ 3-23.  Once SSC was dissolved, Defendants accepted AMA promotional content and used this promotional content in its revenue sharing program.  *Silverman Decl.,* p 4, ¶ 23.  The terms of the CPA specifically precludes Lewis or SSC assigning the CPA.  Thus, AMA is not actually a party to the CPA, and has never signed any version of the CPA.  *Silverman Decl.,* p 3, ¶¶ 12-13.

The CPA granted GIM only <u>a nontransferable[1]</u> license to distribute content provided *by* SSC.  Paragraph 1.1 of the CPA overtly and specifically grants a *nontransferable* license to *GIM* to *only* the content submitted or provided by the Licensor, further stating that "No license to any other intellectual property of the Licensor is provided hereby."  Dkt. No 33-2, p 4, ¶ 19.  Paragraph 1.3**[2]** states "All rights in and to the Content not expressly licensed to Licensee [GIM] under Section 1.1 are reserved to Licensor."  The CPA licenses a right for GIM to stream and display the videos provided by SSC under the CPA.  The CPA is clear that the non-transferable license is for GIM only, stating as the *Purpose* of the license:

> "Licensee [GIM] desires to provide the Content to end users of a single/(group of) website(s) (the "Websites") on the Worldwide Web, who's advertisements are controlled by the Traffic Force Advertising Management System, ("TrafficForce") at which **Licensee [GIM] can stream and provide downloading of video** and audio Content over electronic devices, including without limitation desktop and laptop computers, handheld receivers and wireless phones, to end users. (the "Purpose").

*Id.* (emphasis added)

By Defendant's own admission in their Barbados Statement of Claim, Paragraph 1.5.1, **GIM does not own or operate any websites**, but rather simply aggregates content

---

[1] A "nontransferable" license is defined as a license which is "not allowed to be given or assigned to a third party." http://www.collinsdictionary.com/dictionary/english/nontransferable
[2] There are 2 paragraphs labeled 1.3  This references the correct 1.3, as opposed to the paragraph that should be labeled 1.2

1  through licenses for use on other websites, specifically websites owned and operated by
2  Netmedia, Sagan, and Cyberweb.  Dkt. No 33-2-3, *Declaration of Adam Silverman In*
3  *Support of Opposition to Sagan Motion to Dismiss,* at Exhibit E (Dkt. 33-3, p 39-46).
4  GIM's license does not match the relationships of Defendants.  **GIM does not stream**
5  **and provide downloading of the Content**, rather other companies do the downloading
6  and streaming, and GIM possesses a *nontransferable* license.  GIM needs a transferable
7  license.  It has no such license.  Netmedia, Sagan, and Cyberweb rely upon license rights
8  to a CPA that had no capacity to transfer or grant them any license rights to any content
9  from the CPA.  The CPA assumes there is not a web of companies that are given
10 licensing rights to AMA's content.  The license by AMA is granted to GIM only, and
11 cannot be transferred for use to any entity at the disposal of GIM and without AMA's
12 permission.
13     The CPA included specific provisions that dictated the manner and form which
14 SSC would provide content.  *Id.,* p 4, ¶ 19-23.  The CPA makes it clear that only the
15 *content provided by SSC* and in the enumerated manner and form stated in the CPA are
16 granted a nontransferable license to GIM.  *Id.*
17     Paragraph 4.1 of the CPA states explicitly that "Licensor shall provide content in a
18 *mutually agreed form*, Examples of which can be seen in Exhibit 'A'."  (Emphasis
19 added.)  Exhibit 'A' of the CPA set out minimum requirements for content and then
20 *required* SSC to *provide* the content in DVD form *and* to provide all supporting
21 documentation required by 18 U.S.C. 2257.  *Id,* p 4, ¶ 22.  Paragraph 4.4 conveys a level
22 of control to the Licensor obligating them to provide no content at all under the CPA.
23     Paragraph 4.6 dictates that Licensor (SSC) "shall have the *sole* responsibility for
24 providing" (emphasis added) the content to Licensee in one of the Acceptable Methods
25 of *Delivery* set forth in Ex. B:  File Transfer Protocol (FTP); Physical Copy Delivery;
26 Hard Drive Copy Deliver; and Licensor's Use of PaidPerView Uploader.  *Id,* p 4, ¶ 23.

1    All of these methods involve AMA *delivering* content to Defendants.

2    Defendant Sagan now asserts license rights that were nontransferable under the
3    CPA, to content "however obtained," including to content Sagan procures and uploads
4    themselves. Defendants rely upon Paragraph 3.9 of the CPA as supporting that the CPA
5    contemplated Defendants obtaining videos from wherever and however they desired.
6    There is no language in this Paragraph that expands the scope of the license granted to
7    GIM in 1.1.  The "***license defense"*** by Defendants has been fabricated in bad faith to
8    prevent adjudication of this case here in the United States.

9    Furthermore, none of the full-length videos alleged as infringed in the FAC were
10   provided to GIM through the delivery methods in the CPA.  By their own admission,
11   they argue "even if" they directly uploaded them, it is within the rights of the CPA. *Id.,* p
12   6, ¶¶ 29-31.   Defendants have gone silent related to the allegation of creating fake
13   usernames and upload dates to disguise their activity.  They have been caught stealing.

14   Illustratively, Phil Bradbury states that 2116 videos were uploaded by SSC to
15   GIM for payments of $5404.09.  Dkt. No. 27-3.  *The videos at heart in this litigation are*
16   *not contained in that number of videos nor payments.*   Defendants did not act in
17   accordance with the CPA related to the alleged activity, nor did they consider the CPA as
18   they were disguising the videos as third party uploads. *Silverman Decl.,* p 4-5, ¶¶ 25-6.
19   Mr. Bradbury affirms this, declaring that he only discovered the CPA could arguably
20   absolve them of this behavior after months of settlement talks and well after the alleged
21   actions occurred, but conveniently right before AMA filed.  Dkt. No. 45-2.

22   Defendants knew their actions were unlawful and unrelated to the CPA.   Once
23   litigation became imminent, abilities in the CPA have now been "discovered to negate"
24   AMA's claims.   In an ironic twist, around the same time as this discovery, Defendants
25   deleted all the alleged videos.

26   The CPA has many questionable provisions: Section 10.6 permits GIM the sole

- 5 -

*unilateral* ability to alter the entirety of the terms of the CPA (choice of law, prevailing party, compensation, scope of license) with no prior notice, consent, opt out, or limitations; and Section 10.8 states that any rule of interpretation of ambiguity against the drafter be *inapplicable.* Dkt. No 33-2, p 4, ¶ 19.  There are no provisions ensuring that the counterparty has been advised by an attorney, or has the binding authority to enter into the agreement.

### C.    The Relationship(s) to Barbados

Defendant Sagan does not operate in Barbados and does not have any connection to Barbados.  None of Defendants operate from Barbados.  The Barbados Corporations are set up as International Business Corporations, which limits what business they can conduct in Barbados.  GIM received content under the CPA on their servers located in the U.S.  Payments to AMA pursuant to the CPA were mailed from Canada, drawn on a U.S. bank account in US dollars.  Any payments from AMA to any of Defendants were sent to Canada, as AMA was instructed.  *Id.,* p 6, ¶ 34.

The contract was not negotiated nor signed in Barbados.  None of the actions under the CPA occurred in Barbados.  None of the actors under the CPA are located in Barbados.  None of the servers or offices operating Porn.com or Traffic Force are located in Barbados. Porn.com displayed the videos through U.S.-based servers.  *Id.*

### III.   LEGAL ARGUMENT

### A.    Forum Selection Clause Is Unreasonable.

A forum selection clause ("FSC") may be unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement of the clause will contravene a strong public policy of the forum in which the suit is brought. See *Argueta v. Banco Mexicano*, 87 F.3d 320, 325 (9th Cir. 1996); *Murphy v. Schneider*

*Nat'l, Inc.,* 362 F.3d 1133, 1140 (9th Cir. 2003) (*citing M/S Bremen*, 407 U.S. at 12, 15); *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998). Under this standard the party seeking to show that the clause is unreasonable "has a heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court." *Argueta*, 87 F.3d at 325.

Defendants cite *Alt. Marine Const. Co, Inc. v. U.S. Distr. Ct. for W. Dist. Of Texas,* 134 S.Ct. 568 (2013) for the proposition that FSC should be given controlling weight in all but the most exceptional circumstances. However, *Alt. Marine's* ruling is specific to ***valid* FSCs**.

*Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585 (1991) address whether a FSC is actually valid. A FSC is presumptively valid under federal law, but "in cases of form contracts, forum selection clauses are subject to judicial scrutiny for fundamental fairness." *Laasko v. Xerox Corp.*, 566 F. Supp. 2d 1018, 1021 (C.D. CA 2008)(citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991)). In Carnival Cruise Lines, the Supreme Court considered three factors in deciding whether the FSC at issue violated "fundamental fairness": (a) whether the moving party is engaged in forum-shopping or otherwise trying to discourage potential plaintiffs from suing; (b) whether or not assent to the clause was the product of "fraud or overreaching"; and (c) whether the plaintiffs had notice of the forum selection clause. 499 U.S. at 595; *see also Bernikow v. Xerox Corp. Long-Term Disability Income Plan*, No. CV 06-2612, 2006 WL 2536590, at *2 (C.D. Cal. Aug. 26, 2006) (stating first *Carnival Cruise Lines* factor as "the absence of a bad-faith motive"). The same principles and analysis apply to both foreign arbitration clauses and foreign forum selection clauses. *Sky Reefer*, 515 U.S. at 534; *Fireman's Fund*, 131 F.3d at 1336.

Here, four factors establish that the FSC is unreasonable and lacks fundamental fairness. First, Defendants are engaged in forum shopping and attempting to discourage

potential plaintiffs from suing. The Defendants now force jurisdictions of Seychelles in their agreements. Defendants' intentionally pick jurisdictions in island countries where they do not actually operate, located geographically far from their counterparties and their own operations and offices. In every case reviewed of determining a valid FSC, there is always a meaningful connection to the jurisdiction. There needs to be something more than the mere registration of a company on paper. Defendants' real operation is in Windsor, Canada. All Declarations by Defense witnesses to date have been executed in Canada. The money for all corporations including the Barbados corporations flows back to Canada and the Barbados corporations are headquartered in Canada. Defendants have no offices in Barbados. Conducting litigation in Barbados would mean throughout the entirety of the case, taking discovery would be done abroad through the Hague and Letters of Request through the Central Authorities of Barbados and Canada. There would be no local evidence to the jurisdiction. Any evidentiary power the local Barbados court has, including subpoena power, would have no value. This is by design and reinforces the forum shopping by Defendants.

Second, the Barbados forum effectively denies AMA its day in court. In addition to the litigation issues listed above, and quite importantly, AMA would be unable to compel trial testimony from any third party witnesses in Barbados, including witnesses from Defendants' U.S. based vendors involved in the display of AMA's copyrighted content. Absent the ability to present such witnesses, AMA will be unable to present its case. It would be certain impossibility to litigate this case in Barbados, and this is largely by Defendants' design.[3] The simple fact is Defendants are not truly in Barbados.

---

[3] In the new CPA, Defendants call for a jurisdiction in Seychelles, also where they have no operations. The new Traffic Force agreement switched jurisdiction from Canada to Seychelles. There are few, if any, locations on the world farther from Defendant's headquarters in Windsor, Canada than Seychelles.

1 Third, any assent attributable to AMA (and SSC) would be over-reaching at best. The Choice of Law provision is obscured in the on-line form contract. GIM never bothered to ensure the end user who is clicking "I Agree" actually contains the binding authority to enter into the agreement. The Defendants then go on to deride AMA that AMA expressly consented to the foreign jurisdiction clause, and that it is the "black letter of the law."

Last, AMA did not have any notice or awareness of the FSC. The contract was never formally assigned by SSC to AMA, and neither SSC nor AMA were provided an executed copy of the CPA. The CPA was executed by a non-agent independent contractor. Defendants did *not* provide AMA a copy of the CPA upon AMA's use of SSC credentials and account. Similarly, the Defendants did not even discover the details of the CPA until a lawsuit was imminent. *See Brad Decl.* They merely state the contract was linked after login. The users logging in to upload videos are responsible for data entry and are responsible for work that is menial in nature.

The FSC clause is unreasonable and, therefore, should not be used as a basis for a stay of the current proceedings in this District.

### B. The "Parallel Proceedings" Are Not Substantially Similar.

The threshold question whether a stay is potentially appropriate is "whether the state [or foreign] and federal suits are substantially similar." *Le v. County of Contra Costa*, 1999 U.S. Dist. LEXIS 19611, *3 (N.D. Cal. 1999) (citing *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)). This inquiry primarily boils down to whether there is a "substantial doubt that the parallel proceedings will fully resolve the dispute." *Intel Corp. v. Advanced Micro Devices, Inc*., 12 F.3d 908, 913 (9th Cir. 1993). If the dispute will not be fully resolved if the parallel court decides a certain way, a stay is not appropriate. *Id*.

A district court should apply *Colorado River **only*** if it has "full confidence" that the parallel proceedings will end the litigation. *Gulfstream Aerospace Corp. v. Mayacamas Corp*., 485 U.S. 271, 277, 108 S.Ct. 1113, 99 L.Ed.2d 296 (1988); *Intel Corp., supra,* 12 F.3d at 913 (finding a stay inappropriate because "if the state court overturns the arbitration award, then the case will return to federal court for the adjudication of the underlying copyright claims"); *see also, Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, 2012 U.S. Dist. LEXIS 157194, *8 -9 (N.D. Cal. Nov. 1, 2012) (finding that federal copyright claims were not sufficiently similar to unfair competition and false advertising claims in a parallel state action to warrant a stay, even though the state claims arose "from facts related to the copyright allegations.").

The Ninth Circuit Court of Appeals ruling in *Intel Corp*. is instructive on the issue of whether parallel proceedings actually exist. The analysis on this issue was clear: If the state court proceedings could be resolved in a manner that rendered further litigation in federal court, a stay under the *Colorado River* doctrine was precluded. *Id.* at 913.

Our case is largely the same as *Intel Corp*. The Barbados Claim would resolve the issues here ***only if*** **(i)** the Barbados court rules that Defendants' are parties to the CPA, (ii) that the license rights are somehow now transferrable to parties that were not the designated Licensee [GIM], (iii) that the CPA *and* the forum selection clause is valid with respect to AMA, *and* (iv) in the face of everything previously mentioned that the CPA allowed Defendants to upload and acquire AMA's content from anywhere, including illegal sources, without AMA's knowledge or specific authority and then use those videos for its sole benefit while trying to hide same from AMA. If the Barbados Court were to deny Defendants' position, that the CPA does not grant them these rights, then AMA's copyright infringement claims would revert back to this U.S. District Court.

Defendants point to the FSC and incorrectly state AMA has agreed to exclusive jurisdiction over its US copyright claims even though the named Defendants cannot be

- 10 -

granted a license under the CPA. Defendants cite *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988), for the proposition that AMA's copyright claims *must* be decided in Barbados, even should Defendants' CPA argument fail. *Manetti-Farrow,* found "The [tort] claims cannot be adjudicated without analyzing whether the parties were in compliance with the contract. Therefore, because the tort causes of action alleged by Manetti–Farrow relate to 'the central conflict over the interpretation' of the contract, they are within the scope of the forum selection clause." *Id.* at 513.

Defendants' reliance upon *Manetti-Farrow* illustrates a misunderstanding of the threshold question to the *Colorado River* doctrine, which is that if there is scenario upon which AMA's claims could revert back before the United States courts, the proceedings are *not* substantially similar. For *Manetti-Farrow* to control here, the Court would have to essentially rule that the Barbados court MUST rule on AMA's copyright claims and MUST accept jurisdiction over AMA. The use of US case law to establish what a Barbados court will rule is wrong.

Not only can this court not impose such a finding on a Barbados court, there are clear scenarios upon which AMA's copyright claims revert to the United States after Barbados resolves Defendants' Declaratory Action on the CPA. Valid theories of law exist for AMA to attack the validity of the CPA and/or the forum selection clause.

The Barbados Court could find that Defendants in the instant matter are not parties to the CPA and, thus, cannot maintain a cause of action in Barbados pursuant to the CPA.

In Barbados, absent overt express agreement to a specific definition, the Barbados Court will apply the ordinary meaning to the term "nontransferable." Nontransferable means that the license cannot be transferred to any other entity or individual without express consent of the Licensor [AMA]. The Barbados Court could (and will likely) determine that because the *nontransferable* license was for GIM's use only, and that GIM does not operate and/or own the sites related to this litigation, therefore any party that is

- 11 -

not named 'GIM' has no license rights under the CPA. The CPA's primary purpose is a grant of a non-transferrable license to GIM.

Similarly, the Barbados Court may find that AMA's copyright claims are so far outside the scope of the CPA that the CPA is not related to them whatsoever. A plain reading of the CPA quickly reveals that AMA's copyright allegations are outside the scope of the CPA. Paragraph 1.1 of the CPA specifically limits the nontransferable license to the content provided by AMA to GIM. Paragraph 1.3 reserves all other rights to content not expressly provided by AMA. Paragraphs 4.1 and 4.6 dictate the manner in which content is to be provided and states that AMA is *solely* responsible for providing the content. Paragraph 4.4 conveys entire control to AMA. Further, it is clear that Defendants did not use AMA copyrighted videos as part of the CPA, and the videos were not provided. Why else disguise the videos as uploaded by third parties? The infringement scheme was revealed only after exhaustive research that clearly showed Defendants created fake user data, with fake birthdays, usernames, account signup dates, and more. The only link between the US copyright claim and the CPA is a fabricated "license defense." There is simply *no way* that any reasonable person would be aware they were granting such a license through a plain reading of the CPA. As such, the Barbados Court could find that the CPA does not apply and, therefore, the Barbados Court does not have ability to rule over AMA's copyright claims.

The Barbados Court could find that the CPA and its forum selection clause are unfair contractual terms as the CPA permits Defendants the unilateral and sole discretionary right to amend or waive any provision of the CPA, including the forum selection clause. The CPA permits GIM Corp to revise or amend the CPA, including the choice of law provision without any consent, *prior* notice, ability to opt out, or limitation. Specifically, Section 10.6 states (emphasis added): "This Agreement may **only** be amended, modified, or waived by Licensee in its **sole and absolute discretion**." In

Barbados, unfair contract terms will be decided in favor of the consumer. In this case, AMA is the consumer as GIM offered the contract and drafted the contract. Thus, the FSC could be deemed unenforceable.

In each of these scenarios, the resolution in the Barbados Court would mean that the CPA is wholly inapplicable to AMA and/or AMA's copyright infringement claims. At that point, with no FSC dictating Barbados, there is simply no way that Barbados would have jurisdiction over AMA or AMA's copyright infringement claims.[4] Therefore, Barbados courts could not hear AMA's copyright infringement claims and they would necessarily revert back to the United States.

It is clear that Defendants are fraudulently manipulating the CPA in an attempt to avoid answering for their actions in a United States District Court. Outside of the fact that GIM has admitted its own breach of contract to the Barbados court in their Statement of Claim, there are simply no "license rights" of the CPA that can be passed on to Defendants by GIM.

As determined in *Intel Corp.,* considering different contingencies in the Barbados Claim, there is substantial doubt sufficient to **preclude** a *Colorado River* stay.

Defendants cite to two trial court rulings in support for their argument to stay these proceedings, *Seven Arts Pictures PLC v. Fireworks Entm't, Inc*., Case No. 05-cv-2905 (C.D. Cal. Aug. 16, 2005) and *CRC Info. Sys., Inc. v. Quebecor World (USA), Inc*., Case No. 03-cv-0591 (D. Ariz July 21, 2003). However, in both of these cases, the foreign court clearly had jurisdiction over the parties and the entirety of the claims.

*Seven Arts* involved a Master Services Agreement ("MSA") negotiated in Canada with Canadian defendants with a Canadian forum selection clause ("FCS"). Plaintiff's

---

[4] Defendants' assertion that AMA has, through the CPA, conveyed exclusive jurisdiction to Barbados in any dispute is wrong. There is a scope to the forum selection clause and the CPA.

- 13 -

1 first action in California state court, alleging **breach of the MSA**, was dismissed pursuant
2 to the FSC, that was freely negotiated, and *re-filed by the Plaintiff in Canada*. Plaintiff
3 filed a second action in California state court that was stayed pending the Canadian
4 action. *Seven Arts* was the third similar action filed by Plaintiff in U.S. The Canadian
5 courts clearly had jurisdiction over the parties.

Plaintiff's forum shopping was obvious: while the Canadian case was pending, Plaintiff tried to file multiple similar claims. The Court reviewed the substance of the copyright claims and determined specifically that they were a contract dispute, stating:

> First and most critically, the Court finds that the case is properly cast as a contract dispute, not a copyright case. Second, the Canadian action both provides an adequate forum to protect the parties' rights and is likely to dispose of all substantive issues related to the dispute between the parties. Third, the Court also relies upon the fact that the Plaintiffs chose the Canadian forum to resolve their disputes over two years before filing the instant action.

*Seven Arts* at Order Granting Defendant's Motion for Stay, Dated August 16, 2005.

*CRC v. Quebecor* involved a contract proceeding in Canada, and a claim in the U.S. for copyright infringement filed after the Canadian proceeding. A previous claim by CRC under the same facts was previously dismissed in the U.S. due to *forum non conveniens*. The trial court was not asked to determine if a stay could be precluded

Our case is strikingly different from *Seven Arts* and *CRC*. In both cases, the agreement was (i) a traditional, negotiated contract, (ii) clearly executed by individuals who had authority, (iii) the choice of law and forum selection provision was reasonable because the parties carried on operations there, (iv) the claims involved parties that actually were named in contracts and had assignable rights, whereas this case involves a nontransferable license. Further, neither *Seven Arts* or *CRC* involved questions regarding the scope of the underlying contract. The Barbados court simply will not have

- 14 -

jurisdiction over the parties or over the copyright claims upon a determination that the CPA does not govern AMA's allegations.

### C. There are No "Exceptional Circumstances" Here.

If this Court finds the *Colorado River* doctrine applies, it must next decide if "exceptional circumstances" exist to warrant abstention. Abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S. Ct. 1060, 3 L. Ed. 2d 1163 (1959).

#### 1. Jurisdiction Over the *Res* (Inapplicable)

#### 2. Inconvenience of the Federal Forum

This U.S. District Court in Arizona and the United States is more convenient than Barbados for all parties. AMA did not explicitly consent to Barbados, particularly in copyright disputes that involve unnamed parties and nontransferable license rights. The infringed videos were displayed from servers located in Arizona and the United States through US-based companies. AMA is a U.S. company located in a neighboring state. Defendants carry on significant business in the US including the use of hosting providers. Dkt. No 33-2, 3. They conduct little to no business in Barbados. Arizona is significantly closer geographically for both parties. Defendants only argue that Barbados is more convenient for them while relying on the forum selection language to assert it's more convenient for AMA. This factor favors denial.

#### 3. Avoiding Piecemeal Litigation

Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results. *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988).

There is a high likelihood the Barbados action that some of the Claimants in the Barbados action could be dismissed from the Barbados claim because the license is

- 15 -

nontransferable and they have not proven they are proper parties to the CPA. AMA's claims against those Claimants would then revert back to the US. This favors denial.

### 4. Order In Which Jurisdiction was Obtained

This factor must be applied in a "pragmatic, flexible manner, so that priority is not measured exclusively in terms of which complaint was filed first, but rather in terms of how much progress has actually been made in the state and federal actions." *American Int'l Underwriters*, 843 F.2d at 1258. The threshold question is whether the Barbados case has substantially progressed beyond initial proceedings. *See Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990).

Defendants filed their Barbados claim two days before AMA. Defendant Koonar blatantly lied to Mr. Silverman through email to ensure AMA would delay so Defendants could plead "It is simply a fact that the Barbados Action was initiated first, and nothing AMA has alleged can change that." Dkt. No. 44.

The first party, AMA, was served on August 5, 2016 related to the foreign action. Defendants have made it their priority to serve Mr. Silverman personally rather than AMA, with no attempts to serve AMA until early August, when service was achieved through its registered agent. The U.S. case is more progressed. This favors denial.

### 5. Whether State or Federal Law Controls the Decision on The Merits

If Defendants' Barbados claim is rejected, the Barbados court will not have jurisdiction over the parties and cannot rule on AMA's claims. The CPA is the grant of a nontransferable license to GIM. GIM then transferred the rights to other entities, from which Defendant Sagan relies upon. This favors denial.

### 6. Whether Foreign Jurisdiction Can Adequately Protect Parties' Interests

None of the parties conducts business in Barbados. None of the actions alleged in **either** lawsuit occurred in Barbados. Barbados will not rule on AMA's U.S. copyright claims. It's questionable whether Defendants have assets in Barbados. This favors denial.

- 16 -

### 7. Vexatious and Reactive Nature of the Federal Claim

It is clear that AMA did not bring this action in Arizona for a vexatious purpose. Defendant Koonar lied to Mr. Silverman so he could file first. This factor favors a denial.

### 8. Forum Shopping

This factor favors a denial. Defendants have employed non-sensible jurisdictions in contracts and acted in bad faith in an attempt to force AMA's claims into Barbados.

## IV. CONCLUSION

For the reasons stated herein, AMA respectfully requests that the Court deny Defendant Sagan's Motion to Stay these proceedings.

DATED this 14th day of September, 2016.

**MANOLIO & FIRESTONE, PLC**

By: /s/ Veronica L. Manolio
Veronica L. Manolio
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of September, 2016, I electronically transmitted the foregoing document to the Clerk's office using the CM/ECF system for filing. Copies will be transmitted via CM/ECF to the following recipients:

Erica J. Van Loon
Glaser Weil Fink Howard Avchen & Shapiro LLP
10250 Constellation Blvd.
Los Angeles, CA 90067
evanloon@glaserweil.com
*Attorneys for Defendants David Koonar, Sagan Limited, GLP 5, Inc. and NetMedia Services Inc.*

By: /s/ Gina Murphy