ERICA J. VAN LOON (admitted *Pro Hac Vice*)
evanloon@glaserweil.com
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

*Attorney for Defendants David Koonar,
Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| AMA MULTIMEDIA LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SAGAN LIMITED, a Republic of Seychelles company, individually and d/b/a PORN.COM; CYBERWEB LTD., formerly MXN LTD., a Barbados Company, individually and d/b/a PORN.COM; NETMEDIA SERVICES INC., a Canadian Company, individually and d/b/a PORN.COM; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; DAVID KOONAR, an individual; and John Does 1-20,<br><br>Defendants. | CASE NO.: CV16-1269 PHX DGC<br><br>Hon. David G. Campbell<br><br>**REPLY IN SUPPORT OF DEFENDANT SAGAN LIMITED'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

II.  ARGUMENT ........................................................................................................ 1

    A.   Sagan Does Not Have Minimum Contacts With The United States ............ 1

    B.   The Exercise Of Jurisdiction Over Sagan Would Be Unreasonable ............ 4

III. CONCLUSION .................................................................................................... 6

Case 2:16-cv-01269-DGC   Document 60   Filed 10/03/16   Page 3 of 9

# TABLE OF AUTHORITIES

Page

## CASES

*Calder v. Jones*,
   465 U.S. 783 (1984) ............................................................................................. 2, 3, 4

*Cybernet Entm't, LLC v. IG Media, Inc., et al.*,
   No. CV 12-01101-PHX-SRB ....................................................................................... 4

*Datatech Ent. LLC v. FF Magnat Ltd.*,
   2012 WL 4068624 (N.D. Cal. Sept. 14, 2012) ............................................................ 4

*Mavrix Photo, Inc. v. Brand Tech., Inc.*,
   647 F.3d 1218 (9th Cir. 2011) ................................................................................ 2, 3, 4

*Neuromechanical, LLC v. Kiro Kids Pty. Ltd.*,
   2011 WL 333337 (D. Ariz. Jan. 31, 2011) .................................................................. 2

*Rio Properties, Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ..................................................................................... 5

*Walden v. Fiore*,
   134 S. Ct. 1115 (2015) ............................................................................................ 3, 4

## FEDERAL STATUTES

Fed. R. Civ. P. 4(k)(2) ........................................................................................................ 1, 2

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

AMA limits its jurisdictional claims to Fed. R. Civ. P. 4(k)(2). Fed. R. Civ. P. 4(k)(2) only applies in the rare case in which the defendant does not satisfy the minimum contacts of any State but somehow does satisfy minimum contacts with the United States as a whole. The Ninth Circuit has emphasized that such jurisdiction is a rare occurrence. AMA's attempt to thread the needle fails.

AMA seeks to muddy the waters, improperly lumping together not only the activities of all Defendants but also the activities of third parties such as Reflected Networks. AMA fails to show "individual targeting" of the United States by Porn.com, as required to establish jurisdiction over Sagan. While AMA cites the number of U.S.-based Porn.com visitors as a basis for jurisdiction, the number of visitors alone is insufficient to establish jurisdiction. Moreover, AMA fails to explain how, under AMA's logic, the number of visitors would not also constitute minimum contacts under, for example, the long arm statute of California, and thus defeat Fed. R. Civ. P. 4(k)(2) jurisdiction. In addition, AMA does not even attempt to reconcile its reliance on alleged geo-location of ads by third-party advertisers with the U.S. Supreme Court's prohibition in *Walden* on reliance on third party conduct as a basis for jurisdiction. AMA's reliance on the conduct of Reflected, Porn.com's web hosting vendor, in subcontracting with Limelight, suffers from the same defect. And while AMA asserts that Porn.com uses a U.S. DMCA agent, at most this shows mere awareness that Porn.com is available in the United States, not "individual targeting" of the United States.

For these reasons, AMA fails to show that Sagan is subject to personal jurisdiction in this Court.

## II. ARGUMENT

### A. Sagan Does Not Have Minimum Contacts With The United States

The alleged conduct of Porn.com is insufficient to support jurisdiction over Sagan.

Under Fed. R. Civ. P. 4(k)(2), jurisdiction is proper *only* when the defendant has sufficient minimum contacts with the United States to support jurisdiction, but is not subject

to jurisdiction in any individual State. This fact patterns rarely exists. *Neuromechanical, LLC v. Kiro Kids Pty. Ltd.*, 2011 WL 333337 at *3 (D. Ariz. Jan. 31, 2011) ("the Ninth Circuit has emphasized the fact that since Rule 4(k)(2) was enacted, that court has never had a case in which the facts have supported jurisdiction under the rule.").[1] And it does not exist here.

AMA has not shown, as it must under the second prong of the *Calder* test, that Porn.com is "expressly aimed" at the United States. *Calder v. Jones,* 465 U.S. 783 (1984). AMA admits that the vast majority (77 percent) of Porn.com users are outside the United States, and that Porn.com is hosted on servers in Amsterdam. Oppo. at 3. AMA nonetheless argues that the large number of U.S.-based Porn.com visitors shows targeting of the United States. However, a large number of forum website visitors is not sufficient by itself to confer jurisdiction. If it were, then by AMA's logic jurisdiction would exist over Sagan in California, thus defeating its Fed. R. Civ. P. 4(k)(2) argument. This logical flaw in AMA's argument has been pointed out in earlier briefing (ECF No. 44 at 9-10), but AMA does not even attempt to address it in in its Opposition. The reason is obvious. AMA cannot square the circle. Moreover, if the "primary" location of visitors were the test, this would weigh against jurisdiction in the United States, which represents a minority of visitors.

In addition, *Mavrix*, upon which AMA relies so heavily, is factually distinguishable. First, *Mavrix* did not rely upon Fed. R. Civ. P. 4(k)(2). *Mavrix Photo, Inc. v. Brand Tech., Inc.,* 647 F.3d 1218 (9th Cir. 2011). Second, in *Mavrix*, the Ninth Circuit held that California had jurisdiction over an Ohio defendant website owner who posted copyrighted photos of celebrities on its website, celebrity-gossip.net. The Ninth Circuit cited the number of California website visitors as a factor favoring jurisdiction, along with numerous other

---

[1] In a ham-fisted attempt to bolster its position, AMA claims that Defendants are mistaken when they assert that "this Circuit has never had facts supporting 4(k)(2) jurisdiction." Oppo. at 4-5, fn. 4. Of course, Defendants have never asserted any such thing. Defendants have pointed out that ***the Ninth Circuit*** has never upheld jurisdiction under this statute, and this is, in fact, correct. AMA's citation to two district court cases finding jurisdiction under 4(k)(2) during the twenty years this statute has been in existence does not change this fact.

factors not present here, including (1) the fact that the website's server was located in California, (2) a California company maintained the website, and (3) the allegedly infringing material specifically attracted a significant number of California residents to the website. *Id.* at 1231-2 ("a significant number of Californians would have bought publications such as People and Us Weekly in order to see the photos").

Most importantly, unlike here the subject matter of the website at issue in *Mavrix* was clearly **_forum-focused_**. *Id.* at 1230 ("[I]t is clear from the record that Brand operated a very popular website with a **_specific focus_** on the California-centered celebrity and entertainment industries.") (emphasis added). This is consistent with *Calder,* in which jurisdiction was based on the forum-focused nature of the defendants' activity. *Walden v. Fiore*, 134 S. Ct. 1115, 1124 (2015) (discussing *Calder*: "the 'effects' caused by the defendants' article—i.e., the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to California, not just to a plaintiff who lived there. That connection, combined with the **_various facts that gave the article a California focus_**, sufficed to authorize the California court's exercise of jurisdiction.") (emphasis added). *Mavrix* does not stand for the proposition that the number of forum website visitors is sufficient, by itself, to support jurisdiction.

As for geo-targeting in advertisements, this is not something undertaken by Sagan. It is undertaken by third-party advertisers, and Sagan does not control their activity. AMA fails to reconcile its reliance on this alleged third party conduct with the U.S. Supreme Court's *Walden* decision prohibiting the use of third party conduct to establish jurisdiction.

In *Walden*, the U.S. Supreme Court reviewed a Ninth Circuit ruling that predicated jurisdiction on the defendant's knowledge that his actions (which took place outside the forum) would affect persons (the plaintiff and third parties) with a significant connection to the forum. *Walden*, 134 S. Ct. at 1120 ("According to the Court of Appeals, petitioner 'expressly aimed' his submission of the allegedly false affidavit at Nevada by submitting the affidavit with knowledge that it would affect persons with a 'significant connection' to Nevada."). *Walden* reversed, holding that reliance on contacts created by third parties is

3

REPLY ISO DEFENDANT SAGAN LIMITED'S MOTION TO DISMISS

impermissible. *Id.* at 1125 ("it is the defendant, not the plaintiff or third parties, who must create contacts with the forum state."). AMA invites the Court to make the same mistake here, by arguing that conduct by third party advertisers shows targeting of the United States by Sagan. At most, this shows knowledge by Sagan that its conduct outside the forum might impact persons in the forum, but *Walden* unequivocally rejects this as a basis for jurisdiction.[2]

AMA's remaining arguments fare no better. AMA argues that some Porn.com content is delivered via a Content Delivery Network ("CDN") operated by Limelight. And AMA argues (without foundation) that Limelight may have relatively more CDN servers in the United States. However, AMA admits that Limelight's CDNs are located globally. Thus, Limelight's CDN placement does not show targeting of any specific location.

More importantly, Sagan has no relationship with Limelight. Limelight is an independent third party service provider retained by Reflected Networks. Porn.com is currently not hosted by Reflected Networks but by Viking Host. And to the extent Reflected, Porn.com's former web hosting vendor, subcontracted with Limelight, this is another U.S. contact created by a third party, and is thus irrelevant under *Walden*.

Finally, AMA's use of a U.S. DMCA agent is not an admission of jurisdiction. At most this shows mere awareness that Porn.com is available in the United States (again, not a sufficient basis for jurisdiction under *Walden*), not "individual targeting" of the United States.

**B.     The Exercise Of Jurisdiction Over Sagan Would Be Unreasonable**

To determine if jurisdiction is reasonable, courts consider seven factors: (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum

---

[2] To state the obvious, to the extent *Mavrix* conflicts with *Walden*, *Walden* which is a later-decided U.S. Supreme Court case and which reversed the Ninth Circuit's overly aggressive application of the *Calder* test, controls. The two district court decisions cited by AMA, *Datatech* and *Cybernet*, also pre-date *Walden*.

state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002).

AMA's arguments regarding these factors are flawed. First, AMA claims that Sagan has extensively interjected itself into the forum. But as described above, Sagan has no offices, employees, property, or conduct within the United States. Second, AMA claims that the burden on Sagan to defend in the forum is minimal. However, Sagan is based thousands of miles from this forum, and the witnesses required to defend this action are located in Barbados. ECF No. 42-3 (Richardson Declaration) at ¶ 9. Third, the home forum of Sagan has a more substantial interest in regulating the behavior of Sagan than Arizona. Regarding the fourth and fifth factors, Arizona has very little interest in adjudicating this dispute. None of the parties are based here, Sagan is not alleged to have conducted its allegedly infringing actions here, and the harm from those alleged actions is not felt here. AMA presumably chose this forum over its home forum of Nevada because it viewed this forum as more amenable to its claims or its business activities. However, this blatant forum shopping should not be rewarded. Sixth, AMA argues that Arizona is the most convenient forum because the servers that host the allegedly infringing content are based in Arizona. However, as discussed above, Limelight has servers all over the world. And AMA does not explain why anyone would need to access Limelight's servers in discovery. Obviously, the "content" at issue in this case is accessible over the internet, anywhere in the world.

Finally, Barbados is an eminently appropriate alternative forum. It is more convenient to Sagan because Barbados is the home of two affiliates, one of whom is a co-Defendant. More importantly, AMA has admitted on numerous occasions that it entered into the CPA, which provides for exclusive jurisdiction in Barbados. *See, e.g.,* ECF No. 32-2 ¶ 29. As discussed in Sagan's concurrently-filed Reply in Support of Motion to Stay, AMA's copyright claims are subject to the CPA's forum selection

5
REPLY ISO DEFENDANT SAGAN LIMITED'S MOTION TO DISMISS

1250253

clause, and the Barbados courts have jurisdiction to adjudicate those claims. Thus, Barbados is the **only** appropriate forum for the adjudication of AMA's copyright claims. AMA should not be allowed to skirt its contractual obligations.

### III.   CONCLUSION

For the foregoing reasons, Sagan respectfully requests that the Court dismiss the First Amended Complaint as to Sagan based on lack of personal jurisdiction.

DATED: October 3, 2016

Respectfully submitted,

GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP

By: /s/ Erica J. Van Loon
ERICA J. VAN LOON

*Attorney for Defendants David Koonar, Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.*