ERICA J. VAN LOON (admitted *Pro Hac Vice*)
evanloon@glaserweil.com
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

*Attorney for Defendants David Koonar,
Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| AMA MULTIMEDIA LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SAGAN LIMITED, a Republic of Seychelles company, individually and d/b/a PORN.COM; CYBERWEB LTD., formerly MXN LTD., a Barbados Company, individually and d/b/a PORN.COM; NETMEDIA SERVICES INC., a Canadian Company, individually and d/b/a PORN.COM; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; DAVID KOONAR, an individual; and John Does 1-20,<br><br>Defendants. | CASE NO.: CV16-1269 PHX DGC<br><br>Hon. David G. Campbell<br><br>**REPLY IN SUPPORT OF DEFENDANT SAGAN LIMITED'S MOTION TO STAY PROCEEDINGS**<br><br>**ORAL ARGUMENT REQUESTED** |

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT .......................................... 1
II. ARGUMENT ................................................................................................................ 3
    A. AMA Is Obviously A Party To The CPA .......................................................... 3
        1. AMA's "Rogue Independent Contractor" Argument Is Specious ..... 3
        2. AMA Is Bound By The CPA As The Successor To SSC .................. 4
        3. AMA Accepted The Benefits Of The CPA And Cannot Disavow It ........................................................................................................... 4
    B. The Forum Selection Clause Is Valid ............................................................... 5
        1. Forum Selection Clauses In Online Form Agreements Are Binding ................................................................................................. 5
        2. The Forum Selection Clause Will Not Deny AMA Its Day In Court .................................................................................................... 6
        3. AMA's Forum Shopping Argument Is Misplaced ............................. 8
    C. This Dispute Is Within The Scope Of The Forum Selection Clause ............ 9
    D. The Court Must Dismiss This Action, Or At Minimum, Stay It ................. 11
III. CONCLUSION ........................................................................................................... 11

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Adema Tech. Inc. v. Wacker Chemie AG*,
  2014 WL 3615799 (N.D. Cal. July 22, 2014) ................................................................. 6

*Argueta v. Banco Mexicano*,
  87 F.3d 320 (9th Cir. 1998) ......................................................................................... 7, 8

*Bloom v. Claimetrics Mgmt LLC*,
  2010 WL 3489387 (N.D. Cal. Sept. 2, 2010) .................................................................. 8

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991) ........................................................................................................ 5

*Commerce Consultants Intern., Inc. v. Vetrerie Riunite, S.p.A.*,
  867 F.2d 697 (D.C. Cir. 1989) ........................................................................................ 7

*Crawford v. Beachbody, LLC*,
  2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ................................................................... 5

*Desert Dental Solutions, Inc. v. Indep. Res. Network Corp.*,
  2006 WL 616632 (D. Ariz. Mar. 10, 2006) ..................................................................... 8

*Effects Assoc., Inc. v. Cohen*,
  908 F.2d 555 (9th Cir. 1990) ......................................................................................... 10

*Fireman's Fund Ins. Co. v. M.V. DSR Atl.*,
  131 F.3d 1336 (9th Cir. 1997) ..................................................................................... 5, 6

*Good v. Nippon Yusen Kaisha*,
  2013 WL 2664193 (E.D. Cal. June 12, 2013) ................................................................. 6

*Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*,
  949 F. Supp. 1427 (N.D. Cal. 1997) ................................................................................ 4

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007) ......................................................................................... 10

*Houston Cas. Co. v. Metheny*,
  2016 WL 615651 (E.D. Cal. Feb. 16, 2016) ................................................................. 11

*Keane Dealer Servs., Inc. v. Harts*,
  968 F. Supp. 944 (S.D.N.Y.1997) ................................................................................. 10

*Lawyers' Fund for Client Prot. of State of N.Y. v. Bank Leumi Trust Co. of N.Y.*,
  94 N.Y.2d 398 (2000) ................................................................................................... 11

*Leyva v. Certified Grocers of California, Ltd.*,
  593 F.2d 857 (9th Cir. 1979) ......................................................................................... 11

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
  858 F.2d 509 (9th Cir. 1991) ............................................................................................. 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ........................................................................................................ 7

*Modius, Inc. v. Psinaptic, Inc.*,
  2006 WL 1156390 (N.D. Cal. May 2, 2006) ................................................................... 7

*Moretti v. Hertz Corp.*,
  2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ................................................................. 6

*Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*,
  60 F. Supp. 3d 1109 (E.D. Cal. 2014) ........................................................................... 10

*NVT Tech., Inc. v. U.S.*,
  370 F.3d 1153 (Fed. Cir. 2004) ..................................................................................... 11

*Paster v. Putney Student Travel, Inc.*,
  1999 WL 1074120 (C.D. Cal. June 9, 1999) ................................................................... 5

*Phillips v. Audio Active Ltd.*,
  494 F.3d 378 (2d Cir. 2007) ............................................................................................ 7

*Sheasly v. Orr Felt Co.*,
  2010 WL 4273230 (D. Or. Oct. 25, 2010) ....................................................................... 9

*Small v. GE Capital*, Inc.,
  2016 WL 4502460 (C.D. Cal. June 9, 2016) ................................................................. 11

*Village Builders 96, L.P. v. U.S. Laboratories*, Inc.,
  121 Nev. 261 (2005) ........................................................................................................ 4

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Under *Atlantic Marine,* the forum selection clause in the CPA requires dismissal of this action. In its Opposition, AMA seeks to avoid the forum selection clause, but fails.

After conceding in at least *six* previous submissions to this Court that it *is* a party to the CPA, AMA now desperately argues that it is not a party. AMA claims that Lewis Thornton, a rogue "independent contractor," signed the CPA without "binding" authority. This contradicts AMA's earlier submissions, in which AMA expressly stated that Mr. Thornton accepted the CPA on behalf of AMA. In addition, AMA's own evidence shows that Mr. Thornton acted at the direction of AMA's President (Mr. Silverman) when he signed AMA up for the PaidPerView.com service. He thus had actual and apparent authority to bind AMA. AMA also argues that if Mr. Thornton bound anyone he bound SSC Group ("SSC"), an entity that AMA claims is distinct from AMA. However, Nevada corporate records show that AMA is the successor of SSC Group. Thus, under Nevada corporate law and under the terms of the CPA (which expressly binds successors), AMA is a party to the CPA. In addition, AMA is bound by the CPA because it accepted benefits under the CPA.

Equally desperate is AMA's contention that the forum selection clause is invalid. Courts rarely invalidate forum selection clauses, especially between sophisticated commercial entities, and none of the cases AMA cites invalidate a forum selection clause. In fact, the cases AMA cites rebut its invalidity arguments.

First, AMA is wrong when it argues that, because the CPA is an online form contract, AMA lacked sufficient notice of the forum selection clause. *Carnival Cruise* (a U.S. Supreme Court decision cited by AMA) confirms that forum selection clauses in form contracts are enforceable. Nor can AMA avoid the forum selection clause by arguing that it did not read it. AMA was advised that clicking the "submit" button formed a binding agreement and was cautioned not to proceed if it disagreed with the CPA. AMA clicked its assent to the CPA, and was presented with a link to the CPA every time it logged onto the PaidPerView.com website (as it did so hundreds of times). Courts in the Ninth Circuit routinely enforce forum selection clauses in such circumstances.

Second, AMA's contention that the enforcement of the forum selection clause would effectively deny AMA its day in court is absurd. AMA already has local counsel in Barbados who has filed documents with the court, appeared at hearings, and requested relief. AMA provides no evidentiary support for the inconvenience it alleges, and discovery or other procedural limitations are, in any event, not a basis to invalidate a forum selection clause. As evidenced by the *Argueta* case (requiring plaintiff to litigate in Mexico despite the possibility it would lead to his arrest), the burden required under Ninth Circuit law to invalidate a forum selection clause vastly exceeds anything AMA alleges.

Third, AMA misses the mark when it argues that Defendants lack a sufficient connection to Barbados to enforce the forum selection clause. Both GIM (the licensee under the CPA) and Cyberweb (a Defendant in this action) are Barbados corporations with Barbados offices, and AMA cites no cases deeming such contacts with the forum insufficient. In fact, under *M/S Bremen* (cited by AMA), designation of a forum with no connection to any party is reasonable, and will not invalidate a forum selection clause.

AMA's arguments regarding the scope of the forum selection clause are equally flawed. Under Ninth Circuit law Sagan can enforce the forum selection clause because Sagan (as AMA concedes by alleging *alter ego*) is closely related to the contractual relationship at issue in the CPA. And under Ninth Circuit authority AMA's copyright claims are, at minimum, related to the CPA because they cannot be resolved without an adjudication of Sagan's license defense under the CPA. AMA's claims thus fall within the scope of the forum selection clause.

AMA's Opposition does not even attempt to rebut these arguments. Instead, AMA argues that Ninth Circuit precedent does not apply, and that the scope of the forum selection clause must be decided by a Barbados court under Barbados law. AMA is wrong. Under Ninth Circuit law a federal court must apply federal law to interpret a forum selection clause. AMA's arguments concerning hypothetical rulings by the Barbados court are irrelevant. And these arguments are, in any event, at war with the plain language of the CPA.

Based on the foregoing, *Atlantic Marine* requires dismissal of this action under the

doctrine of *forum non conveniens*. Should the Court reach Sagan's alternative stay request, it will find that AMA's *Colorado River* discussion is entirely predicated on its erroneous arguments concerning the validity and scope of the forum selection clause. Thus, AMA's *Colorado River* arguments also fail for the reasons set forth above.

## II. ARGUMENT

### A. AMA Is Obviously A Party To The CPA

#### 1. AMA's "Rogue Independent Contractor" Argument Is Specious

Incredibly, following **_six_** prior admissions that it **_is_** a party to the CPA,[1] AMA now argues that it was never a party to the CPA.

AMA now asserts that Mr. Thornton, an independent contractor of SSC, signed the CPA acted without "binding" authority. This contradicts AMA's earlier admissions that Mr. Thornton accepted the CPA on behalf of AMA. *See, e.g.,* ECF No. 33-2 (Silverman Declaration) at ¶ 17 ("In September 2012, AMA entered into a content partnership agreement with GIM for revenue sharing on content posted on Porn.com. . . . An AMA non-agent independent contractor, in Australia, signed up for the content revenue sharing program by performing an automated sign up process at paidperview.com."). AMA's sudden reversal of position cannot be credited.

Contrary to AMA's sudden change of tune, Mr. Silverman's own emails confirm that this supposed non-agent was in fact acting **_at Mr. Silverman's direction and with his knowledge_** when he signed up for the PaidPerView.com service and accepted the CPA. ECF No. 32-4, Ex. E (7/29/2012 email from Mr. Silverman directing Mr. Thornton to submit videos to "tube submission program for porn.com," and subsequent emails copying Mr. Silverman on correspondence with PaidPerView.com discussing Mr. Silverman's

---

[1] *See* ECF No. 32-2 (Silverman Declaration) at ¶ 22; ECF No. 33-2 (Silverman Declaration) at ¶ 17; ECF No. 34-1 (Silverman Declaration) at ¶ 22; ECF No. 38-1 (Silverman Declaration) at ¶ 29; ECF No. 32 (Opposition to GLP5 and Netmedia Motion to Dismiss or Stay) at 4; ECF No. 33 (AMA Opposition to GLP5 and Netmedia Motion To Stay) at 6, 11.

instructions and confirming that approval process was complete). *See also* Declaration of Philip Bradbury In Support of Sagan Limited's Motion To Stay Proceedings ("Bradbury Declaration," filed concurrently herewith), at ¶¶ 2-9. Thus, Mr. Thornton acted with both actual and apparent authority to bind AMA.

### 2. AMA Is Bound By The CPA As The Successor To SSC

AMA argues that a predecessor (SSC Group) agreed to the CPA, not AMA. Again, this contradicts AMA's prior admissions, and should not be credited.

In addition, Nevada Secretary of State records show that SSC and AMA merged in 2013, with the owners of SSC receiving equivalent ownership interests in AMA, and with AMA as the surviving entity assuming "all rights, privileges, powers, franchises, properties and assets of SSC Group." Van Loon Declaration in Support of Sagan Limited's Motion to Stay, Ex. A (merger agreement). Mr. Silverman controlled both SSC and AMA. *Id.* (he signed the merger agreement on behalf of both parties). And AMA admits it took over the account provided for under the CPA, changed the account name to AMA, accepted payments provided under the CPA, and took over SSC's properties. ECF No. 52-1 (Silverman Declaration) at ¶¶ 20, 26. Thus AMA is clearly the successor to SSC, and under both Nevada law and the terms of CPA, is bound by the forum selection clause. *Village Builders 96, L.P. v. U.S. Laboratories, Inc.*, 121 Nev. 261, 274 (2005) (successor entity is liable for obligations of predecessor if "(1) only one corporation remains after the transfer of assets; and (2) there is a continuation of corporate control and ownership between the two corporations."); ECF No. 27-3, Ex. 5 (CPA) at ¶ 10.3 ("This Agreement shall be binding upon, inure to the benefit of, and be enforceable by and against the successors and permitted assigns of the parties to this Agreement.").[2]

### 3. AMA Accepted The Benefits Of The CPA And Cannot Disavow It

AMA cannot disavow the CPA after it has taken over the PaidPerView.com account,

---

[2] *See also Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427 (N.D. Cal. 1997) (finding a corporate successor bound by original agreement, including the forum selection clause.).

1  uploaded content, and accepted payments under the CPA. ECF No. 52-1 (Silverman
2  Declaration) at ¶ 20; *Paster v. Putney Student Travel, Inc.*, 1999 WL 1074120, at *2 (C.D.
3  Cal. June 9, 1999) ("Plaintiff, however, cannot accept the benefits of a contract and then
4  seek to void it in an attempt to escape the consequences of a clause that does not suit her. . . .
5  Accordingly, Plaintiff cannot disaffirm the Putney contract to avoid the application of the
6  forum selection clause.").[3] *See also eBay Inc. v. Digital Point Solutions, Inc.*, 608 F. Supp.
7  2d 1156, 1162 (N.D. Cal. 2009) ("In the Ninth Circuit, a third-party beneficiary of an
8  agreement is bound by the terms of the agreement, including a valid forum selection
9  clause.").

### B. The Forum Selection Clause Is Valid

11 AMA concedes it has the "heavy burden of showing that trial in the chosen forum
12 would be so difficult and inconvenient that the party would effectively be denied a
13 meaningful day in court." Oppo. at 7. AMA cannot meet its burden.

### 1. Forum Selection Clauses In Online Form Agreements Are Binding

15 AMA cannot evade the forum selection clause by claiming it is a contract of
16 adhesion. *Carnival Cruise Lines* (cited by AMA) confirms that the ability to negotiate terms
17 is not required, and forum selection clauses in form contracts are enforceable. *Carnival*
18 *Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) (upholding validity of forum selection
19 clause on form contract on back of cruise ship ticket); *see also Fireman's Fund Ins. Co. v.*
20 *M.V. DSR Atl.*, 131 F.3d 1336, 1338 (9th Cir. 1997) (if a forum-selection clause is
21 unambiguous it is irrelevant if the contract is one of adhesion).

22 Nor can AMA evade the CPA by claiming it did not read it. AMA had an opportunity

---

[3] AMA is also wrong when it argues, without citation to any authority, that the CPA is unenforceable because it can be amended unilaterally by GIM. The CPA requires GIM to notify AMA of any amendments. Bradbury Declaration, Ex. D at ¶ 10.6 ("In the event the Licensee does amend, modify, or waive any of the terms contained in this Agreement, Licensee shall notify you by email."). It is thus enforceable. *Crawford v. Beachbody, LLC*, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) (contract permitting unilateral amendment is enforceable because it requires the modifying party to notify the other party).

to review it, and that is all that is required. Acceptance of the CPA was an express condition to opening the PaidPerView.com account. Bradbury Declaration at ¶ 7. Before Mr. Thornton could proceed he was required to certify that he had reviewed the terms of the CPA, and was advised that he should not submit his application if he did not wish to be bound by the CPA. *Id.* at ¶ 7, Ex. D. And a link to the CPA was provided every time that AMA logged into its account. *Id*. at ¶ 10. AMA does not deny that Mr. Thornton clicked the button or that AMA had access to the CPA. Courts routinely enforce forum selection clauses in online form contracts under these circumstances. *See, e.g., Moretti v. Hertz Corp.*, 2014 WL 1410432, at *3 (N.D. Cal. Apr. 11, 2014) ("[I]n the absence of an affirmative denial from Plaintiff that he did not in fact check the Acceptance Box and clear evidence that Plaintiff could have not otherwise completed his car reservation, Plaintiff had notice and consented to the Terms of Use containing the forum-selection clause."); *Crawford,* 2014 WL 6606563 at *3 ("Upon clicking the Terms and Conditions hyperlink, a separate window would have opened up presenting the full text of the Terms and Conditions. Accordingly, the Court concludes that the parties agreed to Terms and Conditions of Use, including the forum selection clause."); *Good v. Nippon Yusen Kaisha*, 2013 WL 2664193, at *10 (E.D. Cal. June 12, 2013) (plaintiff received adequate notice because "Plaintiff received scanned front pages of the sea waybills informing him that the terms of the waybill were available online. Plaintiff had the means of learning about the forum selection clause.").

### 2.   **<u>The Forum Selection Clause Will Not Deny AMA Its Day In Court</u>**

Barbados is not such an inconvenient forum that it would effectively deny AMA its day in Court. AMA is currently litigating in Barbados, and the Barbados court has accepted jurisdiction over Defendants' claims against AMA. ECF No. 55 (Request For Judicial Notice). This is fatal to AMA's inconvenience argument. *Adema Tech. Inc. v. Wacker Chemie AG*, 2014 WL 3615799 (N.D. Cal. July 22, 2014) (fact that plaintiff was already litigating in designated forum (Germany) rebutted inconvenience argument).

In addition, AMA provides no actual evidence of inconvenience. And even if one assumes, for purposes of argument, that discovery in Barbados will be more limited or less

convenient than in the United States, this is true of most foreign jurisdictions. Yet federal courts (including *Argueta*, *M/S Bremen*, and *Richards* – all cited by AMA) routinely uphold forum selection clauses designating foreign jurisdictions. As recognized in *Commerce Consultants Intern., Inc. v. Vetrerie Riunite, S.p.A.*, 867 F.2d 697 (D.C. Cir. 1989), discovery limitations in the agreed forum will not invalidate a forum selection clause:

> The sole ground upon which Commerce Consultants seeks to avoid its agreement for trial in Verona is that discovery proceedings in the Italian court would be inadequate to enable it to develop its case. When Commerce Consultants agreed to the requirement of paragraph 13 that litigation of contractual disputes would be conducted in the courts of Verona, it also necessarily accepted the procedures that those courts follow. Commerce Consultants cannot now avoid the forum-selection clause on the claim that it has a right to the same judicial process in the imposed forum that it would have in its chosen forum. This interpretation would make a mockery of the policy behind enforcing these clauses.

*Id.* at 700. Courts have enforced forum selection clauses when no witnesses or evidence are located in the selected forum. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 393 (2d Cir. 2007) (forum selection clause upheld even though "none of [plaintiffs] witnesses, documents, or any parties to the action are located in England" because this merely "suggest[s] that litigation in England may be more costly or difficult, but not that it is impossible."). Courts have enforced forum selection clauses when non-party depositions are prohibited in the forum. *Modius, Inc. v. Psinaptic, Inc.*, 2006 WL 1156390 (N.D. Cal. May 2, 2006) (enforcing forum selection clause despite fact that designated forum (Canada) did not provide depositions of non-party witnesses). Courts have even enforced forum selection clauses when discovery is entirely prohibited in the selected forum. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) (compelling arbitration in Japan, despite fact that forum would not provide any right to evidentiary discovery).[4]

In fact, the burden required to invalidate a forum selection clause far exceeds anything AMA alleges. In *Argueta v. Banco Mexicano*, 87 F.3d 320 (9th Cir. 1998) the

---

[4] AMA concedes that "[t]he same principles and analysis apply to both foreign arbitration clauses and foreign forum selection clauses." Oppo. At 7.

plaintiff, a U.S. resident, sought to invalidate a forum selection clause requiring him to bring his RICO claims against Banco Mexicana in Mexico. The defendant had previously lured the plaintiff to Mexico, and arranged to have him arrested, interrogated by bank officials for three days, incarcerated for more than a year, and released only when he agreed to loan modifications requested by the defendant. *Id.* at 321-323. The Ninth Circuit nonetheless held that even if the defendant Mexican bank had in the past abused the Mexican criminal complaint process in order to intimidate the plaintiff, and even if the plaintiff had thus far been unsuccessful in his attempts to obtain Mexican counsel willing to represent him against this powerful Mexican bank, enforcement of the forum selection clause would not deprive him of his day in court. *Id*. at 326-327.  Obviously, if the *Argueta* plaintiff was required to abide by his forum selection clause, so must AMA.

### 3. **AMA's Forum Shopping Argument Is Misplaced**

AMA argues that the forum selection clause is invalid due to "forum shopping." However, as stated in *Desert Dental Solutions, Inc. v. Indep. Res. Network Corp.*, 2006 WL 616632, at *2 (D. Ariz. Mar. 10, 2006), selection of a neutral forum is proper:

> DDS appears to argue that the forum selection clause should not be enforced because it is a contract of adhesion and Georgia has no nexus to this matter outside of its inclusion in the forum selection clause. We disagree. . . . [T]he fact that there is no nexus to Georgia other than its inclusion in the forum selection clause does not make the clause fundamentally unfair.

*Bloom v. Claimetrics Mgmt LLC*, 2010 WL 3489387, at *2 (N.D. Cal. Sept. 2, 2010) confirms this:

> Plaintiff first argues that Nevada should not be the venue because Nevada has no nexus to the controversy. The nexus of the controversy, however, was not a factor weighed by the Supreme Court in M/S Bremen or the Ninth Circuit in Murphy when examining a challenge to a forum-selection clause. . . . Indeed, the Supreme Court in M/S Bremen allowed the forum-selection clause between a German corporation and an American corporation to prevail when the contracted forum, Britain, had no interest in the controversy.

And while AMA argues (without foundation)[5] that Defendants have no connection to

---

[5] While AMA argues that Defendants conduct no business in Barbados, Mr. Silverman has

1  Barbados, AMA is wrong. GIM is incorporated in Barbados and maintain an office there.
2  Declaration of Kristen Richardson In Support of Sagan Limited's Motion To Stay
3  Proceedings, at ¶ 5. And Defendant Cyberweb (an operator of Porn.com, the website at
4  issue) is a Barbados corporation, with its management and principal place of business in
5  Barbados. *Id.* at ¶ 2. It is entirely reasonable to designate the home forum of GIM and
6  Cyberweb as the exclusive jurisdiction for resolution of disputes concerning the CPA, and
7  AMA does not cite a single case invalidating a forum selection clause on analogous facts.

### C. This Dispute Is Within The Scope Of The Forum Selection Clause

Under Ninth Circuit law Sagan has standing to enforce the forum selection clause because Defendants (by AMA's own admission) are closely related to the contractual relationship at issue in the CPA. And under Ninth Circuit law AMA's claims against Sagan are within the scope of the forum selection clause because they cannot be adjudicated without interpreting the CPA.

In its Opposition, AMA does not dispute Defendants' characterization of this Ninth Circuit precedent or the result it mandates. Instead, AMA argues that a Barbados court must decide the scope of the forum selection clause under Barbados law. Oppo. at 10. This is clearly wrong. Ninth Circuit precedent requires that this court apply federal law to interpret the forum selection clause. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1991) ("because enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of forum selection clauses.").[6] Under controlling precedent, AMA's arguments concerning hypothetical rulings by the Barbados court are irrelevant:

> Holland America, through its experts, claims that the Court of Nanterre,

---

no personal knowledge of Defendants' business operations, and Sagan objects to paragraph 25 of his Declaration (ECF No. 52-1) on that basis.

[6] *See also Sheasly v. Orr Felt Co.*, 2010 WL 4273230, at *2 (D. Or. Oct. 25, 2010), *aff'd*, 2010 WL 4961807 (D. Or. Dec. 1, 2010) ("This court therefore must follow Manetti–Farrow and interpret the forum selection clause under federal common law, without regard to the Employment Agreement's Ohio choice-of-law provision.").

France, might decline to hear its suit because of Bureau Veritas's 2000 general conditions. The affidavits simply reveal that a French court would consider which clause is applicable. *<u>Our job at this juncture is not to predict the outcome of any proceeding in either French or British courts</u>*.

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 457 (9th Cir. 2007) (emphasis added).

Moreover, AMA's (irrelevant) speculation as to how a Barbados court would interpret the CPA simply ignores the CPA's plain language. AMA argues that GIM's license is non-transferable and that Sagan lacks standing to assert the forum selection clause. However, the CPA expressly states that it applies to affiliates of GIM, at GIM's discretion:

> Licensee may assign this Agreement without consent to an affiliate, parent, or subsidiary . . . This Agreement shall be binding upon, inure to the benefit of, and be enforceable by and against the successors and permitted assigns of the parties to this Agreement.

ECF No. 27-3, Ex. 5 at 10.3.[7]

AMA argues that its claims are outside the scope of the forum selection clause. However, AMA's claims against Sagan not only "relate" to the CPA (as discussed above), they "arise" under the CPA because they constitute a breach of Section 6.1. *Id.* ("Licensor shall not at any time during the Term of this Agreement do anything . . . contrary to the rights licensed to Licensee under this Agreement."). In fact, the CPA expressly governs Sagan's liability to AMA for ***any*** wrongful conduct (not just breach of the CPA). ECF No. 27-3, Ex. 5 at Section 7.1 (emphasis added) ("[Licensee must compensate Licensor for

---

[7] The CPA states that GIM may distribute AMA's content to any website with ads controlled by Traffic Force. *Id.* at 1.1. There is no requirement that GIM own the websites. Thus, website operators must have an implied license; otherwise the CPA would be worthless. *Effects Assoc., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990) (implied license exists where contract or conduct would make no sense without it). AMA's long acquiescence to the manner in which its content was distributed also demonstrates the existence of an implied license. *Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y.1997) (lack of objection creates implied license). Finally, if Sagan was not a party to the CPA it could still enforce the forum selection clause as a third party beneficiary. *Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, 60 F. Supp. 3d 1109, 1119 (E.D. Cal. 2014).

damage caused by] breach of its obligations under this Agreement or a violation of the terms or conditions of this Agreement ***or any other act or omission of Licensee***.").[8] Thus, the Barbados courts are the exclusive forum for adjudication of AMA's copyright claims.

Finally, AMA's contention that the license does not apply to content obtained from websites must be rejected, because it would render CPA Section 3.9 (addressing the use of content obtained from websites) superfluous. *NVT Tech., Inc.* v. *U.S.*, 370 F.3d 1153, 1166 (Fed. Cir. 2004) (citing "the canon of contract interpretation that disfavors rendering terms superfluous."); *Lawyers' Fund for Client Prot. of State of N.Y. v. Bank Leumi Trust Co. of N.Y.*, 94 N.Y.2d 398, 404 (2000) (interpretation that would render contractual provision superfluous is "unsupportable under standard principles of contract interpretation"). Similarly, the CPA broadly states that AMA "desires to make the Content available to Licensee for use on the Website(s)," and nowhere states that this content must be transmitted by AMA to GIM directly. *Id*. at Item C of Background section.

### D. The Court Must Dismiss This Action, Or At Minimum, Stay It

Under *Atlantic Marine*, the court must dismiss this action under the doctrine of *forum non conveniens*. However, should the Court address Sagan's stay request, AMA's *Colorado River* discussion is predicated on its erroneous arguments concerning the validity and scope of the forum selection clause, and fails for that reason.[9]

### III. CONCLUSION

Sagan respectfully requests that the Court dismiss the First Amended Complaint on grounds of *forum non conveniens*. In the alternative, Sagan requests that the Court stay these proceedings pending resolution of the Barbados Action.

---

[8] While Section 7.2 of the CPA is limited to claims brought by third parties, Section 7.1 contains no such limitation.

[9] A stay of this action would also be appropriate under *Leyva v. Certified Grocers of California, Ltd.,* 593 F.2d 857, 863–64 (9th Cir. 1979); s*ee also Small v. GE Capital*, Inc., 2016 WL 4502460 (C.D. Cal. June 9, 2016) (applying *Leyva* and granting stay); *Houston Cas. Co. v. Metheny*, 2016 WL 615651 (E.D. Cal. Feb. 16, 2016) (same).

1250362

DATED: October 3, 2016           Respectfully submitted,

GLASER WEIL FINK HOWARD
 AVCHEN & SHAPIRO LLP

By:  /s/ Erica J. Van Loon
ERICA J. VAN LOON

*Attorney for Defendants David Koonar, Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.*

