**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMA Multimedia LLC, | No. CV-16-01269-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Sagan Limited, et al., | |
| Defendants. | |

Plaintiff AMA Multimedia, LLC ("AMA"), a producer of pornographic material, asserts copyright infringement claims against several entities and one individual associated with the website Porn.com: Sagan, Limited ("Sagan"), Cyberweb, LTD ("Cyberweb"), Netmedia Services, Inc. ("Netmedia"), GLP, 5, Inc. ("GLP"), and David Koonar. Defendants GLP and Netmedia – a Michigan corporation and Canadian company, respectively – move to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or, in the alternative, to stay these proceedings pending resolution of an action currently before the Supreme Court of Barbados. Doc. 27. The parties' request for oral argument is denied because the issues have been fully briefed and oral argument will not aid in the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998). The Court will deny the stay request and hold the motion to dismiss in abeyance until limited jurisdictional discovery and supplemental briefing are completed.

**I.      Background.**

Porn.com is a video streaming website that generates revenue through its content partnership program and advertising banners. Doc. 16, ¶¶ 56–57. AMA asserts that Defendants Sagan, Cyberweb, Netmedia, and David Koonar are each owners and/or operators of Porn.com and GLP. *Id.*, ¶¶ 46-47. AMA also alleges that GLP is doing business as Traffic Force, an advertising and publishing network that provides end-user traffic to websites for profit. Doc. 16, ¶ 47. Defendants respond that Cyberweb is the owner/operator of Porn.com. Doc. 27-3 at 3, ¶15.

In September 2012, AMA joined Porn.com's Content Partnership Program by entering into a content partner revenue sharing agreement ("CPRA") with GIM Corp. ("GIM"). Doc. 33 at 6; Doc. 27-3 at 17. AMA agreed to the CPRA by completing an automated process at Paidperview.com. Doc. 33 at 6. There was no direct contact between AMA and any of the Defendants. *Id.* The CPRA granted GIM a license to use content provided by AMA on websites whose advertisements are controlled by Traffic Force. *Id.* The CPRA dictated the manner and form in which AMA would provide content, and AMA granted GIM a license only for content provided under the CPRA. *Id.*

In November 2015, AMA became aware that Porn.com had displayed 64 of AMA's copyright registered works over 110 separate Porn.com affiliated URLs. Doc. 16 at ¶ 78. In December 2015, AMA provided Defendants' counsel with a draft complaint and settlement offer regarding the alleged infringement. Doc. 33 at 2. According to AMA, over the next four months "Defendants provided a string of delays and misrepresentations about the matters and settlement negotiations." *Id.* In April 2016, AMA presented Defendants with an amended complaint and a "deadline to choose between accepting a settlement offer or hav[ing] the case filed in U.S. District Court, for the District of Arizona." *Id.* at 3. Defendants requested an extension until April 28, 2016 to consider the settlement offer, and AMA agreed. *Id.*

On April 27, 2016, Cyberweb, Netmedia, Sagan, GLP, GIM, and David Koonar (collectively, "Porn.com Entities") filed a complaint against AMA and Adam Silverman

in the Supreme Court of Barbados.  Doc. 27-3 at 17-23.  The Porn.com Entities sought (1) injunctive relief to restrain anticipatory breach of the CPRA, (2) a declaration that any disputes related to the CPRA are governed by Barbados law and must be adjudicated in Barbados, (3) a declaration that the Porn.com Entities are entitled to rely on their rights under the CPRA, (4) a declaration that the Porn.com Entities are entitled to publicize and distribute materials provided to them by AMA and Silverman, and (5) relief for prior breaches of the CPRA, including damages.  *Id.* at 17-18.

AMA filed this action the next day, April 28, 2016.  Defendants Netmedia and GLP now move to dismiss the claims against them for lack of personal jurisdiction, or, in the alternative, to stay these proceedings pending completion of the Barbados action.  Docs. 27, 44, 45.

**II.    Personal Jurisdiction.**

**A.    Legal Standard.**

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true."  *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  The Court may not assume the truth of allegations in a pleading that are contradicted by an affidavit, but factual disputes are resolved in Plaintiff's favor.  *Id.*

**B.    Personal Jurisdiction over Netmedia.**

AMA argues that Netmedia is subject to personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2).  Doc. 38 at 7–8.  Rule 4(k)(2) provides that "serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant"

if (1) the claim arises under federal law, (2) "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction," and (3) exercising jurisdiction is consistent with the United States Constitution. Fed. R. Civ. P. 4(k)(2).

The first factor is satisfied because AMA asserts claims of copyright infringement under federal law. The second factor is satisfied if the defendant "does not concede to jurisdiction in another state." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007) (citation omitted). Netmedia does not concede that jurisdiction would be proper in any state.

Analysis under the third factor – the due process analysis – "is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] and the forum state, we consider contacts with the nation as a whole." *Id.* at 462. The question, then, is whether Netmedia has sufficient minimum contacts with the United States so that maintenance of the suit here does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). AMA does not allege that Netmedia's own contacts with the United States satisfy this requirement. AMA instead argues that Porn.com's contacts with the United States can be imputed to Netmedia because of Netmedia is an alter ego or agent of Porn.com, and Porn.com's contacts with the United States are sufficient to satisfy due process. Doc. 38 at 12.

The Court can dispose of the agency argument easily. The Ninth Circuit once recognized an agency theory for personal jurisdiction, *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001), but the Supreme Court rejected this theory, noting that it would "subject foreign corporations to general jurisdiction whenever they have an instate subsidiary or affiliate." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). The Court therefore will focus only on AMA's alter ego argument.

### 1.     Alter Ego Choice of Law.

The parties do not address what law should govern the alter ego analysis. The parties primarily cite two cases from the Ninth Circuit, *Doe v. Unocal Corp.*, 248 F.3d

915 (9th Cir. 2001), and *Ranza v. Nike*, 793 F.3d 1059 (9th Cir. 2015).  *Unocal* looked mostly to California law, but also cited federal court decisions from New York, Illinois, Delaware, and Florida.  *See Unocal*, 248 F.3d at 926-27.  *Ranza* applies the alter ego standard set forth in *Unocal*.  *See Ranza*, 793 F.3d at 1071, 73-74.  In the absence of any assertion that the law of some other state should apply, the Court will also look to *Unocal* and *Ranza*.

### 2. Alter Ego Analysis

In *Ranza*, the Ninth Circuit provided this explanation of the alter ego test, relying primarily on *Unocal*:

> To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice.  The "unity of interest and ownership" prong of this test requires a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former.  This test envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation.  Total ownership and shared management personnel are alone insufficient to establish the requisite level of control.

793 F.3d at 1073 (quotation marks, brackets, and citations omitted).

AMA asserts that "Defendants have created multiple 'companies' which operate crucial and necessary aspects of Porn.com[,]" and that "[t]his has become nothing more than a 'shell game.'"  Doc. 38 at 2.  "NetMedia **IS** Porn.com and Traffic Force."  *Id.* (emphasis in original).  In support of its argument, AMA presents the following facts.

Netmedia identifies itself as an operator of Porn.com, providing services related to the uploading of content pursuant to a "technical services agreement with Cyberweb Ltd."  Doc. 38 at 4; Doc. 32-4, 11, 13.  Netmedia shares a physical address and telephone number with Cyberweb, GIM, and the management of Traffic Force/GLP, but the placard on the building lists only Netmedia.  Doc. 38 at 3.  Under the CPRA between AMA and GIM regarding the posting of content on Porn.com, AMA is instructed to mail checks to

Cyberweb at Netmedia's address. Doc. 32-2 at ¶ 24. Defendant Cyberweb is the stated owner of Porn.com, and GIM is a part owner of Cyberweb. Doc. 16, ¶¶ 4-5; Doc. 38 at 2. GIM operates the content partnership program for Porn.com, which requires joining partners to sign the CPRA, and from which Porn.com generates its revenue. *Id*. The CPRA limits its scope to websites "who[se] advertisements are controlled by Traffic Force." Doc. 27-3 at 25. The Traffic Force terms of service identify GLP as Traffic Force. Doc. 38 at 5; Doc. 32-2 at 16. Traffic Force places banner ads for clients on Porn.com. Doc. 34-1, ¶ 21. Netmedia's employees are Traffic Force's personnel for operations. Doc. 32-5 at 5, ¶ 22; Doc. 32-2 at 5, ¶¶ 26-27. Phil Bradbury holds all official positions at GLP/Traffic Force and is also a Vice President of Netmedia. Silverman decl. 28. Defendant David Koonar is the President of GIM (Doc. 49-2, ¶ 8), a former Director of both Cyberweb (Doc. 32-4 at 2) and GLP (Doc. 27-3 at 7), and a Director of Netmedia (Doc. 27-3 at 14).

This evidence suggests a complicated inter-linking of these entities, but it does not show "such unity of interest and ownership [between Netmedia and Porn.com] that the separate personalities of the two entities no longer exist." *Ranza*, 793 F.3d at 1073. Discussing the holding in *Unocal*, the Ninth Circuit noted that even a company's "(1) involvement in its subsidiaries' acquisitions, divestments and capital expenditures; (2) formulation of general business policies and strategies applicable to its subsidiaries, including specialization in particular areas of commerce; (3) provision of loans and other types of financing to subsidiaries; and (4) maintenance of overlapping directors and officers with its subsidiaries," is "insufficient" to deem the two entities alter egos. *Id*. at 1073-74. Here, AMA provides no evidence that Netmedia and Porn.com comingle funds, enter into contracts on behalf of one another, assume liability for one another's debts, fail to keep separate corporate records, or are inadequately capitalized – factors often addressed in alter ego analysis. *Id.* at 1074. AMA does identify some common officers and directors, but such overlap is not sufficient to establish an alter ego relationship. *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("It is entirely appropriate for directors

- 6 -

of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent to liability for its subsidiary's acts.").

What is more, AMA entirely disregards the second element of the alter ego test recognized in *Ranza* and *Unocal*: "that failure to disregard their separate identities would result in fraud or injustice." *Ranza*, 793 F.3d at 1073. AMA does not address this requirement in its briefing.

So far, AMA has failed to show that Netmedia is an alter ego of Porn.com. The Court will permit to AMA to conduct limited discovery on this issue as described at the end of this order, but in the absence of more compelling evidence, Porn.com's contacts with the United States will not be imputed to Netmedia for purposes of personal jurisdiction.

**C.    Jurisdiction over GLP.**

AMA argues that the Court may exercise specific personal jurisdiction over GLP. Doc. 38 at 7. Specific jurisdiction exists where (1) the defendant purposefully directed his activities at the forum or purposefully availed himself of the privilege of conducting activities in the forum, (2) the claim arises out of or relates to the defendant's forum-related conduct, and (3) the exercise of jurisdiction would be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

AMA asserts the following facts. GLP does business as Traffic Force. Docs. 38-1 at 16; *see also id.* 38-2 at 2. Traffic Force places banner ads for clients on video streaming websites, including Porn.com. *Id.* at 4, ¶ 2. Traffic Force sends employees to the Phoenix Forum – an annual industry tradeshow held in Arizona – to solicit business, including from Arizona-based companies. Doc. 38-4 at 65, ¶¶ 30-34. In 2015, Traffic Force entered a contract with an Arizona company – Oppenheit, LLC – to display advertisements on sooshtime.com, a pornographic website. Doc. 38-5 at 2-3.

Even if these contacts showed that GLP purposefully availed itself of the privilege of conducting activities in Arizona (an issue the Court need not decide), AMA has not shown that its claims against GLP arise out of these contacts. AMA makes no effort to

explain how Traffic Force's participation in the Phoenix Forum relates to the copyright claims in this case. *See* Doc. 38 at 18-19.  AMA does assert that the shooshtime.com ads "are the subject of [its] copyright claims," (*id.*), but this allegation does not appear in the complaint, and AMA does not explain the connection between Porn.com's allegedly illegal display of AMA's content and ads that appear on a different pornographic website. AMA has not shown that this case arises out of GLP's contacts with Arizona.

### D. AMA's request to conduct Jurisdictional Discovery

The court may order jurisdictional discovery where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977).  The Court will grant limited jurisdictional discovery as set forth below. Because the Court will allow this discovery, it will not enter a final ruling on the motions to dismiss until the discovery and supplemental briefing are completed.

## III. Forum Selection Clause.

In the ordinary case, a federal court will enforce a valid forum selection clause by dismissing an action filed in a forum other than the one specified in the clause. *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 134 S. Ct. 568, 581 (2013).  Defendants argue that the Court should dismiss this action because the CPRA contains a forum selection clause which provides that "[a]ny legal action arising out of or relating to this Agreement must be instituted in a court located in Barbados."  Doc. 27-3 at 30, § 10.5.

A claim is subject to a forum selection clause if the claim "relates in some way to rights and duties enumerated in" a related contract. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988).  For example, a forum selection clause will be enforced if the defendant asserts a contract-based defense to a claim. *Id.*  In the analogous area of patent infringement, however, federal courts have recognized that infringement actions should not be dismissed or transferred merely on the basis of an allegation that a contract with a forum selection clause contains a license for the patent's use. "[I]f all that is required is a license and a bare allegation that it provides a defense,

then virtually every subsequent dispute between contracting parties would trigger such a forum selection clause." *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011).  To avoid this risk, courts require that the party seeking to enforce the forum selection clause raise "a non-frivolous dispute regarding the scope of a patent license." *Id.*

Defendants have failed to present a non-frivolous argument that the CPRA licenses the conduct complained of in this case.  The agreement refers to AMA as "Licensor" and the Porn.com Entities as "Licensee."  Section 1.1 then provides:

> Subject to the terms and conditions set forth in this Agreement, *with respect to any and all Content that Licensor submits or provides to Licensee*, Licensor grants Licensee a non-exclusive, nontransferable worldwide license during the Term to use, publish, display, and distribute the Content on the Websites(s).

Doc. 27-3 at 25, § 1.1 (emphasis added).[1]

The license granted by this section is expressly limited to content that AMA "submits or provides" to the Porn.com Entities.  Section 1.1 then makes clear that "[n]o license to any other intellectual property of Licensor . . . is provided hereby." *Id.*  A later provision states that "[a]ll rights in and to the Content not expressly licensed to Licensee under Section 1.1 are reserved to Licensor." *Id.*, § 1.3.

Section 4 of the CPRA is titled "Provision of Content."  Doc. 27-3 at 27.  It makes clear that AMA is to provide material to the Porn.com Entities for their subsequent distribution. *See*, *e.g.*, § 4.1 ("Licensor shall provide the content," "Licensor shall provide all the materials"); 4.3 ("Licensor reserves the right not to provide Licensee with any item of Content"); 4.6 ("Licensor shall have sole responsibility for providing, at its own expense, the Content to Licensee").  Exhibit B to the CPRA is titled "Acceptable Methods of Delivery," and states that "Licensor shall have the sole responsibility for providing, at its own expense, the Content."  Doc. 27-3 at 31.  It then provides four

---

[1] "Content" is defined as follows:  "Licensor [AMA] is and attests that he is the author, license holder, and/or aggregator of certain sexually explicit content (the "Content")."  Doc. 27-3 at 25, § A.

- 9 -

methods by which AMA may deliver the content to the Porn.com Entities – file transfer, delivery of physical copies, delivery on a hard drive, or by uploading material to the Porn.com Entities' PaidPerView account. *Id.* Each method involves an affirmative action by AMA to provide the content.

AMA does not assert claims in this case related to content it provided to the Porn.com Entities under the CPRA. Doc 16, ¶ 63. AMA instead alleges that the Porn.com Entities published AMA content that they took from other locations on the Internet without AMA's knowledge or consent. *Id.*, ¶¶ 78, 82. The Porn.com Entities do not argue that AMA knew of or consented to the publication of this content. Nor do they present any evidence that they acted in accordance with the CPRA in handling this content by, for example, paying royalties to AMA. Thus, AMA's copyright infringement claims are wholly unrelated to content provided under the CPRA, and the contract's forum selection clause is inapplicable.

The Porn.com Entities argue that they had the "express right" under the CPRA to download AMA's content from other locations on the Internet, but the CPRA says nothing of the kind. True, it grants the Porn.com Entities a broad license to distribute the content provided by AMA under the CPRA, but nowhere does it suggest that the Porn.com Entities can acquire that content for themselves from other sources on the Internet. The only provision Defendants cite to support this assertion is found in a section of the contract titled "Compensation," and reads as follows:

> In the event that the Content originates and/or is associated with an existing website associated with Licensor, Licensee may amongst its various methodologies, direct traffic to any such website and Licensee shall be compensated for any revenues generated as a result of Licensee directing such traffic.

Doc. 27-1 at 27, § 3.9. This provision states that the Porn.com Entities will receive compensation if they direct Internet users to AMA's websites. It says nothing about how the content for which AMA is to be paid may be procured by the Porn.com Entities.

In sum, Defendants have failed to present a non-frivolous argument that the CPRA

bars AMA's copyright infringements claims. *Gen. Protecht Grp.*, 651 F.3d at 1359. Those claims relate to materials acquired and published by Defendants outside the terms of the CPRA and are not subject to its license provisions. Because the claims do not arise out of or relate to the CPRA, they are not subject to its forum selection clause.

**IV.   Abstention.**

Defendants ask the Court to stay this case pending resolution of the Barbados action, pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). The Court declines to do so.

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id.* at 817. In "exceptional circumstances," however, federal courts may abstain from deciding a case over which they have jurisdiction. *Id.* Where a state or foreign proceeding runs parallel to the federal case, for example, "considerations of wise judicial administration" may favor abstention. *Id.*; *see AAR Int'l, Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (*Colorado River* framework applies where court is asked to abstain based on parallel foreign proceedings). The threshold question is whether "the two proceedings are substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). If not – because "a substantial doubt" exists "as to whether the [foreign] proceedings will resolve the federal action" – abstention is improper. *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993).

AMA argues that the Barbados action is not substantially similar to this action. Doc. 33 at 8-13. The Court agrees. The only issue in the Barbados action is whether AMA breached the CPRA. *See* Doc. 27-3 at 17-18. As explained above, the CPRA is not implicated by this case. The issue here is whether the Porn.com Entities infringed AMA's copyrights by publishing AMA content obtained without AMA's knowledge or consent. Complaint, ¶¶ 78, 82. The CPRA does not apply to such content.

The Porn.com Entities argue that they were authorized to distribute pirated AMA content pursuant to the CPRA. Doc. 27-1 at 18-19. As explained, that argument is frivolous. Because it is exceedingly unlikely that the Barbados Supreme Court would

- 11 -

adopt the Porn.com Entities' argument, there is a "substantial doubt as to whether the [foreign] proceedings will resolve the federal action" and abstention is inappropriate. *Intel Corp.*, 12 F.3d at 913.[2]  In addition, GLP is no longer involved in the Barbados action.  Doc. 27-1 at 18 n. 3; Doc. 34-4 at 14.  The action therefore will not resolve AMA's claims with respect to GLP.

The Porn.com Entities argue, in the alternative, that the Court should stay the matter under *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857 (9th Cir. 1979). Under *Leyva*, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Id.* at 863.  Because the Barbados action is unlikely to have any bearing on this case, it would neither be fair nor efficient to stay this action pending resolution of that case.

**IT IS ORDERED:**

1. A final ruling on the motion to dismiss (Doc. 27) regarding Netmedia and GLP will be issued after the Court receives the supplemental briefing discussed below.

2. The motion to stay proceedings pending the outcome of the Barbados action (Doc. 27) is **denied**.

3. AMA will have until **December 2, 2016** to complete limited jurisdictional discovery.  The discovery may include up to 5 document production requests and 10 interrogatories served on each Defendant.  AMA may also conduct one Rule 30(b)(6) deposition of no more than 7 hours, and three other fact depositions of no more than 5 hours each.  This discovery should

---

[2] The Porn.com Entities cite two cases where district courts stayed copyright infringement cases pending resolution of a foreign case construing a related licensing agreement.  These cases are distinguishable because each involved a *plausible* contract defense to the charge of copyright infringement.  *See Seven Arts Pictures PLC v. Fireworks Entm't, Inc.*, 244 F. App'x 836, 837 (9th Cir. 2007) ("Seven Arts acknowledges that it possesses the copyrights in question only if [its contracts with the defendant] are unenforceable."); *CRC Info. Sys., Inc. v. Quebecor World (USA), Inc.*, No. 03-cv-0591, Doc. 33 at 10-12 (D. Ariz., July 21, 2003) (contract provided defendant with license to use the very software at issue in plaintiff's copyright claim).

cover issues raised in all of the pending motions to dismiss (and any potential motion by Cyberweb Ltd.), not just those raised in the motion addressed in this order.  By **December 9, 2016**, AMA shall file a supplemental memorandum that applies to all Defendants and does not exceed 17 pages.  Defendants may collectively file a joint response, not to exceed 17 pages, by **December 21, 2016**.  No reply memorandum will be permitted unless ordered by the Court.

4. The parties should complete briefing of the pending motions to dismiss on the schedule provided by the relevant rules.  If Defendant Cyberweb is going to file a motion to dismiss, that motion shall be filed by **October 12, 2016**.  In light of the jurisdictional discovery that is being allowed, the Court recognizes that the schedule set forth in the Case Management Order (Doc. 58) may need to be adjusted once it rules on the motions to dismiss.  If the parties find that the schedule requires adjustment after the Court rules, they should place a joint conference call to the Court promptly.

Dated this 5th day of October, 2016.

_____
David G. Campbell
United States District Judge