LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona  85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMA Multimedia, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Sagan, Ltd., a Republic of Seychelles company, individually and d/b/a Porn.com; Cyberweb, Ltd., formerly MXN, Ltd., a Barbados Company, individually and d/b/a Porn.com; NetMedia Services, Inc., a Canadian Company, individually and d/b/a Porn.com; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; David Koonar, an individual, *et. al.,*<br><br>Defendants. | Case No. CV-16-1269-PHX-DGC<br><br>**PLAINTIFF AMA MULTIMEDIA, LLC'S OPPOSITION TO DEFENDANT KOONAR'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

Plaintiff, AMA Multimedia, LLC ("AMA" or "Plaintiff") hereby opposes Defendant David Koonar's Motion to Dismiss for Lack of Personal Jurisdiction.

## I.       INTRODUCTION

The web site www.Porn.com is clearly targeted and directed toward United States viewers such that the operators of the site have purposefully availed themselves to the United States forum.  The claims herein arise out of this contact with the United States, providing for jurisdiction here.

Defendant David Koonar (hereafter "Koonar") is at the center of a shell game involving multiple companies created by Koonar, each involved with the ownership or operation of Porn.com.  Defendants seek to limit any liabilities for Porn.com to a single foreign shell company Cyberweb, Ltd., the one entity Defendants admit to owning and controlling Porn.com.  Koonar is significantly linked with each entity involved in the operation and/or ownership of Porn.com and is in control of the content that is displayed on the web site.  The interplay is demonstrated in the chart attached here as **Exhibit A**, incorporated by this reference.  And even *this* is a simplified version – Defendants have far more working knowledge of the operations and control beyond this simple flowchart.

## II.  FACTUAL BACKGROUND

In its two prior oppositions, AMA has outlined in detail the manner in which Porn.com intentionally and specifically targets the United States market.  AMA has also outlined in detail that NetMedia Services, Inc. and Sagan Ltd. are both involved in the operations and ownership of Porn.com.[1]  (And, Cyberweb, Ltd. admits to being the owner and operator of Porn.com.)  Rather than repeating such factual assertions here, AMA incorporates by this reference Docs. 32, 38 and 51 here.

In this specific motion, Koonar is tied to the United States as he states he is the President of GIM Corp., a named party to a Content Partnership Agreement ("CPA"), under which Defendants claim rights (and use as a basis for their Motions to Stay.)[2]

---

[1]  Defendants assert that "such lumping of Defendants is impermissible," citing *Calder v. Jones*, 465 U.S. 783, 790 (1984).  To the contrary, *Calder* stands only for the proposition that each defendant's contacts with the forum must be assessed individually.  *Calder* does not prevent allegations being raised against multiple defendants.

[2] While Defendants continue to raise the CPA in this litigation, largely in an attempt to steer this U.S. copyright litigation to the Barbados court, the CPA is a red herring.  None of the Defendants are parties to the CPA, which grants a nontransferable license, and none of the AMA content alleged as infringed in this case was provided under the CPA.

Koonar fails to mention that he is also the President of NetMedia Services, Inc.[3]  *See*, Declaration of Jason Tucker as **Exhibit B**, incorporated here, at p. 3, ¶ 11.  NetMedia significantly operates Porn.com including, but not limited to programming, design, uploading of content to Porn.com.  *See*, Docs. 32, 38, and 51.  In addition, NetMedia employees also manage the advertising for Porn.com, assist in billing and payments, and both send and receive money for both GIM and Cyberweb (an admitted owner of Porn.com). Contrary to Defendants' denials, NetMedia is operating Porn.com.  In their own Barbados Statement of Claim, Paragraph 4.4.3, Defendants **admit** that NetMedia effectively runs and manages the operations of Porn.com.  It is Koonar's role as President of NetMedia that results in his inclusion as a Defendant in this lawsuit.  *See*, Declaration of Adam Silverman, **Exhibit C**, incorporated here, at p. 2, ¶ 4.

AMA alleges that NetMedia, and therefore Koonar, illegally acquired specific AMA content for Porn.com by uploading the material to Porn.com.   NetMedia programmers then created *unique* and *fake* usernames, user sign-up dates, video upload dates, and other fake data in Porn.com's database to give the appearance that a third party user uploaded the video(s).  AMA discovered these clandestine actions through glaringly wrong information that NetMedia employees inserted into the database that made the publicly listed dates a matter of *impossibility*. In some instances, a user purportedly uploaded a video to Porn.com before they in fact signed up an account with Porn.com, *and* before the date AMA had even produced the video. **Exhibit B**, p. 3, ¶ 12-19.; **Exhibit C**, p 2, ¶ 5-6.  In other instances, the purported user who had uploaded the video changed entirely, or had no accompanying user information.  *See*, Doc. 16 (First Amended Complaint) at Exhibits B, C; *see also*, **Exhibit B**, ¶¶13, 20.

---

[3] Koonar also misleads this Court about his contact with the U.S. by failing to inform that one of his companies, JSS Networks, issues payments to Licensors under the CPA via checks actually **signed by Koonar himself** and drawn on **U.S. bank accounts**.

If a real user had performed these actions, *any* database would have captured real time accurate information.  If a real user would have signed up, the proper sign up date would have been recorded.  If a real user uploaded the video, the proper upload date would have been recorded (after the sign up date).  This is because in order to upload a video, an end user must first be a registered user.  Importantly, both of these dates would have to have been after AMA actually produced and released the video online.   It is a matter of impossibility that a user could upload one of AMA's videos before it was ever even produced or released.   These attempted disguises are nothing more than programmers and/or employees for NetMedia going into the Porn.com database and assigning random dates on videos they uploaded, and creating fake user information.  **Exhibit B**, p 3-4, ¶¶17-22.  Importantly, Defendants do not deny they uploaded this material, and NetMedia provides services relating to uploading.  **Exhibit C,** p 3, ¶¶ 8-9.

It also should be noted that these fake users for AMA content on Porn.com did not have a profile page.  When AMA went to a standard profile URL for these fake usernames, Porn.com would return "No such member found."  However, Jason Tucker performed a *real* test sign up on Porn.com legitimately.  When his account was created on Porn.com, a default profile page was automatically created for his user account.  This is further evidence the users are fake.[4]  **Exhibit B**, p 3, ¶ 19.

The actions described above could not have been facilitated without programmers, and the programmers for Porn.com are employed by NetMedia.  Without any apparent discretion, these employees went to great lengths to mask their activity by creating fake user data in the Porn.com database and then stole everything under the sun.  And they did all of these illegal and egregious tasks to commit copyright infringement under Koonar's management in his role as President of NetMedia.  **Exhibit C**, p. 3, ¶ 9-11.

---

[4] "Coincidentally," once Koonar received the draft Complaint from AMA in January, new infringements stopped and these fake users stopped entirely.

1    The motivation for dressing the content as "user uploaded" is simple to understand

2    – Porn.com wanted to claim protection later from content producers under the *United*

3    *States* DMCA safe harbor provision that shields liability from 3rd party user uploads

4    under a notice and takedown system.  Porn.com would accept DMCA notices and simply

5    remove the material and feel protected from liability.  However, after exhaustive research

6    the infringement scheme was exposed.  **Exhibit C** (Silverman Declaration), p. 4, ¶13.

7    Koonar's sole disclosure to the Court that he is the President of GIM – while

8    failing to disclose his role with NetMedia – is also an attempt to hide from liability.

9    Defendants have intentionally "hidden" behind the CPA, pretending it gives them some

10   type of rights (arguing they have unfettered "licensing" rights to all of AMA's works

11   because of it), yet they show no direct relationship between GIM and Porn.com at all.

12   Defendants have maintained a separation from GIM and NetMedia.  Meanwhile, Koonar

13   is employing a common corporate structure used by Canadians to claim significant tax

14   benefits.  GIM does not own or operate Porn.com and is not a parent or subsidiary

15   company to any of the named Defendants in this case, as far as initial research reveals.

16   While ultimately Koonar controls everything, on paper they are all set up as separate,

17   likely for tax purposes.  By Phil Bradbury's own admission, GIM is an "*indirect*" partial

18   owner of Cyberweb while leaving such relationship entirely undefined.  Doc. No. 27-3.

19   Ownership is binary.  An entity is either listed as an owner/shareholder, or it is not.

20   According to Bradbury, GIM is not an owner of Cyberweb.  **Exhibit C**, p. 4, ¶14.

21   GIM merely provides content to the other named Defendants for distribution,

22   however GIM only holds a nontransferable license.  Koonar relies on this same

23   agreement by GIM that calls for jurisdictional clause of Barbados, pretending his role at

24   NetMedia is non-existent and remaining silent on the issue.  Koonar argues he is being

25   sued under his role at GIM, disregarding his role at NetMedia.  Not only is Koonar

26   mistaken, but he highlights the "shell games" about which AMA complains.

III.   **LEGAL ARGUMENT**

In AMA's Oppositions to NetMedia, GLP 5, and Sagan's Motions to Dismiss for Lack of Personal Jurisdiction, AMA presented the standards for establishing jurisdiction of a foreign defendant in a United States Court.  Docs. 32, 38, and 51.  Except to the extent necessary to ensure continuity for the reader, AMA will not restate those legal standards and arguments herein, but rather incorporates them by reference.

Where a corporation or similar entity is the alleged infringer, the plaintiff may also hold individual "corporate officers, shareholders, and employees . . . personally liable for the corporation's infringements" by showing that such individuals "are a 'moving, active conscious force behind the corporation's infringement,' regardless of whether they are aware that their acts will result in infringement."  An individual, including a corporate officer, who has the ability to supervise activity infringing copyright and has a financial interest in that activity, *or* who personally participates in that activity is personally liable for the infringement."  *S. Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985); *Rain Gutter Pros, LLC v. MGP Mfg., LLC*, No. C14-0458 RSM, 2015 U.S. Dist. LEXIS 141340, at *7-8 (W.D. Wash. Oct. 15, 2015); *Carson v. Verismart Software, Inc.*, No. C 11-03766 LB, 2012 U.S. Dist. LEXIS 42120, 2012 WL 1038662, at *5 (N.D. Cal. Mar. 27, 2012) (quoting *Adobe Sys. v. Childers*, No. 5:10-cv-03571-JF/HRL, 2011 U.S. Dist. LEXIS 14534, 2011 WL 566812, at *7 (N.D. Cal. Feb. 14, 2011) (*citing Novell, Inc. v. Unicom Sales, Inc.*, No. C-03-2785 MMC, 2004 U.S. Dist. LEXIS 16861, 2004 WL 1839117, at *17 (N.D. Cal. Aug. 17, 2004)); *see also Comm. For Idaho's High Desert, Inc. v. Yos*t, 92 F.3d 814, 823 (9th Cir. 1996) ("A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." (internal quotations and alterations omitted)).

In determining the liability of corporate officers "it is immaterial whether such individuals are aware that their acts will result in infringement." *Novell, Inc. v. Unicom Sales, Inc., No*. C-03-2785 MMC, 2004 U.S. Dist. LEXIS 16861, 2004 WL 1839117, at 17 (N.D. Cal. Aug. 17, 2004).  An individual, including a corporate officer, who . . . personally participates in that infringing activity is personally liable for the infringement. This direct personal liability is possible because "[c]opyright is a strict liability tort; therefore, there is no corporate veil and all individuals who participate are jointly and severally liable." *Blue Nile, Inc. v. Ideal Diamond Solutions, Inc.*, Case No. C10-380TSZ, 2011 U.S. Dist. LEXIS 85223, 2011 WL 3360664, at *2 (W.D. Wash. Aug. 3, 2011).

Koonar is the President of NetMedia Services.  In this role, he has direct and ultimate control over the actions of his own employees (NetMedia programmers) and the content that NetMedia employees acquired and uploaded to Porn.com.  Thus, Koonar is subject to specific personal jurisdiction under FRCP 4(k)(2), often referred to as the federal long-arm statute.[5] *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1159 (9th Cir. 2006).  A court may exercise jurisdiction over a defendant where (1) the claim arises under federal law, (2) the defendant is not "subject to the personal jurisdiction of any state court," and (3) the exercise of personal jurisdiction comports with due process. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). The only dispute regarding jurisdiction over Koonar is whether the exercise of personal jurisdiction comports with due

[5]  Koonar's Motion to Dismiss does not address Fed.R.Civ.P. 4(k)(2) jurisdiction, although his co-defendants filed Replies to AMA's Opposition to this same jurisdictional motion and thus is aware of AMA assertion.  Doc. 44.  Presumably, Koonar will similarly reply with the assertion that this Circuit has never had facts supporting 4(k)(2) jurisdiction.  Defendants fail to recognize several recent cases in this Circuit conferring 4(k)(2) jurisdiction, including  *Datatech Enters. LLC v. FF Magnat Ltd.*, No. C 12-04500 CRB, 2012 U.S. Dist. LEXIS 131711 (N.D. Cal. Sep. 14, 2012) and *Cybernet Entertainment LLC v. IGMedia, Inc., et al.,* United States District Court District of Arizona Cause No. 12-cv-01101-PHX-SRB.

process.  "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] and the forum state, we consider contacts with the nation as a whole." *Id.* at 462.

The Ninth Circuit Court of Appeals articulated the following three-prong test for determining whether personal jurisdiction comports with due process:

> (1)  The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)

"The plaintiff bears the burden of satisfying the first two prongs of the test." If the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.,* 374 F.3d at 802.

## A.       Purposeful Direction

An analysis of purposeful direction is typically used in tort suits and normally centers on actions performed outside the forum that are directed toward the forum. *Id.* at 802-03.  For intentional torts, the Ninth Circuit Court applies the *Calder* effects test in examining purposeful direction of a defendant's activities toward a forum. *See Calder v. Jones*, 465 U.S. 783, 788-90 (1984); *Dole Food Co., Inc. v.* Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).  Purposeful direction under the *Calder* effects test "'requires that the defendant allegedly have 1) committed an intentional act, 2) expressly aimed at the forum state, 3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Schwarzenegger*, 374 F.3d at 803.

### 1.     Intentional Act

The owners and/or operators of Porn.com, have acted intentionally by obtaining AMA videos without authority and displaying the videos on Porn.com under the guise of being posted by third parties.  NetMedia is one of the owners and/or operators of Porn.com, specifically performing programming services and uploading content to Porn.com.  Koonar is the President of NetMedia and thus is in direct control of the programming and the uploading of content onto Porn.com.  With such control, Koonar is personally liable for the infringement of AMA's work on Porn.com.  Intent under the *Calder* effects test is construed as "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806.  Operation of a website constitutes an intentional act. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010).

Here, NetMedia and its president, Koonar, intentional acts are clear.  They sought AMA's videos on other streaming sites across the Internet, captured those videos, and then posted them on Porn.com disguised as third-party uploads.  Neither NetMedia nor Koonar even **deny** these acts; they claim to be "covered" by the CPA.

### 2.     Express Aiming

Porn.com is expressly aimed at the U.S. The facts, legal standards, and legal analysis have been detailed in AMA's Opposition to NetMedia and Sagan's motions to dismiss. *See* Doc. 32, 38, and 51, incorporated here by this reference (rather than repeating).

Based on Porn.com's numerous and various contacts with the U.S., the substantial amount of traffic from U.S. residents, Koonar's choice in using a US-based Content Delivery Network with US servers to distribute the infringed videos, and the fact that Porn.com profits–whether directly or indirectly–from advertising that targets U.S. residents, AMA has sufficiently established a *prima facie* case of express aiming at the U.S. *See, Mavrix Photo, Inc. v. Brand Techs, Inc.,* 647 F.3d 1218, 1231 (9th Cir. 2011).

1    The willful and intentional nature of the copyright infringement and Koonar's

2    knowledge that AMA is a U.S. company that does business throughout the U.S. renders

3    Koonar's express aiming to the U.S. clear.

4    Jurisdiction exists in a plaintiff's home forum when it is determined that the tort is

5    an intentional one, because in such cases the "acts are performed for the very purpose of

6    having their consequences felt in the forum state." *Brainerd v. Governors of the Univ. of*

7    *Alta.*, 873 F.2d 1257, 1260 (9th Cir. 1989); *see also, Licciardello v. Lovelady*, 544 F.3d

8    1280, 1286 (11th Cir. 2008).  Where a defendant knows, rather than only being able to

9    foresee, that an intentional act will impact another state, the "expressly aimed"

10   requirement is satisfied. *Mavrix, supra; see also, Amini Innovation Corp. v. JS Imps.,*

11   *Inc.*, 497 F. Supp. 2d 1093, 1105-08 (C.D. Cal. 2007).

12   This reasoning was applied in *Washington Shoe Co. v. A-Z Sporting Goods, Inc.,*

13   704 F.3d 668, 677 (9th Cir. 2012).   There, the issue was whether an intentional

14   infringement of Washington Shoe's copyright in its shoes was expressly aimed at the state

15   of Washington.   Washington Shoe had its headquarters in Washington state while the

16   intentional acts infringing Washington Shoe's copyright took place in Arkansas.  A-Z's

17   intentional acts were expressly aimed at the copyright held by Washington Shoe because

18   A-Z knew that its intentional acts would impact Washington Shoe's copyright in

19   Washington state by virtue of its knowledge of the location of Washington Shoe. Because

20   A-Z knew or should have known that Washington Shoe is a Washington company, A-Z's

21   intentional acts were expressly aimed at the state of Washington. *Id.* at 678.

22   This instant case is materially the same as *Washington Shoe*.   Koonar's acts of

23   infringing AMA content (and those acts of the other defendants), were intentional.

24   AMA's videos were intentionally, willfully, and specifically located, and obtained, and

25   then they were intentionally disguised and uploaded on Porn.com.  Koonar and the other

26   defendants were well aware that AMA is a U.S. company with U.S. copyrights which

markets to paid membership sites in the U.S.  With this knowledge, Koonar and the other defendants expressly aimed their acts of infringement at the U.S. by willfully targeting AMA content for unlawful display on Porn.com.  The Arizona Federal Court found the "express aiming" prong satisfied in similar cases such as *Datatech v FF Magnat* and *Cybernet v. IG Media, supra.*

Recently, Defendant Sagan raised *Walden v. Fiore* for the premise that third parties cannot create contacts with a forum to satisfy the express aiming for jurisdiction purposes.  134 S.Ct. 1115, 188 L.Ed.2d 12, 24 Fla.L. Weekly Fed. S. 560 (2014).  *See*, Doc. 60.  While Defendant Sagan may state the *Walden* rule correctly, Defendants' application of the rule to this case is misleading.  In *Walden*, Nevada residents were stopped, frisked, and searched by a DEA agent in an airport in Atlanta, Georgia, resulting in the confiscation of cash.  The Nevada residents filed a tort action in the District of Nevada, alleging jurisdiction because the Agent knew where they lived as a result of inspecting their identification.  *Id.* at 1119-20.

The U.S. Supreme Court found that jurisdiction over the Agent did not exist in Nevada, because it is the defendant's conduct that must form the necessary connection to the forum state that is the basis for jurisdiction over him, as opposed to merely the plaintiff's link to that forum.  *Id.* at 1122-23, *citing Burger King,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).  Specifically, the Supreme Court determined that none of the Agent's action connected him to Nevada, finding:

> Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. *Walden*, 134 S.Ct. at 1125.

The Court went on to say:

> The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way. *Id*.

1   There, the Supreme Court confirmed that the unilateral activity of a third party cannot
2   satisfy the requirement of a contact with the forum state.  *Id*. at 1125.  To the extent that
3   Defendants argue that *Walden* overrules *Washington Shoe,* it does not.  In *Washington*
4   *Shoe,* the Ninth Circuit found that the intentional act of infringing a copyright ***is*** conduct
5   of a defendant sufficient to connect the defendant in a meaningful way to the forum
6   where the copyright resides.

7       Defendants concentrate the *Walden* analysis on asserting that a third party cannot
8   satisfy the requirement of contact with the forum state.  Assertion of this rule in the
9   instant matter is incorrect.  Specifically, Defendants assert that third party advertisers
10  targeting U.S. viewers cannot establish contact by the Defendants with the United States.

11      The Defendants (Koonar included) repeatedly, and falsely state that they do not
12  handle any targeting of ads, instead arguing third parties do it.  This is *patently false.*
13  Traffic Force handles the geo-targeting of banner advertising on Porn.com.  Defendant
14  GLP 5 is Traffic Force.  GLP 5 has no employees or physical offices, but rather
15  employees and programmers of NetMedia simultaneously manage Traffic Force.
16  Furthermore, these ads are hosted by Reflected Networks in the U.S., and some of these
17  ads contained AMA's infringed content.  *See*, **Exhibit C** (Silverman Declaration) at ¶ 20.

18      More importantly, while Traffic Force is mostly an advertising platform that sells
19  advertising to third party advertisers, the Defendants become advertisers themselves in
20  order to optimize the profit of any *unsold* traffic.  Essentially, Traffic Force (and
21  therefore NetMedia) in certain situations run their own *internal* ads, and it is actually
22  these non-third party *internal* ads that contained AMA's copyright infringement.
23  Defendants did not stop with stealing AMA's content for its own distribution; Koonar's
24  employees also created ads from AMA's stolen content, which directed web traffic to
25  products that are competitive to AMA.  These ads were hosted with Reflected Networks,
26  a U.S.-based hosting provider, distributed through U.S. servers.  **Exhibit C** at ¶¶21-26.

Moreover, it is not merely the advertisements which establish Defendants' connection with the U.S.  Their intentional use of a U.S. hosting provider, their intentional use of servers (CDN) in the U.S. to deliver videos to U.S. viewers (including AMA content),[6] their broadcast to significant U.S. viewers, and their intentional theft of AMA content knowing that AMA was a U.S. company with U.S. copyrights are all factors establishing U.S. connections.

### 3.       Harm Caused

The facts, legal standards, and legal analysis regarding harm in the forum have been detailed in AMA's Opposition to NetMedia and Sagan's motions to dismiss.  *See,* Docs. 32, 38, and 51, which are again incorporated here by this reference.

### B.       Arises Out of Defendant's Forum-Related Activities

The facts, legal standards, and legal analysis have been detailed in AMA's Opposition to NetMedia and Sagan's motions to dismiss.  *See* Docs. 32, 38, and 51, which are specifically incorporated by reference.

AMA has been harmed in the U.S. because Koonar, through his company NetMedia, targeted the U.S. and caused AMA's copyrighted works to be displayed and viewed on its sites in the U.S.  AMA's injury in the U.S. stems from the substantial traffic to Defendant's websites, including by viewers in the U.S.  Thus, AMA's claims arise out of Defendant's U.S.-related activities through Porn.com. *See Mavrix*, 647 F.3d at 1228; *Rio Properties v. Rio Int'l. Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002).

---

[6] The Defendants allege they used a "former" webhost in the U.S., Reflected Networks, whom they no longer use.  However, Defendants are still using Limelight and its U.S.-based servers to distribute content in the U.S.  They do not explain how they are not in "direct contract" with Limelight or how they stopped using Reflected Networks, and they concede on p. 8 of their Motion that Porn.com is still using Limelight, a subcontractor of Reflected Networks (located in Arizona) for web hosting.  Doc. 49-1 at p. 8.  Basically, Defendants contradict themselves.

## C.     Reasonableness

"[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. In determining reasonableness, courts consider seven factors:

> (1)      the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Rio*, 284 F.3d at 1021.

Here, all seven factors support exercising jurisdiction over Koonar.  First, Koonar has extensively interjected himself in the U.S. forum.  Under his supervision/direction as the President, NetMedia provided programming and technical services for Porn.com. AMA content was obtained from other video streaming sites throughout the Internet and displayed on Porn.com with fake information, including upload dates and uploader profiles under the guise of "third party user posts" and distributed throughout the U.S. on servers located in the U.S. while generating significant advertising revenues from U.S. vendors. Koonar was also listed as President of GLP 5 (another Defendant and a U.S.-based company) at the time this lawsuit was filed.

Second, it is disingenuous for Koonar to argue a substantial burden to litigate this matter in the U.S. when he and his company filed an action in Barbados.  Koonar fails to explain how Barbados is less costly or burdensome than the U.S.  It seems obvious that travel to the U.S. from Canada will be less costly and burdensome than travel to Barbados.[7] Koonar lives and works from Windsor, Canada, a location less than 1 mile from the U.S.

---

[7] It can also be noted that Defendant's counsel is located in Los Angeles, **California** – a far more convenient distance from **Arizona** than to Barbados.

Third, Koonar argues that his home forum of Canada has a more compelling interest in regulating his behavior.  However, he fails to explain **why** Canada has more compelling interest in governing actions which occurred in the U.S. and which violate U.S. copyright laws (and/or which govern U.S. copyrighted materials).

Fourth, Defendants fail to explain why this forum does not have a particular interest in adjudicating this dispute.[8]  U.S. District Courts certainly have significant interests in resolving disputes of U.S. copyright infringements by foreign defendants.  By NetMedia operating Porn.com in the U.S., this District Court can surely demonstrate a particular interest in this case.

Fifth, Defendants argue a lack of judicial efficiency here, arguing that no party is located in Arizona.  Defendants then offer Barbados as a more judicially efficient forum. None of the parties here are connected whatsoever to Barbados, and not even Defendants can argue a connection to Barbados with a straight face.  Defendants do not have offices in Barbados; none of the parties reside in Barbados; the parties do not apply Barbados "copyright" laws or argue that Barbados regulates the content of the Porn.com website. Barbados is certainly significantly farther than Arizona.  Most importantly, the videos displayed in this case were served from Content Delivery Network (CDN) Limelight, **located here in Arizona**.  The harm occurred in Arizona.

Sixth, since the servers that display AMA's content are located here in Arizona and other parts of the U.S., as the CDN servers are through Limelight with headquarters in Arizona, Arizona is the most convenient forum to obtain effective relief.  These servers are more easily accessed in discovery, which would be governed by this Court.  The Porn.com web site is listed as a U.S. Internet Service Provider with the U.S. Copyright Office.

---

[8] Koonar's Motion is specific to Arizona on this issue, even though he is well aware that AMA is asserting jurisdiction under Fed.R.Civ.P. 4(k)(2).

Seventh, Defendants argue Barbados as an alternative based upon the CPA between AMA and GIM.  Not only is GIM not a party to this litigation (and the Defendants in this case are not parties to the CPA), but it is highly unlikely that the Barbados Court will have any jurisdiction over AMA's allegations of copyright infringement.  The Barbados Court will address the CPA in its limited scope – whether AMA breached a contract – and that is all.  The Barbados Court cannot extend jurisdiction to hear AMA's copyright complaints, and AMA would then be left without relief.

IV.    **CONCLUSION**

For the reasons stated herein, AMA Multimedia respectfully requests that the Court deny Defendant David Koonar's Motion to Dismiss for Lack of Personal Jurisdiction.   At a minimum, AMA should be granted jurisdictional discovery to demonstrate Mr. Koonar's ties to Porn.com and the allegations made in the First Amended Complaint.

DATED this 10th day of October, 2016.

**MANOLIO & FIRESTONE, PLC**

By:___/s/ Veronica L. Manolio_____
Veronica L. Manolio
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
*Attorneys for Plaintiff*

- 16 -

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on the 10th day of October, 2016, I electronically transmitted

3  the foregoing document to the Clerk's office using the CM/ECF system for filing.  Copies

4  will be transmitted via CM/ECF to the following recipients:

5

6  Erica J. Van Loon
   Glaser Weil Fink Howard Avchen & Shapiro LLP
7  10250 Constellation Blvd.
8  Los Angeles, CA 90067
   evanloon@glaserweil.com
9  *Attorneys for Defendants David Koonar,*
   *Sagan Limited, GLP 5, Inc. and NetMedia Services Inc.*
10

11

12  By: ___/s/ Gina Murphy_____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

- 17 -