LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMA Multimedia, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Sagan, Ltd., a Republic of Seychelles company, individually and d/b/a Porn.com; Cyberweb, Ltd., formerly MXN, Ltd., a Barbados Company, individually and d/b/a Porn.com; NetMedia Services, Inc., a Canadian Company, individually and d/b/a Porn.com; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; David Koonar, an individual, *et. al.*,<br><br>Defendants. | Case No. CV-16-1269-PHX-DGC<br><br>**PLAINTIFF AMA MULTIMEDIA, LLC'S OPPOSITION TO DEFENDANT DAVID KOONAR'S MOTION TO DISMISS UNDER THE DOCTRINE OF FORUM NON CONVENIENS** |

## I.     INTRODUCTION

Plaintiff, AMA Multimedia, LLC ("AMA" or "Plaintiff") respectfully asks this Court to deny Defendant David Koonar's Motion to Dismiss pursuant to the doctrine of Forum Non Conveniens as the entirety of his request is based on an irrelevant "forum selection clause" contained in a Content Partnership Agreement ("CPA") that is not applicable to the allegations by AMA in this case. Koonar's reliance on the CPA is misplaced and frivolous, as explained below, and dismissal is unwarranted.

## II. RELEVANT FACTUAL BACKGROUND

The facts relevant to Koonar's request under Forum Non Conveniens are the same facts relevant to the Motions to Stay filed by NetMedia Services, Inc., GLP, 5, Inc. and Sagan Ltd. Therefore, AMA incorporates its prior Oppositions (Docs. 33 and 52) herein in lieu of repeating the relevant factual backgrounds. AMA further incorporates its recently-filed Opposition to Koonar's Motion to Stay (Doc. 66) by this reference.

## III. LEGAL ARGUMENT

### A. The Forum Selection Clause Does Not Apply to AMA's Copyright Infringement Claims.

The common-law doctrine of forum non conveniens has continuing application only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S. Ct. 1184, 167 L.Ed.2d 15 (2007). For the federal court system, Congress codified the doctrine and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.")[1] *Id.*

Dismissal for forum non conveniens reflects a broad range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the

---

[1] § 1404(a) transfers are different than dismissals on the ground of forum non conveniens. Although the statute was drafted in accordance with the doctrine of forum non conveniens, it was intended to be a revision rather than a codification of the common law. District courts are given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of forum non conveniens. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S. Ct. 252, 264-65, 70 L.Ed.2d 419, 434 (1981)

- 2 -

adjudication of a dispute in a certain locality, including evidentiary problems, unavailability of witnesses, difficulty of coordinating multiple suits, need to interplead local parties, and location of evidence. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723, 116 S. Ct. 1712, 1724, 135 L.Ed.2d 1, 17, 9 Fla. L. Weekly Fed. S. 634 (1996). However, a forum non conveniens dismissal "den[ies] audience to a case on the merits," *Ruhrgas*, 526 U.S., at 585, 119 S. Ct. 1563, 143 L. Ed. 2d 760.  It is a determination that the merits should be adjudicated elsewhere. *See, American Dredging*, 510 U.S. 443, 454 114 S. Ct. 981, 127 L. Ed. 2d 285 (1993); *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148, 108 S. Ct. 1684, 100 L. Ed. 2d 127 (1988).

It is quite evident that Koonar, as well as any of the other Defendants, could not establish a traditional case for dismissal under the doctrine of forum non conveniens. Simply, the Barbados forum is not realistically or practically more convenient than the U.S.  Barbados does not solve any evidentiary problems, witness issues, or present a more necessary location for evidence.  So, the Defendants attempt to circumvent traditional issues of forum non conveniens by asserting a forum selection clause ("FSC") from a CPA, wherein AMA contracted with GIM Corp for use of specifically submitted promotional materials (none of which are at issue in this case).

The appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens. *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568, 580, 187 L.Ed.2d 487, 499-500, 24 Fla. L. Weekly Fed. S. 484 (2013).  A claim is subject to a forum selection clause if the claim "relates in some way to rights and duties enumerated in" a contract.  *Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 (9th Cir. 1988).  A forum selection clause could be enforced if a defendant asserts a contract-based defense to an infringement claim.  *Id.* However, to obtain dismissal on a forum selection clause, the party seeking enforcement of the clause must demonstrate that: (1) the clause was reasonably communicated; (2) the

clause was mandatory; and (3) the claims and parties involved in the suit are subject to the forum selection cause.  *Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009), *citing Philips v. Audio Active Ltd.,* 494 F.3d 378, 284 (2d Cir. 2007).  The party seeking to enforce the clause bears the burden of establishing these elements by a preponderance of the evidence.  *Id.*  Plaintiff's choice of forum "will not be disregarded unless the contract evinces agreement by the parties that his claims cannot be heard there," and the Court must "examine the substance of [a plaintiff's] claims as they relate to the precise language" in the clause at issue.  *Id.* at 90.

Here, the Defendants have failed to establish that they are parties to the CPA. **None** are named parties in the CPA – only GIM Corp is, yet GIM is not a defendant here. CPA §10.3 permits the CPA to be assigned to a GIM affiliate, parent, subsidiary, successor, or purchaser.[2]  Yet there has not been any evidence set forth to show that any of the named Defendants in this case qualify for assignment of the CPA, nor has there been any evidence of the existence of any such assignment.[3]  Koonar's role as President of GIM does not equate to him personally being a party to the CPA.

Looking at the language of the clause here, § 10.5 states that "[a]ny legal action arising out of or relating to the Agreement must be submitted to a court located in Barbados and the Parties submit to the jurisdiction of any such court."

---

[2] Defendants also fail to address how CPA § 10.3 assignment reconciles with the fact that GIM was granted a *nontransferable* license.

[3] Defendants make the bare assertion that Cyberweb is an "affiliate" but fail to provide any meaning or intention of the word "affiliate" in this context.
Black's Law Dictionary, 9th Ed, defines an "affiliate" as a corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation.  There is no such evidence here.  And, more importantly, if Cyberweb wishes to admit its "affiliation" with GIM and, thus, www.Porn.com, there is no need for this court to allow jurisdictional discovery before finding that Cyberweb, GIM, and the other named Defendants are all "affiliated with" Porn.com such that their interaction is inseparable for terms of an alter ego analysis.

- 4 -

In *Phillips,* the Court examined the phrase "arise out of" in a forum selection clause. The Court interpreted the phrase to mean "to originate from a specified source," rather than encompassing all claims that could have some possible relationship with the contract. *Phillips,* 494 F.3d at 389-90. The Court went on to conclude that the copyright claims did not arise out of the contract because the plaintiff asserted no rights or duties under the contract. *Id.* at 390-91. The fact that the contract was only relevant as a defense *did not* render the copyright claims to "arise out of" the contract. *Id.* at 391.

In this case, AMA's copyright claims similarly do not "arise out of" the CPA. Defendants want this Court to provide an expansive reach of the CPA, attempting to use the catch-phrase "relating to" the CPA instead of simply "arising out of" the CPA. Thus, they argue that their "license" defense covers any and all wrongdoing under the CPA. But a mere assertion of a "license" is not enough to invoke a forum selection clause; a license defense must have some merit to it. Infringement actions should not be dismissed or transferred under a forum selection clause unless the contract defense is non-frivolous. *Gen. Protecht Grp., Inc., v. Leviton Mfg. Co.,* 651 F.3d 1355, 1359 (Fed. Cir. 2011).

In *Gen. Protecht,* a patent infringement action, the Court balanced two competing issues in determining whether a forum selection clause was applicable. On the one hand, the existence of a license and a bare allegation that the license provided a defense to an infringement action would mean that every dispute between the parties would be subject to the forum selection clause. On the other hand, the party asserting the license defense should not be forced to establish *conclusively* that the license defense was valid as such efforts would render the forum selection clause meaningless. In order to reconcile these competing interests, the Court looked to whether the defense was non-frivolous. *Id.*

The fact that this matter is a copyright infringement case rather than a patent infringement case is immaterial. The issue is that Koonar makes a "frivolous" attempt to assert a license defense to hide behind widespread copying/copyright infringement.

As AMA has alleged, Defendants (Koonar included) obtained AMA copyrighted content on their own accord, without any knowledge of or authority from AMA. The CPA (which was entered by AMA's predecessor, SSC) granted GIM Corp., and only GIM Corp., a nontransferable license to promotional content that AMA "submits or provides" to it. Under §1.1 of the CPA, there is no question that the license rights are expressly limited to content given by AMA, and GIM Corp. has no rights to any other content/material owned by AMA. ("[n]o license to any other intellectual property of Licensor . . . is provided hereby.") Then, §1.3 again emphasizes the limitation of the license provided, stating "[a]ll rights in and to the Content not expressly licensed to Licensee under Section 1.1 are reserved to Licensor [AMA]."

The CPA clearly dictates that the Licensor (AMA) is to provide all content that can be used (§4.1) and that the Licensor has the *sole* responsibility for providing content to Licensee (§ 4.6 and Exhibit B). The CPA also clearly provides for four acceptable methods the Licensor/AMA would deliver content to the Licensee: file transfer, delivery of physical copies, delivery on a hard drive, or upload of content via PaidPerView account. *Id*. at Exhibit B. Further, the CPA states that the Licensor reserves the right to *not* provide Licensee with any content at all (§4.3), and AMA has no obligation for providing any specific amount of content (§4.4). Thus, the CPA requires that AMA must provide/upload content that can be "licensed" or "used" – there is nothing in the CPA that would ever allow Defendants to rampantly search the Internet for AMA's content and commandeer it as its own under a "License" usage or the CPA.

Defendants argue an overreaching (at best) definition of the word "provide" to justify their actions and that they had the "express right" under the CPA to *any* AMA content they could find anywhere on the Internet. However, there is simply *no* language in the CPA that justifies this position or even suggests that the Defendants can obtain AMA content on their own.

Importantly, AMA's lawsuit does *not* relate to any content that AMA affirmatively and overtly provided under the CPA. AMA's claims are specific to non-promotional videos that Defendants located elsewhere on the Internet and, on Defendant's own accord, took the videos and displayed them on Porn.com without AMA's knowledge. (The Defendants have not claimed that AMA knew of the use of these videos *and* there has been no attempt at compensation under the CPA for the use of these videos.) The Defendants furthermore covered up their actions by generating fake user data to conceal their actions and make it look *as if* third party users uploaded the infringed material.[4]

Further, it cannot be ignored that the CPA provides GIM with a *nontransferable* license. Nontransferable means that the license cannot be transferred to any other entity or individual without express consent of the Licensor [AMA]. The *nontransferable* license was for GIM's use only, permitting use of content on certain Websites **solely for the Purpose** (§1.1). The *Purpose* is clearly defined as allowing **GIM** to distribute the videos by streaming it and offering it for download to end users (CPA, Clause B). GIM does not operate and/or own the sites where the infringed videos were streamed. Defendants do. Defendants are now currently and feverishly attempting to force CPA participants into an entirely new agreement[5] arguing there is an ***implied*** license that grants the ***nontransferable*** license to a group of entities besides GIM.

Defendants admit that the CPA is "worthless" the way it is written because GIM does not own and operate the websites, while other entities stream/download the content to end users *(See DE 61, footnote 7).* The CPA presumes one entity (GIM) does both.

---

[4] Noteworthy, Defendants used AMA content on *internally generated* advertisements. Doc. No. 67. Such use of AMA content is also outside the CPA, which never discusses taking AMA's content to use it for advertising competing products.

[5] AMA has refused to sign the new CPA, which includes a forum selection clause of Seychelles, omission of the word *nontransferable* in the license, and is with an entirely different company than GIM or any named Defendant.

- 7 -

Contrary to what Defendants argue, AMA did not acquiesce and give rights to a web of companies to be applied at the convenience of Defendant Koonar. AMA granted a *nontransferable* license to a single entity, GIM, for GIM's use only. No other party has a license use or a "license defense," and even GIM could not stand with a straight face and defend its theft of AMA copyrighted works as having been "licensed." The CPA grants no such rights, making the license defense fabricated and frivolous.

Perhaps most importantly, the Barbados Court can easily see that GIM has admitted its own breach of contract by frivolously suing AMA and arguing its "license." In its Statement of Claims, GIM tells the Barbados Court that it gave "license rights" to Cyberweb, NetMedia, and the other Defendants (just to argue a claim), yet the face of the CPA clearly and unequivocally states that the CPA covers *nontransferable* license rights for content provided by AMA. Defendants' attempt to "force" their infringement activities into a CPA and a Barbados Court is so clearly improper. With this meritless, frivolous position, this Court simply should not find AMA's copyright infringement claims "related to" the CPA's forum selection clause in any manner.

**B.     Forum Selection Clause Is Unreasonable.**

A forum selection clause may be unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement of the clause will contravene a strong public policy of the forum in which the suit is brought. *Argueta v. Banco Mexicano*, 87 F.3d 320, 325 (9th Cir. 1996); *Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1140 (9th Cir. 2003); *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998). The party seeking to show unreasonableness "has a heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court." *Argueta*, *supra* at 325.

- 8 -

1   Defendants cite *Alt. Marine Const. Co, Inc. v. U.S. Distr. Ct. for W. Dist. Of Texas,* 134 S.Ct. 568 (2013) for the proposition that the clause should be given controlling weight in all but the most exceptional circumstances. However, *Alt. Marine's* ruling is specific to ***valid*** forum selection clauses.

*Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585 (1991) addresses whether a forum selection clause is actually valid. Such a clause is presumptively valid under federal law, but "in cases of form contracts, forum selection clauses are subject to judicial scrutiny for fundamental fairness." *Laasko v. Xerox Corp.*, 566 F. Supp. 2d 1018, 1021 (C.D. CA 2008)(citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991)). In *Carnival Cruise Lines*, the Supreme Court considered three factors in deciding whether the clause at issue violated "fundamental fairness," or: (a) whether the moving party is engaged in forum-shopping or otherwise trying to discourage potential plaintiffs from suing; (b) whether or not assent to the clause was the product of "fraud or overreaching"; and (c) whether the plaintiffs had notice of the forum selection clause. 499 U.S. at 595; *see also Bernikow v. Xerox Corp. Long-Term Disability Income Plan*, No. CV 06-2612, 2006 WL 2536590, at *2 (C.D. Cal. Aug. 26, 2006). The same principles and analysis apply to both foreign arbitration clauses and foreign forum selection clauses. *Sky Reefer*, 515 U.S. at 534; *Fireman's Fund*, 131 F.3d at 1336. Here, those four factors establish that the forum selection clause is unreasonable and lacks fundamental fairness.

First, the Defendants **are** engaged in forum-shopping and attempting to discourage potential plaintiffs from suing. Defendants first chose Barbados as a forum, and the Defendants now **force** Seychelles jurisdiction in their CPA agreements. Defendants **intentionally** pick jurisdictions in island countries (where they do not actually operate), far from their own operations and offices and geographically impractical from their counter-parties, to dissuade lawsuits by plaintiffs.

In every case reviewed of determining a valid clause, there is a determination of whether a "meaningful connection" to the jurisdiction exists. This needs to be more than just the mere registration of a company on paper. Here, Defendants admit that their real operations are in Windsor, Canada. All Declarations by Defense witnesses to date have been executed in Canada. The money for all corporations including the Barbados corporations (GIM and Cyberweb) are mailed to Canada, and GIM is headquartered in Canada. GIM's servers, particularly the ones responsible for PaidPerView.com related to the CPA, are located on servers and hosted in the United States. The only "connection" to Barbados is a written declaration from a third party witness, Kristen Richardson, that states GIM has offices in Barbados. Affiant Richardson has not disclosed any official positions with GIM and is not a listed director of GIM. Defendant Koonar is the director of GIM, and he resides and works in Canada. Conducting litigation in Barbados would mean throughout the entirety of the case, taking discovery would be done abroad through the Hague and the Central Authorities of Barbados and Canada. There would be no local evidence to the jurisdiction. The Barbados Court would have no real value in its evidentiary or subpoena power. This is precisely what Defendants *want*, and their strategy/defense by design reinforces the forum-shopping employed in this case.

Second, the Barbados forum effectively denies AMA its day in court. In addition to the issues above, AMA would be unable to compel trial testimony from any third party witnesses in Barbados, including witnesses from Defendants' U.S.-based vendors involved in the display of AMA's copyrighted content. Without such witnesses, AMA cannot present a case. It would be certain impossibility to litigate this case in Barbados, largely by Defendants' design.[6] The simple fact is the Defendants are **not** in Barbados.

---

[6] In the new CPA, Defendants call for a jurisdiction in Seychelles, also where they have no operations. The new Traffic Force agreement switched jurisdiction from Canada to Seychelles. There are few, if any, locations in the world farther from Defendant's headquarters in Windsor, Canada than the Republic of Seychelles.

Third, any assent attributable to AMA (and SSC) would be over-reaching at best. The Choice of Law provision is obscured in the on-line form contract. GIM never bothered to ensure the end user who is clicking "I Agree" actually contains the binding authority to enter into the agreement.

Last, AMA did not have any notice or awareness of the forum selection clause. The contract was never formally assigned by SSC to AMA, and neither SSC nor AMA were provided an executed copy of the CPA. The CPA was executed by a non-agent independent contractor. Defendants did *not* provide AMA a copy of the CPA upon AMA's use of SSC credentials and account. Similarly, the Defendants did not even discover the details of the CPA until a lawsuit was imminent. *See,* Doc. 45-2 (Bradbury's own Declaration). They merely state the contract was linked after login. The users logging in to upload videos are responsible for data entry and are responsible for work that is menial in nature. The Defendants argue that notice and awareness of the forum selection clause was a link on PaidPerView.com to the CPA on a separate web page (where the forum selection clause was buried in the fine print).

For all of these reasons, the forum selection clause here is unreasonable and, therefore, should not be used as a basis for dismissal of the current proceedings.

## IV. CONCLUSION

For the reason stated herein, AMA has stated copyright infringement claims against the Defendants that relate to materials and content acquired by the Defendants and published by them outside of the CPA. The claims do not arise out of the CPA but stand independent of any "license" provisions under the CPA. Therefore, the CPA's forum selection clause does not apply here. The forum selection clause is also so unreasonable as not to be upheld, and dismissal for forum non conveniens is improper on both of these grounds.

DATED this 10th day of October, 2016.

**MANOLIO & FIRESTONE, PLC**

By: /s/ Veronica L. Manolio
Veronica L. Manolio
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of October, 2016, I electronically transmitted the foregoing document to the Clerk's office using the CM/ECF system for filing. Copies will be transmitted via CM/ECF to the following recipients:

Erica J. Van Loon
Glaser Weil Fink Howard Avchen & Shapiro LLP
10250 Constellation Blvd.
Los Angeles, CA 90067
evanloon@glaserweil.com
*Attorneys for Defendants David Koonar,
Sagan Limited, GLP 5, Inc. and NetMedia Services Inc.*

By: /s/ Gina Murphy

- 12 -