**Glaser Weil**

1  ERICA J. VAN LOON (admitted *Pro Hac Vice*)
   evanloon@glaserweil.com
2  GLASER WEIL FINK HOWARD
3    AVCHEN & SHAPIRO LLP
   10250 Constellation Boulevard, 19th Floor
4  Los Angeles, California 90067
5  Telephone:  (310) 553-3000
   Facsimile:   (310) 556-2920
6
   Attorney for Defendants Cyberweb Ltd., David Koonar,
7  Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.

8
   IN THE UNITED STATES DISTRICT COURT
9  DISTRICT OF ARIZONA

10   AMA MULTIMEDIA LLC, a Nevada          CASE NO.: CV16-1269 PHX DGC
     limited liability company,
11                                         Hon. David G. Campbell
12                    Plaintiff,
                                           **MEMORANDUM OF POINTS AND**
13   v.                                    **AUTHORITIES IN SUPPORT OF**
                                           **DEFENDANT CYBERWEB**
14                                         **LIMITED'S MOTION TO DISMISS**
15   SAGAN LIMITED, a Republic of          **FOR LACK OF JURISDICTION OR**
     Seychelles company, individually and d/b/a   **FORUM NON CONVENIENS, OR TO**
16   PORN.COM; CYBERWEB LTD., formerly     **STAY PROCEEDINGS**
     MXN LTD., a Barbados Company,
17   individually and d/b/a PORN.COM;      **ORAL ARGUMENT REQUESTED**
     NETMEDIA SERVICES INC., a Canadian
18   Company, individually and d/b/a
     PORN.COM; GLP 5, Inc., a Michigan
19   Company individually and d/b/a
     Trafficforce.com; DAVID KOONAR, an
20   individual; and John Does 1-20,
21
                      Defendants.
22

23

24

25

26

27

28

1235146

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION AND STATEMENT OF RELEVANT FACTS ....................... 1

II.   ARGUMENT .................................................................................................. 2

    A.    This Court Lacks Personal Jurisdiction Over Cyberweb ............................ 2

        1.    Cyberweb Is Not Subject To Specific Jurisdiction ........................... 2

            a.    Purposeful Direction ................................................. 3

            b.    Causation ................................................................... 4

            c.    Reasonableness ......................................................... 4

    B.    If The Court Concludes It Has Jurisdiction Over Cyberweb, It Must Dismiss This Action Under The Doctrine Of *Forum Non Conveniens* ........ 6

        1.    Cyberweb Can Enforce The Forum Selection Clause ....................... 6

        2.    The Forum Selection Clause Applies to AMA's Claims .................. 7

            a.    The proper inquiry is whether AMA's claims relate to any aspect of the parties' relationship ............................ 7

            b.    The CPA expressly governs AMA's claims ......................... 9

            c.    Cyberweb's license under the CPA applies to the conduct alleged by AMA ...................................................... 10

    C.    If The Court Does Not Dismiss This Action It Should Stay It ................... 12

        1.    The Court Should Stay This Action Under *Leyva* ........................... 12

        2.    The Court Should Stay This Action Under *Colorado River* ........... 14

III.  CONCLUSION ............................................................................................. 17

1235146

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*40235 Washington St. Corp. v. Lusardi*,
   976 F.2d 587 (9th Cir. 1992)....................................................................15

*Am. Hotel & Lodging Ass'n v. City of Los Angeles*,
   2015 WL 10791930 (C.D. Cal. Nov. 5, 2015)..........................................14

*Atari Corp. v. Ernst & Whinney*,
   981 F.2d 1025 (9th Cir. 1992).................................................................9, 10

*Atlantic Marine Coast, Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*,
   134 S. Ct. 568 (2013) ...................................................................................2

*Calder v. Jones*,
   465 U.S. 783 (1984).................................................................................3, 4

*Cedars-Sinai Medical Center v. Global Excel Management, Inc.*,
   2009 WL 7322253 (C.D. Cal. 2009)...........................................................8

*CMAX, Inc. v. Hall*,
   300 F.2d 265 (9th Cir. 1962).....................................................................13

*Colorado River Water Conservation Dist. v. U.S.*,
   424 U.S. 800 (1976) .........................................................................2, 14, 15

*CRC Info. Sys., Inc. v. Quebecor World (USA), Inc.*,
   Case No. 03-cv-0591, ECF No. 33 (D. Ariz. July 21, 2003) .................15, 16

*Doe v. Am. Nat'l Red Cross*,
   112 F.3d 1048 (9th Cir. 1997).....................................................................4

*Dole Foods Co. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002).....................................................................5

*Effects Assoc., Inc. v. Cohen*,
   908 F.2d 555 (9th Cir. 1990).......................................................................7

*Fontes v. Time Warner Cable Inc.*,
   2015 WL 9272790 (C.D. Cal. Dec. 17, 2015) ..........................................14

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*,
   651 F.3d 1355 (Fed. Cir. 2011)...........................................................7, 8, 9

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007).......................................................................6

*Houston Cas. Co. v. Metheny*,
   2016 WL 615651 (E.D. Cal. Feb. 16, 2016) .............................................14

*Intel Corp. v. Advanced Micro Devices, Inc.*,

ii

MPA ISO DEFENDANT CYBERWEB LIMITED'S MOTION TO DISMISS FOR LACK OF JURISDICTION OR
FORUM NON CONVENIENS, OR TO STAY PROCEEDINGS

1235146

12 F.3d 908 (9th Cir. 1993) .................................................................. 2, 15, 16

*Keane Dealer Servs., Inc. v. Harts*,
968 F. Supp. 944 (S.D.N.Y. 1997) .................................................................. 7

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
342 U.S. 180 (1952) .................................................................................... 14

*Leyva v. Certified Grocers of California, Ltd.*,
593 F.2d 857 (9th Cir. 1979) ...................................................... 2, 12, 13, 14

*Manetti–Farrow, Inc. v. Gucci Am.*, Inc.,
858 F.2d 509 (9th Cir. 1988) .......................................................... 6, 8, 9, 10

*Mavrix Photo, Inc. v. Brand Tech., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ....................................................................... 3

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.*,
708 F.2d 1458 (9th Cir. 1983) ....................................................................... 8

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
460 U.S. 1 (1983) ........................................................................................ 15

*Nakash v. Marciano*,
882 F.2d 1411 (9th Cir. 1989) ..................................................................... 16

*Neuromechanical, LLC v. Kiro Kids Pty. Ltd.*,
2011 WL 333337 (D. Ariz. Jan. 31, 2011) .................................................... 4

*NVT Tech., Inc. v. U.S.*,
370 F.3d 1153 (Fed. Cir. 2004) ................................................................... 12

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998) ....................................................................... 4

*Ross Small v. GE Capital, Inc.*,
2016 WL 4502460 (C.D. Cal. June 9, 2016) ............................................... 14

*Sawyer v. Bill Me Later, Inc.*,
2011 WL 771872 (C.D. Cal. Oct. 21, 2011) ................................................... 7

*Schoenduve Corp. v. Lucent Technologies, Inc.*,
442 F.3d 727 (9th Cir. 2006) ..................................................................... 8, 9

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ......................................................................... 3

*Seven Arts Pictures PLC v. Fireworks Entm't, Inc.*,
244 F. App'x 836 (9th Cir. 2007) ................................................................ 15

*Seven Arts Pictures PLC v. Fireworks Entm't, Inc.*,
Case No. 05-cv-2905, ECF No. 38 (C.D. Cal. Aug. 16, 2005) ................. 15, 16

*Yang Ming Marine v. Okamoto Freighters Ltd.*,
259 F.3d 1086 (9th Cir. 2001) ................................................................. 9, 10

**Glaser Weil**

iii

MPA ISO DEFENDANT CYBERWEB LIMITED'S MOTION TO DISMISS FOR LACK OF JURISDICTION OR
FORUM NON CONVENIENS, OR TO STAY PROCEEDINGS

1235146

## STATE CASES

*Lawyers' Fund for Client Prot. of State of N.Y. v. Bank Leumi Trust Co. of N.Y.*,
94 N.Y.2d 398 (2000) ................................................................................................ 12

iv

1235146

Defendant Cyberweb Ltd. ("Cyberweb") hereby submits this memorandum of points and authorities in support of its motion to dismiss plaintiff AMA Multimedia LLC's ("AMA") First Amended Complaint, or in the alternative to stay proceedings pending resolution of a related action pending before the Supreme Court of Barbados, *Cyberweb LTD, et al. v. AMA Multimedia LLC, et al.*, Claim No. CV600-2016 ("Barbados Action").[1]

# I.   INTRODUCTION AND STATEMENT OF RELEVANT FACTS

AMA's First Amended Complaint ("FAC") fails to allege any evidence to support a finding of personal jurisdiction over Cyberweb.[2] Cyberweb does not have any contacts (let alone substantial ones) with Arizona. Cyberweb is incorporated and has its principal place of business in Barbados. Declaration of Kristen Richardson In Support Of Cyberweb's Motion To Dismiss Or Stay Proceedings ("Richardson Decl.") at ¶ 2.  Cyberweb does not have any bank accounts, property interests, offices or employees in the United States, nor does it own or lease equipment in the United States. *Id*. Accordingly, the Court does not have personal jurisdiction over Cyberweb.

And even if the Court had personal jurisdiction over Cyberweb (which it does not), it would be required to dismiss this action under the doctrine of *forum non conveniens* pursuant to the forum selection clause in the Content Partner Revenue Sharing Agreement ("CPA") between AMA and G.I.M. Corp. ("GIM"). Under the CPA, AMA granted GIM (and its affiliates) the right to use, publish, display and distribute AMA's copyrighted content, including the materials at issue in this action. The CPA states that "any legal action arising out of or relating to this Agreement must be instituted in a court located in Barbados and the Parties submit to the jurisdiction of any such court."  ECF No. 27-3, Exh. 5 (CPA) at ¶ 10.5. Cyberweb is an affiliate of GIM, and under Ninth Circuit law is entitled to enforce the forum

---

[1]Counsel for Cyberweb met and conferred with AMA's counsel regarding this motion on October 11, 2016. Declaration of Erica J. Van Loon In Support of Cyberweb's Motion To Dismiss Or Stay Proceedings ("Van Loon Decl.") at ¶ 2, Exh. A.

[2]Defendants David Koonar, GLP 5, Inc., Netmedia Services Inc., and Sagan Limited (collectively, with Cyberweb, "Defendants") have also filed motions to dismiss or stay this action. *See* ECF. Nos. 27, 42, 49.

Glaser Weil

1235146

selection clause as a related party. Richardson Decl. at ¶¶ 3-4. Moreover, the instant action clearly arises out of or relates to the CPA, because the CPA expressly governs and limits Cyberweb's liability to AMA for any wrongful conduct (not just breach of the CPA), and the CPA provides Cyberweb with a license defense. Accordingly, under *Atlantic Marine Coast* this action must be dismissed. *Atlantic Marine Coast, Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas,* 134 S. Ct. 568, 574 (2013) (holding that a forum selection clause can be enforced under the doctrine of *forum non conveniens,* and stating the existence of a forum-selection clause "represents [the parties] agreement as to the most proper forum, and should be 'given controlling weight in all but the most exceptional cases.'") (internal citations omitted).

Finally, if the court does not dismiss this action it should stay it.  Defendants have filed a parallel action in the Supreme Court of Barbados, seeking injunctive relief to restrain anticipatory breach of contract or breach of the CPA. ECF No. 32-4 (Silverman Decl.), Exh. F. The Barbados claims require that court to adjudicate whether Defendants have a license to use the AMA materials that are the subject of AMA's copyright claim. It would be grossly inefficient to allow this action to proceed during the pendency of the Barbados Action. Moreover, *Intel*, the primary case relied upon by AMA, is **not** applicable when the parallel actions is in a foreign court. Accordingly, a stay of this action is appropriate under *Leyva* and *Colorado River*. *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) (finding that a trial court may stay an action pending resolution of an independent proceeding if a stay would be efficient and fair); *Colorado River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 818-19 (1976)  (stating that a district court may stay a federal suit in light of concurrent proceedings for reasons of "wise judicial administration, given regard to conservation of judicial resources and comprehensive disposition of litigation.").

## II.   ARGUMENT

### A.   This Court Lacks Personal Jurisdiction Over Cyberweb

#### 1.   Cyberweb Is Not Subject To Specific Jurisdiction

To determine whether a court has specific jurisdiction over a defendant, the Ninth Circuit uses a three-part test:

Glaser Weil

1235146

1      (1) the non-resident defendant must purposefully direct his activities or consummate

2  some transaction with the forum or resident thereof; or perform some act by which he

3  purposefully avails himself of the privilege of conducting activities in the forum, thereby

4  invoking the benefits and protections of its laws; (2) the claim must be one which arises out

5  of defendant's forum-related activities; and (3) the exercise of personal jurisdiction must

6  comport with fair play and substantial justice, i.e. it must be reasonable.

7      *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004). The

8  plaintiff bears the burden of establishing the first two prongs of the test before the burden

9  shifts to the defendant to show that the exercise of specific personal jurisdiction is

10  unreasonable. *Id.*

11             a.    **Purposeful Direction**

12      In tort cases, the inquiry under the first prong is whether a defendant purposefully

13  directed his activities at the forum state. *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d

14  1218, 1228 (9th Cir. 2011) (applying purposeful direction analysis to a copyright

15  infringement action). The courts evaluate purposeful direction under the *Calder* effects test,

16  which "requires that the defendant allegedly have (1) committed an intentional act, (2)

17  expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

18  suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. AMA has failed to meet the

19  purposeful direction test.

20      First, AMA does not specifically allege that Cyberweb committed any intentional act.

21  It makes allegations with regard to Defendants collectively, and such allegations have no

22  probative value. *Calder v. Jones,* 465 U.S. 783, 790 (1984). In fact, Cyberweb has committed

23  no intentional acts directed at Arizona. It has no offices or employees in the United States, nor

24  does it own or lease equipment in the United States.  Richardson Decl. at ¶ 2.

25      Second, AMA fails to allege any intentional acts of Cyberweb that were expressly

26  aimed at Arizona. Indeed, AMA fails to allege any specific intentional acts by Cyberweb.

27  And among the general allegations, the only Arizona-specific allegation is that Porn.com uses

28  the servers of an Arizona based company, Limelight. ECF No. 16 (FAC) at ¶ 10. However,

Glaser Weil

AMA admits that Porn.com does not have a contract with Limelight. ECF No. 32-2 (Silverman Decl.) at ¶¶ 11, 14 (Limelight services are provided through Reflected Networks, and AMA, a Reflected customer, does not contract with Limelight). Thus, AMA fails to make a showing of express aiming. *See Neuromechanical, LLC v. Kiro Kids Pty. Ltd.*, 2011 WL 333337, at *3 (D. Ariz. Jan. 31, 2011) (finding the court lacked personal jurisdiction where defendant's nation-wide advertisements were not expressly aimed at Arizona residents).

Finally, even if AMA could establish the first two prongs of the *Calder* test (which it cannot), AMA cannot establish it suffered any harm in Arizona as a result of any alleged intentional act of Cyberweb. There is no allegation that Cyberweb participated in or directed any specific activity that harmed AMA. In addition, AMA has virtually no connection with this State and thus could not have suffered harm here. When the bad act occurred in cyberspace and did not specifically target any user, the harm is deemed to be suffered where the corporation maintained its principal place of business. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). Here, AMA admits that it is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada. ECF No. 16 (FAC) at ¶ 1. It distributes its products through DVD sales and via its websites. *Id.* at ¶ 28. The alleged bad acts occurred in cyberspace and did not specifically target Arizona. *See id.* at ¶¶ 109, 114, 116, 130-136, 141-147, 151-153. Applying Ninth Circuit precedent, no alleged harm was suffered by AMA in Arizona. Thus, AMA cannot establish it suffered any harm in this forum as a result of Cyberweb's alleged intentional acts.

In sum, AMA fails to meet its burden of establishing purposeful direction. Accordingly, this Court lacks personal jurisdiction over Cyberweb.

### b.  Causation

As AMA has not established that Cyberweb has any contacts with the state of Arizona, or that it committed any act expressly aimed at Arizona, AMA cannot establish "but for" causation. *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997).

### c.  Reasonableness

Exercising jurisdiction over Cyberweb would be completely unreasonable. In

4

Glaser Weil

determining whether jurisdiction is reasonable, the Ninth circuit considers seven factors:

> (1) the extent of the defendant's purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Foods Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002).

Here, none of the factors support exercising jurisdiction over Cyberweb. First, as shown above, AMA fails to establish that Cyberweb has directed any activities at the forum. Cyberweb has no property, offices or employees in Arizona. Richardson Decl. at ¶ 2. Thus, Cyberweb has not purposefully injected itself into this State's affairs.

Second, the burden on Cyberweb to litigate this matter in Arizona is substantial. Cyberweb is located in Barbados. *Id.* It would be burdensome and costly for Cyberweb principals to travel to Arizona for trial and other proceedings in this case.

Third, the home forum of Cyberweb, Barbados, has a far more compelling interest in regulating Cyberweb's behavior. Barbados has a sovereign interest over Cyberweb.

Fourth, Arizona does not possess a particular interest in adjudicating this dispute. No party in this action is organized under the laws of Arizona or has its principal place of business in Arizona. And, of course, this State has no interest in injecting itself into what is at root a contractual dispute that (as discussed below) is the province of the Barbados court.

Fifth, this Court would be the least judicially efficient forum for resolution of the dispute. No party is organized or has its principal place of business in this State, the alleged harm did not occur in this State, and no Arizona law is implicated in this action. Further, as discussed below, any dispute (such as this one) arising out of or related to the CPA or the actions of these parties is exclusively subject to Barbados law, jurisdiction and venue.

Sixth, AMA is incorporated, and has its principal place of business, in Nevada. ECF No. 16 (FAC) at ¶ 1. AMA has no special tie to Arizona, nor did the alleged harm occur there.

Finally, given the contractual issue argued below, an alternative forum clearly exists in which defendants' right to use the subject content can be determined.

5

1235146

All seven factors favor Cyberweb. It would be unreasonable to exercise jurisdiction.

**B.**   **If The Court Concludes It Has Jurisdiction Over Cyberweb, It Must**

**Dismiss This Action Under The Doctrine Of *Forum Non Conveniens***

**1.**   **Cyberweb Can Enforce The Forum Selection Clause**

Under the CPA, AMA granted GIM (and its affiliates) the right to use, publish, display and distribute AMA's copyrighted content, including the materials at issue in this action. ECF No. 27-3, Exh. 5 (CPA) at ¶ 1.1. Section 10.5 of the CPA contains a forum selection clause stating as follows:

> This Agreement shall be governed by and construed in accordance with the laws of Barbados, without regard to conflicts of law principles. Any legal action **arising out of or relating to this Agreement** must be instituted in a court located in Barbados and the Parties submit to the jurisdiction of any such court.

*Id.* at ¶ 10.5 (emphasis added).  For multiple reasons, Cyberweb can enforce this forum selection clause.

First, the CPA expressly states that it applies to affiliates of GIM, at GIM's discretion:

> Licensee may assign this Agreement without consent to an affiliate, parent, or subsidiary . . . This Agreement shall be binding upon, inure to the benefit of, and be enforceable by and against the successors and permitted assigns of the parties to this Agreement.

*Id.* at ¶ 10.3.  Cyberweb is a GIM affiliate, and thus can enforce the forum selection clause in that capacity. Richardson Declaration at ¶¶ 3-4.

Second, under Ninth Circuit authority Cyberweb can enforce the forum selection clause because its alleged conduct is (by AMA's own admission) closely related to the subject matter of the CPA. *Manetti–Farrow, Inc. v. Gucci Am.*, Inc., 858 F.2d 509, 514 n.5 (9th Cir. 1988) ("the alleged conduct of the nonparties is so closely related to the contractual relationship that the forum selection clause applies to all defendants."); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) ("The forum selection clauses apply equally to [non-signatories] BVNA and BV Canada because any transactions between those entities and Holland America took place as part of the larger contractual relationship between Holland America and Bureau Veritas.").

Glaser Weil

Third, Cyberweb can enforce the forum selection clause as an implied licensee under the CPA. The CPA states that GIM may distribute AMA's content to any website with ads controlled by Traffic Force. ECF No. 27-3, Exh. 5 (CPA) at ¶ 1.1. There is no requirement that GIM own the websites. Thus, website operators must have an implied license; otherwise the CPA would be worthless. *Effects Assoc., Inc. v. Cohen*, 908 F.2d 555, 558-559 (9th Cir. 1990) (implied license exists where contract or conduct would make no sense without it). AMA's long acquiescence to the manner in which its content was distributed also demonstrates the existence of an implied license. *Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997) (lack of objection creates implied license).

Fourth, Cyberweb can enforce the forum selection clause as an agent of GIM or a third-party beneficiary. *Sawyer v. Bill Me Later, Inc.*, 2011 WL 771872 (C.D. Cal. Oct. 21, 2011) ("In order to compel enforcement of the forum selection clause, a nonsignatory to the contract must be: (1) a third-party beneficiary to the contract; (2) a successor in interest to the contract; or (3) an agent intended to benefit from the clause."). The CPA expressly contemplates that actions under the contract will be conducted by GIM's agents. ECF No. 27-3, Exh. 5 (CPA) at ¶ 6.2 ("all actions taken by Licensee, its employees and agents, with respect to the Content or the relationship contemplated by this Agreement shall comply with applicable law."). For these reasons, Cyberweb has standing to enforce the forum selection clause.[3]

**2.     The Forum Selection Clause Applies to AMA's Claims**

     **a.     The Proper Inquiry Is Whether AMA's Claims Relate To Any Aspect Of The Parties' Relationship**

The Court has noted that in *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011), the Federal Circuit required that the party seeking to enforce the forum selection clause raise "a non-frivolous dispute regarding the scope of a patent license." ECF No. 64 at 2. Cyberweb has searched for and failed to locate any Ninth Circuit authority

_____

[3] In addition, AMA alleges that Defendants are alter egos of each other and of GIM.  AMA cannot now argue that they are separate entities for purposes of the CPA.

MPA ISO DEFENDANT CYBERWEB LIMITED'S MOTION TO DISMISS FOR LACK OF JURISDICTION OR
FORUM NON-CONVENIENS, OR TO STAY PROCEEDINGS

Glaser Weil

1235146

1   addressing this case, nor has Cyberweb located any Ninth Circuit authority in the forum

2   selection clause context assessing the persuasiveness of a license defense.  In addition, as

3   discussed below, *Gen. Protecht* cannot be reconciled with Ninth Circuit authority.

4        Under *Manetti-Farrow*, claims are within the scope of an arbitration clause as long as

5   they require interpretation of the contract. *Manetti–Farrow*, 858 F.2d at 514 ("We must,

6   therefore, determine if Manetti-Farrow's claims require interpretation of the contract."); *see*

7   *also Cedars-Sinai Medical Center v. Global Excel Management, Inc.*, 2009 WL 7322253

8   (C.D. Cal. Dec. 30, 2009) (forum selection clause applied to claims because they required

9   "some interpretation" of the contract). A determination of whether a defense is frivolous

10  cannot be conducted without interpreting the license. Thus, *Gen. Protecht* is at odds with

11  Ninth Circuit authority.

12        Moreover, even the *Manetti-Farrow* standard overstates the burden on Cyberweb.  The

13  scope of the claims governed by a forum selection clause depends upon the language used in

14  the clause. *Manetti-Farrow* involved a narrow forum selection clause limited to claims

15  "regarding interpretation or fulfillment" of the contract. *Manetti-Farrow*, 858 F.3d at 510.

16  The Ninth Circuit has held that forum selection clauses of the type at issue here (covering

17  claims "arising out of or relating to" the CPA) must be construed more broadly, and apply to

18  **all aspects of the parties' relationship**. *Schoenduve Corp. v. Lucent Technologies, Inc.*, 442

19  F.3d 727, 732 (9th Cir. 2006) ("Intending to reach all aspects of their relationship, Lucent

20  required the parties to arbitrate any dispute arising out of or relating to the MRA."); *see also*

21  *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)

22  (clauses that include "relating to" language are much broader than those without).[4]  Thus,

23  while the Federal Circuit in *Gen. Protecht* sought to avoid a situation in which "virtually

24  every subsequent dispute between contracting parties would trigger such a forum selection

25  ─────────────

    [4] *Schoenduve* and *Mediterranean Enterprises* involve arbitration clauses. However, case law
26  involving the scope of arbitration clauses applies with equal force to forum selection clauses.
    *Manetti–Farrow*, 858 F.2d at 514 n.4 ("Although Mediterranean involved interpretation of
27  the scope of an arbitration clause, we apply its analysis here because an agreement to
28  arbitrate is actually a specialized forum selection clause.").

1235146

clause," under Ninth Circuit law the broad forum selection clause at issue here should be interpreted in precisely that manner. AMA's claims against Cyberweb clearly relate to the relationship between AMA and Defendants, and in fact relate directly to the subject matter of the CPA. ECF No. 27-3, Exh. 5 (CPA) at B (Purpose of CPA is "provide the Content to end users of [websites] whose advertisements are controlled by the Traffic Force Advertising Management System."); Richardson Decl. at ¶ 5 (Cyberweb is an owner of Porn.com, and Traffic Force controls advertisements on Porn.com).  Accordingly, AMA's claims are subject to the CPA's broad forum selection clause.

### b.   The CPA Expressly Governs AMA's Claims

Regardless of which standard the Court applies (*Gen. Protecht*, *Manetti-Farrow*, or *Schoenduve*), the forum selection clause applies to AMA's claims because the CPA by its own terms expressly governs Cyberweb's liability to AMA for ***any*** wrongful conduct (not just breach of the CPA).

Section 7.1 of the CPA states:

> Licensee shall defend, indemnify and hold Licensor harmless from any and all loss, cost, liability, damage and expense (including reasonable attorneys' fees and other legal costs) incurred by Licensor arising out of or in connection with Licensee's breach of its obligations under this Agreement or a violation of the terms or conditions of this Agreement or ***any other act or omission of Licensee***. . . .

ECF No. 27-3, Exh. 5 (CPA) at ¶ 7.1 (emphasis added).  Under controlling Ninth Circuit law, this clause must be construed to cover AMA's claims against GIM and its affiliates.

As explained in *Yang Ming Marine v. Okamoto Freighters Ltd.*, 259 F.3d 1086, 1092 (9th Cir. 2001), under Ninth Circuit law "contract terms are to be given their ordinary meaning." And as the Ninth Circuit has recognized on multiple occasions, "[t]he plain, unambiguous meaning of 'indemnify' is not 'to compensate for losses caused by third parties,' but merely 'to compensate.'" *Id.* (quoting *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1032 (9th Cir. 1992)).  Thus, under Ninth Circuit law an indemnification clause will be presumed as a matter of law to cover direct claims between the parties, absent an express

Glaser Weil

statement to the contrary. *Yang Ming Marin Trans.*, 259 F.3d at 1092 ("Our holding in *Atari* forecloses Laufer's argument that it can only be forced to indemnify Yang Ming for payments made to third parties."); *Atari Corp.*, 981 F.2d at 1032 ("Atari could have limited its obligation to compensate Federated officers to actions brought by third parties, but it did not."). While Section 7.2 of the CPA (setting forth Licensor's obligations) is expressly limited to third party claims[5], this limitation is **conspicuously absent** from Section 7.1. Thus, under Ninth Circuit law, the court must construe Section 7.1 to apply to AMA's claims.

Similarly, the CPA's limitation of liability clause is broad and unrestricted, and thus applies to any claims AMA may assert against Defendants:

> Notwithstanding anything to the contrary in this Agreement, in no event shall licensee be liable to licensor for consequential, incidental, special or indirect damages, including but not limited to damages resulting from loss of business profits, information or goodwill or business interruption, even if licensee has been advised or is aware of the possibility.

ECF No. 27-3, Exh. 5 (CPA) at ¶ 7.3. Any Court adjudicating AMA's copyright claims will be required to interpret and apply this provision of the CPA. Accordingly, AMA's claims, at minimum, relate to the CPA, and are subject to the forum selection clause. *Manetti–Farrow*, 858 F.2d at 514 (claims are subject to forum selection clause if they "require interpretation of the contract.").

### c.   Cyberweb's License Under The CPA Applies To The Conduct Alleged By AMA

In this action, AMA alleges that Defendants uploaded the allegedly infringing content without AMA's approval or consent, thereby committing direct copyright infringement. ECF No. 16 (FAC) at ¶ 82. Even if Defendants had uploaded such content, Defendants would have the right to do so, by virtue of the rights granted to licensees under the CPA.

---

[5] ECF No. 27-3, Exh. 5 (CPA) at ¶ 7.2 ("Licensor shall indemnify and hold Licensee harmless from any and all losses, costs, liabilities, damages and expenses (including reasonable attorneys' fees and other legal costs) incurred by Licensee due to a suit or claim by a **third party** against Licensee . . . .") (emphasis added).

**Glaser Weil**

1235146

Section 1.1 of the CPA states as follows:

> Subject to the terms and conditions set forth in this Agreement, with respect to any and all Content that Licensor submits or **provides** to Licensee, Licensor grants Licensee a non-exclusive, nontransferable worldwide license during the Term to use, publish, display, and distribute the Content on the Website(s), solely for the Purpose.

ECF No. 27-3, Exh. 5 (CPA) at ¶ 1.1 (emphasis added). AMA has argued that materials made available on a website are not "provided" within the meaning of the CPA; however, the plain language of the CPA rebuts this notion. The CPA repeatedly refers to content that is "provided" from a website. *See, e.g.,* CPA at Background Section B ("Licensee desires to provide the Content to end users of a single/(group of) website(s) (the "Website(s)") on the Worldwide Web"), Section 1.4 ("Licensee agrees that it will only provide streaming services of the Content in both the public and private areas of the Website(s)"), and Section 5.1 (referring to "a secure system through which Content may be provided to users").

And contrary to AMA's assertion, Sections 4.1 and 4.6 of the CPA do not limit the means by which content can be "provided."

Section 4.1 does not define or limit the term "provide." Section 4.1 merely states that Licensor shall provide the Content in a "mutually agreed form." And while Exhibit A, referenced in Section 4.1, details minimum content requirements for DVDs, it also states that "delivery necessities for content with other origins may vary and can be discussed with the administrators of the program." *Id*. at ¶ 4.1

Section 4.6 states that "Licensor shall have the sole responsibility for providing, at its own expense, the Content to Licensee via one of the acceptable methods of delivery, as set forth in Exhibit B." *Id*. at ¶ 4.6. "Acceptable" methods are not exclusive methods. Acceptable methods are those to which GIM and its affiliates agree in advance. If the parties had wished to designate these methods as "exclusive" methods, they could have readily done so. The plain language of Section 4.6 does not support AMA's position.

Moreover, Section 3.9 of the CPA clearly contemplates that Defendants may obtain content from websites.  Section 3.9 states as follows:

> In the event that the Content **originates** and/or is associated **with an**

11

Glaser Weil

1   **existing website** associated with Licensor, Licensee may amongst its
2   various methodologies, direct traffic to any such website and Licensee
    shall be compensated for any revenues generated as a result of Licensee
    directing such traffic.

3   *Id.* at ¶ 3.9 (emphasis added).  As used in the CPA, the term "originate" refers to the method

4   by which AMA provides content to the licensees. This is apparent from Exhibit A to the CPA,

5   which states that "[t]he following outlines minimum content requirements and ideal

6   submission materials that pertain to content coming from DVD's, delivery necessities for

7   content with **other origins** may vary and can be discussed with the administrators of the

8   program." *Id.* at Exhibit A (emphasis added).  If the Court were to conclude that the CPA

9   does not apply to content that originates from a website, this would render Section 3.9

10  superfluous and would thus be error. *NVT Tech., Inc. v. U.S.*, 370 F.3d 1153, 1166 (Fed. Cir.

11  2004) (citing "the canon of contract interpretation that disfavors rendering terms

12  superfluous."); *Lawyers' Fund for Client Prot. of State of N.Y. v. Bank Leumi Trust Co. of

13  N.Y.*, 94 N.Y.2d 398, 404 (2000) (interpretation that would render contractual provision

14  superfluous is "unsupportable under standard principles of contract interpretation").[6]

15      For these reasons, Cyberweb's license under the CPA applies to the conduct alleged by

16  AMA, and AMA's claims are subject to the forum selection clause as "arising from or

17  relating to" the CPA.[7]

18  **C.    If The Court Does Not Dismiss This Action It Should Stay It**

19          **1.    The Court Should Stay This Action Under *Leyva***

20      In *Leyva*, truck drivers sued their employer for unpaid wages under the federal Fair

21

22  [6] While Section 3 of the CPA bears the heading "Compensation," Section 10.6 of the CPA
23  states that "Headings in this Agreement are for convenient reference only and shall not
    affect the interpretation or construction hereof." ECF No. 27-3, Exh. 5 (CPA) at ¶ 10.6.

24  [7] AMA's claims relate to the CPA because they concern the AMA-Cyberweb relationship,
25  and require a Court to interpret the CPA in order to determine the validity of Cyberweb's
    license defense.  AMA's claims arise under the CPA because they are governed by the
26  indemnification provision of Section 7.1, and they constitute a breach of the CPA under
    Section 6.1, which states that "[AMA] shall not at any time during the Term of this
27  Agreement do anything or authorize other parties to do anything contrary to the rights
28  licensed to [GIM] under this Agreement."). ECF No. 27-3, Exh. 5 (CPA) at ¶ 6.1.

Glaser Weil

1    Labor Standards Act and under their collective bargaining agreement. The district court

2    stayed both counts under the Federal Arbitration Act. On appeal, the Ninth Circuit held that

3    the collective bargaining count was subject to arbitration, but that the FLSA count was not.

4    The Ninth Circuit stated that under its inherent power to control its own docket a trial court

5    may properly stay an action pending resolution of an independent proceeding which bears

6    upon the case:

> [S]ound reasons may exist . . . to support the district court's
> determination to stay the action under the powers to control its own
> docket and to provide for the prompt and efficient determination of the
> cases pending before it. . . . . A trial court may, with propriety, find it is
> efficient for its own docket and the fairest course for the parties to enter
> a stay of an action before it, pending resolution of independent
> proceedings which bear upon the case. This rule applies whether the
> separate proceedings are judicial, administrative, or arbitral in
> character, and does not require that the issues in such proceedings are
> necessarily controlling of the action before the court.

13   *Leyva,* 593 F.2d at 863–64. When considering a stay, the Court should balance "the possible

14   damage which may result from the granting of a stay, the hardship or inequity which a party

15   may suffer in being required to go forward, and the orderly course of justice measured in

16   terms of the simplifying or complicating of issues, proof, and questions of law which could be

17   expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). These

18   factors support a stay here.

19        Prior to the filing of this action, named defendants Cyberweb, Netmedia and Sagan

20   collectively filed suit in the Supreme Court of Barbados against AMA and Adam Silverman

21   for injunctive relief to restrain anticipatory breach of the CPA or breach of the CPA.[8] ECF

22   No. 32-4 at Exh. F. GIM is also a party to the Barbados Action. Among other things, the

23   Barbados Action seeks a declaration that Defendants are licensed under the CPA to use the

24   AMA content that is the subject of AMA's copyright infringement claims in this action. ECF

25   No. 27-3 (Bradbury Decl., Exh. 4 at ¶ 4 (seeking "[a] Declaration that all of the Claimants

26   herein are, pursuant to the CPA, entitled to publicize and or distribute materials submitted,

_____

27   [8] GLP 5 and David Koonar were originally named as plaintiffs in the Barbados Action but

28   have since been removed as claimants. ECF No. 27-3 ("Bradbury Decl.") at ¶ 13.

13

MPA ISO DEFENDANT CYBERWEB LIMITED'S MOTION TO DISMISS FOR LACK OF JURISDICTION OR
FORUM NON-CONVENIENS, OR TO STAY PROCEEDINGS

1235146

Glaser Weil

provided or otherwise made available to the Claimants by the Defendants or either of them, including without limitation, materials as to which Defendants claim or otherwise assert copyright interests."). If Defendants prevail in the Barbados Action, AMA's copyright claims will no longer be viable.

A stay of this action pending resolution of the Barbados Action would be efficient for the Court's docket. As discussed above, the Barbados Action has, at a minimum, the potential to resolve this action. In fact, in light of the forum selection clause it is the only appropriate forum for the adjudication of this action. And a stay of this action would be fair to the parties. By agreeing to the forum selection clause, AMA expressly consented to the jurisdiction of the Barbados courts, and agreed that those courts were the sole forum for disputes relating to the CPA. If this action is neither dismissed nor stayed, Cyberweb will be deprived of the benefit of the CPA's forum selection clause, because this Court will address issues that, under the forum selection clause, are under the exclusive domain of the Barbados courts. Accordingly, under *Leyva* a stay of this action pending resolution of the Barbados Action would be appropriate. *See also Ross Small v. GE Capital, Inc.*, 2016 WL 4502460 (C.D. Cal. June 9, 2016) (applying *Leyva* and granting stay); *Houston Cas. Co. v. Metheny*, 2016 WL 615651 (E.D. Cal. Feb. 16, 2016) (same); *Fontes v. Time Warner Cable Inc.*, 2015 WL 9272790 (C.D. Cal. Dec. 17, 2015) (same); *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 2015 WL 10791930 (C.D. Cal. Nov. 5, 2015) (same).

### 2.    The Court Should Stay This Action Under *Colorado River*

A district court may stay a federal suit due to concurrent proceedings for reasons of "wise judicial administration, given regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River,* 424 U.S. at 818-19 (1976) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 183 (1952)). When analyzing whether "wise judicial administration" supports a decision to stay proceedings, courts consider six factors:

> (1) whether either the state or federal court has exercised jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the

14

Glaser Weil

1235146

forums obtained jurisdiction. . . . (5) whether federal or state law controls the decision on the merits; and (6) whether the state court can adequately protect the rights of the parties.

*40235 Washington St. Corp. v. Lusardi*, 976 F.2d 587, 588 (9th Cir. 1992) (citing *Colorado River*, 424 U.S. at 818-19; *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 23-26 (1983)). No single factor is dispositive. *Colorado River,* 424 U.S. at 818-19.

On facts similar to those in the instant case, courts in the Ninth Circuit have granted stays based on *Colorado River.*

For example, in *Seven Arts Pictures*, the district court stayed a copyright infringement action pending resolution of a Canadian contract interpretation action, even where the parties were not identical, because the domestic action was "inextricably related to the Canadian contract action." *Seven Arts Pictures PLC v. Fireworks Entm't, Inc.*, 244 F. App'x 836, 837 (9th Cir. 2007) (denying the plaintiff/appellant's request for reconsideration of district court's denial of its motion to lift the stay). The district court noted that the "central issue in both [the present] case and the Canadian Action is a determination of the rights of each party pursuant to the [underlying agreements]," and applying the *Colorado River* factors, found a stay warranted. *Seven Arts Pictures PLC v. Fireworks Entm't, Inc.*, Case No. 05-cv-2905, ECF No. 38 at 9 (C.D. Cal. Aug. 16, 2005).

Similarly, in *CRC,* this court granted a stay of proceedings in a copyright infringement action pending resolution of a Canadian contract matter interpreting a license agreement. *CRC Info. Sys., Inc. v. Quebecor World (USA), Inc.*, Case No. 03-cv-0591, ECF No. 33 at 10-12 (D. Ariz. July 21, 2003). Applying the *Colorado River* factors, the *CRC* court found a stay was warranted because "Canadian law governs the contract's interpretation[;]" "the parties involved in the negotiation and execution of the license agreement [were] located in Ontario[;]" "the Ontario forum can adequately protect the parties' contractual rights[;]" and "it is unnecessary and imprudent to allow duplicative litigation." *Id* at 11-12.

Notably, the *Seven Arts Pictures* court held that the "substantial doubt" test set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993) did **not** apply when the parallel proceeding was in a foreign court. *Seven Arts Pictures PLC*, No. 05-cv-

15

Glaser Weil

1235146

2905, ECF No. 38 at 7 ("The circumstances here, however, involve a parallel federal and foreign case, not a federal and state case, and thus are not squarely governed by the restrictions set forth in *Minucci* and *Intel*."). Similarly, the court in *CRC* did **not** apply the "substantial doubt" test, and granted a stay even though it recognized the possibility that the Canadian action would not resolve the copyright claims asserted in federal court. *CRC Info. Sys.,* Case No. 03-cv-0591, ECF No. 33 at 11 ("If the license is determined to disallow QWUSA's software installations, the instant action would proceed on the merits of CRC's claims.").

Here, as in *CRC* and *Seven Arts Pictures*, a parallel proceeding is pending in a non-U.S. forum. As in *CRC* and *Seven Arts Pictures*, AMA and Cyberweb share a common interest in the interpretation of the license agreement at issue in the foreign proceeding because it would dictate each party's interests in the copyright matter. As in *CRC* and *Seven Arts Pictures*, the license agreement here is governed by the law of the non-U.S. forum. And as in *CRC* and *Seven Arts Pictures,* the copyright claim here is inextricably linked to the parallel proceeding because, as discussed above, the CPA provides a defense to AMA's copyright claims. In fact, in light of the forum selection clause the Barbados courts are the appropriate forum for the adjudication of the parties' rights under the CPA, and thus a stay is required in order to avoid piecemeal litigation and inconsistent results.[9]

Moreover, as in *CRC* and *Seven Arts Pictures* the non-U.S. forum here can adequately protect the parties' interest. AMA concedes that "a foreign court may apply U.S. copyright law." ECF No. 33 at 10 ("While a foreign court may apply U.S. copyright law, it cannot do so without jurisdiction over the parties.*"*). And AMA expressly consented to the jurisdiction of the Barbados courts when it agreed to the forum selection clause in the CPA. Cyberweb

---

[9]  In *Nakash v. Marciano* (cited in ECF No. 64 at 9), the Ninth Circuit recognized that two proceedings are "substantially similar" if they involve the same parties and relationship. *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (even though the state action focused on the wrongdoing of one party and the federal action focused on the wrongdoing of the other party, the actions were substantially similar because "[a]ll of these disputes concern how the respective parties have conducted themselves since Nakash purchased a portion of Guess.")

Glaser Weil

1235146

Decl., Exh. A at ¶10.5 ("Any legal action arising out of or relating to this Agreement must be instituted in a court located in Barbados and the Parties submit to the jurisdiction of any such court."). Further, the Barbados court is fully equipped to deal with and apply the law of another jurisdiction as necessary. ECF No. 45-1 ("Alert Decl.") at ¶ 14.

Finally, the instant action was filed *after* the Barbados Action was filed, and on the same day it was informally served on AMA. ECF No. 27-3 (Bradbury Decl., Ex. 4 (Barbados action filed on April 27, 2016); ECF No. 1 (instant action filed on April 28, 2016). Thus, the Barbados Action claims priority, weighing in favor of the Defendants' motions to stay proceedings. *See CRC*, Case No. 03-cv-0591, ECF No. 33 at 10-12.

Overall, "wise judicial administration" supports a decision to stay the instant proceeding until the Barbados court adjudicates the issues before it. Accordingly, Cyberweb's motion to stay should be granted in the interest of judicial efficiency.

## III.   CONCLUSION

Based on the foregoing, Cyberweb respectfully requests that this Court dismiss the First Amended Complaint as to Cyberweb, or in the alternative, grant this motion to stay the proceedings pending resolution of the Barbados Action.

DATED: October 13, 2016

Respectfully submitted,

GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP

By: /s/ Erica J. Van Loon
ERICA J. VAN LOON

*Attorney for Defendant Cyberweb Ltd., David Koonar, Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.*

MPA ISO DEFENDANT CYBERWEB LIMITED'S MOTION TO DISMISS FOR LACK OF JURISDICTION OR
FORUM NON-CONVENIENS, OR TO STAY PROCEEDINGS

1235146