ERICA J. VAN LOON (admitted *Pro Hac Vice*)
evanloon@glaserweil.com
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

*Attorney for Defendants Cyberweb Ltd., David Koonar,
Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| AMA MULTIMEDIA LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SAGAN LIMITED, a Republic of Seychelles company, individually and d/b/a PORN.COM; CYBERWEB LTD., formerly MXN LTD., a Barbados Company, individually and d/b/a PORN.COM; NETMEDIA SERVICES INC., a Canadian Company, individually and d/b/a PORN.COM; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; DAVID KOONAR, an individual; and John Does 1-20,<br><br>Defendants. | CASE NO.: CV16-1269 PHX DGC<br><br>Hon. David G. Campbell<br><br>**REPLY IN SUPPORT OF DEFENDANT DAVID KOONAR'S MOTION TO STAY**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................... 1

II. ARGUMENT .......................................................................................................... 1

    A.    Absence Of Substantial Doubt Is Not Required ............................................ 1

    B.    The Forum Selection Clause Applies To AMA's Claims ............................. 2

        1.    The Proper Inquiry Is Whether AMA's Claims Relate To Any Aspect Of The Parties' Relationship .................................................... 2

        2.    The CPA Expressly Governs AMA's Claims ..................................... 4

        3.    Defendants' License Applies To Content Provided From A Website ................................................................................................ 5

III. CONCLUSION ....................................................................................................... 8

REPLY ISO DEFENDANT DAVID KOONAR'S MOTION TO STAY

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Altvater Gessler–J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*,
    572 F.3d 86 (2d Cir. 2009) ................................................................................................ 5

*Atari Corp. v. Ernst & Whinney*,
    981 F.2d 1025 (9th Cir. 1992) .......................................................................................... 6

*Colorado River Water Conservation Dist. v. U.S.*,
    424 U.S. 800 (1976) ......................................................................................................... 2

*CRC Info. Sys., Inc. v. Quebencor World (USA) Inc.*,
    Case No. 03-cv-0591 (D. Ariz. July 21, 2003) ........................................................... 1, 10

*Cung Le v. Zuffa, LLC*,
    108 F. Supp. 3d 768 (N.D. Cal. 2015) ............................................................................. 5

*FutureSource LLC v. Reuters Ltd.*,
    312 F.3d 281 (7th Cir. 2002) ........................................................................................... 8

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*,
    651 F.3d 1355 (Fed. Cir. 2011) .................................................................................... 4, 5

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    12 F.3d 908 (9th Cir. 1993) ............................................................................................. 1

*LaCross v. Knight Transp., Inc.*,
    95 F. Supp. 3d 1199 (C.D. Cal. 2015) ......................................................................... 2, 4

*Lawyers' Fund for Client Prot. of State of N.Y. v. Bank Leumi Trust Co. of N.Y.*,
    94 N.Y.2d 398 (2000) ...................................................................................................... 9

*Leyva v. Certified Grocers of California, Ltd.*,
    593 F.2d 857 (9th Cir. 1979) ........................................................................................... 2

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
    858 F.2d 509 (9th Cir. 1988) .................................................................................. 3, 4, 5

*NVT Tech., Inc. v. U.S.*,
    370 F.3d 1153 (Fed. Cir. 2004) ....................................................................................... 9

*Phillips v. Audio Active Ltd.*,
    494 F.3d 378 (2d Cir. 2007) ............................................................................................ 5

*Schoenduve Corp. v. Lucent Tech., Inc.*,
    442 F.3d 727 (9th Cir. 2006) .................................................................................. 3, 4, 6

*Seven Arts Pictures PLC*,
    No. 05-cv-2905 (C.D. Cal. Aug. 16, 2005) ............................................................... 1, 10

*Yang Ming Marine v. Okamoto Freighters Ltd.*,
   259 F.3d 1086 (9th Cir.2001)......................................................................................6

**OTHER AUTHORITIES**

Thomas D. Selz, Melvin Simensky, Patricia Acton, Robert Lind,
   2 Entm't Law 3d: Legal Concepts and Bus. Practices § 9:131 (2015)..............................7

## I. INTRODUCTION

In its Opposition (ECF No. 66), AMA incorporates by reference its prior-filed Oppositions regarding the stay issue.[1] Accordingly, Defendant Koonar incorporates by reference its prior-filed responses and evidentiary objections to these AMA briefs. *See* ECF Nos. 45, 61.

Two additional arguments support Mr. Koonar's request and contradict AMA's arguments: 1) the *Intel* "substantial doubt" test does not apply here, and 2) AMA's claims are well within the scope of the CPA's forum selection clause.

## II. ARGUMENT

### A. Absence Of Substantial Doubt Is Not Required

The "substantial doubt" test set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993) does **not** apply here. As explained in *Seven Arts Pictures,* the "substantial doubt" test set forth in *Intel* does not apply when (as here) the parallel proceeding is in a *foreign* court. *Seven Arts Pictures PLC*, No. 05-cv-2905 (C.D. Cal. Aug. 16, 2005) (C.D. Cal. Aug. 16, 2005), ECF No. 38 at 7 ("The circumstances here, however, involve a parallel federal and foreign case, not a federal and state case, and thus are not squarely governed by the restrictions set forth in <u>Minucci</u> and *Intel*."). Similarly, the court in *CRC* also did not apply the "substantial doubt" test, and granted a stay even though it recognized the possibility that the Canadian action would not resolve the copyright claims asserted in federal court. *Id*. at 11 ("If the license is determined to disallow QWUSA's software installations, the instant action would proceed on the merits of CRC's claims.").

Accordingly, the possibility (in fact, strong likelihood) that the Barbados court's adjudication of Defendants' license defense will resolve this dispute is more than sufficient to support a stay of this action under both *Leyva v. Certified Grocers of California*, *Ltd*., 593 F.2d 857, 863–64 (9th Cir. 1979) and *Colorado River Water Conservation Dist. v. U.S.*, 424

---

[1] While Defendants filed a single motion seeking alternative relief, AMA has responded with separate Oppositions each addressing each alternate relief requested.


U.S. 800 (1976).

### B. The Forum Selection Clause Applies To AMA's Claims

#### 1. The Proper Inquiry Is Whether AMA's Claims Relate To Any Aspect Of The Parties' Relationship

Forum selection clauses differ in scope based on their precise wording. Under Ninth Circuit law, clauses including the words "relating to" are broader than those without:

> The scope of the claims governed by a forum selection clause depends [upon] the language used in the clause. . . . The Ninth Circuit has found that provisions using the phrases "arising under," "arising out of," and "arising hereunder" (collectively referred to as "arising under" language) should be narrowly construed to cover only those disputes "relating to the interpretation and performance of the contract itself." In contrast, provisions that include or add phrases such as "relating to" and "in connection with" (collectively referred to as "relating to" language) have a broader reach.

*LaCross v. Knight Transp., Inc.,* 95 F. Supp. 3d 1199, 1207 (C.D. Cal. 2015) (citations omitted).

The clause at issue here is a "relating to" clause. ECF No. 27-3, Ex. 5 at 10.5 ("Any legal action arising out of or relating to this Agreement must be instituted in a court located in Barbados . . . ."). Under Ninth Circuit law, this clause applies to **all aspects of the parties' relationship**. *Schoenduve Corp. v. Lucent Tech., Inc.*, 442 F.3d 727, 732 (9th Cir. 2006) ("Intending to reach all aspects of their relationship, Lucent required the parties to arbitrate any dispute arising out of or relating to the MRA."). [2] AMA's claims against Defendants clearly relate to the relationship between AMA and Defendants, and thus are subject to the CPA's forum selection clause.

The *Manetti-Farrow* standard, relied upon by AMA, is overly restrictive. Under *Manetti-Farrow*, claims are within the scope of an arbitration clause if they require

---

[2] *Schoenduve* involved an arbitration clause, but the Ninth Circuit has held that such authority applies with equal force to forum selection clauses. *See, e.g., Manetti-Farrow*, *Inc. v. Gucci America, Inc.,* 858 F.2d 509, 514 n. 4 (9th Cir. 1988) ("Although Mediterranean involved interpretation of the scope of an arbitration clause, we apply its analysis here because an agreement to arbitrate is actually a specialized forum selection clause.").

interpretation of the contract. *Manetti–Farrow*, 858 F.2d at 514 ("We must, therefore, determine if Manetti-Farrow's claims require interpretation of the contract."). However, *Manetti-Farrow* did not involve a "relating to" clause. *Id.* at 510 (forum selection clause limited to claims "regarding interpretation or fulfillment" of the contract). It involved a narrower clause, and thus applied a more restrictive test than the one the Court should apply here. *LaCross,* 95 F. Supp. 3d 1199 ("provisions that include or add phrases such as 'relating to' . . . have a broader reach.")

      Finally, Defendants respectfully submit that the test adopted by the Federal Circuit in *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.,* 651 F.3d 1355, 1359 (Fed. Cir. 2011), does not apply here. In *Gen. Protecht*, the Federal Circuit required the party seeking to enforce the forum selection clause to raise "a non-frivolous dispute regarding the scope of a patent license." However, *Gen. Protecht* is not cited by any Ninth Circuit authority, nor to Defendants' knowledge has any Ninth Circuit forum selection clause case assessed the persuasiveness of a license defense. This is not surprising because *Gen Protecht* is clearly at odds with Ninth Circuit authority. As discussed above, under *Schoenduve* a "relating to" clause applies to all aspects of the parties' relationship (i.e., regardless of whether a license defense exists). And under *Manetti-Farrow*, even when the forum selection clause is a narrow one (unlike here) a claim is within the scope of a forum selection clause if it requires interpretation of the agreement. *Manetti–Farrow,* 858 F.2d at 514. A determination of whether a defense is frivolous cannot be conducted without interpreting the license, and thus invoking the forum selection clause. Indeed, any adjudication concerning the meaning of a contract provision requires interpretation of that contract, and is the exclusive province of the designated forum. *See also Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 777 (N.D. Cal. 2015) ("It cannot be left to the jury to decide which side's interpretation of the contract is the correct one because contract interpretation is an issue of law. . . . These cases, therefore, are actions 'to interpret' contracts which indisputably contain a forum selection clause

1  designating a venue other than this district for the resolution of disputes.").[3]

### 2. The CPA Expressly Governs AMA's Claims

Regardless of which standard the Court applies (*Gen Protecht*, *Manetti-Farrow,* or *Schoenduve*), the forum selection clause applies to AMA's claims because they "arise out of" the CPA. As explained in Defendant Koonar's opening brief, Section 7.1 governs Defendants' liability to AMA for ***any*** wrongful conduct (not just a breach of the CPA).[4]

In its Opposition, AMA does not respond to this argument, and the reason is obvious. Under Ninth Circuit law, this clause must be construed to cover AMA's claims against Defendants. As explained in *Yang Ming Marine v. Okamoto Freighters Ltd.*, 259 F.3d 1086, 1092 (9th Cir.2001), the Ninth Circuit has recognized that "[t]he plain, unambiguous meaning of 'indemnify' is not 'to compensate for losses caused by third parties,' but merely 'to compensate.'" *Id.* (*quoting*)). Thus, an indemnification clause will be presumed as a matter of law to cover direct claims between the parties, absent an express statement to the contrary. *Id.* at 1092 ("Our holding in Atari forecloses Laufer's argument that it can only be forced to indemnify Yang Ming for payments made to third parties."); *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1032 (9th Cir. 1992) ("Atari could have limited its obligation to compensate Federated officers to actions brought by third parties, but it did not.").[5]

---

[3] The Second Circuit decisions in *Altvater* and *Phillips* (cited by AMA) are inapposite. First, they are inconsistent with AMA's own admission that a forum selection clause can be triggered by a license defense. Oppo. at 3 ("A forum selection clause could be enforced if a defendant asserts a contract-based defense to an infringement claim."). Second, both cases involve "arising out of" clauses that are much narrower than the "relating to" clause at issue here. Third, Second Circuit law differs from Ninth Circuit law on the issue of whether a license defense is within scope of a forum selection clause. *Graham Technology Solutions, Inc. v. Thinking Pictures, Inc.,* 949 F. Supp. 1427 (N.D. Cal. 19977) (declining to follow Second Circuit precedent because it is inconsistent with Ninth Circuit precedent).

[4] "Licensee shall . . . indemnify . . . Licensor . . . . from any and all . . . damage . . . incurred by Licensor arising out of or in connection with Licensee's breach of its obligations under this Agreement or a violation of the terms or conditions of this Agreement or **any other act or omission of Licensee**. . . ."). ECF No. 27-3, Ex. 5 at ¶7.1 (emphasis added).

[5] Unlike Section 7.1, Section 7.2 of the CPA (setting forth Licensor's obligations) is expressly limited to third party claims. ECF No. 27-3 at Ex. 5 ("7.2 Licensor shall indemnify

Similarly, the CPA's limitation of liability clause is broad and unrestricted, and thus applies to any claims AMA may assert against Defendants:

> Notwithstanding anything to the contrary in this Agreement, in no event shall licensee be liable to licensor for consequential, incidental, special or indirect damages, including but not limited to damages resulting from loss of business profits, information or goodwill or business interruption, even if licensee has been advised or is aware of the possibility.

ECF No. 27-3, Ex. 5 at ¶ 7.3. Any Court adjudicating AMA's copyright claims will be required to interpret and apply this provision of the CPA. Accordingly, AMA's claims, at minimum, relate to the CPA, and are subject to the forum selection clause.

### 3. Defendants' License Applies To Content Provided From A Website

Even if one (erroneously) assumes that Defendants must present a non-frivolous license defense under the CPA in order to invoke the forum selection clause, Defendants easily meet that burden. In its Opposition, AMA argues that the Content in question is not licensed because materials provided from a website are not "provided" within the meaning of the CPA. For multiple reasons, AMA is wrong.

First, the plain language of the CPA rebuts AMA's argument. The CPA repeatedly refers to content that is "provided" from a website:

- Background Section B ("Licensee desires to **provide** the Content to end users of a single/(group of) **website(s)** (the "Website(s)") on the Worldwide Web")
- Section 1.4 ("Licensee agrees that it will only **provide** streaming services of the Content in both the public and private areas of the **Website**(s)"),
- Section 5.1 ("Licensee shall establish, build, develop and maintain the **Website**(s) featuring the Content and including without limitation a secure system through which Content may be **provided** to users").

---

and hold Licensee harmless from any and all losses, costs, liabilities, damages and expenses (including reasonable attorneys' fees and other legal costs) incurred by Licensee due to a suit or claim by a **third party** against Licensee . . . .") (emphasis added).

ECF No. 27-3, Exh. 5 (emphasis added). Thus, contrary to AMA's contention, the CPA uses the term "provide" to include the provision of Content from a website.

And contrary to AMA's assertion, Sections 4.1 and 4.6 of the CPA do not limit the means by which Content can be "provided." Section 4.1 specifies that AMA will provide Content, but says nothing about the means by which such Content can be provided. Section 4.6 identifies "acceptable methods" by which AMA can deliver Content to defendants, but these are simply methods to which Defendants agreed in advance. The parties could have designated these methods as "exclusive" methods, but they did not. And even if Section 4.6 suggested a narrow definition of "provide," this would merely create an ambiguity in light of other CPA provisions that support a more expansive definition of that term.

Second, as Defendants have explained, Section 3.9 makes no sense if Content provided from a website is unlicensed. Section 3.9 sets forth a revenue sharing scheme relating to Content "originating" from a website.[6] When the CPA refers to the "origin" of content, it is referring to the means by which licensed Content is "provided" under the CPA. This is evident from Exhibit A to the CPA, which refers to the "origins" of licensed Content:

> The following outlines minimum content requirements and ideal submission materials that pertain to content coming from DVDs, delivery necessities for content with **other origins** may vary and can be discussed with the administrators of the program.

If Content provided from a website is (as AMA contends) unlicensed, then there would be no reason to discuss revenue sharing with respect to such Content and no reason for Section 3.9 to exist. AMA's interpretation of the CPA would render Section 3.9 either nonsensical or superfluous. Accordingly, it must be rejected. *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 284 (7th Cir. 2002) ("Nonsensical interpretations of contracts, as of statutes, are disfavored."); *NVT Tech., Inc. v. U.S.*, 370 F.3d 1153, 1166 (Fed. Cir. 2004) (citing "the canon of contract interpretation that disfavors rendering terms superfluous."); *Lawyers'*

---

[6] *Id.* at 3.9 (certain revenue sharing options are available "[i]n the event that the Content **originates . . . with an existing website** associated with Licensor.").

*Fund for Client Prot. of State of N.Y. v. Bank Leumi Trust Co. of N.Y.*, 94 N.Y.2d 398, 404 (2000) (interpretation that would render contractual provision superfluous is "unsupportable under standard principles of contract interpretation").

Third, any potential doubts concerning the scope of the CPA license are resolved by the course of performance under the CPA. Over the past three years, Defendants have consistently treated AMA Content originating from an AMA website (i.e., not provide directly from AMA) as licensed content "provided" by AMA within the meaning of the CPA.

Specifically, beginning in 2012, Porn.com implemented a review process under which user-posted Content on Porn.com is reviewed for watermarks indicating that such content is owned by Porn.com partners, such as AMA. Declaration of Philip Bradbury In Support Of David Koonar's Motion To Dismiss Or Stay ("Bradbury Decl.) ¶2. When a partner's watermarked content is identified, such Content is treated as licensed content provided by that partner under the CPA, and thus subject to the CPA's revenue sharing provisions. *Id*.

Under this program, beginning in 2013 Porn.com has identified over one thousand user-posted videos bearing AMA watermarks, and under Section 3.1 of the CPA Porn.com has **paid AMA its revenue share for each of these videos**. *Id.* at ¶ 3. Thus, Defendants have at all times operated in accordance with their understanding that AMA Content obtained from an AMA website and re-posted on Porn.com is licensed and triggers the CPA's revenue sharing provisions, **even though AMA itself did not upload such content**. This is powerful evidence supporting Defendants' interpretation of the CPA. Thomas D. Selz, Melvin Simensky, Patricia Acton, Robert Lind, 2 Entm't Law 3d: Legal Concepts and Bus. Practices § 9:131 (2015) ("Because the actual performance tendered and accepted without objection is a strong indicator of the parties' intent, course of performance is given the greatest weight in the hierarchy of extrinsic evidence.").[7]

---

[7] To the extent AMA alleges that Defendants have failed to make revenue sharing payments

For the above-stated reasons, Defendants' license defense is clearly non-frivolous, and is in fact meritorious. Accordingly, this action is analogous to *CRC* and *Seven Arts Pictures*, in which courts have granted stays on similar facts.

### III. CONCLUSION

In light of the foregoing, Defendant Koonar respectfully requests that the Court stay this action during the pendency of the parties' related parallel action in the courts of Barbados.

DATED: October 27, 2016

Respectfully submitted,

GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP

By: /s/ Erica J. Van Loon
ERICA J. VAN LOON

*Attorney for Defendant Cyberweb Ltd., David Koonar, Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.*

---

with respect to AMA videos Defendants have allegedly posted on the Porn.com website, this is a breach of contract claim that falls squarely within the CPA's forum selection clause.