ERICA J. VAN LOON (admitted *Pro Hac Vice*)
evanloon@glaserweil.com
GLASER WEIL FINK HOWARD
 AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

*Attorney for Defendants Cyberweb Ltd., David Koonar,
Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| AMA MULTIMEDIA LLC, a Nevada limited liability company,<br><br>                    Plaintiff,<br><br>v.<br><br>SAGAN LIMITED, a Republic of Seychelles company, individually and d/b/a PORN.COM; CYBERWEB LTD., formerly MXN LTD., a Barbados Company, individually and d/b/a PORN.COM; NETMEDIA SERVICES INC., a Canadian Company, individually and d/b/a PORN.COM; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; DAVID KOONAR, an individual; and John Does 1-20,<br><br>                    Defendants. | CASE NO.: CV16-1269 PHX DGC<br><br>Hon. David G. Campbell<br><br>**REPLY IN SUPPORT OF DEFENDANT DAVID KOONAR'S MOTION TO DISMISS BASED ON FORUM NON CONVENIENS**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................... 1

II. ARGUMENT .......................................................................................................... 2

    A. The Forum Selection Clause Applies To AMA's Claims ............................ 2

        1. The Proper Inquiry Is Whether AMA's Claims Relate To Any Aspect Of The Parties' Relationship ................................................. 2

        2. The CPA Expressly Governs AMA's Claims ................................... 4

        3. Defendants' License Is Not Limited To Content Uploaded By AMA ................................................................................................. 5

        4. Some Of AMA's Claims Are Based On Content It Uploaded ........... 8

    B. Defendants Must be Treated As Parties To The CPA ................................... 8

    C. The Forum Selection Clause Is Valid ........................................................... 9

        1. Forum Selection Clauses In Online Form Agreements Are Binding ............................................................................................ 10

        2. The Forum Selection Clause Will Not Deny AMA Its Day In Court ............................................................................................... 10

        3. AMA's Forum Shopping Argument Is Misplaced ........................... 11

# TABLE OF AUTHORITIES

Page

## CASES

*Adema Tech. Inc. v. Wacker Chemie AG*,
 2014 WL 3615799 (N.D. Cal. July 22, 2014) ................................................................. 10

*Altvater Gessler–J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*,
 572 F.3d 86 (2d Cir. 2009) .............................................................................................. 4

*Argueta v. Banco Mexicano*,
 87 F.3d 320 (9th Cir. 1998) ........................................................................................... 11

*Atari Corp. v. Ernst & Whinney*,
 981 F.2d 1025 (9th Cir. 1992) ......................................................................................... 5

*Bloom v. Claimetrics Mgmt LLC*,
 2010 WL 3489387 (N.D. Cal. Sept. 2, 2010) ................................................................ 11

*Carnival Cruise Lines, Inc. v. Shute*,
 499 U.S. 585 (1991) ....................................................................................................... 10

*Commerce Consultants Intern., Inc. v. Vetrerie Riunite, S.p.A.*,
 867 F.2d 697 (D.C. Cir. 1989) ....................................................................................... 11

*Desert Dental Solutions, Inc. v. Indep. Res. Network Corp.*,
 2006 WL 616632 (D. Ariz. Mar. 10, 2006) ................................................................... 11

*FutureSource LLC v. Reuters Ltd.*,
 312 F.3d 281 (7th Cir. 2002) ........................................................................................... 7

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*,
 651 F.3d 1355 (Fed. Cir. 2011) ................................................................................... 3, 4

*Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*,
 949 F. Supp. 1427 (N.D. Cal. 19977) ............................................................................. 4

*Hart v. Massanari*,
 266 F.3d 1155 (9th Cir. 2001) ......................................................................................... 3

*In re Orange, S.A.*,
 818 F.3d 956 (9th Cir. 2016) ........................................................................................... 3

*Keller v. McGraw-Hill Global Educ. Holding, LLC*,
 2016 WL 4035613 (E.D. Pa. July 28, 2016) ................................................................... 8

*LaCross v. Knight Transp., Inc.*,
 95 F. Supp. 3d 1199 (C.D. Cal. 2015) ............................................................................ 2

*Liberty City Church of Christ, Inc. v. Taylor*,
 2013 WL 621792 (N.D. Cal. Feb. 15, 2013) .................................................................. 8

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) ................................................................................................................. 9

*Manetti–Farrow, Inc. v. Gucci Am.*, Inc.,
  858 F.2d 509 (9th Cir.1988) ................................................................................................. 9

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
  858 F.2d 509 (9th Cir. 1988) ............................................................................................ 3, 4

*Mediterranean Enter., Inc. v. Ssangyong*,
  708 F.2d 1458 (9th Cir. 1983) .............................................................................................. 3

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ........................................................................................................... 11

*Modius, Inc. v. Psinaptic, Inc.*,
  2006 WL 1156390 (N.D. Cal. May 2, 2006) ..................................................................... 11

*NVT Tech., Inc. v. U.S.*,
  370 F.3d 1153 (Fed. Cir. 2004) ............................................................................................ 7

*Phillips v. Audio Active Ltd.*,
  494 F.3d 378 (2d Cir. 2007) ........................................................................................... 4, 11

*Schoenduve Corp. v. Lucent Tech., Inc.*,
  442 F.3d 727 (9th Cir. 2006) ........................................................................................ 1, 3, 4

*Tresona Multimedia LLC v. Legg*,
  2015 WL 470228 (D. Ariz. Feb. 4, 2015) .......................................................................... 10

*Yang Ming Marine v. Okamoto Freighters Ltd.*,
  259 F.3d 1086 (9th Cir.2001) ............................................................................................... 5

### **OTHER AUTHORITIES**

Thomas D. Selz, Melvin Simensky, Patricia Acton, Robert Lind,
  2 Entm't Law 3d: Legal Concepts and Bus. Practices § 9:131 (2015)    8

## I.     INTRODUCTION

The key question is whether AMA's claims are within the scope of the forum selection clause. AMA argues that Defendants must present a non-frivolous license defense under the CPA in order to invoke the forum selection clause, and Defendants' license defense is frivolous. AMA is wrong on both counts.[1]

Under Ninth Circuit law, the forum selection clause applies to **all** aspects of the parties' relationship. *Schoenduve Corp. v. Lucent Tech., Inc.*, 442 F.3d 727, 732 (9th Cir. 2006) ("Intending to reach all aspects of their relationship, Lucent required the parties to arbitrate any dispute arising out of or relating to the MRA."). The out-of-circuit cases AMA cites conflict with Ninth Circuit authority, or involve forum selection clauses that are narrower than the clause at issue here.

In addition, AMA ignores the CPA's indemnification and limitation of liability clauses, which expressly govern the conduct alleged by AMA. Thus, AMA's claims "arise out of" the CPA and are subject to the forum selection clause.

And even if one (erroneously) assumes that Defendants must present a non-frivolous license defense to invoke the forum selection clause, Defendants easily meet that burden. For at least three reasons, AMA content obtained from websites is licensed under the CPA.

First, three sections of the CPA (Sections 1.4, 5.1, and Background Section B) expressly refer to content that is "provided" from websites. Thus, AMA is wrong when it argues that content provided from a website is not "provided" within the meaning of the CPA. Moreover, Sections 4.1 and 4.6 do not (as AMA contends) purport to limit the definition of "provide," and even if they did, this would at most create an ambiguity in the CPA that can only be resolved by the Barbados courts.

Second, AMA simply ignores Section 3.9 of the CPA, which sets forth a revenue sharing scheme relating to content "originating" from a website. If (as AMA argues) such

---

[1] AMA purports to incorporate by reference other briefs it has filed in this action. Oppo. at 2. In response, Defendants incorporate by reference ECF. No. 61 (Reply In Support of Sagan Limited's Motion to Stay), and supporting declarations (ECF. Nos. 61-1, 61-2, and 61-3).

content were unlicensed, Section 3.9 would be nonsensical or superfluous.

Third, the parties' course of performance confirms that the CPA applies to content not uploaded by AMA. Over the past three years, Defendants have paid AMA its share of revenue generated by more than a thousand AMA videos that users uploaded to Porn.com. AMA accepted these payments without objection. Thus, the parties have consistently treated AMA content not uploaded by AMA as licensed under the CPA. This constitutes powerful evidence of the parties' intent.

Moreover, AMA's copyright claims include allegations that Defendants' banner ads use images from videos that AMA itself uploaded. These videos are licensed even under AMA's definition of the term "provided." The question is whether Defendants' alleged use exceeded the scope of the license, and such claims are subject to the forum selection clause.

The remaining issues raised by AMA are easily disposed of. Both Ninth Circuit authority and the plain language of the CPA rebut AMA's arguments regarding "assignability," implied license, and standing. And while AMA argues that the forum selection clause is invalid, AMA fails to cite a single case invalidating a forum selection clause, and its arguments are squarely rebutted by the same cases it does cite.

## II.  ARGUMENT

### A.  The Forum Selection Clause Applies To AMA's Claims

#### 1.  The Proper Inquiry Is Whether AMA's Claims Relate To Any Aspect Of The Parties' Relationship

Forum selection clauses differ in scope based on their precise wording. Under Ninth Circuit law, clauses including the words "relating to" are broader than those without:

> The scope of the claims governed by a forum selection clause depends [upon] the language used in the clause. . . . The Ninth Circuit has found that provisions using the phrases "arising under," "arising out of," and "arising hereunder" (collectively referred to as "arising under" language) should be narrowly construed to cover only those disputes "relating to the interpretation and performance of the contract itself." In contrast, provisions that include or add phrases such as "relating to" and "in connection with" (collectively referred to as "relating to" language) have a broader reach.

*LaCross v. Knight Transp., Inc.,* 95 F. Supp. 3d 1199, 1207 (C.D. Cal. 2015) (citations

omitted).

The clause at issue here is a "relating to" clause. ECF No. 27-3, Ex. 5 at ¶ 10.5 ("Any legal action arising out of or relating to this Agreement must be instituted in a court located in Barbados . . ."). Under Ninth Circuit law, this clause is not limited to claims requiring interpretation of the agreement, but applies to **all aspects of the parties' relationship**. *Schoenduve*, 442 F.3d at 732 ("Intending to reach all aspects of their relationship, Lucent required the parties to arbitrate any dispute arising out of or relating to the MRA."); *see also, Mediterranean Enter., Inc. v. Ssangyong*, 708 F.2d 1458, 1465 (9th Cir. 1983) (contrasting broad "related to" clause with "much narrower" "arising hereunder" clause "intended to cover a much narrower scope of disputes, i.e., only those relating to the interpretation and performance of the contract itself.").[2] AMA's claims against Defendants clearly relate to the relationship between AMA and Defendants, and thus are subject to the CPA's forum selection clause.

The *Manetti-Farrow* standard (which Defendants nonetheless satisfy) is overly restrictive. Under *Manetti-Farrow*, "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Manetti–Farrow*, 858 F.2d at 514. However, *Manetti-Farrow* involved a narrower clause than the broad "arising from or relating to" clause at issue here. *Id.* at 510 (forum selection clause limited to claims "regarding interpretation or fulfillment" of the contract).

Finally, Defendants respectfully submit that the test proposed by the Federal Circuit in *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.,* 651 F.3d 1355, 1359 (Fed. Cir. 2011), does

---

[2] *Schoenduve* and *Mediterranean Enterprises* involved arbitration clauses, but such authority applies with equal force to forum selection clauses. *See, e.g., Manetti-Farrow*, *Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 n. 4 (9th Cir. 1988) ("Although Mediterranean involved interpretation of the scope of an arbitration clause, we apply its analysis here because an agreement to arbitrate is actually a specialized forum selection clause."). While the three-judge panel in *In re Orange, S.A.*, 818 F.3d 956 (9th Cir. 2016) questioned this rule, *Manetti-Farrow* remains binding authority. *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting *en banc*, or by the Supreme Court.").

1  not apply here. In *Gen. Protecht*, the Federal Circuit suggested that a party seeking to
2  enforce the forum selection clause may be required to raise "a non-frivolous dispute
3  regarding the scope of a patent license." However, *Gen. Protecht* is not cited by any Ninth
4  Circuit case. This is not surprising because *Gen Protecht* is clearly at odds with Ninth
5  Circuit authority. As discussed above, under *Schoenduve* a "relating to" clause applies to all
6  aspects of the parties' relationship (i.e., regardless of whether a license defense exists). And
7  under *Manetti-Farrow*, even when the forum selection clause is a narrow one (unlike here) a
8  claim is within the scope of a forum selection clause if it requires interpretation of the
9  agreement. *Manetti–Farrow,* 858 F.2d at 514. A determination of whether a license defense
10 is frivolous cannot be conducted without interpreting the license, and thus invading the
11 exclusive province of the designated forum. Nothing in *Manetti-Farrow* suggests that courts
12 should assess the persuasiveness of a license defense, and Defendants have found no Ninth
13 Circuit cases undertaking such an assessment.[3]

## 2.     The CPA Expressly Governs AMA's Claims

15     Regardless of which standard the Court applies (*Gen Protecht*, *Manetti-Farrow,* or
16 *Schoenduve*), the forum selection clause applies to AMA's claims because they "arise out
17 of" the CPA. As explained in Defendant's opening brief, Section 7.1 governs Defendants'
18 liability to AMA for "**_any act or omission of Licensee_**" (not just a breach of the CPA).[4]
19     AMA does not respond to this argument, for obvious reasons. Section 7.1 must be

---

[3] The Second Circuit decisions in *Altvater* and *Phillips* (cited by AMA) are inapposite. First, they are inconsistent with AMA's own admission that a forum selection clause can be triggered by a license defense. Oppo. at 3 ("A forum selection clause could be enforced if a defendant asserts a contract-based defense to an infringement claim."). Second, both cases involve "arising out of" clauses that are much narrower than the "relating to" clause at issue here. Third, Second Circuit law differs from Ninth Circuit law on the issue of whether a license defense is within scope of a forum selection clause. *Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.,* 949 F. Supp. 1427, 1432-3 (N.D. Cal. 19977) (declining to follow Second Circuit precedent because it is inconsistent with Ninth Circuit precedent).

[4] "Licensee shall . . . indemnify . . . Licensor . . . . from any and all . . . damage . . . incurred by Licensor arising out of or in connection with Licensee's breach of its obligations under this Agreement or a violation of the terms or conditions of this Agreement or **_any other act or omission of Licensee_**. . . ."). ECF No. 27-3, Ex. 5 at ¶ 7.1 (emphasis added).

construed to cover AMA's claims against Defendants, not simply those arising out of a license. As explained in *Yang Ming Marine v. Okamoto Freighters Ltd.*, 259 F.3d 1086, 1092 (9th Cir. 2001), the Ninth Circuit has recognized that "[t]he plain, unambiguous meaning of 'indemnify' is not 'to compensate for losses caused by third parties,' but merely 'to compensate.'" *Id.* (*quoting*). Thus, an indemnification clause will be presumed as a matter of law to cover direct claims between the parties, absent an express statement to the contrary. *Id.* at 1092 ("Our holding in Atari forecloses Laufer's argument that it can only be forced to indemnify Yang Ming for payments made to third parties."); *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1032 (9th Cir. 1992) ("Atari could have limited its obligation to compensate Federated officers to actions brought by third parties, but it did not.").[5]

Similarly, Section 7.3 broadly limits Defendants' liability, and applies to any claims AMA may assert against Defendants:

> Notwithstanding anything to the contrary in this Agreement, in no event shall licensee be liable to licensor for consequential, incidental, special or indirect damages, including but not limited to damages resulting from loss of business profits, information or goodwill or business interruption, even if licensee has been advised or is aware of the possibility.

ECF No. 27-3, Ex. 5 at ¶ 7.3. Resolution of AMA's copyright claims will require interpretation and application of Section 7.3, which can only be done by the Barbados courts.

### 3. Defendants' License Is Not Limited To Content Uploaded By AMA

Even if one (erroneously) assumes that Defendants must present a non-frivolous license defense under the CPA in order to invoke the forum selection clause, Defendants easily meet that burden. In its Opposition, AMA argues that the CPA applies only to content directly "provided" by AMA via uploads or in specific formats. AMA is wrong.

---

[5] Unlike Section 7.1, Section 7.2 of the CPA (setting forth Licensor's obligations) is expressly limited to third party claims. ECF No. 27-3, Ex. 5 at ¶ 7.2 ("Licensor shall indemnify and hold Licensee harmless from any and all losses, costs, liabilities, damages and expenses (including reasonable attorneys' fees and other legal costs) incurred by Licensee due to a suit or claim by a **third party** against Licensee . . . .") (emphasis added).

First, the plain language of the CPA rebuts AMA's argument. The CPA repeatedly refers to content that is "provided" from a website:

- Background Section B ("Licensee desires to **provide** the Content to end users of a single/(group of) **website(s)** (the "Website(s)") on the Worldwide Web");
- Section 1.4 ("Licensee agrees that it will only **provide** streaming services of the Content in both the public and private areas of the **Website**(s)");
- Section 5.1 ("Licensee shall establish, build, develop and maintain the **Website**(s) featuring the Content and including without limitation a secure system through which Content may be **provided** to users").

ECF No. 27-3, Ex. 5 (emphasis added). Thus, contrary to AMA's contention, the CPA uses the term "provide" to include the provision of Content from a website.

And contrary to AMA's assertion, Sections 4.1 and 4.6 of the CPA do not limit the means by which Content can be "provided." Section 4.1 specifies that AMA will provide Content, but says nothing about the means by which such Content can be provided. Section 4.6 is designed to protect Defendants, by preventing AMA from unilaterally providing content by unacceptable methods. Nothing in Section 4.6 restricts Defendants' right to accept AMA content via other means, formats, or sources. This is evidenced by the fact that Section 4.6 refers to "acceptable methods," not "exclusive methods." And even if Section 4.6 suggested a narrow definition of "provide," this would merely create an ambiguity in the CPA that would need to be resolved by the Barbados courts.

Second, as Defendants have explained, Section 3.9 makes no sense if AMA Content provided from a website is unlicensed. Section 3.9 sets forth a revenue sharing scheme relating to Content "originating" from a website.[6] As is evident from Exhibit A to the CPA, the "origin" of content refers to the means by which licensed Content is "provided" under the CPA.

---

[6] *Id.* at 3.9 (certain revenue sharing options are available "[i]n the event that the Content **originates . . . with an existing website** associated with Licensor.").

> The following outlines minimum content requirements and ideal submission materials that pertain to content coming from DVDs, delivery necessities for content with **other origins** may vary and can be discussed with the administrators of the program.

If Content provided from a website is (as AMA contends) unlicensed, then there would be no reason to discuss revenue sharing with respect to such Content and no reason for Section 3.9 to exist. AMA's interpretation of the CPA must be rejected because it would render Section 3.9 either nonsensical or superfluous. *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 284 (7th Cir. 2002) ("Nonsensical interpretations of contracts, as of statutes, are disfavored."); *NVT Tech., Inc. v. U.S.*, 370 F.3d 1153, 1166 (Fed. Cir. 2004) (citing "the canon of contract interpretation that disfavors rendering terms superfluous').

Third, the parties' course of performance under the CPA strongly supports Defendants' position. As discussed below, the parties have consistently treated **any** AMA-identified Content that appears on Porn.com as licensed and subject to the CPA's revenue sharing provisions, **regardless of whether AMA itself uploaded such content**.

Beginning in 2012, Porn.com began reviewing user-posted Content on Porn.com for watermarks (i.e., identification markers) indicating that such content is owned by Porn.com partners, including AMA. Supplemental Declaration of Philip Bradbury In Support Of David Koonar's Motion To Dismiss Or Stay ("Supplemental Bradbury Decl.") ¶ 2. Content bearing a partner's watermark is "assigned" to that partner's account (i.e., treated as licensed content, and subject to the CPA's revenue sharing provisions). *Id.* Beginning in 2013, Porn.com has identified over one thousand user-posted videos bearing AMA watermarks, and under Section 3.1 of the CPA Porn.com has paid AMA its revenue share for each of these videos. *Id.* at ¶ 3. Beginning in November 2015, AMA account statements on the paidperview.com website mark each user-uploaded video assigned to AMA's account with a red box and asterisk, which when clicked presents a dialog box stating that the video in question has been assigned to AMA's account and stating the amount of shared revenue that video has generated under the CPA. *Id.* at ¶¶ 4, 5. AMA has regularly accessed the platform (as recently as September 13, 2016), has continued to upload content at least as recently as May 20, 2016, and has accepted these payments without objection. *Id.* This is powerful

7
REPLY ISO DEFENDANT DAVID KOONAR'S MOTION TO DISMISS BASED ON FORUM NON CONVENIENS

evidence supporting Defendants' interpretation of the CPA. Thomas D. Selz, Melvin Simensky, Patricia Acton, Robert Lind, 2 Entm't Law 3d: Legal Concepts and Bus. Practices § 9:131 (2015) ("Because the actual performance tendered and accepted without objection is a strong indicator of the parties' intent, course of performance is given the greatest weight in the hierarchy of extrinsic evidence.").[7]

### 4. Some Of AMA's Claims Are Based On Content It Uploaded

Even if one were to accept AMA's (erroneous) arguments regarding content obtained from websites, they do not apply to content AMA itself uploaded. AMA alleges that Defendants violated AMA's copyrights by using images from AMA videos in certain banner ads. ECF No. 16 (FAC) at ¶ 98, Ex. J; ECF No. 67 at 12 (asserting that allegedly infringing banner ads support jurisdiction over Defendant Koonar). However, the images in the example banner ads provided by AMA (ECF No. 1-1, Ex. J), are from videos that AMA itself uploaded. Supplemental Bradbury Declaration at ¶ 8. These videos are licensed even under AMA's definition of the term "provided," and the only question is whether Defendants' alleged use of these videos exceeded the scope of the license. Accordingly, such claims arise from or relate to the CPA, and thus fall within the scope of the forum selection clause. *Keller v. McGraw-Hill Global Educ. Holding, LLC*, 2016 WL 4035613 (E.D. Pa. July 28, 2016) (clause covers claim that defendant exceeded scope of license).

### B. Defendants Must be Treated As Parties To The CPA

Contrary to AMA's assertion, Defendants are affiliates of GIM. and assignees of GIM's rights under the CPA.[8] Supplemental Bradbury Declaration at ¶ 6 (Netmedia, GLP 5, and GIM share common ownership) and ¶ 7 (all Defendants are assignees); ECF No. 70-2

---

[7] To the extent AMA alleges that Defendants have failed to make revenue sharing payments with respect to AMA videos Defendants have allegedly posted on the Porn.com website, this is a breach of contract claim that falls squarely within the CPA's forum selection clause.

[8] Defendant Koonar is entitled to the protections of the CPA as an employee of a party. *Liberty City Church of Christ, Inc. v. Taylor*, 2013 WL 621792, at *2 (N.D. Cal. Feb. 15, 2013) ("any claims against Batt relating to activities that occurred within the scope of his employment with Equity Trust are subject to the forum selection clause.")

1  (Richardson Declaration) at ¶¶ 3-4 (Cyberweb, Sagan, and GIM share common ownership);
2  Oppo. at 4, fn. 3 (AMA defines affiliate as "a corporation that is related to another
3  corporation by shareholdings or other means of control.").

4      And AMA repeatedly ignores Ninth Circuit authority stating that Defendants can
5  enforce the forum selection clause because their alleged conduct is (by AMA's own
6  admission) closely related to the subject matter of the CPA. *See, e.g.*, *Manetti–Farrow,* 858
7  F.2d at 514 n. 5.  AMA also ignores the fact that Defendants can enforce the CPA as agents
8  or third-party beneficiaries, because the CPA expressly contemplates contract-related
9  conduct by GIM's agents. ECF No. 27-3, Ex. 5 at ¶ 6.2 ("all actions taken by Licensee, its
10 employees and **agents**, with respect to the Content or the relationship contemplated by this
11 Agreement shall comply with applicable law."). And AMA ignores its alter ego allegations,
12 which preclude it from treating Defendants as separate entities with respect to the CPA.

13     Finally, AMA's implied license arguments are nonsensical. The CPA expressly
14 allows GIM to distribute the content to any website where the advertising is controlled by
15 Traffic Force. By necessity an implied license exists. AMA does not deny that it was at all
16 times aware of Defendants' use of AMA's content in the operation of the Porn.com website,
17 and did not object. This is acquiescence, and it creates an implied license. And AMA does
18 not dispute the fact that website operators must have an implied license under the CPA, or
19 otherwise the CPA would be worthless. This also creates an implied license.

20     **C.**    **The Forum Selection Clause Is Valid**

21     Forum selection clauses "are prima facie valid and should be enforced unless
22 enforcement is shown by the resisting party to be `unreasonable' under the circumstances"
23 and a plaintiff "must clearly show that enforcement would be unreasonable and unjust, or
24 that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v.*
25 *Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972). AMA fails to cite a single case in which a
26 forum selection clause has been invalidated, and the cases it cites squarely rebut its
27 arguments.

28

### 1.  **Forum Selection Clauses In Online Form Agreements Are Binding**

AMA cannot evade the forum selection clause by claiming it is a contract of adhesion. *Carnival Cruise Lines* (cited by AMA) confirms that the ability to negotiate terms is not required, and forum selection clauses in form contracts are enforceable. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594-5 (1991). Nor can AMA evade the CPA by claiming it did not read it. AMA's agent could not sign up for paidperview.com without clicking a button certifying that he had reviewed the terms of the CPA. ECF No. 61-1 at ¶ 7, Ex. D. And AMA does not deny that its agent clicked this button, that its agent was provided a hyperlink to the CPA, or that AMA had access to the CPA. As this Court has recognized, "[c]ourts regularly uphold forum selection clauses in online user agreements when the user is given notice of the agreement by clicking a box stating 'I agree to the terms of the User Agreement,' followed by a hyperlink." *Tresona Multimedia LLC v. Legg*, 2015 WL 470228, at *12 (D. Ariz. Feb. 4, 2015).[9]

### 2.  **The Forum Selection Clause Will Not Deny AMA Its Day In Court**

AMA is currently litigating in Barbados, and the Barbados court has accepted jurisdiction over Defendants' claims against AMA. ECF No. 55 (Request For Judicial Notice). This is fatal to AMA's inconvenience argument. *Adema Tech. Inc. v. Wacker Chemie AG*, 2014 WL 3615799 (N.D. Cal. July 22, 2014) (fact that plaintiff was already litigating in designated forum (Germany) rebutted inconvenience argument).

In addition, AMA provides no actual evidence of inconvenience, and the inconvenience it alleges—purported discovery limitations—will not invalidate a forum selection clause. Most foreign forums have limited discovery, yet courts (including *Argueta*, *M/S Bremen*, and *Richards*, all cited by AMA) routinely enforce forum selection clauses designating foreign forums. As recognized in *Commerce Consultants Intern., Inc. v. Vetrerie*

---

[9] AMA in passing suggests that Defendants did not ensure that the person who accepted the CPA had authorization. Oppo. at 11. As explained in earlier briefing, the person who accepted the CPA was an AMA agent who acted at AMA's instruction, and any attempt by AMA to claim it is not bound by the CPA is frivolous. ECF No. 61 at 7-9.

1  *Riunite, S.p.A.*, 867 F.2d 697, 700 (D.C. Cir. 1989), to invalidate a forum selection clause
2  based on discovery limitations would "make a mockery of the policy behind enforcing these
3  clauses." Courts enforce forum selection clauses when no witnesses or evidence are located
4  in the selected forum, *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 393 (2d Cir. 2007), when
5  non-party depositions are prohibited in the forum, *Modius, Inc. v. Psinaptic, Inc.*, 2006 WL
6  1156390 (N.D. Cal. May 2, 2006), and when discovery is entirely prohibited in the selected
7  forum. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985).

      The burden alleged by AMA is not remotely near the level required by the Ninth Circuit to invalidate a forum selection clause. In *Argueta* (cited by AMA), the Ninth Circuit enforced a forum selection clause even though the defendant bank had previously lured plaintiff to Mexico, and arranged to have him arrested, interrogated by bank officials for three days, incarcerated for more than a year, and released only when he agreed to loan modifications requested by the defendant. *Argueta v. Banco Mexicano*, 87 F.3d 320 (9th Cir. 1998). If the *Argueta* plaintiff must abide by his forum selection clause, so must AMA.

### 3.    **AMA's Forum Shopping Argument Is Misplaced**

As stated in *Desert Dental Solutions, Inc. v. Indep. Res. Network Corp.*, 2006 WL 616632, at *2 (D. Ariz. Mar. 10, 2006), selection of a neutral forum is proper:

> [T]he fact that there is no nexus to Georgia other than its inclusion in the forum selection clause does not make the clause fundamentally unfair.

*See also Bloom v. Claimetrics Mgmt LLC*, 2010 WL 3489387, at *2 (N.D. Cal. Sept. 2, 2010) (neutral forum proper under U.S. Supreme Court and Ninth Circuit precedent).

      And, in any event, Defendants have ample connections with Barbados. Both GIM and Cyberweb are incorporated there, it is Cyberweb's principal place of business, and GIM has an office there. ECF No. 61-2 (Richardson Declaration), at ¶¶ 2, 5. No case invalidates a forum selection clause on analogous facts.

## III.   **CONCLUSION**

Based on the foregoing, Defendant David Koonar respectfully requests that the Court grant the instant motion and dismiss the FAC as to Defendant Koonar.

| | |
|---|---|
| DATED: October 28, 2016 | Respectfully submitted,<br><br>GLASER WEIL FINK HOWARD<br>    AVCHEN & SHAPIRO LLP<br><br>By:  /s/ Erica J. Van Loon<br>ERICA J. VAN LOON<br><br>*Attorney for Defendant Cyberweb Ltd., David Koonar, Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.* |



12
REPLY ISO DEFENDANT DAVID KOONAR'S MOTION TO DISMISS BASED ON FORUM NON CONVENIENS

1265604