EXHIBIT A

LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMA Multimedia, LLC, a Nevada limited liability company, | Case No. CV-16-1269-PHX-DGC |
| Plaintiff, | **DECLARATION OF ADAM SILVERMAN IN SUPPORT OF PLAINTIFF AMA MULTIMEDIA, LLC'S SUR-REPLY RE: DEFENDANT DAVID KOONAR'S MOTION TO STAY AND HIS DISMISS AND MOTION TO DISMISS BASED ON FORUM NON-CONVENIENS** |
| v. | |
| Sagan, Ltd., a Republic of Seychelles company, individually and d/b/a Porn.com; Cyberweb, Ltd., formerly MXN, Ltd., a Barbados Company, individually and d/b/a Porn.com; NetMedia Services, Inc., a Canadian Company, individually and d/b/a Porn.com; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; David Koonar, an individual, *et. al.,* | |
| Defendants. | |

I, Adam Silverman, declare:

1.    I am a United States Citizen, over the age of 18 years old, and make this declaration based upon personal knowledge and, if called to testify could and would testify competently to the facts set forth herein.

2.    I am the President of AMA Multimedia, LLC, Plaintiff in this lawsuit.

3.    I have reviewed Defendant Koonar's Reply in Support of Motion to Dismiss Based on Forum Non Conveniens as well as the Reply on his request to Stay.

1    4.    Koonar raises arguments and presents purported facts to support these

2    arguments for the very first time at this late stage, which need to be addressed.

3    ***Defendants' New Scheme of "Assigning" Infringed Uploads***

4    5.    Primarily, Koonar presents a new scheme under which the Porn.com

5    Defendants have taken videos not uploaded by AMA and supposedly "assigned" them to

6    AMA's account established under the Content Partnership Agreement ("CPA") with GIM

7    Corp.  This new argument raises significant matters:

8        a.    It is crucial that Koonar now admits how Netmedia and Porn.com utilize

9              content that was NOT uploaded or provided by AMA under the CPA.

10       b.    Even if this scheme were true, there is no evidence that the videos AMA

11             has alleged as infringed in this case were "assigned" to the CPA account

12             and subject to this scheme.

13    6.    AMA was not aware of any such scheme to take AMA content from other

14    sources, whether third party users or the Defendants themselves, and have those videos

15    assigned to the CPA account.  Had AMA been presented with the scheme, AMA would

16    have specifically and clearly denied such use of those videos.   AMA provided

17    *promotional videos* pursuant to the CPA to entice users to join AMA web sites to view

18    full-length videos.  Providing, or assigning, full length videos under the CPA would have

19    been damaging to AMA's business model.

20    7.    Defendants now assert that Netmedia has been manually reviewing all user-

21    uploaded content on Porn.com since 2012, and evaluating the watermarks[1] to determine if

22    they were unauthorized uploads, as opposed to licensed material provided under the CPA.

23    _____

24    [1] Watermarks on AMA videos are essentially obvious branding with the original source
      of the website the content is from on *every second* of the video, clearly identifying us as
25    the copyright owner.  They appear as opening and closing animations to the videos, and a
26    URL in the corners of the videos on every frame or second of the video.

1  Notably, Defendants have never before disclosed this "system" or scheme throughout the
2  lengthy settlement discussions or in previous pleadings (both here in the U.S. and in
3  Barbados).

4        8.     If Netmedia found infringing material from a content partner that was not
5  uploaded by a content partner, rather than **deleting** the illegal video, Netmedia made the
6  unilateral decision to treat it as licensed under the CPA.  Netmedia is not even a party to
7  the CPA.

8        9.     Netmedia never actually disclosed this practice to the AMA, and it directly
9  contradicts the CPA.

10       10.    I have personally spoken to other content producers (who have provided
11  sworn Declarations in this matter), and they confirm that Netmedia never disclosed this
12  practice/scheme/new "system" to them either, despite that we all provide content to be
13  used on Porn.com.

14       11.    While Koonar now claims that AMA has been "paid" for infringing videos,
15  I have personally scoured AMA's financial records and documentation and find no
16  evidence of any such payment(s).

17       12.    Because the Repl(ies) were the **first time** I had ever heard of this policy or
18  alleged feature, I believe it to be a manufactured defense in this litigation.  I personally
19  spoke to my employee (who submitted a Declaration), and he confirms that Porn.com did
20  not have this "assignment" to our CPA account feature previously.  I spoke to other
21  content producers who disavow that it exists.  And, conveniently, Defendants raised this
22  issue on **<u>Reply</u>** assuming we (AMA) could not respond or reply.

23       13.    I cannot believe that it is an "oversight" or something Defendants have
24  forgotten to mention in the first several briefs/motions that have been filed in this Court.
25  GLP5 and Netmedia had 2 rounds of motions; Sagan had 2 rounds of motions; Koonar
26  and Cyberweb have had an opening round of motions; and all of the Defendants have

1    filed a detailed Barbados Claim against AMA.   This was never raised until just now (on

2    Reply), and conveniently after this Court has denied dismissal against Sagan, Ltd. and

3    has permitted jurisdictional discovery of the Defendants.

4         14.    While Mr. Bradbury's Declaration claims that AMA still has access to (and

5    has recently accessed) its CPA account with Porn.com, that is just simply not true.  AMA

6    can "log in," and has done so on numerous occasions since the inception of this lawsuit.

7    However, when AMA logs in, it is presented with a **new** Content Partnership Agreement

8    for an entirely different company that now operates PaidPerView.com.

9         15.    Unless and until AMA were to agree to the incredulous terms of the new

10   CPA, it remains blocked out of the account.

11        16.    AMA has logged into the Porn.com account several times, ***trying*** to access

12   its data in the account, unsuccessfully.  Defendants have blocked AMA from accessing

13   any information in the account, including previous stats, videos, financial information,

14   and everything in the CPA account.  The account has been like this since late May, which

15   coincides with a drop off in uploading.  (It also coincides with AMA filing this lawsuit.)

16        17.    Mr. Bradbury states in his Declaration, and through the screenshot

17   provided, that when a user would log in to PaidPerView, that user could access a list of

18   videos in the account that provides a specific set of information related to videos,

19   including a numeric video ID, niche, duration, impressions, and revenue. *See*, Doc. 74-1.

20   This information does not allow anyone to clearly identify or preview the video to see

21   what it actually is.  Mr. Bradbury claims a "red asterisk" gives you warning.

22        18.    AMA has ***never seen this alleged feature and subsequent dialog box*** and

23   has ***never*** had the ability to "review, keep or delete" videos as Mr. Bradbury suggests.

24   This feature did not exist previously (if it even does now).

25        19.    In his prior Declaration, Mr. Bradbury claimed that 2,116 videos were

26   "uploaded" to AMA's account with Porn.com.   *See*, Doc. 27-3.   (Only AMA can

- 4 -

1    "upload" videos to its account, meaning Mr. Bradbury claimed AMA uploaded them.)

2    Now, in his new Declaration, Mr. Bradbury claims that approximately 1,000 of the

3    videos were not uploaded (or not provided by AMA) but were allegedly *assigned* to the

4    CPA account after some third party had uploaded them to Porn.com.  *See*, Doc. 74-1.

5    Mr. Bradbury's testimony has changed significantly.

6         20.    The "evidence" that accompanies Mr. Bradbury's Declaration shows just

7    *one video* in AMA's account, which they ask this Court to presume means they have

8    properly acted and properly paid AMA.  Showing that *one* video, Defendants argue they

9    were entitled to infringe approximately 1,000 AMA videos.

10        21.    To be specific, the evidence they posted to support this new assertion

11   shows nothing more than *one* video assigned to AMA's account, and that video allegedly

12   earned **$1.28 in the last 6 months**.

13        22.    Nothing provided in the Reply or Declaration(s) show evidence of any

14   alleged "payments" made to AMA.  The screenshot of $1.28 is nothing more than that – a

15   screenshot.  There is zero proof of any payment.

16        23.    Even if somehow Defendants paid AMA for the use of third-party-uploaded

17   content (somehow "assigned" to AMA's account), AMA still did not know about this

18   scheme or agree to it.  AMA did not ratify the CPA or accept these unilateral terms.

19   AMA was certainly never advised of this scheme or any such "payments" made to it.

20        24.    Even if this Court believed every new argument and the newly-

21   manufactured evidence by the Defendants, there is no truth that $1.28 in "shared

22   revenue" can be interpreted as "powerful evidence" that AMA acquiesced to this scheme

23   as the Defendants argue.  This simple screenshot (without backup proof) and the alleged

24   payment of $1.28 in revenue, is not "powerful" to believe Defendants' new story.

25        25.    AMA had absolutely no knowledge or understanding that it was being

26   compensated for illegal uploads at any time and still questions Defendants' new story.

26.    AMA does not concede that it was ever compensated for the illegally-uploaded or "assigned" videos.  *AMA would have absolutely never allowed or permitted the distribution of illegal videos or the assignment of these videos to its account.*

27.    AMA is not in the business to license its full-length videos for pennies on the dollar, or in the case of the evidence, for $1.28.

### ***Defendants' Admissions Regarding the Banner Advertisements***

28.    In addition, the Defendants now acknowledge that the banner advertising infringement was not done by third parties but that they were *internal ads*, manufactured and distributed by the Defendants in ways that were never considered under the CPA and for no financial benefit to AMA. (In originally seeking to defeat jurisdiction, Defendants claimed that the ads were done by third parties.)

29.    Defendant Koonar argues the *internal ads* were created from Content AMA provided.  This is wrong.  One of the banners has an unidentifiable model to the ordinary viewer, however AMA was able to locate the promo video, and the banner edit was not part of any of the footage of that promo video AMA provided to GIM.

30.    Defendant Koonar has remained silent on the infringement as it relates to the images that were used in the design of Porn.com, from which no user could have possibly altered or manipulated those images, specifically the images designers used for specific Categories images, or whether these Categories images were somehow provided. AMA never provided images to GIM; these images were not "provided" by AMA in any manner whatsoever.

### ***Defendants Concede Jurisdiction***

31.    Lastly, the Defendants argue they are assignees of the CPA and affiliates to one another.  They establish they are affiliates through superficial testimony not supported by any evidence.  They then argue they are assignees without actually pleading the CPA was assigned.

32.     Regardless that there is NO evidence of "assignment" by GIM Corp. under the CPA (and it is a *Non-Transferable license* agreement, in any event), Mr. Bradbury proves that **Netmedia** is responsible for "reviewing" uploaded content on Porn.com; **Netmedia** assigns videos into AMA's PaidPerView account with GIM; **Netmedia** identified more than 1,000 videos of AMA that contained infringing works and "assigned" them into its account; and, **Netmedia** alleges to have paid AMA.  These facts support AMA's argument that Netmedia truly runs www.Porn.com and is subject to U.S. jurisdiction.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of November, 2016 at Las Vegas, Nevada.

_____
Adam Silverman

- 7 -