LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMA Multimedia, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Sagan, Ltd., a Republic of Seychelles company, individually and d/b/a Porn.com; Cyberweb, Ltd., formerly MXN, Ltd., a Barbados Company, individually and d/b/a Porn.com; Netmedia Services, Inc., a Canadian Company, individually and d/b/a Porn.com; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; David Koonar, an individual, *et. al.,*<br><br>Defendants. | Case No. CV-16-1269-PHX-DGC<br><br>**PLAINTIFF AMA MULTIMEDIA, LLC'S OPPOSITION TO DEFENDANT CYBERWEB, LTD.'S MOTION TO DISMISS PURSUANT TO DOCTRINE OF FORUM NON CONVENIENS**<br><br>**(Oral Argument Requested)** |

## I.    INTRODUCTION

Plaintiff, AMA Multimedia, LLC (hereinafter "AMA") respectfully requests that this Court deny Defendant Cyberweb, Ltd.'s Motion to Dismiss Pursuant to Doctrine of Forum Non Conveniens. The entirety of Cyberweb's Motion is reliant upon a forum selection clause in a Content Partnership Agreement ("CPA"). Since the CPA clearly does not apply to the allegations levied by AMA in its First Amended Complaint, Cyberweb's motion must be denied.

## II. BACKGROUND

### A. The Facts Stated in Cyberweb's Motion to Dismiss (Doc. 70)

Facts relevant to Defendant Cyberweb's Motion to Dismiss are the same as the facts relevant to Defendant Netmedia Services, Inc., GLP 5, Inc., Sagan Ltd. and Koonar's Motions to Stay as well Defendant Koonar's Motion to Dismiss Pursuant to Doctrine of Forum Non Conveniens. Therefore, AMA incorporates all procedural facts presented in AMA's Oppositions by this reference. *See*, Docs. 33, 52, 66 and 68.

In Cyberweb's entire Motion to Dismiss, it never argues that AMA "knew of" or "consented to" publication of AMA content that AMA did not itself provide to Porn.com. Cyberweb never provides any evidence that it acted in accordance with the CPA by paying royalties to AMA for pirated content. Instead, Cyberweb *only* argues that "even if" the Defendants had uploaded infringing content without AMA's approval or consent, it would "have the right to do so by virtue of the … CPA." Doc. 70 at p. 15 of 22.

### B. The Anticipated Facts on Reply

Although Cyberweb did **not** argue AMA's consent or knowledge of publication in its Motion, Defendant David Koonar recently raised these facts/arguments in his Reply on his Forum Non Conveniens arguments. *See*, Doc. 74. Because those facts were never raised before (in the last three (3) months of motions), nor in the Barbados Lawsuit or in settlement discussions, AMA was forced to seek Leave to file a Sur-Reply. *See*, Doc. 78.

AMA has every reason to believe that Cyberweb will now do exactly what Defendant Koonar did and raise its new facts/arguments in its Reply. While AMA believes this Court **should not consider** new issues Cyberweb raises on Reply, AMA briefly addresses the new issues here to avoid filing another request for leave or another "Sur-Reply" as this Court has already cautioned the parties not to do so. (Doc. 35).

On Reply (Doc. 74), Koonar presented a new scheme under which the Porn.com Defendants have taken AMA videos not uploaded by AMA and supposedly "assigned"

them to AMA's account established under the CPA. (*See*, Docs. 74, 74-1 and 77-78). Using a Declaration of Netmedia's V.P., Netmedia claims to have "implemented a review process" to specifically review for "watermarks" that indicate copyrighted works.[1] *Id*. Koonar admits that Netmedia took AMA content that AMA had not uploaded, and Netmedia claims to have "assigned" this copyrighted content into AMA's "account" under the Content Partnership Agreement. *Id*. Despite that Defendants never pled this previously, Defendants ***now*** claim that Netmedia has been manually reviewing all user-uploaded content and evaluating watermarks to determine unauthorized uploads from third parties since at least 2012. *Id*.

Netmedia claims that when/if it found infringing material from a content partner that was not uploaded by a content partner, Netmedia made the unilateral decision to treat it as licensed and provided by the content partner under the CPA – rather than deleting the illegal video(s). Netmedia allegedly made this choice even though Netmedia is not a party to the CPA. And, Netmedia allegedly conducted these practices even though Defendants never disclosed the facts to any of the content partners under the CPA (and in direct disregard of the terms of the CPA itself). *See, e.g.*, Docs. 77-78; *see particularly*, Docs. 78-3 and 78-4 (Content producers who have no stake in this litigation have sworn, under oath, that Netmedia's "scheme" was not disclosed to them and that Netmedia is violating the CPA if it truly "assigns" videos that are known to be illegally uploaded.) [2]

---

[1] "Watermarks" on AMA videos are obvious branding, on *every second* of the video(s), with the original source of the website the content is from, clearly identifying AMA as the copyright owner. These watermarks appear as opening and closing animations to the videos, and a URL in the corners of the videos on every frame or second of the video.

[2] AMA cites Doc. 78, though it is a Sur-Reply that has not yet been lodged by the Clerk (as AMA sought leave for the Sur-Reply) (Doc. 77). Even if leave for the Sur-Reply is not accepted by this Court, AMA attaches the sworn Declarations of Adam Silverman (**Exhibit A**), David DiMartino (**Exhibit B**), Sadiq Muhamed (**Exhibit C**), and Colin Rowntree (**Exhibit D**) here, and they are identical in Doc. 78 and in this Opposition.

1    First, even though Netmedia claims that CPA accounts were/are advised of these illegal activities (by simply placing a "red asterisk" next to copyright infringing videos), such is not the case. *Id.* at **Exhibits A-D.** AMA never observed the "red asterisk" in its CPA account, and AMA never observed any videos in its account that exceeded the approximate maximum of 13 minute promotional materials. *See*, **Exhibit A**. AMA provided *promotional videos* pursuant to the CPA to entice users to join AMA web sites to view full-length videos; providing or assigning full length videos under the CPA would damage AMA's business model. *Id.*

 AMA has reviewed the **one** "red asterisk" video that Netmedia/Bradbury cited to in its Reply Declaration, and that video was not even uploaded to Porn.com until May 1st – <u>after this lawsuit was filed</u>. *See*, Doc. 72-1. Thus, even the single video Defendants claim as "proof" that they "assigned" videos to AMA happened after they were sued.

 Next, Netmedia claims to have paid AMA for using its copyright-infringed videos, but it did not (and cannot) provide proof of payment for the wrongful usage. **Exhibit A**. AMA does not concede that it has been paid for any of the improperly-uploaded videos.

 Finally, while the Defendants assert that AMA still "accesses" its account under the CPA, that is simply not true. *See*, **Exhibits A** and **B**. AMA can merely <u>*log in*</u>, and has done so on numerous occasions since this lawsuit began. *Id.* But as soon as AMA logs into the account, it is presented with a new Content Partnership Agreement for an entirely different company that now operates PaidPerView.com. *Id.* at **Exhibit A**. Unless and until AMA were to agree to the incredulous terms of the new CPA, it remains blocked out of the CPA account. *Id.* AMA has logged into the Porn.com account several times, *trying* to access the data in the account, unsuccessfully. *Id.* Defendants have blocked AMA from accessing *any* information in the CPA account – including previous stats, videos, financial information. *Id.* AMA's account has been like this since May 2016, which just happens to coincide with AMA having filed this suit in April. *Id.*

### C. AMA Preserves Its Record With Regard to Doc. 83 (Pending Strike)

Furthermore, Defendants improperly produced **additional** new evidence in a "Response to AMA's Motion for Leave to File Sur-Reply." (Doc. 83). Because AMA's Sur-Reply is not on record (but only a request for *Leave* to file the Sur-Reply), Defendants' introduction of new facts, arguments, Declarations, and "evidence" in "Response" to the Sur-Reply is improper. AMA has filed a Motion to Strike Doc. 83 as it is procedurally improper *and* because it raised new factual and legal issues without leaving AMA any remedy to respond or address the inaccuracies contained therein. (Doc. 84). AMA simply wishes to preserve its record here and its prior request that **if** this Court considers Doc. 83 for any reason, then AMA and Adam Silverman respectfully ask to be permitted supplemental briefing to address it and to explain how AMA's positions are entirely consistent. AMA/Mr. Silverman are not the "liars" that the Defendants boldly call them multiple times throughout Doc. 83.

### III. LEGAL ARGUMENT

First, AMA asserts that Cyberweb may not raise new facts or evidence on its Reply (as Defendant Koonar did). Cyberweb's Reply should be limited to the points raised in the Motion, stopping the need to "Sur-Reply" and further improper briefing.

Second, AMA reminds this Court that the CPA remains a "red herring" by the Defendants. The signer/maker of the CPA (GIM Corp.) is not even a party in this case. Moreover, none of the Defendants' argument justify AMA's allegations that the Defendants themselves illegally posted AMA's videos.

Finally, to the extent that the issues raised by Cyberweb are identical to those raised by Defendant Koonar, AMA hereby incorporates its Opposition to Defendant Koonar's Motion to Dismiss Pursuant to Doctrine of Forum Non Conveniens by this reference. (Doc. 68). This includes that Barbados does not solve any evidentiary

problems, witness issues, nor does it present a more necessary location for evidence. *Id.* This also includes the argument that the forum selection clause is unreasonable and, therefore, legally invalid. *Id.* Besides those previously-made arguments, AMA addresses here the additional issues specifically raised by and specifically pertaining to Cyberweb.

**A.   The Forum Selection Clause Does Not Apply to Cyberweb.**

**1.   Cyberweb is not an "Affiliate," "Assign," "Agent," or Third Party Beneficiary to the GIM Corp. Agreement.**

Cyberweb argues it is an affiliate of GIM, and that the last phrase of §10.3 in the CPA ("This Agreement shall be binding upon, inure to the benefit of, and be enforceable by and against… permitted assigns") makes Cyberweb a Licensee under the agreement as a permitted *assign* because it is an *affiliate*.

First, after numerous opportunities to do so, Defendants have failed to establish that they are "affiliates" of GIM. Defendants have stated that GIM Corp. only has some type of *indirect* ownership interest in Cyberweb without explaining that ownership or how it affects the relationship between the two entities.[3] Cyberweb has intentionally omitted how the common "ownership" relates to the operation of Porn.com. The Ninth Circuit has previously determined the plain and ordinary meaning of "affiliate," as "a company effectively controlled by another or associated with others under common ownership or control." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009). Thus, in order to establish that Cyberweb (or any Defendant) is an affiliate of GIM, Defendants have to establish that Cyberweb is controlled by GIM or under

---

[3] The only "evidence" set forth is a general nebulous statement in the Declaration of Kristen Richardson that <u>the owner of GIM</u> also has substantial interest (undefined) in Cyberweb. In addition to failing to describe the *actual* relationships between the companies, Defendants have failed to provide the Court credible evidence supporting these general assertions. The connection described in Richardson's Declaration simply fails to meet the definition of an "affiliate."

- 6 -

common ownership/control as with GIM sufficient to establish an "affiliate" relationship. Cyberweb has not presented any such evidence, and "affiliate" status cannot be inferred.

There is evidence that Mr. Koonar, individually, is the owner of all of the entities including Cyberweb (and Porn.com).[4]  Mr. Koonar **is** personally attached to the Porn.com domain registration, just as MXN, Ltd. (the predecessor to Cyberweb) is listed.  *See*, **Exhibit E** attached here (Domain Registration).  Once again, this does not establish that Cyberweb and GIM are "affiliates," but rather shows that Mr. Koonar has some ownership in each of the entities.  This still does not confer CPA rights to Cyberweb.

Second, Defendants have similarly failed to set forth any evidence that there was an **actual assignment** at any point, either now or prior to the inception of this lawsuit. Black's Law Dictionary defines assignment as follows: "The act by which one person transfers to another, or causes to vest in that other, the whole of the right, interest, or property which he has in any realty or personalty, in possession or in action, or any share, interest, or subsidiary estate therein. More particularly, a written transfer of property, as distinguished from a transfer by mere delivery."  The CPA **specifically** uses the term "assign," as opposed to mere delivery.  Thus, for Cyberweb, or any other Defendant to be an assign, there must be a written document establishing that such assignment occurred. There are none here.  Defendants have never provided any evidence of any "assignment," nor have they shown a date of such "assignment."  Cyberweb has not pled "assignment" in any way.  Every time Defendants rely on the CPA, they clearly state that the CPA is between AMA and GIM, providing zero evidence how Cyberweb is a permitted assign.

Third, Defendants claim that Cyberweb can enforce the forum selection as an "implied" licensee.  The license is "nontransferable," giving only *GIM* the right to stream

---

[4] In Koonar's Reply to the Motion to Dismiss for Jurisdiction, Koonar states he does not receive a direct financial benefit because he only draws a salary from GIM and/or Netmedia.  He goes silent on any **ownership** he has in Cyberweb.

- 7 -

promotional content on sites where Traffic Force controls the advertising. CPA at §1.1. AMA does not dispute that GIM can stream content on websites it does not own; rather, GIM cannot confer license rights to the owner(s) of those sites. Whether GIM chooses to stream on a website owned by Cyberweb, Cyberweb does not obtain licensing rights and/or the rights to enforce the CPA as a result. Cyberweb mixes apples and oranges.

Fourth and finally, the Defendants argue that Cyberweb can enforce the CPA as an agent or third party beneficiary of GIM. Cyberweb does not make it clear how it became a "third party beneficiary," nor does it explain its agency relationship. Blanket statements do not confer rights on Cyberweb "just because" it has said so. Moreover, §10.2 of the CPA expressly **prohibits** either AMA or GIM from binding the other to any "third parties." That provision expressly negates a third-party beneficiary reading of the CPA, even if the CPA applied here (which it does not).

Very simply, Cyberweb has zero **evidence** to support its theory that the CPA applies to it (or that it can enforce the forum selection clause).

**2.     The Conduct Alleged is Not "Closely Related" to the CPA.**

Defendants further argue that Cyberweb can enforce the forum selection clause because the alleged conduct "closely relates" to the subject matter of the CPA, citing *Manetti-Farrow* and *Holland Am. Line, Inc.* However, as has been briefed and ruled by this Court, the conduct alleged by AMA does not "closely relate" to the CPA. (Doc. 64).

The CPA only allows GIM (Licensee) to publish, display or distribute content that **AMA** "submits or provides" to it for distribution. CPA at §1.1, §4.1, §4.6. Direct copyright infringement, where Cyberweb (and Netmedia) uploaded pirated AMA content from the Internet, is not "closely related" to the licensing rights granted in the CPA. *Id*. at Doc. 64. If parties were allowed to pirate/steal, there would be no need for licensing agreements, and as this Court has already (properly) ruled, the purported "license defense" does not apply to blatant copyright infringement. *Id*.

- 8 -

**B. The Forum Selection Clause Does Not Apply To AMA's Claims.**

Defendants set forth three (3) arguments that the forum selection clause applies to AMA claims. In all 3 instances, the Defendants fail to establish a non-frivolous argument regarding the application of the CPA.

**1. The Proper Inquiry Is Not Whether AMA's Claims Relate to Any Aspect of the Parties' Relationship.**

Cyberweb claims that the Court's application of *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.,* is contrary and in irreconcilable conflict with Ninth Circuit authority because that Court required that the party seeking to enforce a forum selection clause raise a "non-frivolous dispute regarding the scope of a patent license." 650 F.3d 1355 (Fed. Cir. 2011). This is not irreconcilable with the Ninth Circuit.

First of all, the *Gen. Protecht* case actually *allowed* Defendants to apply the forum selection clause (and clearly could not harm the Cyberweb if it could actually meet the analysis in the same manner.) The only reason Cyberweb complains about the application in *Gen. Protecht* is because it knows its license defense is **clearly** frivolous. [Cyberweb (among the other Defendants here) attempt to argue that the CPA permits them unfettered access and rights to any and all AMA Content, regardless of whether AMA "provides" the Content and regardless of where the Defendants obtained the Content.] Such assertion is frivolous and defies all **logic**, in addition to defying the CPA. *See*, CPA at §1.1 (requiring AMA to "submit or provide" its Content to GIM Corp.), §1.3 (only the Content that AMA provides is licensed to Licensee), §4.1 (Licensor (AMA) "shall provide the content" and "shall provide the materials" to GIM Corp.), §4.3 (AMA "reserves the right not to provide" GIM Corp. with content), §4.6 (AMA "shall have sole responsibility for providing" its "Content to Licensee"), Exhibit B ("Acceptable Methods of Delivery," outlining 4 methods in which AMA will deliver/provide Content to GIM.). Nothing in the CPA or common law allows pirating of AMA's copyrighted work. *Id*.

- 9 -

1  Next, Cyberweb relies on both *Manetti-Farrow* and *Cedars-Sinai Medical Center v. Global Excel Management, Inc.,* but neither of those cases required the Ninth Circuit to handle circumstances where a purported "license defense" was so clearly frivolous. In both cases, absent a "frivolous" argument, the Ninth Circuit determined that an analysis of each of those particular contracts required interpretation, and such interpretation subjected the matters to the forum selection clause(s). By contrast, the Second Circuit squarely addressed the type of matter/issues presented in this case. In *Altvater Gessler-J.A. Baczewski Int'l. (USA) Inc. v. Sobieski Destylarnia, S.A.*, the Court addressed whether a forum selection clause should apply when a party's claims "do not arise out of the licensing agreement" with one another. 572 F.3d 86, 89 (2nd Cir. 2009). There, the Court balanced the need to honor a forum selection clause with the situation where the "contract" could not reasonably be applied as a defense at all. *Id*. Obviously, the Court did not find it in the interests of judicial economy to dismiss an action when the arguments related to the contract were frivolous. *Id.; see also, Philips v. Audio Active Ltd.,* 494 F.3d 378, 284 (2d Cir. 2007).

Neither *Gen. Protech* nor the Second Circuit's analysis conflict irreconcilably with the Ninth Circuit, but rather compliment and refine the Ninth Circuit's holdings when facing a clearly frivolous attempt to apply a contract defense in an infringement action, such as the case here.

Moreover, Cyberweb wants this Court to provide an expansive reach of the CPA, attempting to use the catch-phrases "relating to" the CPA instead of "arising out of" the CPA, and they cite to, "all aspects of the parties' relationship," relying on *Schoenduve Corp. v. Lucent Technologies, Inc*., 442 F.3d 727, 732 (9th Cir. 2006). This misses important distinctions: <u>Cyberweb is not a party to the CPA</u>. **None** of the Defendants are parties to the CPA. Defendants Koonar and GLP 5 are not parties in the Barbados Suit. Copyright infringement is not permitted by nor covered under the CPA. So, while

Cyberweb tells this Court to apply an "expansive" phrase to the "parties' relationship," it can never establish that "the claims and parties involved" in this suit are even subject to the CPA/forum selection clause in the first place. *Altvater, supra*; citing *Philips, supra*.

Essentially, Cyberweb argues that there could never be any "frivolous" defense because a forum selection clause applies to ALL aspects and ANY potential claims between AMA and ANY DEFENDANT related to GIM Corp. in any way, shape or form. That is not what *Schoenduve Corp.* or *Mediterranean Enterprises, Inc. v. Ssangyong Corp.,* 708 F.2d 1458, 1464 (9th Cir 1983) hold. In *Schoenduve*, the parties entered into a manufacturer's representative agreement (MRA), authorizing Schoenduve to solicit orders for Lucent's products. Lucent terminated its agreement with Schoenduve two days before signing a multi-million dollar sale with Apple Computers. Schoenduve then sued, seeking commissions for its role in procuring the Apple deal. Lucent moved to compel arbitration pursuant to the MRA, which applied to any "dispute arising out of or relating the MRA, or its breach." *Id.* at 729.

In what can only be described as an obvious call, the Ninth Circuit affirmed that the arbitration provision attached to Schoenduve's claims for commissions. *Id*. Those claims were specifically pursuant to the terms of the MRA. In so ruling, the Court cited Fifth Circuit case law finding that "any dispute 'relating to or arising out of' the agreement" meant that the parties intended "the clause to reach all aspects of the relationship." *Id.* at 732. The Court found that such interpretation extended to claim for commissions based on quasi-contract or estoppel. *Id.* There, Schoenduve's claims were clearly pursuant to an established contractual relationship with Lucent. While the Court affirmed the rule that "relating to or arising out of" established intent of the parties to have a clause apply to all aspects of the parties relationship – the Court did not extend this rule as far as finding intent to apply to all conceivable claims between the parties.

The *Schoenduve* Court did not rule that a forum selection clause would reach

claims that clearly fell outside of the parties' relationship. For example, had Lucent terminated its agreement with Schoenduve two days before signing a multi-million dollar sale with Apple Computers and then learned that Schoenduve stole millions of dollars in copyrighted works (and published them), Lucent would clearly have a copyright claim against Schoenduve regardless of its prior MRA with him. That is precisely the case here. Just because AMA had a licensing agreement with one party (GIM, not a party in this lawsuit), and licensing occurred under that CPA, does **not** mean that open theft, pirating or infringement by other parties (Netmedia, Cyberweb, Sagan, Traffic Force, or any claimed "affiliate") will fall under the business relationship between GIM and AMA. Infringement is a separate and distinct tort, not subject to a non-party's contract defense.

Likewise, the *Mediterranean Enters*. matter, the Ninth Circuit addressed the phrase "arising under" as more narrowly construed than "arising out of or relating to" in the context of an arbitration clause. Interestingly, in reaching this determination, the Ninth Circuit cited cases from the Second Circuit, and both Circuits approach the language "arising out of or related to" precisely the same. Though Cyberweb overtly claims that the language "arising out of or related to" means that the Ninth Circuit would apply its forum selection clause to "virtually every subsequent dispute between the parties," that is not the rule. "Arising out of or relating to" means "out of or in relation to or in connection with this contract, or for the breach thereof." *Mediterranean Enters., supra,* 708 F.2d at 1468. That is *not* identical to "every potential dispute." *Id.*

### 2. The Indemnification Clause of the CPA Does NOT Expressly Govern AMA's Claims.

Cyberweb argues that §7.1 of the CPA, the Indemnification Provision, would require AMA's copyright infringement claims to be litigated under the CPA. Interestingly, Cyberweb leaves out essential language when providing this provision to the Court. In its **entirety**, the provision reads:

- 12 -

> Licensee shall defend, indemnify and hold Licensor harmless from any and all loss, cost, liability, damage and expense (including reasonable attorneys' fees and other legal costs) incurred by Licensor arising out of or in connection with Licensee's breach of its obligations under this Agreement or a violation of the terms or conditions of this Agreement or any other act or omission of Licensee. Licensor shall promptly advise Licensee of any such claim, shall give Licensee the opportunity to defend, compromise or settle the same, ***as Licensee in its sole discretion may determine***, ***shall cooperate fully with Licensee, at Licensee's cost, in the defense of same, and shall not settle any such claim without first obtaining Licensee's written consent***, which shall not be unreasonably withheld or delayed. (Emphasis added).

If this provision applied to AMA's copyright infringement claims, and if this provision were interpreted as Cyberweb suggests, then **Defendants would be in total control of prosecuting the claims asserted against them**. The position is illogical.

Cyberweb actually asks this Court to believe that §7.1 was meant to give Defendants SOLE DISCRETION to determine: *if* they wanted to defend the claims by AMA, *if* they wanted to compromise or settle the claims, and the vale/amount of settlement (as AMA needs their "written consent" before settlement can be achieved). Furthermore, Cyberweb suggests that AMA has to "cooperate fully" with Defendants in defending the very infringement claims that AMA has launched against them.

A written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations. *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 2000). Thus, in interpreting the indemnification provision, the provision must be read in its entirety. In doing so, it is clear that this provision was *never* intended to cover claims that AMA would have against the Defendants for wrongful acts by the Defendants committed towards AMA. It would not be a **reasonable** interpretation of the §7.1 Indemnification Provision that AMA would be: a) required to give up control of its copyright infringement claims to the same Defendants it is suing for those claims; and, b) required

- 13 -

to cooperate with Defendants in in their defense of AMA's own claims against them. Read/interpreted as Cyberweb suggests, §7.1 would effectively eliminate any Licensor from ever bringing any claim whatsoever against the Licensee.

Moreover, as Cyberweb is not a Licensee under the CPA (nor are the other Defendants in the case), not only is the indemnification provision inapplicable, but Cyberweb is not in any position to invoke the provision anyway.

### 3. Cyberweb's Supposed License Under the CPA Does Not Apply to Conduct Alleged by AMA.

Cyberweb continues to argue that its conduct is permitted by the CPA and that the CPA would allow all Defendants to take **any** of AMA's content on its own, using them on Porn.com, with or without AMA's knowledge or authority. Not only have these arguments already been briefed (Docs. 33, 52, 66 and 68 are incorporated here by this reference), but this Court has already ruled twice that the Defendants' position is incorrect. *See*, Docs. 64, 69. Cyberweb just simply ignores this Court and its rulings.

It is crucial in reviewing this issue to remain focused on the Purpose of the CPA, to **provide** GIM certain content to stream on websites and deliver to end users. To accomplish that purpose, AMA granted GIM a *nontransferable license* and then provided promotional content, in a manner proscribed by the CPA, subject to that license. While Defendants want to argue that "provide" does not mean "provide," the methods of providing/delivering content are spelled out in the CPA. And, while Defendants want to argue that multiple other entities – Cyberweb, Sagan, Netmedia, and any other entity they choose to create, make up, or "affiliate" with – can then also obtain licensing rights to AMA's content, that does NOT comport with the stated purpose of the CPA. These expanded definitions contradict the actual language of the CPA. Cyberweb (and the other Defendants) ask this Court to read the CPA into a one-sided agreement and kick this infringement claim to Barbados based on their bastardized misinterpretation.

- 14 -

### 4. Defendants' Newly Disclosed Scheme Does Not Resolve The Frivolous Nature of its Attempt to Apply a CPA to AMA's Copyright Infringement Claims.

As stated briefly above, Defendant Koonar raised new facts/arguments on Reply (Doc. 72) that were not pled in his Motion to Dismiss. AMA was forced to file a Motion for Leave to file a Sur-Reply and lodged a proposed Sur-Reply (Docs. 77-78), but those issues have not yet been determined by the Court. Although Cyberweb did not raise these facts and arguments in its Motion to Dismiss, AMA is fearful that Cyberweb will do the exact same thing as Defendant Koonar and raise the matters on Reply, leaving AMA with no opportunity to address the issues. Because Cyberweb did not properly raise the matters in its Motion to Dismiss, this Court should **not** consider anything new on Reply. However, in an abundance of caution, AMA briefly deals with the new facts and arguments here in order to avoid further requests for leave and/or Sur-Replies.

Simply put, in Defendant Koonar's Reply, he and Netmedia argued **for the first time** that AMA had knowledge and acquiesced to Defendants taking copyrighted content.

Netmedia (by a Declaration of its Vice President) claimed that it had been manually reviewing all of the videos uploaded on Porn.com to review for "watermarks" (copyright) owned by content producers who are part of the Content Partnership Program through PaidPerView.com. Doc. 72-1. Netmedia claimed that when it found copyrighted videos – not uploaded by the content producer (like AMA) – it would move or "assign" the videos into the partner's PaidPerView ("PPV") account under the CPA. *Id*. Netmedia claimed it had been doing this since 2012. *Id*. And, it claimed that it had been denoting these "assigned" videos with a "red asterisk" inside the PPV account so that partners like AMA knew what was going on. *Id*. They claim to have paid AMA for the illegally uploaded content that AMA did not provide. *Id*.

First of all, the timing of this new "disclosure" is extremely dubious. If Defendants were actually reviewing and "assigning" copyrighted videos into AMA's

account, this clearly would have been the Defendants' stance upon receiving the draft Complaint back in December 2015. It was not raised then, it was not raised in months of settlement discussions, it has not been raised in the Barbados litigation to date, **and** none of the Defendants used these "facts" in their Motion(s) to Dismiss before this Court. Strangely, this new "disclosure" came up on Reply only after this Court ruled that,

> **"The Porn.com Entities do not argue that AMA knew of or consented to publication of this content. Nor do they present any evidence that they acted in accordance with the CPRA in handling this content by, for example, paying royalties to AMA."**

Doc. 64.

It truly appears as though Defendants are making up new evidence in response to the Court's prior ruling. If the scheme were **real**, it would have been raised by Defendants Netmedia, GLP 5, Sagan, Koonar, or even Cyberweb in their Motion(s) to Dismiss rather than only in *Reply*, after the Court pointed out how no Defendant(s) acted in accordance with the CPRA. *Id*. at Doc. 64, page 10 of 12.

Secondly, even disclosing this "program," Defendants fail to address that the **infringing** videos were not "assigned" into AMA's account. They had the opportunity to do so, but they never argued that the videos **at issue here** were "assigned" or paid for. Conversely, AMA has reviewed the one video that Netmedia/Bradbury claims was "assigned," and that video was uploaded to Porn.com after this lawsuit was filed. *See*, Doc. 72-1. It is quite deceitful to tell this Court that "assignment" had been happening for years when the sole evidence shows Netmedia "assigned" one video after being sued.

The scheme that Defendants now describe is one where third parties upload content to Cyberweb, and Netmedia/Porn.com will "assign" that infringing content into a content-producer's account. By contrast, AMA has alleged (and believes) that the Defendants themselves uploaded AMA's content for illicit use on Porn.com. So even if this newly-disclosed program were in place, it would not apply to the allegations at issue.

- 16 -

Third, contrary to this new disclosure, this scheme of "assignment" and the supposed "red asterisk" feature did not exist prior to the filing of this lawsuit. *See*, **Exhibits A-D**. Not only does AMA contest the Defendants' story, but non-party witnesses who are also parties to CPAs with the Defendants dispute that the "assignment" and "red asterisk" existed as Netmedia attested. *See specifically*, **Exhibits C-D**.

Hopefully this Court will disregard Defendants' new "evidence" and argument because it is a ruse. But even if this Court considers the new disclosure, Netmedia's alleged "review policy" and its unilateral "assignment" of user-posted content would violate the CPA under §§1.1, 1.3, 4.1, 4.3, 4.4, 4.6, and the stated Purpose of the CPA, all of which require AMA to **provide** the content that it licenses to GIM Corp. for streaming and downloading to end-users.

## IV.  CONCLUSION

For the reasons stated herein, AMA respectfully asks this Court to deny Cyberweb's Motion to Dismiss on the doctrine of Forum Non Conveniens.

DATED this 15th day of November, 2016.

**MANOLIO & FIRESTONE, PLC**

By: /s/ Veronica L. Manolio
Veronica L. Manolio
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
*Attorneys for Plaintiff*

- 17 -

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of November, 2016, I electronically transmitted the foregoing document to the Clerk's office using the CM/ECF system for filing.  Copies will be transmitted via CM/ECF to the following recipients:

Erica J. Van Loon
Glaser Weil Fink Howard Avchen & Shapiro LLP
10250 Constellation Blvd.
Los Angeles, CA 90067
evanloon@glaserweil.com
*Attorneys for Defendants GLP 5, Inc.
and Netmedia Services Inc.*


By:    /s/ Gina Murphy