ERICA J. VAN LOON (admitted *Pro Hac Vice*)
evanloon@glaserweil.com
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

*Attorney for Defendants*
*Cyberweb Ltd., David Koonar,*
*Sagan Limited, GLP 5, Inc. and*
*Netmedia Services Inc.*

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| AMA MULTIMEDIA LLC, a Nevada limited liability company,<br><br>                    Plaintiff,<br><br>v.<br><br>SAGAN LIMITED, a Republic of Seychelles company, individually and d/b/a PORN.COM; CYBERWEB LTD., formerly MXN LTD., a Barbados Company, individually and d/b/a PORN.COM; NETMEDIA SERVICES INC., a Canadian Company, individually and d/b/a PORN.COM; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; DAVID KOONAR, an individual; and John Does 1-20,<br><br>                    Defendants. | CASE NO.: CV16-1269 PHX DGC<br><br>Hon. David G. Campbell<br><br>**REPLY IN SUPPORT OF CYBERWEB LIMITED'S MOTION TO DISMISS BASED ON *FORUM NON CONVENIENS*** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1
II. ARGUMENT ......................................................................................................... 2
    A. The Forum Selection Clause Applies To AMA's Claims ............................ 2
        1. *Schoenduve* Applies Here ................................................................. 2
            a. *Schoenduve* Is Not Limited To Contract Defenses ................. 2
            b. Cyberweb Is A Party To The CPA ........................................... 3
        2. The Out-Of-Circuit Authority AMA Cites Is Inapposite ................... 5
        3. Defendants' License Is Clearly Non-Frivolous ................................. 6
            a. AMA Ignores Sections Of The CPA That Use The Term "Provide" Broadly .................................................................... 6
            b. AMA Ignores Section 3.9 of the CPA ..................................... 6
            c. AMA Ignores Key Course Of Performance Evidence ............ 7
                (i) The Parties Have Consistently Treated User-Uploaded Content As Subject To The CPA .................. 7
                (ii) AMA Claims It Was Unaware Of The Assignment Program, But Chat Logs Prove Otherwise ........................ 7
                (iii) AMA's Other Assertions Regarding The Assignment Program Are Either Nonsensical Or False ........................ 9
        4. The CPA Expressly Governs AMA's Claims .................................. 10
        5. Some Of AMA's Claims Are Based On Content It Uploaded ......... 11
III. CONCLUSION .................................................................................................... 11

# TABLE OF AUTHORITIES

Page

### CASES

*Altvater Gessler–J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*,
    572 F.3d 86 (2d Cir. 2009) ................................................................................... 5, 6

*Gen Protecht Grp., Inc. v. Leviton Mfg. Co.*,
    650 F.3d 1355 (Fed. Cir. 2011) ............................................................................ 5, 6

*Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*,
    949 F. Supp. 1427 (N.D. Cal. 19977) ...................................................................... 6

*In re King-Porter Co.*,
    446 F.2d 722 (5th Cir. 1971) ................................................................................... 4

*Intelligraphics, Inc. v. Marvell Semiconductor, Inc.*,
    2009 WL 330259 (N.D. Cal. Feb. 10, 2009) ........................................................... 4

*Keller v. McGraw-Hill Global Educ. Holding, LLC*,
    2016 WL 4035613 (E.D. Pa. July 28, 2016) ......................................................... 11

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
    858 F.2d 857 (9th Cir. 1988) ........................................................................ 1, 5, 11

*Martha Graham Sch. and Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*,
    43 F. App'x 408 (2d Cir. 2002) .............................................................................. 4

*Mediterranean Enter., Inc. v. Ssangyong*,
    708 F.2d 1458 (9th Cir. 1983) ................................................................................ 3

*Schoenduve Corp. v. Lucent Tech., Inc.*,
    442 F.3d 727 (9th Cir. 2006) ........................................................................ 1, 2, 3, 5

*Stewart v. Hooters of Am., Inc.*,
    2011 WL 2555797 (11th Cir. June 28, 2011) ......................................................... 4

## I. INTRODUCTION

In its Opposition, AMA simply buries its head in the sand, and pretends that troublesome evidence and arguments do not exist. AMA's evasive tactics are telling.

Under *Schoenduve*, the CPA's "related to" clause applies to **all** aspects of the parties' relationship. Despite this broad language, AMA argues that *Schoenduve* limits a "related to" clause to contract-based claims or defenses. This is clearly wrong. *Schoenduve* was not a contract-based dispute and its holding contradicts AMA's position. AMA also argues that Cyberweb is not a party to the CPA because it has failed to provide evidence it is an assignee under the CPA. AMA simply ignores the record. ECF No. 74-1 at ¶ 7 (declaration stating that all Defendants are assignees of GIM). AMA also ignores its own alter ego allegations, which preclude AMA from treating Cyberweb and GIM as separate entities. And AMA ignores applicable Ninth Circuit implied license authority, as well as the plain language of the CPA that shows Cyberweb is, at minimum, a third party beneficiary under the CPA. Under *Schoenduve*, the forum selection clause applies here.

AMA also does not dispute that if the CPA's indemnification clause (Section 7.1) governs AMA's claims, the forum selection clause applies here. Instead, AMA asks the Court to limit Section 7.1 to third party claims, even though this would be contrary to the plain meaning of the term "indemnify" (which includes direct claims). AMA's position is untenable. Moreover, by asking the Court to re-write Section 7.1, AMA concedes that the CPA must be interpreted in order to resolve its claims, thus invoking the forum selection clause under *Manetti-Farrow*. And AMA simply ignores Section 7.3, the limitation of liability clause that also applies to AMA's claims.

And even if one (erroneously) assumes that Defendants must present a non-frivolous license defense to invoke the forum selection clause, Defendants easily meet that burden.

First, as Defendants have explained, it is not the case (as AMA argues) that the term "provide" as used in the CPA excludes the provision of content from a website. The exact opposite is true. Three different sections of the CPA (Sections 1.4, 5.1, and Background Section B) expressly refer to content that is "provided" from websites. AMA simply ignores

1

REPLY IN SUPPORT OF CYBERWEB'S MOTION TO DISMISS BASED ON *FORUM NON CONVENIENS*

these provisions. Far from being frivolous, this argument stands unrebutted.

Second, Defendants have explained that Section 3.9, which expressly extends the CPA's revenue sharing program to content "originating" from a website, would be rendered superfluous if, as AMA argues, such content were unlicensed. Again, AMA cannot muster a counterargument.

Third, the parties' course of performance confirms that the CPA is not limited to content provided directly by AMA. Over the past three years, Defendants have paid AMA its share of revenue generated by more than a thousand AMA videos that **users** (not AMA) uploaded to Porn.com. AMA agreed to this program, and accepted these payments without objection. In its Opposition, AMA asserts that it was unaware of this program, and alleges that Defendants are fabricating evidence. ECF No. 89 ("Oppo.") at 16. However, as AMA well knows, chat log evidence proffered by Defendants shows that AMA was not only aware of this program, but expressly approved it. ECF No. 83 at 2-6; ECF No. 83-1, Exs. A and B. Incredibly, AMA does not even attempt to explain the glaring discrepancy between its statements and these chat logs. But ignoring these chat logs will not make them go away. They constitute powerful evidence of the parties' intent, and show that, far from being frivolous, Defendants' interpretation of the CPA is the only one that is consistent with the parties' course of performance.[1] And, again, the extent to which the parties' performance impacts the interpretation of CPA is a matter expressly reserved to the Barbados courts.

## II.     ARGUMENT

### A.     The Forum Selection Clause Applies To AMA's Claims

#### 1.     *Schoenduve* Applies Here

##### a.     *Schoenduve* Is Not Limited To Contract Defenses

As discussed in Cyberweb's opening brief, forum selection clauses differ in scope based on their precise wording. Under Ninth Circuit law, a "relating to" clause like the one

---

[1] AMA incorporates by reference its earlier arguments concerning the validity of the forum selection clause. Oppo. at 5. In response, Cyberweb also incorporates earlier briefing on this subject (*see* ECF Nos. 61 and 74), which shows that AMA's arguments are unavailing.

at issue is not limited to claims requiring interpretation of the agreement, but applies to "**all aspects of [the parties'] relationship**." *Schoenduve Corp. v. Lucent Tech., Inc.,* 442 F.3d 727, 732 (9th Cir. 2006). In its Opposition, AMA does not dispute this statement of the rule.

AMA nonetheless argues that *Shoenduve* limits the scope of a "related to" clause to contract-based claims or defenses. Oppo. 12 ("[i]nfringement is a separate and distinct tort, not subject to a non-party's contract defense."). AMA has *Schoenduve* precisely backwards. The conduct at issue in *Schoenduve* was not contract-based. *Schoenduve,* at 730 (arbitrator found that "Lucent's form of MRA was not intended to cover this type [of] transaction, and did not in fact cover it."). *Schoenduve* nonetheless held that the clause extended to the plaintiff's non-contract claims. *Id.* at 732 ("[relating to clause] was broad enough to include a claim for commissions based on quasi-contract or estoppel.").

If, as AMA argues, "related to" clauses were limited to contract-based defenses, "related to" clauses would be no broader than "arising from" clauses. That is not the case. *Mediterranean Enter., Inc. v. Ssangyong*, 708 F.2d 1458, 1464 (9th Cir. 1983) ("[finding that] 'arising hereunder' is intended to cover a much narrower scope of disputes, i.e., only those relating to the interpretation and performance of the contract itself.").

AMA's claims clearly relate to the *relationship* between AMA and Defendants, and thus are subject to the CPA's forum selection clause.

### b.  Cyberweb Is A Party To The CPA

AMA also asserts that the *Schoenduve* rule does not apply because Cyberweb is not a party to the CPA. AMA is wrong again.

AMA argues that Cyberweb is not a permitted assignee under Section 10.3 of the CPA because Cyberweb is not an affiliate of GIM. This flies in the face of AMA's alter ego allegations. ECF No. 32 at 4 ("All of these entities are alter egos of one another -- not separate, unrelated entities."). In addition, AMA concedes that companies are affiliates when they are "associated… under common ownership," and concedes that Cyberweb has proffered evidence that GIM and Cyberweb share common ownership. Oppo. at 6, fn. 3. While AMA now rather bizarrely questions the credibility of this evidence, Defendants'

evidence (a Declaration from a Cyberweb Director) remains undisputed. Nothing more is needed.

AMA also contends Cyberweb has not provided evidence of an actual assignment, but Cyberweb **has** proffered such evidence. ECF No. 74-1 (Supplemental Bradbury Declaration) at ¶ 7 (all Defendants are assignees of GIM's rights under the CPA); *see also* Declaration of David Koonar In Support Of Cyberweb Limited's Reply In Support Of Motion To Dismiss Based On Forum Non Conveniens, at ¶ 2 (same). And AMA is wrong when it asserts that assignments must be in writing. Restatement Second of Contracts § 324 ("[assignment] except as provided by statute or by contract, may be made either orally or by a writing."); *In re King-Porter Co.*, 446 F.2d 722, 727 fn. 9 (5th Cir. 1971) ("An oral assignment of accounts is fully enforceable…"); *Stewart v. Hooters of Am., Inc.*, 2011 WL 2555797, at *1 (11th Cir. June 28, 2011) ("the district court correctly found an oral assignment reassigning Stewart's rights back to him."); *Martha Graham Sch. and Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 43 F. App'x 408, 413 (2d Cir. 2002) ("the assignment may be oral.").

AMA's implied license arguments are also nonsensical. As Cyberweb has explained, under Ninth Circuit law, an implied license exists when (as here) the contract makes no economic sense without it, or when (as here) the copyright owner knowingly acquiesced to defendants' use of copyrighted material. ECF No. 70 at 7. AMA does not dispute this. Instead, AMA argues (without citation to any authority) that an implied license cannot exist because GIM's license is "nontransferable." This is a *non sequitur*. An implied license is not transferred from anyone to anyone. It arises directly from the parties' conduct.[2] *See, e.g.*, *Intelligraphics, Inc. v. Marvell Semiconductor, Inc.*, 2009 WL 330259, at *12 (N.D. Cal. Feb. 10, 2009) (finding implied license: "Intelligraphics created the software with the understanding it would be given to Motorola for testing. Intelligraphics delivered the

---

[2] Even AMA recognizes that Cyberweb has an implied license, as evidenced by the fact that AMA has not sued Cyberweb based on Porn.com content that AMA directly provided.

1 software to Motorola without imposing any limitations on its use. Intelligraphics did not
2 ever tell Motorola to stop using the software.").

3       Even if Cyberweb were not a party to the CPA (and it is), it would have the same
4 rights under the forum selection clause as a party because its alleged conduct is "closely
5 related" to the subject matter of the CPA. *See, e.g.*, *Manetti–Farrow,* 858 F.2d at 514 n. 5.
6 AMA argues that Cyberweb's alleged tortious conduct is not "closely related" because it is
7 not permitted under the CPA. Oppo. at 8. But conduct does not have to be permitted under a
8 contract to be "closely related" under Ninth Circuit law. *See, e.g.*, *Manetti–Farrow,* 858 F.2d
9 at 514 fn. 5 (alleged tortious conduct of affiliates closely related to contract).

10       AMA also does not dispute that agents and third-party beneficiaries can enforce a
11 forum selection clause. AMA merely argues that "Cyberweb does not make it clear how it
12 became a 'third party beneficiary,' nor does it explain its agency relationship." Oppo. at 8.
13 AMA is playing dumb. The CPA expressly states that AMA's content is licensed for
14 displayed on websites, such as Porn.com, whose advertising is controlled by Traffic Force.
15 ECF No. 27-3, Ex. 5 ("CPA") at Background B and Section 1.1). Obviously, the parties
16 contemplated that the protections of the CPA would extend to Porn.com's owner, Cyberweb.

17       **2.    The Out-Of-Circuit Authority AMA Cites Is Inapposite**

18       No Ninth Circuit court has cited the out-of-circuit decisions in *Gen Protecht* or
19 *Altvater*, nor has any Ninth Circuit court undertaken the approaches outlined in those cases.
20 AMA does not dispute this. The best AMA can do is half-heartedly assert that *Gen Protecht*
21 and *Altvater* are "not irreconcilable with the Ninth Circuit." Oppo. at 9. But they clearly are.

22       As Defendants have explained, both *Gen Protecht* and *Altvater* are completely at
23 odds with *Schoenduve,* because under *Schoenduve* the "related to" clause applies to all
24 aspects of the parties' relationship, including claims not based on contract. In addition, the
25 Court could not undertake the "frivolousness" analysis suggested by *Gen Protecht* without
26 interpreting the CPA; thus *Gen Protecht* is at odds with the Ninth Circuit decision in
27 *Manetti-Farrow,* which expressly reserves interpretation of the contract for the designated
28 forum. The Second Circuit decision in *Altvater* is inapposite for a host of reasons. First,

5
REPLY IN SUPPORT OF CYBERWEB'S MOTION TO DISMISS BASED ON *FORUM NON CONVENIENS*

1  *Altvater* involved an "arising out of" clause that is much narrower than the "relating to"
2  clause at issue here. Second, *Altvatar* is inconsistent with AMA's own admission that a
3  forum selection clause can be triggered by a license defense (ECF No. 68 at 3). And, finally,
4  Second Circuit law differs from Ninth Circuit law on the issue of whether a license defense
5  is within the scope of a forum selection clause. *Graham Tech. Solutions, Inc. v. Thinking*
6  *Pictures, Inc.,* 949 F. Supp. 1427, 1432-3 (N.D. Cal. 19977) (declining to follow Second
7  Circuit precedent because it is inconsistent with Ninth Circuit precedent). In its Opposition,
8  AMA addresses none of these arguments.[3]

### 3.    Defendants' License Is Clearly Non-Frivolous

Even if one (erroneously) assumes that Defendants must present a non-frivolous license defense under the CPA in order to invoke the forum selection clause, Defendants easily meet that burden.

#### a.    AMA Ignores Sections Of The CPA That Use The Term "Provide" Broadly

As Defendants have explained, the CPA repeatedly refers to content "provided" from a website. CPA at Background Section B, 1.4, and 5.1. This rebuts AMA's contention that the term "provide" as used in the CPA is limited to content directly "provided" by AMA via uploads or in specific formats. In its Opposition, AMA does address this argument.

#### b.    AMA Ignores Section 3.9 of the CPA

As Defendants have explained, Section 3.9 makes no sense if AMA Content provided from a website is unlicensed. Section 3.9 sets forth a revenue sharing scheme relating to Content "originating" (i.e., provided) from a website. If Content provided from a website is (as AMA contends) unlicensed, then there would be no reason to discuss revenue sharing with respect to such Content and no reason for Section 3.9 to exist. Thus, AMA's

---

[3] AMA notes that the license defense in *Gen Protecht* was deemed non-frivolous. But this means *Gen Protecht* musings regarding the impact of a frivolous license defense were *dicta*. No court, including *Gen Protecht*, has ever declined to enforce a forum selection clause because it deemed a defendant's license defense to be frivolous.

interpretation of the CPA must be rejected because it would render Section 3.9 either nonsensical or superfluous. In its Opposition, AMA does not dispute this.

        **c.**    **AMA Ignores Key Course Of Performance Evidence**

        **(i)**    **The Parties Have Consistently Treated User-Uploaded Content As Subject To The CPA**

Beginning in 2012, Porn.com began reviewing user-posted Content on Porn.com for watermarks (i.e., identification markers) known to be claimed by CPA partners, including AMA. ECF No. 74-1 (Supplemental Bradbury Declaration), ¶ 2. Content bearing a partner's watermark is "assigned" to that partner's account (i.e., treated as licensed content, and subject to the CPA's revenue sharing provisions). *Id.* Beginning in 2013, Porn.com has identified over one thousand user-posted videos bearing AMA watermarks, and under Section 3.1 of the CPA Porn.com has paid AMA its revenue share for each of these videos. *Id.* at ¶ 3. Beginning in November 2015, AMA account statements on the paidperview.com website mark each user-uploaded video assigned to AMA's account with a red box and asterisk, which when clicked presents a dialog box stating that the video in question has been assigned to AMA's account and stating the amount of shared revenue that video has generated under the CPA. *Id.* at ¶¶ 4, 5. AMA has regularly accessed the platform, and has accepted these payments without objection. *Id.* This is powerful evidence supporting Defendants' interpretation of the CPA.[4]

        **(ii)**    **AMA Claims It Was Unaware Of The Assignment Program, But Chat Logs Prove Otherwise**

AMA asserts that it was unaware of the watermark assignment program, and accuses Defendants of fabricating evidence. Oppo. at 16. It is AMA that is misleading the Court.

On June 24, 2015 Mr. Silverman contacted Netmedia via a Skype chat to discuss user-uploaded content. Kris Richardson (a Cyberweb Director) and Glen Camara (of

---

[4] To the extent AMA alleges that Defendants have failed to make revenue sharing payments with respect to AMA videos Defendants have allegedly posted on the Porn.com website, this is a breach of contract claim that falls squarely within the CPA's forum selection clause.

Netmedia) repeatedly assured Mr. Silverman that any user-uploaded AMA content identified on the Porn.com website was "assigned" to AMA's paidperview.com account, and thus would be subject to the CPA and its advertising revenue sharing provisions. Mr. Silverman agreed to, and at one point insisted upon, this treatment of user-uploaded AMA content:

| | | |
|---|---|---|
| 2:42:49 | kris10.richardson: | Understood, and **anytime there is content that belongs to you we assign it to your account** anyway . . . |
| 2:43:01 | biggyfuckyoucash (Silverman): | id prefer an ad revshare |
| 2:43:12 | biggyfuckyoucash (Silverman): | like you offer on the legal stuff, why shouldn't we get paid on it? |
| 2:43:14 | kris10.richardson: | **same result** |
| 2:43:48 | kris10.richardson: | No I meant your content coming from unauthorized sources on our site |
| 2:43:55 | biggyfuckyoucash (Silverman): | **you assign it to our account?** |
| 2:44:19 | kris10.richardson: | **Is assigned to you, your ad revshare** . . , |
| 2:53:13 | biggyfuckyoucash (Silverman): | [t]he **ad revshare program needs to be extended to our pirated clips**. . . . |
| 3:39:12 | hitman b52 (Glen Camara): | 3) if you have a list of content that is yours, but was uploaded by users, **we will happily add it to your ppv account, as this is the main purpose of the program**. |
| 3:39:40 | biggyfuckyoucash (Silverman): | **much appreciated**. |

ECF No. 83-3 (Richardson Declaration), Ex. A (intervening messages omitted). The terms "PPV" and "ad revshare" and "account" above refer to the paidperview.com revenue sharing account that is the subject of the CPA. *Id*. at ¶¶ 5-8; CPA at Background Section C, Preamble, Sections 1.3, 3.6, 6.3, 9.3, 10.9, and Exhibits A and B.

Later that day, Ross Allan, the advertising director of Netmedia, again assured Mr. Silverman that any user-uploaded AMA content found on the Porn.com website would be "assigned" to AMA's account, subject to the revenue sharing provisions of the CPA.

| | | |
|---|---|---|
| 4:22:22 | Ross Allan | [after Mr. Silverman requested a share |

8

REPLY IN SUPPORT OF CYBERWEB'S MOTION TO DISMISS BASED ON *FORUM NON CONVENIENS*

1274961

| | | |
|---|---|---|
| | | of any revenue generated by AMA user-uploaded content]: **we would pay you out at the rates that you qualify for in PPV** |
| 4:22:26 | | Ross Allan: so **if your rate is** 30% or whatever |
| 4:22:23 | | biggyfuckyoucash (Silverman): on the stuff we submit legally dude - you won't hear a peep |
| 4:22:28 | | Ross Allan: **thats what we do** |
| 4:28:25 | | Ross Allan: keep in touch about this |
| 4:28:31 | | biggyfuckyoucash (Silverman): will do |
| 4:28:37 | | Ross Allan: and meanwhile, **if there is active content on there, I can move it to under your PPV account**, I think |
| 4:28:54 | | biggyfuckyoucash (Silverman): **thats fine** |

ECF No. 83-1 (Allan Declaration), Ex. A. The term "PPV account" is a reference to the paidperview.com revenue sharing account referenced in the CPA. *Id.* at ¶ 5. And the reference to the "30 % or whatever" is a reference to Section 3.1 of the CPA. *Id.* at ¶ 6.

As shown in the 4:28:37 and 4:28:54 Silverman-Allan exchanges, the parties agreed that the CPA applied to revenue generated by user-uploaded content. The parties never discussed this issue again. *Id.* at ¶ 8. And at all times, AMA has been paid its share of revenue generated by its user-uploaded content in accordance with Section 3.1 of the CPA and its revenue allocation rates. *Id.* at ¶ 9. The revenues paid are (and were) specifically disclosed in AMA's CPA account. ECF No. 74-1 at ¶ 4.

These chat logs unequivocally demonstrate that Defendants' interpretation of the CPA is correct. Contrary to AMA's assertion, the CPA is not limited to content uploaded directly by AMA, because the parties knowingly treated content uploaded by third-party users as subject to the CPA and its revenue sharing provisions.

### (iii)  AMA's Other Assertions Regarding The Assignment Program Are Either Nonsensical Or False

AMA argues that Netmedia "never disclosed the facts [of the assignment program] to any of the content partners under the CPA…" Oppo. at 3. This is absolutely false. Content partners are well aware of the assignment program. When user-uploaded videos were

assigned to CPA partner accounts, the assigned videos were marked on that partner's CPA account statement. ECF No. 83-2, ¶ 3. Forty-one (41) of these partners have subsequently made specific requests regarding the treatment of their assigned videos. *Id.* And 95 percent (39 of 41) of partners who have made specific requests have chosen to leave some assigned content in their CPA accounts. *Id.* at ¶ 5. No partner has rejected or returned CPA revenue sharing payments based on assigned content. *Id.*

AMA's other arguments concerning the assignment program are nonsensical. AMA asserts that under the assignment program Netmedia unilaterally assigned content, but, as discussed above, content partners were promptly notified and asked if they wished to delete user-uploaded content. AMA claims it never saw the red boxes indicating user-uploaded videos, and claims it could not access its account statements after May 2016. But as discussed above, the chat logs unequivocally show that AMA was advised in July 2015 of the assignment program and agreed to it, and numerous other content partners were aware of the assignment program. For AMA to insist it was unaware of the assignment program in the face of such evidence is mind-boggling.

### 4. The CPA Expressly Governs AMA's Claims

AMA does not dispute the fact that the CPA's indemnification clause (Section 7.1) governs AMA's claims if it applies to direct claims. Instead, AMA urges the Court to read into Section 7.1 an implied term limiting Section 7.1 to third party claims. Oppo. at 13. This would be contrary to Ninth Circuit law, cited in Cyberweb's Opening Brief, requiring a clear expression of intent if parties wish to opt out of the plain and ordinary meaning of the term "indemnify," and would ignore the fact that the parties know how to expressly limit an indemnification clause to third party claims when they wish to do so. *See* CPA at Section 7.2 (expressly limiting AMA's indemnification obligations to third party claims). To the extent Section 7.1 requires clarification, the most reasonable approach would be to imply a term clarifying that the parties intended the indemnification obligations under 7.1 to apply to all claims (consistent with the plain and ordinary meaning of the term "indemnify"), but intended the settlement approval language to be limited to third party claims.

More importantly, by asking the Court to re-write Section 7.1, AMA concedes that the CPA must be interpreted in order to resolve its claims, thus triggering the forum selection clause under *Manetti-Farrow*.

And Section 7.3, the limitation of liability clause, also applies to AMA's claims. AMA ignores this section, but it also mandates application of the forum selection clause.

### 5.   Some Of AMA's Claims Are Based On Content It Uploaded

As Defendants have explained (ECF No. 74 at 8), even if one were to accept AMA's (erroneous) arguments regarding content obtained from websites, they do not apply to content AMA itself uploaded. AMA alleges that Defendants violated AMA's copyrights by using images from AMA videos in certain banner ads. ECF No. 16 (FAC) at ¶ 98, Ex. J; ECF No. 67 at 12 (asserting that allegedly infringing banner ads support jurisdiction over Defendant Koonar). However, the images in the example banner ads provided by AMA (FAC, Ex. J) are from videos that AMA itself uploaded. ECF No. 74-1 (Supplemental Bradbury Declaration) at ¶ 8. These videos are licensed even under AMA's definition of the term "provided," and the only question is whether Defendants' alleged use of these videos exceeded the scope of the license. Thus, such claims are within the scope of the forum selection clause. *Keller v. McGraw-Hill Global Educ. Holding, LLC*, 2016 WL 4035613 (E.D. Pa. July 28, 2016) (clause covers claim that defendant exceeded scope of license).

## III.   CONCLUSION

Based on the foregoing, Cyberweb requests that this action be dismissed as to Cyberweb on the grounds of *forum non conveniens*.

DATED: November 23, 2016              Respectfully submitted,

                                      GLASER WEIL FINK HOWARD
                                        AVCHEN & SHAPIRO LLP

                                      By: /s/ Erica J. Van Loon
                                      ERICA J. VAN LOON
                                      *Attorney for Defendants Cyberweb Ltd., David Koonar, Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.*

11
REPLY IN SUPPORT OF CYBERWEB'S MOTION TO DISMISS BASED ON *FORUM NON CONVENIENS*

1274961