**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMA Multimedia LLC, | No. CV-16-01269-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Sagan Limited, et al., | |
| Defendants. | |

Plaintiff AMA Multimedia, LLC, a producer of pornographic material, asserts copyright infringement claims against several entities and one individual associated with the website Porn.com.  Defendants include Sagan, Limited; Cyberweb Limited; Netmedia Services, Inc.; GLP 5, Inc.; and David Koonar.  There are several motions pending. Defendants GLP, Netmedia, Cyberweb, and Koonar move to dismiss for lack of personal jurisdiction.  Docs. 27, 49, 70.  In the alternative, each Defendant moves to dismiss on the basis of forum non conveniens, or to stay these proceedings pending resolution of an action in Barbados.  *Id.*  Also pending are motions for leave to conduct jurisdictional discovery (Doc. 65), for leave to file a sur-reply (Doc. 77), for default (Doc. 82), and to strike a response (Doc. 84).  The parties' request for oral argument is denied because the issues have been fully briefed and oral argument will not aid in the Court's decision.  *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Now that jurisdictional discovery has been finished and briefing is complete, the Court concludes that the forum selection clause is conclusive.  Courts generally enforce

1   such clauses, and AMA has failed to make the showing necessary to defeat the forum
2   selection clause in this case.  The Court therefore will dismiss this action under the
3   doctrine of forum non conveniens for all Defendants other than GLP.[1]

4   **I.   Background.**

5       **A.   Case history.**

6       Porn.com is a video streaming website that generates revenue through its content
7   partnership program and advertising banners.  Doc. 16, ¶¶ 56-57.  AMA asserts that
8   Defendants Sagan, Cyberweb, Netmedia, and David Koonar are owners or operators of
9   Porn.com.  *Id.*, ¶¶ 2-3, 46-47.  In September 2012, AMA joined Porn.com's content
10  partnership program by entering into a content partner revenue sharing agreement
11  ("CPRA") with GIM Corporation.  Doc. 33 at 6; *see also* Doc. 52 at 2.  AMA agreed to
12  the CPRA by completing an automated process at PaidPerView.com.  *Id.*  There was no
13  direct contact between AMA and any of the Defendants.  *Id.*  The CPRA granted GIM a
14  license to use content provided by AMA on websites whose advertisements are controlled
15  by Traffic Force.  *Id.*  The CPRA dictated the manner in which AMA would provide
16  content, and AMA granted GIM a license only for content provided under the CPRA.  *Id.*

17      In November 2015, AMA became aware that Porn.com had displayed 64 of
18  AMA's copyrighted works over 110 separate Porn.com affiliated URLs.  Doc. 16 at ¶ 78.
19  In December 2015, AMA provided Defendants' counsel with a draft complaint and
20  settlement offer regarding the alleged infringement.  Doc. 33 at 2.  In April 2016, AMA
21  presented Defendants with an amended complaint and a "deadline to choose between
22  accepting a settlement offer or hav[ing] the case filed in U.S. District Court, for the
23  District of Arizona."  *Id.* at 3.  Defendants requested an extension until April 28, 2016 to
24  consider the settlement offer, and AMA agreed.  *Id.*

25      On April 27, 2016, Cyberweb, Netmedia, Sagan, GLP, GIM, and David Koonar
26  (collectively, "Porn.com Entities") filed a complaint against AMA in the Supreme Court

27
28      [1] The Court adopts its analysis on GLP from its October 6, 2016 order.  Doc. 64 at 7-8.  Because AMA has not shown that this case arises out of GLP's contacts with Arizona, the Court does not have personal jurisdiction over GLP.

of Barbados.  Doc. 27-3 at 17-23.  AMA filed this action the next day, April 28, 2016.  Doc. 1.  The Court has previously considered motions to dismiss from Defendants GLP, Netmedia, and Sagan.  Docs. 27, 42.  On October 6, 2016, the Court denied Defendants' motion to stay, but granted AMA leave to conduct supplemental jurisdictional discovery, holding the motions to dismiss in abeyance pending the discovery's completion.  Doc. 64.  In the same order, the Court noted that Defendants Netmedia and GLP argued for dismissal on the basis of the forum selection clause for the first time in their reply brief.  *Id.* at n.1.  The Court ordered the parties to address the forum selection clause issue in the briefing yet to come, instructed that Defendants Netmedia, GLP, and Sagan should not file additional motions to dismiss on the basis of the forum selection, and stated that "[w]hen the Court addresses the issue after completion of the Koonar [and Cyberweb] briefing, it will resolve the issue for the entire case."  *Id.*[2]

**B.    Additional facts from jurisdictional discovery.**[3]

Following completion of supplemental jurisdictional discovery, AMA asserts the following facts.  Porn.com is a website, not a separate corporation.  It has no officers, directors, or independent corporate books or financial records.

Defendant Koonar is the common and guiding force behind all Porn.com entities.  Koonar is the only known beneficiary of an Ontario, Canada family trust.  That trust is the sole shareholder of both 1614985 Ontario, Inc. ("161") and Imagination Capital, Inc.  Koonar is president and sole director of 161.  161 owns GIM Corp. in full and owns 50%

---

[2] On October 7, 2016, AMA made a motion to conduct limited jurisdictional discovery on Defendant Koonar in addition to Netmedia and GLP.  Doc. 65.  Defendants objected.  Doc. 71.  At a hearing held on November 29, 2016, the Court stated that its intent in the October 6th order was that discovery not be limited to AMA's alter-ego allegations about Netmedia, and that discovery regarding Koonar was also permitted to the extent he had a pending motion to dismiss.  AMA proceeded to conduct such discovery.  Accordingly, AMA's October 7, 2016 motion (Doc. 65) will be denied as moot.

[3] The facts in this section are taken from supplemental jurisdictional briefs lodged by the parties.  The parties have filed motions to seal the briefs.  Docs. 116, 123.  The Court will deny the motions because they do not comply with LRCiv 5.6(b).  The parties should refile the motions with "a clear statement of the facts and legal authority justifying the filing of the document under seal" (LRCiv 5.6(b)), and should file redacted versions of the supplemental jurisdictional briefs in the public record.

1    of Cyberweb.  AMA alleges that Cyberweb is nothing more than one person – Kristen

2    Richardson – living in Barbados and working out of his personal residence to hold

3    records for websites owned by his childhood friend, David Koonar.  Cyberweb does not

4    have a physical office or pay any employees other than Richardson.

5         Koonar is also the founder of Imagination Capital, Inc.  Imagination is the owner

6    of Netmedia.  Koonar is both president and a director of Netmedia.  All accounting for

7    Cyberweb is done by Netmedia in Canada.  Additionally, all technical aspects and day-

8    to-day operation of Porn.com is done by Netmedia.

9         Cyberweb entered into a technical service agreement with GIM to facilitate

10   operation of the Porn.com, and in turn GIM subcontracts with Netmedia.  Koonar also

11   formed GIM, a Barbados corporation.  Koonar is the president, director, and sole

12   employee of GIM.  GIM has no other employees, nor a physical location for business.

13   GIM has a technical service agreement with Netmedia to perform all day-to-day

14   functions of Porn.com.  Defendants aver that Porn.com is one of thousands of websites

15   Netmedia manages as a subcontractor for GIM.

16        AMA asserts that Sagan is a shell corporation used to help shield the owners of

17   Porn.com.  Sagan, a Seychelles corporation, is listed as an owner/operator of Porn.com

18   by both Porn.com's terms of service and a form filed with the U.S. Copyright Office.

19   The Court has already ruled it is subject to jurisdiction here.  *See* Doc. 69.

20   **II.    Forum Non Conveniens.**

21        The CPRA's forum selection clause provides that "[a]ny legal action arising out

22   of or relating to this Agreement must be instituted in a court located in Barbados."

23   Doc. 27-3 at 30 (CPRA § 10.5).  Defendants argue that the clause requires that this action

24   be dismissed for improper venue under Federal Rule Civil Procedure 12(b)(3).  Doc. 49

25   at 15; Doc. 70-1 at 11.  AMA opposes Defendants' motion, arguing that: (1) the forum

26   selection clause does not apply in this litigation because AMA's claims of copyright

27   infringement do not arise out of or relate to the CPRA, (2) Defendants are not parties to

28   the CPRA and cannot invoke its forum selection clause, and (3) the clause is

- 4 -

unenforceable.  Docs. 68, 89.

### A.    Legal standard.

Courts generally enforce forum selection clauses.  The Supreme Court has instructed that such clauses are presumptively valid and should not be set aside unless the party challenging the clause shows that enforcement would be unreasonable and unjust, or that the clause is invalid for reasons such as fraud or overreaching.  *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 14 (1972).  Indeed, courts decline to enforce forum selection clauses "[o]nly under extraordinary circumstances unrelated to the convenience of the parties."  *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 134 S.Ct. 568, 581 (2013).

A motion to dismiss based on a forum selection clause is treated as an improper venue motion under Rule 12(b)(3).  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).  In ruling on a 12(b)(3) motion, the pleadings are not accepted as true and the Court may consider other evidence.  *Id.*  Interpretation and enforcement of forum selection clauses are matters of federal law.  *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988).

### B.    Application of the forum selection clause to AMA's copyright claims.

AMA argues that the forum selection clause in the CPRA does not apply in this case because its claims involve only copyright law, not contractual issues related to the CPRA.  Docs. 68, 89.  Defendants argue that the forum selection clause applies for three reasons: (1) the language of the clause is broad and covers all aspects of the parties' relationship, (2) § 7.1 of the CPRA governs AMA's claims, and (3) the allegedly infringing conduct was authorized by the CPRA.  Doc. 70-1 at 12-17; Doc. 49-1 at 14-17.

The Court must look to the language of the clause to determine its scope.  After considering the language, the Court will look to relevant case law to determine the effect of the language.  In determining the construction and scope of a forum selection clause, the Court may also consider cases evaluating arbitration clauses because "an agreement to arbitrate is actually a specialized forum selection clause."  *Manetti-Farrow*, 858 F.2d at 514 n. 4.

The CPRA's forum selection clause states that "[a]ny legal action *arising out of or relating to* this Agreement must be instituted in a court located in Barbados." *See, e.g.*, Doc. 70-1 at 11 (CPRA § 10.5) (emphasis added). The Ninth Circuit addressed similar language in *Schoenduve Corp. v. Lucent Technologies, Inc.*, 442 F.3d 727 (9th Cir. 2006), which concerned the appeal of an arbitration decision. The contract underlying the dispute provided that appellant would pay the respondent commissions for successful sales. *Id.* at 729. The appellant terminated the contract days before a large sale closed, and the respondent made a claim for commissions. *Id.* The appellant argued on appeal that the arbitrator exceeded his authority by ruling on quasi-contract and estoppel issues that were not submitted to him by the parties. *Id.* The contract's arbitration clause required arbitration of any dispute that "*arises out of or relates to* this Agreement." *Id.* at 732. The Ninth Circuit held that this language was broad enough to cover quasi-contract and estoppel issues because they related to the agreement, despite the fact that they did not arise out of the actual contract and were not contemplated by the parties prior to arbitration. *Id.* This decision recognized, as have other Ninth Circuit cases, that clauses using "relating to" language provide a significantly broader scope than clauses with only "arising under" language. *See also Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (holding that arbitration clauses omitting the "relating to" language are "intended to cover a much narrower scope of disputes, i.e., only those relating to the interpretation and performance of the contract itself.").

Other Ninth Circuit cases have been similarly liberal in interpreting forum selection clauses. In *Manetti-Farrow*, the Ninth Circuit considered the scope of a clause selecting Florence, Italy "as the forum for resolution of any controversy *'regarding interpretation or fulfillment'* of the contract." 858 F.2d at 510 (emphasis added). The plaintiff made various tort claims against the defendants, including conspiracy and tortious interference with a contractual relationship. *Id.* at 511. The plaintiff argued that the forum selection clause did not apply because his claims did not relate to "interpretation" or "fulfillment" of the contract. *Id.* at 514. The Ninth Circuit disagreed,

holding that the clause applied because "[e]ach of these claims relates in some way to rights and duties enumerated in the [contract]," and "[t]he claims cannot be adjudicated without analyzing whether the parties were in compliance with the contract." *Id*. Thus, even in a case which did not include the broader "related to" language, the Ninth Circuit held that a clause applies if the claim cannot be decided without interpreting the contract.

The clause in this case is of the broader variety. It includes any legal action "arising out of or relating to" the CPRA. Doc. 27-3 at 3; Doc. 70-1 at 11. Under the liberal approach taken in *Schoenduve Corp.* and *Manetti-Farrow*, the clause plainly applies to this case. The CPRA is a license agreement created precisely because the licensor holds copyrighted material the licensee desires to use. The contract authorizes use of the material and protects the licensee from infringement claims of the licensor. When the licensor alleges infringement against the licensee, as AMA does here, the Court must interpret the license agreement to determine whether the licensee's actions are authorized by the agreement and therefore non-infringing. As in *Manetti-Farrow*, each of the copyright claims in this case "relates in some way to rights and duties enumerated in the [CPRA]," and "[t]he claims cannot be adjudicated without analyzing whether the parties were in compliance with the contract." 858 F.2d at 514.

AMA argues that a copyright action does not arise out of a license agreement when the license defense is "clearly frivolous." Doc. 89 at 10. As support, AMA cites *Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007); *Altvater Gessler-J.A. Baczewski Int'l. (USA) Inc. v. Sobieski Destylarnia, S.A.*, 572 F.3d 86 (2d Cir. 2009); and *Gen. Protecht Group, Inc. v. Leviton Mfg. Co., Inc.*, 651 F.3d 1355 (Fed. Cir. 2011).

In *Phillips*, the Second Circuit considered whether a recording artist's copyright infringement claim against a record label was subject to a forum selection clause contained in a recording contract between the parties. 494 F.3d at 382, 390. The forum selection clause stated that the recording contract was "governed by English Law and any legal proceedings that may *arise out of it* are to be brought in England." *Id*. at 382 (emphasis added). The recording artist sued in the Southern District of New York, and

the district court dismissed his claims based on the forum selection clause. *Id.* The Second Circuit reversed, holding that the recording artist's copyright infringement claims did not "arise out of" the recording contract because the artist's copyrights did not originate from the contract. *Id*. at 390. The court explained that it did "not understand the words 'arise out of' as encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to,' 'be associated with,' or 'arise in connection with' the contract." *Id.* at 389. "Because the recording contract is only relevant as a defense in this suit, we cannot say that [the artist's] copyright claims originate from, and therefore 'arise out of,' the contract." *Id.* at 391.

Two years later, the Second Circuit decided *Altvater*. The parties in *Altvater* were corporations involved in the manufacture and sale of alcoholic beverages. 572 F.3d at 88. The parties entered a licensing agreement that authorized defendant to manufacture the plaintiff's secret recipe for a honey-liqueur known as "Krupnik." *Id.* The licensing agreement contained a forum selection clause stating that "[a]ny disputes *resulting from* this agreement will be adjudicated according to Polish law by the Economic Court in Gdansk." *Id.* (emphasis added). Following termination of the licensing agreement, the defendant continued to manufacture and sell the plaintiff's secret brew. *Id.* The plaintiff brought suit in the Southern District of New York, alleging that the defendant had engaged in unfair competition, trademark infringement, trademark dilution, deceptive trade practices, and unjust enrichment. *Id.* at 89. The defendant moved to dismiss for improper venue based on the forum selection clause, and the district court granted the motion. *Id.* Relying on *Phillips*, the Second Circuit reversed, finding that the defendant had failed to show that the plaintiff's claims were subject to the forum selection clause:

> Although the forum selection clauses advanced by [the defendant] employ the language "resulting from" as opposed to "arising out of," the two phrases have very similar meanings. . . . Here, as in *Phillips*, [the plaintiff's] claims do not sound in contract and are not based on rights originating from the licensing agreements. In fact, [the plaintiff's] claims "may begin in court without any reference to the contract." Accordingly, [the plaintiff's] claims are not subject to the forum selection clauses.

*Id.* at 91 (quoting *Phillips*, 494 F.3d at 392) (internal citations omitted).

*Phillips* and *Altvater* are distinguishable from this case.  The clauses in *Phillips* and *Altvater* contained the narrower "arising under" or "resulting from" language, rather than the broader "arising out of or relating to" language in the CPRA.  Furthermore, *Phillips* and *Altvater* are inconsistent with Ninth Circuit law.  Both suggest that a claim does not "arise out of" a contract if the plaintiff may bring the claim without any reference to the contract.  This approach conflicts with *Manetti-Farrow*, which holds that a forum selection clause applies to non-contract claims when the claims relate "in some way to rights and duties enumerated in the [contract]" and "[t]he claims cannot be adjudicated without analyzing whether the parties were in compliance with the contract." 858 F.2d at 514.  A claim that may be brought without reference to a contract may nonetheless require interpretation of the contract, particularly if the contract presents a possible defense to the claim.  To the extent *Phillips* and *Altvater* conflict with *Manetti-Farrow*, the Court must follow Ninth Circuit law.

The third case cited by AMA, *Gen. Protecht Group, Inc. v. Leviton Mfg. Co., Inc.*, involved a dispute between two manufacturers of "ground fault circuit interrupters ('GFCIs')."  651 F.3d at 1358-59.  In a prior suit between the parties, the plaintiff had sued the defendant for infringement of two patents the plaintiff owned – the 558 patent and the 766 patent.  *Id.*  The parties resolved the dispute by entering into a settlement agreement in which the plaintiff agreed not to sue the defendant for infringement of these patents based on products currently accused of infringement, or based on a new GFCI product that defendant intended to bring to market.  *Id.*  The settlement agreement included a forum selection clause which stated that "[a]ny dispute between Parties relating to or arising out of this [Settlement Agreement] shall be prosecuted exclusively in the United States District Court for the District of New Mexico."  *Id.*

A few years later, the plaintiff sued the defendant in the Northern District of California for infringement of two new patents, the 124 and 151 patents.  *Id.*  These new patents were continuations of the 558 and 766 patents.  *Id.*  The defendant argued that the

settlement agreement authorized its use of the new patents and that the plaintiff was required to bring its case in the District of New Mexico pursuant to the forum selection clause.  *Id.*  The defendant sued in the District of New Mexico for a preliminary injunction against the plaintiff's continued litigation in the Northern District of California, and the New Mexico court granted the injunction.  *Id.*

The Federal Circuit affirmed the injunction based on the forum selection clause. *Id.*  It recognized the arguments made by both sides:

> As [the plaintiff] argues, if all that is required is a license and a bare allegation that it provides a defense, then virtually every subsequent dispute between contracting parties would trigger such a forum selection clause. On the other hand, as [the defendant] argues, if a party seeking to enforce a forum selection clause in the context of a license defense must first establish, conclusively, that it would win the license defense, such a forum selection clause would be meaningless because if the defense should fail, then the merits would have been litigated in a forum other than that which was bargained for; and if the defense should succeed, there would likely be nothing left to litigate once the case arrives in the proper forum.

*Id.* at 1359.  *Gen. Protecht* enforced the forum selection clause even though the plaintiff vigorously asserted that the defendant's license defense would fail as a matter of law.  *Id.* The court reasoned that "[t]he outcome of that dispute will determine whether [the plaintiff] can sustain its suit for infringement[,]" and "[t]hus, there is no question in this case that the dispute 'relates to or arises out of' the Settlement Agreement."  *Id.*

*Gen. Protecht* supports enforcement of the CPRA's forum selection clause in this case.  Defendants argue that their use of AMA's material is authorized by the CPRA and therefore is not copyright infringement.  As in *Gen. Protecht*, the Court will be required to interpret the CPRA in order to rule on this defense and determine whether AMA can proceed with its infringement suit.  "Thus, there is no question in this case that the dispute 'relates to or arises out of' the [CPRA]."  *Id.*

AMA argues that *Gen. Protecht* stands for the proposition that a license defense must be non-frivolous before it can trigger a forum selection clause.  Doc. 89 at 9.  True, the case does refer to "a non-frivolous dispute" regarding the scope of the license agreement.  *Gen. Protecht*, 651 F.3d at 1359.  But even if that is a requirement for

application of a forum selection clause (the Court has found no other case that discusses such a requirement), the Court concludes that Defendants have raised a non-frivolous license defense.  Defendants argue that (1) the CPRA is not limited to content AMA "provided" via uploads or specific formats, as AMA contends; (2) § 3.9 of the CPRA is rendered meaningless if content originating on a website is unlicensed; (3) the parties' course of performance under the CPRA shows that they have treated any AMA content that appears on Porn.com as licensed and subject to the CPRA's revenue sharing provisions, regardless of whether AMA uploaded the content; and (4) some content AMA has alleged to be infringing was actually uploaded by AMA itself, thus falling squarely within AMA's understanding of content licensed by the CPRA.  Doc. 74 at 9-12.  While some of these arguments appear doubtful, the Court cannot conclude that they are frivolous.  The parties vigorously present competing evidence regarding the meaning of the CPRA and their course of dealing under the agreement.  Docs. 74, 77, 78, 83, 84.  At the very least, this factual dispute will require a court to evaluate the meaning and scope of the CPRA and the parties' business dealings under it.  As in *Gen. Protecht*, "[t]he outcome of that dispute will determine whether [AMA] can sustain its suit for infringement."  651 F.3d at 1359.[4]

In short, the Court cannot resolve this case without interpreting the CPRA.  Under governing Ninth Circuit law, this case therefore arises out of or relates to the CPRA, and the forum selection clause applies to this dispute.

## B.    Enforceability of the forum selection clause.

None of the current Defendants signed the CPRA; it was executed by AMA and GIM.  As a result, AMA argues, Defendants cannot avail themselves of the benefits of its

---

[4] Much of the parties' factual dispute is contained in Defendant Koonar's reply in support of his motion to dismiss (Doc. 74), AMA's motion for leave to file a sur-reply and proposed sur-reply (Docs. 77, 78), Koonar's response to the sur-reply (Doc. 83), and AMA's motion to strike the response (Doc. 84).  Each side accuses the other of distorting facts, and each side presents evidence to support its position.  The Court will not authorize additional briefing or convene an evidentiary hearing to resolve these disputes.  Rather, the disagreement convinces the Court that factual issues related to the CPRA must be resolved to decide this case.  As in *Gen. Protecht*, the outcome of that dispute will likely determine whether infringement has occurred.  651 F.3d at 1359.

forum selection clause.  Doc. 68 at 4-8; Doc. 89 at 6-8.  Defendants respond that they can invoke the CPRA because GIM assigned them rights pursuant to CPRA §10.3.  Doc. 70-1 at 11.

Section 10.3 provides that "[GIM] may assign this Agreement without consent to an affiliate, parent or subsidiary," and the agreement "shall be binding upon, inure to the benefit of, and be enforceable by and against the successors and permitted assigns of the parties to this Agreement."  Doc. 27-3.  The Court must decide whether Defendants are affiliates of GIM and whether GIM assigned them rights under the CPRA.

### 1.      Corporate affiliates.

Defendants argue that all corporate Defendants are affiliates of GIM based on their common ownership.  Doc. 74 at 12-13 & n.8.  The Ninth Circuit has defined "affiliate" as "a corporation that is related to another corporation by shareholdings or other means of control," and as "a company effectively controlled by another or associated with others under common ownership or control."  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (citations omitted).  AMA offers a nearly identical definition:  "a corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation."  Doc. 68 at 4 n.3.

Defendants Cyberweb, Netmedia, and Sagan clearly are affiliates of GIM.  In fact, AMA has argued and submitted evidence in support of its personal jurisdiction argument that Defendants are linked by common ownership and control.  *See, e.g.*, Docs. 33, 68, 89.  Defendants admit common ownership among Netmedia, GLP 5, GIM, Cyberweb, and Sagan.  Doc. 74 at 12-13.  Under the Ninth Circuit's definition, all corporate Defendants are affiliates of GIM.

### 2.      Did GIM assign the license to each corporate affiliate?

"[T]o prove an effective assignment, the assignee must come forth with evidence that the assignor meant to assign rights and obligations under the contracts."  *Brown v. Bank of Am., N.A.*, --- Fed. Appx. ---, 2016 WL 4394599 at *1 (9th Cir. Aug. 18, 2016) (quoting *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 746 (9th Cir. 1993)).  The

assignment may be oral or by a written document, unless otherwise provided by statute or contract. Restatement (Second) of Contracts §§ 324, 317. "Where an assignment is in dispute, there is a presumption in favor of assignment." *Mountain View Hops., L.L.C. v. Sahara, Inc.*, No. 4:07-CV-464-BLW, 2011 WL 4962183, at *3 (D. Idaho Oct. 17, 2011) (citing *Trans World Airlines, Inc. v. American Coupon Exchange, Inc.*, 913 F.2d 676, 685 (9th Cir. 1990)).

Defendants have submitted declarations from officers of Netmedia and GIM, including a declaration from Defendant Koonar.  Doc. 100 at 7.  Koonar avers, as president of GIM, that "[t]o the extent any corporate Defendant in this action acted in connection with any AMA content it did so with the express understanding that it acted as an assignee of the rights afforded GIM under the [CPRA]."  Doc. 100-1, ¶ 2; *see also* Doc. 74-1, ¶ 7 (Bradbury Declaration stating the same).  AMA presents no contrary evidence, and has failed to overcome the presumption that GIM assigned its rights under the CPRA to the affiliate corporate Defendants.

AMA argues that any such assignment was not valid because "there must be a written document establishing that such assignment occurred."  Doc. 89 at 7.  AMA cites no authority for this argument, and, as Defendants point out, the Restatement suggests otherwise.  Restatement § 324 (assignment, "except as provided by statute or by contract, may be made either orally or by a writing.").

Lastly AMA argues that "[t]he license is 'nontransferable,' giving only GIM the right to stream promotional content on sites where Traffic Force controls the advertising."  Doc. 89 at 7-8.  In support of this claim AMA cites § 1.1 of the CPRA, which states that "*[s]ubject to terms and conditions set forth in this Agreement*, with respect to any and all Content that Licensor submits or provides to Licensee, Licensor grants Licensee a non-exclusive, nontransferable worldwide license[.]"  Doc. 27-3 at 25 (emphasis added).   AMA ignores the emphasized language, which makes the nontransferable license subject to the terms of the CPRA.  One such term, found in § 10.3, states that the "Licensee may assign this Agreement without consent to an

affiliate[.]"  *Id.* at 30.

The Court finds that Defendants Cyberweb, Netmedia, and Sagan are all affiliates of GIM, and that each was assigned rights under the CPRA sufficient to allow it the benefits and protections of the CPRA.  Accordingly, each is entitled to raise the forum selection clause as a defense to AMA's claims.

### 3.    Defendant Koonar.

The Court also finds that Defendant Koonar may avail himself of the benefits of the CPRA.  "With one exception, every district court in our circuit that has considered whether to apply a forum-selection clause to a corporate officer . . . that was not part of the agreement . . . has enforced that forum-selection clause, provided the claims in the suit related to the contractual relationship."   *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F. Supp. 3d 816, 822 (N.D. Cal. 2015).   Koonar is employed as president of GIM, a signatory to the CPRA.  Koonar is also president of both Netmedia and the holding company that owns all of GIM and 50% of Cyberweb.  AMA claims that Koonar was engaged in the infringing activity.  Doc. 68 at 6.  Just as AMA's copyright infringement claims relate to the CPRA, AMA's allegation that Koonar was involved in such conduct likewise relates to the CPRA.  Accordingly, AMA's claims against Koonar are subject to the forum selection clause.  *Id.*; *see also Liberty City Church of Christ, Inc. v. Taylor*, No. 5:12-CV-04392 EJD, 2013 WL 621792, at *2 (N.D. Cal. Feb. 15, 2013) ("[A]ny claims against [a party employee] relating to activities that occurred within the scope of his employment with [the named party] are subject to the forum selection clause.").

### C.    Is the forum selection clause valid and enforceable?

"Forum selection clauses are *prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" *Manetti-Farrow*, 858 F.2d at 514 (quoting *M/S Bremen*, 407 U.S. at 15).  "[T]here are three reasons a forum selection clause may be unenforceable: (1) if the inclusion of the

clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought."  *Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013) (citations and quotation marks omitted).  The Supreme Court has also noted that a forum selection clause may be fundamentally unfair if it was adopted "as a means of discouraging plaintiffs from pursuing legitimate claims" or if the moving party failed to give notice of the forum selection clause to the opposing party it now seeks to bind. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991).

AMA argues that "Defendants are engaged in forum-shopping and attempting to discourage potential plaintiffs from suing."  Doc. 68 at 9.  Specifically, AMA asserts that "Defendants intentionally pick jurisdictions in island countries (where they do not actually operate), far from their own operations and offices and geographically impractical for their counter-parties, to dissuade lawsuits by plaintiffs."  *Id.*  AMA argues, with no citation to law, that a valid forum selection clause must have a "meaningful connection" to the jurisdiction it selects.  But AMA concedes that both GIM and Cyberweb are incorporated in Barbados.  Doc. 68 at 11.  And even if it is true that their operations are primarily in Canada, "[t]he fact that there is no nexus to [a forum] other than its inclusion in the forum selection clause does not make the clause fundamentally unfair."  *Desert Dental Solutions, Inc., v. Indep. Res. Network Corp.*, 2006 WL 616632, at *2 (D. Ariz. Mar. 10, 2006).[5]

AMA asserts that discovery would be difficult in Barbados, there would be no local evidence, and Barbados would have limited evidentiary or subpoena power. Doc. 68 at 10.  But AMA provides no support for these arguments.  It says nothing about Barbados procedures or courts.  It provides no explanation of the discovery difficulties it

---

[5] Defendants argue that AMA is already litigating in Barbados, defending against Defendants' lawsuit that was filed the day before AMA filed with this Court.  Doc. 74 at 14.  The Court gives little weight to the fact that AMA is currently being compelled to litigate in Barbados because Defendants have sued them there.

1   would encounter in a Barbados court.  And it provides no evidence regarding the location

2   of relevant evidence.  *Id.*  In short, AMA has not made the "strong showing" required to

3   establish that enforcement of the forum selection clause would be unreasonable or unjust.

4   *Manetti-Farrow*, 858 F.2d at 514.  And the Supreme Court has made clear that the mere

5   inconvenience of litigating in a selected forum is not a basis for declining to enforce a

6   forum selection clause.  *Atl. Marine*, 134 S.Ct. at 582 ("When parties agree to a forum

7   selection clause, they waive the right to challenge the preselected forum as inconvenient

8   or less convenient for themselves or their witnesses, or for the pursuit of their

9   litigation.").

10          AMA similarly argues that enforcing the forum selection clause would effectively

11  deny AMA its day in court.  Doc. 68 at 10-11.  It asserts that witnesses would not be

12  subject to subpoena power and that it could not procure evidence needed to prosecute its

13  case.  Again, however, it provides no citation to Barbados law and no explanation of the

14  tools available for procuring evidence there.  AMA has a "heavy burden of *showing* that

15  trial in the chosen forum would be so difficult and inconvenient that [it] would effectively

16  be denied a meaningful day in court."  *Argueta*, 87 F.3d at 325 (emphasis added) (citation

17  and quotation marks omitted).  Merely stating that trial could be difficult is not enough.

18          AMA next argues that "any assent attributable to AMA . . . would be over-

19  reaching at best" because the forum selection clause "is obscured in an online form

20  contract."  Doc. 68 at 11.  But "Courts regularly uphold forum selection clauses in online

21  user agreements when the user is given notice of the agreement by clicking a box stating

22  'I agree to the terms of the User Agreement,' followed by a hyperlink."  *Tresona

23  Multimedia LLC v. Legg*, No. CV-14-02141-PHX-DGC, 2015 WL 470228, at *12 (D.

24  Ariz. Feb. 4, 2015); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012)

25  (collecting cases).  AMA argues that "GIM never bothered to ensure the end user who is

26  clicking 'I Agree' actually contains the binding authority to enter into the agreement."

27  Doc. 68 at 11.  But the record contains evidence that AMA President Adam Silverman

28  was aware of and approved the action of the AMA employee who agreed to the CPRA.

*See* Doc. 32-4 (Exhibit E).  The Court cannot conclude AMA's assent was the product of Defendants' overreaching or nondisclosure.

Lastly, AMA argues that it "did not have notice or awareness of the forum selection clause" because "the contract was never formally assigned from SSC [AMA's predecessor] to AMA, and neither SSC nor AMA were provided an executed copy of the [CPRA]."  Doc. 68 at 11.  But AMA admits that it is the successor in interest to SSC.  AMA and SSC merged in 2013, with the owners of SSC receiving equivalent ownership interests in AMA, and with AMA as the surviving entity assuming "all rights, privileges, powers, franchises, properties and assets of SSC Group."  Doc. 61-3 at 12 (Merger Agreement filed with the Nevada Secretary of State's Office).  The CPRA expressly states that "[t]his Agreement shall be binding upon, inure the benefit of, and be enforceable by and against the successors and permitted assigns of the parties to this Agreement."  Doc. 27-3 at 30.  Additionally, AMA has accepted the benefits of the PaidPerView.com account and cannot now disaffirm the contract simply to avoid the forum selection clause.

In summary, AMA has not made the required "strong showing" that enforcement of the forum selection clause would be unreasonable.  *Manetti-Farrow*, 858 F.2d at 514.  Nor has AMA argued that the CPRA was procured by fraud or contravenes an important public policy.  Accordingly, the Court will enforce the CPRA's forum selection clause and dismiss AMA's claims on the ground of forum non conveniens.  In light of this decision, the Court need not rule on the parties' personal jurisdiction arguments.

**IT IS ORDERED:**

1.     Defendants' motions to dismiss (Docs. 27, 49, 70) are **granted**.  The claims against Defendant Sagan are also dismissed on the basis of forum non conveniens.

2.     AMA's motions for leave to conduct jurisdictional discovery (Docs. 34, 65) are **denied** as moot.

3.     AMA's motion for default as to Defendant Sagan (Doc. 82) is **denied**.

4.      AMA's motion for leave to file a sur-reply (Doc. 77) is **granted**.

5.      AMA's motion to strike Defendants' response to AMA's motion for leave to file a sur-reply (Doc. 84) is **denied**.

6.      The stipulations to seal (Docs. 116, 123) are **denied**.  The parties should refile motions to seal with "a clear statement of the facts and legal authority justifying the filing of the document under seal" (LRCiv 5.6(b)), and should file redacted versions of the supplemental jurisdictional briefs in the public record.

7.      The Clerk shall terminate this action.

Dated this 26th day of January, 2017.

_____
David G. Campbell
United States District Judge