1  ERICA J. VAN LOON - (admitted *Pro Hac Vice*)
   evanloon@glaserweil.com
2  STEVEN BASILEO - (admitted *Pro Hac Vice*)
   sbasileo@glaserweil.com
3  GLASER WEIL FINK HOWARD
     AVCHEN & SHAPIRO LLP
4  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
5  Telephone:  (310) 553-3000
   Facsimile:   (310) 556-2920
6
   *Attorneys for Defendants*
7  *Cyberweb Ltd., David Koonar,*
   *Sagan Limited, GLP 5, Inc. and*
8  *Netmedia Services Inc.*

9

10              IN THE UNITED STATES DISTRICT COURT
                       DISTRICT OF ARIZONA
11

12  AMA MULTIMEDIA LLC, a Nevada          CASE NO.: CV16-1269 PHX DGC
    limited liability company,
13                                        Hon. David G. Campbell

14              Plaintiff,                **DEFENDANTS' SUPPLEMENTAL**
                                          **BRIEFING RE PERSONAL**
15  v.                                    **JURISDICTION**

16  SAGAN LIMITED, a Republic of
    Seychelles company, individually and d/b/a   **Redacted for Public Filing**
17  PORN.COM; CYBERWEB LTD., formerly
    MXN LTD., a Barbados Company,
18  individually and d/b/a PORN.COM;
    NETMEDIA SERVICES INC., a Canadian
19  Company, individually and d/b/a
    PORN.COM; GLP 5, Inc., a Michigan
20  Company individually and d/b/a
    Trafficforce.com; DAVID KOONAR, an
21  individual; and John Does 1-20,
22
23              Defendants.
24
25
26
27
28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ...................................................................................................... 3

        **1.**  By Abandoning Its *Alter Ego* Theory, AMA Has Conceded That Jurisdiction Over Netmedia Is Not Proper .......................................... 3

        **2.**  AMA's New Theory Regarding Netmedia Lacks Merit ................... 4

        **3.**  Cyberweb Is Not A Shell Corporation ............................................. 5

        **4.**  Netmedia Does Not Operate Porn.com .............................................. 6

        **5.**  The Provision Of Services To A Website Is Not A Basis For Jurisdiction ...................................................................................... 10

        **6.**  *Mavrix* Is Inapposite ...................................................................... 10

    **B.**  Jurisdiction Does Not Exist Over Mr. Koonar ......................................... 12

        **1.**  AMA's Jurisdiction Argument As to Mr. Koonar Is *Alter Ego* Theory In Disguise, And Must Be Rejected .................................... 12

        **2.**  Mr. Koonar Is Not An Officer Of Porn.com Or Its Owners, So The Authority Cited By AMA Is Inapposite .................................... 12

        **3.**  Even If One Applied The Test Proposed By AMA, Jurisdiction Would Not Be Proper Because There Is No Evidence That Mr. Koonar Participated In, Or Even Had Knowledge Of, The Alleged Infringing Acts ...................................................................... 13

    **C.**  AMA Has No One But Itself To Blame For Is Lack Of Diligence In Pursuing Discovery .................................................................................... 15

III.  CONCLUSION ................................................................................................. 17

1283836

**Glaser Weil**

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Allstar Mktg. Group, LLC v. Your Store Online*, LLC,
  666 F. Supp. 2d 1109 (C.D. Cal. 2009) .................................................................13, 14

*Brayton Purcell LLP v. Recordon & Recordon*,
  606 F.3d 1124 (9th Cir. 2010) ............................................................................2, 11

*Brown v. General Steel Domestic Sales, LLC*,
  2008 WL 2128057 (C.D. Cal. May 19, 2008) ......................................................14

*Calder v. Jones*,
  465 U.S. 783 (1984)..............................................................................................11

*Int'l Mfg. Co. v. Landon, Inc.*,
  336 F.2d 723 (9th Cir. 1964) ...........................................................................13, 15

*Inter123 Corp. v. Ghaith*,
  2014 WL 1343508 (D. Ariz. Apr. 4, 2014) .........................................................11

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984)..............................................................................................13

*Leroy-Garcia v. Brave Arts Licensing*,
  2013 WL 4013869 (N.D. Cal. Aug. 5, 2013) .......................................................13

*M.T. v. Metro. Interpreters and Translators, Inc.*,
  2014 WL 228327 (S.D. Cal Jan. 21, 2014) .........................................................13

*Matsunoki Group, Inc. v. Timberwork Oregon, Inc.*,
  2009 WL 1033818 (N.D. Cal. Apr. 16, 2009).....................................................13

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ......................................................................2, 11, 12

*Rio Properties, Inc. v. Rio Intern. Interlink*,
  284 F.3d 1007 (9th Cir. 2002) .............................................................................11

*Rio Props., Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) ...............................................................................2

*Tangiers Investors, L.P. v. Americhip Intern., Inc.*,
  2011 WL 3299099 (S.D. Cal. Aug. 1, 2011).......................................................14

*U.S. v. Alexander*,
  106 F.3d 874 (9th Cir. 1997) .................................................................................3

*Wyatt Tech. Corp. v. Smithson*,
  2005 WL 6132329 (C.D. Cal. Aug. 30, 2005) .....................................................13

## STATUTES

DEFENDANTS' SUPPLEMENTAL BRIEFING RE PERSONAL JURISDICTION

1283836

1

Federal Rules of Civil Procedure 6,
    2005 Committee Notes ....................................................................................... 16

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Glaser Weil**

iii

1283836

## I.    **INTRODUCTION**

AMA has engaged in a classic bait and switch. Having predicated its jurisdictional arguments on one set of theories, AMA now expressly disavows these theories. AMA's new arguments should be rejected.

The Court has recognized that AMA's jurisdiction argument as to Netmedia is predicated on its assertion that Netmedia and Porn.com are *alter egos*. ECF No. 64 at 4-7. The Court specifically found that AMA had not shown that jurisdiction was otherwise present. *Id.* In its Supplemental Brief AMA nonetheless abandons its *alter ego* theory, and now argues that Netmedia is subject to jurisdiction as a *de facto* "operator" of Porn.com. ECF No. 117 at 15 ("For all intents and purposes, Netmedia operates Porn.com, and jurisdiction is proper over this entity for these reasons."). The Court should not permit this last-minute course change.

Even if the Court elects to consider AMA's new theory, it fails for multiple reasons. First, it is undisputed that Cyberweb owns (and thus operates) Porn.com. AMA seeks to avoid this inconvenient fact by arguing that Cyberweb should be disregarded as a "shell" corporation, but AMA has disavowed its *alter ego* argument. Thus, the Court must treat Cyberweb, Netmedia, and the other Defendants as separate entities or persons. AMA's lengthy discussion regarding their supposed connections is irrelevant.

Second, AMA's assertion that Netmedia "operates" Porn.com is baseless. The evidence in this case (including voluminous Cyberweb-Netmedia email correspondence) unequivocally shows that Cyberweb controls Porn.com, directs its day-to-day operations, and sets its business strategy. Although Netmedia provides certain services with respect to Porn.com, it does so as an independent contractor subject to supervision and control by both GIM and Cyberweb. AMA simply ignores this evidence, and instead blatantly mischaracterizes the cherry-picked evidence it cites.

Third, even if Netmedia "operated" Porn.com (it does not), AMA does not cite a single case finding jurisdiction over an "operator" who did not also own the website.

Fourth, AMA misapplies the case law it does cite. AMA argues that Netmedia's

DEFENDANTS' SUPPLEMENTAL BRIEFING RE PERSONAL JURISDICTION

purported operation of Porn.com satisfies the "intentional act" requirement, but the cases cited by AMA (*Mavrix, Brayton,* and *Rio*) say no such thing. These cases hold that the posting of infringing materials (not the general operation of a website) will satisfy the "intentional act" requirement, and AMA has proffered no evidence that Netmedia posted any infringing materials. Indeed, Netmedia expressly denied such activities. Declaration of Philip Bradbury in Support of Defendants' Supplemental Briefing Re Personal Jurisdiction ("Bradbury Decl."), ¶ 8. This gap in AMA's evidence dooms its argument that its claims arise out of Netmedia's purported contacts. Further, the "express aiming" analysis in *Mavrix* does not apply to Netmedia. In *Mavrix*, the key fact supporting a finding of express aiming was that defendant's profitability was contingent on its forum audience's size. In contrast, there is nothing forum-centered about Netmedia. Netmedia contracts with a foreign entity, GIM, as a subcontractor to another foreign entity, Cyberweb. The size of Porn.com's forum audience has no bearing on Netmedia's compensation. Netmedia is paid a single flat fee by GIM for the services it provides to thousands of websites, only one of which is Porn.com.

AMA's arguments regarding David Koonar are also completely misplaced. AMA argues that Porn.com's contacts can be imputed to Mr. Koonar because, in certain circumstances "a corporate officer's contacts on behalf of a corporation [are] sufficient to subject the officer to personal jurisdiction." ECF No. 117 at 15. But Mr. Koonar is not a corporate officer of Porn.com, nor a corporate officer of Cyberweb, which owns Porn.com. Thus, AMA's entire argument regarding Mr. Koonar is inapposite. Further, even if Mr. Koonar were somehow a corporate officer of Porn.com (a website, not a company), AMA's own authorities clearly state that he would only be subject to jurisdiction if he personally participated in the alleged infringing activity. As AMA well knows, Mr. Koonar expressly denies any involvement in the alleged infringing activity, and AMA has proffered no evidence to the contrary. For this reason as well, jurisdiction does not exist over Mr. Koonar.

Finally, in its Supplemental Briefing, AMA raises no new arguments as to Cyberweb. Instead, AMA states that the Sagan analysis also applies to Cyberweb, and submits as to Cyberweb based on its earlier-filed briefs. ECF No. 117 at 13. This is directly contrary to the

2

1  position AMA took during the meet and confer process, where AMA insisted it needed

2  jurisdictional discovery as to Cyberweb to support new Cyberweb arguments. If anyone has

3  acted in bad faith, it is AMA.

4  **II.**   **ARGUMENT**

5      **A.**   **Jurisdiction Does Not Exist Over Netmedia**

6          **1.**   **By Abandoning Its *Alter Ego* Theory, AMA Has Conceded That**

7              **Jurisdiction Over Netmedia Is Not Proper**

8      As stated in the Court's October 6, 2016 Order, AMA's jurisdiction argument as to

9  Netmedia is entirely predicated on its *alter ego* theory:

10        AMA does not allege that Netmedia's own contacts with the United
         States satisfy this requirement. AMA instead argues that Porn.com's

11        contacts with the United States can be imputed to Netmedia because
         Netmedia is an alter ego or agent of Porn.com, and Porn.com's

12        contacts with the United States are sufficient to satisfy due process.

13  ECF No. 64 at 4. In this Order, the Court identified precisely the type of evidence that was

14  required to support AMA's *alter ego* theory, and that AMA had failed to present:

15        Here, AMA provides no evidence that Netmedia and Porn.com
         comingle funds, enter into contracts on behalf of one another, assume
         liability for one another's debts, fail to keep separate corporate

16        records, or are inadequately capitalized – factors often addressed in
         alter ego analysis. AMA does identify some common officers and

17        directors, but such overlap is not sufficient to establish an alter ego
         relationship. What is more, AMA entirely disregards the second

18        element of the alter ego test recognized in *Ranza* and *Unocal*: "that
         failure to disregard their separate identities would result in fraud or

19        injustice."

20  ECF No. 64 at 7 (citations omitted). And the Court expressly held that jurisdiction over

21  Netmedia would not be proper unless AMA obtained compelling *alter ego* evidence in

22  jurisdictional discovery.

23        AMA has failed to show that Netmedia is an alter ego of Porn.com.
         The Court will permit AMA to conduct limited discovery **on this**

24        **issue** as described at the end of this order, but, in the absence of more
         compelling evidence, Porn.com's contacts with the United States will

25        not be imputed to Netmedia for purposes of personal jurisdiction.

26  *Id.* at 7 (emphasis added). AMA is thus precluded from relying on other theories. *U.S. v.*

27  *Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("Under the 'law of the case' doctrine, a court

28  is generally precluded from reconsidering an issue that has already been decided by the same

court, or a higher court in the identical case.").

AMA has now completed jurisdictional discovery, with Cyberweb and Netmedia producing thousands of pages of documents, including all of the bank statements, vendor invoices, vendor payments, financial statements, corporate formation documents, and email correspondence that AMA requested. Declaration of Erica J. Van Loon in Support of Defendants' Supplemental Briefing Re Personal Jurisdiction ("Van Loon Decl."), ¶ 1; Declaration of Kristen Richardson in Support of Defendants' Supplemental Briefing Re Personal Jurisdiction ("Richardson Decl.") at Exs. D-F. Far from supporting AMA's *alter ego* theory, this discovery confirms that AMA's *alter ego* theory is a non-starter. Cyberweb (Porn.com's owner) and Netmedia maintain their own bank accounts, do not commingle funds, do not enter into contracts on behalf of one another, do not assume liability for one another's debts, keep separate corporate records, and are adequately capitalized. Richardson Decl., ¶ 2; Bradbury Decl. at Ex. A. After reviewing the Netmedia and Cyberweb productions, AMA does not even attempt to claim otherwise. Incredibly, after seeking and obtaining highly burdensome and intrusive jurisdictional discovery based on its *alter ego* theory, AMA has abandoned this theory. ECF No. 117 at 12 ("'Alter Ego' Analysis is Not Applicable in this Matter.").

Having abandoned its *alter ego* theory, AMA cannot satisfy the requirements of the Court's October 6, 2016 Order.

**2.  AMA's New Theory Regarding Netmedia Lacks Merit**

After renouncing its *alter ego* theory, AMA now argues that Netmedia is subject to jurisdiction as an "operator" of Porn.com. This argument should be rejected *ab initio* because, as discussed above, the Court has already ruled that AMA's jurisdiction argument as to Netmedia sinks or swims with its (now abandoned) *alter ego* theory, and the Court's ruling is law of the case.

In addition, by asserting its "operator" theory, AMA asks the Court to ignore the undisputed fact that **Netmedia does not own Porn.com**. In essence, AMA asks the Court to treat Netmedia as if it were Cyberweb (Porn.com's owner), even though it cannot support a

4
DEFENDANTS' SUPPLEMENTAL BRIEFING RE PERSONAL JURISDICTION

1283836

finding of *alter ego* and cannot dispute the fact that Cyberweb is Porn.com's owner. The court should not countenance this brazen attempt to make an end-run around the Court's October 6, 2016 Order and around the Ninth Circuit's stringent requirements for piercing the corporate veil.

And even if the Court were to consider AMA's "operator" theory (which it should not), this theory suffers from a number of fatal defects.

### 3.    Cyberweb Is Not A Shell Corporation

AMA devotes a large chunk of its brief to its argument that Cyberweb is a shell corporation set up to own Porn.com. ECF No. 117 at 2-5. This argument is both irrelevant, and demonstrably false.

AMA's shell corporation argument is irrelevant because, as discussed above, AMA has expressly abandoned its *alter ego* argument. Thus, AMA cannot challenge the fact that Cyberweb is a separate, independent corporation that owns (and thus operates) Porn.com.

Moreover, it is absurd to argue that Cyberweb is a shell corporation. As discussed above, the voluminous corporate records produced by Cyberweb show just the opposite. Cyberweb maintains its own bank accounts, does not commingle funds with other entities, does not rely on other entities to enter into contracts on its behalf, does not have its debts guaranteed by others, keeps separate corporate records, and is adequately capitalized. Richardson Decl., ¶ 3. And while AMA argues that Cyberweb is somehow illegitimate because Mr. Koonar and Mr. Richardson are friends, AMA fails to cite a single case even suggesting that this is improper or that would permit the Court to treat Cyberweb as a non-entity. Indeed, if friendship were to form the basis for disregarding corporate entities half the business world would flounder.

AMA also notes that Mr. Richardson is the only person on Cyberweb's payroll, and that Cyberweb hires (and pays) independent contractors to conduct some portion of its work. Welcome to the 21st century, AMA. Outsourcing of technical and back office functions is commonplace in most industries today, and this is especially true of small businesses. Again, AMA fails to cite a single case even suggesting that such factors permit the Court to treat

5

1  Cyberweb as a non-entity.

2  **4.  Netmedia Does Not Operate Porn.com**

3  AMA argues, without any case support, that Netmedia somehow "operates"

4  Porn.com. But Netmedia does not own Porn.com, nor does it receive any of the revenue

5  generated by Porn.com. It is paid a flat fee to provide services with respect to Porn.com,

6  regardless of Porn.com's performance. Bradbury Decl., ¶ 2.[1] Moreover, Netmedia's work on

7  Porn.com is a small portion of its overall work as a GIM subcontractor. Bradbury Decl., Ex.

8  D (Bradbury Depo.) at 95:5-10 (Netmedia provides services for thousands of websites, and

9  only ██ percent of its man hours are devoted to Porn.com). Netmedia does not invoice GIM

10  specifically for its Porn.com work, but instead sends GIM a single monthly invoice for all of

11  its GIM-related work. Bradbury Decl., ¶ 3 at Ex. A. Under no conceivable definition of

12  "operator" could Netmedia qualify as the operator of Porn.com.

13  To the extent its theory is intelligible, AMA seems to argue that Netmedia, even

14  though it does not own Porn.com, somehow "controls" Porn.com. ECF No. 117 at 4 ("To

15  make Netmedia's control over Porn.com even clearer, the emails attached as Exhibit G show

16  that Netmedia has exclusive control to negotiate Porn.com's pricing."). Even if AMA's

17  newly-invented "control" theory were viable (which it is not), the evidence in this case

18  squarely rebuts any contention that Netmedia controls Porn.com.

19  AMA predicates this "control" argument on its assumption that Netmedia and

20  Cyberweb are pawns of Mr. Koonar, and that Mr. Koonar can dictate their relationship. ECF

21  No. 117 at 15 ("Netmedia solely has 'full access' to the servers for Porn.com, and Cyberweb

22  (Mr. Richardson) is used as a pawn to create an illusory "maintenance" of records in

23  Barbados."). But Cyberweb is half owned by ██████, an entity that has no connection to

[1] In his deposition, Mr. Bradbury mistakenly states that Netmedia is paid based on a percentage of revenue basis. Mr. Bradbury erroneously assumed this question concerned GIM's compensation, which is based on a percentage of revenue. Bradbury Decl., ¶ 4. As the Netmedia-GIM invoices and bank statements produced in this matter unequivocally show, Netmedia receives a flat fee for the services it provides (as a GIM subcontractor) to Porn.com and numerous other websites.

6

1283836

1  Mr. Koonar, Netmedia, or GIM. Richardson Decl., Ex. A (Richardson Deposition

2  Transcript) at 23:9-20; Declaration of David Koonar in Support of Defendants'

3  Supplemental Briefing Re Personal Jurisdiction ("Koonar Decl."), ¶ 4, Ex. C at 9:14-16.

4  Thus, Cyberweb has a fiduciary duty to deal with Netmedia at arms' length, and ▮▮▮▮

5  (as Cyberweb's co-owner) would never allow Porn.com to be controlled by Netmedia or

6  otherwise used as a pawn of Mr. Koonar.

7         Unsurprisingly, even a cursory review of the Cyberweb-Netmedia email exchange

8  produced in this matter shows that Mr. Richardson of Cyberweb is firmly in control of

9  Porn.com and that Netmedia implements Mr. Richardson's detailed requests, exactly as one

10 would expect of an independent contractor hired to provide technical services for a website.

11       1/28/14 email from Mr. Richardson to [Netmedia Employee] of Netmedia:
12       "Please **go ahead as described below** and ensure revenue is still being
         tracked/attributed correctly." Richardson Decl., Ex. B at CYB001154.

13       2/21/14 email from Mr. Richardson to Mr. Bradbury of Netmedia: "as per
         our discussion are these if your team is **ready let's get the popunders**
14       **going on the mobile site**. . . . Let me know when they're live so I can
         monitor." *Id.* at CYB001156. Mr. Bradbury's response: "They will be live
15       within the hour." *Id.* at CYB001157.

16       2/25/14 email from Mr. Bradbury to Mr. Richardson: "Suggestion: I think
         we should consider a slight price adjustment, definitely not back down to
17       where it was, but somewhere in between." *Id.* at CYB001183. Mr.
         Richardson's response: **I agree with your price suggestions and let's see**
18       **where they get us** in terms of retention/chargebacks/refunds etc…" *Id.* at
         CYB001187.
19
         4/22/14 email from Mr. Richardson to Mr. Bradbury: "Should say
20       "unfollow" or something similar. . . . The way the cam cubes are
         constructed it's too obvious these girls are in the same place, always from
21       the same angle. The cross talk is nuts." *Id.* at CYB001199.

22       7/23/14 email from Mr. Richardson to Mr. Bradbury: "**I'd like a change to**
         **be implemented on Porn.com's failed search by the end of the month**.
23       Instead of a failure message and then a blank page when you search for
         something that can't be found, please add 'This week's Most Popular Porn
24       Videos' so the surfer sees some of our best & most current. I have attached
         a mockup. I think 3x3 or 3x4 will fit nicely." *Id.* at CYB001203. Mr.
25       Bradbury's response: "I will get the guys on this…" *Id.*

26       7/23/14 email from [Netmedia Employee] of Netmedia to Mr. Richardson:
         "Okay, changed it. This is good to go live then?" *Id.* at CYB001215.
27       Richardson response: "**Let's do it then, please send this live tomorrow**."
         *Id.* at CYB001226.
28

1283836

Glaser Weil

8/18/14 email from Mr. Richardson to [Netmedia Employee]: "I was speaking with [Netmedia Employee] about translating the text link under the nav menu on PORN.COM and he directed me to you. **When you're back please hit me up so we can get these translated into the necessary language**." *Id.* at CYB001240.

8/21/14 email from Mr. Richardson to Mr. Koonar re Domain Monitor Alert for 2114-08-21 (1 changes(s)): "Excellent, then it's doing its job nicely. Thanks guys." *Id.* at CYB001246.

12/2/14 email from Mr. Richardson to Mr. Bradbury re "Porn.com User View Limits": "**we discussed this earlier and I'm seeing it again today**... **I would like to discuss this with whomever or whatever is turning it on**." *Id.* at CYB001310.

10/29/15 Richardson email: (**requesting more than 30 specific holiday logos**) "can we start doing Porn.com seasonal logos. . . . it would be cool to do it like Google does and change them up every once in a while" (CYB002432)

12/15/1015 email from Mr. Richardson to Mr. Bradbury and Mr. Koonar: "**Can you guys fill me in on the details regarding the Gay.porn.com**?... I wasn't able to log into the account and check the account… **If you can get back to me this morning I'd really appreciate it.**" *Id.* at CYB001384.

AMA simply ignores these emails. And AMA mischaracterizes the evidence it does cite.

AMA cites the Richardson Deposition Transcript for the proposition that Cyberweb performs none of the day-to-day operational functions of Porn.com. But in his deposition, Mr. Richardson expressly denied this assertion. ECF No. 117, Ex. C at 129:9-10 ("That's not correct. I perform functions for Porn.com."). Among other things Mr. Richardson testified that he pays all of Porn.com's bills, *id.* at 37:1, and that he maintains the books, records, and accounting materials of Porn.com on a full-time basis. Richardson Decl., Ex. A at 163:3-11. As evidenced by the above-quoted emails, Mr. Richardson constantly reviews the appearance and functionality of the Porn.com website, and instructs Netmedia as to how his design decisions are to be implemented. And as stated in Cyberweb's Interrogatory Responses (which Mr. Richardson verified), Mr. Richardson performs numerous other day-to-day tasks for Porn.com and Cyberweb:



1283836

Richardson Decl., Ex. A at 163:3-11, Ex. C at 16.

AMA asserts that Netmedia has "full access" to the servers of Porn.com, but Mr. Richardson refuted this. *Id.,* Ex. C at 130:15-17 ("To the best of my knowledge, the only person who has full access to that server would be an employee of Viking Host.").

AMA asserts that the emails in Exhibit E to AMA's brief show Netmedia running Porn.com, and that "Cyberweb/Kris Richardson is simply a 'go between' who takes direction from Netmedia and David Koonar." ECF No. 117 at 4. These emails show the opposite. They show Mr. Richardson issuing directions to Netmedia. *See id*., Ex. E at CYB002294 ("Let's cut a cheque this week and catch him up, then normal payments can resume August 31"); *Id.* CYB002318 ("Can you please send me a report of all payments made to Paid Per View account "pornpros," showing date, method, pay-to-name, and amount?"); *Id.* CYB002432 ("Can we start doing Porn.com seasonal logos?"). And they show Mr. Richardson receiving reports from his contractor, Netmedia. *See id.* at CYB002364 ("Report . . . The Gay Dating Site is hitting all its keywords. . . ."); *Id. at* CYB002619 ("The problem should be working itself out now and will get better as time goes on."); *Id.,* Ex. F (Netmedia reporting to Mr. Richardson). This is exactly what one would expect if, as is the case, Cyberweb owns and operates Porn.com.

AMA argues that "the emails attached as Exhibit G show that Netmedia has exclusive control to negotiate Porn.com's pricing." ECF No. 117 at 4. They actually show that Mr. Richardson has the final say: "I agree with your price suggestions and let's see where they get us…and I'd like to go a little further and suggest that this is something we visit more regularly (Quarterly).". *Id.*, Ex. G at CYB002770.

AMA also suggests that Netmedia and GIM have provided services to Porn.com for free. AMA knows better. Netmedia (a GIM subcontractor) has produced its monthly invoices to GIM from 2013 forward, and these invoices track the payments shown on

9

Glaser Weil

1   Netmedia's bank statements. Bradbury Decl., ¶¶ 3, 9, Ex. A, Ex. D at 41:12-16. And GIM is

2   fully compensated on a monthly basis in accordance with the GIM-Cyberweb technical

3   services agreement. Richardson Decl., ¶ 11. As Mr. Richardson explained in his deposition,

4   ████████████████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████████████████

6   ███████████████████████. *Id.*, Ex. C at 160:1-15. But these payments are reflected

7   in Cyberweb's low level accounting records, and they are substantial. Richardson Decl., ¶

8   12. From 2013 to the present, Cyberweb has Paid GIM over ████.[2] *Id.*

9       **5.      The Provision Of Services To A Website Is Not A Basis For**

10              **Jurisdiction**

11      As discussed above, Netmedia neither owns nor controls Porn.com, and does not

12   share in the revenue generated by Porn.com. Bradbury Decl., Ex. D at 44:11-45:2. It thus

13   could not be deemed to "operate" Porn.com under any definition of that term. But even if

14   Netmedia operated Porn.com (which it does not), AMA has not established that this would

15   impact the Netmedia jurisdictional analysis. AMA has not cited a single case in which a

16   court has based jurisdiction on website operation alone, separate from website ownership.

17       **6.      *Mavrix* Is Inapposite**

18      Even if one assumes for purposes of argument that Netmedia operates Porn.com, the

19   simple fact remains that the Ninth Circuit law cited by AMA does not apply to Netmedia.

20      AMA argues that the general operation of a website satisfies the "intentional act"

21   requirement under the *Calder* test. AMA is wrong. In the cases AMA cites, the Ninth Circuit

22   found an intentional act when the defendant itself posted the allegedly infringing material.

23   _____

24   [2] AMA's argument concerning Mr. Richardson's supposed inability to identify payments
     relating to Porn.com is based on AMA's flawed understanding of the Cyberweb-GIM
25   relationship and basic accounting practices. For example, AMA asked Mr. Richardson to
     "point to me which expenses detail the amount of money paid for services rendered on
26   Porn.com." ECF No. 117, Ex. B at 151:14-18. But GIM is not paid a specific fee based on
     Porn.com services; it provides services to numerous websites. And AMA asked Mr.
27   Richardson to identify Cyberweb-to-GIM payments on balance sheets, and income
     statements. But these types of high level financial documents do not ordinarily show low
28   level details such as payments to individual vendors. Richardson Decl., ¶¶ 13-14.

DEFENDANTS' SUPPLEMENTAL BRIEFING RE PERSONAL JURISDICTION

Glaser Weil

1283836

1   *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)

2   ("Recordon committed an intentional act when it created and posted an elder law section on

3   its website that infringed Brayton Purcell's copyright."); *Mavrix Photo, Inc. v. Brand Tech.,*

4   *Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) ("First, we conclude that Brand 'committed an

5   intentional act.' There is no question that it acted intentionally reposting the allegedly

6   infringing photos of Ferguson and Duhamel."); *Rio Prop., Inc. v. Rio Intern. Interlink*, 284

7   F.3d 1007, 1012 (9th Cir. 2002) (defendants' use of allegedly infringing trademark in URL

8   was basis for jurisdiction ). AMA does not allege that Netmedia posted any infringing

9   materials, Netmedia has not proffered any evidence that Netmedia itself posted any

10   infringing materials, and Netmedia denies posting any such materials. Bradbury Declaration,

11   ¶ 8. Thus AMA cannot satisfy the intentional act prong of the *Calder* test as to Netmedia.

12      AMA's failure to proffer any evidence that Netmedia posted the allegedly infringing

13   material also dooms its argument that its claims arise out of Netmedia's purported forum

14   contacts. As this Court has recognized, "the Ninth Circuit applies a 'but for' analysis to the

15   second element of the specific jurisdiction test. A dispute arises out of forum-related

16   contacts if the claims would not have arisen 'but for' those contacts." *Inter123 Corp. v.*

17   *Ghaith*, 2014 WL 1343508, at *2 (D. Ariz. Apr. 4, 2014). Absent evidence that Netmedia

18   itself posted the allegedly infringing material, Netmedia's provision of services with respect

19   to the *general* operation of Porn.com are not a "but for" cause of AMA's copyright

20   infringement claims. If the provision of services relating to the general operation of a

21   website was a sufficient basis for jurisdiction, AMA would also have claims against

22   Porn.com's website hosting company, its search engine optimizer, its electrical utility, and

23   its bank. Obviously, that is not the law.

24      Finally, the "express aiming" analysis set forth in *Mavrix* does not apply to Netmedia.

25   As this Court has recognized, in *Mavrix* "the 'most salient' fact in favor of express aiming

26   was 'that [the website] featured [the plaintiff's] copyrighted photos as part of its exploitation

27   of the California market for its own commercial gain.'" ECF No. 69 at 7. The *Mavrix* court

28   described this exploitation of the forum market as follows:

Glaser Weil

Brand "continuously and deliberately exploited" the California market for its website. Brand makes money by selling advertising space on its website to third party advertisers: the more visitors there are to the site, the more hits that are made on the advertisements; **the more hits that are made on the advertisements, the more money that is paid by the advertisers to Brand**.

*Mavrix*, 647 F.3d at 1230 (emphasis added). Here, Netmedia is not paid by U.S. customers or U.S.-based advertisers. In fact, Porn.com's performance in the United States (or elsewhere) has absolutely no bearing on Netmedia's compensation. Netmedia is paid a flat fee (by GIM) for the services it provides (as a GIM subcontractor) to thousands of websites. Netmedia no more "exploits the U.S. market" than does the electrical utility in Amsterdam that powers the servers that host Porn.com.

For all of these reasons, this Court lacks jurisdiction over Netmedia.

**B.   Jurisdiction Does Not Exist Over Mr. Koonar**

**1.   AMA's Jurisdiction Argument As to Mr. Koonar Is *Alter Ego* Theory In Disguise, And Must Be Rejected**

AMA seeks to impute the contacts of Porn.com to Mr. Koonar. AMA asserts that "Mr. Koonar is Porn.com," and that "all decisions of the operation of Porn.com, the manner in which it generates revenue, and the videos displayed on Porn.com ultimately reside with Mr. Koonar." ECF No. 117 at 16. This is simply AMA's abandoned *alter ego* theory, warmed over. As discussed above, AMA has disavowed its *alter ego* theory (which is in any event refuted by the record here). AMA's jurisdiction theory as to Mr. Koonar must be rejected for this reason alone.

**2.   Mr. Koonar Is Not An Officer Of Porn.com Or Its Owners, So The Authority Cited By AMA Is Inapposite**

AMA attempts a bit of misdirection by arguing that Porn.com's contacts can be imputed to Mr. Koonar because he is an officer of certain Defendants. ECF No. 117 at 15 ("It is true that Mr. Koonar cannot be subject to jurisdiction just for being an employee, but his individual actions and his "official capacity" within the defendant corporations subject him to jurisdiction."). AMA conveniently ignores the fact that Porn.com is owned by Cyberweb, and **Mr. Koonar is not an officer of Cyberweb**. Koonar Decl., ¶ 2, Ex. A at

14:17-15:6, 42:22-23. Mr. Koonar thus could not have controlled or acted on behalf of Cyberweb, or on behalf of Porn.com. *Id.* And, of course, the actual evidence shows that Mr. Koonar does not control Cyberweb or Porn.com. Accordingly, the authority cited by AMA concerning corporate officer jurisdiction, which constitutes all of the authority cited by AMA with respect to Mr. Koonar, is wholly inapposite.

**3.** **Even If One Applied The Test Proposed By AMA, Jurisdiction Would Not Be Proper Because There Is No Evidence That Mr. Koonar Participated In, Or Even Had Knowledge Of, The Alleged Infringing Acts**

Even if one assumes (erroneously) that Mr. Koonar is somehow an officer of Porn.com, jurisdiction over Mr. Koonar is not proper under the test advanced by AMA.

As Defendants have explained in earlier briefing, under Ninth Circuit law a company's contacts will be imputed to a corporate officer when that corporate officer has participated in the alleged wrongful conduct. ECF No. 75 at 3-7. Not surprisingly, each case AMA cites involved a corporate officer who participated in the alleged wrongdoing (with the exception of *Keeton,* which did not find jurisdiction over a corporate officer).[3]

Here, AMA does not even allege that Mr. Koonar participated in the allegedly infringing activity,[4] let alone proffer evidence in support of this proposition. And Mr.

---

[3] *See Allstar Mktg. Grp., LLC v. Your Store Online*, LLC, 666 F. Supp. 2d 1109 (C.D. Cal. 2009) (accepting uncontroverted allegation that defendant personally participated in alleged wrongdoing); *Matsunoki Grp., Inc. v. Timberwork Oregon, Inc.*, 2009 WL 1033818 (N.D. Cal. Apr. 16, 2009) (defendant built the allegedly infringing house); *Wyatt Tech. Corp. v. Smithson*, 2005 WL 6132329, *6 (C.D. Cal. Aug. 30, 2005) (defendant endorsed and encouraged the acts of infringement*); Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781, n. 13 (1984) (remanding on issue of corporate officer liability); *Int'l Mfg. Co. v. Landon, Inc.*, 336 F.2d 723 (9th Cir. 1964) (defendant was alter ego of the company and actually directed the alleged wrongdoing).

[4] General allegations as to "Defendants" collectively do not suffice. *Leroy-Garcia v. Brave Arts Licensing*, 2013 WL 4013869 (N.D. Cal. Aug. 5, 2013) ("Plaintiff's allegations that the undifferentiated "Brave Arts Defendants" and "IBG Defendants" solicited and took orders from customers in the Northern District of California does nothing to show that [defendant] was a "central figure" or "primary participant" in the alleged infringing conduct."); *M.T. v. Metro. Interpreters and Translators, Inc.*, 2014 WL 228327 (S.D. Cal Jan. 21, 2014) ("The court further notes that Plaintiffs fail to establish, or proffer, that their claims arise from the conduct of L, as opposed to that of other named Defendants.").

DEFENDANTS' SUPPLEMENTAL BRIEFING RE PERSONAL JURISDICTION

1283836

Koonar expressly denies any participation or even knowledge of such activity. Koonar

Decl., ¶ 3; ECF No. 71-1, ¶ 2 ("I do not believe that any of the Defendants in this action

engaged in the infringing activity alleged by AMA. I certainly did not participate in any such

activity, nor did I have knowledge of any such activity. I am a high-level corporate

executive and I am not involved in reviewing or uploading content."). Nor did Mr. Koonar

supervise the persons responsible for uploading content. ECF No. 71-1, ¶ 3 ("To the extent I

specifically supervise any technical activities, my supervision is limited to overall website

design implementation at the customer interface level (e.g. overall appearance, resolution,

speed, etc."). Thus, AMA cannot establish jurisdiction over Mr. Koonar.

   And even if one were to accept AMA's (erroneous) contention that the "guiding

spirit" test is an independent basis for jurisdiction, jurisdiction over Mr. Koonar does not

exist under that test.

   First, it is not enough to show that, as AMA alleges, Mr. Koonar is the 'guiding

spirit' "behind **the operation** of Porn.com." AMA is required to specifically show that Mr.

Koonar is the "guiding spirit" **behind the alleged wrongful conduct**. *Allstar Mktg. Grp.*,

666 F. Supp. 2d 1109 (C.D. Cal. 2009) ("courts have found jurisdiction where the defendant

was the 'guiding spirit' behind the wrongful conduct."). As noted above, Mr. Koonar has

explained that he was not aware of the alleged wrongful conduct, and AMA has proffered no

evidence to the contrary. Thus, AMA's "guiding spirit" argument is a non-starter.

   Second, Mr. Koonar has no management role at Cyberweb (Porn.com's owner), and

even if he did, a management role in a company does not make one a "guiding spirit" in the

company's alleged wrongdoing. *Tangiers Investors, L.P. v. Americhip Intern., Inc.*, 2011

WL 3299099 (S.D. Cal. Aug. 1, 2011) ("simply being the CEO is not enough to establish

that Mouton was the 'guiding spirit' behind the injurious activities."); *Brown v. Gen. Steel*

*Domestic Sales, LLC*, 2008 WL 2128057 (C.D. Cal. May 19, 2008) ("The mere fact that

Knight is General Steel's president is not sufficient to subject him to jurisdiction in

California or give rise to an inference that he is the "guiding spirit" behind the claimed

tortious conduct."). In fact, the only case cited by AMA that based jurisdiction on a "guiding

DEFENDANTS' SUPPLEMENTAL BRIEFING RE PERSONAL JURISDICTION

1283836

spirit" theory involved a defendant who was an *alter ego* of the company and personally

participated in the alleged wrongdoing. *See Landon,* 336 F.2d at 729 ("the district court

concluded that International was the alter ego" and "it was additionally found that Rodolfo

'* * * directed the manufacture and sale of the accused International Manufacturing Co.,

Inc. skim filter."). AMA has cited no authority to suggest one can be a "guiding spirit"

without one of these factors (neither of which is present here).

Finally, Mr. Koonar is obviously not the "true leader" of Porn.com, as AMA

contends. AMA asserts that Mr. Richardson asked Mr. Koonar for permission to get

Porn.com involved in an online demonstration, but the email in question shows that Mr.

Richardson merely asked whether Netmedia (his technical support provider) could get the

site up in time. ECF No. 117, Ex. J at CYB001250 ("It's a good opportunity for a little

online activism. Not sure if it's too late to setup or not?"). AMA argues that Mr. Koonar

decided which search option Porn.com would employ, but the email in question shows that

Mr. Richardson explained the feature he wanted, and simply asked Netmedia to weigh in on

the best technical solution. *Id.* at CYB001259 ("Kris would like to see tracking on these so

he can see how they perform. He suggested that maybe they could run through Traffic

Force, but all he really wants to be able to see is what links are generating click through and

what links are not."). AMA argues that Mr. Koonar decided whether Porn.com would use

seasonal logos, but the email in question shows that Mr. Richardson requested automatic

seasonal logos, and Mr. Koonar merely authorized a Netmedia employee to start the process.

*Id.* at CYB001381 ("We're setting up an automatic system like Kris was saying, it'll have

dates coded into it to activate and revert holiday logos automatically. . . . Not really too late

for Halloween, what do you think." Koonar: "Go for it."). Finally, AMA points to instances

when Mr. Koonar issued directions to his own Netmedia personnel. *See, e.g.*, CYB001290.

This hardly shows his control over Porn.com.

Accordingly, even if one were to apply the "guiding spirit" test proposed by AMA,

jurisdiction over Mr. Koonar would not be proper.

**C.    AMA Has No One But Itself To Blame For Is Lack Of Diligence In**

DEFENDANTS' SUPPLEMENTAL BRIEFING RE PERSONAL JURISDICTION

1283836

**Glaser Weil**

1

**Pursuing Discovery**

2     Finally, AMA bizarrely accuses Defendants of "gamesmanship." AMA has not

3     sought relief from the Court with regard to any of Defendants' alleged misdeeds, does not

4     contend it was harmed, and concedes it merely raises these issues in an attempt to cast

5     Defendants in a bad light. ECF No. 117 at 12 ("While AMA believes the discovery was

6     answered in bad faith, jurisdiction can still be demonstrated now. The facts simply show the

7     bad faith tactics of the Defendants."). AMA's accusations only highlight its own lack of

8     diligence and ignorance of the Federal Rules of Civil Procedure.

9     AMA complains that Defendants did not respond to written discovery until December

10    1, 2016, **but that is precisely when these responses were due**. Following the Court's

11    October 6 Order granting AMA leave to conduct jurisdictional discovery, AMA did nothing

12    **for three weeks** and did not serve written discovery (by email) until October 28. Van Loon

13    Decl., ¶ 2. The statutory 30-day return period for responses expired on a Sunday (November

14    27), so the 30-day period was deemed to end on November 28. *Id.* Then, since AMA elected

15    to serve its discovery requests by email, the return date was extended three days, to

16    December 1. *Id.* The 2005 Committee Notes to Fed R. Civ. P. 6 explain this time in no

17    uncertain terms. ("Under Rule 6(a) the period expires on the next day that is not a Sunday or

18    legal holiday. If the following Monday is a legal holiday, under Rule 6(a) the period expires

19    on Tuesday. Three days are then added—Wednesday, Thursday, and Friday as the third and

20    final day to act."). Thus, Defendants timely served their responses on December 1. Bradbury

21    Decl., Exs. B-C; Richardson Decl., Exs. C, G; Van Loon Decl., ¶ 2.

22    AMA also complains that Defendants did not correct AMA's mistaken impression

23    that these discovery responses were due on November 30. Defendants have no obligation to

24    tutor AMA with regard to civil procedure. Further, Defendants' counsel expressly told

25    AMA's counsel and the Court during the telephonic hearing that the responses were due on

26    December 1, not November 30. Van Loon Decl., ¶ 3.

27    As for AMA's contention that Defendants should have served their written responses

28    before the statutory deadline so AMA could use these responses at Mr. Koonar and Mr.

16

DEFENDANTS' SUPPLEMENTAL BRIEFING RE PERSONAL JURISDICTION

1283836

Bradbury's deposition, AMA does not explain why Defendants should do AMA any favors. The discovery schedule in this case is entirely the creation of AMA.

And while AMA complains that Defendants did not produce certain documents AMA wished to see (e.g., the Cyberweb-GIM technical services agreement), these documents do not fall within the date range (2013 or later) of documents requested by AMA. Richardson Decl., Ex. G; Bradbury Decl., Ex. B.

Finally, AMA complains that Mr. Koonar did not provide substantive responses to interrogatories and document demands. However, as AMA is well aware, the Court order set forth a December 2 discovery cut-off. AMA inexplicably waited a full month to serve these discovery requests, and responses to these requests were not due **until 6 days after the discovery cutoff**. Koonar Decl., ¶ 5, Exs. A-B; Van Loon Decl., ¶ 4. Defendants can hardly be faulted for following this Court's deadlines and asserting their rights under the Fed. R. Civ. P., especially since AMA's request for jurisdictional discovery, and its burdensome and intrusive discovery requests, are now revealed to be a sham, designed to harass Defendants in hopes of eliciting a capitulation. This is evidenced by, among other things, the fact that AMA has abandoned the very theories it asserted as a basis for needing jurisdictional discovery. Van Loon Decl., ¶¶ 5-6.

## III.   CONCLUSION

Based on the foregoing, Defendants request that this action be dismissed as to Netmedia, David Koonar, and Cyberweb based on lack of personal jurisdiction.

DATED: December 22, 2016          Respectfully submitted,

GLASER WEIL FINK HOWARD
 AVCHEN & SHAPIRO LLP


By:  /s/ Erica J. Van Loon
ERICA J. VAN LOON
STEVEN BASILEO
*Attorneys for Defendants Cyberweb Ltd., David Koonar, Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.*

17