ERICA J. VAN LOON (admitted *Pro Hac Vice*)
evanloon@glaserweil.com
STEVEN BASILEO - (admitted *Pro Hac Vice*)
sbasileo@glaserweil.com
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

*Attorney for Defendants Cyberweb Ltd., David Koonar, Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| AMA MULTIMEDIA LLC, a Nevada limited liability company, | CASE NO.: CV16-1269 PHX DGC |
| Plaintiff, | Hon. David G. Campbell |
| v. | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND EXPENSES** |
| SAGAN LIMITED, a Republic of Seychelles company, individually and d/b/a PORN.COM; CYBERWEB LTD., formerly MXN LTD., a Barbados Company, individually and d/b/a PORN.COM; NETMEDIA SERVICES INC., a Canadian Company, individually and d/b/a PORN.COM; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; DAVID KOONAR, an individual; and John Does 1-20, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## I. INTRODUCTION

On January 26, 2017, the Court granted Defendants' Motions to Dismiss or Stay this action. ECF No. 126. The contract governing the parties' relationship, the Content Partnership Revenue Agreement ("CPA'), states that "[in] any action or suit brought by a party to enforce the terms of this Agreement, the prevailing party shall be entitled to the payment of reasonable attorneys' fees and costs." ECF No. 27-3, Exh. 5, at ¶ 10.5. Defendants' Motions to Dismiss or Stay are motions to enforce the CPA's forum selection clause, and Defendants prevailed on their Motions. Accordingly, under the plain language of the CPA, Defendants are entitled to their reasonable attorneys' fees and costs incurred in this matter. Thus, Defendants request an award in the amount of $858,589.

Defendants have submitted detailed time entries in support of the instant motion. *See* Declaration of Erica Van Loon ("Van Loon Declaration"), Exh. C. To aid the Court in its analysis of these time entries, Defendants have also calculated fee and expense totals that relate to various subcategories, including the discrete amounts related directly to the forum selection clause, stay, and personal jurisdiction issues. *See id.*, Exhs. B-C.

To the extent they are applicable, all of the factors set forth in Local Rule 54.2 support Defendants' fee request. The amount in controversy in this action was quite large -- in excess of $25 million, when one takes into account the monetary and injunctive relief requested by AMA. The hourly rates charged by Defendants' counsel are their own customary rates, and are also customary rates for similarly-credentialed intellectual property litigators at comparable law firms. And the total number of attorney hours upon which Defendants base their fee request (approximately 1560) is unsurprising, given the amount in controversy, the extensive briefing and fact investigation required, the complexity and novelty of the issues presented by the parties' briefing, and the extensive and burdensome discovery taken by AMA. Indeed, to the extent that AMA might be tempted to complain about the size of the requested fee award, AMA should be reminded that this is a self-inflicted wound: a significant portion of Defendants' efforts were necessitated by AMA's own tactical decisions, including AMA's request for extensive jurisdictional discovery,

AMA's assertion of numerous questionable legal and factual arguments, and AMA's strategic decision to sue four defendants based on an alter ego theory that it later abandoned (but only after it had completed jurisdictional discovery it obtained on the basis of this theory).

For these reasons, Defendants' motion should be granted in its entirety.[1]

## II.   ARGUMENT

### A.   Eligibility

In this action, Plaintiff AMA asserted copyright infringement claims against five Defendants, GLP 5, Inc. Netmedia Services, Inc., David Koonar, Sagan Limited, and Cyberweb Ltd. In its First Amended Complaint, AMA purported to seek statutory damages of $150,000 each for 110 allegedly separate and distinct acts of copyright infringement based on the posting of full-length videos, along with an unspecified number of alleged additional acts of copyright infringement relating to banner advertisements. ECF No. 16 at ¶¶ 78, 98. AMA also purported to seek transfer of the very valuable Porn.com domain name and any similar domain names to AMA. *Id.* at Prayer For Relief, ¶ B.  In total, the amount in controversy was in excess of $25 million. Van Loon Decl., ¶18.

Defendants each brought Motions to Dismiss or Stay this action. Defendants prevailed on their Motions, and this matter has been dismissed in its entirety. ECF No. 126 at 17.

The Court ruled in Defendants' favor as to all Defendants on the ground of *forum non*

---

[1] Defendants note that this action is hardly the first instance of inappropriate forum shopping by AMA and its counsel. AMA filed a similar action against a different defendant in Florida, and then voluntarily dismissed that action. *See AMA Multimedia, LLC, et al. v. ERA Technologies, Inc., et al.,* 15-CV-24289 (S.D. Fla.). AMA's counsel filed a similar action against Defendant Sagan in Florida, *see Hydentra HLP, INT., et al. v. Sagan Ltd., et al,* CV-16-1494), and when that action was dismissed for lack of personal jurisdiction AMA's counsel refiled that action in this District. *See Hydentra HLP, INT., et al. v. Sagan Ltd., et al,* CV-16-1494. And AMA and its counsel filed, and then dismissed, similar actions in Washington state.  *See AMA Multimedia, LLC v. Spankbang.com*, 16-CV-435 (D. Wa.) (voluntarily dismissed) and *Hydentra HLP., INT, et al. v. Spankbang.com*, et al., 15-CV-00199) (voluntarily dismissed).

*conveniens*. *Id*. The Court also dismissed this action as to Defendant GLP 5 based on lack of personal jurisdiction. *Id*. The Court ruled in AMA's favor as to personal jurisdiction over Defendant Sagan, and ruled in favor of AMA as to Defendants Sagan, Netmedia, and GLP 5 with regard to the stay issue. The Court did not rule on jurisdiction as to Defendants Netmedia, Cyberweb, and Koonar.

The contract governing the parties' relationship, the CPA, states that "[in] any action or suit brought by a party to enforce the terms of this Agreement, the prevailing party **shall** be entitled to the payment of reasonable attorneys' fees and costs." ECF No. 27-3, Exh. 5, at ¶ 10.5 (emphasis added). Defendants' Motions to Dismiss or Stay were motions to enforce a term in the CPA (the forum selection clause), and Defendants obtained the relief they requested – dismissal as to all Defendants. ECF No. 126. Accordingly, under the plain language of the CPA, Defendants must be awarded their reasonable attorneys' fees and costs.

### B.     Entitlement

As discussed above, Defendants moved to dismiss or stay this action, and this action has been dismissed. Defendants are entitled to their fees based on the straightforward application of the prevailing party term in their agreement.

The Tenth Circuit's decision in *Jim Cooley Const., Inc. v. North American Const. Corp.*, 46 F.3d 1151, 1995 WL 3973 (10th Cir. 1995) (unpublished) is instructive.  In *Jim Cooley Construction*, the Court was presented with a similar forum selection clause. There, the forum selection clause in the parties' contract limited venue to Bexar County, Texas, but the plaintiff nonetheless filed suit in Oklahoma. The defendant filed a successful motion to dismiss based on the forum selection clause, and then moved for an award of attorneys' fees based on the following contract provision:

> In the event it is necessary for any party to the Subcontract Agreement to employ an attorney for the enforcement of any terms of this Subcontract Agreement, the nonprevailing party shall pay the prevailing party reasonable attorney's fees.

*Id.* at * 1. The trial court denied defendant's motion, based on its conclusion that the

1235146

defendant was not a prevailing party because it did not prevail on the merits. *Id.* The Tenth Circuit reversed, expressly rejecting the notion that a prevailing party must prevail on the merits.

> [T]here is simply no doubt that by filing a motion to dismiss on venue grounds, North American was enforcing that term of the agreement which limited venue to Bexar County. It is also beyond cavil North American prevailed in that effort. . . . Nothing in the agreement cited to us or relied upon by the district court states or implies recovery under Paragraph 35(B) is limited to final resolution of the merits of the contract dispute. The parties agreed those merits were to be resolved in a specific court, and North American was entitled to enforcement of that agreement. It is also, by the clear and unequivocal language of the agreement presented to us, entitled to compensation for that enforcement.

Numerous other courts have reached the same result. *See, e.g., Monster Daddy, LLC v. Monster Cable Prod., Inc.*, 483 Fed.Appx. 831, 837 (4th Cir. 2012) ("Monster Daddy was the 'prevailing party' with respect to Cable Products' breach of the forum selection clause of the settlement agreement. . . . Cable Products' argument incorrectly presumes that, to be a 'prevailing party,' Monster Daddy was required to prevail in the California action on the merits of the claims asserted in that case. However, an award under the attorneys' fees clause may be made whenever a party prevails with respect to a particular breach of the settlement agreement, which in this case was Cable Products' filing of the California action."); *Swartz v. Turner*, 2014 WL 6490515, at *1 (D. Or. Nov. 19, 2014) ("But the attorney's fees provision at issue does not require that a party prevail on the merits, only that a party prevail in an action 'instituted in connection with any controversy arising out of this Agreement.' Defendants here prevailed in this action by obtaining dismissal based on the forum selection clause, even though dismissal is without prejudice. Under the terms of the lease, Defendants are entitled to attorney's fees incurred enforcing the forum selection clause."); *Ricciardi v. Frink*, 133 Or.App. 436, 447, 891 P.2d 1336, 1342 (1995) (upholding award of attorney's fees to party who obtained dismissal of action without prejudice based on forum selection clause); *3 N., PLLC v. Corp. of the Presiding Bishops of the Church of Jesus Christ of Latter-Day Saints*, No. 3:09-CV-669, 2009 WL 4884394, at *5 (E.D. Va. Dec. 10, 2009)

("Because the Court will grant the Church's Motion [to enforce the forum selection clause], the Church is the prevailing party and is entitled to its attorney's fees and costs."); *Northview Christian Church, Inc. v. Monolithic Constructors, Inc.*, 2010 WL 2605673 (N.D. TX 2012) (successful motion to enforce forum selection clause entitled defendant to attorneys' fees under clause stating: "In the event that it becomes necessary for either party to incur legal fees to enforce the terms of this Agreement, the prevailing party will be entitled to reasonable attorney fees."); *Tamar Diamonds, Inc. v. Splendid Diamonds LLC*, No. 10-21470-CIV, 2011 WL 382576, at *2 (S.D. Fla. Jan. 11, 2011), *report and recommendation adopted,* No. 10-21470-CIV, 2011 WL 381426 (S.D. Fla. Feb. 3, 2011) ("The plaintiff also argues that the defendants are not the prevailing party because the merits were not reached which is required for prevailing party status. . . The undersigned agrees with the defendants and finds that the defendants are the prevailing party in this case. Here, the Court found in favor of the defendants with respect to the dispute over the application of the forum selection clause, thereby, conveying prevailing party status on the defendants in this matter.")

Thus, based on the foregoing authority and the plain language of the CPA, Defendants are entitled to an award of their attorneys' fees and expenses.

### C.  **Reasonable of Requested Award**

As discussed above, Defendants seek an award of $858,589 in attorneys' fees and expenses in this matter. The requested attorneys' fees and expenses are based on the itemized time entries and expense summary attached to the concurrently-filed Van Loon Declaration. *See* Van Loon Decl., ¶¶ 10- 27.[2] The factors set forth in Local Rule 54.2 support the award Defendants seek.

---

[2] Defendants also plan to seek recovery for fees and expenses related to the instant motion, and plan to submit this total and supporting documentation on Reply (by which time such work will have been completed). Defendants believe they are expressly entitled to such fees under the prevailing party provision of the CPA, because such fees are fees incurred in an action to enforce a term of the CPA (the prevailing party term).

### 1. The Amount In Controversy Supports The Requested Award

As discussed above, the amount in controversy in this action was quite large -- in excess of $25 million.  Van Loon Decl., ¶ 18.

### 2. The Skill And Reputation Of Defendants' Counsel Supports The Requested Award

Defendants' primary counsel are intellectual property litigators with substantial experience at leading law firms. Lead counsel Erica Van Loon is a partner at the 100-attorney Glaser Weil law firm, and is Head of the Trademark, Copyright and Media Practice. She was recently selected as one of ten attorneys nationwide in intellectual property litigation as a Law360 Rising Star, has repeatedly been named a Southern California Super Lawyer in intellectual property litigation, and has a Martindale-Hubbell legal rating of AV. Van Loon Decl., ¶ 5. Before joining the Glaser Weil firm, Ms. Van Loon practiced at the firm of Quinn Emanuel Urquhart & Sullivan LLP., a leading national law firm. *Id*.

Steven Basileo is Of Counsel at Glaser Weil, and has more than twenty-five years of experience litigating high stakes intellectual property, antitrust, and commercial disputes. Van Loon Decl., ¶ 7. As lead trial counsel he has obtained aggregate awards in excess of $100,000,000, and has successfully defended claims seeking billions of dollars in damages. *Id*. Before joining Glaser Weil, Mr. Basileo practiced for many years at O'Melveny & Myers LLP, a leading national law firm. *Id*.

The briefs submitted by Defendants' counsel speak for themselves. The Court no doubt has its own view as to the skill exhibited by Defendants' counsel, and Defendants will defer to the Court in its assessment. Defendants note, however, that the issues presented in this action were (as discussed below) numerous and complex, and Defendants' counsel prevailed on their Motions to Dismiss or Stay notwithstanding what can only be characterized as a vigorous, no holds barred, opposition by AMA's counsel.

### 3. The Rates Charged By Defendants' Counsel Are Customary Rates For Lawyers With Their Credentials

The hourly rates charged by Defendants' counsel (which work out to a blended rate

of approximately $550 per hour) are the standard billing rates that they charge clients for the type of work at issue in this matter. Van Loon Decl., ¶¶ 12, 23. In addition, these rates are customary, if not below market, for similarly-credentialed intellectual property litigators at comparable law firms. *Id*. at ¶ 12.

### 4. The Time And Effort Devoted By Defendants' Counsel To This Matter Was Reasonable

In total, Defendants fee request is based on approximately 1560 hours of attorney time. Van Loon Declaration, ¶ 25. In the context of this case, that total is unsurprising.

As discussed above, the stakes in this matter were very high, given that AMA purported to seek over $25 million in damages and property transfers.

In addition, the issues presented by Defendants' Motions to Dismiss or Stay were complex and numerous. For example, Defendants' counsel were required to research, analyze, and brief complex issues such as:

- the scope of the parties' forum selection clause
- the difference between "relating to" and "arising under" forum selection clauses
- the applicability of arbitration clause precedent to forum selection clauses
- the requirement of an *en banc* decision to overrule Ninth Circuit precedent
- whether a contract-based defense must be non-frivolous in order to invoke a forum selection clause
- whether Second Circuit forum selection clause precedent is consistent with Ninth Circuit precedent
- whether related parties can enforce a forum selection clause
- whether third party beneficiaries can enforce a forum selection clause
- whether agents can enforce a forum selection clause
- whether Defendants are implied licensees under Ninth Circuit law
- whether GIM assigned contract rights to Defendants
- whether assignments must be in writing to be enforceable

1235146

- whether Section 3.9 of the CPA must be interpreted to avoid rendering it surplusage
- whether AMA's proposed interpretation of the term "provide" was consistent with how that term was used throughout the CPA
- whether the CPA's indemnification clause presumptively includes claims between the parties
- whether AMA had notice of the forum selection clause
- whether AMA could be bound to the CPA by its agent
- whether AMA's agent acted with AMA's knowledge
- the standard for successor liability under Nevada law
- whether AMA had conceded in public filings that it was a successor to SSC
- whether a forum selection clause in a form agreement is enforceable
- whether a forum selection clause in a click wrap agreement is enforceable
- whether purported discovery limitations in the designated forum are a basis to invalidate a forum selection clause
- whether Defendants' connection to the designated forum supported enforcement of the forum selection clause
- whether designation of a neutral forum is a basis to invalidate a forum selection clause
- the implementation of Porn.com's assignment program, by which user-uploaded videos were assigned to AMA's revenue sharing account
- whether chat logs rebutted AMA's (false) claim that they were unaware of the assignment program
- whether Defendants' evidence regarding the assignment program should be stricken from the record
- whether Sagan should be deemed in default while Defendants' motion to enforce the forum selection clause was still pending
- whether jurisdictional contacts can be imputed on an agency theory

- the elements required to support an alter ego theory
- whether complete overlap of ownership is sufficient to support an alter ego theory
- whether an alter ego theory can be proved absent evidence of fraud or injustice
- whether Defendants had any individual contacts with the U.S. or Arizona
- whether visits to trade shows in Arizona support jurisdiction in this forum
- whether a contract with an Arizona entity can support jurisdiction in this forum, even though it has no relationship to AMA's alleged harm
- whether a significant number of forum visitors is sufficient to establish targeting of the forum for jurisdictional purposes
- whether the Ninth Circuit's *Mavrix* decision has been superseded by recent U.S. Supreme Court precedent
- how popunder windows work (and how that relates to AMA's jurisdictional arguments)
- whether AMA was entitled to jurisdictional discovery based on its unsupported alter ego theory
- whether a stay was appropriate under *Colorado River*
- whether a stay was appropriate under *Leyva*
- whether a parallel action for stay purposes must have a complete identity of parties and issues
- whether the *Intel* decision applies to stay motions based on parallel actions outside the United States
- choice of law issues relating to many of the foregoing topics
- evidentiary issue relating to AMA's purported numerous evidentiary submissions

Most cases litigated through trial present far fewer issues, and far less complexity.

Some of these issues were novel, including issues that the Court expressly asked the parties to brief, such as whether a contract-based defense must be non-frivolous in order to

invoke a forum selection clause, and whether Second Circuit forum selection clause precedent should apply here. ECF No. 64 at fn. 1.

Other litigated issues involved settled law that AMA simply chose to ignore, further increasing the costs to Defendants. For example, AMA ignored the fact that Ninth Circuit law governs the enforceability of a forum selection clause, that under Ninth Circuit law related parties have standing to enforce a forum selection clause, that under Ninth Circuit law "relating to" clauses are broader than "arising under" forum selection clauses, that oral assignments are enforceable, that forum selection clauses in form agreements or click through agreements are enforceable (as this Court had previously ruled), and that purported discovery limitations in the designated forum will not invalidate a forum selection clause. AMA also ignored the distinction between specific and general jurisdiction, and ignored the U.S. Supreme Court's *Daimler* decision holding that contacts cannot be imputed to a defendant under an agency theory. And AMA ignored the fact that under Ninth Circuit law even a complete overlap in ownership is not sufficient to prove alter ego, and the absence of fraud or injustice (which AMA never even argued, let alone attempted to prove) is fatal to an alter ego theory. Defendants were thus obliged to research and brief all of these issues.

Defendants were also required to respond to numerous AMA factual assertions that contradicted AMA's own prior statements or the public record.  These include AMA's belated assertion that it was not a party to the CPA (even though it had admitted it was a party in at least **six** previous declarations or briefs), its contention that its agent did not act with AMA's authorization when he accepted the CPA on AMA's behalf (despite emails submitted by AMA itself showing that he acted at the direction of Mr. Silverman, AMA's president), AMA's argument that it was not a successor to SSC Group (despite a Nevada secretary of state filing to the contrary), AMA's argument that it was unaware of the assignment program (despite chat log entries in which Mr. Silverman acknowledged and endorsed the assignment program), and AMA's simultaneous assertions that Defendants were alter egos for jurisdictional purposes but entirely separate, unrelated entities for forum selection clause purposes.

AMA also undertook vexatious and wasteful procedural maneuvers that required a significant expenditure of time by Defendants' counsel. For example, AMA sued (and thus required Defendants to bring Motions to Dismiss or Stay as to) five different Defendants, even though the Court clearly lacked jurisdiction over at least one (GLP 5), and its claim of jurisdiction over two others (Netmedia and Koonar) was expressly predicated on an alter ego theory that it ultimately abandoned. AMA filed a Sur-Reply concerning the forum selection clause issue, and then moved to strike Defendants' Response that showed AMA's Sur-Reply to be based on a false declaration from Mr. Silverman. AMA moved for a default as to Defendant Sagan even though Defendants' motion to enforce the forum selection clause was still pending. AMA filed numerous Declarations that were entirely or largely lacking in foundation. Perhaps most notably, AMA requested and obtained broad ranging "jurisdictional" discovery purportedly in support of its alter ego theory (thus forcing Defendants to incur $246,319 in discovery-related fees and expenses, and supplemental briefing), only to disavow this theory once it had completed jurisdictional discovery. All of these AMA maneuvers necessitated extensive additional work by Defendants' counsel.

For all of these reasons, the time and effort devoted by Defendants' counsel to this matter was unavoidable, and thus reasonable.

### 5. Defendants' Counsel Have Exercised Billing Judgment

As set forth in the Van Loon Declaration, Defendants seek recovery for $858,589 in fees and expenses in this matter. Van Loon Decl., ¶ 25. Defendants have submitted detailed time entries in support of the instant motion. *Id.* at ¶ 20, Exh. C.

The amount Defendants seek ($858,589) is net of two types of deductions. First, as of December 31, 2016, Defendants' counsel logged time entries and incurred expenses totaling $1,021,175.91 in connection with this matter. In the exercise of billing judgment, Defendants' lead counsel wrote off $88,195 in fees relating to work that Defendants' lead counsel deemed inefficient or duplicative. Van Loon Dec., ¶ 14. In calculating the amount Defendants seek in this motion ($858,589), Defendants' have further deducted $74,390 in fees to account for time entries that Defendants redacted on the basis of work product

immunity or omitted entirely from their submission to the Court. *Id*. at ¶ 15.

### 6. To Aid The Court, Defendants Have Divided Their Fees And Expenses Into Subcategories

Defendants submit that they are unequivocally entitled to the entire amount of fees they seek in the instant motion -- $846,423. However, to aid the Court in its analysis of these time entries, Defendants have also calculated fee and expense totals that relate to various subcategories. Fees related directly to the forum selection clause issue total $127,585, fees related directly to the stay issue total $119,006, and fees related directly to the personal jurisdiction issue total $507,398. Van Loon Decl., ¶ 26. This latter subcategory includes $244,303 in fees related to purported "jurisdictional" discovery. *Id*. Defendants will gladly provide the Court with any additional analyses or subcategories it requires, upon request.

## III. CONCLUSION

AMA chose to initiate litigation in this Court despite its knowledge that the forum selection clause did not permit it to do so. The contractual terms at issue here are simple and clear, and require the award sought by the Defendants. In light of the foregoing, Defendants respectfully request that the instant motion be granted in its entirety, and that Defendants be awarded $858,589 in attorneys' fees and expenses in connection with their successful Motions to Dismiss or Stay this action.

DATED: February 9, 2017

Respectfully submitted,

GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP

By: /s/ Erica J. Van Loon
ERICA J. VAN LOON
STEVEN BASILEO

*Attorney for Defendant Cyberweb Ltd., David Koonar, Sagan Limited, GLP 5, Inc. and Netmedia Services Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM ISO MOTION FOR ATTORNEYS' FEES AND EXPENSES

1235146