LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona  85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMA Multimedia, LLC, a Nevada limited liability company,<br><br>             Plaintiff,<br><br>v.<br><br>Sagan, Ltd., a Republic of Seychelles company, individually and d/b/a Porn.com; Cyberweb, Ltd., formerly MXN, Ltd., a Barbados Company, individually and d/b/a Porn.com; Netmedia Services, Inc., a Canadian Company, individually and d/b/a Porn.com; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; David Koonar, an individual, *et. al.,*<br><br>             Defendants. | Case No. CV-16-1269-PHX-DGC<br><br>**PLAINTIFF AMA MULTIMEDIA, LLC'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND EXPENSES** |

In their Motion for Attorneys' Fees and Expenses (Dkt. 133), Defendants ask this Court to award nearly **eight hundred and sixty-thousand dollars** ($860,000.00) for dismissing this copyright action on improper venue.  Despite that Defendants never asserted a right to seek attorneys' fees in any of the four (4) separate Motions to Dismiss (nor any Reply) that they filed, they now believe this Court should award them grossly excessive attorneys' fees as well as non-taxable costs that include dining and hotels, room service, unnecessary delivery charges, and even Starbucks™ beverages.

## I. INTRODUCTION AND BACKGROUND

Defendants' request should be denied entirely because they failed to preserve any request for attorneys' fees. However, AMA Multimedia, LLC ("AMA") further opposes the request/motion on these specific grounds:

1.) Defendants claim eligibility relying entirely on a contract provision, pretending this was always a breach of contract case.[1] It was not. AMA filed a case for copyright infringement. The attorneys' fee provision within the CPA states that a party can only recover fees if it is deemed a prevailing party specifically "[i]n any action or suit <u>*brought by a party* **to enforce the terms of this Agreement**</u>*....*"[2] *See*, **Exhibit A**, incorporated here. AMA never sought to enforce the CPA and did not seek relief under it. Defendants argue that the prevailing party term is triggered but offer no analysis how their procedural defense "prevailed" in a suit never meant to "enforce" the CPA.

2.) Defendants did not prevail on copyright claims. (Nor do they even seek to recover attorneys' fees for a successful defense of copyright claims.) Again, Defendants argue as if AMA had filed a breach of contract claim.

3.) Defendants' request lacks "billing judgment" under any test of reasonableness in *at least* the following ways:

    a. Defendants grossly overstate the hours/fees required for dismissal on the issue of forum non conveniens, including tasks for motions on which they failed to succeed (and which had nothing to do with the forum non conveniens dismissal);

    b. Defendants engage in improper block billing, making it impossible to separate out time spent on any individual tasks (or for any specific Defendant);

---

[1] Defendants cite no statutory right to eligibility of attorneys' fees (neither under A.R.S. §12-341.01, the federal Copyright Act, 17 U.S.C. §101, *et. seq*., nor any other statute).

[2] The term "CPA" refers to the Content Partnership Agreement at issue in the various motion(s) to stay and to dismiss. *See, e.g.,* Doc. 126 at p. 2.

- 2 -

  c. Defendants engage in duplicative billing;

  d. Defendants charge legal/attorney time for secretarial tasks that do not require legal knowledge;

  e. Defendants ignore the requirement of establishing billing rates commensurate with prevailing rates in this community or in the type of matter involved;

  f. Defendants ignore the nature and length of the professional relationship between Defendants and counsel; and

  g. Defendants' motion includes multiple costs that are not recoverable, including unnecessary "Word Processing" fees, messenger fees, travel fees, entertainment and food/beverages costs for counsel, and even "room service."

Very simply, Defendants ignore that the CPA provision they cite requires them to prevail on an action "to enforce" the CPA. This case was not a case to enforce the CPA. Most importantly, Defendants assert fees/costs that are unreasonable under even the most liberal standards. The request for nearly a million dollars is unsupportable.

## II. FACTUAL DISCUSSION

On April 28, 2016, AMA brought this action alleging copyright infringement against each Defendant. (Dkt. 1). The Complaint was filed the day after Defendants filed an action in Barbados, seeking declaratory judgment that the alleged copyright infringement was permitted by the Content Partnership Agreement ("CPA"). The complaint was amended a short time later, still exclusively alleging copyright infringement claims against each Defendant. (Dkt. 16).

Through counsel, Defendants refused to accept or waive service, forcing AMA to seek service abroad, where Defendants made it difficult to achieve service. AMA was forced to move for alternative service via email. (Dkts. 22, 25-26, 28, 36). AMA won each motion, though vigorously contested by the Defendants. *Id*.; *see also*, Dkts. 23, 28-

29, 46. These issues resulted in staggered service on each Defendant. As service was obtained, each Defendant filed a similar motion to dismiss or stay. (Dkts. 27, 42, 49, 70). After Defendants caused their own service issues, refusing to cooperate though all represented by the same legal counsel, they filed four (4) separate motions to stay or dismiss (over 4 months). *Id*. at 27, 42, 49, 70. AMA counsel asked that defense counsel avoid duplicative filings, so as to not waste time and resources; Defendants refused.

Initially, Defendants motions were the same, moving to dismiss for lack of personal jurisdiction or to "stay" proceedings while litigation in Barbados was resolved. *Id*. at Dkts. 27, 42. Defendants never once sought dismissal based on forum non-conveniens until David Koonar responded – 3 months after Netmedia, GLP 5 and Sagan had all moved to "stay" the case. *See*, Dkt. 64 (Court Order denying Stay). AMA had asked this Court for jurisdictional discovery to properly respond to the Defendants' arguments, and Defendants fought against such discovery. (Dkts. 34, 47, 50, 65, 71, 76). Defendants kept filing Oppositions to jurisdictional discovery **after** this Court granted AMA the right to take discovery. *See*, Dkt. 64 (Order granting discovery), Dkts. 71, 76.

At the same time this Court granted AMA the right to undertake jurisdictional discovery, this Court ruled that the web site at issue, www.Porn.com, and its owners and operators were subject to jurisdiction in the United States. Dkt. 64. Jurisdictional discovery was to determine the extent of Defendants' involvement with Porn.com. *Id*.

In September 2016, Defendants sought dismissal for forum non-conveniens for the first time. Dkt. 49. This was when Defendants finally argued improper venue, that whether the CPA governs copyright infringement must be interpreted by a Barbados Court before this United States District Court could hear the dispute(s). *Id*. Still, none of the pleadings requested (or even mentioned) a right to attorneys' fees.

While this Court still doubts that the alleged copyright infringement is defensible under the CPA, the Court did find that the forum selection clause of the CPA requires the

issue be resolved first by a Barbados Court. Dkt. 126. This Court did **not** rule that AMA's copyright infringement claims are lost. *Id*. This Court did **not** suggest that Defendants file any motion/request for attorneys' fees or costs (Defendants never once raised the fee issue in **any** Motions nor in any Reply). AMA will seek appropriate rulings in the Barbados action, and AMA believes its copyright claims will revert here when Barbados declines to make copyright findings.

### III.  ARGUMENT

#### A.  Defendants Are Not Eligible for an Award of Attorneys' Fees and Costs.

In order for Defendants to be awarded attorneys' fees, there must be a basis in either contract or statute. Defendants notably ignore that this case was brought on a statutory basis – copyright infringement under 17 U.S.C. §101, *et. seq.* Defendants do not claim a right to fees under copyright law, nor do they cite any Arizona or other statutes. Defendants **only** claim attorneys' fees under the CPA. Yet, the suit was not based on the CPA, nor did Defendants prevail on the copyright claim. The suit explicitly sought to exclude the legal content provided under the CPA, and AMA consistently argued that this case was not governed by the CPA. *See, e.g.,* Dkt. 16, ¶63 ("None of the limited promotional videos provided to Defendants are at issue in this case.") [3]

---

[3] Additionally, not **one** of the Motions to Stay/Motions to Dismiss nor any Reply ever cites Defendants' intent to seek attorneys' fees or costs. Defendants did not assert a right to attorneys' fees in their Supplemental Briefing on Personal Jurisdiction. In Arizona, a party **waives** its right to seek attorneys' fees and costs if not specifically requested in a Motion to Dismiss. *Balestrieri v. Balestrieri*, 232 Ariz. 25, 28 ¶11, 300 P.3d 560, 563 (App. 2013); *see also, King v. Titsworth*, 221 Ariz. 597, 600 ¶ 14, 212 P.3d 935, 938 (App. 2009). Arizona follows this waiver rule because parties cannot properly evaluate whether and when to settle lawsuits unless they are "on notice" before "each stage of the lawsuit" that their opponents intend to ask for attorneys' fees. *Id*. These cases are instructional here and should help this Court assess that Defendants should not be eligible for attorneys' fees and costs for any reason because they "waived" any such request.

### B. The Attorney Fee Provision in the CPA does not Entitle the Defendants to Attorneys' Fees and Costs.

LRCiv 54.2(c)(1) requires Defendants to establish eligibility for recovery of attorneys' fees, so Defendants blanketly assert that they "prevailed" under the "plain language" of the CPA. That argument ignores that this Court would be required to make a "prevailing party" finding under the CPA in order to award attorneys' fees. The argument also ignores that this is **not** a breach of contract case.

#### *1. Defendants Ask this Court to Interpret and Apply the CPA.*

Defendants previously argued that this Court cannot interpret the CPA (that only a Barbados Court can do so), yet they now ask this Court to determine both that they are the "prevailing party" under the CPA as well as to determine what are "reasonable attorneys' fees and costs" under ¶10.5 of the CPA. This Court has already expressly ruled that it will not "interpret the CP[]A in order to rule on" the defenses. Dkt. 126 at p. 10 of 18. This Court has ruled that only a Barbados Court should "evaluate the meaning and scope of the CP[]A and the parties' business dealings under it." *Id*. at p. 11.

#### *2. This is not a Contract Case to Trigger the Attorneys' Fees Provision.*

The key and pivotal issue to Defendants' request for fees is the actual language of the attorneys' fee provision, paragraph 10.5 of the CPA, which reads, in pertinent part:

> In any action or suit *brought by a party to enforce the terms of this Agreement,* the prevailing party shall be entitled to the payment of reasonable attorneys' fees and costs. CPA, ¶ 10.5 (emphasis added).

It is without valid debate that this provision of the CPA applies only when an action (suit) is brought **to enforce the terms of the CPA**. The phrase "bring action" is defined by Collins Dictionary as "to start a lawsuit."[4] (Motions Defendants file do not

---

[4] https://www.collinsdictionary.com/us/dictionary/english/bring-action. Throughout the many motions filed by Defendants in this action, they cited this particular dictionary.

- 6 -

fall under "bring action or suit"). The Law Dictionary defines "bring suit" as "[t]o bring an action or suit has a settled customary meaning at law, and refers to the *initiation of legal proceedings* in a suit."[5] This Court, then, must look at the action brought by AMA to determine whether the contractual fee provision is triggered. AMA's action was clearly **not** brought to enforce the CPA, and AMA disputed at every juncture that the CPA applies. AMA's action was clearly and without question brought as a copyright infringement action, not seeking to enforce the CPA. (Dkts. 1, 16).

Defendants disregard the underlying copyright case and imply that the word "action" means any "act." They claim that their Motions to Dismiss are the same thing as "an action to enforce the terms" of the CPA, implying that action does not mean the entire underlying legal proceeding/dispute (the Defendants go on to ask for fees for the entire legal proceeding). That is not what the CPA reads. While Defendants pretend their request for fees is under a "straightforward application" of the fee provision, they actually wish to re-write the entire provision to pretend they "brought" an "action or suit" to enforce the CPA. That is not straightforward at all.

If there is any dispute as to what a "straightforward" application of the word "action" means, Defendants utilize the phrase "this action" to refer to a **copyright** case at least eleven (11) times in their own motion (*i.e.,* "In this action, Plaintiff AMA asserted copyright infringement claims…. Defendants each brought Motions to Dismiss or Stay this action…. The Court also dismissed this action as to Defendant GLP 5…. Defendants moved to dismiss or stay this action, and this action has been dismissed…. Defendants here prevailed in this action by obtaining dismissal based on the forum selection clause, even though dismissal is without prejudice.") There can be no dispute that Defendants understand this is a copyright action, not a breach of contract/CPA action. *Id.*

---

[5] http://thelawdictionary.org/bring-suit/.

- 7 -

Because AMA did not bring an action to enforce the terms of the CPA, the attorneys' fees provision of the CPA is simply not triggered. Defendants sweep over this incredibly important distinction in hopes that the Court will do the same. Defendants cite case law regarding other "prevailing parties" under forum selection clauses to distract the Court from the **actual** language of ¶10.5. Each of the cases Defendants cited are actually breach of contract cases (unlike this copyright case). Not a single case they cited applies the attorneys' fees provision in conjunction with a forum selection clause to copyright infringement claims. There is no authority or support cited that would apply the language of CPA ¶10.5 to a copyright/infringement case.

This Court should not ignore this distinction nor should it allow the Defendants to "gloss over" the actual CPA provision in hopes that the Court will misunderstand its application. Defendants' tactics continue to be disconcerting, at best.

## C. Defendants are Not Entitled to Attorneys' Fees as a Prevailing Party in this Copyright Action.

Again, it should be noted that Defendants only claim entitlement under contract because they **undisputedly** have not prevailed on the copyright action. The Ninth Circuit consistently applies the *Buckhannon* test in determining a "prevailing party" in a copyright matter.[6] *See, Buckhannon Bd. & Care Home, Inc. v. W.Va. Department of Health & Human Resources*, 532 U.S. 598 (2001). The *Buckhannon* test requires that the resolution of the action to have altered the legal relationship of parties for the purposes of entitlement to attorney's fees. *See, Cadkin v. Loose,* 569 F.3d 1142, 1145 (9th Cir. 2009); *Oscar v. Alaska Dep't of Educ. & Early Dev.*, 541 F.3d 978, 981 (9th Cir. 2008); *Carbonell v. INS*, 429 F.3d 894, 897-98 (9th Cir. 2005). In a dismissal without prejudice,

---

[6] It is noteworthy that not one single case cited by Defendants are Ninth Circuit cases, nor are any of the cases arising from copyright actions. Defendants only cite un-controlling cases they claim to be "instructive," when not a single case is remotely analogous here.

- 8 -

like here, the legal relationship between the parties is not altered because the plaintiff is free to file suit, making identical allegations, in another court or at another time. That is precisely what AMA will do in Barbados (subject to re-filing here when the Barbados Court declines to hear the copyright claims).

Furthermore, under the Copyright Act, a prevailing party can only be one who secured a judgment on the **merits** or a court ordered consent decree. *Buckhannon, supra.* If a matter has been dismissed without prejudice, there is no prevailing party. *Id.; see also*, 4 Melville and David Nimmer, Nimmer on Copyright § 14.10[B] (2007); *see also, e.g., Elwood v. Drescher*, 456 F.3d 943, 948 (9th Cir. 2006) ("Where a claim is dismissed for lack of subject matter jurisdiction, the defendant is not a prevailing party."); *Branson v. Nott*, 62 F.3d 287, 293 & n. 9 (9th Cir. 1995) (dismissal on jurisdictional grounds precludes fee award); *Dahn World Co. Ltd. v. Chung*, 2006 U.S. Dist. LEXIS 83047, 2006 WL 3313951, at *2-3 (D. Ariz. Nov. 13, 2006) (finding a defendant under the Digital Millenium Copyright Act was not a prevailing party where suit was dismissed for lack of personal jurisdiction); *Gossett v. Porsche Cars North America, Inc.*, 2006 U.S. Dist. LEXIS 76642, 2006 WL 3007384, at *2 (D.S.C. Oct. 20, 2006) (finding dismissal for lack of personal jurisdiction did not confer prevailing party status "[b]ecause this Court did not reach a determination on the merits …." and because "the plaintiff remains free to [re-]file his claims … and may or may not prevail" in another forum.)

This matter is precisely analogous with this litany of cases. The Court did not render any judgment on the merits of AMA's claims but only dismissed AMA's action without prejudice, finding that the Barbados Court must first determine whether the CPA governs the allegations of copyright infringement. Dkt.126. If so, the copyright issues will be determined in Barbados. If not, AMA's claims may be re-filed here in this District Court. AMA is still free to pursue its claims and, thus, the legal relationship between AMA and Defendants has not been altered (and Defendants have not prevailed).

The Defendants ask this Court to determine them a prevailing party in a copyright action, on the basis the case was dismissed without prejudice for *improper venue* (and in the case of GLP 5, dismissal for lack of jurisdiction) in direct contradiction to all the relevant case law. In support, the Defendants cite and quote a litany of cases and analyses where the Court was ruling with the underlying dispute being a ***breach of contract*** claim. (Only one case cited, *Monster Cable v. Monster Daddy,* was in context of the Lanham Act, but the actual issue in the case was the breach of a settlement agreement (a contract). All of the other cases deal with an underlying contract matter.) The fact that Defendants did not cite a single analogous case is telling. There is no authority to support that a Defendant successful in enforcing a forum selection clause in an ancillary contract on a **copyright case** would confer "prevailing party" contract status. This makes our case distinct.

### D.    Defendants' Fee Request is Highly Unreasonable.

#### *1.    This Court Should Deny the Unreasonable Fees in its Discretion.*

AMA does not concede eligibility or entitlement to attorneys' fees. However, even if this Court determines that Defendants are legally entitled to fees under the CPA, the court has the discretion to deny an award of attorneys' fees "when it believes such an award to be inequitable and unreasonable." *Cable Marine, Inc. v. M/V Trust Me II*, 632 F.2d 1344, 1345 (5th Cir. 1980) (*citing, United States v. Mountain States Construction*, 588 F.2d 259, 263 (9th Cir. 1978)(Even where attorneys' fees are provided by contract, the court is not without discretion to deny an award of attorneys' fees.) As a starting point, this Court should refuse to award Defendants any fees or costs because their defenses in this copyright action have been "frivolous" and "doubtful." Dkts. 64, 126. Based upon the allegations and the "defenses" set forth by the Defendants, it would be inequitable to award attorneys fees at this stage.

AMA has alleged, and it can prove, that Defendants took AMA content from other Internet locations and uploaded them to www.Porn.com without permission. (Defendants utilized fake user information in an attempt to conceal their theft.) Defendants' defenses to these provable allegations has changed from (1) the CPA allowed them to obtain AMA content in any manner they desired; to (2) the infringed AMA content was user-uploaded which were assigned to AMA's content partnership account with AMA's knowledge and acquiescence.[7] (The switch in positions occurred *after* the Court asserted the first defense was frivolous.) The second defense is an absolute fabrication. AMA can prove that the infringements were not user uploads and that the review/assignment program never existed. A detailed review of the skype logs submitted by Defendants establishes that: (1) Defendants were NOT performing their own review of user uploads; (2) Defendants needed AMA to provide links to user uploads (contradicting their supposed review); and (3) AMA *clearly* demanded that all user uploads of AMA content be deleted entirely from Porn.com. *See,* Dkt. 83-1, Ex. A *#520693, #520718, #520720,* 83-3, Ex. A *#12234*).

It is simply inequitable for Defendants to present such fabricated defenses and then be awarded attorneys' fees in doing so. On discretion, alone, this Court should deny fees.

### 2. *Defendants' Fee Request is Unreasonable Under Local Rules.*

Defendants' audacious request of $860,000 in attorneys' fees and costs for prevailing on one motion (improper venue) precisely illustrates their unreasonableness. However, L.R.Civ. 54.2(c)(3), (d), and (e) demonstrate the unreasonableness. Pursuant to L.R.Civ. 54.2(f), AMA specifically identifies every fact issue and disputed time and expense entry in the following manner:

---

[7] "To the extent AMA alleges that Defendants have failed to make revenue sharing payment with respect to AMA videos Defendants have allegedly posted on the Porn.com website, this is a breach of contract claim that falls squarely with the CPA's forum selection clause." Dkt. 100.

         *a)*      *Defendants Grossly Over State Fees Related to Dismissal.*

Defendants claim fees for virtually every task undertaken in this matter, including tasks related to efforts that failed. Defendants seek fees for tasks that had nothing to do with the dismissal based on improper venue.

Defendants **concede** that only **$127,584.92** in fees is attributable to the successful forum selection clause motion(s), and the remainder of the $858,589 sought relates to other, unsuccessful issues. *See*, Dkt. 133-4. Even within the $127,584.92, Defendants' time entries include tasks not properly allocated to the venue motion(s). *See*, Declaration of counsel (Spencer D. Freeman) attached here as **Exhibit B**, incorporated by this reference. For example, Defendants never sought dismissal on forum non-conveniens grounds until September 6, 2016 (Dkt. 49), and that defense was the subject of only two (2) motions, Dkts. 49 and 70. Defendants include tasks for motions other than improper venue (GLP 5, Netmedia, and Sagan motions). *See*, **Exhibit B**.

Moreover, L.R.Civ. 54.2(c)(2) requires that Defendants cite relevant legal authority for each item of entitlement to fees and costs. Defendants did not cite **any** authority that they are entitled to recover fees for unproductive and/or failed work/lost issues/motions. Therefore, *even if* Defendants could recover fees, their total number of claimed hours (1559.09) should be reduced to **214.88 hours**, which is all that is attributable to the forum non-conveniens dismissal. (And even this 214.88 must be reduced for block billing, duplicate billing, and reduced to tasks not related to improper venue, as discussed below.)

It would be unequitable and unreasonable for Defendants to recover any fees or costs associated with these specific tasks, as these did not lend to the ultimate result (dismissal for forum), and were not, therefore, "reasonable" or "necessary" by law:

- Opposing AMA's motions for alternative service;
- Opposing AMA's motions for jurisdictional discovery;
- Litigating motions to stay the proceedings (and even after the Court

declined to Stay, repeated motions were filed);

- Litigating motions for dismissal for lack of personal jurisdiction. (Defendants lost these efforts also as the Court found that Porn.com and its owners/operators were subject to jurisdiction in the United States. The only issue remaining on jurisdiction was whether Netmedia Services, Inc. and/or David Koonar were owners or operators – issues that remains undecided.)

At a minimum, the total number of hours should be reduced to 214.88 based on an unreasonable request for over-inclusive time entries on losing issues. *See*, **Exhibit B**.

### *b)  Defendants Engage in Improper Block Billing.*

L.R.Civ. 54.2 (d)(3) requires a moving party to provide a "Task-Based" itemized statement of fees and expenses, and Local Rule 54.2(e)(1)(B) clarifies that this statement must specify the "time devoted to each **individual unrelated task performed**." *Id*., emphasis added.

Nearly every entry on Defendants' Itemized Statement contains "block billed" entries without allocating the specific "time devoted to each individual" task. Defendants' 38-page Itemized-Statement is replete with **1258.05** hours of "block entries," which equates to $689,019.00 in unallocated time presented in this block-billing format. *See*, **Exhibit B**.

There is simply no way for Plaintiffs (nor this Court) to determine what time was spent on any particular task listed. In her Declaration, Ms. Van Loon acknowledges that nearly every biller failed to independently identify tasks with time allocations. Dkt. 133-2 at ¶22. To make up for the lack of time allocation, Ms. Van Loon suggests that she "assumed" that "a biller spent an equal amount of time for each task performed" within the multiple block-billed entries. *Id*. She then further clarifies that for some of the block-billing, there were "multiple levels of mixed descriptions" for tasks, so she could not equally "split" time entries by task. *Id*.

When it comes specifically to the improper venue motion(s), Defendants present an even murkier issue. Here, they tried to split out the tasks related to the forum selection clause, jurisdiction motions, jurisdictional discovery, and stay motions. Yet, there is no specific reference to the motions for improper venue or forum selection clause in their task descriptions, making it simply impossible for Plaintiffs (or the Court) to attribute any specific task to the improper venue motion(s). *See*, **Exhibit B**. Again, Ms. Van Loon attempts to present some "factor" analysis in her fee spreadsheet (Dkt. 133-4), but the analysis fails to delineate the time spent on each task and, instead, attempts to apportion time related to issue(s) by pure estimation. This "factor" analysis fails to allow this Court to determine whether time spent on **any individual task** is reasonable.[8, 9]

This type of complexity demonstrates AMA's inability to address individual tasks. Defendants' choice to block-bill defies L.R.Civ. 54.2(e), making **all** of the block entries unreasonable. At a minimum, the total hours billed should be reduced by **1258.05 hours** for an inability to separate time expended/devoted to particular task(s). *See*, **Exhibit B**.

### *c) Defendants Engage in Duplicative Billing.*

Defendants have simply re-hashed their billing statements, proving that multiple lawyers are charging for the same tasks. When a case is staffed by more than one attorney, the fee applicant should explain to the court how (and why) work was divided

---

[8] Further, Defendants did not separate tasks per Defendant, ignoring that GLP 5 was dismissed for lack of personal jurisdiction and/or ignoring that AMA won jurisdiction as to Sagan, Ltd., and all owners and operators of Porn.com.

[9] Defendants may argue that all time denoted with "FSC Factor" should be deemed related to the improper venue motions. However, this simply cannot be true. The improper venue motion was not raised until September 6, 2016 (Dkt. No. 49), yet this alleged FSC factor is noted as early as August 9, 2016 and specifically associated with other motions. The FSC factor notation is meaningless in determining what tasks were related to the improper venue motions. Neither AMA nor the Court should have to *speculate* what time is actually associated with each motion for each defendant.

and how the tasks were performed. *See, e.g., Ponderosa Plaza v. Siplast*, 181 Ariz. 128, 133, 888 P.2d 1315, 1320 (App. 1993). When a partner and associate duplicate a task, there is a "gross lack of billing judgment," and the court should exclude the excessive or redundant time. *Metro Data Systems, Inc. v. Durango Systems, Inc.*, 597 F.Supp. 244, 247 (D.Ariz. 1984) (Scrutinizing the appearance of multiple lawyers for the same court appearance(s) and chastising for billing for the same tasks.) The "redundancy" factor is highly scrutinized where there is duplicative time billed by multiple lawyers. *Id.* at 245 (Criticizing the use of "little army" of lawyers and reducing all time that was performed by more than one person.); *Hensley v. Eckerhart, supra,* 461 U.S. at 433-34 (The court should exclude time that is "redundant" and should consider if a case is "overstaffed.").

Here, Defendants duplicate multiple tasks among 6 different lawyers, as well as the lawyers duplicate the same tasks on multiple days. *See*, **Exhibit B** (Declaration of counsel). As examples, multiple lawyers all charged for writing the same motion on the same date. *Id*. Likewise, multiple lawyers would charge to "conduct research" on a specific topic, and another lawyer charged to "supervise" the very same research. *Id*.

Of the total hours claimed (1559.09), at least **322.2 hours show duplicated tasks** among the six (6) lawyers. Defendants should not recover for any of these instances where: a) they failed to demonstrate how and why the work was divided as it was; and/or b) a partner and associate duplicated tasks. *Ponderosa, supra*, 188 Ariz. at 133; *Metro Data, supra*, at 247. These 322.2 hours (valued at $186,014.70) should be reduced.

### d) *Defendants Fail to Present Rate Relevant to Community.*

In determining the prevailing market rates in the relevant community, a court should consider several factors including the attorney's customary fee; skill required to perform the legal services properly; the experience, reputation and ability of the attorney; time limitations; preclusion of other employment; contingency; undesirability of the case; nature and length of professional relationship with the client, and awards in similar cases.

1  Generally, acceptable proof of the market rate may consist of testimony and direct
2  evidence from other legal practitioners in the relevant legal community who are familiar
3  with the type of legal service provided and the prevailing market rate for such work.
4  However, the court may make a fee award based on its own experience where the fees
5  claimed seem expanded.  *Tamar Diamonds, Inc. v. Splendid Diamonds LLC*, No. 10-
6  21470-CIV, 2011 U.S. Dist. LEXIS 10313, at *1 (S.D. Fla. Jan. 11, 2011)

7  Defendants present evidence of reasonable rates for intellectual property attorneys
8  in Los Angeles.  However, the result of the work done on the case by defense counsel had
9  nothing to do with intellectual property, but rather standard commercial litigation
10 arguments – improper venue based upon forum selection clause in a contract.

11 Defendants present rates between $350 per hour for junior attorneys (with little
12 experience) and $630 per hour for senior partners, justifying these rates as Los Angeles
13 intellectual property attorneys.  These rates are not prevailing rates in the Arizona
14 community for the work performed, which was commercial litigation. *See*, **Exhibit B**.
15 These rates are not even prevailing rates in the intellectual property community. *Id*.  The
16 hourly amount(s) requested far exceed the prevailing rates in this legal community. *Id*.

17 Moreover, Local Rule 54.2(d)(4)(B) *requires* a statement of whether the client has
18 paid any fees or expenses, the amount paid, and a description of the services paid for.
19 Defendants failed to provide this information as well as failing to show the "nature and
20 length of the professional relationship" between Defendants and counsel as required
21 under L.R.Civ. 54.2(b)(c)(3).  Failing to address these factors (and others enumerated in
22 (c)(3), defense counsel has not established the "reasonableness" for any requested award.

23
24         *e)*      *Defendants Claim Multiple Non-Taxable Costs and Expenses That are Not Awardable.*

25 In Defendants' 123-page filing (Dkt. 133), they never defined any legal authority
26 why their "non-taxable costs" are awardable, nor did they attempt to limit their claimed

- 16 -

costs/expenses **at all**. Instead, the Defendants submitted every cost and offer no authority to support any claimed cost(s) or expense(s) whatsoever.

AMA should not be responsible for unreasonable claimed costs, including:

- "Messenger fees" of **$2,967.28**. All filings, and service thereof, is achieved via ECF. Messenger fees were simply not required.
- FedEx fees of **$851.61**. These are unnecessary and not explained by Defendants.
- A "Filing Fee" of **$312.50**, which is unexplained (nor required by ECF).
- "Word Processing Fees" of **$483.75**, "Scan" fees of **$16.35** and a **$6.00** "document production" fee. None of these are explained nor required.
- "Meals" for **$4.14**, which is a receipt for a Starbucks™ iced latte.
- Within travel fees, Defendants claim other food (including a sports bar, room service, and a deli), foreign currency conversion and airplane "wireless" services during plane travel. They also claim travel to Canada when Plaintiffs' counsel specifically sought a *video* or *phone* deposition. The total travel category, **$3,685.52,** is non-taxable and not rewardable.
- Defendants claim for costs of **$1,679.06** in computer research, which is not authorized by law, and Defendants simultaneously seek their **fees** for this legal research, as well as the cost/expense.

Of the $12,165.91 sought in costs/expenses, **only $2,159.70** are actually attributable to legitimate, recoverable costs (depositions). The remaining $10,006.21 should be reduced as unreasonable and unsupported.

## IV.   CONCLUSION

Quite simply, Defendants are not eligible nor entitled to fees here. The CPA *only* provides for fees in an action brought to enforce the terms of the CPA, and this action clearly was not that. To the extent that the Court finds Defendants eligible and entitled, only **$15,595.39** is actually attributable to the improper venue motion, (and not subject to block billing or duplication), and AMA asks the Court to limit an award accordingly.

1   **DATED** this 27th day of February, 2017.

2                                         **MANOLIO & FIRESTONE, PLC**

3
                                          By:  /s/ Veronica L. Manolio
4                                              Veronica L. Manolio
                                               8686 E. San Alberto Dr., Suite 200
5                                              Scottsdale, Arizona 85258
                                               *Attorneys for Plaintiff*
6

7                                **CERTIFICATE OF SERVICE**

8        I hereby certify that on the 27th day of February, 2017, I electronically transmitted

9   the foregoing document to the Clerk's office using the CM/ECF system for filing.  Copies

10  will be transmitted via CM/ECF to the following recipients:

11  Erica J. Van Loon evanloon@glaserweil.com
    Glaser Weil Fink Howard Avchen & Shapiro LLP
12  10250 Constellation Blvd.
13  Los Angeles, CA 90067
    *Attorneys for Defendants*
14

15  Steven Basileo sbasileo@glaserweil.com
    Glaser Weil Fink Howard Avchen & Shapiro LLP
16  10250 Constellation Blvd.
    Los Angeles, CA 90067
17  *Attorneys for Defendants*

18
    Valentin Gurvits vgurvits@bostonlawgroup.com
19  Boston Law Group, PC
20  825 Beacon St.
    Newton Centre, MA 02459
21  *Attorneys for Defendants*

22
    Spencer Freeman sfreeman@freemanlawfirm.org
23  Freeman Law Firm, Inc.
    1107 ½ Tacoma Ave. S.
24  Tacoma, WA 98402
25  *Attorneys for Plaintiff (pro hac vice)*

26  By:   /s/ Gina Murphy

- 18 -