ERICA J. VAN LOON (admitted *Pro Hac Vice*)
evanloon@glaserweil.com
STEVEN BASILEO (admitted *Pro Hac Vice*)
sbasileo@glaserweil.com
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

*Attorney for Defendants*
*Cyberweb Ltd., David Koonar,*
*Sagan Limited, GLP 5, Inc. and*
*Netmedia Services Inc.*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| AMA MULTIMEDIA LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SAGAN LIMITED, a Republic of Seychelles company, individually and d/b/a PORN.COM; CYBERWEB LTD., formerly MXN LTD., a Barbados Company, individually and d/b/a PORN.COM; NETMEDIA SERVICES INC., a Canadian Company, individually and d/b/a PORN.COM; GLP 5, Inc., a Michigan Company individually and d/b/a Trafficforce.com; DAVID KOONAR, an individual; and John Does 1-20,<br><br>Defendants. | CASE NO.: CV16-1269 PHX DGC<br><br>Hon. David G. Campbell<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS BASED ON *FORUM NON CONVENIENS*** |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. INTRODUCTION ................................................................................. 1

II. STATEMENT OF FACTS ................................................................. 3

III. ARGUMENT ..................................................................................... 6

    A. Defendants Have Standing As Agents Or Third-Party Beneficiaries .......................................................................... 6

    B. Defendants Have Standing To Enforce The Forum Selection Clause As Closely Related Parties Under *Manetti-Farrow* ............... 10

    C. Defendants Have Standing To Enforce The Forum Selection Clause As Implied Licensees ............................................. 12

    D. Defendants Have Standing To Enforce The Forum Selection Clause As Parties To The CPA ........................................ 15

    E. For The Reasons Stated In The Court's Prior Order, Defendant Koonar Has Standing To Enforce The Forum Selection Clause ........ 16

IV. CONCLUSION ............................................................................... 16

Glaser Weil

i

1515097.3

1
2

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*eBay, Inc. v. Digital Point Solutions, Inc.*,
  608 F. Supp. 2d 1156 (N.D. Cal. 2009) ........................................................... 11

*Effects Assoc., Inc. v. Cohen*,
  908 F.2d 555 (9th Cir. 1990) ......................................................................... 12

*Experexchange, Inc. v. Doculex*, Inc.,
  2009 WL 3837275 (N.D. Cal. Nov. 16, 2009) ............................................... 13

*Falcon Enterprises, Inc. v. Publishers Service, Inc.*,
  438 Fed. Appx. 579 (9th Cir. 2011) ............................................................. 13

*Field v. Google Inc.*,
  412 F. Supp. 2d 1106 (D. Nev. 2006) ...................................................... 13, 15

*Foad Consulting Grp., Inc. v. Azzalino*,
  270 F.3d 821 (9th Cir. 2001) .................................................................. 12, 13

*Hillis v. Heineman*,
  2009 WL 2222709 (D. Ariz. July 23, 2009) ................................................. 1, 9

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007) .................................................................. 10, 11

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
  2014 WL 1047207 (N.D. Cal. 2014) .............................................................. 11

*In re Yahoo! Inc. Customer Data Security Breach Litigation*,
  2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ............................................... 11

*Keane Dealer Servs., Inc. v. Harts*,
  968 F. Supp. 944 (S.D.N.Y. 1997) ............................................................... 13

*Klamath Water Users Protective Ass'n v. Patterson*,
  204 F.3d 1206 (9th Cir.1999) ..................................................................... 10

*Laurel Village Bakery LLC v. Global Payments Direct Inc.*,
  2006 WL 2792431 (N.D. Cal. Sep. 25, 2006) ................................................. 8

*Manetti-Farrow v. Gucci America, Inc.*,
  858 F.2d 509 (9th Cir. 1988) .................................................. 2, 10, 11, 12, 16

*Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*,
  60 F. Supp. 3d 1109 (E.D. Cal. 2014) ......................................................... 7, 9

*Mosier v. HSBC Bank USA, N.A.*,
  2010 WL 5422550 (C.D. Cal. Dec. 28, 2010) ............................................... 11

28

SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS BASED ON FORUM NON
CONVENIENS

1515097.3

Glaser Weil

*Netbula, LLC v. Chordiant Software, Inc.*,
  2009 WL 2044693 (N.D. Cal 2009) ..................................................................... 13

*Oregon-Idaho Utilities, Inc. v. Skitter Cable TV, Inc.*,
  2017 WL 3446290 (D. Idaho Aug. 10, 2017) ....................................................... 11

*Pat Pellegrini Flooring Corp. v. ITEX Corp.*,
  2010 WL 1005318 (D. Or. Feb. 9, 2010) ............................................................... 8

*Paxton v. DISH Network*, LLC,
  2018 WL 1947420 (D. Or. Apr. 24, 2018) ............................................................ 8

*Sawyer v. Bill Me Later, Inc.*,
  2011 WL 7718723 (C.D. Cal. Oct. 21, 2011) ...................................................... 8, 9

*Stevens v. Corelogic*, Inc.,
  194 F. Supp. 3d 1046 (S.D. Cal. 2016) ................................................................. 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Glaser Weil**

SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS BASED ON FORUM NON CONVENIENS

1515097.3

1       Pursuant to the Court's July 6. 2018 Order (ECF No. 153), Sagan Limited

2   ("Sagan"), Cyberweb, Ltd. ("Cyberweb"), Netmedia Services, Inc. ("Netmedia") and

3   David Koonar ("Koonar") (collectively, "Defendants") submit the following

4   Supplemental Brief in support of their motion to dismiss based on the doctrine of

5   *forum non conveniens*.

6   **I.      INTRODUCTION**

7       Defendants vehemently deny that they have engaged in any copyright

8   infringement. But the merits of AMA's claims are not properly before this Court. In

9   the instant motion, Defendants seek to enforce the forum selection clause in the

10  Content Partnership Revenue Agreement ("CPA"), which designates Barbados as the

11  exclusive forum for all disputes relating to the CPA. The Court previously granted

12  Defendants' motion (ECF No. 126), but following an appeal, the Ninth Circuit has

13  remanded with instructions for the Court to decide a single remaining issue – whether

14  Defendants (who are not signatories to the CPA) have standing to enforce the CPA's

15  forum selection clause. Under Ninth Circuit law, the answer to this question is clearly

16  yes.

17      First, as this Court recognized in *Hillis v. Heineman*, 2009 WL 2222709 (D.

18  Ariz. July 23, 2009) (Campbell, J.), alleged agents of a signatory to an agreement

19  containing a forum selection clause can enforce the forum selection clause.

20  Defendants fit squarely under this rule. AMA Multimedia, LLC ("AMA") expressly

21  alleges that Defendants are agents (and alter egos) of G.I.M. Corp ("G.I.M."), a

22  signatory to the CPA. Dkt. No. 38 at 10; Dkt. No. 117 at 8 ("Mr. Koonar [GIM's

23  president] is the common force behind Cyberweb, Sagan, GIM and Netmedia.") Thus,

24  under this Court's own precedent, Defendants can enforce the forum selection clause.

25  A similar rule applies to third party-beneficiaries, and Defendants are third-party

26  beneficiaries under the CPA because the CPA expressly contemplates that non-

27  signatories (such as agents and employees) will assist G.I.M. with its performance

28  under the CPA.

1

Glaser Weil

Glaser Weil

Second, under Ninth Circuit law, as established in *Manetti-Farrow v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988), "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses," including defendants who are "closely related to the contractual relationship." Thus, under *Manetti-Farrow* courts routinely hold that when a non-signatory is involved in the performance of a contract it may rely upon the contract's forum selection clause. This is such a case. Here, the contract at issue concerned a program (called PaidPerView.com) for sharing advertising revenue generated by AMA videos displayed on certain websites. G.I.M., the named licensee under the CPA, did not have the technical capacity to administer the PaidPerView.com program, nor did G.I.M. own the website, Porn.com. Consequently, G.I.M. hired Defendant Netmedia to administer the program and arranged for AMA's videos to be displayed on Porn.com, a website owned by Defendants Cyberweb and Sagan. Thus, Defendants were essential participants in this contractual relationship, inextricably involved in its performance, and clearly entitled under *Manetti-Farrow* to enforce the forum selection clause.

Third, these same facts establish that Defendants are, at worst, implied licensees. Under Ninth Circuit law, an implied license will be found if, absent an implied license, the contract would be worthless. By AMA's own admission, if Defendants have no rights under the CPA, the CPA is worthless. In addition, under Ninth Circuit law an implied license may be inferred from the copyright owner's acquiescence to a defendant's alleged use of copyrighted material. Here, AMA was well aware since at least 2012 that Defendant Netmedia was administering the PaidPerView.com program, and that AMA's videos were being displayed on Porn.com (owned by Cyberweb and Sagan). Yet AMA has sued Defendants with respect to only a small fraction of these videos (ones which AMA contends it did not provide). Based on AMA's acquiescence, Defendants have an implied license under the CPA.

1    Finally, Defendants are assignees under the CPA. In fact, in its own pleading

2  AMA concedes that, even though they are not signatories to the CPA, Defendants are

3  parties to that agreement. Specifically, AMA concedes that Defendants are partners

4  with AMA in the PaidPerView.com program (which is the subject of the CPA), that

5  they have provided Defendants with AMA content pursuant to that program, and

6  Defendants are authorized to display such content on Porn.com and share any

7  resulting advertising revenue. Accordingly, as assignees to the CPA, Defendants have

8  standing to enforce its forum selection clause.

9    For these reasons, Defendants respectfully request that the court grant their

10  motion to dismiss based on *forum non conveniens*.

11  **II.    STATEMENT OF FACTS**

12    Plaintiff AMA and non-party G.I.M. are the signatories to the CPA. Under this

13  agreement, AMA authorized the display of AMA-copyrighted content on any

14  websites whose advertisements are **controlled by the Traffic Force Advertising**

15  **Management System**. CPA at Background Section B ("Licensee desires to provide

16  the Content to end users of a single/(group of) website(s) (the "Website(s)") on the

17  Worldwide Web, who's advertisements are controlled by the Traffic Force

18  Advertising Management System, ("Traffic Force"). . . . "); CPA at 1.1 ("Licensor

19  grants Licensee a non-exclusive, nontransferable worldwide license during the Term

20  to use, publish, display, and distribute the Content on the Website(s), solely for the

21  Purpose."). In exchange, AMA received a portion of the advertising revenue

22  generated by its videos under the PaidPerView.com revenue sharing program.

23    The license granted under the CPA is not limited to websites owned by G.I.M.

24  Instead, it expressly covers any websites whose advertisements are controlled by

25  Traffic Force. Porn.com, the website at issue in this lawsuit, is such a website.

26  However, Porn.com is owned by Defendants Cyberweb and Sagan, not G.I.M. Dkt.

27  No. 70-2 (Richardson Declaration), ¶ 3.  In fact, AMA concedes that G.I.M. does not

28  own any of the websites covered by the CPA, and thus, under its own interpretation,

3

Glaser Weil

the CPA is worthless. Dkt. No. 68 at 7 ("the CPA is 'worthless' the way it is written because GIM does not own and operate the websites, while other entities stream/download the content to end users.").

But the strained interpretation of the CPA that AMA now asserts is at odds with its own pleading. Specifically, in its First Amended Complaint, AMA conceded that Defendants are partners with AMA in an advertising program, that under this program AMA provided videos to Defendants, that Defendants were authorized to display these videos on Porn.com, and that AMA and Defendants shared any resulting advertising revenue:

> 63. Defendants are an advertising affiliate for Plaintiff, pursuant to which Plaintiff previously provided *limited sample promotional videos* for Defendants to display on Porn.com for the sole purpose of directing Internet traffic to Plaintiff's paid membership sites. Plaintiff and Defendants share in the revenue generated by Internet traffic directed to *Plaintiff's paid membership sites* when the Internet user signed up as a paid member.

Dkt. No. 16, ¶ 63. This is an obvious reference to the PaidPerView.com program and Defendants' rights under the CPA. Thus, at the outset of this litigation AMA expressly conceded that Defendants are parties to the CPA.

In addition, at all relevant times, the parties acted as if the CPA's license extended to Defendants. G.I.M. hired its affiliate Netmedia to administer the PaidPerView.com program. Dkt. No. 61-1 (Bradbury Declaration) at ¶ 1 ("Netmedia provides website technical assistance to PaidPerView.com."); Dkt. No. 131-3 (Bradbury Declaration), ¶ 2. And AMA videos were openly displayed on the Porn.com website, and other websites not owned by G.I.M. Dkt. No. 52-1 (Silverman Declaration stating that 2000 AMA videos were submitted to the PaidPerView.com program). Moreover, since at least 2012, AMA has been fully aware that Defendants, not G.I.M., administer the PaidPerView program that is the subject of the CPA.

For example, when AMA was considering whether it wanted to sign up for the PaidPerView program and enter into the CPA, it communicated with **Defendants** (not G.I.M.). Dkt. No. 32-2 (Silverman Declaration) at ¶ 29 ("When AMA signed up for

4

the Content Partnership Agreement for Porn.com, AMA representatives had direct contact with Ross Allen at Netmedia regarding initiating the program."); Dkt. No. 38-3, Exh. E (email thread between AMA representatives and Ross Allen at Netmedia regarding the PaidPerView.com program). In addition, when AMA had questions regarding the treatment of user-uploaded content under the PaidPerView program, AMA communicated with **Defendants** (specifically Netmedia and Cyberweb representatives), not G.I.M. AMA's president communicated by Skype chat with Kris Richardson of Cyberweb and Glen Camara of Netmedia concerning the treatment of user-uploaded content under the PaidPerView program:

> 2:42:49 kris10.richardson: Understood, and **anytime there is content that belongs to you we assign it to your account** anyway . . .
> 2:43:01 biggyfuckyoucash (Silverman): id prefer an ad revshare
> 2:43:12 biggyfuckyoucash (Silverman): like you offer on the legal stuff, why shouldn't we get paid on it?
> 2:43:14 kris10.richardson: **same end result**
> 2:43:48 kris10.richardson: No I meant your content coming from unauthorized sources on our site
> 2:43:55 biggyfuckyoucash (Silverman): **you assign it to our account?**
> 2:44:19 kris10.richardson: **Is assigned to you, your ad revshare**. . ,
> 2:53:13 biggyfuckyoucash (Silverman): [t]he **ad revshare program needs to be extended to our piratedclips** . . . .
> 3:39:12 hitman b52 (Glen Camra): 3) if you have a list of content that is yours, but was uploaded by users, **we will happily add it to your ppv account, as this is the main purpose of the program**.
> 3:39:40 biggyfuckyoucash (Silverman): **much appreciated**.

Dkt. No. 83-3 (Exhibit A to Richardson Declaration). Mr. Silverman had a similar conversation with Ross Allan of Netmedia:

> 4:22:22 Ross Allan [after Mr. Silverman requested a share of any revenue generated by AMA user-uploaded content]: **we would pay you out at the rates that you qualify for in PPV**
> 4:22:26 Ross Allan: so **if your rate is** 30% or whatever
> 4:22:23 biggyfuckyoucash (Silverman): on the stuff we submit legally dude - you won't hear a peep

5

4:22:28 Ross Allan: **thats what we do**

4:28:25 Ross Allan: keep in touch about this

4:28:31 biggyfuckyoucash (Silverman): will do

4:28:37 Ross Allan: and meanwhile, **if there is activecontent on there, I can move it to under your PPV account**, I think

4:28:54 biggyfuckyoucash (Silverman): **thats fine**

Dkt. No. 83-1 (Exhibit A to Allan Declaration).

Yet at no time prior to the filing of this lawsuit did AMA question or object to Defendants' involvement in the PaidPerView.com program or the performance of the CPA. And even today, two years after AMA filed this lawsuit, AMA still has not accused Defendants of copyright infringement with respect to thousands of AMA videos that have been displayed on Porn.com under the PaidPerView program. *Compare* Dkt. No. 52-1 (Silverman Declaration stating that 2000 AMA videos were submitted to the paidperview.com program) *with* Dkt No. 1 at ¶ 78 (accusing Defendants of copyright infringement with respect to 64 videos). AMA's inaction is consistent with its admission in the First Amended Complaint that Defendants are parties to the CPA. And it is consistent with the language of the CPA, which expressly contemplates that agents of G.I.M. will assist G.I.M. in its performance under the CPA.  CPA at 6.1 ("Licensee represents and warrants . . . (iii) that all actions taken by Licensee, its employees and **<u>agents</u>**, with respect to the Content or the relationship contemplated by this Agreement shall comply with applicable law.") (emphasis added).

## III.   <u>ARGUMENT</u>

### A.   <u>Defendants Have Standing As Agents Or Third-Party Beneficiaries</u>

AMA has repeatedly asserted that Defendants are agents and alter egos of G.I.M. *See, e.g*., Dkt. No. 32 at 10 ("NetMedia, Cyberweb, GIM, and GLP 5 are clearly intertwined. Each perform a critical role in the operation of Porn.com and Traffic Force such that they are **<u>agents</u>** in the ventures and/or alter egos of each other.") (emphasis added); Dkt. No. 38 at 10 (same); Dkt. No. 36 at 2 ("NetMedia,

Inc. provides support/uploads content to www.Porn.com, for the benefit of Traffic Force, GIM Corp., SAGAN Ltd., and Cyberweb Ltd."); Dkt. No. 50 at 5 (referencing G.I.M. and Defendants: "These companies are alter-egos of each other . . . ."); Dkt. No. 52-1 ("Lastly, Ross Allan who is facilitating monetary transactions and all client relationships on behalf of GIM corporation is an employee of Netmedia. . . ."); Dkt. No. 67 at 3 ("In addition, NetMedia employees also manage the advertising for Porn.com, assist in billing and payments, and both send and receive money for both GIM and Cyberweb (an admitted owner of Porn.com."); *Id.* at 5 ("GIM merely provides content to the other named Defendants for distribution."); Dkt. No. 117 at 8 ("Mr. Koonar [G.I.M.'s president] is the common force behind Cyberweb, Sagan, GIM and Netmedia.").[1]

Moreover, AMA treated Defendants as G.I.M.'s agents when it interfaced with Defendants, not G.I.M., concerning the PaidPerView.com program (i.e., the subject of the CPA). Dkt. No. 38-3 (email thread between AMA representatives and Ross Allen at Netmedia regarding the paidperview.com program); Dkt. No. 83-3 (log of chat between AMA president Adam Silverman (aka biggyfuckyoucash), Kris Richardsen (of Cyberweb) and Glen Camara (of Netmedia) regarding the paidperview.com program.); Dkt. No. 83-1 (chat between Ross Allan of Netmedia and Silverman of AMA re same).

It is well-recognized that agents of a signatory have standing to enforce a forum selection clause. *See, e.g., Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, 60 F. Supp. 3d 1109, 1119 (E.D. Cal. 2014) ("[A] person may enforce a

---

[1] And while Defendants strenuously deny any alter ego allegations, they did act as agents of G.I.M. with respect to Porn.com and PaidPerView.com. *See, e.g.*, Dkt. No. 61-1 (Bradbury Declaration) at ¶ 1 ("Netmedia provides website technical assistance to PaidPerView.com."); *Id.* at Exh. A (invoices from Netmedia to G.I.M for technical services relating to, among other things, Porn.com); Dkt. No. 83-3 (chat between Kris Richardson of Cyberweb and Adam Silverman of AMA re administration of PaidPerView.com program); Dkt. No. 83-1 (chat between Ross Allan of Netmedia and Silverman of AMA re same).

1515097.3

forum selection clause he did not sign if he was a third party beneficiary of the contract, a successor in interest to the contract, or an agent intended to benefit from the contract[.]”); *Sawyer v. Bill Me Later, Inc.*, 2011 WL 7718723, at *4 (C.D. Cal. Oct. 21, 2011) (“In order to compel enforcement of the forum selection clause, a nonsignatory to the contract must be: (1) a third-party beneficiary to the contract; (2) a successor in interest to the contract; or (3) an agent intended to benefit from the clause.”); *Laurel Village Bakery LLC v. Global Payments Direct Inc*., 2006 WL 2792431 (N.D. Cal. Sep. 25, 2006) (defendants had standing because, according to the allegations in the Complaint, defendants assisted the signatory in the alleged wrongdoing).

The decision in *Pat Pellegrini Flooring Corp. v. ITEX Corp*., 2010 WL 1005318 (D. Or. Feb. 9, 2010), is illustrative. In *ITEX*, the plaintiff alleged that non-signatories were agents of a signatory, and were essential to the signatory's performance of the contract that contained the forum selection clause. This was sufficient for the non-signatory agents to enforce the forum selection clause:

> Here, PPF alleges that Castoro and Garcia are managers and brokers of NYTO and that NYTO holds itself out as an agent of ITEX. (Mot. to Am. Ex. A ¶¶ 4, 5.) In his declaration, Pelligrini represents that the NYTO Defendants were instrumental in PPF's decision to join ITEX, provided all of the ITEX membership documents for PPF, answered all of PPF's questions about ITEX, and brokered all of PPF's trades in the ITEX marketplace. (Pellegrini Decl. ¶¶ 3–6.) In other words, the NYTO Defendants were involved in every aspect of PPF's contractual relationship with ITEX. Based on these allegations, the court finds that the conduct of the NYTO Defendants was so closely related and so integral to PPF's relationship with ITEX that the NYTO Defendants should be bound by the forum selection clause contained in the 1993 Rules.

*Id*. at *10. *See also Paxton v. DISH Network*, LLC, 2018 WL 1947420, at *4 (D. Or. Apr. 24, 2018) (non-signatories subject to forum selection clause because they “corresponded with [one signatory] on behalf of and as agents of [the other]” and thus were inextricably involved in every aspect of [the signatories'] contractual

1   relationship.").

2       Also illustrative is this Court's own decision in *Hillis v. Heineman*. *Hillis* was a

3   securities fraud case in which the plaintiff alleged that the signatory's outside

4   securities counsel participated in the alleged fraudulent scheme. This Court held that

5   the defendant could enforce the forum selection clause as a non-signatory because he

6   was alleged to have committed his bad acts while assisting the signatory.

7       Bartko generally would be entitled to enforce the forum selection clauses
    because he prepared the Subscription Agreement as securities counsel for
8       Resolve Staffing and, like Mr. Heineman, is alleged to have actively
    engaged in the sale of corporate securities to Plaintiffs. Dkt. # 1 ¶¶ 1,
9       2(d), 34; see Laurel Village Bakery, 2006 WL 2792431, at *6 (agent of
    signatory to agreement who allegedly participated in fraudulent scheme
10      had standing to enforce forum selection clause). [Though] plaintiffs
    argue that Bartko has waived the defense of improper venue by failing to
11      include it in his initial motion to dismiss. Dkt. # 71 at 9 (citing
    Fed.R.Civ.P. 12(g), (h)(1)). . . . [t]he Court will grant the motion to
12      dismiss for improper venue with respect to the civil conspiracy claim
    asserted against Bartko.

13  2009 WL 2222709, at *3.

14      Defendants fit squarely under this rule. As noted above, AMA alleges that, at

15  all times, Defendants acted as agents of G.I.M. Thus, under this Court's own

16  precedent, Defendants can enforce the forum selection clause.

17      A similar rule applies to third-party beneficiaries. *Morgan Tire of Sacramento*

18  *v. Goodyear Tire & Rubber Co.*, 60 F. Supp. 3d 1109, 1119 (E.D. Cal. 2014) ("[A]

19  person may enforce a forum selection clause he did not sign if he was a third party

20  beneficiary of the contract, a successor in interest to the contract, or an agent intended

21  to benefit from the contract[.]"); *Sawyer*, 2011 WL 7718723, at *4 (C.D. Cal. Oct. 21,

22  2011) ("In order to compel enforcement of the forum selection clause, a nonsignatory

23  to the contract must be: (1) a third-party beneficiary to the contract; (2) a successor in

24  interest to the contract; or (3) an agent intended to benefit from the clause."). And

25  Defendants qualify as third-party beneficiaries.

26      Under Ninth Circuit law, an "intended beneficiary need not be specifically or

27  individually identified in the contract, but must fall within a class clearly intended by

28

9

1515097.3

the parties to benefit from the contract." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir.1999). Here, the CPA expressly contemplates that agents will assist G.I.M. with the performance of the CPA. CPA at 6.1 ("Licensee represents and warrants . . . (iii) that all actions taken by Licensee, its employees and agents, with respect to the Content or the relationship contemplated by this Agreement shall comply with applicable law."). G.I.M. and AMA could not have contemplated that G.I.M.'s agents would expose themselves to copyright infringement liability each time they assisted G.I.M. in its performance under the CPA. That would be absurd. They must have intended that the CPA extended to any agents that assisted G.I.M., and on that basis Defendants should be permitted to enforce the CPA's forum selection clause.

**B.     Defendants Have Standing To Enforce The Forum Selection Clause As Closely Related Parties Under *Manetti-Farrow***

Under Ninth Circuit law, "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Manetti-Farrow*, 858 F.2d at 514, fn. 5. This includes parties whose alleged conduct is "closely related" to the contractual relationship established. *Id*. Thus, under *Manetti-Farrow* courts routinely hold that when a non-signatory is involved in the performance of a contract it may rely upon the contract's forum selection clause.

For example, the Ninth Circuit in *Manetti-Farrow* held that the forum selection applied to a non-signatory affiliate of the signatory defendant, and three directors of the signatory defendant. *Id.* ("We agree with the district court that the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants."). Similarly, the Ninth Circuit applied a forum selection clause to non-signatory affiliates in *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450,456 (9th Cir. 2007) ("The forum selection clauses apply equally to [nonsignatories] BVNA and BV Canada because any transactions between those entities and Holland America took place as part of the larger contractual

relationship between Holland America and Bureau Veritas.").

Numerous district courts have followed *Manetti-Farrow* and *Holland America* in applying forum selection clauses to affiliates. For example, in *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 2014 WL 1047207 (N.D. Cal. 2014), the court (citing *Holland America* and *Manetti-Farrow*) applied the forum selection clause to a subsidiary of a signatory, reasoning that the subsidiaries alleged conduct occurred as part of the relationship between the signatories to the forum selection clause. *Id.* at *3 ("because any relationship between the Sharp Plaintiffs and Toshiba took place 'as part of the larger contractual relationship' between the two parent companies, the BTA and its forum-selection clause should be read to apply to the subsidiaries."). *See also In re Yahoo! Inc. Customer Data Security Breach Litigation*, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) (allowing parent to enforce forum selection clause in contract signed by subsidiary); *Oregon-Idaho Utilities, Inc. v. Skitter Cable TV, Inc.*, 2017 WL 3446290 (D. Idaho Aug. 10, 2017) (allowing parent and sister corporations to enforce forum selection clause in contract signed by affiliate); *eBay, Inc. v. Digital Point Solutions, Inc.*, 608 F. Supp. 2d 1156, 1162 (N.D. Cal. 2009) (allowing affiliate to enforce forum selection clause); *Mosier v. HSBC Bank USA, N.A.*, 2010 WL 5422550 (C.D. Cal. Dec. 28, 2010) (same).

In this case, the Court has already held that the corporate Defendants are all affiliates of the signatory, G.I.M. Dkt. No. 126 at 12 ("Under the Ninth Circuit's definition, all corporate Defendants are affiliates of GIM"). And as discussed above, AMA has alleged that Defendants are agents of G.I.M., and acted at the direction of G.I.M.'s president. Dkt. No. 38 at 10; Dkt. No. 117 at 8. Moreover, Defendants' alleged wrongdoing is the same type of conduct that is the subject of the CPA – i.e., use of AMA content on websites, such as Porn.com, whose advertisements are controlled by Traffic Force. CPA at Background Section B ("Licensee desires to provide the Content to end users of a single/(group of) website(s) (the "Website(s)") on the Worldwide Web, who's advertisements are controlled by the Traffic Force

Glaser Weil

1  Advertising Management System, ("Traffic Force")"); CPA at 1.1 ("Licensor grants
2  Licensee a non-exclusive, nontransferable worldwide license during the Term to use,
3  publish, display, and distribute the Content on the Website(s), solely for the
4  Purpose.").

5      By any measure, Defendants' conduct is very closely related to the contractual
6  relationship contemplated by the CPA, and Defendants can enforce the forum
7  selection clause under *Manetti-Farrow*.

8      **C.**   **Defendants Have Standing To Enforce The Forum Selection Clause**
9                **As Implied Licensees**

10     Under Ninth Circuit copyright law, a nonexclusive license "may be granted
11 orally, or may even be implied from conduct." *Foad Consulting Grp., Inc. v.*
12 *Azzalino*, 270 F.3d 821, 826 (9th Cir. 2001) (J. Koczinksi, concurring). An implied
13 license will be found if the circumstances suggest that the parties intended that
14 defendant's activities would be licensed. *Effects Assoc., Inc. v. Cohen*, 908 F.2d 555,
15 558-559 (9th Cir. 1990) (implied license existed where producer's payment of large
16 licensing fee would have been senseless absent an implied license).

17     Here, as discussed above, the CPA expressly states that AMA's content may be
18 displayed on any website with ads controlled by Traffic Force. CPA at § 1.1.
19 However, it is undisputed that G.I.M. does not own Porn.com. If the owners,
20 operators, and technical service providers of the Porn.Com website did not have
21 licenses, G.I.M. would be unable to actually display any Content on the site and the
22 CPA would be worthless. AMA actually concedes that this would be the result under
23 its interpretation of the CPA. Dkt. No. 68 at 7 ("the CPA is 'worthless' the way it is
24 written because GIM does not own and operate the websites, while other entities
25 stream/download the content to end users.").

26     Of course the parties did not intend such a nonsensical result. They must have
27 intended that Defendants have an implied license. *Effects Assoc.*, 908 F.2d at 558-559
28 (implied license existed where license would otherwise be worthless: "To hold that

1    Effects did not at the same time convey a license to use the footage in 'The Stuff'

2    would mean that plaintiff's contribution to the film was 'of minimal value,' a

3    conclusion that can't be squared with the fact that Cohen paid Effects almost $56,000

4    for this footage."); *Foad*, 270 F.3d at 828, 829 (implied license existed where

5    agreement would otherwise be nonsensical: "Given the amount of money GenCom

6    paid for Foad's services and because part of the agreement was for Foad to help

7    GenCom with its application to the city, it would be surprising if the parties had

8    intended for GenCom to seek Foad's permission before using the plans to build the

9    project.").

10          In addition, under Ninth Circuit law a copyright owner's acquiescence to a

11   defendant's use of copyrighted material can be the basis for an implied license. *See,*

12   *e.g.*, *Falcon Enterprises, Inc. v. Publishers Service, Inc.*, 438 Fed. Appx. 579 (9th Cir.

13   2011) ("The parties' conduct demonstrates that Falcon granted Publishers an ongoing

14   nonexclusive implied license to use its content for a fee. . . . Falcon's claim that

15   Publishers needed an express license for each image that Publishers published is

16   contradicted by the frequent and informal interactions between the parties."); *Field v.*

17   *Google Inc.*, 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006) (finding implied license

18   based on acquiescence: "Consent to use the copyrighted work need not be manifested

19   verbally and may be inferred based on silence where the copyright holder knows of

20   the use and encourages it."); *Netbula, LLC v. Chordiant Software, Inc.*, 2009 WL

21   2044693 (N.D. Cal 2009) (an implied license will exist when the licensor's conduct

22   manifests an objective intent to allow the licensee to engage in the alleged conduct);

23   *Stevens v. Corelogic*, Inc., 194 F. Supp. 3d 1046, 1053–54 (S.D. Cal. 2016) (consent

24   to use the copyrighted work need not be manifested verbally and may be inferred

25   based on silence where the copyright holder knows of the use and does not object);

26   *Experexchange, Inc. v. Doculex*, Inc., 2009 WL 3837275, at *23 (N.D. Cal. Nov. 16,

27   2009). *See also Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y.

28   1997) (lack of objection creates implied license).

1515097.3

As discussed above, the CPA expressly contemplates that G.I.M. will delegate certain tasks to agents. CPA at § 6.2 ("all actions taken by Licensee, its employees and agents, with respect to the Content or the relationship contemplated by this Agreement shall comply with applicable law."). And AMA has long been aware that Defendants were in fact performing certain tasks in connection with the CPA as G.I.M.'s agents. For example, AMA communicated with Defendants (not G.I.M.) prior to entering into the CPA. Dkt. No. 32-2 (Silverman Declaration) at ¶ 29 ("When AMA signed up for the Content Partnership Agreement for Porn.com, AMA representatives had direct contact with Ross Allen at Netmedia regarding initiating the program."); Dkt. No. 38-3 (email thread between AMA representatives and Ross Allen at Netmedia regarding the paidpperview.com program). In addition, AMA communicated with Defendants (specifically Netmedia and Cyberweb representatives), not G.I.M., regarding the PaidPerView program. *See, e.g.*, Dkt. No. 83-3 (Exhibit A to Richardson Declaration) (chat log between AMA president Adam Silverman (aka biggyfuckyoucash), Kristen Richardsen (of Cyberweb) and Glen Camara (of Netmedia) regarding the PaidPerView.com program.); Dkt. No. 83-1 (chat log between Ross Allan of Netmedia and Silverman of AMA re same). In fact, AMA alleges that Netmedia is responsible for all material aspects of operating Porn.com. Dkt. No. 117 at 14 ("Netmedia is entrenched in all material aspects of operating Porn.com.").

Even though AMA has been aware for years of Defendants' roles with respect to Porn.com and the PaidPerView.com program, AMA has sued Defendants with respect to less than four percent of the roughly two thousand AMA videos that have been displayed on Porn.com. Dkt. No. 52-1 (Silverman Declaration stating that two thousand AMA videos were submitted to the paidpperview.com program); Dkt No. 1 at ¶78 (accusing Defendants of copyright infringement with respect to 64 videos). Thus, AMA itself must believe that Defendants are licensed under the CPA with respect to more than nineteen hundred AMA videos. There is no other explanation for AMA's

inaction. Under these facts, if Defendants are not express licensees under the CPA, they must be deemed implied licensees based on AMA's acquiescence. *Field*, 412 F. Supp. 2d at 1116 (implied license based on copyright holder's failure to object to known use of copyrighted works).

### D. Defendants Have Standing To Enforce The Forum Selection Clause As Parties To The CPA

The Ninth Circuit vacated the Court's finding that Defendants are parties to the CPA, raising issues as to the completeness of the record regarding the assignments from G.I.M. to Defendants. Defendants submit that the following additional facts conclusively establish that Defendants are permitted assignees under, and thus parties to, the CPA.

First, AMA long ago conceded that Defendants are parties to the CPA. As discussed above, the CPA governs license rights with respect to AMA content for use in the PaidPerView.com program, an advertising revenue sharing program. In its First Amended Complaint, AMA concedes that Defendants are partners with AMA in the PaidPerView.com program, that AMA provided Defendants with content pursuant to this program, and as such Defendants are authorized to display AMA content on Porn.com and share any resulting revenue.

> 63. Defendants are an advertising affiliate for Plaintiff, pursuant to which Plaintiff previously provided *limited sample promotional videos* for Defendants to display on Porn.com for the sole purpose of directing Internet traffic to Plaintiff's paid membership sites. Plaintiff and Defendants share in the revenue generated by Internet traffic directed to *Plaintiff's paid membership sites* when the Internet user signed up as a paid member.

Dkt. No. 16, ¶ 63. AMA cannot now contend that Defendants are strangers to the CPA.

Second, AMA expressly concedes that G.I.M. granted Netmedia license rights under the CPA. Dkt. No. 38 at 10 ("Not only has GIM granted Netmedia rights to AMA's content under the CPA, but Netmedia employees are involved in all aspects of Porn.com.") Again, AMA should be estopped from reversing course, and now

15

1  contending that G.I.M. never granted license rights to Netmedia under the CPA.

2      Accordingly, based on AMA's own admissions, Defendants have established

3  that they are assignees under the CPA, and have standing to enforce the CPA's forum

4  selection clause.

5      **E.**     **For The Reasons Stated In The Court's Prior Order, Defendant**

6          **Koonar Has Standing To Enforce The Forum Selection Clause**

7      In its prior Order, the Court held that Defendant Koonar had standing to

8  enforce the forum selection clause as an officer of named party (G.I.M.), and because

9  his allegedly infringing activity relates to the CPA.

10      Koonar is employed as president of GIM, a signatory to the CPRA.
Koonar is also president of both Netmedia and the holding company that

11  owns all of GIM and 50% of Cyberweb. AMA claims that Koonar was
engaged in the infringing activity. Doc. 68 at 6. Just as AMA's copyright

12  infringement claims relate to the CPRA, AMA's allegation that Koonar
was involved in such conduct likewise relates to the CPRA. Accordingly,

13  AMA's claims against Koonar are subject to the forum selection clause.

14  Dkt. No. 126 at 14:

15      The Ninth Circuit's decision was limited to the assignment issue, and did not

16  impact the Court's ruling with regard to Defendant Koonar. In fact, AMA did not

17  even address the Court's ruling with regard to Defendant Koonar on appeal. And, in

18  any event, the Court's reasoning in its prior ruling with regard to Defendant Koonar

19  applies with equal force now.[2]

20  **IV.**     **CONCLUSION**

21      Based on the foregoing, Defendants respectfully request that they have standing

22  to enforce the forum selection clause in the CPA.

23

24    DATED: August 3, 2018             Respectfully submitted,

25

26                           GLASER WEIL FINK HOWARD

27

28

---

[2] The above-stated arguments concerning agents, third-party beneficiaries, *Manetti-Farrow*, and implied license also apply to Defendant Koonar.

SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS BASED ON FORUM NON CONVENIENS

1515097.3

Glaser Weil

AVCHEN & SHAPIRO LLP

By:  /s/ Erica J. Van Loon
ERICA J. VAN LOON
STEVEN BASILEO
*Attorney for Defendants Cyberweb Ltd.,*
*David Koonar, Sagan Limited, GLP 5, Inc.*
*and Netmedia Services Inc.*

SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS BASED ON FORUM NON
CONVENIENS

1515097.3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of August, 2018, I electronically transmitted the forgoing document to the Clerk's office using the CM/ECF system for filing. Copies will be transmitted by CM/ECF and email to the following recipients:

Veronica L. Manolio
Manolio & Firestone, PLC
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
vmanolio@mf-firm.com

Spencer Freeman
Freeman Law Firm, Inc.
1107 ½ Tacoma Ave. S.
Tacoma, Washington 98402
sfreeman@freemanlawfirm.org

By:  /s/ Erica J. Van Loon
Erica J. Van Loon

1515097.3