ERICA J. VAN LOON (admitted *Pro Hac Vice*)
evanloon@lathropgage.com
**LATHROP GAGE LLP**
1888 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 789-4600
Facsimile:    (310) 789-4601

*Attorney for Defendants*
*Cyberweb Ltd., David Koonar,*
*Sagan Limited, and*
*Netmedia Services, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| AMA MULTIMEDIA LLC, a Nevada limited liability company, | CASE NO. 2:16-cv-01269-PHX-DGC |
| Plaintiff, | Hon. David G. Campbell |
| v. | **SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS BASED ON** *FORUM NON CONVENIENS* |
| SAGAN LIMITED, a Republic of Seychelles company, individually and d/b/a PORN.COM; CYBERWEB LTD., formerly MXN LTD., a Barbados Company, individually and d/b/a PORN.COM; NETMEDIA SERVICES INC., a Canadian Company individually and d/b/a PORN.COM; GLP 5, Inc., a Michigan Company individually and d/b/a/ Trafficforce.com; DAVID KOONAR, an individual; and John Does 1-20, | |
| Defendants. | |

Lathrop Gage LLP
1888 Century Park East, Suite 1000
Los Angeles, California 90067-1623

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1
II. ARGUMENT ........................................................................................................ 2
   A. Defendants Have Standing To Enforce The Forum Selection Clause As Closely Related Parties Under *Manetti-Farrow* ....................................... 2
   B. Defendants Have Standing To Enforce The Forum Selection Clause As Agents Or Third-Party Beneficiaries ...................................................... 4
   C. Defendants Have Standing To Enforce The Forum Selection Clause As Implied Licensees ..................................................................................... 7
   D. Defendants Have Standing To Enforce The Forum Selection Clause As Parties To The CPA ................................................................................. 9
   E. Defendant Koonar Has Standing To Enforce The Forum Selection Clause ................................................................................................. 10
III. CONCLUSION .................................................................................................. 10

Lathrop Gage LLP
1888 Century Park East, Suite 1000
Los Angeles, California 90067-1623

i

**Lathrop Gage LLP**
1888 Century Park East, Suite 1000
Los Angeles, California 90067-1623

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*American Title Ins. Co. v. Lacelaw Corp.*,
   861 F.2d 224 (9th Cir. 1988)................................................................................5, 10

*Effects Assoc., Inc. v. Cohen*,
   908 F.2d 555 (9th Cir. 1990).................................................................................7, 8

*Field v. Google Inc.*,
   412 F. Supp. 2d 1106 (D. Nev. 2006)......................................................................8

*Foad Consulting Grp., Inc. v. Azzalino*,
   270 F.3d 821 (9th Cir. 2001) (Koczinski, J., concurring) ...............................7, 8

*Hillis v. Heineman*,
   2009 WL 2222709 (D. Ariz. July 23, 2009).........................................................5

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007)..........................................................................2, 3, 10

*Keane Dealer Servs., Inc. v. Harts*,
   968 F. Supp. 944 (S.D.N.Y. 997)......................................................................... 8

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
   858 F.2d 509 (9th Cir. 1988)......................................................... 1, 2, 3, 6, 10

*Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*,
   60 F.3d 1109 (E.D. Cal. 2014) ..............................................................................5

*Pat Pellegrini Flooring Corp. v. Itex Corp.*,
   2010 WL 1005318 (D. Or. Feb. 9, 2010) .............................................................6

*Stevens v. Corelogic, Inc.*,
   194 F. Supp. 3d 1046, 1053-54 (S.D. Cal. 2016)..................................................9

**Other Authorities**

Restatement of Contracts (Second) §§ 317, 322(2), and 324 ...............................10

**Lathrop Gage LLP**
**1888 Century Park East, Suite 1000**
**Los Angeles, California 90067-1623**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    **INTRODUCTION**

This Court previously ruled that it "cannot resolve this case without interpreting the CPRA.  Under governing Ninth Circuit law, this case therefore arises out of or relates to the CPRA, and the forum selection clause applies to this dispute."  Dkt. 126 at 11.  The Ninth Circuit did not address on appeal the applicability of the CPRA.  Dkt. 147-1.  The only issue left for this Court to resolve is whether Defendants have standing to enforce the forum selection clause.  *See* Dkt. 147-1 at 5; Dkt. 153.  The answer is clearly yes.

In its supplemental brief ("AMA Supp. Br."), AMA argues for the first time in this litigation that the Content Partnership Revenue Agreement ("CPA") does not apply because of a contract that AMA entered into with Cyberweb in 2007.  Not only is it improper for AMA to introduce new evidence at this stage,[1] the 2007 contract is irrelevant because the CPA is a fully integrated agreement.  *See* CPA Section 10.6.  Moreover, the 2007 contract does not change the fact that the Court cannot resolve this case without interpreting the CPA – such that the forum selection clause in the CPA applies.

Most of AMA's supplemental brief and supporting evidence attempts to argue (or reargue) the merits of its underlying claims, but those are immaterial to the issue at hand: whether Defendants may enforce the forum selection clause in the CPA.  As the Ninth Circuit recognized in its April 27, 2018, ruling, "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses."  Dkt. 147-1 at 5 (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)).  The undisputed evidence establishes that all of the Defendants are closely related to the contractual relationship between AMA and G.I.M., such that they may benefit from the forum selection clause in the CPA.  This is true under *Manetti-Farrow*, and it is also the case because of Defendants' status as agents, third-party beneficiaries, implied licensees, and/or assignees to the CPA – any one of which is sufficient to give Defendants standing to enforce the forum selection clause.

---

[1] This is particularly so given AMA's recent argument to the Court that "[t]he briefing at this point is sufficient for the Court to enter rulings on the outstanding issues." Dkt. 152 at 3.

II.     **ARGUMENT**

    **A.     Defendants Have Standing To Enforce The Forum Selection Clause As Closely Related Parties Under *Manetti-Farrow***

Under Ninth Circuit law, as established in *Manetti-Farrow*, "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses," including defendants who are "closely related to the contractual relationship." 858 F.2d at 514 n.5; *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) ("The forum selection clauses apply equally to BVNA and BV Canada because any transactions between those entities and Holland America took place as part of the larger contractual relationship between Holland America and Bureau Veritas.")

AMA spends much of its brief arguing that the CPA is unrelated to Porn.com, such that Defendants are "strangers" to the CPA.  That is demonstrably false.  Earlier in this case, AMA expressly acknowledged that it entered into the CPA because it wanted to post content on Porn.com.  *See* Dkt. 33-2 at ¶ 17 ("In September 2012, AMA entered into a content partnership agreement with GIM **for revenue sharing on content posted on Porn.com**."); Dkt. 33 at 6 (same); Dkt. 38-1 at ¶ 22 ("AMA previously entered into a Content Partnership Agreement **for promotional materials to be posted on Porn.com**. The Content Partnership Agreement is with GIM Corp."); Dkt. 34-1 at ¶ 22 (same).  In fact, shortly before entering into the CPA, AMA's President, Adam Silverman, asked one of his AMA colleagues, Lewis Thornton, to "check . . . out . . . a tube submission progrma [sic] for porn.com that also includes a payout for views."  Dkt 38-3 (Silverman Decl., Ex. E).  Mr. Thornton responded that he was "**keen to see get our videos on porn.com**." Contrary to AMA's current position, it is clear that AMA understood before entering into the CPA in September 2012 that the 2007 contract with Cyberweb would not allow AMA to post content to Porn.com, and that AMA entered into the CPA to be able to do so.

Although the parties to the CPA are AMA and G.I.M., Porn.com is owned by defendants Cyberweb and Sagan, not G.I.M.  Dkt. 70-2 (Richardson Decl.), ¶ 3; AMA

**Lathrop Gage LLP**
1888 Century Park East, Suite 1000
Los Angeles, California 90067-1623

Lathrop Gage LLP
1888 Century Park East, Suite 1000
Los Angeles, California 90067-1623

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Supp. Br. at 4.  G.I.M. necessarily needed to involve Defendants in the CPA, and AMA repeatedly has asserted that Defendants "[e]ach perform a critical role in the operation of Porn.com and Traffic Force such that they are agents in the ventures and/or alter egos of each other."  Dkt. 32 at 10; *see also* Dkt. 38 at 10 (same).  By AMA's own admission, Defendants are intimately involved in all aspects of Porn.com – and thus are "closely related to the contractual relationship" between AMA and G.I.M.  *See, e.g.*, Dkt. 38 at 10 ("Netmedia . . . operates Porn.com.  Not only has GIM granted Netmedia rights to AMA's content under the CPA, but Netmedia employees are innvolved [sic] in all aspects of Porn.com."); Dkt. 36 at 2 ("NetMedia, Inc. provides support/uploads content to www.Porn.com, for the benefit of Traffic Force, GIM Corp., SAGAN Ltd., and Cyberweb Ltd."); Dkt. 50 at 5 (referencing G.I.M. and Defendants: "These companies are alter-egos of each other . . . ."); Dkt. 67 at 3 ("In addition, NetMedia employees also manage the advertising for Porn.com, assist in billing and payments, and both send and receive money for both GIM and Cyberweb . . . ."); AMA Supp. Br. at 4 (describing Netmedia's role in connection with Porn.com).

Although Defendants plainly are "transaction participants" who are "closely related" to the CPA, AMA asserts without any legal authority that only third-party beneficiaries may enforce a forum selection clause under *Manetti-Farrow*.  AMA Supp. Br. 14.  Defendants are unaware of any case that has so held, and the Ninth Circuit applied the *Manetti-Farrow* doctrine in *Holland America* without any mention of a third-party beneficiary requirement.  As the Ninth Circuit reiterated in its April 2018 order in this case, "a range of transaction participants . . . should benefit from and be subject to forum selection clauses."  Dkt. 147-1 at 5 (emphasis added).

AMA attempts to distinguish *Manetti-Farrow* and *Holland America* by arguing that in those cases "the non-signatory transactional participants were active participants in performing the purpose of the contract – known at the time of the contracts and throughout performance [and] were necessarily and clearly a part of the overall

- 3 -

**Lathrop Gage LLP**
1888 Century Park East, Suite 1000
Los Angeles, California 90067-1623

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

contractual relationship." AMA Supp. Br. at 15. But that is precisely the situation here. When AMA was considering whether to enter into the CPA, it communicated with **Defendants**, not G.I.M. Dkt. 32-2 (Silverman Decl.) at ¶ 29 ("When AMA signed up for the Content Partnership Agreement for Porn.com, AMA representatives had direct contact with Ross Allen at Netmedia regarding initiating the program."); Dkt. 38-3, Ex. E (email thread between AMA representatives and Ross Allen at Netmedia). **Cyberweb and Sagan** own Porn.com, not G.I.M., and it is Defendants who "perform a critical role in the operation of Porn.com and Traffic Force." Dkt. 32 at 10. In addition, when AMA had questions regarding the treatment of user-uploaded content under the PaidPerView.com program, AMA communicated with representatives of **Netmedia and Cyberweb**, not G.I.M. Dkt 83-3 (Ex. A to Richardson Decl.); Dkt. 83-1 (Ex. A to Allan Decl.).

Cyberweb, Netmedia, and Sagan not only are affiliates of G.I.M., as this Court previously found (Dkt. 126 at 12), they are intimately connected to the CPA and are entitled to benefit from its forum selection clause – regardless of whether they are also agents, third-party beneficiaries, implied licensees, and/or assignees to the CPA. The Court should grant Defendants' motion to dismiss for this reason alone.

B.    **Defendants Have Standing To Enforce The Forum Selection Clause As Agents Or Third-Party Beneficiaries**

AMA argues throughout its supplemental brief that Defendants cannot be agents under the CPA because G.I.M. allegedly was granted a nontransferable license and "the actual language of the CPA precludes a third party from fulfilling GIM's obligations." *See, e.g.,* AMA Supp. Br. at 2 and 5. Neither argument is correct.

Section 6.2 of the CPA expressly contemplates that agents of G.I.M. will assist G.I.M. in its performance under the CPA: "Licensee represents and warrants . . . (iii) that all actions taken by Licensee, its employees and **agents**, with respect to the Content or the relationship contemplated by this Agreement shall comply with applicable law." (Emphasis added.) Similarly, Section 10.3 of the CPA expressly allows G.I.M. to "assign

- 4 -

Lathrop Gage LLP
1888 Century Park East, Suite 1000
Los Angeles, California 90067-1623

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

this Agreement without consent to an affiliate, parent, or subsidiary . . ." The Court previously found that all corporate defendants are affiliates of G.I.M. Dkt. 126 at 12. The parties may disagree as to whether there is sufficient evidence of an assignment, but the CPA unquestionably allows G.I.M. to have Defendants act as its agents under the CPA.

AMA does not dispute that agents of a signatory have standing to enforce a forum selection clause. *See, e.g., Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, 60 F.3d 1109, 1119 (E.D. Cal. 2014) ("[A] person may enforce a forum selection clause he did not sign if he was a third party beneficiary of the contract, a successor in interest to the contract, or an agent intended to benefit from the contract[.]") Although AMA now tries to backpedal from its earlier positions in this case (*see* AMA Supp. Br. at 11), AMA does not, and cannot, deny that it repeatedly asserted that Defendants are agents and alter egos of G.I.M. *See e.g.*, Dkt. 32 at 10 ("NetMedia, Cyberweb, GIM, and GLP 5 are clearly intertwined. Each perform a critical role in the operation of Porn.com and Traffic Force such that they are **agents** in the ventures and/or alter egos of each other.") (emphasis added); Dkt. 38 at 10 (same); Dkt. 50 at 5 ( ["G.I.M. and Defendants] are alter-egos of each other . . . ."). AMA's assertion that it "has not alleged the Defendants to be *legal agents* of GIM, and certainly not in the scope of operation of Porn.com," AMA Supp. Br. at 11 (emphasis in original), is refuted by AMA's own words, which the Court may deem to be judicial admissions. "[S]tatements of fact contained in a brief may be considered admissions of the party in the discretion of the district court." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988).

AMA attempts to distinguish this Court's decision in *Hillis v. Heineman*, 2009 WL 2222709 (D. Ariz. July 23, 2009), by arguing that Defendants operate "separate and independent of G.I.M.'s websites." AMA Supp. Br. at 11. Once again, AMA contradicts its own, earlier allegations that Defendants and G.I.M. are "clearly intertwined" and that NetMedia "provides support/uploads content to www.Porn.com, **for the benefit of** Traffic Force, **GIM Corp.**, SAGAN Ltd., and Cyberweb Ltd." Dkt. 36 at 2 (emphasis added).

Lathrop Gage LLP
1888 Century Park East, Suite 1000
Los Angeles, California 90067-1623

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMA similarly tries to distinguish *Pat Pellegrini Flooring Corp. v. Itex Corp.*, 2010 WL 1005318 (D. Or. Feb. 9, 2010), by arguing that "the acts of the non-signatories [in *Pellegrini*] were all conducted pursuant to the underlying contract," while "the CPA at bar does not extend the FSC (or any of its terms) to the Defendants." AMA Supp. Br. at 12. As discussed in Section II.A above, AMA entered into the CPA **with G.I.M.** specifically so that AMA could post content on Defendant-owned Porn.com. Defendants are closely involved in all aspects of Porn.com, and AMA treated Defendants as G.I.M.'s agents when it interfaced with Defendants, not G.I.M., concerning the PaidPerView.com program (i.e., the subject of the CPA). *See* Def. Supp. Br. at 7. While AMA persists in arguing that Defendants' alleged infringement "does not relate to or arise out of the CPA or any alleged scope of supposed duties for GIM or the CPA" (AMA Supp. Br. at 12), this Court already found that it "cannot resolve this case without interpreting the CPRA. . . . [T]his case therefore arises out of or relates to the CPRA, and the forum selection clause applies to this dispute." Dkt. 126 at 11; *see also Manetti-Farrow*, 858 F.2d at 514 (forum selection clause applies where claim cannot be decided without interpreting the contract). The only issue left for this Court to resolve is whether Defendants have standing to enforce the forum selection clause. *See* Dkt. 147-1 at 5; Dkt. 153. As demonstrated in Section II.A above, the answer is a resounding yes under *Manetti-Farrow* and its progeny. Given AMA's prior allegations concerning the agency relationship between Defendants and G.I.M., which the record supports (*see* Def. Supp. Br. at 3-7), Defendants also can enforce the forum selection clause as agents.

In their Supplemental Brief (at 9-10), Defendants further demonstrated that they can enforce the forum selection clause as third-party beneficiaries. In response, AMA contends that "[t]here cannot be third parties intended to benefit from [the CPA], when all tasks to fulfill the contract are expressly delegated to the actual parties of the contract." AMA Supp. Br. at 13. That is not true. Section 6.2 of the CPA expressly contemplates that agents will assist G.I.M. in performing under the CPA. This provision was necessary

Lathrop Gage LLP
1888 Century Park East, Suite 1000
Los Angeles, California 90067-1623

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

because G.I.M. did not have the technical capacity to administer the PaidPerView.com program and, as AMA acknowledges, G.I.M. did not own Porn.com.  If Defendants were not intended third-party beneficiaries of the CPA, G.I.M. would not be able to display any of AMA's content on Porn.com.  That makes no sense because, as demonstrated in Section II.A above, AMA entered into the CPA specifically to be able to post content on Porn.com.  G.I.M. and AMA must have intended that the CPA extended to any agents that assisted G.I.M., and on that basis as well Defendants should be permitted to enforce the CPA's forum selection clause.

### C.      Defendants Have Standing To Enforce The Forum Selection Clause As Implied Licensees

As Defendants demonstrated in their Supplemental Brief (at 12-16), under Ninth Circuit copyright law, a nonexclusive license "may be granted orally, or even be implied from conduct." *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 826 (9th Cir. 2001) (Koczinski, J., concurring).  An implied license will be found if, absent such an implied license, the contract would be worthless. *See, e.g.,  Effects Assoc., Inc. v. Cohen*, 908 F.2d 555, 558-559 (9th Cir. 1990).

AMA argues that the CPA "would . . . *not* be worthless without an implied license on Porn.com" because "[c]ontent that AMA submits to GIM is displayed on literally hundreds of web sites established, developed, and maintained by GIM – completely separate from Porn.com." AMA Supp. Br. at 18.  AMA misses the point.  By its own admission, AMA "entered into a content partnership agreement with GIM for revenue sharing **on content posted on Porn.com**."  Dkt. 33-2 at ¶ 17; *see also* Dkt. 38-1 at ¶ 22 ("AMA previously entered into a Content Partnership Agreement **for promotional materials to be posted on Porn.com**"). While AMA's content is displayed on other websites, AMA entered into the CPA specifically because it was "keen to see get [its] videos on Porn.com." Dkt. 38-3 (Silverman Decl., Ex. E).  Porn.com is owned by Cyberweb and Sagan, not G.I.M.  Dkt. 70-2 at ¶ 3; AMA Supp. Br. at 4.  If the owners,

Lathrop Gage LLP
1888 Century Park East, Suite 1000
Los Angeles, California 90067-1623

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

operators, and technical service providers of Porn.com did not have licenses, G.I.M. would be unable to display any of AMA's content on Porn.com.  That cannot be the case, and AMA and G.I.M. must have intended that Defendants have an implied license.

AMA further argues that "no additional licenses can be created under the CPA" because Section 1.1 of the CPA provides that "[n]o license to any other intellectual property of Licensor . . . is provided hereby."  AMA Supp. Br. at 18.  That G.I.M.'s license under the CPA may limited in scope does not mean that its agents and affiliates cannot have an implied license.  AMA ignores Section 6.2 of the CPA, which expressly contemplates that G.I.M. will delegate certain tasks to agents.  AMA also ignores Section 10.3 of the CPA, which allows G.I.M. to assign the Agreement to its affiliates.  AMA has long been aware that Defendants were performing certain tasks in connection with the CPA.  *See* Def. Supp. Br. at 14-15.  While AMA repeatedly attempts to divorce Defendants' Porn.com-related conduct from the CPA, the CPA centers on Porn.com.  AMA acknowledges that it "was aware that GIM submitted content was streamed on Porn.com" and that "if AMA were to sue these Defendants for display of promotional content AMA submitted to GIM, they may have an implied license defense."  AMA Supp. Br. at 18.  While AMA argues that such defense would not arise under or relate to the CPA (*id.*), G.I.M. could not have posted AMA's content on Porn.com if Defendants were not express or implied licensees under the CPA.

AMA attempts to distinguish the cases cited by Defendants (*Foad*, *Effects Assocs.*, *Keane*, and *Field*) by arguing that, because the content at issue allegedly was "illegally pirated online" and "illegally obtained" and AMA alleged objected to Defendants' use of the content, the parties could not have intended that Defendants have an implied license. AMA Supp. Br. at 18-20.  AMA is off target.  The question now before the Court is not whether Defendants' infringed AMA's copyright (which Defendants vehemently deny), but rather whether Defendants may obtain the benefit of the forum selection clause in the CPA.  Given that AMA has sued Defendants with respect to less than 4% of the roughly

Lathrop Gage LLP
1888 Century Park East, Suite 1000
Los Angeles, California 90067-1623

2,000 AMA videos that have been displayed on Porn.com (*see* Dkt. 52-1 and Dkt. 1 at

¶ 78), AMA must believe that Defendants are licensed under the CPA with respect to

more than 1,900 AMA videos.  That is sufficient to allow Defendants to enforce the forum

selection clause.  *See, e.g., Stevens v. Corelogic, Inc.*, 194 F. Supp. 3d 1046, 1053-54

(S.D. Cal. 2016) (consent to use copyrighted work may be inferred based on silence where

the copyright holder knows of the use and does not object.)

### D.     Defendants Have Standing To Enforce The Forum Selection Clause As Parties To The CPA

In their Supplemental Brief (at 15-16), Defendants submitted that two additional

facts conclusively establish that Defendants are permitted assignees under, and thus

parties to, the CPA.  First, AMA conceded long ago that Defendants are parties to the

CPA.  In paragraph 63 of its First Amended Complaint, AMA concedes that Defendants

are partners with AMA in the PaidPerView.com program (the subject of the CPA), that

AMA provided Defendants with content pursuant to this program, and as such Defendants

are authorized to display AMA content on Porn.com.

> 63.   Defendants are an advertising affiliate for Plaintiff, pursuant to which Plaintiff previously provided *limited sample promotional videos* for Defendants to display on Porn.com for the sole purpose of directing Internet traffic to Plaintiff's paid membership sites. Plaintiff and Defendants share in the revenue generated by Internet traffic directed to *Plaintiff's paid membership sites* when the Internet user signed up as a paid member.

Dkt. 16 at ¶ 63.  AMA claims that this paragraph "specifically and solely refers to the

affiliate relationship established by Cyberweb in 2007," AMA Supp. Br. at 20, but the

2007 contract is not mentioned <u>anywhere</u> in the First Amended Complaint.  Moreover,

AMA's President, Adam Silverman, admits that AMA entered into the CPA "for

promotional materials to be posted on Porn.com." Dkt. 38-1 at ¶ 22.  Paragraph 63 of the

First Amended Complaint can refer only to the CPA.

Second, AMA expressly concedes that G.I.M. granted Netmedia license rights

under the CPA.  Dkt. 38 at 10 ("Not only has GIM granted Netmedia rights to AMA's

content under the CPA, but Netmedia employees are innvolved [sic] in all aspects of

- 9 -

1

2

3

4

5

6

7

8

9

10

Lathrop Gage LLP
1888 Century Park East, Suite 1000
Los Angeles, California 90067-1623

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Porn.com.")[2]  The Court may deem this to be a binding judicial admission by AMA. *American Title Ins. Co.*, 861 F.2d at 227.  Contrary to AMA's assertion (AMA Supp. Br. at 20-21), Defendants did <u>not</u> admit in the Barbados action that no assignment of rights took place; the Barbados Amended Statement of Claim is <u>silent</u> in this regard.  AMA also is wrong that G.I.M. could not assign license rights to Defendants without assigning the entire CPA.  *See* Restatement of Contracts (Second) §§ 317, 322(2), and 324.  AMA should be estopped from continually reversing course in an effort to keep this case out of its proper forum, Barbados.

      **E.**      <u>**Defendant Koonar Has Standing To Enforce The Forum Selection Clause**</u>

AMA argues that this Court relied on an assignment from G.I.M. to Defendants to find that defendant Koonar may enforce the forum selection clause.  AMA Supp. Br. at 21.  That is incorrect.  The Court found that, "[j]ust as AMA's copyright infringement claims relate to the CPRA, AMA's allegation that Koonar was involved in such conduct likewise relates to the CPRA.  Accordingly, AMA's claims against Koonar are subject to the forum selection clause."  Dkt. 126 at 14; *see also* Def. Supp. Br. at 16.  The Ninth Circuit's decision was limited to the assignment issue (*see* Dkt. 147-1), and did not impact this Court's ruling regarding Koonar.  Under *Manetti-Farrow*, Koonar's alleged conduct is so closely related to the CPA that the forum selection clause applies to him, just as it does to the other defendants.

**III.**     **CONCLUSION**

For the reasons set forth above and in Defendants' Supplement Brief (Dkt. 154), Defendants respectfully submit that they have standing to enforce the forum selection clause in the CPA.

---

[2] Even if this concession is insufficient to evidence an assignment, as AMA contends, it certainly demonstrates that Netmedia has a close relationship to the CPA such that it can enforce the forum selection clause under *Manetti-Farrow* and *Holland America.*

1    DATED: September 21, 2018        Respectfully Submitted,

2                               LATHROP GAGE LLP

3

4                               By: /s/ Erica J. Van Loon

5                               ERICA J. VAN LOON
*Attorney for Defendants*

6                               *Cyberweb Ltd., David Koonar,*
*Sagan Limited, and Netmedia*

7                               *Services, Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Lathrop Gage LLP**
**1888 Century Park East, Suite 1000**
**Los Angeles, California 90067-1623**

- 11 -

1

### CERTIFICATE OF SERVICE

2      I hereby certify that on the 21st day of September, 2018, I electronically

3  transmitted the forgoing document to the Clerk's office using the CM/ECF system for

4  filing.  Copies will be transmitted by CM/ECF and email to the following recipients:

5

6
Veronica L. Manolio
Manolio & Firestone, PLC
8686 E. San Alberto Dr., Suite 200

7
Scottsdale, Arizona 85258
vmanolio@mf-firm.com

8

9
Spencer Freeman
Freeman Law Firm, Inc.

10
1107 ½ Tacoma Ave. S.

11
Tacoma, Washington 98402
sfreeman@freemanlawfirm.org

12

13
By: /s/ Erica J. Van Loon
       Erica J. Van Loon

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Lathrop Gage LLP**
**1888 Century Park East, Suite 1000**
**Los Angeles, California  90067-1623**