# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMA Multimedia LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Sagan Limited, a Republic of Seychelles company, Cyberweb Ltd., a Barbados company, and Netmedia Services Inc., a Canadian company, individually and d/b/a Porn.com; GLP 5, Inc., a Michigan company d/b/a Trafficforce.com; and David Koonar, an individual,<br><br>Defendants. | No. CV16-01269-PHX-DGC<br><br><br>**ORDER** |

Before the Court is Defendants' renewed motion to dismiss based on forum non conveniens. Doc. 154. The motion is fully briefed, and oral argument has not been requested. For the reasons stated below, the motion will be granted.

**I.  Background.**

Plaintiff AMA Multimedia, LLC, a producer of pornographic material, asserts copyright infringement claims against several entities and one individual associated with Porn.com. Doc. 16. Porn.com is a video streaming website that generates revenue through paid memberships and advertising space. *Id.* ¶¶ 48-49, 57. AMA alleges that Defendants Sagan Limited, Cyberweb Ltd., Netmedia Services Inc., and David Koonar are owners or operators of Porn.com. *Id.* ¶¶ 2-8, 46. AMA further alleges that these

Defendants own and operate Defendant GLP 5, Inc., an advertising broker doing business as Trafficforce.com. *Id.* ¶¶ 7, 47, 94-95.

AMA distributes its pornographic material through DVD sales and various websites. *Id.* ¶ 28. Users of AMA websites must be paid members to view the material. *Id.* ¶¶ 29-30. AMA provides sample promotional videos to advertising affiliates and licenses certain material to other pornographic websites. *Id.* ¶ 30. Beginning in 2007, pursuant to an AMA affiliate program agreement, AMA provided certain promotional videos for Defendants to display on Porn.com for the purpose of directing traffic to AMA's paid membership sites. *Id.* ¶ 63; *see* Doc. 157-1 at 19.

In November 2015, AMA learned that Porn.com had displayed 64 of AMA's copyrighted works, none of which was a promotional video provided by AMA pursuant to the affiliate program agreement. Doc. 16 ¶¶ 63, 78; *see* Doc. 1-1 at 1-9. AMA asserts that the works were uploaded onto Porn.com by Defendants, not third-party users as Defendants claim. Doc. 16 ¶¶ 78-92. AMA further asserts that in March 2016, other copyrighted works were displayed on Trafficforce advertising banners on Porn.com. *Id.* ¶ 98; *see* Doc. 1-1 at 31-34. Claiming that the works were displayed on Porn.com without its approval or consent, AMA asserts various copyright infringement claims against all Defendants. Doc. 16 ¶¶ 82, 105-58.

Defendants contend that they had the right to display the allegedly infringing material based on a licensing agreement between AMA and one of Defendants' affiliates, GIM Corporation. This agreement – formally, the Content Partner Revenue Sharing Agreement ("CPRA") – was entered into in September 2012 when AMA joined GIM's Paidperview.com revenue sharing program. Doc. 27-3 at 25-34. The CPRA granted GIM a license to use content provided by AMA on websites whose advertisements are controlled by Trafficforce.com. *Id.* at 25 (CPRA §§ B, 1.1).

Defendants moved to dismiss or stay this case based in part on the CPRA's forum selection clause, which provides that "[a]ny legal action arising out of or relating to [the CPRA] must be instituted in a court located in Barbados[.]" *Id.* at 30 (CPRA

§ 10.5); *see* Docs. 27-1 at 18, 42-1 at 18, 49-1 at 14-17, 70-1 at 11-17. The Court denied the stay request and deferred ruling on motions to dismiss pending jurisdictional discovery. Doc. 64. Following the discovery and additional briefing, the Court granted Defendants' motions to dismiss on the basis of the forum selection clause. Doc. 126. The Court found that the clause (1) applies to AMA's copyright infringement claims because the dispute arises out of or relates to the CPRA, (2) is valid and enforceable, and (3) can be invoked by Koonar as an officer of GIM and by Cyberweb, Netmedia, and Sagan because they are affiliates of GIM which were assigned rights under the CPRA. *Id.* at 5-17. AMA appealed and the Ninth Circuit reversed, finding that the record did not support an assignment of GIM's rights under the CPRA. Doc. 147-1 at 4. The case was remanded for further proceedings, including consideration of Defendants' alternative arguments for enforcing the forum selection clause. *Id.* at 5.[1]

At the Court's direction, the parties filed supplemental briefs. Docs. 154, 157, 161. Defendants argue that they have standing to enforce the forum selection clause as agents of GIM, third-party beneficiaries of the CPRA, implied licensees and assignees of rights under the CPRA, and closely related parties under *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988). Doc. 154 at 10-20. AMA contends that these arguments lack merit because Defendants' infringing conduct and operation of Porn.com have nothing to do with the CPRA or GIM. Doc. 157 at 9-21.

The Court previously found that the CPRA's forum selection clause applies to AMA's copyright claims and otherwise is valid and enforceable. Doc. 126 at 5-11, 14-17. These findings were not disturbed on appeal. *See* Doc. 147-1. Having considered the supplement briefs and relevant case law, the Court now finds that Defendants have standing to enforce the CPRA's forum selection clause because they are closely related to the contractual relationship between AMA and GIM. The Court therefore will grant the renewed motion to dismiss. Given this ruling, the Court need not consider Defendants'

---

[1] The Court previously had dismissed the claims against GLP for lack of personal jurisdiction. Docs. 64 at 7-8, 126 at 2 n.1. This ruling was not addressed on appeal.

other arguments for enforcing the forum selection clause.

**II. Legal Standard.**

Interpretation and enforcement of forum selection clauses are procedural issues to be decided under federal law. *See Manetti-Farrow*, 858 F.2d at 513; *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1353 (9th Cir. 1990). The Supreme Court has instructed that such clauses are presumptively valid and should not be set aside unless the party challenging the clause "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause [is] invalid for reasons such as fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). Courts decline to enforce forum selection clauses "[o]nly under extraordinary circumstances unrelated to the convenience of the parties[.]" *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 61 (2013).

A motion to dismiss based on a forum selection clause is treated as an improper venue motion under Federal Rule of Civil Procedure 12(b)(3). *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). In ruling on a Rule 12(b)(3) motion, the pleadings are not accepted as true and the court may consider other evidence. *Id.* The court must resolve all factual conflicts and draw all reasonable inferences in favor of the non-moving party. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 455 (9th Cir. 2007).

**III. Discussion.**

Ordinarily, a contractual right may not be invoked by one who is not a party to the agreement. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). In *Manetti-Farrow*, however, the Ninth Circuit held that "a range of transaction participants, parties and non-parties," can benefit from a forum selection clause where their alleged conduct is "closely related to the contractual relationship." 858 F.2d at 514 n.5 (citations omitted). In *Holland America Line*, the Ninth Circuit similarly held that a forum selection clause applied to non-parties where their actions were "part of the larger contractual

relationship" between the parties to the agreement. 485 F.3d at 456 & n.2 (citing *Manetti-Farrow*, 858 F.2d at 514 n.5). The evidence in this case, even when construed in AMA's favor, shows that Defendants are so closely related to the contractual relationship between AMA and GIM that they have standing to invoke the CPRA's forum selection clause.

AMA itself alleges that "Defendants Sagan Limited, Cyberweb Ltd., Netmedia Services, Inc., and David Koonar are each owners and/or operators of Porn.com and/or are doing business as Porn.com." Doc. 16 ¶ 46. When AMA became a member of GIM's Paidperview.com program in order to post videos on Porn.com, GIM necessarily involved Defendants in the CPRA. Porn.com is owned by Cyberweb and Sagan, not GIM. Docs. 67 at 2, 157 at 3-4. Cyberweb entered into an agreement with GIM to facilitate the operation of Porn.com, and GIM in turn subcontracted with Netmedia because GIM does not have the technical capacity to operate Porn.com or administer the Paidperview.com program. Docs. 117 at 8, 132 at 10. All technical aspects and day-to-day operation of both Porn.com and Paidperview.com is performed by Netmedia. Docs. 67 at 3, 117 at 3-4, 7. In short, AMA could not have posted its videos on Porn.com and benefited from the Paidperview.com program – the express purpose of the CPRA – without Defendants' involvement.

AMA's assertion that Defendants are strangers to the CPRA is disproved by the record. Doc. 157 at 2. AMA notes that while the CPRA required GIM to develop and operate the websites featuring the AMA videos, Defendants – not GIM – own and operate Porn.com. *Id.* at 4-6, 13. AMA suggests that it had no knowledge or expectation that its videos would be posted on Porn.com pursuant to the CPRA, but this plainly is incorrect. The evidence shows that AMA entered into the CPRA for the specific purpose of having its videos displayed on Porn.com, not GIM-owned websites, and that AMA knew Porn.com was owned and operated by Cyberweb and Netmedia. Shortly before entering into the CPRA, AMA's president, Adam Silverman, asked a colleague to check out "a submission prog[ram] *for porn.com* that also includes a payout for views," and the

colleague responded that he "was keen to get our videos *on porn.com*." Doc. 38-3 at 6 (emphasis added). Mr. Silverman stated in a declaration that "[i]n September 2012, AMA entered into a content partnership agreement with GIM *for revenue sharing on content posted on Porn.com*." Doc. 33-2 ¶ 17 (emphasis added); *see also* Doc. 34-1 ¶ 22 ("AMA previously entered into a [CPRA] for promotional materials to be posted on Porn.com. The [CPRA] is with GIM[.]"); Doc. 38-1 ¶ 22 (same). Mr. Silverman testified that "[w]hen AMA signed up for the [CPRA] *for Porn.com*, AMA representatives had direct contact with . . . *Netmedia* regarding initiating the program." Doc. 38-1 ¶ 29 (emphasis added). Further, when AMA had questions about user-uploaded videos under the Paidperview.com program, AMA communicated with representatives of Netmedia and Cyberweb. Doc. 83-1. Contrary to AMA's assertion, the parties intended that AMA's videos would be posted on Porn.com pursuant to the CPRA, and AMA knew that the site was not actually operated by GIM.

Defendants Cyberweb, Netmedia, and Sagan are not only involved in the operation of Porn.com, they are, as AMA acknowledges, closely related entities. Indeed, AMA asserts that Koonar is the "common thread" among these entities and the "driving and guiding force behind Porn.com." Doc. 117 at 8. Koonar is the president of the holding company that owns all of GIM and 50% of Cyberweb. *Id.* He is also the president of GIM and Netmedia. *Id.* Sagan is a Seychelles corporation and is listed as the owner-operator of Porn.com in Porn.com's terms of service and a form filed with the U.S. Copyright Office. Docs. 16 ¶ 3, 38 at 3 n.1.

In short, there can be no doubt that Defendants are all closely related to the contractual relationship created by the CPRA – the relationship under which AMA sought to have its materials displayed on Porn.com. Several cases in the Ninth Circuit have held that parties closely related to a contractual relationship may benefit from the contract's forum selection clause. *See Manetti-Farrow*, 58 F.2d at 514 & n.5 (applying the forum selection clause in a dealership contract to the signatory defendants' parent company, foreign affiliate, and individual directors where their alleged tortious conduct

colleague responded that he "was keen to get our videos *on porn.com*." Doc. 38-3 at 6 (emphasis added). Mr. Silverman stated in a declaration that "[i]n September 2012, AMA entered into a content partnership agreement with GIM *for revenue sharing on content posted on Porn.com*." Doc. 33-2 ¶ 17 (emphasis added); *see also* Doc. 34-1 ¶ 22 ("AMA previously entered into a [CPRA] for promotional materials to be posted on Porn.com. The [CPRA] is with GIM[.]"); Doc. 38-1 ¶ 22 (same). Mr. Silverman testified that "[w]hen AMA signed up for the [CPRA] *for Porn.com*, AMA representatives had direct contact with . . . *Netmedia* regarding initiating the program." Doc. 38-1 ¶ 29 (emphasis added). Further, when AMA had questions about user-uploaded videos under the Paidperview.com program, AMA communicated with representatives of Netmedia and Cyberweb. Doc. 83-1. Contrary to AMA's assertion, the parties intended that AMA's videos would be posted on Porn.com pursuant to the CPRA, and AMA knew that the site was not actually operated by GIM.

Defendants Cyberweb, Netmedia, and Sagan are not only involved in the operation of Porn.com, they are, as AMA acknowledges, closely related entities. Indeed, AMA asserts that Koonar is the "common thread" among these entities and the "driving and guiding force behind Porn.com." Doc. 117 at 8. Koonar is the president of the holding company that owns all of GIM and 50% of Cyberweb. *Id.* He is also the president of GIM and Netmedia. *Id.* Sagan is a Seychelles corporation and is listed as the owner-operator of Porn.com in Porn.com's terms of service and a form filed with the U.S. Copyright Office. Docs. 16 ¶ 3, 38 at 3 n.1.

In short, there can be no doubt that Defendants are all closely related to the contractual relationship created by the CPRA – the relationship under which AMA sought to have its materials displayed on Porn.com. Several cases in the Ninth Circuit have held that parties closely related to a contractual relationship may benefit from the contract's forum selection clause. *See Manetti-Farrow*, 58 F.2d at 514 & n.5 (applying the forum selection clause in a dealership contract to the signatory defendants' parent company, foreign affiliate, and individual directors where their alleged tortious conduct

colleague responded that he "was keen to get our videos *on porn.com*." Doc. 38-3 at 6 (emphasis added). Mr. Silverman stated in a declaration that "[i]n September 2012, AMA entered into a content partnership agreement with GIM *for revenue sharing on content posted on Porn.com*." Doc. 33-2 ¶ 17 (emphasis added); *see also* Doc. 34-1 ¶ 22 ("AMA previously entered into a [CPRA] for promotional materials to be posted on Porn.com. The [CPRA] is with GIM[.]"); Doc. 38-1 ¶ 22 (same). Mr. Silverman testified that "[w]hen AMA signed up for the [CPRA] *for Porn.com*, AMA representatives had direct contact with . . . *Netmedia* regarding initiating the program." Doc. 38-1 ¶ 29 (emphasis added). Further, when AMA had questions about user-uploaded videos under the Paidperview.com program, AMA communicated with representatives of Netmedia and Cyberweb. Doc. 83-1. Contrary to AMA's assertion, the parties intended that AMA's videos would be posted on Porn.com pursuant to the CPRA, and AMA knew that the site was not actually operated by GIM.

Defendants Cyberweb, Netmedia, and Sagan are not only involved in the operation of Porn.com, they are, as AMA acknowledges, closely related entities. Indeed, AMA asserts that Koonar is the "common thread" among these entities and the "driving and guiding force behind Porn.com." Doc. 117 at 8. Koonar is the president of the holding company that owns all of GIM and 50% of Cyberweb. *Id.* He is also the president of GIM and Netmedia. *Id.* Sagan is a Seychelles corporation and is listed as the owner-operator of Porn.com in Porn.com's terms of service and a form filed with the U.S. Copyright Office. Docs. 16 ¶ 3, 38 at 3 n.1.

In short, there can be no doubt that Defendants are all closely related to the contractual relationship created by the CPRA – the relationship under which AMA sought to have its materials displayed on Porn.com. Several cases in the Ninth Circuit have held that parties closely related to a contractual relationship may benefit from the contract's forum selection clause. *See Manetti-Farrow*, 58 F.2d at 514 & n.5 (applying the forum selection clause in a dealership contract to the signatory defendants' parent company, foreign affiliate, and individual directors where their alleged tortious conduct

was closely related to the contractual relationship); *Holland Am. Line*, 485 F.3d at 456 & n.2 (finding that a forum selection applied to the signatory defendant's foreign affiliates because their alleged conduct was tied to the contract); *see also TAAG*, 915 F.2d at 1353 ("Transamerica Corporation and the individual defendants . . . do not object to being governed by the forum selection clause . . . . It is not unreasonable or unjust to enforce the clause even though some of them did not sign the agreement." (citing *Manetti-Farrow*, 58 F.2d at 514 n.5)); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *51 (N.D. Cal. Aug. 30, 2017) ("[T]he allegations in the [complaint] make clear that the negligence claim against Yahoo is 'closely related' to the contractual relationship between foreign users and Yahoo subsidiaries, and that the Court must evaluate and 'interpret' this contractual relationship to resolve Plaintiffs' negligence claim. Therefore, applying Ninth Circuit precedent, the Court determines that Yahoo 'should benefit from and be subject to the forum-selection clauses.'" (quoting *TAAG*, 915 F.2d at 1354)); *Robeson v. Twin Rivers Unified Sch. Dist.*, No. CIV. 2:14-2 WBS KJN, 2014 WL 1392922, at *3 (E.D. Cal. Apr. 9, 2014) (finding that the individual defendants' conduct was closely related to the plaintiff's employment pursuant to her contract with the school district where she alleged that all defendants conspired together); *Dawson v. Cagle Cartoons, Inc.*, No. 2:13-CV-0610 KJM KJN, 2013 WL 4829317, at *7 (E.D. Cal. Sept. 9, 2013) (finding that the defendant was closely related to the contractual relationship where the plaintiff alleged that he was part of the joint venture and common enterprise).

The Court further finds that Defendant Koonar may avail himself of the forum selection clause. As noted, he is the president of GIM, Netmedia, and the holding company that owns all of GIM and 50% of Cyberweb. Doc. 117 at 8. "With one exception, every district court in our circuit that has considered whether to apply a forum-selection clause to a corporate officer . . . that was not part of the agreement . . . has enforced that forum-selection clause, provided the claims in the suit related to the contractual relationship." *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F.

Supp. 3d 816, 822 (N.D. Cal. 2015); *see also Liberty City Church of Christ, Inc. v. Taylor*, No. 5:12-CV-04392 EJD, 2013 WL 621792, at *2 (N.D. Cal. Feb. 15, 2013) (finding that any claims against a party employee relating to activities that occurred within the scope of his employment are subject to the employer's forum selection clause).

AMA contends that the range of transaction participants that may benefit from a forum selection clause under *Manetti-Farrow* is limited to third-party beneficiaries. Doc. 157 at 14. But AMA cites no legal authority to support this assertion, and the Ninth Circuit in *Holland America* applied the *Manetti-Farrow* doctrine without any mention of a third-party beneficiary status. 485 F.3d at 456. AMA asserts that in finding that a range of transaction participants should benefit from a forum selection clause, *Manetti-Farrow* cited a case involving third-party beneficiaries, *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190 (3d Cir. 1983). Doc. 157 at 14. *Manetti-Farrow* actually quoted an Illinois district court case, *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984), which in turn cited *Coastal Steel*. 858 F.2d at 514 n.5. Nothing in either of those cases, however, suggests that third-party beneficiaries are the only non-parties to the contract that may benefit from a forum selection clause. *Coastal Steel* held only that third-party beneficiary status is no basis for disregarding such a clause. 709 F.2d at 203. *Clinton* noted that the range of transaction participants encompasses third-party beneficiaries, but made clear that other non-parties to the contract may also enforce forum selection clauses. 583 F. Supp. at 290 ("[T]he cases hold that a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses. This is especially true where the non-party is a third party beneficiary of the disputed contract[.]" (citing *Coastal Steel*)).

In summary, the Court finds that Defendants have standing to enforce the CPRA's forum selection clause. They are closely related to the contractual relationship between AMA and GIM, a relationship created for the purpose of posting AMA's videos on Porn.com. The claims against Defendants Sagan, Cyberweb, Netmedia, and Koonar will, therefore, be dismissed for improper venue.

**IT IS ORDERED:**

1. The renewed motion to dismiss based on forum non conveniens filed by Defendants Sagan Limited, Cyberweb Ltd., Netmedia Services Inc., and David Koonar (Doc. 154) is **granted**.

2. The claims asserted against Defendant GLP 5, Inc. are dismissed for lack of personal jurisdiction (see Docs. 64 at 7-8, 126 at n.1).

3. The Clerk shall terminate this action.

Dated this 24th day of October, 2018.

*David G. Campbell*
David G. Campbell
Senior United States District Judge