**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMA Multimedia LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Sagan Limited, a Republic of Seychelles company, Cyberweb Ltd., a Barbados company, and Netmedia Services Inc., a Canadian company, individually and d/b/a Porn.com; GLP 5, Inc., a Michigan company d/b/a Trafficforce.com; and David Koonar, an individual,<br><br>Defendants. | No. CV-16-01269-PHX-DGC<br><br>**ORDER** |

The Court has dismissed this case twice on the basis of a forum selection clause. Docs. 126, 171. Both times, the Ninth Circuit has reversed the dismissal and remanded the case. Docs. 147, 177. After all of this litigation, many of Defendants' dismissal arguments remain unaddressed. Docs. 154, 157, 161. This order will address those arguments on the basis of the parties' previous extensive briefing. Docs. 154, 157, 161, 179, 180.[1]

**I.   Background.**

Plaintiff AMA Multimedia, LLC, a producer of pornographic material, asserts copyright infringement claims against several entities and one individual associated with

---

[1] The Court asked the parties to file their briefs from the most recent Ninth Circuit appeal, which they did. *See* Doc. 182. In light of the extensive briefing previously completed in this case, however, the Court ultimately chose not to review the appeal briefs.

Porn.com. Doc. 16. Plaintiff alleges the following facts. Porn.com is a video streaming website that generates revenue through paid memberships and advertising space. *Id.* ¶¶ 48-49, 57. AMA alleges that Defendants Sagan Limited, Cyberweb Ltd., Netmedia Services Inc., and David Koonar are owners or operators of Porn.com. *Id.* ¶¶ 2-8, 46.[2]

AMA distributes its pornographic material through DVD sales and various websites. *Id.* ¶ 28. Users of AMA websites must pay to view the material. *Id.* ¶¶ 29-30. AMA provides sample promotional videos to advertising affiliates and licenses certain material to other pornographic websites. *Id.* ¶ 30. Beginning in 2007, pursuant to an AMA affiliate program agreement, AMA provided certain promotional videos for Defendants to display on Porn.com for the purpose of directing traffic to AMA's paid membership sites. *Id.* ¶ 63; *see* Doc. 157-1 at 19.

In November 2015, AMA learned that Porn.com had displayed 64 of AMA's copyrighted works, none of which was a promotional video provided by AMA under the affiliate program agreement. Doc. 16 ¶¶ 63, 78; *see* Doc. 1-1 at 1-9. AMA asserts that the works were uploaded to Porn.com by Defendants, not third-party users as Defendants claim. Doc. 16 ¶¶ 78-92. AMA further asserts that in March 2016, other copyrighted works were displayed on Trafficforce advertising banners on Porn.com. *Id.* ¶ 98; *see* Doc. 1-1 at 31-34. Claiming that the works were displayed on Porn.com without its approval or consent, AMA asserts various copyright infringement claims against all Defendants. Doc. 16 ¶¶ 82, 105-58.

Defendants contend that they had the right to display the allegedly infringing material based on a 2012 licensing agreement between AMA and one of Defendants' affiliates, GIM Corporation. This agreement – known as the Content Partner Revenue Sharing Agreement ("CPRA") – was entered into in September 2012 when AMA joined GIM's Paidperview.com revenue sharing program. Doc. 27-3 at 25-34. The CPRA

---

[2] AMA also alleges that Defendants own and operate Defendant GLP 5, Inc., an advertising broker doing business as Trafficforce.com. *Id.* ¶¶ 7, 47, 94-95. The Court previously dismissed the claims against GLP 5 for lack of personal jurisdiction. *See* Docs. 64 at 7-8, 126 at 2 n.1, 171 at 3 n. 1.

granted GIM a license to use content provided by AMA on websites whose advertisements are controlled by Trafficforce.com. *Id.* at 25 (CPRA §§ B, 1.1).

Defendants moved to dismiss or stay this case based in part on the CPRA's forum selection clause, which provides that "[a]ny legal action arising out of or relating to [the CPRA] must be instituted in a court located in Barbados[.]" *Id.* at 30 (CPRA § 10.5); *see* Docs. 27-1 at 18, 42-1 at 18, 49-1 at 14-17, 70-1 at 11-17. The Court denied the stay request and deferred ruling on the motions to dismiss pending jurisdictional discovery. Doc. 64. Following the discovery and additional briefing, the Court granted Defendants' motions to dismiss on the basis of the forum selection clause. Doc. 126. The Court found that the clause could be invoked by Koonar as an officer of GIM and by Cyberweb, Netmedia, and Sagan because they are affiliates of GIM which were assigned rights under the CPRA. *Id.* at 5-17. AMA appealed and the Ninth Circuit reversed, finding that the record did not support an assignment of GIM's rights under the CPRA. Doc. 147-1 at 4. The case was remanded for further proceedings. *Id.* at 5.

At the Court's direction, the parties filed lengthy supplemental briefs. Docs. 154, 157, 161. Defendants argued that they have standing to enforce the forum selection clause as agents of GIM, third-party beneficiaries of the CPRA, implied licensees and assignees of rights under the CPRA, and closely-related parties under *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988). Doc. 154 at 10-20. AMA asserted that these arguments lack merit because Defendants' infringing conduct and operation of Porn.com have nothing to do with the CPRA or GIM. Doc. 157 at 9-21.

After considering the supplement briefs and relevant case law, the Court held that Defendants have standing to enforce the CPRA's forum selection clause because they are closely related to the CPRA. Doc. 171. On appeal, the Ninth Circuit held that the Court "correctly identified the legal rule: Defendants, as nonparties, could enforce the forum selection clause if their alleged *conduct* was 'closely related to the contractual relationship' between AMA and GIM Corporation." Doc. 177-1 at 2 (citing *Manetti-Farrow*, 858 F.2d at 514 n.5). But the Court of Appeals found that the Court erred by focusing on the

relationship between Defendants and the CPRA, rather than the alleged conduct of Defendants. *Id.*

On remand, the Court asked the parties for their views on appropriate next steps. Plaintiff argued that no evidentiary hearing is necessary and that the Court should rule on the remaining issues without further briefing. Doc. 179 at 2-4. Defendants agreed that an evidentiary hearing is not needed, suggested that the Court need not rule on personal jurisdiction issues (a suggestion they had made before, *see* Doc. 153), and argued that additional briefing should be permitted. *Id.* at 4-6. Because the forum selection clause issues have been briefed extensively, the Court agreed with Plaintiff and will address the remaining issues on the basis of the existing briefs. Docs. 154, 157, 161.

**II.  Legal Standard.**

Although a motion to dismiss based on a forum selection clause was formerly treated as an improper venue motion under Federal Rule of Civil Procedure 12(b)(3), *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996), the Supreme Court has made clear that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). Because such a motion has a dramatic effect on the plaintiff's choice of forum, the Ninth Circuit has instructed that the trial court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1138-39 (9th Cir. 2003).[3]

---

[3] The Ninth Circuit's reasoning in *Murphy* was based in part on the fact that the motion had been brought under Rule 12(b)(3). *Id.* at 1139. But that was not the only reason for drawing inferences in favor of the non-moving party. The Ninth Circuit explained that "[t]hese motions are typically made early in litigation when the factual record is undeveloped and granting [the] motion will terminate the case in the selected forum. In this procedural posture, if the facts asserted by the non-moving party are sufficient to preclude enforcement of the forum selection clause, the non-moving party is entitled to remain in the forum it chose for suit unless and until the district court has resolved any material factual issues that are in genuine dispute." *Id.* This rationale applies equally to a *forum non conveniens* motion brought at the outset of litigation. Thus, the Court concludes that drawing inferences and resolving factual disputes in favor of the non-moving party remains the law of the Ninth Circuit and the correct rule, despite the fact that the Supreme Court has now made clear that motions based on forum selection clauses no longer should

- 4 -

**III.   Discussion.**

Defendants argue that they may invoke the forum selection clause of the CPRA on five separate bases: as parties whose conduct is closely related to the CPRA under *Manetti-Farrow*, as third-party beneficiaries of the CPRA, as agents of GIM, as implied licensees under the CPRA, and as assignees of the CPRA. Defendants also contend that Koonar can invoke the clause as an officer of GIM. The Court will address each argument. Doc. 154.

**A.   Defendants' Alleged Conduct Is Not Closely Related to CPRA.**

Ordinarily, a contractual right may not be invoked by one who is not a party to the agreement. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). In *Manetti-Farrow*, however, the Ninth Circuit stated that "a range of transaction participants, parties and non-parties," can benefit from a forum selection clause where their alleged conduct is "closely related to the contractual relationship." 858 F.2d at 514 n.5 (citations omitted).

On the second appeal in this case, the Ninth Circuit confirmed this rule: "Defendants, as nonparties, could enforce the forum selection clause if their alleged *conduct* was 'closely related to the contractual relationship' between AMA and GIM Corporation." *AMA Multimedia, LLC v. Sagan Ltd.*, 807 F. App'x 677, 679 (9th Cir. 2020) (emphasis in original). Although the parties have spent much time briefing the various relationships among the intertwined Defendants, the focus according to the Court of Appeals is on Defendants' "alleged conduct" – that is, the conduct alleged by Plaintiff to have constituted copyright infringement.

In its Amended Complaint, Plaintiff alleges that Defendants own, operate, and are closely involved in the operation of Porn.com. Doc. 16, ¶¶ 46-52. Although Plaintiff

---

be brought under Rule 12(b)(3). Other courts in this circuit also continue to apply this approach after the Supreme Court's decision. *See Yiren Huang v. FutureWei Techs., Inc.*, No. 18-CV-00534-BLF, 2018 WL 10593813, at *3 (N.D. Cal. Sept. 24, 2018). The Ninth Circuit also made clear in *Murphy* that motions based on a forum selection clause may, in the district court's discretion, be resolved through an evidentiary hearing. 362 F.3d at 1139-40. As noted above, the parties in this case all suggested that the Court not hold an evidentiary hearing. Doc. 179 at 3 (Plaintiff: "an evidentiary hearing is unnecessary"), 6 ("Defendants agree that an evidentiary hearing is unnecessary"). In addition, the factual dispute between the parties on this motion – whether the allegedly infringing video displays occurred under the CPRA or not – lies at the heart of the merits dispute in this case and should be resolved when the merits evidence is presented fully.

1  alleges that it agreed with Defendant Cyberweb to provide limited sample promotional
2  videos for Defendants to display on Porn.com for the sole purpose of directing Internet
3  traffic to Plaintiff's paid membership sites, Plaintiff makes clear that "[n]one of the limited
4  promotional videos provided to Defendants are at issue in this case." *Id.* at 63 (emphasis
5  omitted). Thus, the previous agreement to share videos for limited purposes – which
6  Plaintiff dates to 2007 (*see* Doc. 157-1, ¶¶ 8-10) – is not alleged to be at issue here.

7  Plaintiff alleges that "[i]n or about November 2015, and for an unknown time before
8  and up to and including the present, Defendants' website Porn.com displayed 64 of
9  Plaintiff's copyright registered works over 110 separate and distinct URLs – each a part of
10 Porn.com." *Id.* at 78. Plaintiff alleges that Defendants knowingly published these videos
11 without authority from Plaintiff, and "assigned fake uploader information in order to create
12 the illusion that the video was published by a third party." *Id.* at 82. Plaintiff further alleges
13 that "[i]n or about March 16, 2016, Plaintiff's copyrighted works were displayed on
14 Trafficforce banners on Porn.com." *Id.* at 98. Plaintiff claims that all of these actions
15 constitute copyright infringement. *Id.* at 105-158.

16 Plaintiff's Amended Complaint never mentions the CPRA, and does not allege that
17 any of Defendants' conduct occurred in connection with that agreement. *See* Doc. 16.
18 Thus, as far as the "alleged conduct" is concerned, none of it provides a connection to the
19 CPRA that would allow Defendants to invoke the forum selection clause.

20 Defendants argue that *they* are closely related to the CPRA (Doc. 161 at 5), but the
21 Ninth Circuit made clear on appeal that it is Defendants' conduct, not their corporate
22 relationships, that must be linked to the CPRA (807 F. App'x at 679). Defendants also
23 contend that the conduct at issue in this case arose out of the CPRA – that the Plaintiff's
24 content that appeared on Porn.com appeared there under the CPRA (Doc. 154 at 15-16) –
25 but Plaintiff disputes this fact. *See* Doc. 157 at 15 ("The Defendants' conduct sounds in
26 outright infringement, not the limited use rights granted by the [CPRA] to GIM."). As
27 noted above, the Court must resolve all factual conflicts and draw all reasonable inferences
28 in favor of Plaintiff, the non-moving party. *Murphy*, 362 F.3d at 1138. Because the

conduct alleged in the Amended Complaint is not related to the CPRA, and the factual dispute raised by Defendants must be resolved in Plaintiff's favor at this stage, the Court cannot conclude that Defendants' can invoke the forum selection clause under *Manetti-Farrow*.

### B.   Defendants Are Not Third-Party Beneficiaries.

Defendants argue that they can enforce the CPRA's forum selection clause because they are third-party beneficiaries. Doc. 154 at 13. Defendants argue that, "[u]nder Ninth Circuit law, an 'intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended by the parties to benefit from the contract.'" Doc. 154 at 13 (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir.1999)). But the only provision of the CPRA cited by Defendants in support of their claimed third-party beneficiary status is a generic warranty provision near the end of the contract containing a list of warranties by GIM, one of which affirms "that all actions taken by [GIM], its employees and agents, with respect to the Content or the relationship contemplated by this Agreement shall comply with applicable law." Doc. 154 at 14 (citing CPRA § 6.2); *see also* Doc. 161 at 9 (reply brief also citing only § 6.2).[4] This provision does not remotely identify a class of beneficiaries. A promise by GIM that any actions taken on its behalf will be lawful imposes an obligation on GIM; it does not identify "a class clearly intended by the parties to benefit from the [CPRA]." *Klamath*, 204 F.3d at 1211. Plaintiff correctly asserts that "[t]here is no evidence that AMA intended to benefit any third party under the [CPRA]." Doc. 157 at 13.

### C.   Defendants Cannot Enforce the Forum Selection Clause as Agents.

Defendants also argue that they can enforce the forum selection clause because they are agents of GIM. But the cases Defendants cite do not support their argument.

---

[4] Defendants' opening brief cites § 6.1(iii) of the CPRA (Doc. 154 at 14), but this clearly is a typo. That section contains representations and warranties by AMA. *See* Doc. 27-3 at 28. The GIM warranty quoted by Defendants in their opening brief is contained in § 6.2(iii). *Id.*

Defendants' first two cases state that "[a] person may enforce a forum selection clause he did not sign if he was . . . *an agent intended to benefit from the contract*[.]" *Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, 60 F. Supp. 3d 1109, 1119 (E.D. Cal. 2014) (emphasis added); *see Sawyer v. Bill Me Later, Inc.*, 2011 WL 7718723, at *4 (C.D. Cal. Oct. 21, 2011) (same). Defendants quote various statements by Plaintiff asserting that Defendants are agents for each other and GIM – statements Plaintiff now disavows (Doc. 157 at 11) – but Defendants make no showing, and do not even address the requirement, that they are agents "intended to be benefited by the [CPRA]." *Id.* As discussed above, the CPRA contains no indication that Defendants are intended beneficiaries.

The other four cases cited by Defendants – *Laurel Village Bakery LLC v. Global Payments Direct Inc.*, No. C06-01332 MJJ, 2006 WL 2792431, at *6 (N.D. Cal. Sept. 25, 2006); *Pat Pellegrini Flooring Corp. v. ITEX Corp.*, 2010 WL 1005318, at *9 (D. Or. Feb. 9, 2010); *Paxton v. DISH Network, LLC*, No. 3:17-CV-01944-JE, 2018 WL 1947420, at *4 (D. Or. Apr. 24, 2018); and *Hillis v. Heineman*, No. CV-09-73-PHX-DGC, 2009 WL 2222709, at *2-3 (D. Ariz. July 23, 2009) – all apply the *Manetti-Farrow* test, as indicated at the pages cited in the foregoing case citations. They do not rely on Defendants' agency theory.

Because Defendants cite no authority supporting their argument that they can enforce the forum selection clause simply because Plaintiff has referred to them as agents, regardless of whether they were intended beneficiaries of the CPRA, the Court cannot grant their motion on this ground. Moreover, Plaintiff now disputes that Defendants are agents of GIM for purposes of the CPRA, and, as noted above, factual disputes are to be resolved in Plaintiff's favor as the non-moving party. *Murphy*, 362 F.3d at 1138.

**D.  Defendants Are Not Implied Licensees.**

Defendants argue that a nonexclusive license may be granted orally, or may even be implied from conduct. Doc. 154 at 16 (citing *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 826 (9th Cir. 2001) (J. Koczinksi, concurring)). They assert that an implied

license will be found if the circumstances suggest that the parties intended that Defendants' activities would be licensed. *Id.* (citing *Effects Assoc., Inc. v. Cohen*, 908 F.2d 555, 558-559 (9th Cir. 1990)). Further, Defendants argue that, under Ninth Circuit law, a copyright owner's acquiescence in a defendant's use of copyrighted material can be the basis for an implied license. *Id.* at 17 (citing *Falcon Enterprises, Inc. v. Publishers Service, Inc.*, 438 Fed. Appx. 579 (9th Cir. 2011)). In arguing that this law controls, Defendants make several factual assertions: that Plaintiff wanted its content under the CPRA to be displayed on Porn.com, that GIM does not own Porn.com, and that the CPRA would be worthless if GIM could not secure the assistance of Defendants to display Plaintiff's videos on Porn.com – all showing that the conduct of the parties and Plaintiff's acquiescence in the conduct amount to an implied license to Defendants. *Id.* at 17-19.

Plaintiff disputes Defendants' facts. They note that the CPRA expressly states that the license granted to GIM is "nontransferable." Doc. 27-3, ¶ 1.1. They assert that the videos at issue in this case were never provided by Plaintiff to GIM under the CPRA and therefore could not be subject to any implied license under the CPRA. Doc. 157 at 18. And they dispute Defendants' claim that the CPRA would be worthless if GIM could not arrange for the videos to be shown on Porn.com. Plaintiffs assert that "[c]ontent that AMA submitted to GIM is displayed on literally hundreds of web sites established, developed, and maintained by GIM – completely separate from Porn.com." *Id.* Plaintiffs also dispute other facts relied on by Defendants. *Id.* at 18-19.

In short, the factual assertions on which Defendants rely are strongly disputed by Plaintiff. As already noted, the Court must resolve factual disputes and draw all reasonable inferences in favor of Plaintiff as the non-moving party. *Murphy*, 362 F.3d at 1138.

**E.   Defendants Are Not Assignees Of The CPRA.**

In the first appeal, the Ninth Circuit found Defendants' evidence that GIM's rights under the CPRA had been assigned to Defendants insufficient. *AMA Multimedia, LLC v. Sagan Ltd.*, 720 F. App'x 873, 874-75 (9th Cir. 2018). Defendants argue that two additional facts make the evidence sufficient.

First, Defendants assert that paragraph 63 of the Amended Complaint admits that the CPRA provided for Plaintiffs' videos to be displayed on Porn.com. Doc. 154 at 19. But paragraph 63 does not identify the CPRA as the contract referred to, and Plaintiff makes clear that the paragraph refers to the 2007 affiliate relationship established between Plaintiff and Cyberweb. Doc. 157 at 20.

Second, Defendants cite a statement from one of Plaintiff's earlier briefs that Netmedia was granted rights to AMA's content under the CPRA. Doc. 154 at 19. Plaintiff now disavows that earlier statement. Doc. 157 at 20-21. There can be no doubt that Plaintiff has made inconsistent and inaccurate statements during this litigation, leading to considerable confusion, but Defendants have too. As noted above, Defendants inaccurately cite four *Manetti-Farrow* cases as agency cases, and at least one judge on the Ninth Circuit noted that Defendants have asserted a variety of different positions on assignment. *See* Doc. 157-1 at 19.

Defendants argue that Plaintiffs should be estopped from changing positions (Docs. 154 at 19, 161 at 13), but "[j]udicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Defendants identify no advantage Plaintiff's gained by their previous assertions.

Defendants have not provided sufficient evidence of assignment.

**F.    Defendant Koonar Cannot Enforce the Forum Selection Clause.**

Defendants rely on one of the Court's previous rulings to argue that Defendant Koonar can enforce the CPRA's forum selection clause. This is what the Court said in its prior ruling:

> "With one exception, every district court in our circuit that has considered whether to apply a forum-selection clause to a corporate officer . . . that was not part of the agreement . . . has enforced that forum-selection clause, provided the claims in the suit related to the contractual relationship." *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F. Supp. 3d 816, 822 (N.D. Cal. 2015). Koonar is employed as president of GIM, a signatory to

the CPRA. Koonar is also president of both Netmedia and the holding company that owns all of GIM and 50% of Cyberweb. AMA claims that Koonar was engaged in the infringing activity. Doc. 68 at 6. Just as AMA's copyright infringement claims relate to the CPRA, AMA's allegation that Koonar was involved in such conduct likewise relates to the CPRA.

Doc. 126 at 14.

The Court no longer views this conclusion as correct. As noted in the *Ultratech* case quoted by the Court, officers are allowed to enforce a forum selection clause "provided the claims in the suit related to the contractual relationship." *Ultratech*, 108 F. Supp. 3d at 822. The Court has concluded in Part III.A above that the claims asserted by Plaintiff are not related to the CPRA. What is more, each of the district court cases cited in *Ultratech* relied on *Manetti-Farrow*. *See Ultratech*, 108 F. Supp. 3d at 822 (citing *Sawyer*, 2011 WL 7718723, at *4; *Randhawa v. Skylux Inc.*, Docket No. 09–civ–2304, 2009 WL 5183953, at *11 (E.D. Cal. Dec. 21, 2009); *Aspitz v. Witness Systems, Inc.*, Docket No. 07–civ–02068, 2007 WL 2318004, at *3 (N.D. Cal. Aug. 10, 2007); *Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F.Supp. 1427, 1434 (N.D. Cal. 1997)). As discussed above, Defendants cannot satisfy the requirements of *Manetti-Farrow*.

Nor can the Court conclude, as it did before, that "AMA's allegation that Koonar was involved in such conduct . . . relates to the CPRA." Doc. 126 at 14. Plaintiff asserts that "Koonar's alleged actions pertaining to infringement simply do not closely relate to the [CPRA]." Doc. 157 at 21. Granted, Defendants vigorously dispute Plaintiff's allegations and assert that all of the conduct at issue in this case occurred under and was related to the CPRA. But that factual dispute must be resolved in favor of Plaintiffs on this *forum non conveniens* motion. *Murphy*, 362 F.3d at 1138.

**IT IS ORDERED:**

1. The Court will not dismiss this case on the basis of the forum selection clause as requested by Defendants.

2. The parties shall, within 21 days of this order, jointly propose a revised schedule for completing this case under the Case Management Order (Doc. 58).

Dated this 27th day of July, 2020.

*David G. Campbell*

David G. Campbell
Senior United States District Judge