1   **WO**

2

3

4

5

6               **IN THE UNITED STATES DISTRICT COURT**

7                 **FOR THE DISTRICT OF ARIZONA**

8

9    AMA Multimedia LLC,                    No. CV-16-01269-PHX-DGC

10                    Plaintiff,            **ORDER**

11   v.

12   Sagan Limited, et al.,

13                    Defendants.

14

15

16          Plaintiff AMA Multimedia, LLC, a producer of pornographic material, asserts

17   copyright infringement claims against several entities and one individual associated with

18   the website Porn.com: Sagan, Limited; Cyberweb, LTD; Netmedia Services, Inc.; GLP 5,

19   Inc. ("Corporate Defendants"); and David Koonar.  Koonar moves to dismiss for lack of

20   personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Doc. 49.  The

21   issues have been fully briefed and oral argument will not aid in the Court's decision.  *See*

22   Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).  The Court

23   will deny Koonar's motion to dismiss.

24   **I.     Background.**

25          Porn.com is an adult video streaming website that generates revenue through its

26   Content Partnership Program and advertising banners.  Doc. 16 ¶¶ 56-57.  AMA asserts

27   that Defendants own and operate Porn.com, and that they displayed 64 of AMA's copyright

28   registered works over 110 separate Porn.com-affiliated URLs without authorization.  *Id.*

¶¶ 2-3, 46-47, 78.  AMA further alleges that Defendants assigned fake usernames to the copyrighted videos to make it appear as if third party internet users uploaded the videos. *Id.* ¶¶ 69, 82.  It claims that Defendants sought to benefit financially from providing high quality video content to their users, while also capitalizing on the safe harbor provisions in the Digital Millennium Copyright Act ("DMCA"), which protect internet service providers from liability for their users' copyright infringement.  *Id.* ¶ 69.  By misrepresenting that the copyrighted videos were uploaded by third parties, AMA alleges, Defendants could take advantage of increased traffic to Porn.com, then simply remove the infringing content without penalty after receiving a DMCA notice.  *Id.*

Several Defendants moved to dismiss for lack of personal jurisdiction.  Docs. 27, 49, 70.  The Court denied Sagan's motion (Doc. 69) and granted GLP 5's motion (Doc. 185).  Cyberweb and Netmedia withdrew their motions.  Doc. 184 at 2.  The Court now considers Koonar's motion (Docs. 49, 67, 75) and related supplemental briefing submitted after jurisdictional discovery (Docs. 117, 124, 186).

## II.    Legal Standard.

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true."  *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).  The Court may not assume the truth of allegations in a pleading that are contradicted by an affidavit, but factual disputes are resolved in the plaintiff's favor.  *Id.*

1    **III.    Analysis.**

2        "The general rule is that personal jurisdiction over an out-of-state defendant is

3    proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does

4    not violate federal due process." *Pebble Beach*, 453 F.3d at 1154.  AMA contends that

5    Koonar is subject to personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2),

6    also known as the federal long arm statute.  Doc 16; Fed. R. Civ. P. 4(k)(2); *Pebble Beach*,

7    453 F.3d at 1159.  Rule 4(k)(2) allows plaintiffs to establish jurisdiction by looking "to the

8    aggregate contacts of a defendant with the United States as a whole instead of a particular

9    state forum." *Id.* at 1158.  Specifically, Rule 4(k)(2) provides for personal jurisdiction if

10   (1) the claim arises under federal law, (2) the defendant is not subject to jurisdiction in any

11   state's courts of general jurisdiction, and (3) exercising jurisdiction is consistent with the

12   United States Constitution.

13       The first two factors are satisfied.  The copyright claim arises under federal law, and

14   no party claims that Koonar may be sued in a state court of general jurisdiction.  The third

15   factor involves a due process analysis "nearly identical to traditional personal jurisdiction

16   analysis with one significant difference: rather than considering contacts between the

17   [defendant] and the forum state, we consider contacts with the nation as a whole." *Holland*

18   *Am. Line Inc. v. Wartsila N. Am., Inc.*,485 F.3d 450, 462 (9th Cir. 2007).

19       Koonar focuses his briefing on his lack of contacts with the state of Arizona.

20   Doc. 49-1 at 4-7.[1]  But as noted above, the correct inquiry under Rule 4(k)(2) is whether

21   Koonar has sufficient minimum contacts with the United States as a whole, such that

22   maintenance of the suit does not offend traditional notions of fair play and substantial

23   justice. Fed. R. Civ. P. 4(k)(2); *Int'l Shoe Co. v. Wash.*, 66 S. Ct. 154, 158 (1945).  While

24   it is true, for claims sounding in tort[2], that "a corporate officer can be subject to jurisdiction

25

26       [1] Citations are to page numbers placed at the top of each page by the Court's
27   electronic filing system, not to original page numbers on the documents.

28       [2] Copyright infringement claims sound in tort.  *See, e.g.*, *United Truck & Equip.,*
     *Inc. v. Curry Supply Co.*, No. CV08–01046–PHX–GMS, 2008 WL 4811368, at *6 (D.
     Ariz. Nov. 5, 2008).

1   based on his own sufficient individual contacts with the forum," AMA does not contend
2   that Koonar has individual contacts with the United States.  *In re Boon Global Ltd.*, 923
3   F.3d 643, 652 (9th Cir. 2019) (quoting *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 522 (9th
4   Cir. 1989)).   Koonar is a resident of Ontario, Canada, has no bank accounts, office, or
5   employees in the United States, and neither personally owns nor leases real or personal
6   property in this country.  *See, e.g.*, Docs. 16 ¶ 8, 49 at 9.  Instead, AMA argues that the
7   actions of a corporate entity can be imputed to an individual officer who is the "guiding
8   spirit behind the wrongful conduct, or the central figure in the challenged corporate
9   activity."  *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016)
10  (quoting *Davis*, 885 F.2d at 522).[3]

11          Koonar's "mere association" with a corporation subject to personal jurisdiction is
12  not enough to expose him to personal jurisdiction, but his own actions as "the central figure
13  in the challenged corporate activity" can be enough.  *In re Boon*, 923 F.3d at 651 (in
14  personal jurisdiction discussion, stating that "[c]orporate officers can be liable for
15  corporate actions where they are 'the guiding spirit behind the wrongful conduct, or the
16  central figure in the challenged corporate activity.'") (quoting *Facebook*, 844 F.3d at
17  1069).  "Courts have . . . found a corporate officer's contacts on behalf of a corporation
18  sufficient to subject the officer to personal jurisdiction where the officer is a primary
19  participant in the alleged wrongdoing or had control of, and direct participation in the
20  alleged activities."  *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d
21  1109 (C.D. Cal. 2009) (internal quotation marks and citations omitted); *see also Matsunoki*
22  *Group, Inc. v. Timberwork Oregon, Inc.*, No. C 08–04078 CW, 2009 WL 1033818, at *5
23
24
25  _____
26          [3] AMA also attempts to argue that Koonar is subject to personal jurisdiction based
    on AMA's contacts with the United States because Koonar was "well aware that AMA is
27  a U.S. company with U.S. copyrights which markets to paid membership sites in the U.S."
    Doc. 67 at 10-11.  But after *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014), the Court must
28  "look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge
    of a plaintiff's connections to a forum."  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874
    F.3d 1064, 1069 (9th Cir. 2017) (discussing *Walden*, 134 S. Ct. at 1124-25).

1    (N.D. Cal. Apr. 16, 2009) (personal jurisdiction appropriate where defendant is the
2    "moving, active, conscious force behind the [corporation's] infringing activity.").[4]

3        As discussed below, AMA has made a prima facie showing that Koonar was a
4    moving, active, conscious force behind Netmedia's conduct.   Because Netmedia has
5    conceded personal jurisdiction, the Court also has personal jurisdiction over Koonar.  *See*,
6    *e.g.*, *Activator Methods Int'l, Ltd. v. Future Health, Inc.*, No. CV–11–1379–PHX–GMS,
7    2012 WL 715629, at *4 (D. Ariz. Mar. 6, 2012) (personal jurisdiction existed over
8    individual defendants, under alter ego theory, where corporate defendants had conceded
9    personal jurisdiction).

10       **A.    Koonar's Ties to the Corporate Defendants.**

11       The parties dispute the extent to which the Corporate Defendants – Cyberweb,
12    Netmedia, and Sagan – are involved with the daily operations of Porn.com.  Nonetheless,
13    it is undisputed that Cyberweb owns Porn.com, Netmedia provides (at the very least)
14    certain technical services to Porn.com, and Sagan is listed as an owner/operator by
15    Porn.com's terms of service and a designation form filed with the U.S. Copyright Office.
16    Docs. 51-1 at 6-9, 67 at 3, 124 at 5.  AMA predicates its theory against Koonar on his
17    various financial and business ties to these companies, contending that Koonar is "at the
18    center of a shell game involving multiple companies . . . each involved with the ownership
19    and operation of Porn.com."   Doc. 67 at 2.   AMA alleges that Koonar is listed on
20    Porn.com's domain registration as a registrant and administrator of Porn.com.  Doc. 16 ¶ 8.
21    AMA provides evidence that Koonar negotiated the purchase and acquisition of the

22

23    ─────────────────────
24       [4] The defendant's level of involvement in alleged wrongdoing often is analyzed in
      determining whether the defendant can be subjected to personal liability for actions taken
25    in his corporate role, rather than for personal jurisdiction. *See Facebook*, 844 F.3d at 1069.
      But the two issues clearly overlap.  The Ninth Circuit has recognized that "[b]ecause the
26    corporate form serves as a shield for the individuals involved for purposes of liability as
      well as jurisdiction, many courts search for reasons to 'pierce the corporate veil' in
27    jurisdictional contexts parallel to those used in liability contexts." *Davis*, 885 F.2d at 520.
      As noted from cases cited in the text, personal involvement in wrongdoing can subject a
28    defendant to personal jurisdiction as well as personal liability.

- 5 -

1    Porn.com domain as president of 1614985 Ontario, Inc. ("161"), a holding company that

2    owns 50 percent of Cyberweb (Docs. 117 at 5; 117-2 at 16, 20; 186 at 2); 161 is owned by

3    a family trust of which Koonar is a beneficiary (Docs. 186 at 2, 186-1 at 3-4); 161 also

4    owns GIM – a company that Koonar helped create – which subcontracts with Netmedia to

5    provide technical services to Porn.com (Docs. 117-1 at 7, 186-1 at 5); Koonar makes

6    management decisions for GIM and serves as its president and director (Docs. 117-2 at 10,

7    186-1 at 2); and Koonar serves as Netmedia's president and receives a salary from it

8    (Docs. 117 at 8, 117-2 at 18).

9          Koonar does not dispute these facts, but contends that AMA's jurisdictional theory

10   is inapplicable because he is not a corporate officer of Cyberweb, which he says owns

11   Porn.com, and because Netmedia – where he is president – is merely a technical services

12   provider with no actual ownership over Porn.com.  Doc. 124 at 5.  Koonar also argues that

13   AMA's theory fails because AMA focuses only on Koonar's associations with the

14   Corporate Defendants rather than the actual wrongful conduct alleged.  *Id.* at 18.

15         The Court disagrees.  With respect to Cyberweb, the Court cannot conclude that

16   AMA's cases apply only to corporate officers.  While most Ninth Circuit cases finding

17   personal jurisdiction over a defendant based on his leading role in the wrongdoing have

18   involved corporate officers, Koonar cites no authority that this is a hardline requirement.

19   An individual is not shielded from jurisdiction by the corporate form where he is the

20   "moving, active, conscious force behind the [corporation's] infringing activity."  *See*

21   *Matsunoki*, 2009 WL 1022818, at *3.  This requirement may more often be satisfied by

22   corporate officers, but the Court can find no principle or law to suggest that it can only be

23   satisfied by corporate officers.  Koonar's actions, not his title, are the key focus.

24         Nor does the Court agree with Koonar's suggestion that Netmedia must own

25   Porn.com for its conduct to be imputed to Koonar.  As discussed below, AMA alleges that

26   Netmedia operates Porn.com and is responsible for the infringing content at issue here, and

27   that Koonar directed this infringing activity as president of Netmedia.  It is precisely this –

28

the extent of an individual's involvement with the alleged corporate misconduct – that forms the crux of AMA's argument.

Similarly, while AMA focuses its briefing on Koonar's associations with the various corporate entities associated with Porn.com, the Court need not detangle these connections at present.  The Court will focus on AMA's allegation that the copyright infringement arose from Koonar's actions as president of Netmedia.

## B.    Netmedia's Role at Porn.com.

The parties spend much of their briefing disputing whether Netmedia actually "operates" Porn.com, although neither defines the term "operate." As far as the Court can tell, the parties are contesting whether Netmedia was involved with uploading the infringing content to Porn.com.  AMA contends that Netmedia and its employees drive "[a]ll of the technical aspects of Porn.com [including] programming, design, reviewing content, commenting, advising and day-to-day business operations," and that Netmedia programmers, under Koonar's control, uploaded the infringing content to Porn.com and disguised the videos as third-party uploads.  Docs. 67 at 3, 9; 117 at 3.

AMA provides considerable support for its assertion that Netmedia is closely involved with both the technical and creative aspects of Porn.com, including the uploading of video content.  Correspondence between various Netmedia employees indicates that Netmedia provides a variety of services to Porn.com, including payment of content producers, accounting functions, content updates, tracking revenue and monthly traffic, and testing and diagnostics.  Docs. 117-5, 117-6.  Netmedia vice president Philip Bradbury confirmed at his deposition that Netmedia uploads content to Porn.com, and Cyberweb president Kris Richardson testified that the systems administrator at Netmedia has access to the Porn.com server to make changes to the website.  Docs. 117-1 at 16, 124-7 at 9.  Further, in a Statement of Claim Defendants filed against AMA in the Supreme Court of Barbados in April 2016, Netmedia is listed as providing maintenance and operational services to websites owned by Cyberweb, including "technical programming, design and other services, *which may be related to the uploading of content to websites.*"  Doc. 32-4

at 11 ¶ 1.2.1, 13 at ¶ 4.4.3 (emphasis added).   Similarly, emails between Netmedia employees and Richardson suggest that Netmedia has control over Porn.com's server, IP addresses, and updates and changes made to the website.  *See* Doc. 117-6.  The emails also show Netmedia employees corresponding with Koonar and Bradbury about creative decisions, including the display of seasonal logos on the website.  Doc. 117-14 at 10.

Koonar characterizes this correspondence quite differently, claiming that it merely proves that Cyberweb, with Richardson at the helm, "operated" Porn.com, and that Netmedia is merely an independent contractor that provides "technical services" to the website.  Doc. 124 at 11.   Koonar submits a declaration from Bradbury stating that Netmedia was neither aware of, nor participated in, the alleged copyright infringement at issue.  Doc. 124-2 ¶ 8.   He also points to testimony from Richardson that Cyberweb performs "day-to-day" tasks for Porn.com – including with respect to appearance, functionalist, and design decisions – and denying that Netmedia even has full access to Porn.com servers.  Doc. 124 at 12-13.

On this motion, however, all factual disputes must be resolved in AMA's favor.  *Mavrix*, 647 F.3d at 1223.  While Koonar claims that Netmedia was under Cyberweb's control, he presents little evidence – other than Bradbury's conclusory declaration – contradicting AMA's assertion that Netmedia was responsible for the uploading of video content, including the infringing content at issue here.  As discussed below, it may be true that Cyberweb and Richardson were also involved with operating Porn.com, but AMA has provided substantial evidence that Netmedia was involved with both the creative and technical aspects of Porn.com, including the uploading of video content.  Accordingly, for purposes of this motion, the Court will accept as true that Netmedia is an operator that uploaded the infringing content to Porn.com.

C.     **Koonar's Role at Netmedia.**

AMA contends that Koonar, as Netmedia president, was in "direct control of the programming and the uploading of content to Porn.com."  Doc. 67 at 9.  Koonar claims he is merely a "high-level corporate executive" who was "not involved in reviewing or

uploading content," had no knowledge of or participation in the infringing activity, and received no financial benefit from the wrongful conduct.  Docs. 71-1¶ 2, 75 at 7, 124 at 18. Koonar claims that his involvement with Netmedia's technical side was limited to "overall website design implementation at the customer interface level," including overall appearance, resolution, and speed.  Doc. 124 at 18.

AMA again provides support for its position.  Emails produced in discovery show Koonar – using a Netmedia email address – discussing a wide range of topics with Netmedia employees, including revenue, the impact of net neutrality on Porn.com website traffic, search logistics, security issues, text link tracking, and maximizing the user experience for Porn.com.  Doc. 117-14 at 2-13.  The emails show Koonar exercising at least some supervisory authority over Netmedia employees on both technical and creative matters.  For example, in October 2014, Koonar told Netmedia employees to "[f]ind a way" to add playlists to Porn.com's search results.  *Id.* at 5.  The same month, Koonar had the final say on how Porn.com would track website traffic through click-through links.  *Id.* at 7.  In November 2014, Koonar directed Netmedia employees to buy specific software to facilitate direct communication with Porn.com users.  *Id.* at 8.  In late October 2015, a Netmedia employee asked Koonar what he thought about uploading Halloween-specific seasonal logos to Porn.com, and Koonar responded, "Go for it[.]"  *Id.* at 10.  Additionally, emails between Koonar, Richardson, and Bradbury indicate that Koonar was well-aware, and involved in, routine operational and logistic matters related to Porn.com, including the transfer of Porn.com's domain name in August 2014.  *Id.* at 3.

In response, Koonar argues that Richardson, not Koonar, exercised direction and control over Netmedia employees.  Doc. 124 at 11.  This appears at least somewhat true. Emails from 2014, for example, indicate that Richardson directed Netmedia employees, including Netmedia's vice president, Bradbury, on decisions regarding domain usage, revenue, and operating the mobile website, and provided feedback about membership pricing for Porn.com.  Doc. 124-7 at 16-20.  Additionally, Netmedia employees emailed Richardson with monthly reports about site updates, revenue generation, pricing, site

1    traffic, and industry trends. Doc. 117-6 at 2- 10. But while Netmedia employees

2    corresponded with Richardson, it appears that Koonar was still copied on several of these

3    emails. *See*, *e.g.*, Doc. 124-7 at 16-18, 26. And in several instances, Bradbury addressed

4    substantive inquiries about pricing and operations on Porn.com to both Richardson and

5    Koonar directly. *Id.* at 20, 22-23.

6         Resolving factual disputes in favor of AMA, the Court concludes that Koonar is a

7    "moving, active, conscious force" behind Netmedia's activity. *Matsunoki Group*, 2009

8    WL 1033818, at *5. Evidence provided by both parties suggests that Netmedia has access

9    to the Porn.com server, can make changes to the website, and uploads content to Porn.com.

10    Docs. 32-4 at 13, ¶ 4.4.3, 117-1 at 16, 124-7 at 9. It also establishes that Koonar is the

11    salaried president of Netmedia, has supervisory authority over Netmedia employees, is tied

12    to Porn.com through a complex web of companies and a family trust, and negotiated the

13    purchase and acquisition of the Porn.com domain. Docs. 117 at 5, 8; 117-2 at 16-20; 117-

14    14 at 3-10; 186 at 2; 186-1 at 22, 37. AMA has met its prima facie burden of demonstrating

15    that Koonar is a "central figure in the challenged corporate activity." *In re Boon*, 923 F.3d

16    at 651.

17         Because Netmedia has conceded jurisdiction, the Court has personal jurisdiction

18    over Koonar. *Activator Methods*, 2012 WL 715629, at *4.[5]

19    **IV.    Defendants' Motion to Seal (Doc. 188).**

20         Defendants move to seal AMA's Supplemental Memorandum Regarding Personal

21    Jurisdiction Over David Koonar and Exhibit A attached thereto (Docs. 186, 186-1)

22    pursuant to Local Rule 5.6 and the protective order entered in this case. Doc. 122. The

23

24         [5] The Court notes that a recent Ninth Circuit case addresses whether, in a copyright

25    infringement case, the operator of an internationally-accessible website which hosts adult videos is subject to personal jurisdiction in the United States. *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020). AMA was the plaintiff in *Wanat* and asserted

26    jurisdiction under Rule 4(k)(2). *Id.* at 1207. The Ninth Circuit affirmed the district court's dismissal for lack of personal jurisdiction because AMA had not established that the

27    defendant, a foreign national, had purposefully directed his activities at the United States. *Id.* at 1212. Because neither party has raised *Wanat*, and Netmedia has conceded personal jurisdiction (Doc. 184 at 2), the Court will not discuss *Wanat* here. *Smith v. Idaho*, 392

28    F.3d 350, 355 n. 3 (9th Cir. 2004) (citing the "longstanding rule that personal jurisdiction, in the traditional sense, can be waived and need not be addressed sua sponte.").

Court finds compelling reasons to seal and will grant Defendants' motion.  *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  Sealing the exhibits will have no effect on the public's ability to understand the issues in this case because redacted copies will be filed in the public docket.  AMA is ordered to file a redacted version of the Supplemental Memorandum and Exhibit A in the public docket within seven days of this order.

**IT IS ORDERED:**

1.      Koonar's motion to dismiss (Doc. 49) is **denied**.

2.      Defendants' motion to seal (Doc. 188) is **granted**.  The Clerk of Court is directed to accept for filing under seal the document lodged on the Court's docket at Doc. 124.   AMA is ordered to file a redacted version of the Supplemental Memorandum and Exhibit A in the public docket within seven days of this order.

Dated this 9th day of October, 2020.

David G. Campbell
Senior United States District Judge